UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br><br>ORDER DENYING IN PART PLAINTIFF'S MOTION TO PREVENT CONTACT WITH FORMER EMPLOYEE<br><br>DOCKET NO. 19 |

**INTRODUCTION**

This matter is before the court on the complaint of plaintiff Buergofol GMBH alleging that defendant Omega Liner Company, Inc. ("Omega") violated patents owned by plaintiff regarding pipe liners. Docket No. 1. Jurisdiction is premised on the presence of a federal question. 28 U.S.C. § 1331. Now pending is a motion by plaintiff for an order preventing Omega from contacting Dr. Kurt Stark, a German citizen now living in Germany who is a former employee of plaintiff. Docket No. 19. The district court referred this motion to this magistrate judge for decision. Docket No. 25.

**FACTS**

Procedurally, this case is in its infancy and very little discovery appears to have taken place. Rather than filing an answer to plaintiff's complaint, Omega filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and (e),

which is as yet unresolved.  Docket No. 15.  Therefore, the following facts
(greatly simplified) are drawn from plaintiff's complaint.  No imprimatur of the
accuracy of these facts is intended by the court.

Plaintiff is the owner of U.S. Patent No. 9,657,882 ("Patent 882"), entitled
"Tubular Film and the Use Thereof" issued on May 23, 2017, to Kurt Stark,
Gregor Schleicher and Abdel-Kader Boutrid.  The subject of Patent 882 is an
insertion tube suitable for repairing or renovating subterranean pipes.  The
invention is a tri-layer tube that works by inserting the tube into a broken or
leaking pipe, expanding it until it makes contact with the broken pipe, and
then hardening or curing the inserted pipe liner.

Plaintiff is also the owner of U.S. Patent No. 8,794,269 ("Patent 269"),
entitled Multi-Layer Film Permeable to UV Radiation issued on August 5, 2014,
to Henrik Hummel and later transferred to plaintiff.  Patent 269 also describes
an insertion tube suitable for renovation of subterranean pipes.  Like Patent
882, the invention described in Patent 269 works by inserting the tri-layer tube
into a broken or leaking pipe, expanding it until it makes contact with the
broken pipe, and then hardening or curing the inserted pipe liner.  Both pipe
liners described in each patent require the application of UV radiation and/or
short-wave visible light to harden the inserted and expanded pipe liner.

Plaintiff has obtained a sample of a pipe liner Omega is producing,
selling, and installing, and tested it.  Omega's pipe liner is a UV-activated
cured-in-place pipe liner.  Plaintiff alleges that Omega's pipe liner infringes
Patent 882 (count I) and Patent 269 (count II).  Plaintiff seeks a declaration that

2

Omega is infringing both patents, an injunction prohibiting Omega from continuing to infringe plaintiff's patents, and compensatory damages.

Dr. Kurt Stark is a German citizen living in Germany who is a listed inventor on Patent 882. He is also plaintiff's former employee. In support of its motion to prevent Omega from having contact with Dr. Kurt Stark, plaintiff states that while Dr. Stark was plaintiff's employee, Dr. Stark was "a key competitive decision maker for [plaintiff] and engaged in extensive privileged attorney-client communications, and in particular was a competitive decision maker with respect to [plaintiff's] patent strategy." Docket No. 20 at p. 4 (citing Declaration of Franz Schleicher, Docket No. 22 at p. 2, ¶ 5).[1]

In response, Omega asserts that it would be extremely difficult and expensive to take Dr. Stark's deposition in Germany. In order for his deposition to take place in the United States, Omega would at the very least need to contact Dr. Stark or his attorney to make arrangements for a domestic deposition. Furthermore, Omega asserts plaintiff does not represent Dr. Stark and the rules of professional conduct do not prohibit Omega from contacting him. Omega asserts Dr. Stark has essential knowledge on Omega's defense of "prior art."

Plaintiff's rejoinder to this last argument is that Dr. Stark's employment agreement with plaintiff designates information about "prior art" to be confidential. Thus, the very subject Omega seeks to question Dr. Stark about

---

[1] Mr. Schleicher is a majority shareholder of plaintiff. Docket No. 22 at p. 1, ¶ 2.

is contractually designated as confidential information.  Plaintiff notes that it is

embroiled in several wrongful termination lawsuits with Dr. Stark in Germany

and posits that Dr. Stark would be motivated to share with Omega confidential

information that would harm plaintiff.

