UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION FOR MORE DEFINITE STATEMENT |

Plaintiff, Buergofol GmbH, alleges that defendant, Omega Liner Company, Inc., is infringing two of its patents – the '882 Patent and the '269 Patent. Docket 1. Omega initially moved to dismiss both claims of infringement under Rule 12(b)(6), but later withdrew its motion as to the '882 Patent. Dockets 15, 16; Docket 26 at 4. Alternatively, Omega moves for a more definite statement under Rule 12(e). Docket 15; Docket 16 at 5, 22. Buergofol opposes both motions. Docket 18.

## BACKGROUND

The facts, as alleged in the complaint, are as follows:

Buergofol owns "the entire right, title and interest in and to" U.S. Patent No. 8,794,269, entitled "Multi-Layer Film Permeable To UV Radiation." Docket 1 ¶¶ 16, 18. The '269 Patent describes an "insertion tube," which is commonly referred to as a pipe liner, that can be used to renovate subterranean pipes, such as sewer pipes. *Id.* ¶ 19. The insertion tube has three layers: "1) an

internally situated tube, 2) a support material saturated with a reactive synthetic resin, and 3) an externally situated tubular film." *Id.*

Instead of digging up a sewer pipe in need of repair, the insertion tube, "in collapsed and deflated form, can be pulled through the pipe when the pipe is in place in the ground." *Id.* ¶ 20. Then, the insertion tube is "expanded so that the outer externally situated tubular film of the insertion tube expands outward and makes good contact with the inner surface of the sewer pipe." *Id.* "A source of UV radiation and/or short-wave visible light is then moved through the insertion tube." *Id.* When the UV radiation or short-wave visible light "reaches the synthetic resin" inside the middle layer of the insertion tube, it "caus[es] the resin to cure and harden." *Id.* After the resin is cured and hardened, the internally situated tubular film "is pulled away from the support material of the insertion tube, such that [it] releases and peels off from the support material portion," and then is "withdrawn from the renovated sewer pipe." *Id.*

To prevent the UV curable resin from hardening prematurely, the externally situated tubular film "reflects and/or absorbs UV radiation and/or short-wave light." *Id.* ¶ 21. The internally situated tubular film, however, must be "at least to some extent permeable to UV radiation" so that the UV radiation source can reach and harden the UV curable resin in the middle layer. *Id.* ¶ 22. "[I]n the prior art there were problems and difficulties associated with" having the inner film be both permeable to UV radiation and able "to withstand the high loads that arise during pipe renovation." *Id.* ¶ 23. The '269 Patent

addresses these difficulties through the multi-layer film used for the inner tubular film. *Id.*

Buergofol alleges that Omega "sold and/or continues to sell, offer for sale[,] and manufacture multiple different models of an ultraviolet cured-in-place pipe (CIPP) lining named the 'Omega Liner,' which has an inner film, an external film, and a carrier material (between the inner and external films) that contains an active resin." *Id.* ¶ 24. Buergofol alleges that one of these Omega Liner models "literally infringes claim 1 of the '269 Patent because the Omega Liner embodies each and every element recited by claim 1" of the '269 Patent. *Id.* ¶ 45.

> Claim 1 of the '269 Patent recites:
>
> An insertion tube suitable for the renovation of subterranean pipes, optionally subterranean sewer pipes, comprising
> > an optionally nonconditioned multilayer film that is impermeable to liquids and that is at least to some extent permeable to UV radiation, comprising a layer sequence made of
> > > (a) a layer (a) comprised of at least one thermoplastic olefin homo- or copolymer, as one of the external layers,
> > > (b) an adhesive-promoter layer (b),
> > > (c) an internally situated layer (c) comprised of at least one homo- and/or copolyimide,
> > > (d) an adhesive-promotor layer (d), and
> > > (e) a layer (e) comprised of at least one homo- and/or copolyamide, as one of the external layers,
> >
> > in the form of a tubular film,
> > wherein the VICAT softening point of the thermoplastic olefin homo- or copolymer of the layer (a) is at least 100° C,
> > an internally situated tube, and
> > an externally situated single- or multilayer tubular film which is impermeable to liquids, and which reflect and/or absorbs UV radiation and/or short-wave, visible light, as externally situated tube, and

> a support material situated therebetween and saturated with a reactive synthetic resin.

