UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>　　　　　　　　Plaintiff,<br>vs.<br>OMEGA LINER COMPANY, INC.,<br><br>　　　　　　　　Defendant. | 4:22-CV-04112-KES<br><br>ORDER GRANTING MOTION TO COMPEL AND FOR ATTORNEYS' FEES |

　　Plaintiff, Buergofol GmbH, alleges that defendant, Omega Liner Company, Inc., has infringed two of its patents. Docket 1. Omega moves to compel Buergofol to respond to Interrogatory Four and Request for Production Thirteen and for attorneys' fees. Docket 62; Docket 63 at 15. Buergofol opposes both motions. Docket 68. For the following reasons, the court grants the motion to compel and the motion for attorneys' fees.

## BACKGROUND

　　On November 23, 2022, Omega served Buergofol with its first set of interrogatories and first set of requests for production. Docket 64 ¶¶ 2-3; Docket 64-1 at 5; Docket 64-2 at 8. Interrogatory Four asked Buergofol to "[i]dentify every item of PRIOR ART to each of the PATENTS-IN-SUIT now known to BUERGOFOL." Docket 64-1 at 5. Request for Production Thirteen asked for "[a]ll documents and things in the possession, custody or control of BUERGOFOL that could qualify as PRIOR ART to either of the PATENTS-IN-SUIT." Docket 64-2 at 7. In both requests, "prior art" was defined as "in

accordance with the meaning given to the term in Title 35 of the United States Code, and interpretations thereof provided by the federal judiciary." Docket 64-1 ¶ G; Docket 64-2 ¶ I.

Buergofol served its responses to both on December 23, 2022. Docket 64 ¶¶ 4-5; Docket 64-3 at 14; Docket 64-4 at 14. For Interrogatory Four, Buergofol did not identify items of prior art because the "request [was] absurdly overbroad," "unduly burdensome," and "unanswerable." Docket 64-3 at 11-12. For Request for Production Thirteen, Buergofol likewise did not produce any documents or things that qualified as prior art because the request was "absurdly overbroad," "unduly burdensome," and thus not "warrant[ing] a response." Docket 64-4 at 11-13.

In an email to Buergofol on December 27, 2022, Omega clarified the definition of prior art "[t]o ensure there is no misunderstanding going forward," defining it as "all documents, information, acts, or things that qualify as prior art under any subsection of 35 U.S.C. §§ 102 and 103, including all systems, methods, apparatus, publications, patents, or uses." Docket 64-6 at 6. Omega requested that the parties meet and confer about Buergofol's responses to Omega's discovery requests at the same time that the parties did so about Omega's responses to Buergofol's discovery requests. *Id.*

Buergofol did not respond to this clarified definition, other than to insist that it would not meet and confer about discovery requests from both parties at the same time. *See id.* at 2-3. On December 28, 2022, Omega suggested three

2

times to meet and confer on all outstanding discovery issues, but Buergofol again insisted that it would not do so. *Id.* at 2.

On January 18, 2023, Omega emailed Buergofol again. Docket 69-1 at 3-4. In this email, Omega again clarified the definition of prior art. To the end of the definition provided in the December 27 email, Omega appended the following:

> "PRIOR ART" includes any references that are reasonably related to the claimed invention of the patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve the problem addressed by the patent.

*Id.* at 4. This email also noted that "[t]he '269 Patent identifies the field of invention as relating to 'multilayer film that is impermeable to liquid and that is at least to some extent permeable to UV radiation[,]' " and that the '882 Patent "identifies the field of invention as related to 'a tubular film with one or more layers.' " *Id.* The email also noted the "other applicable fields" that are identified in the '882 Patent. *Id.* Omega then offered two days on which it was available to meet and confer. *Id.*

Buergofol responded later that same day, maintaining that the original interrogatory was "ridiculously overbroad," that Buergofol was "not going to rewrite [Interrogatory Four], and then answer [their] own interrogatory[,]" and that "Buergofol only has an obligation to respond or object to interrogatories as served." *Id.* at 2-3. Buergofol claimed that under Omega's initial definition of prior art, a complete response to Interrogatory Four would include the office building one of Omega's counsel used to work in, nearly "all books that are in

3

the Library [o]f Congress[,]" and "all objects that were 'on sale' in the United States more than one year before the earliest effective filing date [of] the '269 Patent . . . ." *Id.* at 2.

The parties held a telephone conference on January 28, 2023, to discuss Interrogatory Four and Request for Production Thirteen. Docket 64 ¶ 9; Docket 69 ¶ 7. Buergofol again insisted that it "would not apply the definition of prior art that Omega provided" in the January 18 email, "asserting that Buergofol was required to respond to the discovery requests only as written." Docket 64 ¶ 9. Buergofol informed Omega that "Omega would need to propound a new interrogatory if Omega wanted discovery regarding prior art." *Id.* Buergofol also maintained that Omega's revised definitions of prior art "would do nothing to make the propounded discovery any less overbroad." Docket 69 ¶ 7. Omega filed the motion to compel and for attorneys' fees on February 13, 2023. Docket 62.

## DISCUSSION

### I. The Meet-and-Confer Requirement

Federal Rule of Civil Procedure 37(a)(1) requires that a party moving to compel discovery responses "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Likewise, South Dakota Civil Local Rule of Procedure 37.1 requires "[a] party filing a motion concerning a discovery dispute" to "file a separate certification describing the good faith efforts of the parties to resolve the dispute."

4

The meet-and-confer requirement is not an empty formality. *Pierce v. Fremar, LLC*, No. CIV. 09-4066-KES, 2010 WL 3420169, at *1 (D.S.D. Aug. 27, 2010) (citation omitted). The parties "must make genuine efforts to resolve the dispute by determining precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999); *see Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 4:20-CV-04058-KES, 2023 WL 356121, at *3 (D.S.D. Jan. 23, 2023) (" 'Good faith' requires that the parties ma[ke] a genuine attempt to resolve the discovery dispute without involving the court." (citing *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 170-71 (D. Nev. 1996))).

Omega filed a certification that the parties "made a good faith effort to resolve the pending discovery without the Court's intervention." Docket 65. It supported this certification with a declaration from counsel and emails between the parties. *See* Docket 64; Docket 64-6; Docket 64-7. As the party moving to compel, the burden is on Omega to show that it has conferred or attempted to confer in good faith, and the court finds that it has met this requirement.

The court finds, however, that Buergofol's insistence that it was under no obligation to respond to Omega's requests using the revised definitions of prior art that Omega provided, demonstrates that Buergofol was not conferring in good faith. The purpose of the meet-and-confer process is for the parties to

avoid the need for judicial intervention by clarifying or narrowing requests and objections. *See Cotracom Commodity Trading Co.*, 189 F.R.D. at 459; *Donaldson Co., Inc. v. Fleetguard, Inc.*, 2005 WL 8163190, at *14 (D. Minn. Aug. 19, 2005) ("The meet-and-confer process . . . would have no meaning if the response to any proposed compromise is that the compromised language was not sought in the discovery that prompted the need for the conference in the first place."). Indeed, around the same time that Buergofol was insisting that it would not consider Omega's revised definitions absent a newly served interrogatory, Omega supplemented one of its discovery responses based on Buergofol's clarification of an interrogatory. *See* Docket 143 at 4, 8. By failing to meaningfully consider either of Omega's revised definitions of prior art, Buergofol was not conferring in good faith. The court will analyze the motion to compel using the definition of prior art put forward by Omega in its January 18 email.

**II.    Motion to Compel**

    **A. Scope of Discovery Under Rule 26**

Under Federal Rule of Civil Procedure 26, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The scope of discovery under Rule 26(b) is extremely broad." *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 348 (D.S.D. 2013). "Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, an issue that is or may be in the case.'" *EEOC v. Woodmen of the World Life Ins. Soc'y*, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)). Discovery requests "should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Id.* at *1 (citing *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D.D.C. 2005)).

"The requesting party must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." *Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Ct.*, 316 F.R.D. 254, 263-64 (D.S.D. 2016) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* at 264 (quoting *Woodmen*, 2007 WL 1217919, at *1).

Once this threshold showing has been made, then the burden shifts to the party resisting discovery "to show specific facts demonstrating that the discovery is irrelevant or disproportional," and it must do so with a "specific showing of reasons *why* the particular discovery should not be had." *Id.*

7

(citation omitted). "[M]ere conclusory objections that something is 'overly broad, burdensome, or oppressive,' is insufficient[.]" *Id.*

As many courts have held, "the fact that answering [discovery requests] will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate." *Brown Bear v. Cuna Mut. Grp.*, 266 F.R.D. 310, 320-21 (D.S.D. 2009) (collecting cases holding the same). "Unless the task of producing or answering is unusual, undue[,] or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Lillibridge v. Nautilus Ins. Co.*, No. CIV. 10-4105-KES, 2013 WL 1896825, at *6 (D.S.D. May 3, 2013) (quoting *Cont'l Ill. Nat'l Bank & Tr. Co. of Chi. v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991)).

### B. Interrogatory Four and Request for Production Thirteen Request Relevant Information

Interrogatory Four and Request for Production Thirteen request that Buergofol identify all items of prior art to the patents-in-suit known to Buergofol and produce any items of prior art that Buergofol has in its custody or control, respectively. Docket 64-1 at 5; Docket 64-2 at 7. Omega claims that prior art is relevant because it relates to Omega's potential defenses that the patents-in-suit are invalid or unenforceable. *See* Docket 63 at 11 (citing *Embs v. Jordan Outdoor Enters. Ltd.*, 2005 WL 8162598, at *3 (S.D. Ohio Apr. 4, 2005)). Although Buergofol argues that the scope of the requested prior art is overly broad, it does not dispute that prior art is relevant. *See* Docket 68 at 15 ("It is true that as an attorney for a defendant in a patent infringement case, it would be performance below the standard of care not to serve discovery on the

8

patentee asking for all potentially-invalidating prior art of which the patent plaintiff is aware."). The court agrees that identification and production of prior art is relevant. *See, e.g., Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1342-43 (Fed. Cir. 2005) (discussing unenforceability due to failure to disclose known prior art to the Patent & Trademark Office); *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365-69 (Fed. Cir. 2002) (discussing prior art's relevance to an infringement defense).

### C. Interrogatory Four and Request for Production Thirteen Are Not Overbroad or Unduly Burdensome

#### 1. The Broad Categories in § 102 Do Not Render the Discovery Requests Overbroad

Buergofol argues that Omega's discovery requests are overly broad because the definition of prior art encompasses "all subject matter that existed before the U.S. filing date in the form of one of the categories of disclosures enumerated in 35 U.S.C. § 102." Docket 68 at 8. The categories listed in Section 102, which is concerned with novelty, are used to identify a type of prior art known as "anticipatory prior art." *See, e.g., Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1337 (Fed. Cir. 2010) (describing requirements for a reference to qualify as anticipatory prior art under § 102); *see* 35 U.S.C. § 102 (2002)[1] ("Conditions for patentability; novelty and loss of

---

[1] Buergofol claims that "[d]ue to the particular priority dates of the patents-in-suit, the applicable version" of the relevant statutory sections "is the so-called 'pre-AIA' version (referring to the America Invents Act that went into effect on March 16, 2013)." Docket 68 at 6. Omega has not "verified" the effective filing date of the patents-in-suit but does not object to using the pre-AIA versions of 35 U.S.C. §§ 102 and 103 "solely for the purposes" of the motion to compel. Docket 71 at 3 n.1. Because the court finds that the analysis is the same under

9

right to patent"). According to Buergofol, there is no "relevance test" or "limit on how old a prior art object or a prior art document might be." Docket 68 at 8-9. Thus, Buergofol claims that Omega's requests require it to identify everything from the Statue of Liberty to the Gutenberg Bible as prior art. *Id.* at 7-9 (stating that under § 102(b), everything described in a printed publication anywhere in the world more than one year before the effective U.S. filing date or in public use or on sale in the United States before the effective U.S. filing date qualify as prior art).

But as Omega points out, something is only anticipatory prior art if it "fully describes all of the elements of a patent claim[.]" Docket 71 at 4 (citing *In re Schreiber*, 128 F.3d 1473, 1477-78 (Fed. Cir. 1997)); *Verdegaal Bros., Inc. v. Union Oil Co. of Calif.*, 814 F.2d 628, 631 (Fed. Cir. 1987) ("A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference."). Thus, because the Statue of Liberty and the Gutenberg Bible do not contain an "inner tubular film," an element in Claim 1 of both patents-in-suit, neither qualifies as anticipatory prior art under § 102. *See* Docket 71 at 5; Docket 1-1 at 14; Docket 1-2 at 11.

Omega's initial discovery requests define prior art according to "the meaning given in the term in Title 35 of the United States Code, and interpretations thereof provided by the federal judiciary." Docket 64-1 ¶ G;

---

either version, all citations to §§ 102 and 103 in this opinion are from the pre-AIA version. The court does not make a finding regarding the filing dates of the patents-in-suit.

Docket 64-2 ¶ I. Omega later clarified that this definition was referring specifically to §§ 102 and 103 in Title 35. *See* Docket 64-6 at 6; Docket 69-1 at 4. Although § 102 includes several broad categories of items that could deprive an invention of the novelty required to be patentable, federal courts have consistently held that "[t]o anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *See, e.g.*, *In re Schreiber*, 128 F.3d at 1477; *see* 35 U.S.C. § 102. Because this limitation was implicitly incorporated into Omega's definition of prior art, the broad categories in § 102 do not render Interrogatory Four or Request for Production Thirteen overbroad.

### 2. The Inclusion of Analogous Prior Art Does Not Render the Discovery Requests Overbroad

Buergofol argues that Omega's discovery requests are overbroad because Omega's definition of prior art also includes analogous prior art, and determining whether something qualifies as analogous prior art "often involves ambiguities and factual assumptions flowing from a legal test that is easier to state than it is to apply." Docket 68 at 14. Thus, according to Buergofol, Omega's discovery requests, which require Buergofol to make judgment calls about analogous prior art, "would lack specificity and particularity as required by Rule 26 . . . ." *Id.* at 15.

The boundaries of analogous prior art are rooted in § 103, which is concerned with non-obviousness. *See* 35 U.S.C. § 103 (2004) ("Conditions for patentability; non-obvious subject matter"). If an item does not meet the requirements to be anticipatory prior art, it can still be considered analogous

11

prior art if the item is either: (1) "from the same field of endeavor," or field of invention, "regardless of the problem addressed" or (2) "not within the field of the inventor's endeavor, [but] still is reasonably pertinent to the particular problem with which the inventor is involved." *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004); *see* 35 U.S.C. § 103(a).

In its second clarification, Omega cited to the patents for each patent-in-suit to identify the fields of invention. Docket 69-1 at 4; Docket 1-1 at 5; Docket 1-2 at 5. And Omega pointed to language from the '882 Patent which it claimed identified other applicable fields. Docket 69-1 at 4; Docket 1-1 at 9. Omega thus concluded, using language paralleling § 103(a), that "in responding to Interrogatory No. 4, Buergofol should include prior art within the fields identified in the patents-in-suit and any other fields to which a person of ordinary skill in the field would look to solve the problem addressed by the patents-in-suit." Docket 69-1 at 4; *see* 35 U.S.C. § 103(a) (2004) ("A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious . . . to a person having ordinary skill in the art to which said subject matter pertains.").

Responding to the requests will undoubtedly involve "judgment call[s]," *see* Docket 68 at 15, but "[l]awyers are frequently called upon to make judgment calls—in good faith and consistent with their obligations as officers of the court—about what information is responsive to another party's discovery requests." *See EEOC v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D.

12

Ind. 2010). Because Buergofol's counsel has twenty years of patent experience and because Buergofol is the original patent applicant for the '882 Patent, the court expects Buergofol's counsel to be able to make such judgment calls. *See* Docket 50 ¶ 8; Docket 1-1 at 2. Thus, because Omega clarified that it was seeking analogous prior art, as defined in § 103 and interpreted by the federal judiciary, and Omega identified the relevant fields of invention, the court finds that the requests are not overbroad.

### 3. Buergofol Has Not Shown That the Requests Are Unduly Burdensome

Buergofol claims that answering the discovery requests would require it "to conduct short interviews of . . . one hundred of Buergofol's approximately 300 employees and agents and to ask them about all prior art to the patents-in-suit of which they are aware[.]" Docket 69 ¶ 4. Buergofol estimates this would cost "more than $60,000 of billable time plus expenses[.]" *Id.* After "copying, preparing physical documents[,] [and] generating pdf documents for production," the cost estimate rises to "more than $150,000 of billable time." *Id.*

These estimates appear to be based on Buergofol's interpretation of the discovery requests as so broad that they include the Statue of Liberty and the Gutenberg Bible. *See* Docket 68 at 5 (identifying "the discovery requests at issue" as the original requests); *id.* at 18 (explaining its position that a requesting party can only modify a discovery request via serving a new request); Docket 69-1 at 3 ("Buergofol only has an obligation to respond or object to interrogatories as served."). For the reasons described above, the

13

court has determined that the discovery requests at issue are the requests as clarified by Omega, and that these requests are not nearly as broad as Buergofol argues. Thus, the estimates provided by Buergofol likely overestimate the time and cost of responding to the requests by a significant degree.

Additionally, Buergofol is not starting from scratch in identifying prior art. As the original applicant for the '882 Patent, it had a duty to disclose information material to patentability, including prior art, when it applied for the patent. *See* 37 C.F.R. § 1.56(a); *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351-1355 (Fed. Cir. 2005). Thus, much of the prior art now known to Buergofol for the '882 Patent should already be compiled in some fashion. And although Buergofol was not the original applicant for the '269 Patent, there is likely overlap in prior art for each of the patents-in-suit, given their overlapping uses and similar claims. *See* Docket 1-1 at 14; Docket 1-2 at 12. These factors further lessen the time and cost burdens on Buergofol for responding to Omega's discovery requests. For these reasons, the court concludes that Buergofol has not shown that responding to the discovery requests would be unduly burdensome, and Omega's motion to compel is granted.

### III. Motion for Attorneys' Fees

#### A. Legal Standard

Omega moves for an award of attorneys' fees and expenses under Federal Rule of Civil Procedure 37(a)(5)(A). Under this Rule, "the court must—after giving an opportunity to be heard, require the party . . . whose conduct

necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees[,]" subject to certain exceptions. Relevant here is the exception that prohibits the court from awarding such fees and expenses if "the opposing party's nondisclosure, response, or objection was substantially justified[.]" Fed. R. Civ. P. 37(a)(5)(A)(ii).

"The party resisting sanctions bears the burden of showing that its position was substantially justified." *Mgmt. Registry, Inc. v. A.W. Cos.*, 2020 WL 1910589, at *13 (D. Minn. Apr. 20, 2020) (citing *Bah v. Cangemi*, 548 F.3d 680, 684 (8th Cir. 2008)). "[S]ubstantial justification means that 'reasonable minds could differ as to whether the party was justified in resisting the discovery sought.' " *Kirschenman v. Auto-Owners Ins.*, No. CIV 09-4190-KES, 2012 WL 1493833, at *1 (D.S.D. Apr. 27, 2012) (cleaned up) (quoting *Oyen v. Land O'Lakes, Inc.*, No. CIV 07-4112, 2009 WL 536606, at *3 (D.S.D. Mar. 3, 2009)). Where there is " 'plenty of law' on whether the information sought was discoverable, substantial justification" does not exist. *Id.* District courts have "wide latitude in discovery, including ordering a Rule 37 monetary award." *Id.*

### B. Buergofol Has Not Shown That Its Objections to the Discovery Requests Were Substantially Justified

In arguing that it was substantially justified in not responding to Omega's discovery requests, Buergofol merely restates that the requests were overbroad and that even if it had considered Omega's clarified requests, those

15

clarifications would not have made the requests any less broad. Docket 68 at 19-20. But there is "plenty of law" that prior art is discoverable. *See Kirschenman*, 2012 WL 1493833, at *1. Indeed, Buergofol concedes the relevance of such discovery. *See* Docket 68 at 15. And for the reasons described above, the court finds that "reasonable minds" would not differ as to whether Omega's discovery requests, as clarified, were as broad as Buergofol tried to make them seem.

Additionally, even if Buergofol's interpretation of the breadth of the requests was reasonable, Buergofol still had an obligation to respond to the extent it did not object. *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered . . . ."); Fed. R. Civ. P. 33(b) advisory committee's note to 1993 amendment ("Language is added . . . to emphasize the duty of the responding party to provide full answers to the extent not objectionable. If, for example, an interrogatory seeking information about numerous facilities or products is deemed objectionable, but an interrogatory seeking information about a lesser number of facilities or products would not have been objectionable, the interrogatory should be answered with respect to the latter even though an objection is raised as to the balance of the facilities or products."). Buergofol thus had a duty to respond to Interrogatory Four with known prior art that it deemed to be within the scope allowed by Rule 26. Instead, Buergofol has maintained throughout this dispute that it had no obligation to respond at all unless Omega served it with a new

16

interrogatory. This position was not substantially justified, and Omega's motion for attorneys' fees and expenses is granted.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that Omega's motion to compel (Docket 62) is granted. Buergofol must respond to Interrogatory Four and Request for Production Thirteen, as clarified in this order, within 21 days.

It is FURTHER ORDERED that Omega's motion for attorneys' fees is granted. Omega must file a motion and affidavit with proof of service setting forth the time reasonably spent on this motion, the hourly rate requested for attorneys' fees and costs, and any factual matters pertinent to the motion for attorneys' fees within 28 days of this order. Buergofol's objections to the allowance of fees are due within 21 days after receipt of service of Omega's motion and affidavit. Buergofol may, by counter affidavit, controvert any of the factual matters contained in Omega's motion and affidavit and may assert any factual matters bearing on the award of attorneys' fees. Omega will have 14 days after service of Buergofol's response to file a reply if it wishes to do so. D.S.D. Civil LR 54.1(C).

Dated July 13, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE