# Exhibit L

*July 6, 2023 Email from Lester Wallace After July 6, 2023 Meet-and-Confer*

| | |
|---|---|
| **From:** | lester imperiumpw.com |
| **To:** | Michael Neustel; Michelle Breit; Monte Bond; darien imperiumpw.com; ehertz@dehs.com; meghann@denevanfalon.com |
| **Subject:** | Untimely - "14 Days After The Subject Matter Of The Motion Arises" Has Passed |
| **Date:** | Thursday, July 6, 2023 8:53:16 PM |
| **Attachments:** | image002.png |

Dear Counsel,

The two-hour telephone call we had today was utterly unnecessary and a giant waste of our respective clients' money, with five lawyers spending two hours, and that two hours does not include the expensive preparation time. We should endeavor not to engage in such wastes of time in the future. Omega counsel, who insisted on the conducting the call, knew long ago about every single one of the alleged shortcomings with Buergofol's discovery responses (served back in March). Omega counsel has known of Buergofol's responses ==for more than three months==. If Omega were to file a discovery motion now it would be untimely because Judge Schreier has issued a scheduling order (Dkt. 136, page 8, paragraph 3) stating that a "motion to compel discovery" should be filed within 14 days of the subject matter of the motion arising. That time came and went. Omega knew about every one of its complaints months ago. In today's telephone call I told Michael Neustel and Michelle Breit that. Omega counsel is informed of that again here in this email. Trying to renew an old matter by scheduling a meet and confer is improper. Judge Schreier's order says "Motions to compel discovery should be filed within 14 days after the subject matter of the motion arises." The alleged discovery disputes arose long ago when Buergofol's responses were served. Even the scheduling order itself was entered more than 14 days ago.

Before the call, and repeatedly throughout the call, it was stated to Omega lawyers that Buergofol has produced all responsive documents (responsive to every single request, regardless of what the request says) in Buergofol's possession, custody and control that are not being withheld pursuant to privilege or work product or trade secret, to the best of Buergofol's attorneys' knowledge, after conducting a reasonable search. Omega lawyers ignore this statement. Rather, Omega lawyers make false statements and false accusations, over and over. It is unprofessional, wasteful and unnecessary for counsel to spend their client's good money in so-called meet and confers, listening to opposing counsel make false statements and accusations.

These calls follow a now-familiar pattern. Most always Mr. Neustel raises a request for production. Mr. Neustel then makes a false statement. And then based on his own false statement, Mr. Neustel makes his own conclusory assertion that is also false. The conclusory assertion has an accusatory angle to it implying that a Buergofol attorney has done something improper. This same pattern is repeated, for an hour or more, wasting everyone's time. A request for production might call for the production of XYZ documents. Mr. Neustel makes the false statement that he (Mr. Neustel) knows that a responsive XYZ document "exists" in some way. That statement is false. Mr. Neustel has no such knowledge, and Mr. Neustel should know that he has no such knowledge, but Mr. Neustel asserts the falsehood anyway. Then, in a familiar second sentence, Mr. Neustel adds a false accusatory conclusion based

on his own false statement. The false conclusion usually starts with the word "so". An example is "So, you are withholding the XYZ document." This pattern of a false statement of fact, followed by a false accusatory conclusion, is now familiar. Buergofol lawyers are quite sure that Mr. Neustel's erroneous foundational statements often stem from Mr. Neustel's ignorance of facts. It is a waste of everyone's time in a meet and confer for counsel to have to listen to and to respond to such falsehoods and false accusations. The false statement followed by false accusation scenario invariably elicits the same statement by the accused Buergofol attorney. The accused Buergofol attorney responds that Buergofol has produced all responsive documents in Buergofol's possession custody and control that are not being withheld on the basis of privilege or work product doctrine or trade secret. The Omega lawyer, usually Mr. Neustel, then typically wastes still more of everyone's time and money trying to interrogate the Buergofol lawyer in a kind of free-ranging 30(b)(6) deposition of counsel, insisting that the Buergofol counsel answer Mr. Neustel's questions to teach Mr. Neustel about facts of the case, or to "clarify" something. Mr. Neustel tries to use the meet and confer to learn factual information that he did not know before the meeting. It is an attempt to do fact discovery, from opposing counsel, in a meet and confer. There is no provision for that in the Federal Rules of Civil Procedure. This attempt to turn the meet and confer into a 30(b)(6) deposition of course fails. There is no requirement that an attorney in a meet and confer teach an opposing lawyer about facts of the case. If an Omega lawyer insists on feigning belief that a document exists that in fact does not exist, then that is the Omega lawyer's problem. Buergofol attorneys in a meet and confer are under no obligation to explain, to straighten out, or to correct an Omega lawyer's thinking or erroneous statement of fact. A meet and confer is not a deposition of counsel. Buergofol attorneys have repeatedly explained this to Omega attorneys. Nonetheless, the same familiar pattern then repeats for the next Rule 34 request for production.

**If Omega were to file a motion to compel complaining about old Buergofol discovery request responses served months ago, at a time well past the 14-day limit of Judge Schreier's order, then Omega counsel must be sanctioned** for the waste of time responding to such motion would entail. Omega has been told repeatedly that Buergofol has produced all responsive documents (responsive to every single request, regardless of what the request says) in Buergofol's possession, custody and control that are not being withheld pursuant to privilege or work product or trade secret. Buergofol has provided a privilege log. Neither Buergofol's production nor its privilege log needs supplementing at this time.

With respect to the interrogatory answers Omega raised today, Buergofol reviewed its answers before the call. Buergofol lawyers informed Omega that Buergofol's interrogatory answers are correct, but for one sentence to be added to Buergofol's answer interrogatory 6. When party verification (signature) of that one addition can be obtained, a supplemental answer will be served for interrogatory 6 but it will merely add one sentence to the answer already served. All interrogatory answers are otherwise complete and correct as far as Buergofol knows.

Neither the Court, nor Buergofol, should be bothered with an expensive motion to compel on **any of the old matters** that Omega lawyers tried to drag out today.

3. Motions to compel discovery should be filed within 14 days after the subject matter of the motion arises. Motions to compel discovery will not be filed until the parties have complied with D.S.D. LR 37.1.

The purpose of a meet and confer is not to try to interrogate an opposing attorney, but rather it is for the party with a proposed discovery motion to explain the proposed motion to opposing counsel. The legal basis of the proposed motion, as well as its factual underpinnings, are to be explained. Counsel are then to discuss the merit/lack of merit of each issue of the proposed motion, with the objective being to see if either counsel for movant or counsel for nonmovant comes to believe they have an untenable position. If counsel for a party comes to believe that the party's position on an issue is untenable, then that issue can be removed from contention. The discovery motion that goes to the court can thereby be narrowed. Or perhaps all issues can be conceded by counsel one way or another, thereby obviating the need to file any discovery motion whatsoever. That is why Buergofol counsel asks what the proposed discovery motion is. Today, Buergofol counsel tried to ask what Omega's proposed discovery motion was exactly, and no answer was given. A meet and confer is not an opportunity to write a letter with a laundry list of complaints, and then to force opposing counsel into a time-consuming meet and confer just so counsel for movant can go down the list asking inappropriate questions of opposing counsel in an attempt to do fact discovery. I respectfully request that we not engage in any more of these time-wasting exercises. We have done too many of them. We should conduct proper meet and confers.

Respectfully,

Lester

T. Lester Wallace
**Imperium Patent Works LLP**
315 Ray Street
Pleasanton, CA 94566
(925) 862-9972


**From:** Michael Neustel <michael@neustel.com>
**Sent:** Sunday, July 2, 2023 9:56 PM
**To:** darien imperiumpw.com <darien@imperiumpw.com>; lester imperiumpw.com <lester@imperiumpw.com>; ehertz@dehs.com
**Cc:** meghann@denevanfalon.com; Michelle Breit <michelle@neustel.com>; Monte Bond <monte@neustel.com>
**Subject:** Omega's Meet/Confer - Thursday at 11 am CT - 1 pm CT

Dear Darien,

Thank you for the confirmation that you are available next Thursday (July 6th) from 9 am – 1 pm CT for a meet and confer. Per your request, we are agreeable to do the call starting at **11 am CT** on **July 6th** using the following conference number: **701-666-0091 (PIN: 1234)**

To help handle the meet/confer efficiently, below is a summary of the topics we need to discuss in the meet and confer on Thursday (it is my understanding you have set aside two hours so we should have plenty of time):

### General Topic #1: Buergofol's Data/Document Retention Policies; Missing/Edited Emails.

- **Request for Production No. 22 (Data/Doc. Retention Policies):** In Buergofol's March 31, 2023 response to Request for Production No. 22, Buergofol stated it would produce Buergofol's electronic data and document retention policies. During our meet/confer on May 11, 2023 on other matters, we discussed Buergofol's 2015 declarations submitted to the USPTO identifying Buergofol's document retention policies and you stated that Buergofol now has different policies today and that the 2015 policy does not apply today. We asked you if Buergofol would produce Buergofol's document retention policies and you stated you would not produce Buergofol's document retention policies. During the May 11, 2023 meet/confer, I do not recall discussing Request for Production No. 22 which specifically requests Buergofol's electronic data and document retention policies which is the reason for this request for a meet/confer.

- **Truncated Email Threads, Edited Emails, and Missing Emails in Buergofol's Production.** As stated in my May 30, 2023 letter, Buergofol's emails use an automatic reference number as a prefix added to the Subject line to indicate the order the email is for all replies and forwards. For example, a second email in the email thread automatically adds the prefix "**Re-2**" to the Subject line to indicate it is the second email in the thread, a third email in the email thread automatically adds the prefix "**Re-3**" to the Subject line to indicate it is the third email in the thread and so forth. The original email in an email thread does not have any automatic reference number added. At least the following emails are missing from Buergofol's document production:

    - **Dr. Stark's September 2, 2020 Email (BF2601).** The email produced for the September 2, 2020 email sent at 5:24 pm by Dr. Stark to Abdel Boutrid (Bates No. BF2601) is not a complete email and appears to have been edited in a Word processing program to remove the prior emails in the email thread.

    - **Missing Email Attached to Dr. Stark's Sept. 2, 2020 Email.** In Dr. Stark's email dated September 2, 2020 (Attachment 1, Bates No. 2601), Dr. Stark stated that he had attached an email titled "*Re Letztes Muster KS, Schlauchinnenfolie von Südpack an Reline.eml*" which machine translates to "*Re last sample KS, tube inner film from Südpack to Reline.eml.*" We have searched all of Buergofol's document

production but are unable to locate this email. If this email was produced, please provide us with the bates number(s) for the email.

- **Missing Initial Email Prior to Dr. Schleicher's Email ("Re-2") (BF2600).** Dr. Schleicher's reply email sent August 18, 2020 at 4:20 pm was a first reply ("Re-2" in Subject line) to a prior email titled "Urgent actions to BF0004 - SER 4852 - against Südpack." The initial email in the email thread was not produced so the produced email thread was truncated.

- **Missing Third Email ("Re-3") After Dr. Schleicher's Email ("Re-2") (BF2600).** Dr. Schleicher's reply email sent August 18, 2020 at 4:20 pm was the second email in an email thread ("Re-2" in Subject line) in response to a prior email titled "Urgent actions to BF0004 - SER 4852 - against Südpack." In addition to the initial email not being produced, the second reply email ("Re-3") is missing from the produced email thread in BF2600 since the next email indicates it is the third reply email ("Re-3").

- **Emails with BASF (BF2570-BF2573).** Buergofol produced a single alleged email thread with BASF (BF2570-BF2573) regarding the presence of EBS wax within ULTRAMID® brand polyamide, but Buergofol has not produced the individual emails in their entirety or the original electronic file for each of the individual emails. It is impossible to determine if the email thread is complete and not edited since it appears to have been copy/pasted into a Word processor.

- **Buergofol's Failure to Produce Original, Unedited Emails.** As also stated in my May 30, 2023 letter, Buergofol's production of emails does not appear to have been produced from an original email file on an email client. Instead, the emails appear to have been improperly copied and pasted into a file for a word processor (e.g., Microsoft Word®), edited and then the edited file was converted to a PDF file for production. Omega requests that Buergofol confirm that the produced PDF files of emails were PDF files directly converted to PDF from the email client itself (e.g. directly from Microsoft Outlook) and that Buergofol has not simply copy/pasted the emails into a word processor for editing prior to converting to a PDF.

## General Topic #2: Invention Conception and Reduction to Practice.

- **Interrogatory No. 6:** Buergofol has thus far failed to provide a substantive response to Interrogatory No. 6. In their response dated March 31, 2023, Buergofol stated that they were still investigating the facts pertaining to the conception and reduction to practice of the inventions in question. Considering an additional three months that have passed since Buergofol's initial response on March 31, 2023, it is expected that Buergofol now possesses the necessary information to fully answer Interrogatory No. 6.

- **Request for Production Nos. 50-54:** Buergofol is refusing to search for highly

relevant documents relating to the conception and development of the inventions in the patents-in-suit.

### General Topic #3: Licenses, Royalties and Damages.

- **Interrogatory No. 8:** Buergofol has refused to describe relevant facts and circumstances pertaining to their offer to license the '269 patent back to Loparex, as requested in Interrogatory No. 8. Given that Buergofol is seeking a reasonable royalty under the '269 patent as damages, the facts and circumstances surrounding the license offer are highly relevant to the parties' defenses and claims. Additionally, Omega requires clarification on whether Buergofol held a license from Loparex for the '269 patent. Furthermore, Buergofol has not provided any information regarding offers, payments, or draft agreements related to their acquisition of the '269 patent from Loparex just five days before filing the lawsuit. Furthermore, Buergofol has not identified any individuals with knowledge of the patent license offer to Loparex or the purchase of the '269 patent prior to the lawsuit.

- **Request for Production Nos. 93 and 94.** Buergofol has not produced any documents relating to the communications and/or proposed license agreement with Loparex relating to the '269 purchased five days before the lawsuit – Buergofol has admitted in response to Interrogatory No. 8 that it had negotiated a license back to Loparex but no such documents have been produced.

- **Request for Production No. 41:** Buergofol incorrectly alleges that documents relating to steam-cured CIPP liners are not relevant to the issues in this case. Furthermore, Buergofol misstates what Request for Production No. 41 relates to for its reason for not having responsive documents. This request also relates to the Loparex proposed license.

- **Request for Production Nos. 29 and 30.** Buergofol has refused to produce highly relevant documents in response to Omega's RFPs 29 and 30, relating to sales and profitability relating to Buergofol's alleged damages.

### General Topic #4: 2012 Sudpack Film Sample Tested by Buergofol.

- **Withheld Documents Relating to 2012 Sudpack Film.** As stated in my May 30, 2023 letter, Buergofol is withholding the following documents highly relevant to the invalidity of the '882 patent:

    - **Sample of 2012 Sudpack Film.** Buergofol has not produced a sample of the 2012 Sudpack Film which is prior art to the '882 patent and which is responsive to at least RFPD Nos. 13 and 68

    - **Second BASF Analysis of 2012 Sudpack Film.** Buergofol has not produced the "[second] analysis of the Südpack sample from BASF" as discussed by Dr. Stark in his email sent on September 2, 2020 at 5:24 pm which is responsive to at least RFPD Nos. 13, 68, 70, 78, 80, 82 and 103.

## General Topic #5: Buergofol's Prior Art Sales and Shipments by Buergofol.

- **Interrogatory No. 11 ('269 Prior Art Sales/Shipments):** Buergofol has not responded to Interrogatory No. 11 with any information. However, it is clear that Buergofol has information sufficient to respond to Interrogatory No. 11 just from publicly available information Omega has found via Archive.org, Buergofol's 2012 cancellation proceeding it filed against the German counterpart to the '269 patent and Buergofol's 2015 opposition proceeding it filed against the European '269 patent counterpart to the '269 patent. As one example, Archive.org shows that Buergofol's website on March 11, 2005 displayed a "Five-layer medium barrier" film having a layer sequence of "PA/TIE/PA/TIE/PE". See [https://web.archive.org/web/20050311135533/http://www.buergofol.com/EN/html/set.html](https://web.archive.org/web/20050311135533/http://www.buergofol.com/EN/html/set.html) (select the "Technology" tab on the page). Buergofol's objections and reasons for non-response, such as their claim that "film" sold prior to June 15, 2009, is not considered "prior art" because it is not a complete "liner," are without merit.

- **Interrogatory No. 12 ('882 Prior Art Sales/Shipments):** Buergofol has refused to respond to Interrogatory No. 12 in any manner. Buergofol incorrectly argues that "99 percent of such film does not relate to UV CIPP liners" and therefore is not relevant to the present lawsuit.

- **Request for Production Nos. 64, 65 and 67.** Buergofol has refused to produce highly relevant documents in response to Omega's RFPs 64, 65, 67 relating to customers, shipments of products and related documents.

- **Request for Production Nos. 98-102 (LightStream):** Buergofol indicated it would produce responsive documents but Omega hasn't received any responsive documents to most of these document requests.

- **Request for Production Nos. 105 and 107.** Buergofol has not produced any responsive documents to this request even though publicly available import records show that Buergofol made shipments of inner film prior to March 11, 2012.

## General Topic #6: Buergofol's Opposition/Cancellation of '269 Foreign Counterpart Applications.

- **Request for Production Nos. 45, 57, 64, 65, 67, 68, 70, 72, 73, 88: Buergofol's German Cancellation Proceeding ('269 Related Application).** On April 19, 2012, Buergofol filed a cancellation proceeding against German Patent No. DE202010016048U1, the counterpart application to the '269 patent which was purchased five days before the lawsuit. Omega needs production of these highly relevant documents which directly relate to the validity of the '269 patent (e.g., all documents filed with the German patent office by Buergofol in the cancellation proceeding; all communications with Loparex and all predecessors such as Huhtamaki; all testimony provided in the proceeding).

- **Request for Production Nos. 45, 57, 64, 65, 67, 68, 70, 72, 73, 88: Buergofol's EPO Cancellation Proceeding ('269 Related Application).** On January 30, 2015, Buergofol filed an opposition to European Application No. EP11730556A, the counterpart application to the '269 patent which was purchased five days before the lawsuit. Omega needs production of these highly relevant documents which directly relate to the validity of the '269 patent (e.g., all documents filed with the European patent office by Buergofol in the opposition proceeding; all communications with Loparex and all predecessors such as Huhtamaki; all testimony provided in the proceeding).

## General Topic #7: Communications re: Patents-in-Suit (Dr. Stark and Third Parties).

- **Request for Production Nos. 47-48:** Buergofol is refusing to search for responsive documents involved in the litigation between Dr. Stark and Buergofol which relate to the Patents-in-Suit.

## General Topic #8: Opinions/Evaluations/Analysis/Reports

- **Interrogatory No. 7:** Interrogatory No. 7 asks Buergofol to "*Identify all opinions, evaluations, analyses, or reverse engineering reports, whether written or oral, that Buergofol has requested, received or is aware of regarding any Patent-in-Suit.*" Buergofol has only identified email communications from Buergofol to Omega which are not opinions, evaluations, analyses or reverse engineering reports. In addition, Buergofol states that "*Opinions and evaluations of the validity of pending claims of the foreign applications to which the Patents-in-Suit claim priority are contained in the examination history of the foreign applications and any opposition proceedings to the issuance of foreign patents.*" Such an approach forces Omega to search through numerous foreign patents, many of which are in foreign languages or inaccessible to the public, which does not fulfill Buergofol's obligation to provide a complete answer to Interrogatory No. 7.

I look forward to speaking with you regarding the above discovery issues.

Regards,

Michael Neustel

Neustel Law Offices, LTD | 2534 South University Drive, Suite 4 | Fargo, ND 58103
Telephone: 701-281-8822 | Website: www.neustel.com | Email: michael@neustel.com