UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| Buergofol GmbH,<br><br>              Plaintiff,<br><br>vs.<br><br>Omega Liner Company, Inc.,<br><br>              Defendant. | Case No. 4:22-cv-04112<br><br><br>**OMEGA'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL BUERGOFOL'S DOCUMENT PRODUCTION AND RESPONSE TO INTERROGATORY** |

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND................................................................................4
        A.      The Patents-in-Suit and Buergofol's Claims of Infringement. ...............4
        B.      Buergofol's Concealed Prior Art Uncovered by Omega to Date. ...........4
        C.      Prior Motions and Procedures Addressing Some of Buergofol's Efforts to
                Preclude Discovery. ................................................................................6
        D.      Buergofol's Refusal to Cooperate in Meet and Confers. ........................7

III.    ARGUMENT ......................................................................................................10
        A.      The Legal Standard. .............................................................................10
        B.      Buergofol Should Be Compelled to Produce the Documents Regarding
                Buergofol's Cancellation Proceeding Involving the German Counterpart to
                the '269 Patent Before the German Patent Office (RFPs 70 and 88). ...11
        C.      Buergofol Should Be Compelled to Produce the Foreign File Histories
                Related to the '269 Patent (RFPs 70, 72 and 73). ................................12
        D.      Buergofol Should Be Compelled to Produce the Second BASF Analysis of
                the 2012 Sudpack Film (RFP 103). ......................................................13
        E.      Buergofol Should Be Compelled to Produce the Information and
                Documents Relating to Buergofol's Offer to License the '269 Patent Back
                to Loparex (ROG 8 and RFP 85). ........................................................15
        F.      Buergofol Should Be Compelled to Produce Complete and Unedited
                Email Strings, Attachments and Readable Emails.................................16
        G.      Buergofol Should Be Compelled to Produce Its Document Retention
                Policies and Information Regarding Spoliation of Evidence..................19
        H.      Buergofol Must Disclose the Manner, Method and Sources of Its Searches
                and Indicate Whether It Is Withholding Documents Based on Its
                Objections. ...........................................................................................22

IV.     OMEGA'S MOTION IS TIMELY.....................................................................26

V.      CONCLUSION..................................................................................................28

## I.   INTRODUCTION

During the course of this litigation, Omega has sought discovery from Buergofol that is customary in patent litigation, only to be denied the discovery accompanied by Buergofol's vague explanations and sweeping objections. In numerous instances, Omega has learned of the existence of potentially key evidence through its own independent investigation, but not produced by Buergofol. In other instances, Buergofol's own document production or Buergofol's statements in response to written discovery and in court filings discloses that Buergofol has not produced key evidence or searched relevant source of information. In sum, Buergofol's production remains vastly deficient. This motion addresses the most immediate and imperative matters Omega has identified.

For example, through its own investigation, Omega has learned that long before Buergofol acquired the '269 Patent from its competitor, Loparex, Buergofol filed oppositions to the German and European foreign counterparts to the '269 Patent filed by Loparex, arguing that the invention claimed in the patents was not novel. Buergofol, it is believed, challenged those patents in the face of accusations by Loparex that Buergofol was infringing; now Buergofol alleges Omega infringes the '269 Patent, which claims the same invention as the very foreign patents Buergofol opposed. In those foreign oppositions, Buergofol's asserted that its own early prior art sales of film to third-party Saertex invalidated the claimed invention in the foreign counterparts. Despite Omega's discovery demands, Buergofol has produced little information relating to the oppositions to the foreign counterparts to the '269 Patent or Buergofol's prior art sales used in the oppositions.

As another example, from the few emails Buergofol has produced, Omega identified that Buergofol had acquired and tested 2012 prior art film manufactured by its competitor Sudpack, which film and tests may show that the invention claimed in the '882 Patent was known by others (*i.e.*, not novel), including Sudpack, before Buergofol's claimed invention date, rendering the '882

Patent invalid. Buergofol, however, has failed to produce a sample of the 2012 Sudpack film or any documents relating to the 2012 Sudpack film other than what was most likely accidentally disclosed in Buergofol's production.

As one last example, Buergofol has produced emails that facially are incomplete, *i.e.*, missing initial or responsive emails from a longer email thread or missing attachments, or that appear altered because the emails have been removed from their native format and copied into word processing documents.

Omega has sought to meet and confer with Buergofol regarding this missing and/or incomplete discovery, but Buergofol has refused to give adequate explanations to demonstrate that Buergofol has truly adequately searched for the evidence or sought to obtain the evidence that is within its "control." Incredibly, Buergofol claims that all documents responsive to Omega's discovery requests have either been produced, are listed on Buergofol's privilege log, or are being withheld based on objections Buergofol asserts.

These bald assertions cannot be reconciled with the facts. For example, during the meet and confer on July 6, 2023, Omega pointed out that Buergofol admitted in a court filing that it has not searched its "Warenwirtschaftssystem (ERP system)," containing customers, sales, and technical information and the "1000 binders" that Buergofol identified as containing product information. (*See* Buergofol's Motion for Protective Order (Trade Secrets) (Dkt.75), at 11 and 15; Dkt. 73, Decl. of F. Schleicher). During the meet-and-confer-discussions, it became abundantly clear that Buergofol had not searched (or adequately searched) these sources and continues to refuse to do so. As another example, Buergofol has a right as a party to the foreign opposition proceedings to obtain all documents of record, including those that are not released to the public, but Buergofol has not sought or produced those documents in its "control."

Additionally, Buergofol has not produced a single responsive email from before the critical dates of the patents. The few emails Buergofol has produced make abundantly clear that Buergofol has not produced complete email strings (some emails have been truncated, others are missing attachments), and some emails appear to have been manipulated and copied into other formats. Buergofol refuses to even acknowledge the problem, search for more complete versions of the problematic emails identified by Omega, update its production, or produce emails in their native format as required by Fed.R.Civ.P. 34(b)(2)(E).

Omega has asked Buergofol, in accordance with Fed.R.Civ.P. 34(b)(2)(C) to state whether and what types of documents Buergofol is withholding based on Buergofol's expansive objections asserted in response to discovery requests. But, Buergofol has flatly refused to do so.

Omega, therefore, has reached a crossroad where it must ask for Court intervention in order to resolve the matters to obtain highly relevant discovery, to the extent it exists. Specifically, Omega seeks an order compelling Buergofol's production of the documents Omega has identified as missing from Buergofol's production, namely, (1) documents related to Buergofol's cancellation proceeding filed against the German counterpart to the '269 Patent, (2) the foreign file histories for patent applications and patents related to the '269 Patent, (3) a sample of the 2012 prior art Sudpack film, (4) complete email threads, missing emails, and files attached to emails (including in native format), and (5) all documents relating to Buergofol's document retention polices. To ensure that Buergofol has conducted a reasonable search, Omega asks this Court to order Buergofol to (i) provide information regarding the manner and method of its search(es), (ii) identify the custodians and sources of information and documents searched, and (iii) certify under oath that no responsive documents exist or identify the basis for withholding them, and (iv) identify

instances where the documents or things once existed but have been destroyed, indicating by whom and when.

## II.     FACTUAL BACKGROUND

### A.     The Patents-in-Suit and Buergofol's Claims of Infringement.

There are two patents-in-suit—United States Patent Nos. 8,794,269 ("the '269 Patent") and 9,657,882 ("the '882 Patent"). (Dkt. 1, Complaint.) Both patents are in general related to multi-layer films used for renovating pipes. (*Id.*, Ex. A, the '269 Patent, at Col. 1:8-64.) The multi-layer film is inserted into the sewer pipe and the resin within the film is hardened in place with the application of ultra-violet light. (*Id.*) As both patents-in-suit acknowledge, the inventions claimed in the patents are, at best, improvements over prior art multi-layer films used for the same purpose, which long existed before the patents-in-suit, and which are commonly referred to as ultra-violet light "cured in place pipe liners" or "UV CIPP liners." (*See e.g., id.*, the "Background of the Invention.")

In its Complaint, Buergofol alleges infringement based on Omega's making and selling UV CIPP liner product. (Dkt. 1, ¶¶ 24-32.) Buergofol's infringement claims are based, at least in part, on Buergofol's own inner tubular film sold to Omega. (*See e.g.*, Dkt. 26 (Omega's Reply in Support of Motion to Dismiss Under Rule 12(b)(6)), p. 2.)

### B.     Buergofol's Concealed Prior Art Uncovered by Omega to Date.

Since this case began, Omega has uncovered, through its own independent investigation efforts, many instances of *Buergofol's own prior art sales* that invalidate the patents-in-suit. At least 10 years prior to filing this lawsuit, Buergofol was fully aware of its prior art sales because in 2012 Buergofol submitted its own prior art sales as evidence to the German Patent Office to cancel the German counterpart patent to the '269 Patent. (Neustel Decl., Ex. D.) Later, in 2015,

Buergofol submitted its own prior art sales as evidence to the European Patent Office to oppose the European counterpart patent application to the '269 Patent. (*Id.*, Exs. D and F.)

Buergofol, however, has produced *no* prior art in discovery, including, again, discovery relating to its own sales of products sold before the critical date for the patents-in-suit. Omega has repeatedly placed Buergofol on notice of the prior art sales. Set forth below are several of the many written notices Omega has provided Buergofol's attorneys regarding Buergofol's failure to produce highly relevant information regarding the invalidity and unenforceability of the patents-in-suit and Buergofol's obvious failure to conduct an adequate, mandatory pre-suit investigation:

- March 27, 2023—Omega's notice of Buergofol's own prior art sales of Buergofol products to Light Stream. (Neustel Decl., Ex. A, Letter.)

- May 5, 2023—Omega's notice of Buergofol's pre-suit knowledge of the invalidity of the '269 Patent (opposition to foreign counterparts to '269 Patent based on Saertex prior art). (Neustel Decl., Ex. B, Letter.)

- May 10, 2023—Omega's notice of Buergofol's lack of pre-suit investigation regarding prior art sales to Saertex and Brandenburger Liner. (Neustel Decl., Ex. D, Letter to Counsel for Buergofol.)

- May 16, 2023—Omega's notice of Buergofol's prior art sales of its own inner tubular film with EBS wax to Saertex. (Neustel Decl., Ex. F, Letter.)

- May 30, 2023—Buergofol's pre-suit knowledge of Sudpack's 2012 film having EBS wax. (Neustel Decl., Ex. H, Letter.)

Buergofol's response to these notices is to do nothing to supplement its written discovery responses or its document production.

**C.     Prior Motions and Procedures Addressing Some of Buergofol's Efforts to Preclude Discovery.**

The Court's docket is now replete with Omega's motions documenting Buergofol's unrelenting efforts to avoid its discovery obligations, including refusals to produce highly relevant prior art and related information sought by Omega – discovery which plaintiffs regularly provide in patent litigation. Buergofol's obfuscatory efforts began with its efforts to preclude Omega from speaking to one of the inventors on the '882 Patent—Kurt Stark. (Dkt. 19, Buergofol's Motion for an Order Precluding Omega from Making Ex Parte Contact with Former Employee Stark.) The efforts continued with Buergofol's attempt to avoid answering Omega's discovery requests seeking prior art. (Dkt. 63, Omega's Memorandum in Support of Motion to Compel Responses and Production from Buergofol Regarding Interrogatory No. 4 and Request for Production No. 13 ("Prior Art").) The Court has since rejected these efforts. (Dkt. 56, Order re Buergofol's Motion for Protective Order—Kurt Stark; Dkt. 164, Order Granting Motion to Compel and For Attorneys' Fees.) But not satisfied with the Court's Order, Buergofol and its attorneys next resorted to threatening Mr. Stark and Omega's attorneys with criminal prosecution if Dr. Stark disclosed "any information" relating to his work with Buergofol, forcing Omega to seek a protective order to address this improper conduct. (Dkt. 81, Memorandum in Support of Omega's Motion for Protective Order (Witnesses and Customers).) Omega's motion for protective order is still pending.

Persisting with its efforts to avoid the production of prior art, prior on-sales, and even its own product information, Buergofol has refused to produce any discovery that it alleges constitutes its trade secrets. To further that end, Buergofol filed a motion for a protective order to preclude discovery of a huge swath of information it claims are trade secrets (or irrelevant or unduly burdensome to produce), including technical product information, customer information, sales

information, and vendor and supplier information. (Dkt. 75, Brief in Support of Buergofol's Motion for Protective Order (Trade Secrets); *see also* Dkt. 73, Declaration of Franz Schleicher.) At the time Omega filed its Response, on April 20, 2023, Omega had only discovered Buergofol's prior art sales to one third-party, Light Stream, but was able to alert the Court to that evidence in Omega's Response and Cross Motion to Compel. (*See* Dkt. 94, Omega's Response Brief to Buergofol's Motion for Protective Order to Protect Trade Secrets and Brief in Support of Omega's Cross-Motion to Compel.) By the time Omega filed its Reply in Support of Omega's cross-motion to compel, on May 18, 2023, Omega had discovered Buergofol's prior art sales to another third-party, Saertex, and included evidence of those sales in its Reply. (*See* Dkt. 117, Omega's Reply in Support of Cross-Motion to Compel Regarding Buergofol's Motion for Protective Order to Protect Trade Secrets, pp. 3-6.) Buergofol's motion and Omega's cross-motion are fully briefed and pending before this Court.

### D.     Buergofol's Refusal to Cooperate in Meet and Confers.

Despite Buergofol's unrelenting obstruction, Omega continued its efforts to obtain much needed and highly relevant discovery from Buergofol, and to do so short of filing additional motions with the Court. Omega has notified Buergofol of the still numerous deficiencies in Buergofol's responses to interrogatories and document requests, across various sets of written discovery regarding prior art and product information. Initial written communications regarding the deficiencies began in April, as did Omega's efforts to schedule meet-and-confer discussions. Beginning on May 11, 2023, the parties held three meet-and-confer telephonic conferences, culminating in the final meet-and-confer call on July 6, 2023, regarding wide-ranging deficiencies in Buergofol's discovery responses, including those addressed in this motion.

The May 11, 2023, meet-and-confer discussions did not result in Buergofol's agreement to produce any of the information Omega seeks. Buergofol refused to produce information regarding

its prior art sales; and Buergofol refused to update its privilege log or even discuss ESI discovery. (Neustel Decl., Ex. E, email summarizing May 11, 2023, meet and confer). Omega pointed out that Buergofol had not produced its document retention policies in response to particular discovery requests. Omega spotlighted the inconsistency between Buergofol's written discovery responses, wherein Buergofol asserts it retains documents for only two years, and declarations of Buergofol's own employees that Omega uncovered attesting that Buergofol has a 10-year document retention policy for paper records and even longer for ESI. (Neustel Decl., Ex. C, May 8, 2023, Letter.) Buergofol dismissed the declarations of its own employees, claimed the retention policy does not apply here, and that Buergofol has other document retention policies. But Buergofol refused to produce those policies and threatened Omega with sanctions if it filed a motion to compel based on the "10 year" document retention policy declared to the German patent office. (*Id*., Ex. E, May 12, 2023, email summarizing meet and confer.)

As hope springs eternal, and trying to avoid further involvement of the Court, Omega sent follow-up letters to Buergofol, addressing unresolved deficiencies and new deficiencies as they arose. (*Id*., Exs. D, F and H.) But Buergofol refused to respond to Omega's specific inquires such as (i) why Buergofol produced no documents responsive to certain discovery requests; (ii) the identity of potential sources of responsive documents and whether Buergofol searched those sources; (iii) the nature of Buergofol's document retention policies; and (iv) whether Buergofol destroyed any documents or, at least, did not retain the documents due to retention policies. (*Id*., Ex. G, May 23, 2023, Letter summarizing meet and confer.)

On May 30, 2023, Omega notified Buergofol that Omega learned through its investigation that Buergofol had pre-suit knowledge of another prior art UV CIPP liner that included film by Buergofol's competitor, Sudpack, *i.e.*, Sudpack's 2012 film having EBS wax (the "Sudpack prior

art film"). (*Id*., Ex. H.) Buergofol has produced *no* discovery regarding the Sudpack prior art film. (*Id.*) Omega requested that Buergofol meet and confer regarding this withheld prior art and related missing documents, as well deficiencies appearing in documents Buergofol produced, such as truncated email threads, missing emails, and failure to produce original unedited emails. (*Id*., Ex. I, combined email strings and Ex. H.) Buergofol responded that there is no discovery dispute:

> Your so-called "discovery dispute" is not a basis for bringing a motion to compel. Your frustration with not having documents that you believe exist is also not a basis for bringing a motion to compel. I am not interested in talking with you about what you choose to label as a "dispute."

(*Id*. Ex. I, June 2, 2023, email from D. Wallace.) Again, Buergofol threatened Omega with sanctions if it filed a motion to compel because according to Buergofol and its attorneys: "You do not know that Buergofol is improperly withholding anything. You would have had zero basis for bringing such a motion to compel." (*Id*.) Omega pointed out that, from all the missing and incomplete documents it identified, Buergofol's production is deficient, and a meet and confer was required. (*Id*., June 1, 2023, email from M. Neustel.) Buergofol claimed its production was not deficient and ultimately refused to meet and confer. (*Id*., June 3, 2023, email from D. Wallace.)

After the Court's scheduling order (Dkt. 136) issued, Omega sought to resume the discussions regarding Buergofol's deficient discovery responses and production. (*Id*., Ex. J, June 25, 2023, email exchange; Ex. K, July 2, 2023, email to Buergofol summarizing discovery issues.) The parties' final meet-and-confer discussion took place telephonically on July 6, 2023, and addressed many issues of deficiencies in Buergofol's discovery responses. (*Id*.) During the conference, Omega directed Buergofol to detail specific examples of discovery requests encompassing the sought-after information and Buergofol's deficient written responses and document productions.

In response to each of the eight topics, Buergofol's repeatedly responded by stating it searched for responsive documents and produced all the responsive documents or listed them on Buergofol's privilege logs or are withholding them as "trade secrets." (*Id*., Ex. L, July 6, 2023, email from L. Wallace.) Buergofol refused to answer questions or provide information that would explain why Buergofol produced no documents responsive to certain discovery requests; the existence of the documents sought by Omega, the identify of potential sources of responsive documents and whether Buergofol searched those sources; and whether Buergofol destroyed any documents or, at least, did not retain the documents due to retention policies. (*Id*., *see also* Exs. E and J.)

## III.   ARGUMENT

### A.   The Legal Standard.

Fed. R. Civ. P. 26(b)(1) governs the scope of discovery and provides the parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, . . .". The scope of discovery under Rule 26 is extremely broad. *See* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2007 (3d ed. 1970). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Id.* (quoting *Hickman v. Taylor,* 329 U.S. 495, 507-08 (1947)).

Information is discoverable if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. *Id.* "Relevancy is to be broadly construed for discovery issues [and] encompass[es] any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Cup O' Dirt LLC v. Badlands Airtime, LLC*, 2021 WL 680173, at *16 (D. S.D. Feb. 22, 2021) (citations omitted).

Fed. R. Civ. P. 34(b)(2)(C) specifically requires that when a party objects to a request for production, the objection "must state whether any responsive materials are being withheld on the basis of the objection."

**B.      Buergofol Should Be Compelled to Produce the Documents Regarding Buergofol's Cancellation Proceeding Involving the German Counterpart to the '269 Patent Before the German Patent Office (RFPs 70 and 88).**

Omega's Request for Production Nos. 70 and 88 seek documents relating to the patents-in-suit *and related patents* including foreign counterpart applications and administrative proceedings relating to any related patent. (Neustel Decl., Ex. P and Ex. Q.) On April 19, 2012, Buergofol filed a cancellation proceeding against German Patent No. DE202010016048U1, which is the German counterpart application to the '269 Patent. (Neustel Decl., Ex. D.)  It is beyond dispute that long before Buergofol acquired rights in the '269 Patent, it was attacking the validity of the invention claimed therein in foreign patent applications filed by the original applicant for the '269 Patent (Loparex). On January 30, 2015, Buergofol then filed an opposition against European Application No. EP11730556A, which is the European counterpart application to the '269 Patent.  (*Id.*)  The relevance of Buergofol's opposition to the foreign patent applications that are counterparts to the '269 Patent cannot be seriously questioned. (Neustel Decl., Exs. B, D, F and H.) The same is true for the documents submitted to the European patent office. (*Id., see also* Ex. C, May 8, 2023, Letter.)

Buergofol appears to have produced the European opposition proceeding it filed against the European counterpart to the '269 Patent. However, no documents have been produced by Buergofol relating to Buergofol's cancellation proceeding filed against the German counterpart to the '269 Patent.

Omega has been able to obtain some of the records that are publicly available. However, according to German counsel, there are certain documents maintained by the German patent office

relating to the German cancellation proceeding that only Buergofol, as a party to the proceedings, has a right to obtain. Below are some examples of exhibits from the German cancellation proceeding that Omega's German counsel was unable to acquire from the German Patent Office:

- Exhibit D4 – Auszug aus Buch "*Kunststoff Folien*" – excerpt of a book;

- Exhibit D13 – Nachweis zu Vorbenutzung ~ evidence of prior use;

- Exhibit N4 – Rechnung von Die Agentur" – Invoice;

- N5 – Auszug aus Buch *Verpackungslexikon*" – excerpt of a book;

- D33 – Handelsregisterauszug – excerpt of the commercial register;

- D34 – blackended;

- D35- eRecht24 – www.e-recht24.de/artikel/ecommerce/177.html;

- D36 – Lexikon Kunstoffprüfung „*Vicat-Erweichungstemperatur*" - lexicon;

To the extent Buergofol claims it does not have certain documents submitted in those proceedings, it should be compelled to obtain them from its foreign counsel or the respective foreign patent offices. If a party has the legal right to obtain the document, "then the document is within that party's control" and, thus, subject to production under Rule 34. *Clark v. Unum Grp.*, 2021 WL 4134520, at *11 (D.S.D. Sept. 10, 2021).

Accordingly, Omega seeks an order compelling Buergofol to produce a complete copy of all documents relating to Buergofol's cancellation proceeding filed with respect to German Patent No. DE202010016048U1, including documents filed with the German Patent Office and communications with Loparex (formerly Huhtamaki Films).

### C. Buergofol Should Be Compelled to Produce the Foreign File Histories Related to the '269 Patent (RFPs 70, 72 and 73).

Omega's Request for Production Nos. 70, 72 and 73 seek documents relating to the patents-in-suit and related patents including foreign counterpart applications. (Neustel Decl., Ex. P.)

However, Buergofol's counsel has refused to produce the patent file histories for the foreign counterpart patent applications to the '269 Patent, stating that the foreign file histories are not in its possession, custody, or control, and relying upon the fact that its predecessor in interest, Loparex, prosecuted the foreign counterpart applications to the '269 Patent. (*Id.*, Ex. M, ¶ A.2.)

Buergofol purchased the '269 Patent from Loparex five days before filing this lawsuit and publicly recorded a one-page patent assignment agreement with the USPTO. (*Id.*, Ex. Y.) The patent assignment agreement between Loparex and Buergofol specifically requires Loparex to "*to execute all instruments and documents required … for litigation regarding the Letters Patent …*" (*Id.*) Although Buergofol has the right to request the documents from Loparex, Buergofol's counsel has refused to ask Loparex to provide it with copies of the foreign counterpart applications to the '269 Patent so the same can be produced in this litigation. (*Id.*, Ex. M, ¶ A.2.)

The file histories for the foreign counterpart applications will have highly relevant information relating to the validity and enforceability of the '269 Patent. For example, the foreign patent offices most likely found prior art that has not been disclosed during the examination of the '269 Patent that would directly affect the validity and enforceability of the '269 Patent. As another example, Loparex most likely made statements to the foreign patent offices regarding the prior art that relates to the validity and enforceability of the '269 Patent.

Buergofol should be compelled to seek the file histories for all patents related to the '269 Patent and further compelled to request the file histories from Loparex, pursuant to at least the terms of the patent assignment agreement executed five-days before this lawsuit.

### D. Buergofol Should Be Compelled to Produce the Second BASF Analysis of the 2012 Sudpack Film (RFP 103).

According to the few emails Buergofol has produced, Buergofol acquired and had tested a sample of inner film made by Sudpack in 2012 ("the 2012 Sudpack film"), which is before

Buergofol's earliest filing for the '882 Patent. (Neustel Decl., Ex. H.) Believing it was testing Sudpack's film for an infringement analysis to see if Sudpack's film had EBS wax, Buergofol inadvertently determined that the 2012 Sudpack film had EBS wax. (*Id.*) On August 26, 2020, BASF informed Buergofol that <u>all</u> ULTRAMID® brand polyamide versions had EBS wax (ULTRAMID® is the brand of polyamide Buergofol believed Sudpack was using after the first BASF analysis). (*Id.*, Ex. M, ¶ A6.) On September 2, 2020, after realizing that the 2012 Sudpack film was prior art to the '882 patent and meeting with Dr. Schleicher, Dr. Kurt Stark requested a second analysis of the 2012 Sudpack film apparently to determine if the presence of EBS wax could be actually detected which would confirm that the 2012 Sudpack film is prior art to the '882 patent. (*Id.*, Ex. M, ¶ A7.)

During the July 6, 2023, meet-and-confer discussion, Buergofol refused to respond when Omega asked them if they would produce the second BASF analysis of the 2012 Sudpack film that was requested by Dr. Stark. When Omega asked if Buergofol still has in its possession, custody or control the second analysis of the 2012 Sudpack film, Buergofol's counsel stated, "[W]*e do not have to respond to that question*." (Neustel Decl., ¶ 14.g.) Omega has been unable to make any progress in acquiring the second BASF analysis of the 2012 Sudpack film.

Omega's Request for Production No. 103 requests "[a]ll documents constituting or relating to any communications regarding EBS wax within an outer layer of film." Buergofol's communications indicate that a second analysis of the 2012 Sudpack film by BASF was performed to determine the presence of EBS wax within the outer layer of the film. (*Id.*, Ex. H.) However, Buergofol has refused to produce the second analysis by BASF or respond to Omega's basic questions as to whether Buergofol still has the BASF analysis in its possession, custody or control.

To the extent Buergofol claims the second analysis of the 2012 Sudpack film is in the possession of BASF, it must obtain it from BASF since it provided the sample(s) and requested

the analysis. *Clark*, 2021 WL 4134520 *11; *Raba v. Dye*, 2023 WL 2598891, at *3 (D. S.D. Mar. 22, 2023) ("Typically, what must be shown to establish control over documents in the possession of a non-party is that there is a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession.") (citations omitted). BASF is a non-party and merely provided information regarding the composition of one of its products in response to a customer request.

Accordingly, Omega seeks an order compelling Buergofol to produce the second BASF analysis of the 2012 Sudpack film requested by Dr. Kurt Stark.

>    **E.    Buergofol Should Be Compelled to Produce the Information and Documents Relating to Buergofol's Offer to License the '269 Patent Back to Loparex (ROG 8 and RFP 85).**

Five days before filing the present lawsuit, Buergofol purchased the '269 Patent from Loparex. (Neustel Decl., Ex. Y.) But Buergofol refuses to describe relevant facts and circumstances pertaining to their offer to license the '269 Patent back to Loparex, as requested in Interrogatory No. 8. (Neustel Decl., Ex. M and Ex. W, Buergofol's Responses to Omega's Interrogatories to Buergofol (Set Two) (Nos. 6-13).)

In response to Interrogatory No. 8, Buergofol admits that "*Buergofol and Loparex negotiated the terms of a license [to the '269 Patent] that Buergofol would grant back to Loparex.*" (*Id.*, Ex. W, p. 9.) However, Buergofol has not provided any information in response to Interrogatory No. 8 regarding (a) the facts and circumstances relating to the offer to license the '269 Patent, (b) identification of any agreements including draft agreements, (c) the date(s) of offers, (d) the amount of royalties, (e) identification of each person with knowledge of the offer to license, or (f) identification of all documents relating to the offer for license.

Omega's Request for Production No. 85 requests the following documents:

REQUEST FOR PRODUCTION NO. 85:

All documents relating to any licensing of, or effort, offer, request, or refusal to license, any right, title, or interest in any of the Patents-in-Suit or any Related Patent, including any license or settlement agreement.

However, Buergofol has produced no documents relating to Buergofol's licensing efforts, license offers, license requests and/or refusal to license the '269 Patent to Loparex.

Buergofol should be compelled to (1) fully respond to Interrogatory No. 8 with a complete answer regarding Buergofol's efforts, offers, requests and/or refusal to license the '269 Patent to Loparex and (2) produce all documents responsive to Request for Production No. 85 relating to Buergofol's efforts, offers, requests, and/or refusal to license the '269 Patent.

### F.   Buergofol Should Be Compelled to Produce Complete and Unedited Email Strings, Attachments and Readable Emails.

Buergofol has produced emails and email strings that appear incomplete and/or converted to Word format and edited, or without attachments. (Neustel Decl., Ex. K.) The emails are highly relevant to Omega's defenses because they relate to potentially invalidating prior art, including prior art that Buergofol has refused to identify, and prior art that Buergofol did not disclose to the USPTO when prosecuting the '882 Patent, thus potentially rendering the '882 Patent unenforceable due to inequitable conduct. (*See e.g.*, *Id.*, Ex. H.)

Certain Buergofol-produced email threads appear incomplete because Buergofol's email system uses an automatic numbering system adding a prefix to email subject lines which tracks numerically all replies and forwards. For example, a second email in the email thread automatically adds the prefix "**Re-2**" to the Subject line to indicate it is the second email in the thread, a third email in the email thread automatically adds the prefix "**Re-3**" to the Subject line to indicate it is the third email in the thread and so forth. (*Id.*, Ex. H, pp. 3-4.) The original email in an email thread does not have any automatic reference number added.

At least the following facts indicate that emails were edited or are missing from Buergofol's document production:

- **Dr. Stark's September 2, 2020 Email (BF2601).** The email produced for the September 2, 2020, email sent at 5:24 p.m. by Dr. Stark to Abdel Boutrid (Bates No. BF2601) is not a complete email and appears to have been edited in a Word processing program to remove the prior emails in the email thread. Additionally, in the email Dr. Stark stated that he had attached an email titled, "*Re Letztes Muster KS, Schlauchinnenfolie von Südpack an Reline.eml,*" which machine translates to "*Re last sample KS, tube inner film from Südpack to Reline.eml*."

- **Missing Initial Email Prior to Dr. Schleicher's Email ("Re-2") (BF2600).** Dr. Schleicher's reply email sent August 18, 2020, at 4:20 p.m. was a first reply ("Re-2" in Subject line) to a prior email titled, "Urgent actions to BF0004 - SER 4852 – against Südpack." The initial email in the email thread was not produced, so the produced email thread was truncated.

- **Missing Third Email ("Re-3") After Dr. Schleicher's Email ("Re-2") (BF2600).** Dr. Schleicher's first reply email sent August 18, 2020, at 4:20 p.m. was the second email in an email thread ("Re-2" in Subject line) in response to a prior email titled, "Urgent actions to BF0004 - SER 4852 - against Südpack." In addition to the initial email not being produced, the second reply email ("Re-3") is missing from the produced email thread in BF2600 since the next email indicates it is the third reply email ("Re-3").

- **Emails with BASF (BF2570-BF2573).** Buergofol produced a single alleged email thread with BASF regarding the presence of EBS wax within ULTRAMID® brand polyamide, but Buergofol failed to produce the individual emails in their entirety.

(*Id.*, Ex. K; *see also* BF 2574-75.)

Beyond the missing emails, Buergofol appears to have produced copies of emails after the entire email or part thereof was copied and pasted into a word processing file (*e.g.*, Microsoft Word®), edited, and then converted to a PDF file for production. (*Id.*, Ex. K.) This is particularly concerning because, unlike emails produced in native format or converted directly from native format to pdf, such a process allows Buergofol to alter email threads, including by deleting communications within the threads, which appears to be the case here. During the meet-and-confer discussions, Omega specifically asked Buergofol to produce its emails in native format, but Buergofol refused in violation of Fed. R. Civ. P. 34(b)(2)(E), which requires ESI to be produced as kept in the ordinary course of business and in the form it is ordinarily maintained. Due to the missing emails, incomplete email threads, and truncated and manipulated emails, Omega seeks an order compelling Buergofol to produce full and complete email strings in native format.

Additionally, during the meet-and-confer discussions, Omega identified low resolution emails, such as BF2652-53, that could not be machine translated from German. (Neustel Decl., Ex. G.) Buergofol indicated the low-resolution images of emails were already produced as other emails but refused to identify which of the produced emails corresponded to the low-resolution images of emails. Buergofol refused to produce the email files in their native format or a higher resolution PDF. (*Id.*, Ex. G.) Therefore, Omega seeks an order compelling Buergofol to produce the low-resolution emails in complete strings in native format.

Finally, there are a number of emails that indicate files were originally attached, but Buergofol produced those emails without the attachments or referenced documents:

- **Attached Email.** The email file ("*Re Letztes Muster KS, Schlauchinnenfolie von Südpack an Reline.eml*" machine translated to "*Re last sample KS, tube inner film from Südpack to*

*Reline.eml*") attached to the email (BF2601) sent by Dr. Kurt Stark on September 2, 2020, at 5:24 p.m.

- **Excel Spreadsheet.** The Excel file that was referenced in the August 26, 2020, email from Dr. Gruetzner of BASF to Abdel Boutrid (BF2581). The email from Dr. Gruetzner clearly states "*please find the table below and as an xlsx attachment*."

- **UBE Data Sheets.** Omega requested that Buergofol produce the UBE data sheets that were referenced as being attached to the email (BF2600) sent by Abdel Boutrid on August 19, 2020, at 5:19 p.m.

(*Id*.) During the meet-and-confer call, Omega requested Buergofol produce attachments or at least confirm that they cannot be found, but Buergofol refused. Accordingly, Omega seeks an order compelling Buergofol to produce all emails, complete email strings, and all attachments to all emails in native format.

### G. Buergofol Should Be Compelled to Produce Its Document Retention Policies and Information Regarding Spoliation of Evidence.

In its Request for Production No. 22, Omega requested Buergofol produce documents relating to Buergofol's document retention policies. Buergofol responded on March 31, 2023, stating that it would produce the policies if not privileged or protected. (Neustel Decl., Ex. Q, Buergofol's Responses to Omega's Second Set of Request for Production of Documents and Things to Buergofol (15-97).)  Buergofol did not file any objections to Request for Production No. 22 and stated the following:

REQUEST FOR PRODUCTION NO. 22:

     Documents sufficient to describe all Buergofol electronic data and document retention policies.

RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

     Buergofol will produce documents sufficient to described Buergofol electronic data and document retention policies, to the extent any such "policies" exist, to the extent any responsive document exists, to the extent that production of the documents do not reveal attorney-client privileged or work product information.

(Ex. Q, p. 8.)  However, Buergofol never produced any responsive documents.

     In response to other discovery requests, Buergofol has stated that it does not retain documents for more than two years. (*See id.*, Ex. O, Buergofol's Responses to Omega's Request for Production of Documents and Things (Set One)(1-14) at Request for Production Nos. 6, 7, 9, 10, 11 and 12). Buergofol's own filings with the Court, however, disprove Buergofol's representations. For example, in support of its Reply to Buergofol's Motion to Compel, Buergofol submitted the Declaration of Abdel-Kader Boutrid, Buergofol's "Head of Research and Development. (Dkt. 67, "Boutrid Decl."). Mr. Boutrid attached to his declaration a "quality control image" of one of the inner film's Buergofol delivered to Omega, which was generated on May 9, 2018. (Dkt. 67 and 68, Boutrid Decl. ¶ 7, and Ex. B thereto.) Buergofol, it seems, can locate documents dated more than two years ago when it suits its purposes.

     Moreover, as a result of its continuing investigation relating to the prosecution of the patents-in-suit, Omega uncovered the declarations of three employees attesting to a document retention policy of Buergofol submitted to the European Patent Office on October 16, 2015. (Neustel Decl., Ex. C.) According to those declarations, Buergofol keeps paper records for 10 years and thereafter they are kept in electronic form:

> At Buergofol GmbH, order confirmations, delivery notes, invoices and other documents are kept in paper form for 10 years in accordance with the statutory storage obligation and then generally destroyed. The corresponding data records, which include the essential information such as order number, order date, customer, contact person for the customer, net invoice amount, etc., are then only available in electronic form in our system.

(*Id*., p. 1.) Omega put Buergofol on notice of its findings, and Buergofol's apparently false statement in its responses to Omega's Request for Production Nos. 6, 7, 9, 10, 11, and 12 that assert Buergofol only maintains records for relating to its products for "two years." (*Id.*)

The information Buergofol appears to keep for at least 10 years is directly relevant to, for instance, Buergofol's prior art sales already uncovered by Omega. (*Id*., Exs. A-H.) Additionally, should discovery confirm that Buergofol has a 10-year document retention policy, Omega is entitled to know why Buergofol has not produced documents that existed at least during the 10-year period leading up to Buergofol's initiation of this lawsuit and whether there has been spoliation. "A party's duty to preserve evidence in its possession arises at the first reasonable sign of litigation." *Jones v. Hirschbach Motor Lines, Inc.*, 2022 WL 4354856, *2 (D.S.D. Sep. 20, 2022).

According to Buergofol's response to Omega's Interrogatory No. 7, Buergofol first contemplated patent litigation against Omega in 2019. (Neustel Decl., Ex. W.) According to the Buergofol Declarants' description of Buergofol's document retention policy, Buergofol had documents going back to at least 2009—well before the prior art sales identified by Omega. (*Id*., Exs. A-E.) Buergofol has already produced at least one "Test Certificate" for film sold to Saertex dated March 12, 2012—one day ***after*** the critical date of the '882 Patent (*Id*., Ex. G, p. 2), <u>but inexplicably has not produced a single related document generated before the critical date</u>. With the document retention policy information, Omega and the Court can determine the level and

extent to which Buergofol should produce documents, *e.g.*, from 2009 to present, or whether there has been spoliation of evidence.

Accordingly, Omega seeks an order compelling Buergofol to produce all of Buergofol's document retention policies and litigation hold notices and provide updated and verified responses to Omega's interrogatories and requests for production accordingly.

### H.   Buergofol Must Disclose the Manner, Method and Sources of Its Searches and Indicate Whether It Is Withholding Documents Based on Its Objections.

Rule 34 authorizes a party to request the production of documents "in the responding party's possession, custody, or control." Rule 34(a)(1). Omega submitted multiple discovery requests seeking information relating to prior art and related information, including communications such as emails regarding same. For instance:

> INTERROGATORY NO. 4:
> Identify every item of PRIOR ART to each of the PATENTS-IN-SUIT now known to BUERGOFOL.

(Neustel Decl., Ex. V, Buergofol's Responses to Omega's Interrogatories to Buergofol (Set 1)). *See also id.*, Ex. W, Buergofol's Responses to Omega's Second Set of Interrogatories to Buergofol (6-13), Interrogatory Nos. 11 and 12 (seeking information regarding prior art sales by Buergofol)); and Ex. X, Buergofol's Responses to Omega's Fourth Set of Interrogatories to Buergofol (Nos. 15-16 (seeking information regarding Buergofol's pre-suit investigation of prior art including Buergofol's prior art sales.)) Omega also served numerous requests for production of information relating to prior art. For instance:

> REQUEST FOR PRODUCTION NO. 7:
>    All documents relating to or referring to the qualities, characteristics, specifications, capabilities, properties, composition, additives used in and/or layers of all outer foil made or offered for sale by BUERGOFOL prior to March 11, 2013.

(*Id.*, Ex. N, *see also* Request Nos. 6, 9, 11, 13).

> REQUEST FOR PRODUCTION NO. 1:

> For each Patent-in-Suit, all documents relating to any sale, offer to sell, manufacture, use, or importation of subject matter of any Claim-in-Suit made before the filing date of the earliest application to which the patent claims priority.

(*Id.*, Ex. P, *see also* Request Nos. 25, 65, 67, 73, 78, 80, 88, and Ex. Q).

REQUEST FOR PRODUCTION NO. 98:

> One representative physical sample of each inner tubular film that was made or offered for sale by Buergofol prior to March 11, 2013. This request specifically includes, but is not limited to, a request for a physical sample of each inner tubular film referred to in the following table:

| Arrival Date | Recipient | Shipper | Product Description | Quantity | (Kg) | Bill Of Lading / Master B/L |
|---|---|---|---|---|---|---|
| 11/25/2011 | Light Stream Inc. | Buergofol GmbH | Foils | 13 | 3236 | ETGE928209 / HDMUBMWB1030309 |
| 02/14/2011 | Light Stream Inc. | Buergofol GmbH | Foils, Coextruded Film Unprinted | 9 | 3300 | ETGE926053 / HDMUBMWB0998462 |
| 09/20/2010 | Light Stream Inc. | Buergofol GmbH | Plastic Foils | 4 | 1112 | ETGE915887 / HDMUBMWB0985281 |
| 08/13/2010 | Light Stream Inc. | Buergofol GmbH | Plastic Foils | 3 | 1056 | ETGE915554 / APLU805643414 |
| 06/30/2009 | Light Stream Inc. | Buergofol GmbH | Plastic Foil Slac On 9 Pallets Hts 39201089 | 9 | 2730 | SHKK276503957641 / HDMUBMWB0942387 |

(*Id.*, Ex. R and Ex. S, Buergofol's Responses to Omega's Third Set of Request for Production of Documents and Things to Buergofol (98-108), *see also* Request Nos. 99-108); *see also id*. Ex. T, Omega's Fourth Set of Request for Production of Documents and Things to Buergofol (109-112) and Ex. U, Buergofol's Responses to Omega's Fourth Set of Request for Production of Documents and Things to Buergofol (109-112)).

All of these requests seek discovery directly relevant to Omega's claims of invalidity and unenforceability of the patents-in-suit and Omega's counterclaims and defenses. (Dkt. 94, Omega's Response Brief to Buergofol's Motion for Protective Order to Protect Trade Secrets and

Brief in Support of Omega's Cross Motion to Compel, pp. 12-18; Dkt. 128, Memorandum in Support of Omega's Motion to Compel Buergofol to Produce a Complete Privilege Log, pp. 11-19).

Incredibly, Buergofol failed to provide substantive answers or produce documents responsive to these requests. Omega was forced to uncover the existence of the prior art known to Buergofol on its own. (Neustel Decl., Exs. A-H.) Omega has specifically identified prior art known to Buergofol, Buergofol continues to refuse to produce this highly relevant information or summarily claim it has produced all documents responsive to Omega's discovery requests or listed them on Buergofol's privilege logs, and it had no more responsive documents. (*Id*., Ex. L, July 6, 2023, email from L. Wallace.)

Rule 34 requires a party to make a reasonable search of all sources reasonably likely to contain responsive documents. *Raba,* 2023 WL 2598891, at *3.

> This search can be accomplished several ways but typically involves a *first* step of asking witnesses to gather documents both paper and stored electronically that is reasonably accessible and *second* by identifying data sources that may contain relevant information and running search terms in those data sources. This is not duplicative.

*Benanav v. Healthy Paws Pet Ins.*, 2022 WL 3587982, *6 (W.D. Wash. Aug. 22, 2022) (citations omitted). *See also Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 646 n. 5 (S.D.N.Y. 2019) (noting that "[a] producing party generally has an obligation to collect and review ESI pursuant to its own search protocol (that is, prior to reaching a negotiated ESI protocol)," even if "such a two-step process may result in increased costs for the producing party"). As already explained, Omega, however, has good cause to believe that Buergofol's representations regarding its production of documents are inaccurate. For instance, Buergofol has disclosed two sources of records it maintains but which Buergofol admits it has not searched: its "Warenwirtschaftssystem (ERP

system)" and the "1000 binders" containing the information relating to its products and sales. (*See* Dkt. 75, Buergofol's Motion for Protective Order (Trade Secrets), pp. 11, 15; Dkt. 73, Decl. of F. Schleicher.)

Buergofol also refuses to provide information regarding the manner, method, or sources of its search. Omega repeatedly asked Buergofol's counsel to describe the manner in which it conducted searches, including the types of documents and/or databases searched, and the identity of custodians of Buergofol's records from whom documents were sought. This information is key to determining if there is a discovery dispute, *i.e.*, whether documents exist or whether Buergofol failed to conduct an adequate search.

The information regarding the manner and method of search as well as the sources and custodians of the information and documents searched is relevant and should be disclosed so that discovery can move forward in an efficient manner. *See, e.g.*, *Bell v. Woodward Governor Co.*, 2004 WL 3121301, *4 (N.D. Ill. Dec. 20, 2004) (recognizing that Defendant is directed to: (1) confirm that a reasonable search for documents was conducted and indicate what the manner of the search was, (2) produce responsive documents, (3) confirm if no responsive documents exist, and (4) confirm instances where the documents have been destroyed, indicating by whom and when. . . .")). Additionally, if a party claims that the documents responsive to a discovery request or identified by Omega do not exist, it must be certified that the documents do not exist. *Tovares v. Gallagher Bassett Servs.*, 2020 WL 474055, *8 (D. S.D. Aug. 14, 2020) ("To the extent materials do not exist as it pertains to Request Nos. 20 and 21, Defendants shall certify to Plaintiff that no responsive materials exist.")

Beyond all that, Buergofol steadfastly refuses to indicate if it is withholding information or documents based on objections it has made to Omega's requests for production.  (Neustel Decl.,

¶ 14(k).) Rule 34(b)(2)(C) specifically provides: "An objection must state whether any responsive materials are being withheld on the basis of that objection." When Buergofol simply tells Omega that it "has no additional documents to produce," Omega cannot determine whether Buergofol has not produced certain documents because they do not exist or because Buergofol is withholding the documents based on one or more of its very expansive objections. For example, does Buergofol have no documents regarding its prior art sales, or is Buergofol withholding those documents based on meritless objections to producing "trade secrets" or "prior art" generally, or based on Buergofol's frivolous objections that the information is not relevant or the request is "vague"?

Thus, Omega seeks an order compelling Buergofol to provide the following information:

(1) the sources of information (databases, other ESI repositories, paper documents), custodians of records and other repositories of information that may contain responsive information and documents;

(2) the time, place and manner and methods employed by Buergofol to search for responsive information and documents; *e.g.*, ESI search protocol;

(3) whether those sources were searched for documents and things that could qualify as prior art and according to what method or protocol;

(4) whether specific prior art identified by Omega was searched for and when and according to what method or protocol; and

(5) if Buergofol claims that responsive documents or the documents identified by Omega do not exist, Buergofol and its attorneys must certify either that (a) the documents do not exist or (b) have been destroyed, indicating by whom and when.

## IV.   OMEGA'S MOTION IS TIMELY.

During meet-and-confer discussions, Buergofol asserted that Omega cannot bring this motion to compel, alleging it would be untimely in light of the Court's statement in its original

scheduling order of June 18, 2023, that "[m]otions to compel discovery should be filed within 14 days after the subject matter of the motion arises" (Dkt. 136, p. 8; Neustel Decl., Ex. L.) According to Buergofol, the parties *must* file a motion to compel within 14 days of receipt of the opposing party's objections and service of deficient discovery. Buergofol's position should be rejected on numerous grounds.

First, the timetable on which Buergofol insists, based on its interpretation of the Court's order, would be extremely onerous and prejudicial in a complicated patent litigation, and in particular in this case where Omega continues to face inordinate meritless objections and deficient discovery responses from Buergofol. Under Buergofol's interpretation, Omega would be required to file motions to compel before deficiencies are fully appreciated and understood, fully vetted among the parties, and, before hope of resolution has passed.

Second, as the Court can see from the Neustel Declaration and exhibits thereto, Omega has met and conferred in good faith—all with the goal of trying to *avoid* filing motions to compel. Omega's effort began before the Court issued its scheduling order and thus Omega did not have the benefit of the Court's order at the time. Omega is acutely mindful of the Court's time and the significant number of motions already filed in this lawsuit. Therefore, Omega has made repeated efforts to reach agreement with Buergofol to avoid Court intervention. For this motion, Omega waited to consolidate outstanding discovery issues into a single motion to compel, rather than filing serial motions following each meet and confer, which would have impinged even more on the Court's valuable resources.

Third, Omega's meet-and-confer efforts have become more protracted due to difficulties Omega has had with Buergofol's counsel in scheduling the conferences, difficulty in extracting helpful information from Buergofol, and the sheer number of disputes. For example, during recent

meet-and-confer calls to resolve the large number of discovery issues, Buergofol's counsel has not only refused to address Omega's basic questions, such as if a document still exists, but also threatened Omega's counsel that Buergofol will seek sanctions if Omega were to file a motion to compel.  During the July 6, 2023, meet-and-confer call, for example, Buergofol's counsel refused to inform Omega's counsel whether Buergofol still has a sample of the 2012 Sudpack film it tested with BASF in 2020, and, at the same time, Buergofol's counsel threatened to seek sanctions against Omega's counsel were Omega to file a motion to compel production of the 2012 Sudpack film. (Neustel Decl., ¶ 14.f.)

Fourth, Omega (apparently unrealistically) was optimistic after the Court's July 14, 2023, Order compelling Buergofol to produce prior art and leveling sanctions against Buergofol, that Buergofol would begin to meet and confer in a meaningful manner to try to resolve discovery disputes. Thus, shortly after the Court's Order, Omega sent a letter to Buergofol summarizing the outstanding disputes and seeking new cooperation from Buergofol. (Neustel Decl., Ex. M.) Unfortunately, Omega's efforts were not successful. Buergofol ignored Omega's letter and instead has sought to even further delay discovery mandated by the Court's Order by filing a frivolous "Motion to Clarify."

The parties have divergent views of the meaning and practical application of the Court's Order stating that the parties "should" files motions to compel discovery within 14 days after the subject matter of the motion arises. Therefore, Omega seeks clarification of the Court's Order. In addition, if Omega has inadvertently failed to comply, Omega respectfully asks the Court to relieve Omega from that error and accept the filing of this Motion to Compel.

## V.    CONCLUSION

Omega respectfully requests entry of an order compelling Buergofol to:

- Produce a complete copy of all documents and communications relating to Buergofol's cancellation proceeding filed with respect to German Patent No. DE202010016048U1;

- Seek copies of, and produce, the file histories for all patent related to the '269 Patent, including the foreign patent applications and patents that are counterparts to the '269 Patent;

- Produce the second BASF analysis of the 2012 Sudpack film requested by Dr. Kurt Stark;

- Produce all emails, complete email strings and all attachments to all emails in native format;

- Produce all documents relating to Buergofol's document retention policies and litigation hold notices and provide updated and verified responses to Omega's interrogatories and requests for production accordingly;

- Provide a full response to Interrogatory No. 8 regarding Buergofol's efforts, offers, requests and/or refusal to license the '269 Patent to Loparex;

- Produce all documents responsive to Request for Production No. 85 relating to Buergofol's efforts, offers, requests, and/or refusal to license the '269 Patent;

- Provide the following information to Omega:

  (1)    the sources of information (databases, other ESI repositories, paper documents), custodians of records and other repositories of information that may contain responsive information and documents;

  (2)    the time, place and manner and methods employed by Buergofol to search for responsive information and documents; e.g., ESI search protocol;

(3)    if Buergofol maintains that responsive documents or the documents identified by Omega do not exist, Buergofol and its attorneys must certify either that (a) the documents do not now exist or (b) previously existed but have been destroyed, indicating by whom and when.

Dated this 26th day of July, 2023.

                                    DENEVAN FALON JOYCE PROF. LLC

                                    /s/ *Meghann M. Joyce*
                              BY:   Meghann M. Joyce
                                    100 S. Dakota Ave, Second Floor
                                    Sioux Falls, SD 57104
                                    Telephone:  605.219.29465
                                    Email:    meghann@devonfallon.com

                                    Michael S. Neustel *(admitted pro hac vice)*
                                    Michelle G. Breit *(admitted pro hac vice)*
                                    Monte M. Bond *(admitted pro hac vice)*
                                    NEUSTEL LAW OFFICES, LTD
                                    2534 South University Drive, Suite 4
                                    Fargo, ND 58103
                                    Telephone: 701.281.8822
                                    Email:    michael@neustel.com
                                              michelle@neustel.com
                                              monte@neustel.com

                                    *Attorneys for Defendant Omega Liner Company, Inc.*