UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>                Plaintiff,<br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>                Defendant. | 4:22-CV-04112-KES<br><br>ORDER DENYING MOTION FOR PROTECTIVE ORDER |

Plaintiff, Buergofol GmbH, alleges that defendant, Omega Liner Company, Inc., has infringed two of its patents for inner films, also referred to as inner foils, used in ultraviolet cured-in-place pipe liners. Docket 1. Buergofol moves for a protective order relieving it of any obligation to respond to Omega's Requests for Production 6, 7, 23, and 24 and Interrogatories 11 and 12. Docket 72 at 1. Buergofol argues a protective order is necessary to limit discovery into its trade secrets and to avoid Omega imposing an undue burden on Buergofol. *Id.* Buergofol also moves for attorneys' fees. *Id.* Omega opposes the motion for protective order and for attorney's fees.[1] Docket 92. Because Buergofol failed to meet and confer with Omega in good faith prior to filing its motion for protective order, the motion for protective order is denied.

---

[1] Omega also cross-moves to compel Buergofol to respond to some of the discovery requests that are the subject of Buergofol's motion for protective order, as well as some additional discovery requests, and for attorneys' fees. *See* Docket 92. Omega's motions to compel and for attorneys' fees will be addressed in a separate order.

## BACKGROUND

On November 23, 2022, Omega served Buergofol with its first set of Requests for Production (Nos. 1-14). Docket 74 ¶ 3; Docket 74-1. Buergofol served its responses on December 23, 2022. Docket 74 ¶ 4; Docket 74-2. Request 6 seeks "[a]ll documents relating to or referring to the qualities, characteristics, specifications, capabilities, properties, composition, additives used in and/or layers of all inner foil made or offered for sale by BUERGOFOL prior to March 11, 2013." Docket 74-1 at 6. Request 7 seeks the same for outer foil. *Id.*

Buergofol objected to Request 6, claiming that the request was not relevant because it sought "confidential, proprietary, or trade secret information" for types of inner foil that were never incorporated into liners in the United States. Docket 74-2 at 8. Buergofol also stated that there were no such documents for inner foil made or offered in the United States or offered for sale in the United States prior March 11, 2023 because Buergofol does not retain such records for more than two years. *See id.* In the same response, Buergofol also stated that it would produce all such records located after a reasonable search. *Id.*

Buergofol made the same objection to Request 7 as it did to Request 6. *Id.* at 9. Buergofol again stated that it did not keep such records for more than two years, but unlike with Request 6, Buergofol explained that it had already conducted a reasonable search for responsive documents but had found none. *Id.*

2

Omega served its second set of Requests for Production (Nos. 15-97) and its second set of Interrogatories (Nos. 6-13) on January 31, 2023. Docket 74 ¶¶ 5-6; Docket 74-3; Docket 74-4. Request 23 seeks "[d]ocuments related to each product (including each version thereof) sold by Buergofol to Omega Liner Company, Inc. sufficient to show the structure of each component part of each product (or version thereof)." Docket 74-3 at 8. Request 24 seeks "[m]anufacturing specifications for each product (including each version thereof) sold by Buergofol to Omega Liner Company, Inc." *Id.*

Interrogatory 11 seeks information about "each shipment of film by Buergofol prior to June 15, 2009, regardless of its intended use, that had five layers or more with one external layer comprised of at least one thermoplastic olefin homo- or copolymer and another external layer comprised of at least one homo- and/or copolyamide[.]" Docket 74-4 at 8. Interrogatory 12 seeks similar information about "each shipment of film by Buergofol prior to March 11, 2012[,] that included a coating[.]" *Id.*

The initial deadline for Buergofol to respond to the second set of Requests for Production and Interrogatories was March 2, 2023. Docket 93-9 at 2. Omega agreed to a 30-day extension of that deadline, at Buergofol's request. *Id.* Buergofol believed that their new deadline to respond was March 31, 2023.[2] Docket 76 at 2.

---

[2] Omega claims that Buergofol's actual deadline to respond was Monday April 3, 2023, because 30 days after March 2, 2023, was *Saturday,* April 1, 2023, making the actual deadline the next weekday—Monday April 3, 2023. *See* Docket 93-9 at 2-3. It was not until after Buergofol filed its motion for protective order that this dispute about the deadline became apparent to both

3

On March 21, 2023, Buergofol emailed Omega asking to meet and confer regarding Requests for Production 23, 24, and 25. Docket 93-6 at 10. Buergofol explained that these requests "call[ed] for the production of trade secret information and other highly confidential R&D information as well as sensitive commercial information[,]" and that responding to the requests would be "tremendously time consuming." Docket 93-6 at 10. Buergofol then stated that it "ha[d] determined that Buergofol will not be producing any documents responsive to requests 23-25[,]" but would instead "serve formal objections, and [would] simultaneously move for a protective order under Rule 26(c). The filing of the motion for protective order can be avoided were Omega simply to withdraw requests 23-25." *Id.* Buergofol asked Omega to provide a time the parties could meet and confer. *Id.*

In its response two days later, Omega responded to Buergofol's arguments and suggested the parties meet and confer after Omega received Buergofol's full objections so the parties could address issues relating to all the requests at one time. *Id.* at 8-9. In response, Buergofol reiterated that it would be moving for a protective order unless Omega withdrew Requests 23-25, and that "[l]ocal practice calls for the protective order motion to be filed concurrently with serving objections to the discovery requests, which are due [March 31]." *Id.* at 6-7.

Two days later, on March 27, Omega withdrew Request 25 because it realized that "Request Nos. 6 and 7 . . . encompass the information requested

---

parties. *See id.*

4

in Document Request No. 25, and that Buergofol has already agreed to produce the information" for those requests, noting that Omega "anticipates that Buergofol will produce responsive documents forthwith." Docket 93-7 at 8; Docket 93-8 at 5. Omega informed Buergofol that Buergofol "d[id] not need to produce any confidential documents (including trade secrets) until the Court enters a general protective order[,]" that Buergofol "can simply serve its objections and rely upon those objections[,]" and "[i]f Omega disagree[d] with the propriety of the objections, the parties can then meet in ordinary course[.]" Docket 93-8 at 6. Omega noted that it was "unaware of any rule or local practice that require[d] [Buergofol] to file a motion for protective order concurrently with [its] objections[,]" and that Omega was "happy to meet and confer with [Buergofol] after [Omega] receive[d] and review[ed] [Buergofol's] objections." *Id.*

Later that day, Buergofol indicated for the first time that it had objections beyond Requests 23-25. *See* Docket 93-7 at 8 ("The unduly burdensome issue is not actually limited to particular [Requests for Production] 23-25."). Over the next few hours, Buergofol's counsel left two voicemails for Omega's counsel and emailed Omega's counsel several times. *Id.* at 6-7. In one email, Buergofol's counsel accused Omega's counsel of purposefully avoiding Buergofol's call because Omega's counsel had been "there" an hour prior when Omega's counsel emailed about withdrawing Request 25. *See id.* at 7. In another email, Buergofol's counsel removed the attorney for Omega that had been sending all of Omega's previous emails, asking the remaining two

5

attorneys if either of them was available to meet and confer about the protective order. *Id.* at 6. Buergofol also stated that its "current plan" was to file the motion for protective order the next day, Tuesday, March 28. *Id.* at 7.

Omega's counsel responded shortly thereafter, explaining that they were "not in a position to take unscheduled meet and confer calls" because "Omega [was] represented by multiple attorneys who may need to be included . . . ." *Id.* at 6. Omega noted that Buergofol "ha[d] provided no justification for demanding that the parties meet and confer prior to Buergofol serving its response . . . and giving Omega sufficient time to consider all of Buergofol's responses in advance." *Id.* Omega offered April 7 as a date to meet and confer. *Id.*

In response, Buergofol reiterated that the meet and confer must happen "now or sometime tomorrow" because after that, Buergofol "will be busy doing other things, and plan[s] to file the motion tomorrow[,]" March 28. *Id.* at 5. According to Buergofol, the meet and confer could be accomplished "in 15 minutes." *Id.* Buergofol then informed Omega that Omega's withdrawal of Request 25 "was no solution at all because [Requests 6 and 7] still exist, and Omega is still demanding full compliance with those objectional requests[,]" even though Buergofol had previously represented that it had or would soon conduct reasonable searches for documents responsive to Requests 6 and 7. *Id.; see* Docket 74-2 at 8-9.

The next day, March 28, Omega acquiesced to Buergofol's demand that the parties meet and confer prior to Omega receiving Buergofol's formal

6

objections, noting that one of its attorneys who needed to be present was out of the office until March 30. Docket 93-6 at 4-5. Shortly thereafter, still on March 28, Buergofol asked Omega to "[p]lease meet and confer . . . in the next three hours." Docket 93-7 at 4. Buergofol represented that at this meet and confer, the parties could "discuss all issues." *Id.* But in another email a few hours later, Buergofol stated that "[Omega] may not condition [its] willingness to meet and confer about Buergofol's discovery dispute on [Buergofol']s willingness to discuss [Omega's] issues during the same meeting." Docket 93-6 at 3. Buergofol reiterated that unless Omega withdrew Request 23-25, Buergofol would file its motion for protective order, and that Buergofol did not consider Request 25 withdrawn. *See* Docket 93-7 at 4.

On March 29, Omega offered to meet and confer at 1:30 p.m. central time on March 31. Docket 93-6 at 2. Rather than letting Omega know if they were available at that time, Buergofol's counsel again asked Omega to meet "in the next few hours" about the motion for protective order, and that they "[we]re not interested in discussing any other [discovery] issues at this time." Docket 93-7 at 3. Omega again reiterated that there was no need to meet and confer before Buergofol served its objections but maintained that Omega could meet on March 31 at 1:30 p.m. central time. *Id.* at 2.

On March 30, Buergofol filed its motion for protective order. Docket 72. On March 31 at 1:30 p.m. central time the parties conferred telephonically about a different discovery dispute. Docket 93 ¶ 13; *see* Docket 94 at 29.

7

**DISCUSSION**

### I.  Legal Standard

Federal Rule of Civil Procedure 26(c)(1) requires motions for a protective order to "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Likewise, District of South Dakota Civil Local Rule of Procedure 37.1 requires that "[a] party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute." A court may deny a discovery motion for failure to comply with the meet-and-confer requirement. *See Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006).

The meet-and-confer requirement is not an empty formality. *Pierce v. Fremar, LLC*, No. CIV. 09-4066, 2010 WL 3420169, at *1 (D.S.D. Aug. 27, 2010) (citation omitted). The parties "must make genuine efforts to resolve the dispute by determining precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999). The parties must "meaningfully discuss each contested discovery dispute." *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 4:20-CV-04058, 2023 WL 356121, at *3 (D.S.D. Jan. 23, 2023) (citation omitted). "In determining whether a party has complied with its meet-and-confer obligations,

8

the court 'looks to all surrounding circumstances to determine whether the movant's efforts were reasonable.' " *LoganTree LP v. Garmin Int'l, Inc.*, 339 F.R.D. 171, 178 (D. Kan. 2021) (quoting *Ross v. Pentair Flow Techs., LLC*, 2020 WL 4039062, at *1 (D. Kan. July 17, 2020)).

The quality of parties' contacts in attempting to resolve the dispute is more important than the quantity of their contacts. *See id.; Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 723 (D.N.M. 2017) (finding that Rule 37(a)(1) requires more than "exchanging cursory and perfunctory emails or letters which simply restate each other's positions on the items of discovery."). In evaluating good faith, courts "frown[] upon the movant's setting of an arbitrary deadline . . . ." *Jim Hawk*, 2023 WL 356121, at *4 (citing *Cotracom Commodity Trading Co.*, 189 F.R.D. at 459); *see also Navient Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186 (3d Cir. 2003) (demanding more complete answers by the end of the week was not conferring in good faith). Being antagonistic with opposing counsel is not conferring in good faith. *See Navient Mktg. Sols., Inc.*, 339 F.3d at 186-87 (not good faith where counsel's approach was "shoot first and find out later," and "counsel's responses were not always commensurate with defendant's violations" (cleaned up)).

## II. Buergofol Did Not Meet and Confer in Good Faith Prior to Filing Its Motion for Protective Order

Buergofol asserts that it made a good faith effort to resolve this dispute without court intervention because it "requested eight times in writing over the . . . ten days [prior to the motion] to meet and confer telephonically with Omega's counsel, but . . . Omega's attorneys . . . failed to make themselves

9

available for a telephonic meet and confer prior to when Buergofol's discovery responses [we]re due and to when Buergofol's motion for a protective order must be filed." Docket 76 at 1.

Much of the dispute between the parties about the timing for a telephonic meet and confer comes from the parties' disagreement about the required timing for filing a motion for protective order. Buergofol's understanding is that, according to "local practice" in this court, a motion for protective order must be filed by the same deadline as responding to the resisted discovery. Docket 93-6 at 7; *see* Docket 75 at 10. Omega disputed that local practice required this, and it initially offered a time to meet and confer via phone a few days after Buergofol's responses were due. Docket 93-7 at 4-5; Docket 93-8 at 6.

Although Buergofol claimed this timing was required by this court's "local practice," Buergofol pointed to no authority for this claim. *See* Docket 93-6 at 7. Indeed, nothing in the Local Civil Rules of Procedure require a party to file for a protective order by the same deadline as responding to the resisted discovery. *See* Civil LR 37.1; *Pochat v. State Farm Mut. Auto. Ins. Co.*, No. 08-5015, 2008 WL 5192427, at *2 (D.S.D. Dec. 11, 2008) (defendant served discovery responses on June 16, 2008, and filed its motion for protective order on October 7, 2008). The cases Buergofol cites stand only for the general proposition that if a party wants to be relieved from its duty to respond to discovery, it must move for a protective order. *See* Docket 75 at 10 ("[I]t is [the resisting party's] duty to move for a protective order." (quoting *Maples v.*

10

*Safeway*, No. 5:14-cv-05082, 2016 WL 444476, at *3 (D.S.D. Aug. 23, 2016))). These cases do not dictate when a motion for protective order must be filed.

Buergofol is correct that it was not permitted under the Federal Rules of Civil Procedure to "simply fail to produce responsive documents that [it] considers to be trade secrets[,]" but the Rules do permit a party to serve objections to a request for production without ever filing for a protective order. Docket 75 at 10; *see Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1362 (Fed. Cir. 1990) (explaining that "[t]he plain terms of the rules of civil procedure" give parties responding to document requests four options: (1) agree to produce the documents, (2) object to the request, (3) move for a protective order, or (4) ignore the request). Rule 37(d) allows a requesting party to move for sanctions when a party both does not respond and has not filed a motion for protective order, but that provision only applies when the resisting party serves no response at all,[3] not when it responds with objections. *See Fox v. Studebaker-Worthington Inc.*, 516 F.2d 989, 995 (8th Cir. 1975); *Burgett v. Mnuchin*, 2020 WL 12676387, at *4 (W.D. Mo. Aug. 31, 2020); 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2291 (3d ed. Apr. 2023). Thus, Buergofol could have served its responses and objections on Omega on March 31, 2023, while meeting and conferring with Omega the following week, as Omega suggested, before filing a motion for protective order.

---

[3] Some circuits hold that a response can be "so evasive and misleading as to constitute a failure to respond[,]" but that is not at issue here. *See Badalamenti*, 896 F.2d at 1363 (collecting cases).

11

Buergofol's belief that it had to file a protective order by March 31 does not absolve it of responsibility for the scheduling challenges. Omega served Buergofol with Requests 23 and 24 on January 31, 2023. Docket 74 ¶¶ 5-6; Docket 74-3. Buergofol waited 49 days, until March 21, to inform Omega that the sought-after documents contained trade secrets and other confidential information and thus Buergofol would not be producing any responsive documents. *See* Docket 93-6 at 10. This left the parties with just over a week, under Buergofol's understanding, to schedule a time to meet and confer telephonically and attempt to resolve the matter without involving the court. Such a late effort to resolve the dispute weighs against a finding that Buergofol attempted to meet and confer in good faith. *See Atmosphere Hosp. Mgmt., LLC v. Curtollo*, No. 5:13-CV-05040-KES, 2015 WL 144586, at *1-2 (D.S.D. Jan. 12, 2015) (plaintiff, who believed it needed to move for protective order by deadline for objections, tried to meet and confer with defendant within five days after receiving discovery requests for proprietary information); *Navient Mktg. Sols. Inc.*, 339 F.3d at 186 (demanding more complete answers by the end of the week was not conferring in good faith).

Additionally, even though Buergofol believed that March 31 was its deadline to file its motion for protective order, on March 27 Buergofol demanded that Omega meet and confer by the end of business the next day, March 28, because after that date, Buergofol's attorneys would "be busy doing other things[.]" Docket 93-7 at 5; *Jim Hawk*, 2023 WL 356121, at *4 (Courts "frown[] upon the movant's setting of an arbitrary deadline . . . ."). Buergofol

12

informed Omega that it would be filing the motion at the end of the day on March 28, cutting an already-short window to meet and confer by three full days. Docket 93-7 at 5.

Despite Omega acquiescing to Buergofol's' demand to meet and confer prior to receiving Buergofol's objections, Buergofol still blames its decision to prematurely file its protective order on Omega. *See* Docket 76 at 2. On March 29, Omega proposed a telephonic meet-and-confer on March 31 at 1:30 pm central time. Docket 93-6 at 2. Buergofol suggests that Omega's offer to meet on March 31 at 1:30 p.m. central time, "just three and half hours before end of business on the last day on which this motion can be filed[,]" is evidence that it is Omega that failed to meet and confer in good faith. *See* Docket 76 at 2. But Buergofol was apparently available at Omega's proposed time because the parties did have a phone call at that time, but by then Buergofol had already filed its motion. *See* Docket 93 ¶ 13; Docket 72. And given Buergofol's belief that it would only take "15 minutes" to "go over the issues[,]" it is not credible that the timing of Omega's proposed meet-and-confer was the reason that Buergofol filed its motion before the teleconference with Omega. *See* Docket 93-7 at 5. Had Buergofol waited until after this teleconference to file its motion, the parties could have narrowed the dispute, or they could have agreed to another extension for Buergofol. Had the parties resolved nothing during this phone call, Buergofol could have immediately filed its motion, which was ready to be filed by the morning of March 28. *See id.* at 4.

Buergofol also seeks to push responsibility onto Omega because Omega wanted to discuss multiple discovery issues in a single meet-and-confer call. *See* Docket 105 at 20 ("Omega refused to meet and confer about Buergofol's intended discovery motion unless and until Omega could discuss its own issues in the same meeting." (capitalization altered)). Buergofol has repeatedly demanded that meet-and-confer calls discuss only a single issue, as defined by Buergofol. *See, e.g.,* Docket 143 at 7 ("Buergofol unreasonably refused to meet and confer with Omega at all unless the conversation could focus only on Buergofol's issues with Omega's discovery responses, and not at all on Omega's issues with Buergofol's discovery responses."). Scheduling such calls requires coordinating the schedules of multiple attorneys for each party. Particularly given the number of discovery disputes the parties have already encountered, discussing more than one issue in each call is a reasonable approach to "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Categorically refusing to do so is not conferring in good faith.

There are several other indicators that Buergofol was not making a good faith effort to meet and confer with Omega and attempting to resolve the dispute short of court intervention. From its first email about the dispute and throughout the email exchanges, Buergofol put forward only a single solution to the dispute – that Omega fully withdraw its requests. *See* Docket 93-6 at 7, 10; Docket 93-7 at 4-5.; *see Benavidez*, 319 F.R.D. at 723 (good faith requires more than "exchanging cursory and perfunctory emails or letters which simply

14

restate each other's positions on the items of discovery"). Buergofol's representation that the meet and confer should only take "15 minutes" demonstrates to the court that Buergofol approached its obligation to meet and confer as an "empty formality" and not as one where the parties make a meaningful effort to resolve the dispute. *See Pierce*, 2010 WL 3420169, at *1.

Although Buergofol points to its "eight requests" to meet and confer as evidence that it attempted to meet and confer in good faith, Docket 74 ¶ 7, Buergofol is apparently counting four emails it sent to Omega in the span of approximately 4.5 hours on a single day as four separate requests to meet and confer. *See* Docket 93-7 at 5-8. Buergofol's attorneys cannot simply demand that attorneys for another party meet with them immediately or within three hours of an email, particularly when the urgency is of Buergofol's own making. *See id.* at 8 ("I will just call you now so that we can get this done."); *id.* at 4 ("Please meet and confer with us under LR 37.1 in the next three hours."); *id.* at 3 ("Darien and I are available now, and for the next three hours.").

Buergofol's counsel's antagonistic attitude toward Omega's counsel also weighs in favor of finding that Buergofol did not meet and confer in good faith. *See Navient Mktg. Sols., Inc.*, 339 F.3d at 186-87. After leaving a voicemail for Michael Neustel, one of Omega's attorneys, Lester Wallace, an attorney for Buergofol, accused Neustel of ignoring his phone call merely because Neustel had sent Wallace an email an hour prior. Docket 93-7 at 7 ("I suspect you are there because you had the time to send the letter to me – and that was only an hour ago.").

15

Finally, although the email exchanges focus almost exclusively on Requests 23 and 24, Buergofol moves to be relieved from any obligation to respond to Requests 6 and 7 and Interrogatories 11 and 12, in addition to Requests 23 and 24. *See* Docket 72. There are only cursory references to Requests 6 and 7 in the emails leading up to Buergofol's motion. After learning that Omega was withdrawing Request 25 because Omega considered Request 25 duplicative of Requests 6 and 7, Docket 93-8 at 5, Buergofol stated that Omega's withdrawal of Request 25 "was no solution at all because [Requests 6 and 7] still exist, and Omega is still demanding full compliance with those objectional requests." Docket 93-7 at 5. Although Buergofol had previously noted objections to Requests 6 and 7 on relevancy and undue burden grounds, Buergofol had also represented that it had or would conduct a reasonable search for documents responsive to those requests. Docket 74-2 at 8-9. Now, in its protective order, Buergofol seeks to be relieved of any obligation to respond to either request. *See* Docket 72. And at no point did Buergofol ever inform Omega that Interrogatories and 11 and 12 would be a part of its motion. *See generally* Dockets 93-6, 93-7, 93-8. The court thus finds that Buergofol failed to meet and confer or attempt to meet and confer in good faith before it filed its motion for protective order, and the motion is denied.

### III.  Awarding Attorneys' Fees

Rule 26(c)(3) instructs that "Rule 37(a)(5) applies to the award of expenses" for motions for protective orders. Fed. R. Civ. P. 26(c)(3). Under Rule 37(a)(5), attorneys' fees may only be awarded if a motion is granted in full or in

part. *See* Rule 37(a)(5)(A), (C). Because Buergofol's motion for protective order is denied in full, the court must also deny its request for attorneys' fees.

## CONCLUSION

Because the court finds that Buergofol failed to meet and confer in good faith prior to filing its motion for protective order, it is

ORDERED that the motion (Docket 72) is denied.

Dated August 3, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE