UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>     Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>     Defendant. | Civil Action No.: 22-cv-04112-KES<br><br>**BUERGOFOL'S OPPOSITION TO OMEGA'S MOTION TO COMPEL ATTORNEY DARIEN WALLACE'S DISCLOSURE REGARDING APPLICATION OF PATENT PROSECUTION BAR** |

**TABLE OF CONTENTS**

**Page**

I. Introduction .................................................................................................. 1

II. No "Separate Certification" Was Filed ......................................................... 2

III. No Meet-And-Confer For This Motion ........................................................ 3

IV. The Motion Has No Basis In Law - Ad Hoc Filing Outside The Rules ........... 4

V. This Motion To Force An Attorney To Take An Action Has No Basis Under The General Protective Order In This Case ....................................... 5

VI. The Motion Is A Ploy To Delay Omega's Production Of Responsive Discovery ................................................................................................... 7

VII. This Motion Is Being Used To Cover Up A Dishonest Declaration That Was Used To Convince The Court To Impose The Patent Prosecution Bar .......... 11

VIII. Conclusion ................................................................................................ 15

Plaintiff Buergofol GmbH ("Buergofol") files this "Buergofol's Opposition To Omega's Motion To Compel Attorney Darien Wallace's Disclosure Regarding Application of Patent Prosecution Bar" in opposition to Omega's motion (Dkts. 168-170) to compel Darien Wallace to inform Omega of how he will elect to comply with the patent prosecution bar of the general protective order in this case. (Dkt. 131).

## I.     Introduction.

Omega has brought this so-called "motion to compel" in order to create an excuse for its willful refusal to produce responsive discovery on time.  Omega has refused to produce responsive discovery based on the pretext that Buergofol attorney Darien Wallace must first inform Omega of his decision to prosecute or litigate under Section 8 of the Court's general protective order (Dkt. 131).  However, the patent prosecution bar section of the protective order does not require Darien Wallace to notify Omega of his election between litigation and prosecution before Omega must produce any "attorneys' eyes only" information that would trigger a patent prosecution bar.  To the contrary, the protective order provides that the patent prosecution bar does not begin until Darien Wallace first receives access to "non-public technical information, excluding financial information, non-technical business information, or information that can [be] obtained through reverse engineering" (Dkt. 131, 11:23-25).  Omega's demand for an early election by Darien Wallace is an attempt to expand the scope of the patent prosecution bar.  If Omega never produces any "non-public technical information, excluding . . . information that can obtained through reverse engineering," then the patent prosecution bar never begins according to the terms of the protective order.  Omega's motion regarding the prosecution bar should be denied, but Omega's tactics in bringing the motion should be recognized for

what they are—a ploy to delay discovery and to cover up that fact that the prosecution bar was obtained based on a dishonest declaration from Omega.

II.     **No "Separate Certification" Was Filed.**

No "separate certification" as required by DSD LR 37.1 was filed, and on that basis the motion should be denied, if in fact LR 37.1 is truly a requirement for a discovery motion. This Court has a local rule stating, "A party filing a motion concerning a discovery dispute ***must file a separate certification*** describing the good faith efforts of the parties to resolve the dispute." D.S.D. LR 37.1 (emphasis added) Recounting in the body of a motion what efforts the movant made to resolve the discovery dispute is not the filing of a "separate certification." *See Gard v. Dooley*, No. 4:14-cv-04023-LLP, 2017 WL 782279, 2017 BL 61826, at *3 (D.S.D. Feb. 28, 2017); *Highmark, Inc. v. Northwest Pipe Co.*, No. 10-cv-5089-JLV, 2012 WL 997007, 2012 BL 454983, at *4 (D.S.D. Mar. 23, 2012). The declaration of Michael Neustel (Dkt. 170) is not a separate certification. But more importantly, the declaration of Michael Neustel (Dkt. 170) does not declare that Omega ever informed Buergofol that Omega would file a motion requesting the Court to order Darien Wallace to inform Omega of what Darien Wallace "intends." The declaration of Michael Neustel (Dkt. 170) does not declare that Omega ever gave Buergofol notice that Omega planned on filing a proposed motion requesting the Court to order Darien Wallace to "provide information as to how his firm will maintain an ethical wall" between Mr. Wallace and other attorneys in his firm. The declaration of Michael Neustel contains a mere six lines (paragraph 5) that make oblique reference to "a meet-and-confer," but that meet-and-confer (August 1, 2023) was a meet-and-confer called by Buergofol's counsel. That meet-and-confer was regarding Omega's failure to answer Buergofol's interrogatories 7 and 8. The Neustel declaration (less than two pages in length including the court header

on the first page) does not declare that a meet-and-confer on an Omega-proposed "motion to compel" was ever held. It cannot declare that. Moreover, the declaration cannot be a separate certification describing any good faith proposal Omega made to resolve the dispute because in fact Omega never made any proposal for resolution. For many reasons, the Neustel declaration (Dkt. 170) is not a "separate certification." LR 37.1.

Buergofol requests clarification as to whether the requirement of a "separate certification" is a mere formality that can be dispensed with. If, however, the "separate certification" is a strict requirement, then Omega's motion should be denied for failure to comply with LR. 37.1.

### III. No Meet-And-Confer For This Motion.

Not only did Omega fail to file a "separate certification," but Omega also failed to conduct a meet-and-confer on the topic of Omega's proposed motion to ask the Court to order Darien Wallace to "inform" Omega of whether Mr. Wallace "intends" in the future to conduct patent prosecution, and to order Darien Wallace to "provide information" to Omega about an ethical wall. The "meet-and-confer" that Omega references in its motion papers, and that Omega would have the Court conclude was a proper meet-and-confer, was in fact a meet-and-confer scheduled by Buergofol with an agenda of Buergofol's proposed motion to compel Omega to provide full and complete answers to Buergofol's interrogatories 7 and 8. (Dkt. 169, 5:10-13) There was no meet-and-confer discussion about this "motion to compel" (Dkt. 168). Buergofol and Omega never conferred about a proposed "motion to compel" to be filed by Omega, nor did Omega ever make any proposal for resolving the discovery dispute issue. Therefore, Omega could not have filed a "separate certification" describing the good faith efforts that Omega made to resolve the dispute. Omega never made any such proposal. Rather, Omega simply commanded

Darien Wallace to inform Omega whether he would elect to litigate or prosecute despite there being no authority for Omega to issue such a commandment. There was no conferring regarding the issue—just an ultimatum.

If the Court does not deny this motion due to a failure to meet and confer on the particular discovery motion filed, then Buergofol requests that the Court also waive this requirement for Buergofol's motions to compel. If the "separate certification" requirement of LR 37.1 and the meet-and-confer requirement can be dispensed with as formalities as Omega has done, then Buergofol requests that the Court treat Buergofol in the same manner as it treats Omega and let Buergofol file discovery motions without separate certifications and without conducting meet-and-confers at which the parties discuss the intended discovery motion.

**IV.     The Motion Has No Basis In Law–Ad Hoc Filing Outside The Rules.**

Omega's motion is inaccurately entitled "motion to compel," but the motion is not a motion to compel under the Federal Rules of Civil Procedure. The motion is not a motion to compel Darien Wallace to comply with any Federal Rule of Civil Procedure that Mr. Wallace has not complied with, nor is it a motion to compel Darien Wallace to comply with any court order that Mr. Wallace has not complied with. Accordingly, the motion is not a motion to compel pursuant to Rule 37(a). Not only is the Omega motion not a motion to compel, but it is also not a motion for a protective order under Rule 26(c). Omega seeks to dispense with the established requirements for filing such motions. The motion cites no legal authority or precedent for its ad hoc request. No authority, precedent or rule is cited that would authorize the filing of an ad hoc motion to move the Court to place restrictions on opposing counsel's actions. Is a litigant in this Court permitted to file an ad hoc motion paper that makes a backhanded slight against opposing counsel implying that opposing

counsel would or could violate a court order in the future, and then move the Court to issue a corrective order? The answer must be "no."

V.  **This Motion To Force An Attorney To Take An Action Has No Basis Under The General Protective Order In This Case.**

Darien Wallace has fully complied with the provisions of Section 8 of the Court's general protective order relating to a patent prosecution bar. (Dkt. 131, ¶8)  The prosecution bar provisions of the protective order do not require Darien Wallace to inform Omega in advance of whether he will elect to continue litigating this case or to prosecute patents relating to "the processes and materials used to make UV CIPP liners."  No advance notice to Omega is required.  Instead, the protective order provides that the patent prosecution bar does not begin until Darien Wallace first receives access to "non-public technical information, excluding financial information, non-technical business information, or information that can [be] obtained through reverse engineering" (Dkt. 131, 11:23-25). Omega's demand that Darien Wallace make an early election regarding whether to litigate or prosecute is an attempt improperly to expand the restrictions of the patent prosecution bar.  (The real reason for Omega's demand is to create a pretext for postponing admitting that Omega does not possess responsive technical information regarding the film that it has used to make its infringing liner.)

Under the provisions of the protective order, the prosecution bar never begins if Omega never produces any "non-public technical information, excluding . . . information that can [be] obtained through reverse engineering." (Dkt. 131, 11:23-25)  Darien Wallace should not be compelled to state that the restrictions of the patent prosecution bar are in effect if no prosecution bar would have begun under the provisions of the protective order. It is possible that Omega will never produce any non-public technical information relating

to the processes and materials used to make UV CIPP liners that cannot be obtained through reverse engineering. In a hypothetical example, if the most detailed technical information that Omega produces regarding its UV CIPP liners is that they are made with an inner film having the five layers PA/AP/PA/AP/PE, then receiving access to that information would not begin the patent prosecution bar because that information can be obtained through reverse engineering of samples of inner film. On the other hand, non-public technical information that would begin the patent prosecution bar would be the percentages of the chemicals used to make each layer of the inner film of a particular liner made by Omega, but Omega might never produce such non-public technical information. Omega has declared that it is not in the possession, custody or control of any such non-public technical information, "such as the number of layers in the film or the chemical composition of the film. . . . any particular structure (*e.g.*, thickness of the layers of film) or chemical composition for the film, any manufacturing processes, or 'manufacturing tolerances.'" (*See* Dkt. 114, 2:2-5) In addition, Omega now argues that the technical information that was so important that it warranted imposition of a patent prosecution bar is not even relevant to this case and thus need not be produced in response to Buergofol's discovery requests. Omega argues, "the percentages of each constituent ingredient of polyamide layer next to the resin is not relevant to any of the asserted claims in the patents-in-suit or to any of the claims or defenses of the parties." (Declaration of Darien Wallace, ¶3, Exh. A, 5:16-18) So Omega might never produce this non-public technical information. Darien Wallace should not be compelled to impose a patent prosecution bar on himself that would never be triggered under the terms of the protective order.

In addition, Omega's motion conjures up a new "ethical wall" requirement that appears nowhere in the general protective order (Dkt. 131). Omega seeks to impose an

"ethical wall" between Darien Wallace and the other attorneys in his firm working on the litigation. (Dkt. 169, 1:9-10; 7:3-6, 15-17)  However, there is no requirement in the protective order (Dkt. 131) that requires Darien Wallace to maintain an "ethical wall" between himself and the other attorneys of his firm.  So, of course, Darien Wallace is also not required to inform Omega (even before the patent prosecution bar might begin) "as to how his firm will maintain an ethical wall." (Dkt. 169, 7:16-17)  Because the protective order does not mention any "ethical wall," that concept is ill-defined and incapable of being implemented.  The implication in Omega's motion is that Omega's confidential information would improperly flow between Buergofol's attorneys.  However, this is just another of Omega's seemingly endless, baseless accusations impugning the integrity of Buergofol's attorneys.  It is much more likely that Buergofol's confidential information will be improperly divulged by the attorneys working for Omega on this case, who are Michael Neustel of the Neustel Law Offices, LTD in Fargo, ND, Monte Bond of Tautfest Bond PLLC in Dallas, TX, and Michelle Breit of Breit Law, PC in Scottsdale, AZ.  In the court papers, these three attorneys represent that they are all members of the same law firm.  What is to stop Buergofol's confidential information from being disclosed to other attorneys in the law practices in Fargo, Dallas, and Scottsdale?  Any such ill-defined, burdensome, and hard-to-implement security measures, such as "ethical walls," should be imposed on Neustel Law Offices, LTD, Tautfest Bond PLLC and Breit Law, PC if they are imposed on Imperium Patent Works, LLP.

**VI.    The Motion Is A Ploy To Delay Omega's Production Of Responsive Discovery.**

One of the real reasons for Omega's motion is to delay the date on which Omega must answer Buergofol's interrogatory number 8 ("ROG 8").  Buergofol requests that Omega be admonished for attempting to use this so-called "motion to compel" as a ploy to

BUERGOFOL'S OPPOSITION TO OMEGA'S         7                          4:22-cv-04112-KES
MOTION TO COMPEL ATTORNEY WALLACE
TO DECLARE PROSECUTION BAR DECISION

delay answering ROG 8. Here is how the ploy works. Buergofol served ROG 8 on June 21, 2023, and Omega's complete verified answer was due July 21, 2023. But Omega did not want to answer with respect to subparts (d) and (e), which requested technical information on the film used to make Omega's infringing liner. In a now familiar pattern of conduct for Omega, Omega did not promptly move for a protective order, but rather merely withheld the requested information and served a frivolous so-called "objection." The objection that Omega served with its verified answer on July 21, 2023, was obviously frivolous because it has no basis in law. The **frivolous objection** is reproduced below:

> Omega further objects because Buergofol has refused to disclose whether attorney Darien Wallace will be continuing to prosecute patent applications on behalf of Buergofol or otherwise participate in prosecution of Buergofol's patent applications. On June 7, 2023, the Court issued an order (Dkt. 130) granting Omega's request to include a patent prosecution bar in the general Protective Order (Dkt. 131). Pursuant to the Court's order (Dkt. 130), the Court further held that Darien Wallace must choose to either (1) prosecute patents relating to "UV CIPP liners and the processes and materials used to make UV CIPP liners" or (2) litigate the patents at issue, but not both. (Dkt. 130 at 18 ("[Darien Wallace] could continue to [represent Buergofol in United States patent prosecutions], as long as he no longer represented Buergofol in this litigation.")

Even though there is no requirement in the Order (Dkt. 130) that Darien Wallace inform Omega of any election, and even though there is no requirement in the Order (Dkt. 130) about Darien Wallace agreeing to implement any "ethical wall," Omega nevertheless served the frivolous "objection" because, according to Omega, "Buergofol has refused to disclose whether attorney Darien Wallace will be continuing to prosecute patent applications on behalf of Buergofol or otherwise participate in prosecution of Buergofol's patent applications." (Buergofol does not attach Omega's interrogatory objections to a declaration that would be filed with ECF because Omega improperly designated the objections themselves as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY,"

and any such declaration exhibit would have to be filed under seal after first filing a motion seeking leave to file parts of this opposition under seal.)

After serving the frivolous "objection," Omega unilaterally declared that it would not comply with its obligation to answer ROG 8 by providing the information requested in (d) and (e) until after the Court rules on this motion (Dkt. 168). Omega's interrogatory answer served July 21 states that Omega is producing the information requested by ROG 8 parts (a), (b) and (c), but omits the information requested in parts (d) and (e). The answer evasively states:

> Omega will supplement its response to this interrogatory to include (d) the constituent ingredients which any polyamide layer was made and (e) the percentage by weight of each constituent ingredient present in any polyamide layer, to the extent known by Omega, after the Court issues its ruling on Omega's pending motion (Dkt. 168).

The words "will supplement" are code for "has willfully failed to produce in a timely manner." Omega unilaterally withheld and did not produce the information of parts (d) and (e) on or by the due date of July 21, 2023. Omega did not move for a protective order, but simply withheld the information. This, of course, forced Buergofol to waste time and money scheduling and holding the meet-and-confer of August 1, 2023, concerning Buergofol's proposed motion to compel a complete answer. The meet-and-confer should never have been necessary, nor should the expenditure of time and money wasted preparing for the meet-and-confer. At the meet-and-confer on August 1 regarding ROG 8, Omega's counsel Michael Neustel stated that "Omega will produce (d) *after Darien reports* to Omega" about the prosecution bar. (Wallace decl., ¶4) Omega used the hollow promise to "supplement" at some indefinite time in the future, if Omega's demands were met, in order to delay Buergofol's ability to move to compel production. Delaying Buergofol gave Omega time to prepare and file its surprise "motion to compel,"

which is the present motion.  Omega's motion confirms that, "***before Omega produces*** highly-confidential technical information - information that would trigger the patent prosecution bar - to Buergofol's counsel - which presently includes Mr. Wallace, ***he must inform Omega*** whether he intends to continue participating in this litigation or conduct patent prosecution work for Buergofol." (Dkt. 169, 6:14-17) (emphasis added).  Omega has willfully delayed producing responsive information, and thereby obstructed Buergofol's discovery efforts, until Buergofol complies with Omega's commands that are not supported by any court order or rule.

After filing this motion on July 20, Omega then served a first supplemental response on August 4, stating in pertinent part, "***After the Court issues its ruling*** on Omega's pending motion (Dkt. 168) and the issues related to the pending motion are fully resolved, ***Omega will supplement*** its response . . . to include (d) . . . and (e) . . .." (Wallace decl., ¶4, Exh. A, 7:11-14) (emphasis added)  Thus, it is clear that Omega has willfully refused to answer the interrogatory with the information requested in (d) and (e) as of the due date of July 21, and continues willfully to withhold that information.  As of the present date, Omega has gotten away with its ploy to delay Buergofol's discovery using this specious motion.

This simple scheme of dreaming up a frivolous "objection" and then brazenly withholding information called for until some date in the future when the Court may rule on a motion that Omega files based on its frivolous objection is now a familiar delay tactic employed by Omega.  And the longer it might take this Court to rule on this motion, the longer the delay and the more effective the delay tactic will have been.  In the end, of course, Omega will be compelled to produce all responsive information in its possession.  And of course Darien Wallace will be Buergofol's litigation counsel at that time.  In the

end, the general protective order (Dkt. 130) will still be in force, and the parties will comply with it. But Omega's ploy will have worked if the Court does not recognize that Omega's conduct constitutes discovery abuse and does not sanction Omega for refusing to produce information on time by delaying production until the Court rules on its baseless objection. Omega's ruse is based on the frivolous objection that Darien Wallace has not complied with Omega's command that is not supported by any rule or order. The Court should not condone Omega's conduct and allow Omega to repeat this form of transparent discovery abuse.

### VII. This Motion Is Being Used To Cover Up A Dishonest Declaration That Was Used To Convince The Court To Impose The Patent Prosecution Bar.

Not only is this motion being used as a ploy to delay Buergofol's discovery, but is also is being used to cover up a dishonest declaration. The motion is being used to delay the time when Omega will be forced to admit that, as of January 4, 2023, when it filed its motion to impose a patent prosecution bar on Darien Wallace, Omega possessed none of the non-public technical information that it claimed to possess and that it presented as a basis for this Court to impose the patent prosecution bar on Darien Wallace. Omega presented a knowingly false declaration and made knowingly false statements in its memorandum in support of its motion to impose the patent prosecution bar. The Court then relied on Omega's false declaration and false statements in granting Omega's motion (Dkt. 35) to impose a patent prosecution bar on Darien Wallace. (*See* Dkt. 130, p. 8 and fn. 1)

As a reason to impose a patent prosecution bar on Darien Wallace, Omega alleged in its motion papers (Dkt. 38) that Omega possessed specific technical information that could be misused by Darien Wallace in patent prosecution for Buergofol if Darien Wallace

were allowed access to that specific technical information. Omega represented to this Court that as of January 4, 2023, it was in possession of "technical information" pertaining to:

> " . . . the inner and outer film developed in cooperation with Omega's new film supplier, such as:
> i. The ***chemical composition of each of the layers*** used [sic] the inner tubular film and the outer film for Omega's UV CIPP liners (e.g., the ***percentage of chemicals used for each layer***, UV light blockers and colorants);
> \* \* \*
> iii. The processes used to manufacture Omega's inner tubular film and the outer film using blown film extrusion technology (e.g., ***extrusion temperature*** for each layer, ***polymer melt flow rate*** through die orifice, the ***air pressure to create the film bubble***, the ***ratio of the final film diameter to the die orifice diameter***, the ***film cooling process***);"

(Dkt. 38, 9:19-10:7) (emphasis added). These statements were false—Omega was never in possession of the technical information listed above relating to the processes and materials used to make UV CIPP liners. Omega submitted a sworn declaration from Omega's Plant Manager, David McConnell, declaring that these statements were true and correct. A portion of the January 4, 2023 declaration from David McConnell is reproduced below.

> 7. ==Omega's highly confidential technical information encompasses== various types of competitively sensitive information, including the inner and outer film developed in cooperation with Omega's new film supplier, such as:
> i. The ==chemical composition of each of the layers== used the inner tubular film and the outer film for Omega's UV CIPP liners (e.g., the ==percentage of chemicals used for each layer==, UV light blockers and colorants);
> ii. The chemical composition of the UV resin used in Omega's UV CIPP liners (e.g., percentage of chemicals used in the UV resin);
> iii. The processes used to manufacturer Omega's inner tubular film and the outer film using blown film extrusion technology (e.g., ==extrusion temperature== for each layer, ==polymer melt flow rate== through die orifice, the ==air pressure to create the film bubble==, the ==ratio of the final film diameter to the die orifice diameter==, the ==film cooling process==);

(Dkt. 36, 2:4-16) However, at the time that David McConnell signed his declaration on

January 4, 2023, neither David McConnell nor anyone else at Omega had been in possession of the technical information listed in David McConnell's declaration, including:

1) the percentage of chemicals used for each layer of inner and outer film;

2) the UV light blockers and colorants in the film;

3) the extrusion temperature for each layer of inner and outer film;

4) the polymer melt flow rate through the die orifice;

5) the air pressure to create the film bubble;

6) the ratio of the final film diameter to the die orifice diameter; and

7) the film cooling process.

Thus, the Court imposed the patent prosecution bar on Darien Wallace based on the knowingly false statements by Omega and the dishonest declaration from David McConnell. Yet Omega's counsel now has the audacity to issue commandments to Darien Wallace that are not supported by any rule or order but are rationalized by the implication that Darien Wallace would file a patent application claiming that Buergofol invented aspects of film related to technical information that Omega never actually possessed. (*See*, *e.g.*, Dkt. 170-2, p. 3 of 15)[1]

It is undisputed that the statements made on January 4, 2023 by Omega and David McConnell regarding the technical information that Omega allegedly possessed were false because Mr. McConnell recanted on May 9, 2023. In a declaration dated May 9, 2023, David McConnell admitted that Omega never actually possessed the technical information

---

[1] Note that whenever Omega's counsel is confronted with a complaint about misconduct, the complaint is labeled as an *ad hominem* attack, for example, when Buergofol complained that David McConnell's declaration was dishonest. (*See*, *e.g.*, Dkt. 170-2, p. 2 of 15) However, "*ad hominem*" is not an incantation that can absolve the offending party of the consequences of the misconduct.

regarding the structure and composition of the film in Omega's liner that he had claimed were "Omega's highly confidential technical information." David McConnell's declaration of May 9, 2023 states:

> 3.  In my Declaration of David McConnell in Support of Omega's Motion for Entry of Protective Order, dated January 4, 2023, I stated that Omega developed inner and outer film "in cooperation with Omega's new film supplier." During that development process, Omega identified high level requirements for the film, such as the needed strength and durability, levels of permeability and/or impermeability to UV light and liquids, the required overall widths of the films, and the manner in which the inner and outer films must function. Omega had no input in, much less any particular interest in, the specific design characteristics of the film, such as the number of layers in the film or the chemical composition of the film. Omega therefore never specified any particular structure (*e.g.*, thickness of the layers of film) or chemical composition for the film, any manufacturing processes, or "manufacturing tolerances." Omega, instead, left that development to the manufacturer.
>
> 4.  At various stages during the development, Omega did receive and test prototype of film from the manufacturer, to determine whether the film(s) met Omega's requirements, and Omega provided feedback to the manufacturer in that regard; but again, it fell on the manufacturer to determine design modifications needed to meet the requirements.

(Dkt. 114, 1:8-2:9) Thus, Omega never was in the possession, custody or control of the non-public technical information that was the basis for imposing the patent prosecution bar because that information did not belong to Omega—it was the information of a non-party, Omega's film supplier.

The patent prosecution bar in the Order (Dkt. 131) was imposed on Darien Wallace based on information presented to the Court that Omega's counsel knew to be false. Buergofol stated in its opposition brief at the time that the statements in David McConnell's declaration were false. (Dkt. 49, p. 17) Omega never possessed the non-public technical information that was the basis for imposing the patent prosecution bar, such as the chemical composition of each layer of inner and outer film and the percentage

of chemicals used for each layer of inner and outer film.

To discover the truth, Buergofol served its ROG 8 requesting that Omega identify (i) the constituent ingredients of the polyamide layer of its film, and (ii) the percentage by weight of each constituent ingredient present in the polyamide layer.  Now in this motion, Omega is attempting to use the improperly imposed patent prosecution bar as a pretext for refusing to identify (or admit that it does not know) the percentage of chemicals in a particular layer of its film, which is both technical information that Omega claimed to possess as a basis for imposing the prosecution bar as well as technical information that David McConnell later admitted in this second declaration that Omega never actually possessed.

Thus, this motion is being used by Omega to avoid having to serve a timely verified answer to Buergofol's interrogatories stating that Omega does not know the percentage of chemicals in particular layers of the film that it used prior to January 4, 2023 to make its infringing liners.  That is improper.  Omega should be precluded from using any information on the percentage of chemicals in the various layers of its inner and outer film as the basis for any of its invalidity or non-infringement contentions.  Because Omega is improperly using this "motion to compel" as a mechanism to delay answering Buergofol's interrogatories completely, Buergofol is being denied the opportunity to prepare Buergofol's validity and infringement contentions to rebut any of Omega's contentions that are based on the withheld chemical composition information.

**VIII.  Conclusion**

For the foregoing reasons, the patent prosecution bar on Darien Wallace that was based on knowingly false statements made by Omega should be rescinded.  In addition, Omega should be sanctioned for bringing this unjustified motion for the improper

purposes of delaying Buergofol's discovery and covering up a dishonest declaration. Omega continues to withhold important information from Buergofol by continuing to refuse to answer parts (d) and (e) of Buergofol's interrogatory 8 until this motion is decided. The Court should not allow itself to be used as part of Omega's scheme to delay this discovery.

Dated this 10th day of August, 2023

> **DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.**
>
> By /s/ Elizabeth S. Hertz
> Elizabeth S. Hertz
> P.O. Box 1030
> 206 West 14th Street
> Sioux Falls, SD 57101-1030
> Phone (605) 357-1263
> Fax (605) 335-3639
> Email ehertz@dehs.com
>
> Attorneys for Plaintiff Buergofol
>
> **IMPERIUM PATENT WORKS LLP**
> Darien K. Wallace
> T. Lester Wallace
> P.O. Box 607
> 315 Ray Street
> Pleasanton, CA 94566
> Phone (925) 550-5067
> Fax (925) 835-5804
> Email darien@imperiumpw.com
>         lester@imperiumpw.com
>
> Attorneys for Plaintiff Buergofol
> *Pro Hac Vice*