UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GmbH, | Case No. 4:22-cv-04112 |
| Plaintiff, | |
| vs. | **OMEGA'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ATTORNEY DARIEN WALLACE'S DISCLOSURE REGARDING APPLICATION OF PATENT BAR** |
| OMEGA LINER COMPANY, INC., | |
| Defendant. | |

## I.    INTRODUCTION

Notwithstanding Plaintiff Buergofol GmbH's ("Buergofol") efforts to make Defendant Omega Liner Company, Inc.'s ("Omega") motion appear complicated, the relief Omega seeks by its motion is both straightforward and reasonable. Buergofol has propounded discovery seeking information from Omega that is Omega's highly confidential, non-public technical information that cannot be reverse-engineered regarding the inner film Omega uses in its accused UV CIPP liners. Omega has agreed to produce the highly confidential information, which Omega believes gives it an advantage over its competitors' UV CIPP liners that use different inner film, including Buergofol's inner film.

According to the Court's Protective Order (Dkt. 131) (the "Protective Order"), if Buergofol's attorney Darien Wallace receives access to that confidential material, the patent prosecution bar included in the Protective Order will begin, prohibiting Mr. Wallace from "prepar[ing], prosecuting[ing], or assist[ing] in the preparation or prosecution of any patent application relating to UV cured-in-place pipe (CIPP) liners …." (Dkt. 131, ¶ 8). The Court's Order

Granting in Part and Denying in Part the Motion for Protective Order (Dkt. 130), makes clear that the patent prosecution bar "forc[es] [the attorneys] to make a choice: either prosecute patents in this family of patents, or litigate the patents at issue, but not both." (Dkt. 130, p. 18 (citing *Front Row Techs, LLC v. NBA Media Ventures, LLC,* 125 F. Supp. 3d 1260, 1295 (D. N.M. 2015)).

      Omega therefore asked Buergofol's counsel to inform Omega of Mr. Wallace's choice before Omega produces the highly confidential information so that Omega can have knowledge of the intended treatment of its competitive information. After meeting-and-conferring on the issue, Buergofol's counsel refused. Buergofol's and Mr. Wallace's caginess and their outright refusal to inform Omega of Mr. Wallace's intent, understandably, has caused Omega to have serious concerns. Given Omega's strong interest in protecting its highly confidential, competitive information, Omega therefore filed this motion asking the Court to order that Mr. Wallace inform Omega of his choice before Omega produces the information to Buergofol, and, if Mr. Wallace chooses to continue patent prosecution for Buergofol, inform Omega as to how his firm will maintain an ethical wall between Mr. Wallace and the attorneys in his firm working on the litigation.

      Buergofol's opposition to the Omega's motion (Dkt. 190) has slung much mud in an effort to deprive Omega of this basic knowledge, none of which has merit:

- Buergofol argues Omega did not meet-and-confer before filing the motion. Omega, however, has presented the Court with specific evidence demonstrating that Omega did indeed meet-and-confer in good faith before filing its motion. (*See* Dkt. 170, 170-1, 170-2, 170-3).

- Buergofol argues Omega's motion is not grounded in any rule and seeks relief outside the Court's authority. But Omega's motion is grounded in the Court's already entered Protective Order and also is squarely encompassed by Federal Rule of Civil Procedure 26(c)(1)(B), which authorizes

the Court to enter a protective order "specifying terms, including time and place or allocation of expenses, for the disclosure or discovery," and by Rule 26(c)(1)(G) "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(B) and (G).

- Buergofol asserts that Omega's motion is "a ploy" by Omega to delay discovery, and that Omega may never produce information triggering the patent prosecution bar.  Omega, however, has cooperated with discovery and continues to do so. The only information Omega has not produced pending disclosure of Mr. Wallace's patent prosecution bar election is limited technical information, albeit highly sensitive information, requested in a single Buergofol interrogatory. Omega has told Buergofol, unequivocally, that it intends to produce the information.

- Buergofol further contends Omega is using the motion to "cover up a dishonest declaration that was used to convince the court to impose the patent prosecution bar." Buergofol assembles this argument on blatant mischaracterizations of the declaration, as well as misrepresentations of other facts.

For these reasons, which are addressed more fully below, the relief Omega seeks by its motion is both straightforward and reasonable and should therefore be granted.

## II.   ARGUMENT

### A.   Omega Fully Met and Conferred with Buergofol Regarding the Issues Addressed in this Motion.

Buergofol's argument that Omega did not fully meet and confer on the topics covered by Omega's motion is factually wrong. Indeed, Buergofol does not dispute the accuracy of Omega's factual presentation in its opening papers showing that, in multiple writings and during telephonic

meet-and-confer discussions, Omega sought to resolve the dispute that is the topic of this motion, but the parties reached an impasse. As Omega describes in its opening memorandum:

- On June 19, 2023, Omega's counsel sent a letter to Buergofol's counsel requesting to know Mr. Wallace's intent as to whether he would continue participation in this litigation or continue patent prosecution upon Omega's production of highly confidential information triggering the patent prosecution bar. (Dkt. 169, p. 3; Dkt. 170). Buergofol's counsel did not respond. (Dkt. 169, p. 3; Dkt. 170, ¶ 3).

- A few days later, on June 25, 2023, in response to a lengthy email from Buergofol's counsel regarding various discovery disputes, Omega's counsel pointed out that Buergofol is seeking non-public technical information to be designated as "Highly Confidential-Attorney's Eyes Only," which will trigger the patent prosecution bar. (Dkt. 169, pp. 3-4; Dkt. 170-2, p. 3). Again, Omega requested that "Omega be informed about the status of [Darien Wallace's] involvement in the litigation (and patent prosecution) on behalf of Buergofol in order to proceed with the production of non-public technical information." (Dkt. 169, pp. 3-4; Dkt. 170-2, p. 3). Omega's counsel also asked Buergofol's counsel to "provide information as to how your firm will maintain an ethical wall between you and attorneys in your firm working on litigation." (Dkt. 169, p. 4; Dkt. 170-2, p. 3).

- On June 28, 2023, Mr. Wallace wrote back, but rather than respond to Omega's inquiries, he took issue with the validity of the patent prosecution bar and made scurrilous and unfounded accusations, accusing Mr. Neustel of obtaining a "dishonest declaration" from Omega to obtain the patent prosecution bar. (Dkt. 169, p. 4; Dkt. 170-2, p. 2). In that email, Mr. Wallace made clear that he would not provide the information Omega requested,

asserting, "The protective order (Dkt. 131, ¶ 8) does not require me to notify you regarding whether I will continue to litigate or prosecution patents for Buergofol." (Dkt. 169, p. 4; Dkt. 170-2, p. 2).  Mr. Wallace acknowledged Omega's inquiry regarding Buergofol's counsel's maintenance of an "ethical wall," but he provided no response.  (Dkt. 169, p. 4; Dkt. 170-2, p. 2).

- Omega's counsel responded by email the same day, June 28, 2023, reiterating the difficulty of engaging in discovery regarding Omega's non-public highly technical information without knowing whether Mr. Wallace planned to continue his involvement in this litigation or prosecute Buergofol's patent applications. (Dkt. 169, pp. 4-5; Dkt. 170-2, p. 1).

- The parties met and conferred telephonically on June 29, 2023, regarding several disputed discovery issues. (Dkt. 169, p. 5; Dkt. 170, ¶ 5).  During the call, Omega's counsel inquired again regarding Mr. Wallace's intent regarding continued involvement in this litigation, because Buergofol was seeking highly confidential technical information from Omega that would trigger the patent prosecution bar. (Id.).  Buergofol's counsel again stated it would not provide a response to Omega.  (Id.).  Mr. Wallace made clear that the issue was not open to further discussion. (Id.).  Thereupon, Omega's counsel informed Buergofol's counsel that it may need to take the matter up with the Court. (Id.).

The foregoing facts and evidence rebut entirely Buergofol's assertion that Omega "failed to conduct a meet-and-confer on the topic" of Omega's motion. (*See* Dkt. 190, p. 3).

Adding to Omega's meet-and-confer efforts, after filing this motion, in an August 1, 2023, telephone call addressing various discovery disputes, Omega again asked Buergofol to disclose Mr. Wallace's intentions. (Neustel Decl., Ex. A).  But Mr. Wallace again refused to provide the

information, stating that he had made a decision regarding his election between patent prosecution and litigation but would not disclose his decision to Omega. (Id.).

Rather than dispute the accuracy of the information demonstrating Omega's good faith meet-and-confer efforts before filing this motion, Buergofol's opposition raises two complaints, neither of which have merit. Buergofol first complains that the telephonic discussion was not a "proper" meet and confer because the call was scheduled to discuss Buergofol's agenda relating to its intended motion to compel Omega's additional responses to its Interrogatory Nos. 7 and 8. (*See* Dkt. 190, p. 3; *but see* Dkt. 143, pp. 7-8 (recognizing that Buergofol's counsel took an "unnecessarily oppositional attitude with Omega's counsel" by indicating that it wanted to limit the scope of the meet-and-confer to only its agenda items)).  But Buergofol does not contest that, before the June 29, 2023, meet-and-confer call, Omega repeatedly informed Buergofol that because Buergofol is seeking highly confidential technical information, Omega needed a response regarding Mr. Wallace's patent bar election in order for the parties to discuss Omega's highly confidential technical information in a meet-and-confer call. (*See, e.g.*, Dkt. 170-2, p. 4). Nor does Buergofol deny that Omega sought to meet-and-confer on the issue before the June 29, 2023, call.  (*See* id.). In addition, when Omega raised the issue in the telephonic meet-and-confer, Buergofol's counsel did not indicate they were unprepared to address the issue, or that they needed additional time to respond. Instead, Mr. Wallace unequivocally stated he would not provide the information. (Dkt. 169, p. 5; Dkt. 170, ¶ 5).  Mr. Wallace's response made clear that the issue was not open to further discussion; thus, the parties were at an impasse.

Buergofol secondly complains in its opposition that Omega's meet-and-confer efforts were not "proper" because Omega did not specifically confer "about a proposed 'motion to compel' to be

filed by Omega." (Dkt. 190, p. 3). Omega, however, clearly informed Buergofol of the nature of the discovery dispute, and that it may seek Court intervention due to Buergofol's refusal to provide the requested information. (Dkt. 169, p. 5; Dkt. 170, ¶ 5). Buergofol appears to be arguing that, unless Omega uses the specific words "motion to compel," Omega's efforts to resolve the discovery dispute do not fulfill the meet-and-confer requirements. That position would inexplicably and unnecessarily elevate form over substance. No question exists that Omega clearly identified the substance of the dispute, it tried in good faith to resolve it, and it specifically informed Buergofol that it may seek relief from the Court to resolve the unsettled dispute.

Buergofol also asserts that Omega did not "make any proposal for resolving the discovery dispute," and, therefore, Omega did not meet and confer in good faith. (Dkt. 190, p. 3). Omega's good faith efforts, however, do not require that Omega alter its well-taken position to reach a resolution. Omega tried to resolve the dispute by explaining to Buergofol's counsel the reasons Omega was seeking disclosure of Mr. Wallace's patent prosecution bar election. Mr. Wallace flatly declined. (Dkt. 169, p. 5; Dkt. 170, ¶ 5). Again, Buergofol does not contend that it needed but was refused clarification of Omega's request, additional information, or more time to respond. The parties fully vetted the issues, and Omega's only remaining path to resolution was to seek relief from the Court. Accordingly, for all these reasons, Buergofol's assertion that Omega did not meet and confer in good faith before bringing this motion should be rejected.

**B.   Omega Provided the Court with All the Information Required in a Local Rule 37.1 Certification.**

Buergofol points out that Omega did not file a separate certification under Local Rule 37.1 describing the good faith efforts of the parties to resolve the dispute. Buergofol is correct; Omega

did not file a separate certification. However, Omega's opening memorandum describes Omega's good faith meet-and-confer efforts, and the Declaration of Michael Neustel filed in support of the motion (Dkt. 170), signed under penalty of perjury, as well as the attached exhibits provide irrefutable evidence of Omega's good-faith efforts. In similar circumstances, the Court has found that confirmation by the parties' attorney of good-faith attempts to resolve a discovery dispute in the motion, albeit not in a separate certification, meets the requirements of Local Rule 37.1. *See Rosane v. Shannon Cnty. Sch. Dist. 65-1*, 2012 WL 3637191, at *2 (D. S.D. August 21, 2012) (recognizing that counsel complied with the directives of both Fed. R. Civ. P. 37 and Local Rule 37.1 when she certified via affidavit filed with her original brief in support of her motion that co-counsel had contacted opposing counsel by email, requesting opposing counsel to reconsider its refusal to produce the personnel files and clarifying that the plaintiff sought only documents from personnel files relating to evaluations and any type of personnel actions taken).

### C.     Omega Seeks Proper Relief from the Court.

Buergofol takes issue with Omega fashioning this motion as a "motion to compel," asserting that it does not arise under procedural rules and seeks relief outside the Court's authority. However, Omega contends that its motion properly rests on at least three separate bases.  First, Omega's motion is grounded in the Court's already-entered Protective Order and is therefore squarely encompassed by Federal Rule of Civil Procedure 26(c)(1)(B), which authorizes the Court to enter a protective order "specifying terms, including time and place or allocation of expenses, for the disclosure or discovery."  Second, because Omega's motion relates to the production of highly confidential information under the terms of the Court's Protective Order, it also finds a basis in Rule 26(c)(1)(G), which allows a court to enter an order "requiring that a trade secret or other confidential

research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(B) and (G).  Finally, regardless of the motion's title, the relief Omega seeks is clearly within the Court's "general authority to supervise and control discovery."  *See Lyon v. Bankers Life and Cas. Co.*, 2011 WL 124629, at *6 (D. S.D. Jan. 14, 2011).  For these reasons, the relief that Omega seeks is grounded in the Court's already-entered Protective Order, the Federal Rules of Civil Procedure, and the Court's inherent authority.

Buergofol is correct that the Court's Protective Order does not *expressly* require that Buergofol and Mr. Wallace inform Omega of Mr. Wallace's election. Such notification, however, is implicit in the Protective Order and the Court's Order (Dkt. 130), requiring Mr. Wallace to choose between prosecuting Buergofol's patents or continuing to represent Buergofol in litigation, in order to protect Omega's highly confidential information. After all, the Court's Order Granting in Part and Denying in Part the Motion for Protective Order (Dkt. 130) makes clear that the patent prosecution bar "forc[es] [the attorneys] to make a choice: either prosecute patents in this family of patents, or litigate the patents at issue, but not both." (Dkt. 130, p. 18 (citing *Front Row Techs,* 125 F. Supp. 3d at 1295).

Making this election serves both parties' interests. The Protective Order is directed at guarding the litigants' and third-parties' interests in preserving the confidentiality of their competitive information. It assures that the parties have knowledge of the persons having access to their confidential information, and it limits disclosure and use of the information by those persons. To that end, the Protective Order here specifies limited categories of persons who can have access to such information and includes provisions requiring that certain persons who obtain access to such information execute an "Acknowledgement and Agreement to Be Bound." (Dkt. 131, ¶ 12).

Provisions of that sort not only reduce the risk that the information will be wrongfully disclosed or misused but also provide the producing party with important knowledge of who has had access to its confidential information should it find that the material becomes public through no act of the producing party.

Even more specifically here, the Court's Protective Order expressly limits Mr. Wallace's access to Omega's non-public, highly confidential technical information if he intends to continue prosecuting patents on behalf of Buergofol. Under the terms of the Protective Order, if Mr. Wallace simply "receives access" to information covered by the patent prosecution bar, the bar is triggered. (Dkt. 131, ¶ 8). The first sentence of paragraph 8 of the Protective Order provides that the prosecution bar arises "if Daren Wallace *receives access* to the materials designated 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY'" where the materials are directed to the particular type of technical information specified in the order. (Dkt. 131, ¶ 8 (emphasis added)). The final sentence of paragraph 8 provides that the patent prosecution bar "shall begin when *access* to 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' non-public technical information" of the type described "is first *received* by the affected individual." (*Id.* (emphasis added)).

In response to Buergofol's Interrogatory No. 8, Omega is prepared to serve Buergofol's counsel with information covered by the prosecution bar. Specifically, Buergofol's Interrogatory No. 8(d) seeks information regarding the "constituent ingredients" of the external layer of inner film of Omega's UV CIPP liner abutting the resin, including identification of the brand name and product number of the polyamide used, and Interrogatory No. 8(e) seeks the percentage by weight in which each constituent ingredient is present in that layer. (Doc. 170-3). The brand name and product number of the polyamide used in external layer of the inner film of Omega's UV CIPP liners cannot

be reverse-engineered. Nor can the percentage by weight in which each constituent ingredient is present in that layer be reverse-engineered. The type of polyamide used in the inner film in the vast majority of Omega's current UV CIPP liner products, Omega believes, makes its UV CIPP liners perform better than its competitors' pipe liners using different inner film, including Buergofol's inner film. Thus, the information is not made public.

Omega has sought Buergofol's confirmation that access to the information at issue will begin the patent prosecution bar. Although Buergofol's counsel has not responded to Omega's request for Buergofol's confirmation through direct communication, in its opposition to this motion, for the first time, Buergofol *admits* that "non-public technical information that would begin the patent prosecution bar would be the percentages of the chemicals used to make each layer of the inner film of a particular line made by Omega." (Dkt. 190, p. 6). Now at the precipice of producing that information and other information that would trigger the prosecution bar if Mr. Wallace receives access to it, Omega, reasonably, needs to know how it should produce the information (*e.g.*, according to usual practice by service on all Buergofol's counsel, including Mr. Wallace), and Omega requires assurance that if Mr. Wallace receives access to the information, Mr. Wallace agrees the prosecution bar begins, and he will forego involvement in prosecuting Buergofol's patents related to UV CIPP liners for two years from termination of this litigation.

This information necessarily affects the means of production. After all, if Mr. Wallace's choice is to continue representing Buergofol in litigation and forego the patent prosecution, then Omega can produce the information according to usual practice. For the most part, the issues raised by this motion become moot, and Omega knows that Mr. Wallace has access to its highly confidential information. But, if Mr. Wallace's choice is to continue Buergofol's patent prosecution, then Omega

will exclude Mr. Wallace from its production, and it will assume that Mr. Wallace will not receive access. But beyond that, Omega needs confirmation that, if Mr. Wallace receives access to the information at issue here, the prosecution bar is triggered, and he cannot, for a time, prosecute Buergofol's UV CIPP liner patents.  Buergofol's and Mr. Wallace's caginess and Mr. Wallace's outright refusal to inform Buergofol of his *known* intent, understandably, has caused Omega serious concern, including concern that Mr. Wallace may receive access to the information but somehow conclude that he can still prosecute Buergofol's patents, for example, by deciding unilaterally that the information does not trigger the patent prosecution bar. Absent of disclosure by Mr. Wallace, because of the nature of patent prosecution, Omega may never learn if Mr. Wallace followed that course.  For at least the foregoing reasons, therefore, Omega reasonably seeks transparency as to Mr. Wallace's election between representing Buergofol in this litigation or patent prosecution, as well as confirmation that Mr. Wallace will pursue that chosen course upon Omega's production of the information at issue here.

To support its opposition to Omega's request, Buergofol maintains that the prosecution bar "never begins if Omega never produces any 'non-public technical information, excluding … information that can [be] obtained through reverse engineering,'" and that "[i]t is possible that Omega will never produce any non-public technical information relating to the processes and materials used to make UV CIPP liners that cannot be obtained through reverse engineering." (Dkt. 190, pp. 5-6). But in the same opposition memorandum, Buergofol *admits* that information regarding percentages of the chemicals that make up the layers of Omega's inner film "would begin the patent prosecution bar." (Dkt. 190, p. 6). And Buergofol's Interrogatory No. 8, subpart (e) specifically asks Omega to state "for each constituent ingredient state the percentage by weight in which the constituent

ingredient is present in the polyamide layer." (Dkt. 170-3). Although Omega disagrees that the percentages of the constituent ingredients in the polyamide layer next to the resin is information relevant to the asserted patent claims, Omega agreed to produce that information in its response to Interrogatory No. 8 once the Court rules on this motion or Mr. Wallace discloses his intent with regard to the prosecution.

### D.    Buergofol's Assertion that Omega's Motion Is a Delay Tactic Is Unfounded.

Buergofol's efforts to characterize Omega's motion as a tactic to delay discovery are spurious. Omega has cooperated with discovery and continues to do so. The only information Omega has not produced based on Mr. Wallace's refusal to disclose his patent prosecution bar election is the limited technical information requested in just two of five subparts of a single interrogatory, Interrogatory No. 8(d) and (e), which Buergofol served relatively recently on June 20, 2023.

Buergofol tries to bolster its unfounded assertion that Omega's motion is a delay tactic by asserting that Omega served its answer to Interrogatory No. 8 on July 21, 2023, with its objection to producing information responsive to subsection (d) and (e) based on Buergofol's refusal to disclose Mr. Wallace's intent, but Omega "did not promptly move for a protective order." (Dkt. 190, p. 8). To the contrary, on July 20, 2023, *before* serving its response to Interrogatory No. 8, Omega filed *this* motion, specifically asking the Court for an order holding that before Omega must provide its highly confidential information in response to Interrogatory No. 8(d) and (e), Mr. Wallace must disclose his patent prosecution bar election. As addressed above, Omega's motion falls squarely within Fed. R. Civ. P. 26(c)(1), including 26(c)(1)((B) and (G), governing motions for protective orders. Although Omega did not title this motion as one for a protective order, it clearly is of that

nature. More importantly, flatly contrary to Buergofol's assertions, Omega certainly did not simply object to producing the information and sit back on its objections; Omega contemporaneous filed this motion with the Court.

Inexplicably, Buergofol also argues that because Omega "did not move for a protective order, but simply withheld information," Buergofol was forced expend time and money to meet-and-confer on August 1, 2023, at which time Omega's counsel stated that Omega will produce information responsive to Interrogatory 8(d) after Mr. Wallace's disclosure, which "gave Omega time to prepare and file its surprise 'motion to compel,' which is the present motion." (Dkt. 190, p. 9). Buergofol further asserts that the foregoing alleged conduct "delayed Buergofol's ability to move to compel production." (Id.) That argument, and each constituent piece of it, is sheer nonsense.

First, as addressed above, Omega *did* move for a court order specifying that Omega would not be required to provide the information responsive to Interrogatory No. 8(d) and (e) until Mr. Wallace's disclosure of his prosecution bar election. Second, well before the August 1, 2023, meet-and-confer call, including in Omega's July 21, 2023, response to Interrogatory No. 8 (and by way of this July 20, 2023, motion), Omega informed Buergofol that it objected to producing the highly confidential information without disclosure of Mr. Wallace's patent prosecution bar election. The implication that Omega first informed Buergofol of its position on August 1, 2023, is demonstrably false and certainly does not support Buergofol's assertion the Omega interfered with Buergofol's ability to bring a motion to compel. Even to this date, Buergofol has not filed such a motion. Third, Omega did not wait until after the August 1, 2023, meet-and-confer to file a "surprise" motion to compel (which Buergofol identifies as this motion); Omega filed this motion on July 20, 2023!

Buergofol even acknowledges that fact in the next paragraph of its opposition. (Id., p. 10.) In the end, the record wholly rebuts Buergofol's allegation that Omega is using this motion as a delay tactic.

**E.    Buergofol Mischaracterizes David McConnell's Declarations to Argue Omega Presented a "Dishonest" Declaration.**

Buergofol mischaracterizes the declarations of David McConnell, Omega's Plant Manager, to make scurrilous, defamatory accusations that Omega's counsel and Mr. McConnell presented a false and dishonest declaration by Mr. McConnell to the Court. Specifically, Buergofol alleges that in a first declaration submitted by Mr. McConnell on January 4, 2023, in support of Omega's request that the Court include a patent prosecution bar in the Court's general protective order, Mr. McConnell represented that Omega possesses specific technical information regarding the films it uses in UV CIPP liner ("McConnell Decl. I") (Dkt. 36).  Buergofol further asserts that in a second declaration submitted by Mr. McConnell on May 9, 2023, in support of Omega's Response to Buergofol's Motion to Determine the Sufficiency of Omega's Objections to Requests for Admissions ("McConnell Decl. II") (Dkt. 114), Mr. McConnell "recanted" his alleged statements that Omega possesses such technical information. Neither of those allegations are true, as is easily seen by review of the declarations. Nor are Mr. McConnell's declarations inconsistent with each other.

Reprinted below is the statement that Mr. McConnell made in McConnell Decl. I regarding Omega's highly confidential technical information that Buergofol alleges is false:

7.    Omega's highly confidential technical information encompasses various types of competitively sensitive information, including the inner and outer film developed in cooperation with Omega's new film supplier, such as:

i.    The chemical composition of each of the layers used the inner tubular film and the outer film for Omega's UV CIPP liners (e.g., the percentage of chemicals used for each layer, UV light blockers and colorants);

ii.    The chemical composition of the UV resin used in Omega's UV CIPP liners (e.g., percentage of chemicals used in the UV resin);

iii.    The processes used to manufacturer Omega's inner tubular film and the outer film using blown film extrusion technology (e.g., extrusion temperature for each layer, polymer melt flow rate through die orifice, the air pressure to create the film bubble, the ratio of the final film diameter to the die orifice diameter, the film cooling process);

iv.    The processes used to manufacture UV CIPP liner liners (e.g., resin injection process, film sealing process, the percentage of UV resin to fiberglass, manufacturing and assembly processes); and

v.    The ambient air conditions within the manufacturing plant (e.g., humidity, temperature).

(Dkt. 36, ¶ 7).

Mr. McConnell truthfully and accurately stated that Omega's highly technical information includes information regarding the inner and outer film Omega developed in cooperation with its new film supplier. Mr. McConnell also truthfully and accurately identified certain information

16

regarding the inner and outer film that Omega considers competitively sensitive information. Neither Mr. McConnell's declaration nor Omega's motion that relied on that declaration, i.e., Omega's Motion [for protective order including a patent prosecution bar] represented that Omega was in "possession" of the information, or even addressed the location of that information. Nor were representations regarding Omega's *possession* of the information called for in order for Omega and Mr. McConnell to identify the type of information Omega considers highly sensitive, competitive information to be protected by a protective order and patent prosecution bar, which was the purpose of Mr. Connell's January 5, 2023, declaration.

Omega fairly anticipated that, during discovery, Buergofol would seek sensitive, competitive technical information regarding the manufacture, composition, and nature of the films used in Omega's UV CIPP liners, either directly from Omega or Omega's manufacturer. Because Omega's manufacturer developed the film at the direction of and in cooperation with Omega, both Omega and its manufacturer treat that information, at least, as Omega's highly confidential information. Thus, whether Buergofol obtained the information directly from Omega or from Omega's manufacturer, the disclosure and misuse of the information would harm Omega's competitive position and therefore the information is of a confidential nature that requires protection by Court's protective order and a patent prosecution bar.

Buergofol first mischaracterized Mr. McConnell's January 5, 2023, declaration in its Brief in Support of Buergofol's Motion to Determine Sufficiency of Omega's Objections to Request for Admissions, on April 19, 2023. (Dkt. 90). In that paper, Buergofol falsely asserted, as it does here, that "Omega has represented to this Court that Omega is in *possession* of 'technical information' pertaining to the 'inner and outer film developed in cooperation with Omega's new film supplier

….'" (Dkt. 90, p. 15 (emphasis added)). To support that allegation, Buergofol cited paragraph 7 of the McConnell Decl. I reprinted above.

To disabuse Buergofol and the Court of Buergofol's mischaracterizations regarding Mr. McConnell's first declaration, and because Buergofol's motion raised new issues regarding Omega's *knowledge* of the composition, nature, and manufacturing process of the films used in its UV CIPP liners, in its response to the motion, Omega presented the second declaration of David McConnell, i.e., the McConnell Decl. II. The McConnell Decl. II provided additional detail regarding the film development process – supporting Mr. McConnell's statement that Omega worked in cooperation with the manufacturer to develop the films. (Dkt. 114, ¶¶ 3-4). Mr. McConnell also explained that Omega did not have input on the specific design characteristics of the film, providing instead high-level requirements, prototype testing, and feedback to the manufacturer.

Lastly, to address Buergofol's false assertion that Mr. McConnell's earlier declaration represented that Omega was in possession of certain information, Mr. McConnell explained in the second declaration that, in referring to "Omega's highly confidential information" in his first declaration, he was not referring to documents that Omega possessed but instead only "intended to communicate that Omega considered information regarding the design of the film that its manufacturer developed for (and in cooperation with) Omega to be competitive information that Omega considers confidential," the misuse of which would significantly harm Omega's competitive position. (Dkt. 114, ¶ 5). Reprinted below is that statement in the McConnell Decl. II:

> 5.     In my prior declaration, in referring to "Omega's highly confidential information," I was not referring to documents that Omega actually possessed, but instead I intended to communicate that Omega considered information regarding the design of the film that its manufacturer developed for Omega to be competitive information that Omega considers confidential. I also intended to make clear that the disclosure and misuse of such information, which could be obtained through discovery in this lawsuit, would significantly harm Omega's competitive position.

(Dkt. 114, ¶ 5).

Buergofol, in other words, knew of Mr. McConnell's explanation before Buergofol filed its opposition here accusing Mr. McConnell of presenting a "dishonest" declaration. Buergofol conspicuously omits from its opposition any reference to Mr. McConnell's explanation in the second declaration (i.e., Dkt. 114, ¶ 5), which points out that, in his prior first declaration, Mr. McConnell was not referring to documents that Omega possessed (which, of course, can be seen from the declaration itself). Despite its knowledge, Buergofol does not inform the Court of Mr. McConnell's statement, although, in its opposition, Buergofol refers to *and reprints* the two preceding paragraphs of McConnell Decl. II.  Thus, Buergofol's offenses in its opposition accusing Omega and Mr. McConnell of presenting a false declaration are two-fold: First, Buergofol falsely, and repeatedly, represents to the Court that Omega and Mr. McConnell stated that Omega "possesses" certain technical information regarding the films its uses in its current UV CIPP liners. Second, Buergofol hides from the Court that Mr. McConnell addressed Buergofol's false misrepresentations in his second declaration, and Buergofol does so in order to take another shot at falsely disparaging Omega and Mr. McConnell before the Court.

## III.    CONCLUSION

For the foregoing reasons, the relief Omega seeks by this motion – namely, that Darien Wallace should inform Omega and its counsel whether he intends to conduct patent prosecution work for Buergofol or represent Buergofol in this litigation before Omega produces its non-public highly confidential inforamtion, and, if the former, provide information as to how his firm will maintain an ethical wall between Mr. Wallace and the attorneys in his firm working on the litigation – is both straightforward and reasonable and should be granted.

Dated this 24th day of August, 2023.

DENEVAN FALON JOYCE PROF. LLC

/s/ Meghann M. Joyce

BY:    Meghann M. Joyce
Shannon R. Falon
100 S. Dakota Ave, Second Floor
Sioux Falls, SD 57104
Telephone:  605.219.29465
Email:        meghann@denevanfalon.com
                  shannon@denevanfalon.com

Michael S. Neustel (admitted pro hac vice)
Michelle G. Breit (admitted pro hac vice)
Monte M. Bond (admitted pro hac vice)
NEUSTEL LAW OFFICES, LTD
2534 South University Drive, Suite 4
Fargo, ND 58103
Telephone: 701.281.8822
Email:        michael@neustel.com
                  michelle@neustel.com
                  monte@neustel.com

Attorneys for Defendant Omega Liner Company, Inc.