UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GmbH, | Case No. 4:22-cv-04112 |
| Plaintiff, | **OMEGA'S REPLY BRIEF IN SUPPORT OF OMEGA'S MOTION TO COMPEL (Dkt. 175)** |
| vs. | |
| OMEGA LINER COMPANY, INC., | |
| Defendant. | |

## TABLE OF CONTENTS

I.   INTRODUCTION. .................................................................................................. 1

II.  RESPONSE TO BUERGOFOL'S OPPOSITION BRIEF. .......................................... 3

    A.   Buergofol Should Be Compelled to Produce the Documents Relating to
        Buergofol's Cancellation Proceeding (RFPs 70 and 88). ................................. 3

        i.   Buergofol Does Not Dispute RFP No. 88 in Opposition Brief. ............. 3

        ii.  Buergofol Makes Numerous Misleading Statements to the Court
            About German Cancellation Documents.................................................. 5

    B.   Buergofol Should Be Compelled to Produce the Foreign File Histories
        Related to the '269 Patent (RFPs 70, 72 and 73)............................................ 7

    C.   Request for Production No. 70 is Not Overbroad............................................. 9

        i.   Post-Motion Communications Regarding RFP 70. ............................... 9

        ii.  RFP 70 is Focused on the Patents-in-Suit and Related Patents........... 10

    D.   Dr. Stark's Requested Second BASF Analysis of 2012 Sudpack Film
        (RFP 103)....................................................................................................... 15

        i.   Buergofol's Objections to RFP 103 Are Not Valid. ............................ 15

        ii.  Buergofol Refuses to Inform the Court if a Second BASF
            Analysis Was Performed. ..................................................................... 16

    E.   Buergofol Should Be Compelled to Produce the Information and
        Documents Relating to Buergofol's Offer to License the '269 Patent
        Back to Loparex (ROG 8 and RFP 85)............................................................ 17

        i.   Buergofol Appears to Be Playing with Semantics Regarding the
            Word "Offer."....................................................................................... 17

        ii.  Buergofol's Negotiations with Loparex of the Terms of a
            License Are Not Work Product............................................................. 17

        iii. Buergofol's Case Law Does Not Support Their Claim that
            License Negotiations Are Work Product. ............................................. 18

        iv.  Buergofol Waived Any Privilege or Work Product Claim. ................. 20

    F.   Significant Problems with Buergofol's Email Production. ............................. 21

        i.   Buergofol Finally Admits It Removed an Initial Email from
            Email Thread (BF2600). ...................................................................... 21

        ii.  Buergofol is Silent About the Removal of Five Prior Emails in
            the September 2, 2020 Email Thread (BF2601). ................................. 22

|  | iii. | Alleged "Corrupted" Email File Attachment to BF2601. .................... 23 |
|  | iv. | Buergofol Does Not Deny It Is Using a Word Processor to Copy/Paste/Edit/Convert-to-PDF the Text of Emails. ......................... 24 |
|  | v. | Low Resolution Screenshots of Email Show Buergofol is Editing Format of Emails Being Produced. .......................................... 24 |
|  | vi. | Email Attachments Are Separated from Original Email by Two Intervening Documents. ........................................................ 25 |
|  | vii. | Missing Excel File – Only Produced 20 Days After Motion to Compel. ........................................................................ 25 |
|  | viii. | Buergofol Should Be Compelled to Produce Emails in Native File Format. ...................................................................... 26 |
| G. | | Buergofol Should Be Compelled to Produce Its Document Retention Policies (RFP 22). ........................................................... 26 |
| H. | | Buergofol Should Be Compelled to Produce Information Regarding Spoliation of Evidence. ............................................................ 27 |
| I. | | Buergofol Should Be Compelled to Disclose the Manner, Method and Sources of Its Searches and Indicate Whether It Is Withholding Documents Based on Its Objections. ............................................... 28 |
| J. | | Buergofol Misinterprets 14-Day Language in Scheduling Order. ................... 29 |
| III. | | CONCLUSION. ................................................................. 30 |

Defendant Omega Liner Company, Inc. ("Omega") files this reply brief in support of Omega's Motion to Compel (Dkt. 175) and in response to Plaintiff Buergofol GmbH's ("Buergofol") opposition brief (Dkt. 195).

## I.      **INTRODUCTION**.

Buergofol's unsubstantiated derogatory attacks on Omega's lead counsel, Michael Neustel, are simply an obvious and weak strategy to divert attention from its own documented misconduct during meet-and-confers, which Omega has presented *and Buergofol has not refuted*. (Dkt. 176, Neustel Declaration.) Tellingly, Buergofol fails to provide *any* evidence or declarations to support its derogatory attacks.[1]

Omega will be separately addressing Buergofol's derogatory remarks about Omega's counsel in a forthcoming Motion to Strike Buergofol's Opposition Brief. To the extent understood in the morass of Buergofol's arguments and unfounded attacks on Omega's lead counsel, Omega will focus on addressing the substantive, non-derogatory portions of Buergofol's opposition brief.

At the heart of Buergofol's true grievance is Omega's persistent efforts to address significant deficiencies in Buergofol's document production. When Omega asks if a missing document is being withheld based on an objection, Buergofol consistently defaults to their standard ambiguous statement: "Buergofol has produced all responsive documents in Buergofol's possession, custody or control that are not being withheld on the basis of privilege, work product,

---

1.      Buergofol has indicated that it intends to present new or further evidence or arguments at the hearing on this motion to compel, which has been scheduled for September 18, 2023.  However, as this Court knows, "[f]ederal courts do not, as a rule, entertain arguments made by a party for the first time" at a hearing. *See Anderson v. Rugged Races LLC*, No. 18-cv-2272 (PJS/HB), 2020 WL 6276017, at *12, n. 11 (D. Minn. Oct. 26, 2020) (quoting *UnitedHealth Grp., Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 886-87 (D. Minn. 2014), *aff'd sub nom.UnitedHealth Grp., Inc. v. Exec. Risk Specialty Ins.*, 870 F.3d 856 (8th Cir. 2017)); *see also Wirtz v. Specialized Loan Servicing*, 987 F.3d 1156, 1160 (8th Cir. 2021) (declining to consider two claims of injury – namely, alleged harm to credit status and expenses incurred to investigate a notice of delinquency, as they were raised for the first time at oral argument and were not properly briefed) (citing *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008)).

or trade secrets." (Dkt. 195, p. 6.) When asked if the document still exists, Buergofol reiterates the same ambiguous statement. Consequently, Omega concludes all meet-and-confers without clarity on the status of the apparently missing documents, thereby necessitating another motion to compel.

Buergofol's opposition brief seemingly tries to convince the Court that they have furnished all documents pertaining to their cancellation proceedings against the German equivalent of the '269 patent. In reality, Buergofol has only disclosed a limited number of exhibits, those of which were specifically highlighted by Omega as examples.

Buergofol contends that it does not have "control" over the file histories for the foreign counterparts to the '269 patent. However, the patent assignment agreement executed with Loparex gives Buergofol the legal right to request the file histories. Furthermore, Buergofol has the practical ability to request the file histories from Loparex. Buergofol's refusal to even ask for the file histories suggests a possible apprehension of revealing information detrimental to their case.

Buergofol remains unclear about the existence of specific information. For instance, it is uncertain whether BASF conducted a second analysis of the 2012 Sudpack film, as Dr. Kurt Stark had requested. Furthermore, when discussing their negotiations with Loparex concerning the licensing of the '269 patent, Buergofol seems to engage in wordplay surrounding the term "offer" to avoid providing Omega the requested information.

Furthermore, Buergofol's production of emails has significant problems as admitted by Buergofol's opposition brief. For example, Buergofol admits to removing an email from a produced email thread (BF2600) without indicating the removal of the email (e.g., redactions). Buergofol is then silent about the removal of five prior emails in an email thread (BF2601). Buergofol does not even deny that it is copying/pasting the text of emails into a word processor

and then generating the PDFs from the word processor creating significant risks and problems with Buergofol's email production.

Finally, Buergofol's document production is both deficient and confusing, making it challenging for Omega to comprehend. Notably, Buergofol has acknowledged errors, such as misplacing the UBE data sheets in the sequence of produced documents. Omega has identified further issues, such as the production of incomplete email threads and separate production of email attachments, making the context of produced documents impossible to discern.

In conclusion, the challenges with Buergofol's document submission are numerous, making it arduous for Omega to navigate and interpret the information provided. To gain a clearer understanding, Omega emphasizes the need for native email files from Buergofol. It is also essential for Buergofol to reveal its search methods, ensure a comprehensive search is conducted, and explicitly state if any documents are being withheld due to objections—a transparency step Buergofol has yet to take.

## II.   <u>RESPONSE TO BUERGOFOL'S OPPOSITION BRIEF</u>.

### A.   **Buergofol Should Be Compelled to Produce the Documents Relating to Buergofol's Cancellation Proceeding (RFPs 70 and 88).**

#### i.   **Buergofol Does Not Dispute RFP No. 88 in Opposition Brief.**

Buergofol argues in its opposition brief that Request for Production No. 70 ("RFP 70") is overbroad but does not make any argument as to how Request for Production No. 88 ("RFP 88") is overbroad. Because RFP 70 encompasses documents overlapping with RFP 88 and Request for Production Nos. 72 and 73 discussed in the next section, Omega has separately argued RFP 70 in Section C below.

RFP 88 requests the following:

REQUEST FOR PRODUCTION NO. 88: **All documents relating to any** civil action, International Trade Commission proceeding, arbitration, patent interference

3

proceeding, appeal proceeding, **administrative proceeding**, or reissue or **reexamination proceeding, whether inside or outside the United States, relating to** any of the Patents-in-Suit or **any Related Patent**, including, but not limited to, **pleadings, affidavits, declarations, reports, discovery requests or responses, orders, deposition or hearing transcripts, motions, briefs, letters, e-mails, or subpoenas**.

(Emphasis added). RFP 88, therefore, requires production of all documents relating to any foreign proceedings concerning "Related Patent(s)" to the patents-in-suit, which includes both the German cancellation and the European proceedings related to the '269 patent.

Buergofol filed a cancellation proceeding against German Patent No. DE202010016048U1 filed by Buergofol's predecessor-in-interest to U.S. Patent No. 8,794,269 ("the '269 patent") – Loparex (formerly Huhtamaki Films). German Patent No. DE202010016048U1 is the German counterpart to the '269 patent.

Buergofol does not dispute that the German cancellation proceeding is within the scope of Request for Production No. 88. Second, Buergofol does not provide any argument or evidence as to how Request for Production No. 88 is overly broad or unduly burdensome.

Omega is currently only seeking the following two categories of documents relating to Buergofol's cancellation proceeding filed with respect to German Patent No. DE202010016048U1 (the German counterpart to the '269 patent in this lawsuit):

1. All of the documents that Buergofol filed with the German Patent Office relating to the cancellation proceeding against German Patent No. DE202010016048U1; and

2. All of the communications between Buergofol and Loparex (formerly Huhtamaki Films) relating to the cancellation proceeding.

Buergofol should be compelled to produce all documents relating to the German cancellation proceeding, including all documents filed with the German Patent Office and all

communications with Loparex (Buergofol's predecessor-in-interest to the '269 patent and applicant of the German patent Buergofol filed the cancellation proceeding against).

### ii. Buergofol Makes Numerous Misleading Statements to the Court About German Cancellation Documents.

Buergofol's opposition is replete with misleading statements regarding documents from the German cancellation proceedings. First, Buergofol attempts to mislead the Court to conclude that Buergofol has already produced all documents responsive to RFP 88. To that end, Buergofol states it has already produced exhibits D4, D13, D33, D34, D35 and D36 from the German cancellation proceedings. Those documents, however, are just the *examples* of documents in the German cancellation proceeding that Omega told Buergofol it could not acquire directly from the German Patent Office. Like Buergofol's evasive tactics during meet-and-confer communications, Buergofol's opposition does *not* state that Buergofol has produced *all* of the documents relating to the German cancellation proceeding. Nor is it likely that Buergofol has done so given the small number of documents it has produced relating to the German cancellation proceeding, and the fact those documents correspond directly to the small number of exhibits that Omega identified to Buergofol as examples it could not obtain independently.

Second, Buergofol attempts to mislead the Court into believing that it produced the small number of exhibits relating to the German cancellation proceedings *before* Omega bringing this motion. (Dkt. 195, pp. 16-17.) The fact is that Buergofol did not produce those documents until August 10, 2023 – over two weeks *after* this motion was filed. The documents to which Buergofol refers in its opposition as earlier produced came from the *European opposition proceeding* –which is entirely separate from the German cancellation proceeding. Those documents are marked with publication number EP2582520A1, clearly showing the exhibits are from the European opposition of the European counterpart to the '269 patent.

Third, Buergofol attempts to mislead the Court by stating that Omega could easily download the German cancellation documents because "Buergofol's U.S. attorney, Darien Wallace, anonymously and as an ordinary member of the public simply downloaded the documents _from the European Patent Office website_ without notifying anyone that he was associated with Buergofol." (Dkt. 195, p. 16) (emphasis added). Again, Buergofol is referring to different foreign proceedings. Documents filed in German cancellation proceedings are <u>not</u> downloadable from the European website, as Buergofol knows. Tellingly, Buergofol provides no declaration to support its misleading statement.

Fourth, Buergofol attempts to mislead the Court to conclude that Buergofol has no control over the documents relating the German cancellation proceeding, such as the documents filed in the cancellation proceeding and communications with Loparex relating to the cancellation proceeding. Omega believes, however, that Buergofol's German counsel represented Buergofol in the cancellation proceeding and has all of the documents filed in the German cancellation proceeding, as well as the communications with Loparex relating to the German cancellation proceeding. Buergofol clearly has control over the documents in the possession of its attorneys.

Other than a few exhibits that Omega identified as examples, Buergofol still is refusing to produce documents relating to the German cancellation proceeding and hiding behind half-truths told to the Court. Buergofol should be compelled to produce all documents relating to the German cancellation proceeding, including all documents filed with the German Patent Office and all communications with Loparex.

**B.** **Buergofol Should Be Compelled to Produce the Foreign File Histories Related to the '269 Patent (RFPs 70, 72 and 73).**

As stated in Section A previously, Omega discusses RFP 70 in its own Section C below to address Buergofol's "facially overbroad" contention. Request for Production No. 72 ("RFP 72") and Request for Production No. 73 ("RFP 73") request the following:

> REQUEST FOR PRODUCTION NO. 72: All documents relating to the preparation, filing, or prosecution of any application that led to any of the Patents-in-Suit or any Related Patent, including all non-identical copies of all drafts and drawings and all correspondence with any Named Inventor.

> REQUEST FOR PRODUCTION NO. 73: All documents relating to any Prior Art collected, identified, or considered by any person in connection with any of the Patents-in-Suit or any Related Patent, including any Prior Art located or identified through any search or investigation.

RFP 72 requests all documents relating to the prosecution of foreign patents that are related to the '269 patent. RFP 73 requests all documents where prior art is "identified" or "considered" in connection with the prosecution of foreign patents that are related to the '269 patent.

Buergofol does not address Omega's Request for Production Nos. 72 and 73 in its opposition. Instead, Buergofol relies solely upon the legally incorrect argument that it does not have "control" over the foreign file histories related to the '269 patent.

First, Buergofol likely has possession of the foreign patent file histories but will not unambiguously confirm or deny it. Before purchasing a patent, it is standard for the purchaser to conduct due diligence into the validity and enforceability of the patent – particularly if the purchaser intends to initiate a patent infringement lawsuit within five days after the purchase. Therefore, it is expected that Buergofol obtained all of the file histories of the foreign counterparts to the '269 patent from Loparex or through other sources. Moreover, as part of its pre-litigation investigation, Buergofol's counsel was required to investigate the validity and enforceability of the '269 patent, including reviewing the file histories of the foreign related patents. So, even if

7

Buergofol did not gain possession of the foreign patent file histories as part of its due diligence in acquiring the '269 patent, it would have obtained them to perform the required pre-litigation investigation.

Even assuming Buergofol does not have possession of foreign file histories, it does have "control" over them consistent with this Court's construction of that term. First, as Omega pointed out in its opening memorandum, Buergofol allegedly acquired rights to the '269 patent through a one-page patent assignment with Loparex. (Dkt. 176-25, Ex. Y.) The one-page patent assignment agreement between Loparex and Buergofol specifically requires Loparex to "to execute all instruments and documents required … for litigation regarding the Letters Patent …" (*Id.*) Therefore, in the assistance of this litigation, Buergofol has the contractual legal right to acquire the foreign file histories from Loparex.

Even if Buergofol does not have the contractual right to obtain the documents from Loparex, Buergofol at least has the practical ability to obtain the foreign file histories from Loparex. To determine if a party has "control" over documents sought in discovery, this Court applies the "practical ability test." *McAllister-Lewis v. Goodyear Dunlop Tires North America, LTD.*, 4:14–CV–04103–LLP, 2015 WL 5794697, at *5, *7 (D. S.D. Oct. 1, 2015); *SDIF Limited P'ship v. Tentexkota, LLC*, 1:17-CV-01002-CBK, 2018 WL 3254489, at *2 (D. S.D. June 19, 2018); *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 4:14-cv-04092-LLP, 2017 WL 899882 at *9 (D.S.D. March 6, 2017). When determining if a party has the practical ability to obtain documents from a nonparty to an action, the Court looks at "the non-party's connection to the transaction at issue and the degree that the nonparty will benefit from the outcome of the case." *McAllister-Lewis*, 2015 WL 5794697, at * 5.

Because Loparex assigned its rights to sue for past infringement under the '269 patent to Buergofol five days before filing this lawsuit, Loparex is closely connected to the alleged infringement claim for the '269 patent.  See *McAllister-Lewis*, 2015 WL 5794697, at * 5.  Given Buergofol's blatant refusal to disclose documents or details about their acquisition of the '269 patent from Loparex or the negotiations of the patent license back to Loparex, Omega remains in the dark about Loparex's potential benefits from this case's outcome. Should Buergofol be mandated to comprehensively address Interrogatory No. 8 and Request for Production No. 85, as detailed in Section E below, Omega can ascertain the extent of Loparex's possible gains from this case's resolution.

Buergofol should not be permitted to hide behind its ambiguous answer to Interrogatory No. 8, its vague privilege log, and withholding of documents based upon alleged "work product" that relate to the purchase of the '269 patent while simultaneously refusing to even ask Loparex for the foreign file histories related to the '269 patent.

### C.      Request for Production No. 70 is Not Overbroad.

### i.      Post-Motion Communications Regarding RFP 70.

On August 7, 2023, twelve days after this motion was filed, Buergofol sent an email requesting clarification of RFP 70. (Neustel Decl., Ex. Z.) The next day, on August 8, 2023, Omega provided a complete response to Buergofol, including identifying three specific categories of responsive documents it was currently seeking: (1) the file histories for foreign patents related to the '269 patent, (2) documents relating to Buergofol's German cancellation proceeding against the German counterpart to the '269 patent, and (3) communications with third-parties relating to the patents-in-suit or the foreign related patents. *Id*. Omega requested that Buergofol clarify any alleged undue burden to produce these three categories of documents if Buergofol still believed RFP 70 was overbroad. *Id.* Omega also requested identification of the scope of the search and the

burden, including identifying Buergofol's ESI data systems that would need to be searched, the potential number of responsive documents, how any paper documents would be searched, and who the custodians of records are that would need to be searched. *Id.*

On August 14, 2023, Buergofol sent a reply email, but the email did not respond to any of the substantive portions of Omega's email. Instead, the email asked "whether Omega has narrowed the facially overbroad request in any manner." *Id*. On the same day, Omega responded, stating that, without a substantive response to Omega's request for clarification of the alleged undue burden, Omega would be unable to collaborate with Buergofol relating to the scope of RFP 70. Omega then made the same requests for clarification of the alleged burden to Buergofol to respond. *Id*. Buergofol never responded to Omega's August 14, 2023, email and did not submit the communications to the Court in its opposition brief.

### ii.     RFP 70 is Focused on the Patents-in-Suit and Related Patents.

Below is Omega's Request for Production No. 70 ("RFP 70") and Buergofol's response thereto:

REQUEST FOR PRODUCTION NO. 70:

    All documents relating to any of the Patents-in-Suit or any Related Patent, including all documents that reference or discuss any of the Patents-in-Suit or any Related Patent.

RESPONSE TO REQUEST FOR PRODUCTION NO. 70:

    Buergofol objects to this request as being facially overbroad. It broadly calls for the production of all documents in the present case, because the present case of course relates to the patents-in-suit. It also broadly calls for production of "all documents" "relating to" other patents that are not in suit. Buergofol also objects to this request to the extent it calls for the production of privileged and work product information. Buergofol will not endeavor to produce documents in response to this facially overbroad request.

(Dkt. 176-17, pp. 41-42, Buergofol's Responses to Omega's RFPs.)

Buergofol's "facially overbroad" objection is not stated with any specificity as required by Rule 34(b)(2)(C). Not only is Buergofol's response to RFP 70 deficient in failing to provide specificity regarding Buergofol's "facially overbroad" objection, Buergofol's opposition brief also fails to make any such showing. Buergofol's written objections and opposition brief merely allege that RFP 70 is "facially overbroad" but lack any details of how the request is considered "facially overbroad" or how this alleged overbreadth impacts the required scope, cost, and handling of document collection, processing, review, and production. Most, if not all, responsive documents should already be in Buergofol's possession from any pre-suit and/or post-suit investigation regarding the validity and enforceability of the patents-in-suit. Buergofol's failure to identify how responding to RFP 70 would create any undue burden is fatal to Buergofol's position.

Instead of explaining its "facially overbroad" objection, Buergofol argues for the first time in its opposition that it would be a "huge burden" to update its privilege log because of its pre-suit investigation. (Dkt. 195, p. 13.) With respect to the '269 patent pre-suit investigation, it is Omega's understanding that Buergofol has already logged most, if not all, of its alleged work-product documents (*e.g.*, Buergofol is asserting privilege over its communications with Loparex, the company from which Buergofol acquired the '269 patent five days before filing the lawsuit). With respect to pre-suit investigation for U.S. Patent No. 9,657,882 ("the '882 patent"), Buergofol's Second Revised Privilege Log, served on August 14, 2023, includes 287 entries all dated before filing the lawsuit on August 15, 2023, many of which are alleged to be work product. Buergofol is silent as to how many more alleged log entries it would have to make or the alleged burden. In any case, it is unlikely that Buergofol would have any significant number of privileged documents relating to RFP 70 that it has not already logged as a result of Omega's other requests for

production.  In the end, RFP 70 requests documents that Buergofol should have identified *before filing* this lawsuit as part of its pre-suit investigation into the validity and/or enforceability of the patents-in-suit. Buergofol's adamant refusal to produce any documents responsive to RFP 70 is a concerning indicator that Buergofol's counsel conducted little or no pre-suit investigation before filing the present lawsuit.

Even if Buergofol believes that RFP 70 is overbroad, it still must respond to the parts that are not. The Committee Notes for the 2015 Amendment to Rule 34(b)(2)(C) state:

> An objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad. Examples would be a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified sources.

Without explanation, Buergofol simply refuses to respond at all to RFP 70, even though RFP 70 is directed at the patents-in-suit and related patents. During the July 6, 2023, meet-and-confer, Buergofol refused to discuss the scope of RFP 70 and simply stated it was "facially overbroad" and therefore they did not have an obligation to respond to RFP 70. When Omega attempted to discuss Buergofol at least producing the documents in the possession of Buergofol's German counsel for Buergofol's German cancellation proceeding filed against the German counterpart to the '269 patent, Buergofol would only give its standard ambiguous statement that all documents had been produced that were not privileged or work product and refused to update its response to RFP 70.

In its objections to RFP 70, Buergofol purports to provide two reasons as to why it contends RFP 70 is "facially overbroad." First, Buergofol's objection contends that RFP 70 "calls for production of all documents in the present case." However, neither Buergofol's objection nor its opposition brief provide (1) any examples or explanation as to which documents are of concern, (2) how these documents would not be relevant to the claims or defenses of the parties, or (3) any

alleged undue burden of producing the documents. Buergofol's own brief is unable to identify a single responsive document that would not be relevant to the claims or defenses in the litigation.

Second, Buergofol's objection contends that RFP 70 "calls for production of 'all documents' 'relating to' other patents that are not in the suit." Buergofol's counsel are seasoned patent attorneys and patent litigation attorneys. Therefore, they *know* that the term "Related Patents" includes a family of patents that claim priority to the same patent, including foreign counterpart patents to the patents-in-suit. Indeed, during meet-and-confer communications, Omega made clear that, in seeking Related Patent(s), it was asking for foreign counterpart patents and has specifically identified the foreign counterpart patents.

Documents relating to the foreign counterpart patents to the patents-in-suit will inevitably touch upon important issues in the case such as invalidity, unenforceability, inequitable conduct, fraud on the U.S. Patent & Trademark Office (USPTO), the scope of the claims, patent prosecution history estoppel, alleged damages, Omega's affirmative defenses, and other crucial matters central to the present litigation because the disclosures and claims in those patents are either the same as in the U.S. patents or very similar. It is difficult to imagine a document that relates to any of the patents-in-suit or any of the foreign related patents that would <u>not</u> be highly relevant to the claims and defenses in the case.

As an example of documents responsive to RFP 70 that are highly relevant to issues in this litigation, Buergofol filed a cancellation proceeding against German Patent No. DE202010016048U1, which is a German patent initially issued to and owned by a different company, and that is directly related to the '269 patent, which Buergofol asserts against Omega in this litigation. Both the German patent and the '269 patent claim priority to German Patent No. DE 102010023764. Buergofol clearly believed that the German counterpart to the '269 patent was

invalid and, therefore, the '269 patent is likely invalid for the same reasons. Thus, all documents Buergofol filed in the cancellation proceeding of German Patent No. DE202010016048U1 would be responsive to RFP 70 and are also highly relevant to the validity of the corresponding '269 patent.

As another example of documents responsive to RFP 70, the prosecution file histories for the foreign counterparts to the '269 patent would include not only prior art cited during the prosecution of those foreign patents but also arguments made by Loparex (Buergofol's predecessor-in-interest to the '269 patent), which would be highly relevant to many of Omega's defenses and counterclaims (e.g., invalidity, unenforceability, inequitable conduct, fraud on the USPTO, etc.).

As another example of documents responsive to RFP 70, communications with third-parties related to the patents-in-suit and the foreign related patents would most likely relate to alleged patent infringement and/or invalidity of the patents-in-suit and the foreign related patents. Communications relating to the patents-in-suit and the foreign related patents with third-parties would also relate to the damages claimed by Buergofol for patent infringement, as well as the scope of the claims in the patents-in-suit. It is difficult to see how a communication related to any of the patents-in-suit or the foreign related patents would not be relevant to any of the claims or defenses in this lawsuit.

RFP 70, therefore, seeks highly relevant documents, which Buergofol has not disputed. Buergofol appears to hope that the Court just accepts its unsupported allegation that RFP 70 is "facially overbroad" without any explanation. And, even if RFP 70 is written too broadly, Buergofol still has a duty under 34(b)(2)(C) to search for and produce documents to the extent the request is not overly broad.

Buergofol's approach here is similar to Buergofol's failed strategy of "object and refuse to respond" that Buergofol employed in response to Omega's requests for "prior art," which the Court found against. (Dkt. 164, Order Granting [Omega's] Motion to Compel and Attorneys' Fees.) Buergofol's strategy of refusing to produce documents in response to RFP 70 should not be allowed, and Buergofol should be compelled to respond to RFP 70.

### D. Dr. Stark's Requested Second BASF Analysis of 2012 Sudpack Film (RFP 103).

#### i. Buergofol's Objections to RFP 103 Are Not Valid.

Omega's Request for Production No. 103 ("RFP 103") is narrowly focused on the highly relevant subject matter of the presence of EBS wax in the outer layer of inner films, which Buergofol alleges in the First Amended Complaint is significant for infringement of the '882 patent. (Dkt. 163, ¶¶ 15, 28, 40.) RFP 103 is shown below:

> REQUEST FOR PRODUCTION NO. 103:  All documents constituting or relating to any communications regarding EBS wax within an outer layer of film.

Documents *before* March 11, 2013, the earliest possible filing date of the '882 patent, relating to EBS wax within the outer layer of film are highly relevant to the invalidity and unenforceability of the '882 patent. Furthermore, documents relating to EBS wax within the outer layer of film *after* March 11, 2013, are highly relevant to the issue of alleged damages.

Buergofol's objections to RFP No. 103 are not valid. First, Buergofol incorrectly objects to RFP 103 because it requests alleged trade secrets. Omega has already fully briefed the issue of Buergofol withholding documents based on the alleged trade-secret claim in a separate motion to compel and incorporates those arguments herein. (Dkt. 92-94.)

Second, Buergofol objects that RFP 103 is overbroad with respect to time on grounds that how it manufactures its films from 2012 to present is not relevant. At the very least, however, how Buergofol manufactures its films from 2017 to present is relevant to the issue of infringement

because Buergofol specifically alleges that Omega's film purchased from Buergofol infringes the '882 patent and the '269 patent. (Dkt. 160-2, pp. 9-10.) In addition, how Buergofol manufactures its films from 2017 to present is relevant to the issue of damages (e.g., is Buergofol selling CIPP inner film that does not include EBS wax).

Third, Buergofol argues RFP 103 requests trade secrets regarding Buergofol's food packaging business, not just UV CIPP films, which is not relevant here. The Court, however, has already ruled that prior art in this case includes *analogous prior art*, which includes other areas of technologies such as, but not limited to, food packaging. (Dkt. 164, 181.) Buergofol's continued argument in that regard, therefore, is unfounded.

Fourth, Buergofol argues that it would be an undue burden to search for documents responsive to RFP 103. Buergofol provides no evidence of any purported burden. Buergofol does not even identify the sources of ESI information it would have to search or how many potential responsive documents it would have to review. Therefore, Buergofol's undue burden argument should be roundly rejected.

### ii. Buergofol Refuses to Inform the Court if a Second BASF Analysis Was Performed.

As explained in Omega's opening memorandum (Dkt. 178, pp. 15-16), Buergofol engaged its supplier BASF to perform at least one analysis of 2012 film made by Buergofol's competitor, Sudpack. RFP 103 requests those test results. Buergofol admits in its opposition that it "declined to answer" Omega's questions during a meet-and-confer as to whether it conducted a second BASF analysis of the 2012 Sudpack film as requested by Dr. Kurt Stark, as indicated in at least one document Buergofol has produced. (Dkt. 195, p. 21.) The second BASF analysis of the 2012 Sudpack film would reveal whether the prior art film had EBS wax or other migrating compound, which would invalidate the '882 patent. Buergofol simply will not admit or deny that, at its request,

16

BASF performed a second analysis of the 2012 Sudpack film. Instead, Buergofol's opposition is purposefully ambiguous, careful not to state expressly that such an analysis does *not* exist, and always referring only to "***the*** second BASF analysis of the 2012 Sudpack film requested by Dr. Kurt Stark" when making innuendos that BASF possibly did not perform a second analysis of the 2012 Sudpack film. (Dkt. 195, p. 21) (emphasis in original.). Instead of continuing to play hide the ball, if BASF did not perform a second analysis of the 2012 Sudpack film as requested by Dr. Stark, then Buergofol should simply state so and inform Omega that no such documents exist.

**E.** **Buergofol Should Be Compelled to Produce the Information and Documents Relating to Buergofol's Offer to License the '269 Patent Back to Loparex (ROG 8 and RFP 85).**

**i.** **Buergofol Appears to Be Playing with Semantics Regarding the Word "Offer."**

First, Buergofol *appears* to claim that it made no offer to license the '269 patent to Loparex, in contradiction with Buergofol's response to Interrogatory No. 8, which states: "Buergofol and Loparex negotiated the terms of a license [to the '269 Patent] that Buergofol would grant back to Loparex." It appears Buergofol is playing with semantics as to what constitutes an "offer." Omega tried to clarify Buergofol's position during meet-and-confer discussions by explaining, but to no avail.

**ii.** **Buergofol's Negotiations with Loparex of the Terms of a License Are Not Work Product.**

Second, Buergofol appears to be refusing to disclose information responsive to Interrogatory No. 8 and documents responsive to RFP 85, claiming the information is protected work product. However, Buergofol has not met its burden to demonstrate that the documents and information relating to the negotiations for a license were prepared in anticipation of litigation, rather than to further Buergofol's business goals. *Thought, Inc. v. Oracle Corp., et al*, 2014 WL 3940294 (N.D. Cal. 2014). Buergofol provides no information to support its claim of work product

and has not even offered the alleged work-product documents to the Court for an *in camera* inspection. Certainly, a patent transfer and license back are business-related and not the type of information prepared in anticipation of litigation that reflects an attorney's mental impressions, conclusions, opinions, or legal theories. Buergofol's privilege log does not provide sufficient information for Omega to evaluate whether the communications between Loparex and Buergofol identified in the privilege log are entitled to work-product protection. (*See* Dkt. 158-6, Buergofol's First Revised Privilege Log, Entry Nos. 159, 160, 176, 177, 195, 196, 232, 233, 252, 253, 254, 255, 259, 261, 262, 263, 264, 268, 269.)

Furthermore, Loparex is a third-party and Buergofol does not allege that it has a confidentiality agreement with Loparex or even that the parties have a common interest in this litigation. Therefore, Buergofol's disclosure of any information to Loparex (e.g., offer to license) is not protected by work product due to waiver. Indeed, Buergofol and Loparex are competitors and have been adversaries as shown by Buergofol's cancellation proceeding filed against Loparex's German counterpart to the '269 patent and Buergofol's opposition proceeding filed against Loparex's European counterpart to the '269 patent.

### iii. Buergofol's Case Law Does Not Support Their Claim that License Negotiations Are Work Product.

Finally, Buergofol's case law does not support Buergofol's position that documents and communications relating to the basic purchase or license negotiations are protected as work product. All of the cases cited by Buergofol involve protection of documents relating to due diligence as to the validity of the patent and infringement of the patent. None of the cases support the proposition that a purchase agreement or negotiations of a license are protected by work product.

In Buergofol's cited case *Wi-Lan, Inc. v. Acer, Inc.*, the Court found that an opinion drafted by a "consulting expert hired by Wi–LAN's intellectual property attorney to render his opinion in aid of potential litigation over Wi–LAN's pending patent application" was protected work product. *Wi-Lan, Inc. v. Acer, Inc.*, 2010 WL 4118625, at * 4 (E.D. Tex. Oct. 18, 2010). The Court further found that the opinion from the consulting expert was only provided to Broadcom after a non-disclosure agreement was signed and "after taking the position that production of privileged documents from Wi–LAN's outside patent counsel, which included the Driessen Report, would be protected under the common interest privilege and would not constitute a waiver of privilege." *Id.* at * 5. Buergofol has never claimed to have a non-disclosure agreement with Loparex or claimed the documents include an opinion prepared by a consulting expert in anticipation of litigation. Buergofol is simply withholding standard business communications from Omega based on a fallacious work-product theory.

In Buergofol's cited case *VSLI Technology v. Intel Corporation*, "[t]he patent transfer followed six months of strategizing between NXP and Fortress about how the entities might together assert NXP's patent rights against alleged infringers." *VSLI Technology LLC v. Intel Corporation et al*, 5:18-mc-80193-NC, at *2 (N.D. Cal. Jan. 18, 2019). "The patent transfer was memorialized in a Patent Purchase and Cooperation Agreement." *Id.* Buergofol has not alleged similar facts here. Furthermore, there is no Patent Purchase and Cooperation Agreement between Buergofol and Loparex – only a simple one-page patent assignment agreement.

In Buergofol's cited case *FastVDO LLC v. AT&T Mobility LLC*, FastVDO acquired the asserted patent from Boeing on December 17, 2014, but "[p]rior to the acquisition of the asserted patent, Plaintiff entered into a non-disclosure agreement ("NDA") with Boeing, on May 14, 2014." *FastVDO LLC v. AT&T Mobility LLC*, No. 3:16-cv-00385-H-WVG, at *3 (S.D. Cal. Oct. 21,

2016). The Court also found that "[t]he specific terms of the final purchase agreement between Plaintiff and Boeing further demonstrate that the discussions between Boeing and Plaintiff, along with the Subject Documents, were done in anticipation of litigation." *Id.*, at *4. The documents in dispute related to "claim charts and infringement analysis solely for developing infringement theories." *Id.* Between Buergofol and Loparex, there was no claim charts or infringement analysis to develop infringement theories, and there was no NDA to protect any such communications. In the end, Buergofol's work product allegation is merely an excuse not to produce relevant information relating to the purchase and offer to license the '269 patent.

### iv.    Buergofol Waived Any Privilege or Work-Product Claim.

The common interest doctrine is a narrow exception to the general rule that disclosing information to a third-party constitutes a waiver of privilege.  The common interest doctrine applies where "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Pulse Eng'g, Inc. v. Mascon, Inc.*, 2009 WL 3234177, at *3 (S.D. Cal. Oct. 2, 2009).

Neither Buergofol's privilege log nor opposition brief allege that any of the communications allegedly protected as work product were made in the course of a matter of common interest or designed to further a common interest. Nowhere in Buergofol's brief does Buergofol allege it has a common interest or even a non-disclosure agreement with Loparex. At most, Loparex is a third-party to whom Buergofol disclosed the documents and information and had business negotiations. Buergofol waived any alleged work-product claim, to the extent one ever existed, when it disclosed the information to Loparex.

In addition, Buergofol has not alleged any joint *legal* enterprise with Loparex. A party waives any work-product protection by disclosing information and documents to a patent owner

before purchasing the patent when the parties are not engaged in a joint *legal* enterprise. *Thought, Inc.*, 2014 WL 3940294. Because Buergofol has not shown a joint legal enterprise existed before disclosing the information alleged to be protected by work product, Buergofol waived any alleged work product rights in the documents and information provided to Loparex. *Id.*  As a result, Buergofol should be compelled to produce all documents and information exchanged with Loparex relating to the purchase and offer to license the '269 patent.

  **F. Significant Problems with Buergofol's Email Production.**

    **i. Buergofol Finally Admits It Removed an Initial Email from Email Thread (BF2600).**

  Omega highlighted in its opening memorandum the August 18, 2020, reply email from Dr. Schleicher, noting its indication ("Re-2" in the Subject line) as a follow-up to a prior email titled "Urgent actions to BF0004 - SER 4852 – against Südpack." (Dkt. 175, p. 17; *see* Neustel Decl., Ex. AA, BF2600.)   Before bringing this motion, on June 1, 2023, Omega sent an email to Buergofol identifying the missing prior email and informed Buergofol that the email thread appears to be edited to remove the initial email in the thread. (Dkt. 176-10, p. 7, Ex. J.) On June 2, 2023, Buergofol responded to Omega's email by threatening sanctions if Omega brought a motion to compel. (*Id.*, p. 5.) Buergofol further stated, "Your frustration with not having documents that you believe exist is also not a basis for bringing a motion to compel." (*Id.*)

  On June 3, 2023, Buergofol sent another email stating, "Buergofol's document production is not deficient and supplementing that document production is currently not warranted." (*Id.*, p. 4.) On June 25, 2023, Omega sent another email requesting clarification regarding the missing initial email, but Buergofol never substantively responded.  During the parties' July 6, 2023, meet-and-confer call about the missing initial email, Buergofol did not inform Omega that the initial email was removed nor did it assert that the initial email was privileged. Instead, Buergofol

provided the same standard vague statement that it had produced all documents that were not privileged.

Only when Buergofol filed its opposition brief on August 16, 2023, did Buergofol admit to removing the initial email, attributing the removal to an alleged privilege claim. (Dkt. 195, p. 27.) But the email thread as produced (BF2600) includes no indication that the document was intentionally redacted or that privileged material was removed. (Neustel Decl., Ex. AA, BF2600.) Buergofol, it now appears, was aware of this omission (certainly Omega's inquiries regarding the missing email highlighted the problem), yet Buergofol deliberately withheld this information from Omega, forcing Omega to raise the issue in its motion to compel.  Buergofol should be compelled to produce the email thread in BF2600 with the initial email, and Buergofol can redact any information in the initial email they believe is privileged.

> **ii.    Buergofol is Silent About the Removal of Five Prior Emails in the September 2, 2020 Email Thread (BF2601).**

From June 1, 2023, to the present motion to compel, Omega has raised concerns about Buergofol's removal of five emails in the September 2, 2020, email thread between Dr. Stark and Abdel Boutrid. (Dkt. 176-10, pp. 2, 7, Ex. J; Dkt. 178, p. 17.) The subject line of the email thread indicates that the September 2, 2020, email was the *sixth* email in an email thread based on the presence of the indicator "Re-6" at the front of the subject line. (Neustel Decl., Ex. AA, BF2601.) Although Buergofol's opposition attempts to explain the missing attachment to email BF2601 as being corrupted (Dkt. 195, pp. 22 and 25), Buergofol is completely silent as to the five prior emails in the September 2, 2020, email thread (BF2601).  Buergofol should be compelled to produce the email in BF2601 in its native file format so Omega can review all of the emails in the email thread, including the five prior emails in the email thread.

### iii.   Alleged "Corrupted" Email File Attachment to BF2601.

For the first time in its opposition, Buergofol claims that the email titled "Re last sample KS, tube inner film from Südpack to Reline.eml" attached to the email sent by Dr. Kurt Stark on September 2, 2020 (Bates No. BF2601) is "probably corrupted." (Dkt. 195, p. 26-27.) The only support for the alleged "corrupted" email is a screenshot of an "Untitled" email message. (Dkt. 196-1; BF7113.) During meet-and-confer communications, Buergofol never asserted the email attachment was corrupted; instead, it simply refused to produce the email attachment. In addition, Buergofol did not produce the screenshot to Omega until twenty days after Omega's Motion to Compel on August 15, 2023.

In any case, Buergofol provides no support for its claim that the attached file is "probably corrupted." Buergofol is silent as to what actions, if any, it took to attempt to recover the alleged corrupted email attachment, such as reviewing backups of the email or having an IT professional determine it truly is corrupted. Indeed, the attached file does not appear to be corrupt; instead, Buergofol appears to have a setting in Outlook that is incorrect when it attempts to view the email. The email produced by Buergofol says, "You are now viewing this message in the Internet Zone." (Dkt. 196-1; BF7113.) This indicates that the email is being viewed under the stricter "Internet Zone" settings, which could be preventing the email from being displayed properly. In addition, it appears Buergofol is attempting to open the alleged corrupted using a very outdated version of Microsoft Outlook (it appears to be Outlook 2003), which could also be contributing to the blank message shown.  If Buergofol would simply produce the native file for the email sent by Dr. Kurt Stark on September 2, 2020 (Bates No. BF2601), Omega could easily verify whether the attached file is corrupted or if it can be viewed. Buergofol refuses to do so. Buergofol should be compelled to produce the native email file for Bates No. BF2601.

### iv.   Buergofol Does Not Deny It Is Using a Word Processor to Copy/Paste/Edit/Convert-to-PDF the Text of Emails.

Buergofol's opposition does not dispute that it is copying/pasting the text of emails into a word processor and then converting the word processor file to a PDF file. This is improper and creates a significant risk that an email produced is not complete or accurate.  At a minimum, Buergofol should be compelled to produce all emails directly from the email program and not to copy/paste the text of the email into a word processor for editing. Alternatively, in Microsoft Outlook, when an email file is opened, it can be directly saved as a PDF from Microsoft Outlook. This ensures that all of the data in the email is retained and not lost or changed.

### v.   Low Resolution Screenshots of Email Show Buergofol is Editing Format of Emails Being Produced.

Buergofol states in its brief that "Omega's lawyers are so lacking in attention to detail and diligence that they have not recognized that the actual emails pictured in the screenshots [BF2652-BF2653], about which Omega complains, were in fact produced in very high and readable quality only a couple of pages earlier at BF2650 in Buergofol's document production." (Dkt. 195, p. 29; *see also* Neustel Decl., Ex. AB, Buergofol's Production BF2650-BF2654.)

First, Omega should not have to try to decipher if low resolution screenshots of emails, in German language, are somewhere present in Buergofol's document production. Omega does not understand why during the meet-and-confer that Buergofol never provided this information. Again, Buergofol's lack of cooperation in discovery has created a significant number of unnecessary issues.

Second, a comparison of the produced emails (BF2650) with the screenshots of the emails (BF2652) show that Buergofol is not producing emails in the format they are stored in, including the missing indentations. (Neustel Decl., Ex. AA.) The screenshots of the emails show the true

format of how Buergofol's emails should be produced so there is a clear understanding if the email produced is a complete thread or if emails have been removed.

### vi. Email Attachments Are Separated from Original Email by Two Intervening Documents.

For the first time, Buergofol states in its opposition brief that the UBE data sheets indicated as being attached to the August 19, 2020, email BF2600 were actually produced as BF2606-BF2611 (Dkt. 195, p. 30.) However, in the production, the UBE data sheets were located <u>after</u> a September 2, 2020, email (BF2601) and <u>after</u> an August 3, 2020, BASF letter (BF2602-BF205). (Neustel Decl., Ex. AA.) There was no way Omega could have known that those UBE data sheets were the UBE data sheets attached to the email. Buergofol could have informed Omega of the out-of-order document production and/or supplemented its document production with the email and the UBE data sheets produced together, but it chose not to do so.

As another example of Buergofol's production where documents appear to be randomly inserted within an email thread is shown in Buergofol's emails produced as BF2655 – BF2659. (Neustel Decl., Ex. AC.)  Buergofol appears to have inserted two testing documents (BF2656 and BF2657) in the middle of the email thread.  (*Id.*)  There are other examples of documents that appear to be randomly inserted within emails, but Buergofol refuses to provide any clarity on these issues.  Again, Buergofol's production of the emails in native form will eliminate all of the issues that are apparent from Buergofol's email production.

### vii. Missing Excel File – Only Produced 20 Days After Motion to Compel.

Twenty days after Omega filed its Motion to Compel, on August 15, 2023, Buergofol finally produced the Excel file as BF7112 that was attached to the email BF2581. Buergofol has provided no explanation as to why it did not agree during Omega's meet-and-confer efforts to produce the document, again forcing Omega to move to compel when Court intervention was

unnecessary. The production, however, is still deficient as it is not clear form the production to which email BF7112 was attached. Buergofol should reproduce the original email and the attached Excel file together to make the association clear.

> ### viii. Buergofol Should Be Compelled to Produce Emails in Native File Format.

In view of the significant flaws in Buergofol's discovery production relating to emails (e.g., missing sequential emails, missing attachments, out-of-order documents, changed formats and copying/pasting into Word) and Buergofol's lack of candor during meet-and-confers, Buergofol should be compelled to reproduce all emails in their native file format. Buergofol fails to identify how it would be burdened by having to produce the emails in their native file format. In fact, producing emails in their native file format would be less burdensome than copying/pasting the electronic email files into other formats. If the Court concludes that production of all of Buergofol's emails in their native format is not justified, Omega requests that at least the following five incomplete email threads be produced in their entirety and in their native file format: BF2600, BF2601, BF2570-2573, BF2574, BF2575. (Neustel Decl., Exs. AA, AD, AE and AF.)

> ### G. Buergofol Should Be Compelled to Produce Its Document Retention Policies (RFP 22).

After reviewing Buergofol's response to Omega's Request for Production No. 22 ("RFP 22") regarding Buergofol's document retention policies (Dkt. 195, pp. 31-32), Omega is amazed at how brazen Buergofol is. During the meet-and-confer call on July 6, 2023, Omega specifically asked about Buergofol's failure to produce documents relating to its document retention policies. Again, Buergofol gave only its standard vague statement that it has produced all responsive documents that were not being withheld on privilege or as trade secrets. When Omega asked if Buergofol was withholding *any* responsive documents regarding its document retention policies, Buergofol refused to respond.

Now, in Buergofol's opposition brief, Buergofol brazenly states, "Buergofol has no obligation to explain to Omega why no more responsive documents have been produced." (Dkt. 195, p. 31.) Actually, Buergofol has an obligation under Rule 34(b)(2)(C) to expressly state whether any responsive materials are being withheld based on an objection. Rule 34(b)(2)(C) specifically provides, "An objection must state whether any responsive materials are being withheld on the basis of that objection." Buergofol has never stated during the July 6, 2022, meet-and-confer or in its opposition brief, if any responsive materials are being withheld in its response to RFP 22.   Based on Buergofol's opposition brief, it appears that Buergofol is withholding responsive documents based on an alleged privilege or work product. Buergofol should not be able to hide documents relating to document retention policies as privileged or work product.

### H.   Buergofol Should Be Compelled to Produce Information Regarding Spoliation of Evidence.

Buergofol ambiguously states that "*Any* litigation hold notices are listed on Buergofol's privilege log." (Dkt. 195, p. 31) (emphasis added.) First, Buergofol does not identify a single entry in its privilege log constituting a litigation hold notice. Second, Buergofol's privilege log is so deficient that Omega is unable to identify whether a litigation hold notice is on the privilege log or not. Buergofol ambiguously uses the word "Any" in its statement – in other words, Buergofol may or may not have issued a litigation hold notice to preserve evidence.

On October 16, 2015, Buergofol submitted an affidavit to the European Patent Office in support of Buergofol's opposition to the European counterpart patent application to the '269 patent stating that paper form documents are kept at Buergofol for ten years and then in electronic form thereafter. (Dkt. 176-3, p. 7, Ex. C) (Machine Translated.) Without getting into the trees with Buergofol about what it anticipated for litigation in 2019 with respect to U.S. Patent No. 8,361,580

("the '580 patent"), Buergofol cannot deny the following portion of its answer to Interrogatory No. 7:

> Franz Schleicher provided an analysis of why Omega's liner is covered by U.S. Patent No. 9,657,882, which Franz Schleicher explained to Gary Strom, Kenny Moulds and Grant Marquardt in an email dated 8/29/21 9:44PM to which the '882 Patent and '580 Patent were attached (BF2734-BF2777).

(Dkt. 176-23 at p. 8, Ex. W.)  At least by August 29, 2021, Buergofol admits to anticipating litigation with Omega with respect to the '882 patent and the '580 patent.  A litigation hold should have been placed on all documents , and Buergofol should have "paper form" records ten years back to August 29, 2011, and "electronic form" records going back prior to that time. However, Buergofol has produced only a few documents dated prior to August 29, 2011. Because any prior art dated before March 11, 2012 invalidates the '882 patent, it is very important that Buergofol specify the documents it has retained and the documents it has destroyed.

Buergofol should be compelled to identify if a litigation hold notice was ever made, if so, what date, by who, and what information received the litigation hold. Buergofol should also be compelled to identify all information that has been destroyed by Buergofol since it contemplated litigation against Omega.

### I.   Buergofol Should Be Compelled to Disclose the Manner, Method and Sources of Its Searches and Indicate Whether It Is Withholding Documents Based on Its Objections.

Buergofol's document production is severely deficient and, quite frankly, an incoherent jumble that Omega is unable to understand. Buergofol admits to at least mixing up the UBE data sheets (Dkt. 195, p. 30) which were produced after an unrelated September 2, 2020, email (BF2601) and after an unrelated August 3, 2020, BASF letter (BF2602-BF205). (Neustel Decl., Ex. AB.) Based on Omega's review of Buergofol's other emails, it is clear that incomplete email

threads are being produced, and that email attachments are being produced separately from the emails with which they are associated. Buergofol somehow expects Omega to decipher its incoherent document production. Without the native email files from Buergofol, it is impossible for Omega to understand the email production from Buergofol.

Buergofol should be compelled to disclose the manner, method, and sources of its searches to ensure a reasonable search is being performed. Buergofol should also be compelled to indicate whether it is withholding any documents based on its objections, which it so far has refused to do.

### J.    Buergofol Misinterprets 14-Day Language in Scheduling Order.

Buergofol argues that Omega's motion is "untimely" because it was filed twenty days after the July 6, 2023 meet-and-confer. (Dkt. 195, p. 34.) However, this Court has repeatedly held that the fourteen-days language in similar scheduling orders "did not mandate that motions to compel be filed within fourteen days." *Clark v. Unum Grp.*, No. 4:20-CV-04013-KES, 2021 WL 4134520, at *3 (D.S.D. Sept. 10, 2021) (citing *Dziadek v. Charter Oak Fire Ins. Co.*, No. CIV 11-4134-RAL, 2014 WL 820049, at *4 (D. S.D. Mar. 3, 2014)).

### K.    Buergofol's Waiver or Withdrawal of Its Objections.

As already addressed above, Buergofol objects to several of Omega's requests for production of documents as "facially overbroad" and does not provide a response or even an explanation supporting Buergofol's refusal to produce documents. So, in addition to the motions to compel, Omega submitted additional and more specific requests in two sets—Set Five (Amended) on July 12, 2023 and Set 6 on July 18, 2023. (Neustel Decl., Exs. AG and AH.) Omega provided 2-week and 3-week extensions of time respectively to respond to these requests as requested by Buergofol. (*Id*., Ex. AI.) Pursuant to these extensions, Buergofol was required to respond or make objections by August 25, 2023, for Set 5 and September 7, 2023 for Set 6. Fed. R. Civ. P. 34. Buergofol's responses to Set Five were submitted on August 28, 2023, making them

untimely. (Neustel Decl., Ex. AJ.) Moreover, Buergofol only objected to a portion of the requests (Nos. 113-154) and failed to object or respond to most of the requests (Nos. 155-243). (*Id.*)

"Under Rule 33(b)(4), if not timely asserted, objections to discovery requests are waived, unless the court finds good cause to excuse the failure to object." *Heil v. Belle Starr Saloon Casino Angie's, Inc.,* CIV. 09-5074-JLV, at \*7 (D. S.D. Mar. 30, 2011); *Brown v. Nationwide Affinity Ins. Co. of Am.*, 4:17-CV-04176-LLP, at \*10 (D. S.D. June 29, 2018) ("Discovery objections are waived if they are not first asserted in the responses to the opposing party's discovery requests."); *Cup O'Dirt LLC v. Badlands Airtime, LLC*, 4:19-CV-04031-KES, at \*40 (D. S.D. Feb. 22, 2021) ("Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause.") (citations omitted).

Buergofol's responses were submitted after its opposition was filed. Omega raises them now because they are closely related to Omega's pending motions to compel to be heard by the Court on September 18, 2023; i.e. many of the requests specifically identify the documents subject to the motions. Buergofol appears to have waived or no longer objects to producing the documents and things Omega is seeking, making them highly relevant to those pending motions.

## III.    **CONCLUSION.**

For the reasons set forth herein, Omega respectfully requests an order compelling Buergofol to perform the acts requested in Omega's Brief in Support of Its Motion to Compel Buergofol's Document Production and Response to Interrogatory. (Dkt. 178, pp. 31-22.)

Dated this 30th day of August, 2023.

                              DENEVAN FALON JOYCE PROF. LLC

                              /s/ *Meghann M. Joyce*
                         _____
                         BY:  Meghann M. Joyce
                              Shannon R. Falon
                              100 S. Dakota Avenue, Second Floor
                              Sioux Falls, SD 57104
                              Telephone:  605.219.9465
                              Email:     meghann@denevanfalon.com
                                         shannon@denevanfalon.com

                              Michael S. Neustel *(admitted pro hac vice)*
                              Michelle G. Breit *(admitted pro hac vice)*
                              Monte M. Bond *(admitted pro hac vice)*
                              NEUSTEL LAW OFFICES, LTD
                              2534 South University Drive, Suite 4
                              Fargo, ND 58103
                              Telephone: 701.281.8822
                              Email:     michael@neustel.com
                                         michelle@neustel.com
                                         monte@neustel.com

                              *Attorneys for Defendant Omega Liner Company,*
                              *Inc.*