UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GmbH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | Case No. 4:22-cv-04112<br><br>**MEMORANDUM IN SUPPORT OF OMEGA'S MOTION TO STRIKE BUERGOFOL'S OPPOSITION TO OMEGA'S MOTION TO COMPEL (DKT. 195) AND TO SANCTION COUNSEL FOR ABUSIVE LITIGATION CONDUCT** |

In 1971, Chief Justice Warren Burger, during an address to the American Law Institute, said, "[G]ood manners, disciplined behavior and civility, by whatever name, are the lubricants that prevent lawsuits from turning into combat." Warren E. Burger, Chief Justice, U.S. Supreme Court, The Necessity of Civility, Remarks at the Opening Session of the American Law Institute (May 18, 1971), 52 F.R.D. 211, 212 (1971) ("Without civility, no private discussion, no public debate, no legislative process, no political campaign, no trial of any case, can serve its purpose or achieve its objective.  When men shout and shriek or call names, we witness the end of rational thought process if not the beginning of blows and combat.").  And yet, in this case, civility by Plaintiff Buergofol GmbH's ("Buergofol") counsel is in short supply, causing this case to become far more combative, expensive, and time-consuming than necessary.  Defendant Omega Liner Company, Inc. ("Omega") therefore urges the Court to exercise its inherent authority to craft sanctions to remedy this abusive

litigation conduct, so that this case can move forward in a more orderly, expeditious, and dignified manner.

## BACKGROUND

Buergofol filed this lawsuit on August 15, 2022 (Dkt. 1) and served Omega on September 21, 2022. (Dkt. 7.). Omega's counsel immediately noticed that communications from Buergofol's counsel were antagonistic; nonetheless, Omega's counsel did their best to encourage Buergofol's counsel to be more courteous in their communications. Buergofol's counsel, however, have ignored Omega's counsel's repeated requests that they refrain from unprofessional conduct.

Although Buergofol's counsel's communications have been unduly antagonistic from the start, beginning in January 2023, Buergofol's counsel's poor conduct escalated to a point where Omega's counsel is unable to have meaningful meet-and-confer conferences with Buergofol's counsel to resolve discovery disputes. As a marking point, following the Court's order on January 27, 2023 (Dkt. 56), acknowledging that Omega's counsel can communicate, within defined guidelines, with Buergofol's former employee and inventor Dr. Kurt Stark, on January 30, 2023, Buergofol's counsel, Darien Wallace, threatened Omega's counsel with *criminal liability* in the event Omega's counsel spoke with Dr. Stark. (Dkt. 85-2.) Omega requested that Darien Wallace withdraw his criminal threats (*Id.*), but he never did so, resulting in Omega filing a motion seeking Court intervention. (Dkt. 80.) Since then, Buergofol's counsel have regularly resorted to *ad hominem* attacks on Omega's counsel, calling

counsel a "fool" and "stupid" during telephonic meet-and-confer conferences. (Neustel Decl., ¶¶ 6, 11, Ex. D, and Ex. E, p. 2.)

### A.  Buergofol's Offensive Conduct During Meet-and-Confer Conferences.

Although it is difficult to convey in writing Buergofol's counsel's unprofessional conduct that permeates telephonic meet-and-confer discussions, below are some additional examples of the antagonistic and abusive communications Omega's counsel have endured from January through August 2023:

- On January 24, 2023, during a meet-and-confer call regarding Omega's Interrogatory No. 4 requesting prior art known to Buergofol, Lester Wallace referred to the interrogatory as "ridiculous," and Darien Wallace referred to Interrogatory No. 4 as an "amateurish interrogatory." (*Id.*, ¶ 2.) On July 13, 2023, the Court granted Omega's Motion to Compel regarding Interrogatory No. 4. (Dkt. 164.)

- On March 31, 2023, during a meet-and-confer call, Lester Wallace called Michael Neustel a "fool." (Neustel Decl., ¶ 6, Ex. D.)

- On April 6, 2023, during a meet-and-confer call, Lester Wallace exhibited antagonism and launched professional attacks against Omega's counsel, including referring to one of Omega's motions filed the day before as an "embarrassment." (*Id.*, ¶ 9.) Ironically, the motion Lester Wallace was calling an "embarrassment" was Omega's motion to protect witnesses and Omega's customers from Lester Wallace's very own abusive conduct. (Dkt. 80.) Omega's counsel repeatedly instructed Lester Wallace to cease his attacks, or they would end the call. (Neustel Decl., ¶ 9.) Despite these repeated warnings, Lester Wallace continued with his attacks, leading Omega's counsel to terminate the call. (*Id.*, ¶ 9.)

- On July 6, 2023, during a meet-and-confer call, Lester Wallace repeatedly interrupted Omega's counsel saying the meet-and-confer was a "waste of time." (*Id.*, ¶ 10, Ex. E.) Lester Wallace then told Michael Neustel to "stop asking dumb questions." (*Id.*, ¶ 10, Ex. E.) Lester Wallace then stated to Michael Neustel, "It is always a waste of my time talking to you." (*Id.*, ¶ 10, Ex.

E.) Lester Wallace's conduct occurred less than one-month after the Court issued an order, stating that "[b]eing antagonistic with opposing counsel is not conferring in good faith." (Dkt. 143, p. 6.) The same order also recognized one of Darien Wallace's emails as having the "form of antagonistic questioning." (Id., p. 7.)

- On August 1, 2023, during a meet-and-confer call, Lester Wallace called Michael Neustel "stupid." (Neustel Decl., ¶ 11, Ex. E.) In the same meet-and-confer, Darien Wallace referred to Michael Neustel's objections as "stupid." (*Id.*)

- On August 2, 2023, Darien Wallace sent a letter attempting to rationalize calling Michael Neustel and his objections "stupid." (*Id.*, Ex. F, p. 2.) Darien's letter bluntly stated, "I now realize that I should have called your objection what it really is: an unethical, specious, legally unsupportable, bad faith smokescreen for obstructing discovery. Just calling your objection 'stupid' was gracious." (*Id.*) On August 4, 2023, Omega's counsel replied to Darien Wallace's letter but never received a response. (*Id.*, Ex. G.)

- On August 4, 2023, Judge Schreier issued another order, stating, "Buergofol's counsel's antagonistic attitude toward Omega's counsel also weighs in favor of finding that Buergofol did not meet-and-confer in good faith." (Dkt. 180, p. 15.)

- On August 6, 2023, Lester Wallace sent an email insinuating that Omega's counsel was "recording" meet-and-confer conversations to which Omega's counsel responded. (Neustel Decl., Ex. H.)

In addition, Buergofol's counsel frequently insinuates that Omega's counsel is incompetent, a sentiment mirroring how Buergofol's counsel expressly referred to opposing counsel in a different case as "incompetent lawyers." *See, e.g., Cap Export, LLC v. Zinus, Inc.*, 996 F.3d 1332, 1339 (Fed. Cir. 2021). For example, on March 27, 2023, Buergofol's counsel Lester Wallace left a voicemail on Michael Neustel's cell phone, stating, "I don't think you're well versed in the law." (Neustel Decl., Ex. C.) As yet another example,

4

during a meet-and-confer call on April 14, 2023, Lester Wallace stated to Omega's counsel, "You are so uninformed," and "I am not going to wait for you to get educated." (*Id.*, ¶ 8.)

## B. Buergofol's Continued Offensive Behavior in Its Opposition Brief.

On August 7, 2023, in the same email string in which Lester Wallace accused Mr. Neustel of recording their conversations, Mr. Wallace requested a private discussion with Mr. Neustel, ostensibly to discuss the "unfortunate interactions" between counsel. (Neustel Decl., ¶ 16, Ex. I.) Mr. Neustel responded by letter, pointing out that the improper conduct of Buergofol's attorneys had been occurring for nine months, that Buergofol's attorneys had not adhered to the Court's recent directives, and that Mr. Wallace's communication lacked "any acknowledgement, apology, or commitment" to change the improper behavior. (*Id.*, ¶ 17, Exs. I, J.) Mr. Neustel further warned that Omega would bring their conduct to the Court's attention. (*Id.*, Ex. J, p. 2.) Nonetheless, still hopeful, Mr. Neustel indicated that Mr. Wallace could contact him in writing and also made a simple request:

> If you have a genuine desire to put an end to the cycle of hostile and antagonistic interactions, as expressed in your email, the solution does not necessitate a personal conversation. Buergofol's attorneys should simply stop the hostile, antagonistic and abusive way they communicate with Omega and its attorneys, some of which has already been acknowledged by the Court in recent orders. (Dkt. 143 at p. 7; Dkt. 180 at p. 15.)
>
> If indeed Buergofol's attorneys change their conduct, it will be welcomed by all parties involved in this case and the Court.

(*Id.*) Mr. Wallace persisted and again requested a conversation that would not involve the "others." (*Id.*, ¶ 16, Ex. I, p. 1.) Again, Mr. Neustel responded in writing, pointing out that

5

any such effort would have to include Darien Wallace due to his name calling and improper conduct and that he could also approach Mr. Neustel in writing.  (*Id.*, ¶ 18, Exs. I, K.)

Mr. Neustel's hope of a change in behavior by Buergofol's counsel was short-lived. Less than ten days later, on August 16, 2023, Buergofol's counsel filed a thirty-page opposition brief (Dkt. 195) against Omega's Motion to Compel (Dkt. 175), saturated with personal attacks against Mr. Neustel, Omega's lead attorney, mentioning him by name no less than forty times.  Indeed, the five-page introduction of Buergofol's brief begins by personally targeting Mr. Neustel with derogatory terms such as "ignorant," "unprofessional," "antagonistic, bullying, contemptuous, and disrespectful," and accusing him of making "false statement[s]."  (Dkt. 195, pp. 1-5.)  The body of the brief also contains numerous unsupported derogatory claims against Mr. Neustel, alleging he made "false statement(s)" nine times, referencing his "ignorance" four times, labeling him "unprofessional" three times, and calling him "ignorant" two times. (Dkt. 195, *supra*.) Tellingly, none of these specious claims are supported by examples or any evidence.  (*Id.*)

## ARGUMENT

**I.   The Court Is Empowered to Strike Pleadings, Address Abuses of the Judicial Process and Improper Litigation Conduct.**

**A.   Fed. R. Civ. P. 12(f) Empowers the Court to Strike Pleadings Containing Scandalous, Immaterial, and Impertinent Matter.**

Rule 12(f) of the Federal Rules of Civil Procedure provides, in pertinent part, that [u]pon motion made by a party . . . the court may order stricken from any pleading any . . . scandalous matter." Fed. R. Civ. P. 12(f); *see* 5A C. Wright and A. Miller, *Federal Practice and*

6

*Procedure (Civil) 2d* § 1382 (1990) ("'Scandalous' matter is that which improperly casts a derogatory light on someone, most typically a party to the action.") (footnote omitted); 2 *Moore's Federal Practice* § 12.37[3] ("'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.") (footnote omitted). Scandalous material is that which "casts an adverse light on the character of an individual or party." *Nault's Auto. Sales, Inc. v. American Honda Motor Co., Inc., Acura Auto. Div.*, 148 F.R.D. 25, 30 (D. N.H. 1993), *overruled on other state law grounds*, *Averill v. Cox*, 761 A.2d 1083 (N.H. 2000) (quoting *Alvrado Morales v. Digital Equip. Co.*, 669 F. Supp. 1173, 1186 (D. P.R. 1987), *aff'd* 843 F.2d 613 (1st Cir. 1988)).

While motions to strike are generally disfavored, "the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations." 5A C. Wright and A. Miller, *Federal Practice and Procedure (Civil) 2d* § 1382 (1990); *see Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 641-42 (S.D.N.Y. 2001) ("Generally, motions to strike are disfavored and usually granted only for scandalous material.") (citation omitted); *Nault's Auto. Sales, Inc.*, 148 F.R.D. at 29-34 (employing Rule 12(f) to address several motions containing scandalous assertions that "[w]ith each passing week . . . assumed a more hostile and accusatory tone"). Additionally, Rule 12(f) need not be granted only upon motion of a party; consistent with the Court's inherent powers to

protect the decorum of proceedings before it, the Court may strike such material *sua sponte*. Fed. R. Civ. P. 12(f); *see Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn,* 6 Wheat. 204, 227 (U.S. 1821); *Ex parte Robinson*, 19 Wall. 505, 510, 22 L. Ed. 205 (1874)).

The striking of offensive material is particularly appropriate when the offensive material is not responsive to an argument but, rather, constitutes an inappropriate attempt to abuse the Court's process to attack an individual personally. *See, e.g., Magill v. Appalachia Intermediate Unit 08*, 646 F. Supp. 339, 343 (W.D. Pa. 1986) (striking allegations that "reflect adversely on the moral character of an individual who is not a party to this suit," and which were "unnecessary to a decision on the matters in question"); *see also Pigford v. Veneman*, 215 F.R.D. 2, 4-5 (D. D.C. 2003) (striking unfounded accusations that opposing counsel was racist); *Murray v. Sevier*, 156 F.R.D. 235, 258 (D. Kan. 1994) (striking allegation that defendant and his counsel "bought off" and paid "hush money" to prospective witnesses); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998) (striking allegation that "defendants are '[l]ike vultures feeding on the dead'").

Buergofol's baseless and unsupported attacks on Mr. Neustel justify striking its opposition brief. *See, e.g., Equal Emp't Opp. Comm'n v. Green Lantern Inn, Inc.*, No. 19-CV-6704-FPG-MJP, 2021 WL 4086148, at *4 (W.D.N.Y. Aug. 19, 2021) ("Personal attacks on a party's counsel, particularly ones that suggest that counsel has committed some wrongdoing by prosecuting or defending his or her client's legal interest, constitute scandalous material

that should be stricken pursuant to Federal Rule of Civil Procedure 12(f)."); *SEC v. Lauer*, No. 03-CV-80612, 2007 WL 1393917, at *2 (S.D. Fla. Apr. 30, 2007) (striking filing accusing plaintiff's attorney of "immoral unethical conduct" without evidence); *Nault's Auto Sales, Inc.*, 148 F.R.D. at 34-35 (striking from record personal attacks on opposing counsel's integrity and ethics that demonstrated "an unfortunate and uncharacteristic loss of professional detachment").

Buergofol's brief in opposition to Omega's motion to compel (Dkt. 195) should accordingly be stricken. As detailed above, Buergofol's opposition brief is littered with personal attacks and accusations that are not only wholly supported by any facts or evidence but are also wholly unrelated to the legal issues that Omega's motion to compel presents. (*See id.*). This rhetoric, which is now contained within a publicly available document, reflects poorly on Mr. Neustel's professional qualification and reputation and are "unnecessary to a decision on the matters in question." *See Magill*, 646 F. Supp. at 343. Thus, in an effort to protect the decorum of the Court and the proceedings before it, and as a sanction against Buergofol's counsel for its abusive and unprofessional conduct, Omega's motion to strike Buergofol's brief in opposition to Omega's motion to compel should be granted.

### B. The Court Has the Inherent Power to Address Abuses of the Judicial Process and Improper Litigation Conduct.

It is well settled that federal courts also possess "the inherent powers to levy sanctions to, among other things, curb abusive litigation practices, prevent undue delay in the disposition of cases, protect the orderly administration of justice, and maintain the dignity and

authority of the court." *Warger v. Shauers*, CIV. 08-5092-JLV, 2010 WL 3701325, at *22-23 (D. S.D. Sep. 14, 2010) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980)). These powers come not from a rule or statute but "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citing *Chambers,* 501 U.S. at 43).

Courts have the inherent power and the responsibility to impose necessary discipline on lawyers in order to assure preservation of the judicial process. *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147, 1150 (D. S.D. 2001) (citing *Chambers*, 501 U.S. at 43-46; *Greiner v. City of Champlin*, 152 F.3d 787, 790 (8th Cir. 1998)); *see also Wescott Agri-Products, Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012) ("By its nature as a court of justice, the district court possesses inherent powers 'to manage [its] affairs so as to achieve the orderly and expeditious disposition of cases.'") (quoting *Chambers*, 501 U.S. at 43-46). These "inherent powers include the ability to supervise and discipline attorneys who appear before it and discretion to fashion an appropriate sanction for conduct which abuses the judicial process." *Bell v. Young*, 4:16-CV-04046-VLD, 2022 WL 1320303, at *2 (D. S.D. May 3, 2022) (quoting *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017)). It also "encompasses, among other things, the authority to police lawyer conduct and to guard and to promote civility and collegiality among the members of its bar." *Wescott Agri-Products, Inc.*, 682 F.3d at 1095-96 (quoting *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009)).

The tenor of Buergofol's brief in opposition to Omega's motion to compel is not an isolated occurrence. As this Court well knows, this case has required a myriad of motions relating to scheduling and, of course, discovery, causing both the parties and the Court to expend valuable time and resources. The number of motions that this case has required is undoubtedly problematic, but it is in fact a symptom of the challenge that Omega and its counsel have faced from the beginning of this case, and it also demonstrates why fashioning some sanction is necessary. Indeed, while Buergofol's abusive conduct was previously limited to its interactions with opposing counsel, its uncivil rhetoric has now bled into pleadings filed with the Court, thus impugning the decorum of these proceedings.

Discovery in patent litigation is often extensive and time-consuming, and parties often encounter legitimate disputes regarding the proper scope of discovery. But it is also true that, in most cases, counsel are able to engage in meaningful and productive meet-and-confer conferences to resolve the vast majority of those issues. Here, however, when disputes regarding scheduling or the scope of discovery have arisen, Omega's attempts to meet and confer with Buergofol's counsel inevitably erupt into combative, antagonistic, and, ultimately, wholly unproductive endeavors. The discovery disputes are, therefore, left without any resolution, and Omega is left with little choice but to bring the matter before the Court. It is an understatement to say that the motion practice that this case has required is atypical.

The meet-and-confer requirement is not an empty formality. (Dkt. 143, p. 5 (citing *Pierce v. Fremar, LLC*, No. CIV. 09-4066, 2010 WL 3420169, at *1 (D. S.D. Aug. 27, 2010)). "'Good faith' requires that the parties ma[ke] a genuine attempt to resolve the discovery dispute without involving the court[,]" and that they "meaningfully discuss each contested discovery dispute." (*Id.* (quoting *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Servs., Inc.*, 4:20-CV-04058-KES, 2023 WL 326121, at *3 (D. S.D. Jan. 23, 2023)). "In determining whether a party has complied with its meet-and-confer obligations, the court 'looks to all surrounding circumstances to determine whether the movant's efforts were unreasonable.'" (*Id.*, p. 6 (quoting *LoganTree LP v. Garmin Int'l, Inc.*, 339 F.R.D. 171, 178 (D. Kan. 2021)). Ultimately, "[t]he quality of parties' contacts in attempting to resolve the dispute is more important than the quality of their contacts," and "[b]eing antagonistic with opposing counsel is not conferring in good faith." (*Id.* (citing *Navient Mktg. Sols., Inc. v. Larry Trucker, Inc.*, 339 F.3d 180, 186-87 (3d Cir. 2003) (recognizing that counsel did not meet and confer in good faith where counsel's approach was "shoot first and find out later," and "counsel's responses were not always commensurate with defendant's violations")).

Here, the Court has already taken action to address Buergofol's conduct. It has of course already denied Buergofol's motions for failure to "meaningfully confer[ ] with Omega," warned its counsel that its litigation conduct was not in good faith, and sanctioned Buergofol's counsel by awarding attorneys' fees. (*See* Dkt. 143 (recognizing that Buergofol's counsel "took on an unnecessarily oppositional attitude with Omega's counsel," and denying motion

12

to compel due to Buergofol's failure to "ever meaningfully confer[ ] with Omega"); Dkt. 164 (recognizing that "Buergofol was not conferring in good faith," that its position was not substantially justified, and granting Omega's motion for attorneys' fees and expenses); Dkt. 180 (denying Buergofol's motion to compel due to its failure to meet and confer with Omega before filing its motion for protective order, finding that "Buergofol approached its obligation to meet and confer as an 'empty formality' and not as one where the parties make a meaningful effort to resolve the dispute")). Nevertheless, despite the Court's admonishments, the conduct of Buergofol's attorneys has worsened, not improved.

Omega thus brings this motion for further sanctions. While it is true that Buergofol's litigation conduct could be addressed under Rule 37 on a motion-by-motion basis, that remedy will require Omega to continue to engage in wholly unproductive (and abusive) meet-and-confer conferences with Buergofol, it will require the parties to continue to fully brief the motions that will inevitably be required, and it will require the Court to expend valuable judicial resources to continue to wade through and decide those issues. Thus, Omega urges the Court to fashion appropriate remedies that are aimed at not only "the orderly and expeditious disposition" of this case but also restoring the decorum of these proceedings. *See Warger*, 2010 WL 3701325, at *22-23.

Omega therefore proposes that several steps be taken to address Buergofol's conduct. First, as detailed above, Omega proposes that Buergofol's brief in opposition to its motion to compel be stricken. Second, due to the abusive nature of the meet-and-confer conferences,

13

Omega has incurred the additional expenses not only of two of its attorneys attending each meet-and-confer conference but also sending confirmation emails and letters confirming the substantive parts of the discussions.  (Neustel Decl., Ex. G.)  Omega, therefore, proposes that it either be permitted leave to conduct all further meet-and-confer communications with Buergofol in writing only, or that Buergofol be responsible for these additional expenses that Omega has and will continue to incur in the meet-and-confer process.  Third, Omega proposes that Buergofol be responsible for Omega's attorneys' fees and costs incurred in connection with this motion.  And finally, in addition or in lieu of these proposals, Omega invites the Court to issue any further sanctions or remedies it deems appropriate.

## CONCLUSION

South Dakota courts generally expect better from counsel, "where our standards are high, our bar collegial, and we have been (mostly) free of the sharp practices that often characterize law practice in big urban centers in other states." *United States for Use and Benefit of Ash Equipment Co., Inc. v. Morris, Inc.*, 4:14-CV-041310-VLD, 2017 WL 3426063, at *31 (D. S.D. Aug. 8, 2017); *see also Dakota Energy Co-op, Inc. v. E. River Elec. Power Co-op, Inc.*, 4:20-CV-04192-LLP, 2021 WL 3891702, at *2 (D. S.D. Aug. 31, 2021) ("The Court will not tolerate any . . . sharp practice from attorneys in this matter."). In the interests of this tradition, and in the Court's statutory and inherent power, Omega's motion to strike Buergofol's opposition to its motion to compel and to sanction Buergofol's counsel for abusive litigation conduct should be granted.

Dated this 1st day of September, 2023.

                                  DENEVAN FALON JOYCE PROF. LLC

                                  /s/ *Meghann M. Joyce*

By:   Shannon R. Falon
        Meghann M. Joyce
        100 S. Dakota Ave, Second Floor
        Sioux Falls, SD 57104
        Telephone: 605. 219.9465
        Email:   shannon@denevanfalon.com
                    meghann@denevanfalon.com

        Michael S. Neustel *(admitted pro hac vice)*
        Michelle G. Breit *(admitted pro hac vice)*
        NEUSTEL LAW OFFICES, LTD
        2534 South University Drive, Suite 4
        Fargo, ND 58103
        Telephone: 701.281.8822
        Email:   michael@neustel.com
                    michelle@neustel.com

*Attorneys for Defendant Omega Liner Company, Inc.*