UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| Buergofol GmbH, | Case No. 4:22-cv-04112 |
| Plaintiff, | |
| vs. | **MEMORANDUM IN SUPPORT OF OMEGA'S MOTION FOR SANCTIONS AGAINST BUERGOFOL FOR FAILURE TO COMPLY WITH THE DISCOVERY ORDERS (DKT. NOS. 164 AND 181) REQUIRING THE DISCLOSURE OF PRIOR ART** |
| Omega Liner Company, Inc., | |
| Defendant. | |

I.      INTRODUCTION ............................................................... 1

II.     FACTUAL BACKGROUND ............................................... 3

        A.      Omega's Discovery Requests and the Court's Orders Compelling
                Discovery. ....................................................................... 3

        B.      Buergofol's Supplemental Responses to Omega's Discovery Requests
                Seeking Prior Art. .......................................................... 4

                1.      Buergofol's Response to Interrogatory 4 Fails to Identify the
                        Prior Art "Known to Buergofol." ................................. 5

                2.      Buergofol Failed to Produce the Prior Art in Its Possession
                        Custody or Control in Response to RFP 13. .............. 6

III.    ARGUMENT ...................................................................... 7

        A.      Fed. R. Civ. P. 37(b)(2) Governs the Imposition of Sanctions for
                Failure to Comply with Discovery Orders ......................... 7

        B.      Buergofol Failed to Comply with the Order or the Clarification and
                Did So Willfully and Deliberately. .................................. 8

                1.      The Court Issued Two Orders Compelling Discovery. ....... 8

                2.      Buergofol's Responses to Interrogatory 4 and RFP 13 Violate
                        the Order and Clarification. ......................................... 8

                3.      Buergofol's Production of Irrelevant Prior
                        Art ..................................... 10

                4.      Buergofol's Violation of this Court's Discovery Order was
                        Willful. ................................................................... 14

        C.      Omega is Being Severely Prejudiced by Buergofol's Violations of the
                Order and the Clarification. ............................................ 19

        D.      Sanctions: (1) Facts Should be Deemed Admitted Against Buergofol;
                (2) an ESI Order Entered Requiring a Thorough Search of Buergofol's
                Records for Responsive Documents at Buergofol's Expense; and (3)
                the Case Against Omega Stayed .................................... 20

                1.      The Court Has Discretion to Impose a Wide Range of
                        Sanctions ................................................................ 21

                2.      Sanction 1--The Facts Regarding the Light Stream and Saertex
                        Sales as Prior Art Under Pre-AIA §102(b) Are Established for
                        All Purposes ............................................................ 22

                3.      Sanction 2-Entry of and ESI Order to Ensure Buergofol's
                        Records are Properly and Thourogly Searched for Prior Art. ......... 23

                4.      Sanction 3—The Case Against Omega Be Stayed Until: (1)
                        Omega has an Opportunity to File and the Court Decides the
                        Motion for Summary Judgment Based on the Light Stream and

Saertex Prior Art Sales; and (2) Buergofol Cures Its Deficient
Responses and Document Production. ....................................... 24

IV.   CONCLUSION ............................................................................ 25

## I.      **INTRODUCTION**

The Court issued two orders compelling Buergofol to produce prior art. The first granted Omega's motion to compel responses to its discovery requests seeking prior art and defined the anticipatory and analogous prior art to be produced. (Dkt. 164 the "Order.") The second clarified the Order and rejected Buergfofol's efforts to limit it. (Dkt. 181 the "Clarification.") The Order and Clarification make it abundantly clear that Buergofol shall produce PRIOR ART "under any subsection of 35 U.S.C. §§ 102 and 103, including all systems, methods, apparatus, publications, patents, or uses" known to Buergofol or in its possession custody or control. (*See e.g.*, Dkt. 164 at 2, 181 at 3.) Buergofol's supplemental responses to Omega's discovery requests, however, do not contain the information Buergofol was ordered to produce in violation of the Order and Clarification.

Instead, of complying with the Order and Clarification, Buergofol submitted over 1100 pages from results of searches conducted by its attorneys, after the entry of the orders, that identify "tens of thousands" of patents, technical journals, subject matter and other potential prior art, the vast majority of which has nothing to do with CIPP liners, inner tubular film or the patents-in-suit. For instance, the list of 19,359 patent documents identifies patents for condoms, egg cartons, sausage casings, cardboard boxes, golf balls, hoses, resealable cold cut packages, fire starters, Ziploc bags, and other unrelated technologies too numerous to list. Noticeably absent from its supplemental production are Buergofol's prior art sales that could be used to invalidate its patents.

Buergofol and its attorneys submitted these responses in willful violation of the Order and Clarification.  The Court rejected Buergofol's reading of these discovery requests finding they do not seek the exaggerated definition of prior art advanced by Buergofol and rejected Buergofol's exaggerated claims regarding the burden it faced in producing prior art to patents-in-suit. The Court also directed Buergofol's attorneys to exercise good-faith judgment as experienced patent attorneys and officers of the Court in identifying analogous prior art. They

did not exercise their judgment in good faith and instead, in defiance of express findings and directives in the Order and Clarification, submitted lists of "tens of thousands" of unrelated patents and other references. Buergofol didn't even bother to identify the prior art it was required to submit to the Patent and Trademark Office or that was already compiled by Buergofol. As noted by the Court, "Buergofol is not starting from scratch… it had a duty to disclose information material to patentability… thus much of the prior art **now known to Buergofol** for the '882 Patent should already be compiled in some fashion." (Dkt. 164, p. 14) (emphasis supplied). More disturbing, Buergofol continues to refuse to produce the "information relating to public use and on-sale activity"; *e.g.*, the prior art sales to Light Stream and Saertex that Buergofol sought to exclude from the Order, even though that effort was rejected by the Court in the Carification. (Dkt. 181.)

Buergofol's failure to respond and refusal to comply with the Order and Clarification prevents Omega moving forward with its defense of the case and constitutes prejudice to Omega. Omega is being deprived of highly relevant, material prior art and the information Omega needs to authenticate the prior art to have it admitted as evidence.

Omega respectfully requests the imposition of sanctions against Buergofol, short of dismissal, in order to correct the prejudice suffered by Omega and allow it to move forward with its defense of the case. The requested sanctions are aimed at requiring Buergofol to cure the deficiencies in its responses and to deter such conduct in the future. First, Omega requests that certain facts be deemed admitted against Buergofol, namely, the facts regarding the Light Stream and Saertex sales as prior art under pre-AIA 35 U.S.C. 102(b) be established for all purposes. Second, Omega seeks the entry of an electronically stored information (ESI) order to ensure Buergofol's data systems, emails, and documents are properly and thoroughly searched for prior art known to Buergofol or in its possession custody or control. Third, Omega asks that the case be stayed until Omega files and the Court rules on Omega's motions for summary judgment of the invalidity of the patents -in-suit based on Buergofol's prior art

sales to Lights Stream and Saertex.  Finally, Omega requests the recovery of its attorney fees associated with this motion pursuant to Fed, R. Civ. P. 37(b)(2)(C).

## II.   FACTUAL BACKGROUND

### A.   Omega's Discovery Requests and the Court's Orders Compelling Discovery.

In its first set of discovery requests to Buergofol, Omega sought the identification of the prior art known to Buergofol.

> **INTERROGATORY NO. 4**:
> Identify every item of PRIOR ART to each of the PATENTS-IN-SUIT now known to BUERGOFOL.

> **REQUEST FOR PRODUCTION NO. 13**:
> All documents and things in the possession, custody or control of BUERGOFOL that could qualify as PRIOR ART to either of the PATENTS-IN-SUIT.

(Dkt. 164) (emphasis added.) Buergofol objected to these discovery requests claiming they are "absurdly overbroad," "unduly burdensome," "unanswerable," not "warrant[ing] a response." (*Id*.)  After several attempts to meet and confer regarding the scope of these discovery requests, to no avail, Omega filed a motion to compel. (*Id. see also*, Dkt. 62.) The Court issued its first order on Omega's motion on July 13, 2023, finding the requests: (1) seek relevant information; (2) are not overbroad; (3) do not impose an undue burden on Buergofol.  (Dkt. 164 (the "Order.")) The Court further found Buergofol did not confer in good faith; and awarded Omega it attorney's fees. (*Id*.)

The Order requires Buergofol to produce "all documents, information, acts, or things that qualify as prior art under any subsection of 35 U.S.C. §§ 102 and 103, including all systems, methods, apparatus, publications, patents, or uses" known to Buergofol or in its possession custody or control. (Dkt. 164 at pp. 2, 8, 10-13.) Moreover, the Order "clarified" the definitions of anticipatory prior art and analogous prior art that must be used by Buergofol in identifying the PRIOR ART to each of the patents-in-suit "known to Buergofol" or in

Buergofol's "possession custody and control." (*Id.*) Buergofol was provided 21 days to comply with the order—or until August 3, 2021. (*Id.*)

Buergofol filed a motion seeking clarification of the Order (Dkt. 165.), which the Court addressed in its Order on Motion for Clarification. (Dkt. 181 (the "Clarification")). The Court found that: (1) Buergofol was misreading the Order; and (2) the prior art that must be identified and produced is not limited to "references" but includes "all documents, information, acts, or things that qualify as prior art…including all systems, methods, apparatus, publications, patents, or uses." i.e., "public uses" and on "sale activity" is included. (*Id.*) In sum, the Order and the Clarification required the identification and production of the anticipatory and analogous prior art under 35 U.S.C. §§102 and 103, as defined in the Order and Clarification, which were or are known to Buergofol or in Buergofol's possession custody of control as required by Interrogatory 4 and RFP 13. (*Id.*) The time for Buergofol to comply and submit the discovery was not extended past the original 21 days from the entry of the Order. (*Id.*)

## B.   Buergofol's Supplemental Responses to Omega's Discovery Requests Seeking Prior Art.

On August 3, 2023, Buergofol submitted the following:

- Buergofol's First Supplemental Responses and Objections to Omega's Interrogatories to Buergofol (Set One) (No. 4 of 1-5) (the "Response to Rog 4); and

- Buergofol's First Supplemental Responses and Objections to Omega's Requests for Production of Documents to Buergofol (Set One) (No. 13 of 1-14) (The "Response to RFP 13").

These are attached hereto respectfully as Exhibits A and B. Neither Response to Interrogatory 4 nor the Response to RFP 13 includes the information Buergofol was ordered to produce.

1. **Buergofol's Response to Interrogatory 4 Fails to Identify the Prior Art "Known to Buergofol."**

In its supplemental Response to Interrogatory 4, Buergofol submitted additional objections including the following: "The attempted defining of 'analogous prior art' in Dkt. 181 is legally erroneous to the extent that the Order implies that "analogous prior art" is defined by 35 U.S.C. § 103, as Omega incorrectly asserted." (Exhibit A at 5.)    Instead of identifying the prior art known to Buergofol, such as its prior sales, it identified a number of lists of categories of prior art. (*Id*. at 6-12). For instance: (1) 35 categories of items in use; (2) "all technical journals in an applicable field of endeavor" published before 3/11/2012; (3) "All technical data sheets that were published in [sic] the internet before 3/11/2012 that relate to the ingredients for polymers used to make blown extrusion film" and a list of possible publishers; (4) "Books, pamphlets and articles on blown film extrusion published prior to 3/11/2012, which are readily identifiable on Google and Google Scholar." (5) "Books, pamphlets and articles on CIPP rehabilitation published prior to 3/11/2012 which are readily identifiable on Google and Google Scholar."; and (6) "Each public use or sale in the United States before 3/11/2012 of a Post-it® note."; "a re-sealing coldcut package", "a nonstick cooking spray" or "removable decals." (*Id*.)

Buergofol also identified lists of patents, some of which were identified by a keyword search: (1) a list of 19,309 patents and 50 "prior art documents" as analogous prior art (*Id*. at 7) ; (2) 4,603 U.S. patent documents published before 3/11/2012 that include the words "release", "stick", "remove", "film", "sheet", "coating", "adhesion" and "adhesive" (*Id*. at 12.); (3) 6,489 patent documents worldwide published before 3/11/2012 that are returned by the search on the EPO Espacenet: desc all "release" AND desc "stick" AND pd <"20120311" AND desc "remove" AND desc "film" AND desc "sheet" AND desc "coating" AND desc "adhesion" AND desc "adhesive" (*Id*.); (4) 35,421 patent documents worldwide published before 3/11/2012 that are returned by the search on the EPO Espacenet: pd < "20120311"

AND desc any "strength stretch" AND desc "film" AND desc "layers" AND desc any "pressure inflate" AND desc any "burst tear." (*Id*. at 12.)

Buergofol identified in its list discrete items such as documents from the proceedings before the German and European patent offices (already identified by Omega), a few book excerpts and a couple of patents. (*Id*.) It, however, failed to identify any of the "prior art sales" including those already identified by Omega or any specific "prior art uses."

Buergofol also failed to conduct a good faith search of its records or those of its employees, even on the qualified basis prescribed by the Court. (*See e.g.*, Dkt. 164 at 13 ("These estimates [e.g., 300 employee interviews] appear to be based on Buergofol's interpretation of the discovery requests as so broad that they include the Statue of Liberty and the Gutenberg Bible.") It instead sought to explain away its duty to do so:

> To the extent that compliance with the clarified ROG No. 4 pursuant to Order 181 requires Buergofol's attorneys to interview all of Buergofol's approximately 300 employees in 3 separate German cities to determine whether any of those employees knows of analogous prior art, Buergofol's attorneys have not been able to conduct more than a few interviews during the week since Order 181 was issued on August 3, 2023.

(Exhibit A at 13). Next Buergofol asserts, without basis or evidentiary support, its employees probably do not know of any analogous prior art anyway except perhaps sandwich bags, sticky notes and septic system renovations. (*Id*.)

## 2. Buergofol Failed to Produce the Prior Art in Its Possession Custody or Control in Response to RFP 13.

In its Response to RFP 13, Buergofol repeats the same supplemental objections found in its Response to Interrogatory 4 and repeats the same speculation of what its employees may or may not know in an attempt to justify its failure to produce the prior art in its possession custody or control. (Exhibit B at 5-7). Moreover, no search of the records of Buergofol is referenced or described. (*Id*.) Finally Buergofol claims its proprietary information is not prior art. But the prior art sales and uses, such as those already identified by Omega are prior art,

as well as the documents and things indicating a prior sale or use. Thus, an invoice or purchase order indicating a sale of the CIPP liners or films covered by the patents-in-suit are the "prior art sale" and indicate use, even though those documents may be proprietary. No such documents were produce. In the end, Buergofol only produced the lists of prior art and a handful of documents, most already identified by Omega, in its supplemental response to Interrogatory 4 and RFP 13.

### III.   ARGUMENT

#### A. Fed. R. Civ. P. 37(b)(2) Governs the Imposition of Sanctions for Failure to Comply with Discovery Orders.

Rule 37(b)(2) governs sanctions imposed for failing to obey a discovery order. The Rule provides:

> (2) Sanctions Sought in the District Where the Action Is Pending.
>
> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4) - fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

Sanctions under Rule 37(b)(2) require: (1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party. *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999). Under Rule 37(b)(2), the sanction must "be just and relate to the claim at issue in the order to provide discovery." *Hairston v. Alert Safety Light Products, Inc.,* 307 F.3d 717, 719 (8th Cir. 2002) (internal quotation marks omitted); *see also Perfetti Van Melle USA, Inc. v. Midwest Processing, LLC*, No. 4:15-CV-04093, 2015 WL 4068092, at *5-6 (D.S.D. July 2, 2015).   As the Court has held:

> A party's failure to provide complete information in discovery following a court's order directing such production supports the imposition of Rule

37 sanctions. In addition, an evasive or incomplete disclosure, answer, or response is construed as a failure to respond.

*Romero v. Wounded Knee, LLC*, CIV. 16-5024-JLV, at *6-8 (D.S.D. Aug. 30, 2018)(quoting *Murphy by Murphy v. Piper*, No. CV 16-2623, 2018 WL 2278107, at *3 (D. Minn. May 18, 2018).  As explained below, the facts overwhelmingly establish that each of that the requirements for sanctions are satisfied here and that sanctions are warranted.

## B. Buergofol Failed to Comply with the Order or the Clarification and Did So Willfully and Deliberately.

### 1. The Court Issued Two Orders Compelling Discovery.

The first prong necessary to impose sanctions under Rule 37(b)(2), an order compelling discovery, is met. No less than two orders— the Order and the Clarification— compelled Buergofol to produce the information in response to Buergofol's Interrogatory 4 and RFP 13 seeking the identification and production of prior art.

### 2. Buergofol's Responses to Interrogatory 4 and RFP 13 Violate the Order and Clarification.

While producing a litany of information that it did not possess, Buergofol failed to produce the prior art that it actually has knowledge of and possesses.  Buergofol's purported reason for this failure it is admitted disagreement and defiance of this Court' s orders.  In its responses, Buergofol continues to claim that its proprietary information is not prior art. (*See e.g.*, Exhibit B at 8). This Court has already dispelled that argument and ruled that the prior art sales and uses already identified by Omega are prior art. (Dkt. 94 at 181 at 4.) Whether it is anticipatory or analogous prior art does not matter.

> "PRIOR ART' means all documents, information, acts, or things that qualify as prior art under any subsection of 35 U.S.C. §§ 102 and 103, including all systems, methods, apparatus, publications, patents, or uses."

(Dkt. 181 at 3.) Thus, the documents and things indicating, for instance, that Buergofol sold film products that were subsequently imported to the United Staes are the "documents and

things in the possession, custody or control of BUERGOFOL that could qualify as PRIOR ART" responsive to RFP 13. For example, an invoice or purchase order indicating a sale of films or CIPP liners incorporating them that are covered by the patents-in-suit or disclose the element(s) of the claims and records indicating the films or liners were imported by Buergofol or one of its customers into the United States is precisely the "prior art sale" that triggers the "on sale bar", *i.e.*, it demonstrates "the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. §102(b)("the invention was patented or described in a printed publication in this or a foreign country or in public use **or on sale in this country,** more than one year prior to the date of application for patent in the United States.")(emphasis added) It matters not that the information demonstrating the sale, such as an invoice, may be proprietary to Buergofol— the sale and subsequent importation of those goods are not.

Moreover, "information relating to public use and on-sale activity" is the exact information that Buergofol sought to exclude from the Order, and that effort was soundly rejected by this Court. (Dkt. 181at 4.) For instance, Buergofol failed to identify and produce the prior art sale sales documents, including those already identified by Omega, *e.g.*, Light Stream and Saertex. In the opposition and cancellation proceedings, Buergofol relied on the prior art sales of Saertex to challenge the validity of the foreign counterparts to the '269 patent. (*See e.g.*, Dkt. 117 at pp. 3-6.) As already documented by Omega, Buergofol was the "exclusive supplier" to Saertex for UV-CIPP (multi-layer) liners from the 1990's until 2010. (*Id*. at 4.) Saertex sold and imported those UV-CIPP liners into the United States, for example in 2009, well before the critical dates of the patents-in-suit. (*Id*.) So Buergofol cannot hide behind the claim that the sales occurred in Germany and are not prior art or that the documentation of the sale and importation of those goods are proprietary. Likewise, Buergofol cannot escape responsibility for producing this information by arguing that it only sold component films of the CIPP liners made and imported by Saertex when those same

films--sold to Omega--constitute part of its claims of infringement against Omega making those films, at a minimum, analogous prior art.

Similarly, Omega also identified and documented Buergofol's prior art sales and importation of films to Light Stream, but Buergofol failed to identify or produce any information relating to these sales in its supplemental production. (Dkt. 94 at 14-16.) Buergofol sold and imported it products into the United States making them prior art under pre-AIA 35 U.S.C. 102(b). (Dkt. 164, 181; *see also* Exs. C & D- listing sales to Light Stream). Omega has already obtained and produced samples in this litigation of the Light Stream CIPP liners incorporating Buergofol's film products—the very products Buergofol also sold to Omega and accuses Omega of infringement. *See* Ex. C (photographs of rolls of the Light Stream UV CIPP liners that were sampled). Those films, as with the ones sold to Saertex, are at a minimum, analogous prior art from the patent owner itself. Yet Buergofol refuses to identify or produce any information relating to those products it sold to Light Stream and imported into the United States in violation of the Order and Clarification.

It is axiomatic that once the Saertex products and films sold to Light Stream made their way to the United States, they became prior art, and the documents and other materials demonstrating those prior art sales is the evidence the Order and Clarification compelled Buergofol to produce. Pre-AIA 35 U.S.C. §102(b). Buergofol and its attorneys know this, and Buergofol was required to identify and produce all the information regarding the Saertex and Light Stream prior art sales. This critical evidence was not identified or produced in violation of the Order and Clarification.

### 3. Buergofol's Production of Irrelevant Prior Art.

Instead of identifying the prior art "*known* to Buergofol" in response to Interrogatory 4 and producing the prior art in Buergofol's "possession custody and control" in response to RFP 13, Buergofol's attorneys instead generated lists of almost 20,000 patents and dozens of generic categories of prior art. This information did not come from the records of Buergofol or from information obtained from Buergofol's employees, but from sources outside the

knowledge, possession, custody, or control of Buergofol.  Review of these lists and documents identified in the categories of production in Buergofol's supplemental responses demonstrate Buergofol willfully and purposefully produced irrelevant prior art.

**Category A (Objects in Use)** containing items 1-32 merely lists general categories such as "sausage coverings", "parachutes" and "condoms." (Exhibit A at 6-7.) Of course, this Court already ruled that Buergofol's claim of overbreadth requiring the disclosure of such items as prior art was misplaced. (*See e.g.*, Dkt 164 at 10 ("Thus, because the Statue of Liberty and the Gutenberg Bible do not contain an "inner tubular film," an element in Claim 1 of both patents-in-suit, neither qualifies as anticipatory prior art under § 102."); Dkt.181 at 2 ("The court was merely pointing out that Buergofol's claims about the breadth of the prior art definition as applied to anticipatory art were exaggerated. . .")).  Category A documents are not responsive to the Omega's discovery requests.

**Category B (patents and printed publications)** contains items 33-46. Items 33-43 list 19,359 patents and 50 other prior art documents. (*Id*. at 7-8.)  This, however, is nothing more than a list generated by Buergofol's attorneys and is not known to or in the possession or control of Buergofol as set forth in Interrogatory 4 and RFP 13. Item 44 is a regurgitation of the same items from the German and European patent offices challenging the '269 patent—originally identified by Omega. (*Id*. at 8.) Item 46 broadly identifies the subject of "all technical journal articles in an applicable field of endeavor published before 3/11/2012." (*Id*. at 8.)  No specific publications are identified as known to or in the possession of Buergofol. The same is true for the 19,359 patents and other documents on the list generated by Buergofol's attorneys and the 109 pages of webpages from www.buergofol.com obtained from the "Wayback Machine" instead of Buergfofol. (*Id*). Cartegory B documents are likewise not responsive to Omega's discovery requests.

**Category C ("All technical data sheets that were published in [sic] the internet before 3/11/2012 that relate to the ingredients for polymers used to make blown extrusion film.")** contains items 47-58. Of all the items, there are only four

"technical data sheets" comprising five pages. The rest of the items are not "technical data sheets" as Buergofol's characterization states. Items 47-56 are: (1) one page from an on-line dictionary; (2) an 87-page presentation slide deck from Lanxess Hong Kong Ltd, which was apparently given at the "3rd International Conference, EPC3, for S&SE Asia," directed to many product areas (car parts, engine parts, baby carriages, chairs) unrelated to CIPP liners; and (3) 7 pages copied from books—in German—excluding covers and tables of contents.

Items 57 and 58 identify possible Google searches to identify prior art from the universe of possible prior art that may be found in technical data sheets, books pamphlets and articles:

> 57. Books, pamphlets and articles on blown film extrusion published prior to 3/11/2012, which are readily identifiable on Google and Google Scholar…

> 58. Books, pamphlets and articles on CIPP rehabilitation published prior to 3/11/2012; which is readily available on Google.

Interrogatory 4 and RFP 13, however, do not seek the universe of prior art, but rather are limited to information "known" to Buergofol or in its "possession custody and control."

**Category D documents relating to the German cancellation proceeding and European opposition proceeding.** Buergofol continues to refuse to identify or produce all the documents relating to these proceedings such as its briefs, arguments, and prior art sales it relied on in these proceedings to invalidate the foreign counterparts to the '269 patent. (Dkt. 117 at 3-6 identifying and documenting Buergofol's prior art sales to Saertex relied on by Buergofol.)  Buergofol claims the "disclosures from the German cancellation proceedings are not prior art of any kind to the extent that they are not patent documents or printed publications." (Exhibit A at 9-10). This Court rejected that argument. (Dkt. 181 at 4 "Next Buergofol seeks to clarify that the definition of prior art 'is limited to 'references' and does not include information relating to public use and on-sale activity.'") The Court expressly ruled the definition of prior art is not limited to references and includes public use and on sale activity. (*Id*.) Buergofol has ignored these rulings.

What little Buergofol identified from the cancellation and opposition proceedings is nothing more than the "technical disclosures" referenced in the German cancellation proceeding and European opposition proceeding. The documents relating to these proceedings, such as items 59-129, were already identified by Omega and subject to Omega's Omnibus motion to compel (Dkt. 175). Omega was required to respond to Buergofol's false claims regarding the production of these documents and point out that the production was not complete. (Dkt. 206 at 3-5.) Buergofol's supplemental responses demonstrate its continued refusal to produce this highly relevant and material evidence that according to its own arguments to the German patent office invalidate the claims of the '269 patent. [1]

**The Final Category E is directed to prior art pertinent to the problem facing the inventor.** Items 130-137 are identified. As with several of the other categories, no specifics are provided here, but merely the identification of subjects of irrelevant prior art. For example, items 130-33 each identify the public use of "Post-it notes," "re-sealing cold-cut packages," "non-stick cooking spray" and "removable decals" prior to March, 11, 2012, none of which is known or in the possession of Buergofol. (Exhibit A at 12). Item 134 describes what appears to be a patent search conducted by Buergofol's attorneys and lists two patents. (*Id*.) Items 135-37 appear to be additional patent searches conducted by Buergofol's attorneys identifying, in addition to the 19,359 patents already identified in Items 33-43, over 45,000 additional patent documents. Again, none of these items is known to Buergofol or in Buergofol's possession, custody, or control. These items were instead generated by Buergofol's attorneys and are not responsive to Interrogatory 4 or RFP 13. Buergofol's violation of the Order and Clarification is apparent.

---

[1] At the hearing on Omega's Motion to Compel (Dkt. 175) held on September 18, 2023 Magistrate Judge Duffy ruled from the bench requiring Buergofol to produce all the documents responsive to Omega's Requests for Production Nos. 70 and 88 with respect to the documents submitted by Buergofol in the German patent office seeking to cancel the German counterpart to the '269 patent. (Hearing Tr. at p. 172; *see also*, Dkt. 233 memorializing said ruling.)

### 4.   Buergofol's Violation of this Court's Discovery Order was Willful.

Buergofol's actions were willful meeting the second prong necessary to impose sanctions under Rule 37(b)(2). Buergofol fully understood the scope of the Court's orders compelling discovery and the information it was required to produce. It was Buergofol who moved the Court seeking Clarification of the Order, which resulted in the Clarification wherein the Court found that "Buergofol misreads the court's order." (Dkt. 181 at 2.) Moreover, Buergofol omitted the first sentence of the definition of prior art adopted by the Court in the Order and omitted portions of the definition supplied by Omega. (*Id*. at 3 and 4.) This was intentionally done by Buergofol to justify its claim that the Order required clarification when it did not. With those non-existent issues eliminated, Buergofol cannot claim it did not know what the orders meant or how to comply with them.

In spite of the Court's orders, Buergofol again objected in its responses that the requests are overbroad as follows:

> Under Rule 26(b)(1) and the December 2015 Amendments, the court must, even in the absence of a motion, limit this facially overbroad discovery that is not proportional to the needs of the case. This applies to all categories of analogous prior art for which there are thousands of responsive items.

(Exhibit A at 9.) This objection cannot be reconciled with the Order, Clarification, or the express finding findings of the Court, and the instructions provided to Buergofol and its counsel to exercise their judgment in good faith as officers of the Court.  As this Court instructed:

> Responding to the requests will undoubtedly involve "judgment call[s]," *see* Docket 68 at 15, but "[l]awyers are frequently called upon to make judgment calls—**in good faith and consistent with their obligations as officers of the court**—about what information is responsive to another party's discovery requests." *See EEOC v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010). **Because Buergofol's counsel has twenty years of patent experience and because Buergofol is the original patent applicant for the '882 Patent, the court expects Buergofol's counsel to be able to make such judgment calls**. *See* Docket 50 ¶ 8; Docket 1-1 at 2.

(Dkt. 164 at 12-13 (emphasis added).) But Buergofol and its attorneys did not exercise their judgment in good faith and rather identified information the Court expressly told them was not responsive (the entire universe of possible prior art) and failed to identify the information it was ordered to produce (prior sales by Buergofol).

If there is any doubt about Buergofol's willful defiance of the Order and Clarification, the Court need only review Buergofol's response to Omega's submission for attorneys' fees awarded by the Court in the Order. (Dkt. 164). It is titled "Buergofol's Objections to the Allowance of Attorneys' Fees **Spent to Identify Thousands of Items of Irrelevant Analogous Prior Art**." (Dkt. 220 (emphasis added)). In its submission, Buergofol freely admits that it produced "irrelevant items of analogous prior art" and blames Omega and this Court for making it do so.  (*Id*. at 4-6.). Buergofol goes so far as to accuse this Court of violating its duties under Rule 26 in issuing the Order. (*Id*. at 1, 4 and 7.)  Buergofol's feigned outrage is premised on its alleged incorrect interpretation of the Order and Clarification as requiring Buergofol to investigate and search for prior art outside its own knowledge and not in its possession, custody, or control.  (*Id*. at 3 and 12.)  As this Court knows, this is not what the Order and Clarification require. Instead Buergofol was required to fully and completely respond to Omega's Interrogatory No. 4 and RFP 13 by identifying and producing the prior art (as defined by the Court) "known to Buergofol" or "in its possession custody or control." (Dkt. 164 and 181.) Buergofol's response to Omega's submission regarding its attorney fees puts on full display that it did not comply with the Order or Clarification.

It is evident that Buergofol and its attorneys did not make a good faith search for prior art known to Buergofol or in Buergofol's possession custody as set forth in Interrogatory 4 and RFP 13. Instead, they went out of their way to create lists of tens of thousands of non-responsive patents and other documents outside the knowledge of Buergofol. For instance, most of the references from the search results submitted by Buergofol are not directed to or have anything to do with CIPP liners or inner tubular film. (Exhibit C, BF 12000-13112.)

Buergofol identified the following non-responsive information:  a "Fuel Hose." (BF 12008); a "Fluid Container" (*Id*.); a "Fire Starter," (BF 12009); "Latex Marking Inks" (BF 12010); a "Tire Tube" (BF 12011) a "Golf Ball" (BF 12036), "Condom with warmth imparting lubricant" (BF 12165), "Cardboard and a method of manufacture thereof" (BF 12084), "Cup carrier" (BF 12231), "Egg carton" (BF 12231), "Scaffolds" (BF 12063), "Catheter balloons (BF 12092), "Fragrant ornament" (BF 12097), "Golf club" (BF 12108); "Sausage casing" (BF 12116), "Ornamental bunting" (BF 12118); "Aero bicycle frame" (*Id*.), "Tobacco smoke filter" (BF 13083). These items do not fit the Court's definition of prior art, and they are not isolated instances. Even a cursory review reveals the lists produced by Buergofol are replete with unrelated references too numerous to list. Buergofol admits that this is what it set to do, and this is what it did. (Dkt. 220 at pp. 1, 4-7). Not a single document on the list Buergofol produced is known to or in the possession, custody, or control of Buergofol. Therefore, these documents are not responsive to Interrogatory 4 or RFP 13, were not submitted in good faith, and were produced in willful violation of the Order and Clarification.

Additionally, throughout this case, Buergofol made it clear that it will not meet its obligations under the discovery rules and steadfastly refuses to search its own records for any documents. According to Buergofol, it will only produce information about its products in support of its infringement case.

> For the limited purpose of proving Omega's infringement of Buergofol patents in the litigation *Buergofol v. Omega*, 22-cv-04112-KES, I have authorized the release (by formal production to Omega's counsel for the purpose of conducting the litigation) of a limited amount of confidential information pertaining to the structure and composition of the specific Buergofol UV CIPP films (inner films and outer films) that were sold to Omega during the 2017-2019 time period. More specifically, I have authorized the release of the following facts: . . .

(Dkt. 73, Decl. of Franz Schleicher (the "owner" of Buergofol and its "sole officer with general commercial power of representation" at ¶¶ 2 and 7.))  As confirmed by Buergofol's attorneys:

16

> For purposes of proving Omega's infringement in this litigation, Buergofol will disclose limited high-level information about the structure and composition of specific films actually supplied to Omega, but Buergofol will not disclose more detailed information than is necessary to show Omega's infringement.

(Dkt. 94 at 22 citing email from Lester Wallace.) Buergofol's supplemental responses to Interrogatory 4 and RFP 13 make clear it has not changed its position, despite two court orders requiring it to do so.

Buergofol possesses the information relating to the prior art subject to the Order and Clarification such as the prior art sales of its films covered by the patents-in-suit and their composition, structure and properties. For instance, as already testified to by Mr. Schleicher, one of the investors on the '882 Patent, Buergofol maintains the following information regarding its products:

> . . . specific ingredients and additives Buergofol uses to make each respective layer of the various layers of Buergofol's different types of UV CIPP films, ratios of ingredients, the commercial sources of each such ingredient, the commercial tradename and product number of each such ingredient, the number of layers making up each of Buergofol's different UV CIPP film products, the thickness of each such layer, certain physical characteristics and qualities of the material of each such layer, and many other items of information about the structure and composition of the various parts of each of Buergofol's different UV CIPP film products.

(Dkt. 73 at ¶ 5.)  Further,  Mr. Schleicher explained:

> Buergofol has used and currently employs a Warenwirtschaftssystem (ERP system) that assists Buergofol in managing and tracking incoming orders for Buergofol's UV CIPP films, the manufacture of the UV CIPP films, and shipment information.

(Dkt. 73 at ¶ 6.)  And Buergofol maintains Production Binders.

> . . . Buergofol's manufacturing documentation pertaining to its old CIPP film production, to the extent such documentation still exists, exists largely if not exclusively in paper form. Buergofol stores its old manufacturing paperwork in

two file rooms at its factory in Siegenburg. The two file rooms are sufficiently large to hold about 1,000 binders of production paperwork.

(Dkt. 75 at 14-15 citing the Schleicher Decl.) Additionally, the information relating to Buergofol's products can be found in Buergofol's internal communications.

This confidential information includes internal communications within Buergofol in which the factory personnel are instructed to manufacture UV CIPP films, and further including manufacturing log information that describes films made by the factory personnel pursuant to instructions.

(Dkt. 73 at ¶ 6; *see also*, Dkt. 67 Boutrid Decl. at ¶¶ 4-8.).  Thus, Buergofol has a wealth of information from which the prior art can be identified and produced as required by the Order and Clarification, and apparently, it did not search any of its information to comply with this Court's orders.

Buergofol retains its documents such as "order confirmations, delivery notes, invoices, and other documents" in "paper form" for "10 years," and thereafter they are available in "electronic form in [Buergofol's] system." (Dkt. 118-2, at attachment 1 (sworn statement submitted to the European Patent Office in 2015)). Buergofol is required by German law to keep and maintain these records.[2] And Buergofol's duty to preserve evidence under the Federal Rules began when litigation was reasonably foreseeable, which occurred at least by July 2020 when Buergofol began considering bringing patent infringement claims based on the '882 patent.. *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320-21 (Fed. Cir. 2011); *see e.g.*, Dkt. 158-6 at entries 28-32). Thus, Buergofol had the information the Order and Clarification required it to produce as of July 2020, meaning it has documents in "paper form" from at least January 2010—well before the critical date of the '882 patent.[3]

---

[2] *See* German Fiscal Code § 147 (https://www.gesetze-im-internet.de/hgb/__257.html) German Commercial Code §257 (https://www.gesetze-im-internet.de/hgb/__257.html).

[3] The retention period starts with the end of the calendar year—December 31 in which the document such as an invoice was created or delivered. German Commercial Code §257 (https://www.gesetze-im-internet.de/hgb/__257.html).

Instead of searching its own records for the prior art mandated by the Order and Clarification, Buergofol generated lists from sources outside of Buergofol. Instead of obtaining information from its own personnel such as Franz Schleicher, it only spoke to a "few" employees" and only to the "to the extent" it is required for compliance with the Order and Clarification. (Exhibit A at 13.) None of the information obtained from those few employees, if any, is identified or provided. (*Id.*) Instead Buergofol attempts to downplay the knowledge of its employees, including two of the named inventors (Schleicher and Boutrid) on the '882 Patent, with speculation about what they may or may not know. (*Id.*) Buergofol did not even bother to identify the prior art it submitted to the Patent and Trademark Office or that was already compiled by Buergofol. As noted by the Court, "Buergofol is not starting from scratch" it had a duty to disclose information material to patentability so "much of the prior art **now known to Buergofol** for the '882 Patent should already be compiled in some fashion." (Dkt. 164 at 14 (emphasis added)) Buergofol chose not to identify or produce this information.  The willfulness of Buergofol's conduct can hardly be disputed.

### C. Omega is Being Severely Prejudiced by Buergofol's Violations of the Order and the Clarification.

The final prong, prejudice suffered by Omega, is also present. Buergofol's failure to respond and refusal to comply with the Order and Clarification prevents Omega moving forward with its defense of the case, which constitutes prejudice to Omega.  *Farlee v. Hausman*, 3:19-CV-03013-RAL, at *5 (D.S.D. Feb. 1, 2021)(citing *Avionic Co. v. General Dynamics Corp.*, 957 F.2d 555, 559 (8th Cir. 1992) (holding prejudice in the discovery context exists where adversary's failure to engage in discovery impairs litigant's ability to assess factual merits of a claim). Omega cannot completely prepare its claims and defenses regarding the invalidity and unenforceability of the patents-in-suit. Omega is without key prior art that Buergofol refuses to produce in violation of the Order and Clarification.

Omega is further prejudiced because Buergofol has made it clear it intends to object to the authenticity and admissibility of the evidence of its own prior art sales. (*See e.g.*, Dkt.

93-6, March 23 2023 Email from Lester Wallace seeking "chain of custody" documents for the "alleged" Buergofol film.) If Buergofol's tactics were to be successful, Omega would be deprived of the information required to prepare its claims and defenses regarding the patents-in-suit and the proper functioning of the patent system would be thwarted, which goes against the public interest. *Cap Export, LLC v. Zinus, Inc.*, 996 F.3d 1332, 1342 (Fed. Cir. 2021) ("The functioning of the patent system requires that 'everything that tends to a full and fair determination of the matters in controversy should be placed before the court.'"). It would be a fundamental miscarriage of justice for Buergofol to fail to produce highly valuable evidence to Omega that this Court ordered to be produced and for that failure to succeed in preventing Omega from seeking to invalidate the patents-in-suit based on such critical evidence. This is precisely the type of prejudice that discovery sanctions are designed to prevent. *Great Plains Theatre Found., Inc. v. Ward Mfg., LLC*, No. 16-1028-JTM-GEB, at *4 (D. Kan. Apr. 3, 2018).

Additionally, Buergofol and its attorney have identified so many items—"tens of thousands" (Exhibit A at 13)—that the responses are nothing more than an improper "document dump." *See, e.g., U.S. S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576-77 (M.D.N.C. 2002) (". . . production of voluminous and mostly unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests.") Buergofol's document dump is improper and further demonstrates Buergofol's bad faith. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) ("Moreover, 'burying' a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith.") Buergofol's document dump is further prejudicing Omega because there is no reasonable way to meaningfully review over 65,000 patent documents resulting from Buergofol's searches to determine their relevance to the patents-in-suit. (Exhibit A at pp. 7 (Items 33-43) and 12 (Items 135-37.)

**D.    Sanctions: (1) Facts Should be Deemed Admitted Against Buergofol; (2) an ESI Order Entered Requiring a Thorough Search of**

Buergofol's Records for Responsive Documents at Buergofol's Expense; and (3) the Case Against Omega Stayed.

### 1.  The Court Has Discretion to Impose a Wide Range of Sanctions.

"The district court has a large amount of discretion in imposing an appropriate remedy under the statute, and its decision will not be reversed absent an abuse of discretion. *Kayongo-Male v. South Dakota State University*, CIV 04-4172, at *4-5 (D.S.D. July 3, 2008) citing *Chrysler,* 186 F.3d at 1019."  Sanctions include the dismissal of claims or defenses, entering of orders deeming certain matters admitted for all purposes, or ordering certain evidence inadmissible at trial. Fed. R. Civ. P. 37(b)(2). Additionally, the court can require the disobedient party to pay the reasonable expenses, including attorneys' fees, caused by the failure to comply. Fed. R. Civ. P. 37(b)(2)(C).

Dismissal or default judgment is appropriate where the party against whom the judgment is sought has engaged in willful violations of court rules. *See e.g.*, *Superior Composite Structures, LLC v. Parrish*, Civ. 10-4066-KES, at *9 (D.S.D. June 12, 2013). A Court need not consider lesser sanctions if the facts show both willful misconduct and bad faith. *Id. (quoting Gleghorn v. Melton,* 195 F. App'x 535, 537 (8th Cir. 2006)). Lesser sanctions available to the Court include directing facts be taken as established for purposes of the action, as the prevailing party claims; prohibiting the disobedient party from supporting or opposing designated claims or defenses and staying further proceedings until the order is obeyed. Fed. R. Civ. P. 37(b)(2). Additionally, "Rule 37(b)(2) gives the court broad discretion to make whatever disposition is just in the light of the facts of the particular case." *Perfetti*, 2015 WL 4068092, at *5 (citing *Synod, Inc. v. Artesyn Techs., Inc.,* 709 F.3d 1365, 1386 (Fed. Cir. 2013)). As set forth below, Omega requests the imposition of several sanctions against Buergofol, short of dismissal, in order to correct the prejudice suffered by Omega and allow it to move forward with its defense of the case.

### 2. Sanction 1--The Facts Regarding the Light Stream and Saertex Sales as Prior Art Under Pre-AIA §102(b) Are Established for All Purposes.

Since as early as March 27, 2023, Omega identified Buergofol's prior art sales to Light Stream and demonstrated their relevance in this litigation. (*See* Dkt. 94 at pp. 14-16; Dkt. 179-1.) Buergofol sold inner tubular film to Light Stream and imported and delivered it to Light Stream in the United States, which film was used to make CIPP liners. (*Id*.) Additionally, Omega identified Buergofol's prior art sales to Saertex and demonstrated their relevance. (See Dkt. 117 at pp. 4-6; *see also*, 179-6 Letter to Buergofol) Buergofol was the exclusive supplier tubular film to Saertex who used it to make CIPP liners imported into the United States. (*Id*.) Buergofol relied on its own sales of inner tubular films and ultimate use of them in CIPP liners as prior art sales to oppose foreign application related to the '269 patent. (*See e.g.*, 117 at 3-6.)

Buergofol steadfastly refuses to acknowledge or produce any information regarding its prior art sales, including sales to Light Stream or Saertex. Sanctions under Rule 37 are intended to ensure a party does not benefit from its failure to comply and to deter others from similar conduct in the absence of such a deterrent. *Great Plains Theatre Found., Inc. v. Ward Mfg., LLC*, No. 16-1028-JTM-GEB, at *4 (D. Kan. Apr. 3, 2018). Buergofol should not be allowed to thwart the discovery process while claiming the evidence Omega obtained from other sources regarding Buergofol's own prior art sales to Light Stream and Saertex are not authentic or are hearsay.  Such a finding would result in this highly relevant evidence being inadmissible and preclude its use by Omega. (*See e.g.*, Dkt. 117 at 17.) Therefore, Omega respectfully requests that this Court sanction Buergofol by entering a finding that the facts regarding the Lights Stream and Saertex be deemed admitted by Buergofol; i.e., the records relating to them, already identified by Omega, are authentic and admissible as evidence and establish Buergofol's sales to Light Stream and Saertex identified by Omega are prior art sales

under pre-AIA 35 U.S.C. 102(b) and the documents and the information they contain are established for all purposes as follows:

1. Buergofol's sales of film products to Light Stream before March 11, 2012 are prior art under pre-AIA 102(b) and all the evidence regarding the sale of those products and importation into the United States, *e.g.*, as already identified by Omega in Dkt. 94, is authentic and admitted into evidence for all purposes; and

2. Buergofol's sales of film products to Saertex before June 15, 2009 are prior art under pre-AIA 102(b) and all the evidence regarding their sale and importation into the United States, *e.g.*, as already identified by Omega in Dkt. 117 or relied on by Buergofol in challenging the German and European counterparts to the '269 patent, is authentic and admitted into evidence for all purposes.

### 3. Sanction 2-Entry of and ESI Order to Ensure Buergofol's Records are Properly and Thourogly Searched for Prior Art.

As set forth above, Buergofol defiantly refuses to participate in the discovery process. For instance, it was Omega who identified Buergofol's own prior art sales to Light Stream and Saertex—not Buergofol. It was Omega who identified Buergofol's opposition and cancellation proceedings regarding the foreign counterparts to the '269 patent—not Buergofol. This highly relevant information relating to the invalidity of the patents-in-suit should have been identified and produced by Buergofol long ago in response to Omega's discovery requests. It was not.

Buergofol's refusal to participate in the discovery process continues today. In an effort to overcome Buergofol's objections that Omega's discovery requests are overbroad and unduly burdensome, Omega submitted requests for production seeking specific documents, including documents relating to the prior art. (*See* Exhibit D, Buergofol's Reponses to Omega's Fifth Set of Requests for Production at RFPs 136-146 seeking information relating to the prior art sales to Light Stream, Saertex and others). Buergofol continues to object to the relevance of this information and failed to even respond to 89 of the 139 total requests. (*Id.*)

Therefore, to ensure Omega is able to obtain the discovery it is entitled to under the rules, Omega respectfully requests the entry of an ESI order as follows:

- Buergofol shall produce a custodian of records for deposition to identify sources of documents maintained by Buergofol, including the identification of: (1) the corporate structure and employees (all individuals that may have potentially relevant records in their office or on their computer(s)) their positions and duties; and (2) the systems, databases, servers, repositories, storage, and legacy systems, etc. maintained by Buergofol to store data and information; (3) the location(s) of documents within or stored by Buergofol. This deposition will not count against the number of deposition(s) or hours of Omega.[4]

- Buergofol shall make available for collection: (1) forensic copies of the computers of the 20 custodians at Buergofol to be identified by Omega after the custodian(s) of records for Buergofol is deposed and provides the information set forth above, and (2) the systems, databases, servers, repositories, storage, and legacy systems, etc. maintained by Buergofol to store data and information, and the documents within or stored by Buergofol that will be submitted to and maintained by a third-party ESI service on a per source basis that can be key word searched and the results produced to each party, all at Buergofol's expense.

- Buergofol shall produce with each production a source log indicating the source of each document produced, *e.g.*, Docs 1-10 came from the forensic copy of Mr. Smith's computer taken on August 8, 2022.

### 4. Sanction 3—The Case Against Omega Be Stayed Until: (1) Omega has an Opportunity to File and the Court Decides the Motion for

---

[4] At the hearing on Omega's Cross-Motion to Compel (Dkt. 92) held on September 18, 2023 Magistrate Judge Duffy ruled from the bench requiring Buergofol to produce within 30 days of the hearing one or more custodians who can "explain what documents are kept, how they're kept, how long they're kept, what's available" and Buergofol's document retention policies. (Hearing Tr. at p. 168 and 204, *see also*, Dkt. 234 memorializing her ruling.) The parties were also ordered to meet and confer under Fed. R. Civ. P. 26(f) and come up with and ESI plan within 60 days of the hearing, after the custodian of records deposition occurred and sources of ESI identified. (*Id*). However, after serving Buergofol with a comprehensive notice of deposition outlining the topics for the custodian(s), Buergofol objected and is seeking to limit the scope of the deposition ordered, causing undue delay and jeopardizing the ability to identify the sources of ESI and an ESI plan to search them.

**Summary Judgment Based on the Light Stream and Saertex Prior Art Sales; and (2) Buergofol Cures Its Deficient Responses and Document Production.**

Buergofol's refusal to participate in discovery and it its willful violations of the Order and Clarification are calculated efforts to prevent the disclosure of its own prior art sales and other prior art. Buergofol and its attorneys know that this information will demonstrate that the patents-in-suit are invalid. Moreover, since this prior art was well known to one or more of the inventors but never disclosed to the PTO, at least the '882 patent is unenforceable. Because Buergofol was well aware of its own challenges to the foreign counterparts of the '269 patent prior to obtaining it 5 days before filing suit against Omega, it cannot escape the fact this suit is meritless.

Buergofol should not be rewarded for its efforts to thwart discovery by Omega or its willful violations of the Order and Clarification. Therefore, (1) Omega should be given the opportunity to submit motions for summary judgment on the invalidity of the patents-in-suit based on Buergofol's prior art sales; and (2) Buergofol, should be precluded from further discovery or otherwise pursuing its case until the Court rules on the summary judgment motions. Therefore, Omega respectfully requests that the case against Omega be stayed until:

- Omega has an Opportunity to File and the Court Decides the Motion for Summary Judgment Based on the Light Stream and Saertex Prior Art Sales; and

- Buergofol' Deficient Responses and Document Production are cured; i.e. through key word searches of ESI.

## IV.   <u>CONCLUSION</u>

Buergofol's willful violations of the Order and Clarification are designed to prevent the disclosure of its own prior art sales and other prior art. The time for Buergofol to meet its obligations under the Federal Rules of Civil Procedure governing discovery has come and gone.  Sanctions are now appropriate and necessary to deter such conduct by Buergofol and to protect Omega.  Omega respectfully requests entry of sanctions as follows: (1) the sales to

Light Stream and Saertex are prior art sales under pre-AIA 102(b); (2) an ESI order requiring a thorough search of Buergofol's records for responsive documents at Buergofol's expense; and (3) the case against Omega stayed.  Omega also requests that this Court order Buergofol to pay the legal fees and expenses it incurred in bringing this motion.

Dated this ___3rd___ day of October, 2023

DENEVAN FALON PROF. LLC

*/s/ Shannon Falon*

BY:  Shannon Falon
Meghann M. Joyce
100 S. Dakota Ave, Second Floor
Sioux Falls, SD 57104
Telephone:  605.219.9465
Email:     meghann@denevanfalon.com

Michael S. Neustel *(admitted pro hac vice)*
Michelle G. Breit *(admitted pro hac vice)*
Monte M. Bond *(admitted pro hac vice)*
NEUSTEL LAW OFFICES, LTD
2534 South University Drive, Suite 4
Fargo, ND 58103
Telephone: 701.281.8822
Email:     michael@neustel.com
           michelle@neustel.com
           monte@neustel.com

*Attorneys for Defendant Omega Liner*