UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>    Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>    Defendant. | Civil Action No.: 22-cv-04112-KES<br><br>**BUERGOFOL'S SECOND SUPPLEMENTAL RESPONSES TO OMEGA'S INTERROGATORIES TO BUERGOFOL (SET ONE)**<br>**(No. 4 of Nos. 1-5)** |

PROPOUNDING PARTY: OMEGA LINER COMPANY, INC.

RESPONDING PARTY: BUERGOFOL GMBH

SET NUMBER: ONE (1)

To OMEGA and its attorneys of record:

Pursuant to Rules 26(e) and 33 of the Federal Rules of Civil Procedure, Plaintiff BUERGOFOL GMBH ("Buergofol") hereby serves second supplemental responses to Defendant OMEGA LINER COMPANY, INC.'s ("Omega") Set One of Interrogatories. The following responses are based on Buergofol's present state of recollection, knowledge and belief.  They are at all times subject to additional or different information that discovery may disclose, and, while based on the present state of recollection, are subject to such refreshing of recollection, and such knowledge or facts, as may result from further investigation by Buergofol or its attorneys.  Buergofol's answers and objections are made without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving:

 1. All questions as to competency, relevancy, materiality, privilege and

admissibility as evidence for any purpose of the responses or subject matter thereof, in any subsequent proceeding in or at the trial of this or any other action;

2. The right to object on any ground to the use of said responses, or the subject matter thereof, in any subsequent proceeding in the trial of this or any other action; and

3. The right to object on any ground at any time to other interrogatories or other discovery procedures involving or relating to the subject matter of these interrogatories.

## GENERAL OBJECTIONS

1. Buergofol objects to each and every interrogatory to the extent that it purports to impose any requirement or discovery obligation upon Buergofol other than as set forth in the Federal Rules of Civil Procedure and any applicable local rules of this Court.

2. Buergofol objects to each and every interrogatory to the extent that it seeks information that is not relevant to any party's claim or defense and proportional to the needs of the case.

3. Buergofol objects to each and every interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable restriction upon discovery.

4. Buergofol objects to each and every interrogatory to the extent that it purports to require Buergofol to disclose the content of any part of any agreement between Buergofol and a third party which by its terms may not be disclosed by Buergofol.

5. Buergofol objects to the definitions of "BUERGOFOL", "YOU" and "YOUR" to the extent that these definitions purport to include any company, individual, or entity other than Buergofol GmbH, a German limited liability company. Buergofol will respond only to discovery that seeks discoverable information concerning plaintiff Buergofol GmbH. Otherwise, the definitions are overbroad, burdensome and are inclusive of irrelevant subject matter.

The foregoing general objections shall be deemed continuous throughout the

responses to specific interrogatories which follow, even though not specifically referred to in such responses.

## RESPONSES

INTERROGATORY NO. 4:

Identify every item of PRIOR ART to each of the PATENTS-IN-SUIT now known to BUERGOFOL.

RESPONSE TO INTERROGATORY NO. 4:

This request is absurdly overbroad and therefore unanswerable. As used in 35 U.S.C. §102, "prior art" is an all-encompassing term that includes all subject matter that existed before the priority date in the form of one of the categories of disclosures enumerated in 35 U.S.C. §102. *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 586 U.S. ___, 139 S. Ct. 628, 129 U.S.P.Q.2d 1189 (2019) ("Disclosures described in §102(a)(1) are often referred to as 'prior art.'"). "Prior art" is not limited by subject matter, such as only subject matter that is analogous to a claimed invention. Consequently, the term "prior art" as used in §102 is not limited to subject matter for which any particular person (such as a USPTO examiner) has made an argument that some particular prior art discloses at least one claim limitation. And certainly the term "prior art" as used in §102 is not limited to anticipatory prior art, such as a patent document or printed publication that discloses each and every limitation of a particular claim.

Thus, ROG. No. 4 asks Buergofol to identify all insertion tubes and claim elements, such as support or carrier material, resin and films made of thermoplastic, polyamide and adhesive-promoter layers, known to any of Buergofol's agents, employees, partners, contractors, salesmen, promoters, representatives, distributors, managers, secretaries, attorneys, accountants, family members, investigators, or any other person acting on behalf of, at the direction of, or under the control of Buergofol. For example, the undersigned is an agent of Buergofol who is aware of prior art in the form of thermoplastic films that the undersigned has used to wrap food after a meal for keeping in

3

a refrigerator. The undersigned is also aware of prior art in the form of support or carrier material that is pink fiberglass used for home insulation. The fact that a USPTO examiner probably would not use such thermoplastic food wrap or pink fiberglass insulation in combination with other prior art to make an obviousness rejection under 35 U.S.C. §103 against a particular claim of one of the PATENTS-IN-SUIT does not exclude a printed publication describing such thermoplastic food wrap or pink fiberglass insulation from being prior art as that term is used in 35 U.S.C. §102. In addition, all patent documents and printed publications describing prior insertion tubes (including those not curable by UV light), thermoplastic films, polyamide films, carrier material and resin are prior art relating to the PATENTS-IN-SUIT.

Thus, the amount of "prior art" responsive to ROG. No. 4 is overbroad, and it is unduly burdensome to attempt to identify all of the vast amount of items of prior art relating to each of the PATENTS-IN-SUIT. The burden and expense of collecting and listing the information requested outweighs its likely benefit. Buergofol is under no obligation to assist Omega by rewriting ROG. No. 4 into a proper prior-art interrogatory for this patent case and then answering the rewritten interrogatory.

Further to the response above, the Court on July 13, 2023 issued an Order (Dkt. 164) stating that Omega's original definition of the term PRIOR ART as it appears in overbroad Interrogatory Four was narrowed to anticipatory prior art by an implicit incorporation of narrowing clarifications of "prior art" taken from (1) a first email dated December 27, 2022 referring to 35 U.S.C. §§ 102 and 103, and (2) a second email dated January 18, 2023 stating that "PRIOR ART includes any references that . . .." The Court found that PRIOR ART (for purposes of responding to "Interrogatory Four" and "Request for Production Thirteen") is limited to anticipatory prior art references, as explained by the Court in the excerpt below:

> ". . .'[t]o anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently. [citation omitted] Because this limitation was ***implicitly incorporated*** into Omega's definition of

4

> prior art, the broad categories in § 102 do not render Interrogatory Four or Request for Production Thirteen overbroad."

(Dkt. 164, 11:8-10) (emphasis added). That statement in the Order states that the term "prior art" is being "implicitly" limited to "anticipatory prior art." The Court then ordered that Buergofol respond to Interrogatory Four "as clarified in this order" within 21 days. (Dkt. 164, 17:6-7) Buergofol complies and supplements its response to Interrogatory Four "as clarified in this order" by stating that Buergofol does not now know of any anticipatory prior art reference (or even any item of anticipatory prior art) to any claim of either patent-in-suit, and therefore Buergofol has nothing further to identify.

Further to the response above, the Court on August 3, 2023 issued an Order (Dkt. 181) stating that Omega's original definition of the term PRIOR ART as it appears in overbroad Interrogatory Four was narrowed to anticipatory prior art as well as analogous prior art. Buergofol complies and makes a second supplemental response to Interrogatory Four as follows:

The attempted defining of "analogous prior art" in Dkt. 181 is legally erroneous to the extent that the Order implies that "analogous prior art" is defined by 35 U.S.C. § 103, as Omega incorrectly asserted. Section 103 does not define "analogous prior art" or any prior art. For purposes of this second supplemental response, Buergofol will apply the concept of "analogous prior art" as provided by the federal judiciary in caselaw, beginning with *In re Winslow*, 365 F.2d 1017, 1020 (Cust. & Pat. App. 1966). "Analogous prior art" includes both (1) prior art that is from the *same field of endeavor* as the claimed invention, and (2) prior art that is reasonably *pertinent to the particular problem* with which the inventor is involved even if it is not in the same field of endeavor. *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004). An item of "analogous prior art" need not necessarily disclose even a single claim element of the claimed invention. Most of the near limitless items of analogous prior art could not be used under Section 103 to invalidate any claim of the patents-in-suit. However, "analogous prior art" is a subset of

"prior art" as defined by 35 U.S.C. § 102, and no reference, object or activity that is not "prior art" under 35 U.S.C. § 102 can be "analogous prior art."

Analogous prior art is hardly ever, if ever, identified as a closed set of items of prior art. Typically, the concept of "analogous prior art" is considered only with respect to a particular item of prior art as used in a particular § 103 combination. The item of prior art may not be used in a § 103 combination if it is not "analogous prior art." In order to disqualify an item of prior art from being used in a § 103 combination, the involved analysis of whether that item is "analogous" can be concentrated on a single item of prior art. All of the arguments as to why a particular item of prior art is not "analogous" will become apparent only after an extensive analysis and comparison of the item of prior art is performed. Therefore, Buergofol's second supplemental response to overbroad ROG. No. 4 is not a representation or admission that all of the many items of prior art identified in this response would be "analogous prior art" in any particular § 103 combination. Buergofol reserves the right to argue that any particular item of prior art identified in this response is, in fact, <u>not</u> "analogous prior art."

Items of analogous prior art now known to Buergofol are listed below:

A) Objects in public use or on-sale in the United States prior to 6/15/2009 or 3/11/2012 for the '269 Patent or the '882 Patent, respectively.

1. Steam-cured CIPP liners
2. Inner and outer film for CIPP liners
3. Resin for CIPP liners
4. UV-curable resin
5. CIPP liner made and/or sold in various U.S. states by Applied Felts, Saertex, Brandenburger Liner, Reline America, RelineEurope, International Pipelining, Lightstream, Perma-Liner, Aegion, or Insituform
6. UV CIPP liner installed by Subsurface, Inc., Engineered Lining Systems, Hydro-Klean, LLC, United Survey, Inc., Integrity Inspection Solutions, Inc., The Avrett Company, or Iron Horse LLC
7. UV CIPP liner purchased and/or used by departments of transportation and municipalities in various states, such as South Dakota, North Dakota, Idaho, Nebraska, Ohio, Minnesota.
8. Non-food packaging
9. Lids for packaging

10. Bottom film, overwrap film and shrink wrap film for packaging
11. Skin film of bag-in-box packaging
12. Tubular bags
13. Film used for food packaging
14. Materials used for the film for food and non-food packaging
15. Release films against sticky substances
16. Surface-protecting films for the construction industry
17. Protective suits
18. Dirt-resistant tubular film for the construction industry
19. Covering films
20. Agricultural films
21. Renovated subterranean sewage pipes
22. Renovated culverts
23. Rehabilitated storm drain pipes
24. Materials that block UV radiation (such as sun tan lotion and tinted car windows)
25. Resin that cures with UV radiation (such as casts for fractured bones)
26. Tubular film such as condoms, dry-cleaner garment bags, garbage bags, trash can liners, retail bags, wind socks, and dryer exhaust tubes
27. Sausage coverings
28. Re-sealing flaps on cold-cut packaging
29. Nonstick cooking spray
30. Re-sealing sandwich bags and Ziploc® bags (which use stearamide wax to prevent sides from sticking together) (see BF13520-BF13529)
31. Post-it® notes
32. Burst and tear resistant balloons, air bladders and parachutes

B) Patents and printed publications worldwide that were issued or published more than one year prior to the priority dates of the patents-in-suit (6/15/2009 and 3/11/2012)

These analogous prior art documents are listed at pages BF12000-BF13100.

33. 193 U.S. patent documents
34. 1411 U.S. patent documents
35. 1993 U.S. patent documents
36. 695 U.S patent document
37. 1289 U.S. patent documents
38. 846 patent documents worldwide
39. 4321 patent documents worldwide
40. 6500 patent documents worldwide
41. 2061 patent documents worldwide
42. 21 prior art documents
43. <u>29 prior art documents</u>
    19,359 total items of analogous prior art

44. 13 patent documents listed in German and European patent office proceedings.

    To the extent that the patent documents ("D") referenced in the cancellation

7

proceedings of the German Gebrauchsmuster No. 202010016048.0 are not already included in the patent documents listed above, those patent documents are identified in this response as being analogous prior art to the '269 Patent. To the extent that the patent documents ("E") referenced in the opposition proceedings of the European Patent App. No. 11730556.5 (Pat. No. 2582520) are not already included in the patent documents listed above, those patent documents are identified in this response as being analogous prior art to the '269 Patent. Some of the patent documents were referenced in both proceedings. The patent documents include:

| | | | |
|---|---|---|---|
| E1: | EP 2 582 520 B1 | E11: | D11: WO 2007/054350 A1 |
| E7: | D1: EP 0 267 742 A2 | | D12: EP 1 155 256 B1 |
| | D3: DE 600 30 706 T2 | E24: | D14: DE 198 17 413 A1 |
| | D8: DE 10 2006 047 779 A1 | E8: | D15: DE 199 24 251 A1 |
| | D9: EP 0 342 897 A2 | | D59: DE 19824784 A1 |
| E9: | D10: DE 297 00 236 U1 | | D63: DE 195 10 136 A1 |
| | | E10: | WO 2010/033297 A2 |

These patent documents have already been identified at BF6293-BF6296 and at BF6361-BF6363.

45. All technical journal articles in an applicable field of endeavor that were published before 3/11/2012.

46. Pages from Buergofol's website published to the internet before 3/11/2012 (www.buergofol.de). Some web pages from Buergofol's website obtained from the Wayback Machine of the Internet Archive are reproduced at pages BF13101-BF13112.

C) All technical data sheets that were published in the internet before 3/11/2012 that relate to the ingredients for polymers used to make blown extrusion film. The technical data sheets would have been prepared by chemical companies, such as BASF, Lanxess, UBE Engineering Plastics, Mitsubishi, LG Chem, Dow Chemical, ExxonMobil, DuPont, Honeywell, EMS-Chemie, DSM Engineering Materials,

8

Sabic, INEOS, Schulman, Basell, LyondellBasell, Constab, etc. Buergofol identifies the following technical disclosures that appear to have been published before 3/11/2012 and thus constitute analogous prior art:

47. Constab PE-SA 270 (BF2014)
48. plastics online dictionary explaining Vicat (BF7103)
49. UBE nylon 5033 B (BF13115)
50. UBE nylon 5034 FDX40 (BF13116)
51. Ultramid C33 L (BF13117-BF13118)
52. Lanxess brochure (BF13119-13205)
53. book by J. Nentwig, "Kunststoff-Folien" 3rd ed. (BF7086-BF7091)
54. book by J. Nentwig, "Kunststoff-Folien" 2nd ed. (BF13214-BF13218)
55. book by R. Nabenhauer, "Verpackungs Lexikon" (BF7109-BF7111)
56. book by U. Buettel, "Blasfolien-Extrusion" (BF13206-BF13213)

57. Books, pamphlets and articles on blown film extrusion published prior to 3/11/2012, which are readily identifiable on Google and Google Scholar. There are too many items of analogous prior art identifiable in this manner that are known to Buergofol and its agents to list. Under Rule 26(b)(1) and the December 2015 Amendments, the court must, even in the absence of a motion, limit this facially overbroad discovery that is not proportional to the needs of the case. This applies to all categories of analogous prior art for which there are thousands of responsive items.

58. Books, pamphlets and articles on CIPP rehabilitation published prior to 3/11/2012, which are readily identifiable on Google and Google Scholar. There are too many items of analogous prior art identifiable in this manner that are known to Buergofol and its agents to list.

D) Technical disclosures referenced in the cancellation proceedings of the German Gebrauchsmuster No. 202010016048.0 and in the opposition proceedings of the European Patent App. No. 11730556.5 (Pat. No. 2582520) to the extent that they were printed publications. Those technical disclosures were already identified at BF6293-BF6296 and at BF6361-BF6363. The following disclosures from the

9

German cancellation proceeding are not prior art of any kind to the extent that they are not patent documents or printed publications.

59. D1:    EP 0 267 742 A2
60. D2:    Datenblatt „PRIEX"
61. D3:    DE 600 30 706 T2
62. D4:    Auszug aus Buch „Kunststoff-Folien"
63. D5:    Prospekt "Luflexen"
64. D6:    Prospekt „Total Petrochemicals"
65. D7:    Prospekt "ergo.tech"
66. D8:    DE 10 2006 047 779 A1
67. D9:    EP 0 342 897 A2
68. D10:   DE 297 00 236 U1
69. D11:   WO 2007/054350 A1
70. D12:   EP 1 155 256 B1
71. D13:   Nachweis zur Vorbenutzung
72. D14:   DE 198 17 413 A1
73. D15:   DE 199 24 251 A1
74. D16:   Report des iranischen Herstellers Petrochemical Commercial Company (PCC) über die Kunststoffproduktion aus dem Jahr 2008/2009 (http://www.petrochem-ir.net/ipcc_content///en/publish/POLYMER.pdf)
75. D17:   "Practical Guide to Polyethylene", Cornelie Vasile und Mihaela Pascu, iSmithers Rapra Publishing, 2005, Absatz 3.4.5
76. D18:   Datenblatt "Braskem INSPIRETM 137 NA Performance Polypropylene Polymer"
77. D19:   Datenblatt "INSPIRE 114"
78. D20:   Datenblatt "Dow INSPIRETM 112 Performance Polymer"
79. D21:   Datenblatt "Thermoplastische Polyurethan Elastomere (TPU), BASF
80. D22:   Datenblatt DuPontTM Zytel® Polyamid
81. D23:   Datenblatt "Polyethylene" Total Petrochemicals
82. D24:   Geheimhaltungsvereinbarung Saertex multiCom GmbH & Co. KG und Buergofol GmbH
83. D25:   Auftragsbestätigung Saertex mulitCom GmbH (Auftragnr. 10200554, XB34 B0004)
84. D26:   Produktionsauftrag 15895 zu Auftragnr. 10200554/1 (zu D25)
85. D26a:  Produktionsauftrag 15895 zu Auftragnr. 10200554/1 (zu D25)
86. D27:   Lieferschein 20200621 Saertex mulitCom GmbH zu Auftragsnr. 102005541/1 (zu D25)
87. D28:   Rechnung 30200621 zu Lieferscheinnr. 20200621 (zu D27)
88. D28a:  Rechnung 30200621 zu Lieferscheinnr. 20200621 (zu D27)
89. D29:   "Die Eigenschaften von UItramid®", BASF
90. D30:   Bildschirm-Kopie: "NovamidTM"
91. D31:   "Low density polyethylene", SABIC® LDPE
92. D32:   Bildschirm-Kopie: "Exxon Mobil Chemical, ExceedTM metallocene polyethylene (mPE) resins"

| | | |
|---|---|---|
| 93. | D33: | Handelsregisterauszug HRB 1938 |
| 94. | D34: | "Gregor Schleicher - GF- Kunststofftechnik \| XING" (https://www.xing.com/profile/Gregor_Schleicher?key=0.0 vom 06.05.2013) |
| 95. | D35: | eRecht24: Erhöhung der Mehrwertsteuer von 16% auf 19% zum 01.01.2007 (http://www.e-recht24.de/artikel/ecommerce/177.html vom 15.04.2013) |
| 96. | D36: | Lexikon Kunststoffprüfung "Vicat-Erweichungstemperatur" (http://www.polymerservice-merseburg.de/index.php?id=270&lex%5Buid%5D=202&... vom 08.06.2011) |
| 97. | D37: | ASTM International Designation: D 1525 – 00 Standard Test Method for Vicat Softening Temperature of Plastics |
| 98. | D38: | Datenblatt "Durethan B 40 FAM 000000" |
| 99. | D39: | Datenblatt "Unfilled VESTAMID® polyamide 12 compounds" |
| 100. | D40: | Datenblatt "DuPontTM Zytel® nylon resin" |
| 101. | D41: | Datenblatt "SEETEC SP 311" |
| 102. | D42: | Datenblatt "SEETEC SP380" |
| 103. | D43: | Datenblatt "LUCENETM SP980" |
| 104. | D44: | Datenblatt "LUCENETM SP988" |
| 105. | D45: | Datenblatt "Polyethylene Lumicene® mPE M 1810 EP" |
| 106. | D46: | Datenblatt "Polyethylene Lumicene® mPE M 2310 EP" |
| 107. | D47: | Datenblatt "Lumicene® mPE M5510 EP" |
| 108. | D48: | Datenblatt "LL7910A" |
| 109. | D49: | Datenblatt "LL7810A" |
| 110. | D50: | Datenblatt "ICORENE® - Semi Conductives 1761 SC Black 9002 Metallocene Medium Density Polyethylene" |
| 111. | D51: | Eidesstattliche Versicherung Frau Johanna Gürtner |
| 112. | D52: | Eidesstattliche Versicherung Herr Tobias Goth |
| 113. | D53: | Eidesstattliche Versicherung Herr Werner Schmid |
| 114. | D54: | Schreiben der Staatsanwaltschaft München I |
| 115. | D55: | Datenblatt "SABIC® LDPE 2200TC12" – (PE-LD) – Saudi Basic Industries Corporation (SABIC) |
| 116. | D56: | Datenblatt "Lupolen 2426 F" |
| 117. | D57: | Datenblatt "ExceedTM 1018 Series Metallocene Polyethylene Resin" |
| 118. | D58: | Beschreibung Referenzprojekte der Firma SAERTEX multiCom GmbH |
| 119. | D59: | DE 19824784 A1 |
| 120. | D60: | Endbericht „Abnahme von Liningmaßnahmen" des IKT Institut für Unterirdische Infrastruktur vom März 2009 |
| 121. | D61: | Auszug aus einer Allgemeinen bauaufsichtlichen Zulassung des Deutschen Instituts für Bautechnik, Berlin, vom 15.01.2002 mit Zulassungsnummer Z-42.3-336 |
| 122. | D62: | Artikel "Kanalsanierung von Großprofilen mit GFK-Inlinern" |
| 123. | D63: | DE 195 10 136 A1 |
| 124. | N1: | Datenblatt "Lupolen 2420 F" |
| 125. | N2: | Internet-Auszug über PRIEX-Spartenverkauf von Solvay an Addcomp |

126. N3: Wikipedia-Auszug "Wärmeformbeständigkeit"
127. N4: Rechnungen von "Die Agentur"
128. N5: Auszug aus Buch "Verpackungslexikon"
129. N6: Datenblatt "Surlyn®"

The disclosures referenced in the German cancellation proceeding are contained in BF13219-BF13519.

E) Analogous prior art that is pertinent to the problem facing the inventor.

130. Each public use or sale in the United States before 3/11/2012 of a Post-it® note.

131. Each public use or sale in the United States before 3/11/2012 of a re-sealing cold-cut package.

132. Each public use or sale in the United States before 3/11/2012 of nonstick cooking spray.

133. Each public use or sale in the United States before 3/11/2012 of removable decals.

134. U.S. patent documents published before 3/11/2012 that include the words "pipe", "tubular film", "resin" and "renovate".

   US 5993114 A     1999-11-30     Apparatus and method for pipeline renovation
   US 5167258 A     1992-12-01     Re-lining of sewers

135. 4,603 U.S. patent documents published before 3/11/2012 that include the words "release", "stick", "remove", "film", "sheet", "coating", "adhesion" and "adhesive"

136. 6,489 patent documents worldwide published before 3/11/2012 that are returned by the search on the EPO Espacenet: desc all "release" AND desc "stick" AND pd < "20120311" AND desc "remove" AND desc "film" AND desc "sheet" AND desc "coating" AND desc "adhesion" AND desc "adhesive".

137. 35,421 patent documents worldwide published before 3/11/2012 that are returned by the search on the EPO Espacenet: pd < "20120311" AND desc any "strength stretch" AND desc "film" AND desc "layers" AND desc any "pressure inflate" AND desc any "burst tear".

This second supplemental answer to ROG No. 4 does not identify all possible

responsive items of analogous prior art. To the extent that compliance with the clarified ROG No. 4 pursuant to Order 181 requires Buergofol's attorneys to interview all of Buergofol's approximately 300 employees in 3 separate German cities to determine whether any of those employees knows of analogous prior art, Buergofol's attorneys have not been able to conduct more than a few interviews during the week since Order 181 was issued on August 3, 2023. Most of the employees are factory workers without offices or company telephones and cannot be interviewed by making a telephone call. However, the probability is low that any of the workers would know of anything that could qualify as analogous prior art because the sale or use of anything in Germany does not qualify as prior art to either of the patents-in-suit. The most likely thing known to the workers that could qualify as analogous prior art is printed publications published more than a decade ago in the applicable fields of endeavor. In addition to the tens of thousands of analogous prior art printed publications identified by Buergofol's attorneys, the only likely additional analogous prior art that the workers might identify are old printed publications from their personal lives relating to common items, such as re-sealable sandwich bags, sticky notes, or septic system renovations of their homes. Proprietary Buergofol information is not analogous prior art because it is not a printed publication, and foreign sales and foreign public use are not prior art.

Dated this 10th day of August, 2023

        **IMPERIUM PATENT WORKS LLP**

        By /s/ Darien K. Wallace
          Darien K. Wallace *(Pro Hac Vice)*
          P.O. Box 607
          315 Ray Street
          Pleasanton, CA 94566
          Phone (925) 550-5067
          Fax (925) 835-5804
          Email darien@imperiumpw.com

          Attorney for Plaintiff Buergofol

## **VERIFICATION**

I, Franz Schleicher, have the title of Alleinprokurist (sole officer with general commercial power of representation) of Buergofol GmbH. I declare under penalty of perjury that the facts stated in the foregoing "Buergofol's Second Supplemental Responses to Omega's Interrogatories to Buergofol (Set One) (No. 4 of 1-5)" are true and correct to the best of my knowledge, information, and belief.

_____
Franz Schleicher on behalf of
Buergofol GmbH

## CERTIFICATE OF SERVICE

The undersigned certifies that, on the date indicated above, a true and correct copy of the foregoing document was served electronically using the CM/ECF system or email:

- Meghann M. Joyce (meghann@denevanfalon.com), *Attorney for Defendant*
- Michael Neustel (michael@neustel.com), *Attorney for Defendant*
- Michelle G. Breit (michelle@neustel.com), *Attorney for Defendant*
- Monte M. Bond (monte@neustel.com), *Attorney for Defendant*

  /s/ Darien K. Wallace
Darien K. Wallace *(Pro Hac Vice)*
P.O. Box 607
315 Ray Street
Pleasanton, CA 94566
Phone (925) 550-5067
Fax (925) 835-5804
Email darien@imperiumpw.com