UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| Buergofol GmbH,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Omega Liner Company, Inc.,<br><br>　　　　Defendant. | Case No. 4:22-cv-04112<br><br>**OMEGA'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AGAINST BUERGOFOL FOR FAILURE TO COMPLY WITHT THE DISCOVERY ORDERS ENTERED BY JUDGE DUFFY** |

Omega Liner Company, Inc. ("Omega"), by and through its counsel, hereby submits this Memorandum in Support of Motion for Sanctions Against Buergofol GmbH ("Buergofol") for Failure to Comply with the Discovery Orders Issued by Judge Duffy.

## INTRODUCTION

On September 18, 2023, the Honorable Veronica L. Duffy held a hearing in this matter and ruled on several discovery motions. Judge Duffy directed Buergofol to file specific responses to Omega's discovery requests that were consistent with the representations that Buergofol made to the Court at the hearing. Buergofol failed to comply with Judge Duffy's orders, which granted in part Omega's motions to compel. (Dkts. 233 & 234). Omega seeks an order from this Court finding that Buergofol violated this Court's orders, requiring it to revise its discovery responses to comply with the Court's orders, and requiring it to pay Omega's fees in connection with bringing this motion.

1

## FACTUAL BACKGROUND

**A. Request for Production No. 103- BASF Tests of Sudpack Film**

Omega's Request for Production No. 103 ("RFP 103") narrowly focused on the highly relevant subject matter of the presence of EBS wax in the outer layer of inner films, which Buergofol alleges in the First Amended Complaint is significant for infringement of the '882 patent. (Dkt. 163, ¶¶ 15, 28, 40.) Omega served the following request for production on Buergofol:

> REQUEST FOR PRODUCTION NO. 103: All documents constituting or relating to any communications regarding EBS wax within an outer layer of film.

Buergofol filed a nearly two-page response to this request riddled with objections and confusing explanations but provided no documents. Omega moved to compel, and the parties argued the motion at the September 18, 2023, hearing. Omega possessed communications among Buergofol representatives which appeared to indicate that there were two tests performed by BASF analyzing the EBS wax in Sudpack film, but Buergofol refused to give Omega a clear answer regarding whether a second test was completed and if so, what the results were. Darien Wallace's colloquy with the Court on this issue at the hearing was as follows:

> MR. D. Wallace: The Request For Production 103 is a Request For Production. It's not an interrogatory. Opposing counsel says "We want to know. We want to know whether Sudpack changes its formulas." That's all great, but that has nothing to [do] with the Request For Production. We already responded. After a search, we have no documents, so we produced all the documents.
>
> And just as an aside, there was a misrepresentation there of what the document – what that email said. The email doesn't say that there was a test

in 2020 of a Sudpack film from 2012. We dispute that. So we shouldn't be forced to produce something that there's no basis for saying that it even exists.

THE COURT: Does it exist? Did BASF conduct a second analysis?

MR. D. WALLACE: No. They didn't even produce a first analysis. There was no first analysis of a 2012 film in 2020.

THE COURT: I'm not talking about that. I'm talking about did BASF produce a first analysis—

Mr. D. WALLACE: No.

THE COURT: -- regardless of what year it was?

MR.D. WALLACE: No. What the film was? Yes. There was a film tested in 2020. True.

THE COURT: Okay. Did they do a second test in 2020 of any year film?

MR. D. WALLACE: No. But the statement here is that the first test was of a 2012 film and then they did a second test of 2012. The test that was in 2020 wasn't of a 2012 film. It was of a contemporary film from 2020.

THE COURT: Okay. But the whole gist of 103 is "Give us the documents for a second BASF analysis of Sudpack film." And you're tell me, as an office of the court, there was no second analysis.

MR. D. WALLACE: Of that Sudpack film, there wasn't even a first one.

THE COURT: I'm asking was there a second analysis—

MR. D. WALLACE: There was not second.

THE COURT: -- in 2020?

MR. D. WALLACE: No.

THE COURT: So here's the big problem, again, with how you respond to the Request For Production. You object based on trade secrets. You say it's an unrelated area. This has to do with a food film, and then you object it's an overboard time frame. It should be limited to 2012 when the '882 Patent was

3

made. It should not include documents for the last 11 years. And then at the end you say, well, there was never a second test.

I want you to file a new response to Request for Production Number 103 that says clearly and unequivocally there was no second analysis by BASF of *any Sudpack film in 2020*, because that's what you're telling me here today in the courtroom.

MR. D. WALLACE: Yes, Your Honor. As a general matter, I thought, under the rules, there's only an obligation to say whether you're withholding something based on an objection, but there's no obligation to say whether there is a document or not.

THE COURT: When you make objections and then you say there's no – really there's no documents, it leaves the receiving party guessing: Are there documents? Are they withholding documents pursuant to my objection? I don't know.

So, I want you to give a very clear answer to this Request For Production saying there was no second BASF analysis of Sudpack film in 2020, and then there's nothing to compel.

MR. D. WALLACE: Thank you, Your Honor.

(Ex. 1- Transcript, pg. 186-189) (emphasis supplied). After the hearing, the court made docket entry 233, which tracks the Court's precise language at the hearing and states that, "Buergofol must file an amended response to the request making unequivocally clear that BASF conducted no second analysis of <u>any Sudpack film</u>." (Dkt. 233) (emphasis supplied). While the direction from the Court to Buergofol was clear, Buergofol's response failed to comply with the Court's simple order.

On September 25, 2023, one week after receiving this direction from the Court, Buergofol provided the following supplemental response to Request for Production No. 103:

> In response to the Court' order from the bench on September 18, 2023 (Dkt. 233, hearing transcript p. 188-189), Buergofol provides the following revised answer regarding "*the second BASF analysis of the 2012 Sudpack film*" (See Dkt. 178, 14:11-22). No such "*second BASF analysis of the 2012 Sudpack film*" ever existed, so the non-existent second BASF analysis cannot be produced. Buergofol is not in the possession, custody or control of any "*second BASF analysis of the 2012 Sudpack film*."

Ex. 2. (emphasis supplied). The problem with this response is obvious. While the Court directed Buergofol to serve a response without <u>any limitation regarding the year of the Sudpack film</u>, Buergofol took it upon itself to limit its response to only <u>2012 Sudpack film</u>, in direct violation of the Court's order.

On September 28, 2023, Omega emailed Buergofol raising this issue and asking Buergofol to amend its response to comply with the Court's order. Buergofol did not respond. Ex. 3. Omega reached out to Buergofol by email again on October 2, 2023; October 10, 2023; and October 12, 2023, attempting to resolve this issue, but Buergofol failed to respond in any way. *Id.*

### B. Interrogatories 11 & 12- Composition of Buergofol's Film and Its Coating.

In a patent infringement case such as this, most frequently the best evidence of the structure and composition of an invention claimed in the patent at issue is possessed by the patentee who manufacturers products or components of products embodying the invention. Consequently, Omega sent discovery requests regarding the structure and composition of Buergofol's films, including those Buergofol sold to Omega and to other customers before the critical dates at issue:

INTERROGATORY NO. 11:

For each shipment of film by Buergofol prior to June 15, 2009, regardless of its intended use, that had five layers or more with one external layer comprised of at least one thermoplastic olefin homo- or copolymer and another external layer comprised of at least one homo- and/or copolyimide, identify the product

name or identifier, the Person to whom Buergofol shipped the film, the description of the film, the type of film, the size of film (diameter if tubular film or width if flat film), the shipment date, the delivery number, the order number, the quantity of film shipped in meters, the thickness of the film, the number of layers in the film, the chemical composition of each layer of the film, the layer sequence of the film, and the thickness of each layer.

INTERROGATORY No. 12:

For each shipment of film by Buergofol prior to March 11, 2012 that included a coating, identify the product name or identifier, the Person to whom Buergofol shipped the film, the description of the film, the "Type of Film" as indicated on the label attached to the film, whether the film was tubular or flat, the size of film (diameter if tubular film or width if flat film), the shipment date, the delivery number, the order number, the quantity of film shipped in meters, the thickness of the film, the number of layers in the film, the chemical composition of each layer of the film, the layer sequence of the film, the thickness of each layer, whether the coating was incorporated into a layer or applied over part or all of the layer, and which layer the migrating compound was incorporated into or applied over.

Again, Buergofol provided a response that spanned several pages, contained multiple objections, but provided very little substantive, responsive information. After failing to resolve this matter through the meet and confer process, Omega was forced to file a motion to compel, which was heard at the September 18, 2023 hearing.

After hearing arguments from counsel, Judge Duffy made the following ruling on the record:

Okay. So for Interrogatory 11 and 12, I'm going to order Buergofol to provide revised answers that make clear that you've looked for these documents and they don't exists, because your objections don't convey that sentiment. You object on trade secret grounds, proportionality, not relevant, it's more than one interrogatory. And after all that, you say, "Well, there are no documents." I want you to make clear in a very succinct answer, signed under oath by your

6

> client: "We have looked.  We don't have these documents.  We don't have anything prior to 2018.  We don't have emails prior to 2014."

(Transcript at 153).  Again, this directive from the Court to Buergofol was based on the representations that Buergofol made to the Court during the argument.  After the hearing, the Court entered docket number 234 stating that "Buergofol is ordered to file revised responses to these discovery requests making unequivocally clear what documents are retained by it and that no documents or information responsive to these requests is available."  (Dkt. 234).  Buergofol did not comply with the Court's straightforward order, and instead fell back on its recurrent theme of overly complicating matters.

On September 26, 2023, Buergofol provided the following supplemental responses at the end of its original response:

> INTERROGATORY NO. 11
>
> In response to the Court's order from the bench on September 18, 2023 (9/18/23 hearing transcript, p. 153), Buergofol provides the following revised answer regarding the structure and composition of each shipment of film by Buergofol prior to June 15, 2009.
>
> Buergofol has looked for *reasonably accessible* documents containing the information requested in ROG No. 11 and did not find any such documents.  Buergofol possesses binders of manufacturing documentation regarding film.  Buergofol looked and found no manufacturing documentation older than 2018.  Buergofol found no invoices, orders, shipping documents or other commercial documents older than 2014.
>
> Some information regarding the structure and composition of film shipped by Buergofol prior to June 15, 2009 is contained in the public files of the cancelation proceeding for the German utility model and the opposition proceeding for the European patent related to the '269 Patent.  The information from the cancelation and opposition proceedings relating to the Buergofol film shipped prior to June 15, 2009 has already been produced.

7

Ex. 4 (emphasis supplied). Buergofol gave nearly an identical supplemental answer to Interrogatory No. 12 about films with a coating that were shipped by Buergofol before March 11, 2012. *Id.*

Omega emailed Buergofol on October 3, 2023, regarding the deficiency in its answers. Omega raised the issue of Buergofol inserting the term "reasonably accessible documents" in its answers when that qualification was not in the Court's order. Ex. 5. Omega explained that the cryptic nature of the response did not inform Omega as to which sources of information Buergofol searched because Omega has no way of knowing what documents Buergofol considers to be "reasonably accessible." Omega also pointed out that Buergofol maintained its lengthy objections based on trade secrets and other matters, contrary to the Court's order. Buergofol did not respond to this email or the emails that followed on October 6, October 10, or October 12. *Id.*

### C. Requests For Production Nos. 6 & 7– Inner and Outer Foil

On November 23, 2022, Omega served on Buergofol Requests for Production of Documents and Things, some of which seek information regarding products Buergofol made or sold before the earliest possible effective filing date of the `882 Patent:

> Request for Production No. 6: All documents relating to or referring to the qualities, characteristics, specifications, capabilities, properties, composition, additives used in and/or layers of all inner foil made or offered for sale by BUERGOFOL prior to March 11, 2013.
>
> Request for Production No. 7: All documents relating to or referring to the qualities, characteristics, specifications, capabilities, properties, composition, additives used in and/or layers of all outer foil made or offered for sale by BUERGOFOL prior to March 11, 2013.

In response, Buergofol submitted pages of muddled objections and attempted to limit the request to products sold in the United States. After the meet and confer process failed to

yield results, Omega brought a motion to compel, which was argued at the September 18, 2023 hearing. The Court asked Buergofol the following questions at the hearing:

> THE COURT: So I just want to clarify something. In Request For Production 6, Buergofol's response was "We object and say there are no such documents." Then you say you have a document retention policy that only goes back two years. Then you say you'll produce documents after a reasonable search. To me, that answer leaves me, if I'm Omega – I have no idea whether you have responsive documents or not. What is it? What is your position?
>
> MR. D. WALLACE: Those production documents go back to 2018. The Request For Production is things older than 2013. So in those production documents, there's nothing.

(Transcript at pp. 140-141). Ultimately, the Court issued the following ruling:

> THE COURT: Okay. So for 6 and 7, I'm going to order Buergofol to file revised answers under oath to the Request For Production making clear that you've searched; that you don't have any documents. Because I read your answers as you've given them, and to me it is ambiguous about whether there are documents. All these "I'm asserting this objection, but I'm asserting this objection but, but then we'll produce whatever we find," it leaves the person who made the request guessing what's out there, if anything. So I want you to tell them what you just told me in a revised answer, which is "We checked. We don't have any information prior to 2018. We have no emails prior to 2014. There is no ERP system."

(*Id*. at p. 145).

On September 26, 2023, Buergofol submitted its supplement response to Requests for Production of Documents 6 & 7. Contrary to the Court's requirement, Buergofol did not submit these responses under oath. Buergofol maintained its original response and objections and provided the following supplemental response.

9

> Request for Production No. 6:
>
> In response to the Court's order (Dkt. 234) from the bench on September 18, 2023 (9/18/23 hearing transcript, p. 145), Buergofol provides the following revised answer regarding the structure and composition of inner file by Buergofol prior to March 11, 2013.
>
> Buergofol has looked for *reasonably accessible documents* responsive to Request No. 6 and did not find any such documents. Buergofol possesses binders of manufacturing documentation regarding film. Buergofol looked and found no manufacturing documentation older than 2018. Buergofol looked and found no emails older than 2014. Buergofol has no ERP system as Buergofol understands that term, but Buergofol has a "DS" system. After a reasonable search, including in the "DS" system, Buergofol found no invoices, orders, shipping documents or other commercial documents older than 2014.
>
> Some information regarding the structure and composition of film shipped by Buergofol prior to March 11, 2013 is contained in the public files of the cancelation proceeding for the German utility model and the opposition proceeding for the European patent related to the '269 Patent. The information for the cancelation and opposition proceedings relating to the Buergofol film shipped prior to March 11, 2013 has already been produced.

Ex. 6. (emphasis supplied). Buergofol provided nearly an identical supplemental response to Request for Production No. 7.

There are several problems with this response, and Omega emailed Buergofol on October 2, 2023, discussing them. Ex. 7. First, since Buergofol maintained its original response, it is unclear if it is limiting its supplemental response to products sold in the United States. Second, Omega does not know what a "DS system" is and asked Buergofol for clarification on that point. Third, it is not clear that Buergofol searched for documents that "relate" to the qualities, characteristics, specifications, capabilities, properties, composition, or additives in the foil, in addition to documents that "specifying" or "referring" to these topics. And once again, Buergofol injected the qualifier "reasonably accessible documents" without telling Omega how it interprets that term. Buergofol did not respond to Omega's email seeking clarification on these points or the three that followed on October 5, 10 and 12. *Id.*

10

## ARGUMENT

I. **SANCTIONS AGAINST BUERGOFOL ARE WARRANTED UNDER FED. R. CIV. P. 37(B)(2).**

Rule 37(b)(2) governs sanctions imposed for failing to obey discovery orders and requires three components: (1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party. *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999). Rule 37(b)(2) requires "that the sanction be just and relate to the claim at issue in the order to provide discovery." *Hairston v. Alert Safety Light Products, Inc.*, 307 F.3d 717, 719 (8th Cir. 2002) (internal quotation marks omitted); *see also Perfetti Van Melle USA, Inc. v. Midwest Processing, LLC*, No. 4:15-CV-04093, 2015 WL 4068092, at *5-6 (D. S.D. July 2, 2015). Each of these elements is met here.

There are three oral rulings and two Court entries (Dkts. 233 & 234) that satisfy the requirement that there be an order compelling certain discovery. Moreover, Buergofol can hardly claim that it did not willfully violate the orders at issue because the Court was particular in the language it used in directing Buergofol to submit supplemental responses to Omega, and Buergofol did not follow the Court's simple directives. As set forth above, Buergofol limited its response on EBS wax to 2012 Sudpack film when the Court was clear that the response was to be for Sudpack film of any year. Additionally, Buergofol uniformly failed to follow this Court's admonishments that it provide clear and unequivocal responses. It did not withdraw its previous non-responsive and largely incomprehensible answers, choosing to put its supplement response at the end of its original response. Accordingly, Omega does not know whether Buergofol is still relying on any of its earlier objections. Buergofol also inserted terms such as "reasonably accessible" and "DS system", that mean little to nothing Omega. Despite receiving no less than four emails on each of these topics from Omega, Buergofol made no effort to clarify its responses or answer Omega's questions regarding the same. The final email Omega sent on these issues to Buergofol was as follows:

Hi Elizabeth,

11

> Do you intend to respond to my email below? I was hopeful that after we agreed to extend deadlines of Buergofol in response to your motion for an extension, you would have time to review these matters and get back to me. I would prefer not to bother the court with further motion practice on these issues, especially in light of the fact that I do not know your position on the issues we have raised. If you don't intend to respond, please let me know and I will proceed with the motion. If you intend to respond but need a little more time, please let me know that as well and we can agree to a new deadline.
>
> Thanks,
> Shannon

Ex. 3. Still no response was received. Omega gave Buergofol every opportunity to address these issues, but Buergofol simply refused to engage. Because the supplemental discovery answers remain unintelligible, Omega was forced to proceed with this Motion for Sanctions.

Prejudice to Omega is apparent. Omega still does not know if there was a second analysis of any Sudpack film because Buergofol limited its response to 2012 film notwithstanding the Court's order to the contrary. Omega also does not know what documents Buergofol searched because it does not know how Buergofol defines "reasonably accessible" or what the "DS system" is. Moreover, Buergofol had the burden to raise the issue of any alleged inaccessibility of ESI at the time of Omega's motion to compel. *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales and Service,* 2023 WL 356121 at *17-18 (J. Duffy Jan. 23, 2023) (holding that responding party has the burden to show that ESI is not reasonably accessible). Having failed to raise the issue, Buergofol cannot now inject this language into its response and claim to be following the Court's order. Additionally, Omega does not know if Buergofol was only searching for documents regarding products sold in the United States. In essence, Buergofol's insistence in maintaining its equivocal answers has blocked Omega's attempts to discover critical facts in this case and to even know what the universe of information is. Buergofol should be sanctioned for its noncompliance with this Court's September 18, 2023 orders.

"The district court has a large amount of discretion in imposing an appropriate remedy under the statute, and its decision will not be reversed absent an abuse of discretion." *Kayongo-Male v. South Dakota State University*, CIV 04-4172, 2008 WL 2627699, at *4-5 (D. S.D. July 3, 2008) (citing *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1019 (8th Cir. 1999)). Sanctions may include the dismissal of claims or defenses or entering orders deeming certain matters admitted for all purposes or ordering certain evidence inadmissible at trial. Fed. R. Civ. P. 37(b)(2). Additionally, a court can require the disobedient party to pay the reasonable expenses, including attorneys' fees, caused by its failure to comply. Fed. R. Civ. P. 37(b)(2)(C).

The sanctions that Omega seeks in this motion are simple. Omega requests that this Court order Buergofol to revise its supplemental responses to comply with this Court's orders as reflected in the hearing transcript and at docket entries 233 and 234 and to sign those responses under oath. Omega further requests that the Court order Buergofol to pay the costs associated with bringing this motion.

Dated this 19th day of October, 2023

DENEVAN FALON PROF. LLC

*/s/ Shannon Falon*

BY: Shannon Falon
Meghann M. Joyce
100 S. Dakota Ave, Second Floor
Sioux Falls, SD 57104
Telephone: 605.219.9465
Email: meghann@denevanfalon.com

Michael S. Neustel *(admitted pro hac vice)*
Michelle G. Breit *(admitted pro hac vice)*
Monte M. Bond *(admitted pro hac vice)*
NEUSTEL LAW OFFICES, LTD
2534 South University Drive, Suite 4
Fargo, ND 58103
Telephone: 701.281.8822
Email: michael@neustel.com
michelle@neustel.com
monte@neustel.com

*Attorneys for Defendant Omega Liner*