**DISCUSSION**

**A.      Rules of Professional Responsibility and Opinions Interpreting Them.**

South Dakota Rule of Professional Conduct 4.2 provides as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

SDCL Ch.16-18 App., Rules of Prof. Conduct, r. 4.2 ("SD Rule 4.2").  The South

Dakota rule is identical to the American Bar Association's Rule of Professional

Conduct 4.2.[2]

Comment 7 to the South Dakota Rule 4.2 states as follows:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.  **Consent of the organization's lawyer is not required for communication with a former constituent.**  If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule.  Compare Rule 3.4(f).  In communicating with a current or former constituent of an organization, a lawyer must not

---

[2] Compare SD Rule 4.2, with MODEL RULES OF PROF'L CONDUCT r. 4.2 (AM. BAR ASS'N 2021) ("ABA Rule 4.2").

4

use methods of obtaining evidence that violate the legal rights of
the organization.  See Rule 4.4.

SD Rule 4.2, cmt. 7 (emphasis added).  This comment is identical to comment

7 to ABA Rule 4.2.

South Dakota has issued a formal opinion interpreting SD Rule 4.2 as

follows:

> Question Presented:  If a lawyer is representing a client suing the
> client's former entity-employer, and an attorney represents the
> entity, may the lawyer contact another former employee of the
> entity-employer about the lawsuit without the consent of the
> entity-employer's attorney?
>
> Short Answer:  Yes, with certain caveats, such as the possibility
> that the other former employee possesses privileged information, is
> independently represented, or has obtained representation from
> the entity-employer's attorney.
>
> * * *
>
> Comment [7] to South Dakota's Rule 4.2 addresses
> communications with former employees of represented entities and
> states, "[c]onsent of the organization's lawyer is not required for
> communication with a former constituent."  Even communications
> with current employees of an entity are only strictly proscribed
> when the current employee (1) supervises, directs, or regularly
> consults with the entity's lawyer concerning the matter; or (2) has
> the authority to obligate the entity concerning the matter or whose
> act or omission in connection with the matter may be imputed to
> the entity for purposes of civil liability. . . . Consequently, Lawyer's
> proposed communication with Employer's Former Employee is not
> strictly prohibited.  This is consistent with the approach of the ABA
> Committee on Ethics and Professional Responsibility in its Formal
> Opinion 91-359, which stated that former employees of an entity
> may be contacted without consulting with the entity's attorney
> because the former employees are no longer in positions of
> authority and cannot bind the entity.
>
> However, Comment [7] also states that "[i]n communicating with a
> current or former constituent of an organization, a lawyer must not
> use methods of obtaining evidence that violate the legal rights of
> the organization.  See Rule 4.4."  Rule 4.4, in turn, provides that a

lawyer must not use means of obtaining evidence that violate the legal rights of a third person.  The comments to Rule 4.4 specifically identify "unwarranted intrusions into privileged relationships, such as the client-lawyer relationship."  ABA Formal Opinion 91-359 indicated this means that the lawyer communicating with a former employee of a represented entity "must be careful not to seek to induce the former employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as former employee with his or her former employer's counsel are protected by the privilege . . . Such an attempt could violate Rule 4.4."

\* \* \*

Finally, . . . it is possible the Former Employee has sought . . . completely independent representation from another attorney. Comment [8] to Rule 4.2 indicates that if the Former Employee makes statements during the Lawyer's communication with Former Employee suggesting that Former Employee has independent representation, Lawyer cannot ignore these statements but instead should confirm whether the Former Employee is represented.

\* \* \*

A lawyer may communicate with a represented organization's former employee so long as the former employee has not obtained independent representation, either from the organization's attorneys or a different attorney and so long as the lawyer does not try to elicit privileged information from the former employee.

S.D. Comm. On Ethics, Formal Op. 22-07 (2022) (citations omitted).

The South Dakota opinion is in accordance with the ABA's Formal Opinion 91-359, holding that "a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating ABA Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer . . . but must be careful not to seek to induce the former employee to violate the privilege attaching to

attorney-client communications to the extent his or her communications as a former employee with his or her former employer's counsel are protected by the privilege." Both opinions require the attorney making contact with the unrepresented former employee to identify their "role in the matter giving occasion for the contact, including the identity of the lawyer's client and the fact that the witness's former employer is an adverse party." ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 91-359, p. 6 (1991).

**B.    Case Law**

The Eighth Circuit has held that ABA ethics opinions are not binding on the court. Plummer v. McSweeney, 941 F.3d 341, 350 (8th Cir. 2019). Instead, on-point cases from the jurisdiction in which the ethics rule applies, along with the rule itself, are the relevant authority. Id.

South Dakota interpreted SD Rule 4.2 in Matter of Discipline of Olson, 537 N.W.2d 370 (S.D. 1995). In that case, the court affirmed the finding of the Disciplinary Board of the State of South Dakota that a state court prosecutor had violated SD Rule 4.2 by communicating directly with a defendant without the defendant's lawyer present, smuggling cigarettes to the defendant while incarcerated, and having the defendant ride alone with the prosecutor in the prosecutor's car to the jail. Id. at 371, 374.

In Citibank (S.D.), N.A. v. Hauff, 668 N.W.2d 528, 536 n.6 (S.D. 2003), the court held that SD Rule 4.2 did not prohibit represented *parties* from communicating directly with each other. In Midwest Motor Sports v. Arctic Sales, Inc., 347 F.3d 693, 697-98 (8th Cir. 2003), the court held that attorneys

who hired an investigator who spoke to an opposing represented company's currently employed president violated SD Rule 4.2.  None of these cases clarify how SD Rule 4.2 governs a lawyer's contact of a former employee of a represented business entity.

The court in Bryant v. Yorktowne Cabinetry, Inc., 538 F. Supp. 2d 948 (W.D. Va. 2008), squarely addressed the issue presented here.  In that case, counsel for the plaintiff in an employment discrimination lawsuit contacted the former human relations manager for the defendant-employer seeking to learn facts related to plaintiff's termination.  Id. at 948.  Learning of this contact, the employer sought a blanket order prohibiting plaintiff's counsel from contacting any of the employer's former employees, especially management-level former employees.  Id. at 950.  The court applied Virginia Rule of Prof'l Conduct, Rule 4.2 ("VA Rule 4.2")[3] and held that the ethical rule did not prohibit contact with former employees, even those formerly management-level employees.  Id. at 950-53.  In so doing, the court noted VA Rule 4.2 had been amended in 2002 to specifically address the situation of contact with former employees and, thus, the court distinguished cases decided prior to 2002 which came to opposite conclusions.[4]  Id.  See also Wallace v. Valentino's of Lincoln, Inc.,

---

[3] Virginia's Rule 4.2 is identical to ABA Rule 4.2 and SD Rule 4.2 and states: "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

[4] For this reason, the court does not discuss the many cases cited by the parties decided before the 2002 amendment to VA Rule 4.2.

No. 4:01CV3262, 2002 WL 31323811, at * 2-3 (D. Neb. Oct. 17, 2002) (holding plaintiff's contact of defendant's former manager did not violate Rule 4.2).

Even though the court held plaintiff's attorney was free to contact former employees, the court noted the restrictions on such contact:  the attorney could not elicit statements that were to be imputed to the former employer, the attorney could not contact former employees who were represented, and the attorney could not inquire into any matter that was privileged or confidential or otherwise a "violat[ion] of the legal rights" of the former employer.  Bryant, 538 F. Supp. 2d at 950-53.

Although the court denied the employer's motion for an order forbidding contact with former employees, the court issued guidelines for the attorney in making such contact.  Id. at 953-54.  The court adopts that approach.

## CONCLUSION

This court concludes that SD Rule 4.2 does not prohibit Omega's lawyer from contacting Dr. Stark, a former upper-level employee of plaintiff.  However, like the court in Bryant, this court concludes some guidelines are in order. The court notes that Omega, too, is a business organization and plaintiff's counsel may wish to contact former Omega employees as well.  Therefore, the following rules apply to both parties to this litigation:

> 1.   Upon contacting any other former employee of plaintiff or Omega, that party's counsel shall immediately identify themselves as the attorney representing the defendant/plaintiff in this action and specify the purpose of the contact.

9

2.     The party's counsel shall ascertain whether the former employee is represented by counsel.  If so, the contact must terminate immediately.  Here, the parties acknowledge pending litigation in German courts between plaintiff and Dr. Stark.  It would be prudent for Omega's counsel to contact counsel for Dr. Stark in that litigation first (if counsel exists) and find out the scope of the representation and whether counsel in this other pending litigation consents to have Dr. Stark speak to Omega's counsel.

3.     Counsel for plaintiff/defendant must inform the former employee that (a) participation in the interview is entirely voluntary and that (b) they may choose not to participate or to participate only in the presence of counsel.  Counsel must immediately terminate the interview if the former employee does not wish to participate.

4.     Counsel must inform the former employee to avoid the disclosure of any privileged or confidential corporate information. Counsel shall not attempt to solicit privileged or confidential information and shall terminate the interview if it appears the former employee may reveal privileged or confidential matters.

5.     Counsel shall create and preserve a list of all former employees contacted, the dates of contact, and preserve any and all statements or notes resulting from such contacts.  Such notes may be subject to *in camera* review to ensure compliance with these guidelines.

See, e.g., Bryant, 538 F. Supp. 2d 954-55.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in

the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

      DATED this 27th day of January, 2023.

                  BY THE COURT:

_____

VERONICA L. DUFFY
United States Magistrate Judge