Docket 1-2 at 11; Docket 1 ¶ 23. Buergofol alleges that Omega is infringing the '269 Patent through Omega's 7-layer liner, which it has advertised in a brochure. Docket 1 ¶ 45; Docket 1-4 at 2-3.

## LEGAL STANDARD

The "Federal Circuit provides controlling precedent on substantive legal issues when a plaintiff's complaint asserts a claim arising under federal patent law." *HydraAssist LLC v. RK P'ship LLC*, No. 4:22-CV-04004-RAL, 2022 WL 10552362, at *2 (D.S.D. Oct. 18, 2022) (citing *Schinzing v. Mid-States Stainless, Inc.*, 415 F.3d 807, 811 (8th Cir. 2005)). Eighth Circuit law "controls on procedural issues raised by a motion to dismiss a patent infringement action." *Id.* (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1346 (Fed. Cir. 2018)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In a patent infringement case, the plaintiff must do more than "recit[e] the claim elements and merely conclud[e] that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Instead, "[t]here

4

must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.*

But "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Id.* at 1352. A patent infringement claim will survive a motion to dismiss so long as the plaintiff places the alleged infringer on notice of the product that is being accused of infringement. *See id.* Inferences are construed in favor of the non-moving party. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)). A well-pleaded complaint should survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556 (internal quotation omitted).

Although courts must generally ignore materials outside the pleadings when considering a Rule 12(b)(6) motion, courts can "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[,]' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1377 (3d ed. 2004)).

**DISCUSSION**

I. **Buergofol Has Plausibly Alleged Infringement of the '269 Patent**

Buergofol alleges that Omega has infringed the '269 Patent "by making, using, selling, and offering for sale . . . pipe liners that fall within the scope of at least one claim of the '269 Patent[.]" Docket 1 ¶ 54.

 A. **The Complaint Does Not Plausibly Allege Infringement of the '269 Patent Through an Offer for Sale**

Omega argues that the claim for infringement for the '269 Patent should be dismissed because "Buergofol alleges Omega infringes claim 1 of the '269 Patent based entirely on a purported product identified in a brochure" that lacks any price terms, and thus cannot be an offer for sale. Docket 16 at 15-16.

For an "offer for sale" to constitute infringement, it "must meet the traditional contract law definition of that term." *Superior Indus., LLC v. Thor Glob. Enters. Ltd.*, 700 F.3d 1287, 1294 (Fed. Cir. 2012). Thus, the offer for sale "must communicate a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* (quoting *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005)). "Communications that describe the allegedly infringing materials but 'do not contain any price terms . . . on their face . . . cannot be construed as an "offer" which [the offeree] could make into a binding contract by simple acceptance.' " *Id.* (alterations in original) (quoting *MEMC Elec. Materials*, 700 F.3d at 1376).

The brochure does not contain any price terms.[1] Docket 1-4. Buergofol does not allege any other facts to support a reasonable inference that Omega made an offer for sale including price terms. *See generally* Docket 1. Because price terms are necessary for an offer for sale, Buergofol does not plausibly allege that Omega infringed the '269 Patent via an offer for sale, and Omega's motion to dismiss as to this method of infringement is granted.

### B. Buergofol Has Plausibly Alleged That Omega Infringed the '269 Patent Through Other Methods

Buergofol alleges that Omega infringed the '269 Patent "by making, using, [and] selling . . . pipe liners that fall within the scope of at least one claim of the '269 Patent[.]" Docket 1 ¶ 54. These are alternative methods of proving patent infringement. *See* 35 U.S.C. § 271(a). Omega argues that the '269 Patent infringement claim should be dismissed because it asserts that it has never made the liner depicted in the brochure that Buergofol uses to support this claim. *See* Docket 16 at 15, 19; Docket 26 at 9-12. Omega also argues that Omega has not sufficiently pleaded that an Omega liner has an inner film with a polyamide layer or with the five-layer sequence recited in Claim 1 of the '269 Patent. Docket 16 at 17-19.

---

[1] Omega disputes that the brochure is an offer for sale and argues that it has never made a product depicted in the brochure, but it does not dispute the authenticity of the brochure. Docket 16 at 15. The court can thus consider this brochure in ruling on Omega's 12(b)(6) motion. *Miller*, 688 F.3d at 931 n.3.

7

1. **It Is Reasonable to Infer That Omega Made the Liner Advertised in Its Brochure**

The brochure advertising Omega's UV CIPP liners states that the liners are "Made in the USA," that the liners are "here and ready to ship anywhere in North America in a matter of days[,]" and that Omega's "centralized location means you get product and support faster in the U.S.A. and Canada[.]" Docket 1-4 at 2-3. Omega argues that "Made in the USA" is merely "a well-recognized and often-used marketing phrase that companies employ to generally describe their product lines to attract domestic customers[,]" and not a phrase from which the court can infer Omega did in fact make the liner depicted in the brochure. Docket 26 at 12. The court disagrees, particularly when "Made in the USA" appears on a brochure with the announcement that liners are "here and ready to ship" and that Omega's "centralized location" means customers will receive the product "faster." Docket 1-4 at 2-3. From these statements, it is reasonable to infer that Omega manufactured the product it advertised in its brochure.

2. **Buergofol Has Sufficiently Pled That an Omega Liner Infringes the '269 Patent**

Omega argues that Buergofol's assertions about an Omega liner that includes the five-layer sequence recited in Claim 1 of the '269 Patent are too conclusory and speculative to survive a motion to dismiss. Docket 16 at 17-22. Specifically, Omega points to its brochure's description of the liner as including polyam*ine* layers, *id.* at 17-19; Docket 1-4 at 3, whereas the '269 Patent recites

8

two polyam*ide* layers. Docket 1-2 at 11. Additionally, Omega argues that Buergofol alleges no facts from which the court could reasonably infer that the liner advertised in Omega's brochure has the layer sequence that Buergofol claims it does – PA/AP/PA/AP/PE/PE/PE.[2] Docket 116 at 19-22; Docket 1 ¶¶ 49, 50.

Buergofol counters that "[i]t is plausible that an employee of Omega incorrectly interpreted the listed ingredient 'PA' on the data sheet [that Buergofol previously sent to Omega] to be 'polyamine' instead of 'polyamide' or simply made a typographical error . . . ." Docket 18 at 19. But Buergofol did not make these allegations in its complaint, and these specific conclusions are too speculative.

Buergofol has, however, still plausibly alleged that Omega's advertised liners contain polyamide layers. Although Omega's brochure describes the layers as polyamine, a technical data sheet from Omega, which was attached to the complaint,[3] describes the inner foil of Omega's liner as "PE/PA" and the outer foil as "PE/PA/PE." Docket 1-5 at 7. These are the same abbreviations used in the '269 Patent, which repeatedly uses "PA" as an abbreviation for polyamide,

---

[2] Buergofol uses PA to refer to polyamide layers, AP to refer to adhesion promotor layers, and PE to refer to polyethylene layers. Docket 1 ¶ 49.

[3] As with the brochure, Omega does not dispute the authenticity of this product information sheet, allowing the court to consider it in ruling on the motion to dismiss. *See generally* Docket 16; *Miller*, 688 F.3d at 931 n.3.

9

and not for polyamine. *See* Docket 1-2 at 6, 10. Buergofol also tested an Omega liner that it obtained, and this liner contained a layer of polyamide, but no polyamine layers.[4] From these facts, it is plausible that the liners advertised in Omega's brochure contain polyamide layers.

The court finds similarly regarding Buergofol's allegation about the precise layer sequence of Omega's advertised liner. Buergofol alleges no facts from which one could reasonably infer that the two layers included in Omega's 7-layer liner that are not recited in Claim 1 of the '269 Patent are both polyethylene and that those layers are in the sequence position that Buergofol alleges. But Buergofol only needs to plausibly allege that the Omega liners have the five layers recited in Claim 1. As described above, it is plausible that the Omega liner contains polyamide layers, and the brochure itself states that the Omega liner also contains polyethylene layers. Docket 1-4 at 3. The remaining layers recited in the '269 Patent are adhesive promotor layers that are between the polyamide and polyethylene layers. Docket 1-2 at 11. And Buergofol alleges that the Omega liner it obtained had adhesion promotor layers between the polyamide and polyethylene layers. Docket 1 ¶ 30. These factual allegations,

---

[4] Buergofol does not allege that the Omega liner it obtained infringes the '269 Patent; this sample forms the basis of Buergofol's '282 Patent infringement claim. *See* Docket 1 ¶ 35. Instead, Buergofol argues that one can draw reasonable inferences about Omega liners that allegedly infringe the '269 Patent from the materials used in and the properties of the obtained liner that allegedly infringes the '282 Patent. *See* Docket 1 ¶¶ 48-53; Docket 18 at 16-17, 19.

"when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC*, 4 F.4th at 1353.

At this stage, Buergofol "is not required to plead infringement on an element-by-element basis." *Id.* at 1352. Instead, Buergofol need only give Omega notice of what product is accused of infringement. *See id.* Buergofol has provided this notice by pointing to Omega's brochure. Thus, Omega's motion to dismiss the '269 infringement claim is denied as to methods of infringement other than an offer for sale.

## II.   A More Definite Statement Under Rule 12(e) Is Not Warranted

Omega asks the court to "require Buergofol to file a more definitive statement so that Omega can provide a meaningful response and construct its defenses." Docket 16 at 22. Omega claims that because of Buergofol's "deficient factual allegations in the Complaint, Omega is unable to prepare a responsive pleading answering Buergofol's allegations or asserting its defenses because . . . it lacks an understanding of how the allegedly accused products correspond to or meet the elements of the patent claims of the patents-in-suit." *Id.*

Federal Rule of Civil Procedure 12(e) provides that a party may move for a more definite statement when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Such a motion must "point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). A motion under Rule 12(e) is "generally disfavored in light of liberal discovery

11

available under the federal rules and granted only when a party is unable to determine the issues requiring a response." *Broin & Assocs. v. Genencor Int'l, Inc.*, 232 F.R.D. 335, 340 (D.S.D. 2005) (quoting *Shaffer v. Eden*, 209 F.R.D. 460, 464 (D. Kan. 2002)). "A Rule 12(e) motion must be balanced with the requirement in Rule 8(a) that the pleading be 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* at 341.

Here, Buergofol's complaint is not "so vague or ambiguous that [Omega] cannot reasonably prepare a response." *See* Fed. R. Civ. P. 12(e). In Omega's motion-to-dismiss briefing, it disputed facts alleged in the complaint and asserted defenses to Buergofol's allegations. *See, e.g.*, Docket 16 at 7 (asserting that the Omega liner Buergofol obtained and tested "used Buergofol's own outer/inner film which Omega purchased directly from Buergofol . . . and thus was exempt from claims of infringement under the patent exhaustion doctrine"); *id.* at 19 (asserting that Omega has "never made or sold" the liner advertised in its brochure); Docket 26 at 5 (asserting that Buergofol sold Omega the 7-layer liner depicted in the brochure and thus this claim should also fail under the patent exhaustion doctrine). Thus, the court finds that Omega can prepare a responsive pleading, and its motion for a more definite statement is denied.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that Omega's motion to dismiss is granted to the extent the complaint alleges infringement via an offer for sale but is otherwise denied.

IT IS FURTHER ORDERED that Omega's motion for a more definite statement is denied.

Dated June 21, 2023

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE