UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH, <br><br> Plaintiff, <br><br> vs. <br><br> OMEGA LINER COMPANY, INC., <br><br> Defendant. | Civil Action No.: 22-cv-04112-KES <br><br> **BUERGOFOL'S OPPOSITION TO OMEGA'S MOTION TO STAY PENDING *INTER PARTES* REVIEWS** |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION .................................................................................................. | 1 |
| II. | LEGAL STANDARDS ......................................................................................... | 2 |
| III. | NO STAY SHOULD BEGIN UNTIL COURT-ORDERED DISCOVERY OF LINER SAMPLES IS PRODUCED ......................................................... | 3 |
| | A. Timing Factor: Substantial Discovery Has Already Been Performed, And The Benefit Of That Discovery Could Be Lost With An Immediate Stay... | 3 |
| | B. Prejudice Factor: IPR Petitions Were Delayed To Gain A Tactical Advantage By Staying The Case Before Liner Samples Are Produced ..... | 4 |
| IV. | CONCLUSION ..................................................................................................... | 7 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Pages(s)**

*Astarita v. Menard, Inc.*,
    No. 5:17-cv-06151-CV, 2020 WL 591509 (W.D. Mo. Feb. 6, 2020) ..................... 2

*Blacktop, Inc. v. Edible Arrangements Int'l, LLC*,
    No. 4:14-cv-00005-DGK, 2014 WL 12695690 (W.D. Mo. Apr. 30, 2014) .......... 2

*Cottrell v. Duke*,
    737 F.3d 1238 (8th Cir. 2013) ................................................................................ 2

*Hansen Mfg. Corp. v. Enduro Sys., Inc.*,
    No. 11-cv-4030-KES, 2012 WL 381238 (D.S.D. Feb. 6, 2012) ........................... 3

*Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*,
    No. 2:13-cv-04160-NKL, 2014 WL 2511308 (W.D. Mo. June 4, 2014) .............. 3

*Landis v. North American Co.*,
    299 U.S. 248 (1936) ........................................................................................... 2-3

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
    No. 2:18-cv-00390-RWS, 2019 WL 3826051 (E.D. Tex. Aug. 14, 2019) ............ 3

*Pinn, Inc. v. Apple, Inc.*,
    No. 19-cv-01805-DOC, 2020 WL 6064642 (C.D. Cal. Aug. 27, 2020) ................ 6

*Provisur Techs., Inc. v. Weber, Inc.*,
    No. 21-cv-06113-SRB, 2020 WL 7346698 (W.D. Mo. Sept. 16, 2022) ................ 3

*Riazi v. Ally Fin., Inc.*,
    No. 4:17-cv-01705-JCH, 2017 WL 4269791 (E.D. Mo. Sept. 26, 2017) ............... 2

*Telebrands Corp. v. Seasonal Specialties, LLC*,
    No. 17-cv-4161-WMW, 2018 WL 1027452 (D. Minn. Feb. 23, 2018) ................ 6

**Statute**

35 U.S.C. § 315(b) ................................................................................................. 4

I.      **INTRODUCTION**

Plaintiff Buergofol GmbH ("Buergofol") files this response in opposition to Defendant Omega Liner Company, Inc.'s ("Omega") motion for an immediate stay (Dkt. 246) pending the institution and resolution of two *Inter Partes* Reviews filed on September 20, 2023 and September 12, 2023.

Omega has failed to meet its burden of showing that the circumstances justify an immediate stay. Omega is engaged in gamesmanship, and the timing of its IPR petitions and motion for a stay is intended to prevent Buergofol from obtaining all of the requested samples of Omega's infringing cured-in-place-pipe (CIPP) liners. Omega seeks an immediate stay in order to prevent the court-ordered production of the liner samples, which will show which of Omega's liners infringe U.S. Patent No. 9,657,882 ("the '882 Patent") and U.S. Patent No. 8,794,269 ("the '269 Patent"). No stay should begin until Buergofol has received samples of the approximately 400 Omega liners that Subsurface has installed during the past eight months since Subsurface was subpoenaed for the samples. Omega's attorney, Michael Neustel, has obstructed the production of the samples and prevented Buergofol's counsel from picking up the samples from Subsurface, which the Court on September 18 ordered Subsurface to produce. This is a patent infringement case, and it is outrageous that more than a year into the case, Omega has still not produced samples of its liners to enable Buergofol to determine which of the liners infringe and to assess the value of the case. Buergofol should not be forced to incur the cost of two IPRs over the next 18 months without being permitted to determine how many of the approximately two thousand liners that Omega has produced so far infringe at least one of the patents-in-suit.

Omega's motion for an immediate stay of the litigation pending the resolution of the IPRs should be denied, and no stay should be ordered until the later of November 14, 2023, or the date on which Buergofol has picked up a significant number of samples of the approximately 400 Omega liners that Subsurface has installed since Subsurface was subpoenaed for the samples and confirmed substantial, good faith compliance with the subpoena.

II.     **LEGAL STANDARDS.**

A stay should be entered only where the proponent of the stay establishes the need for a stay and where it is a proper exercise of the court's discretion. *Blacktop, Inc. v. Edible Arrangements Int'l, LLC*, No. 4:14-cv-00005-DGK, 2014 WL 12695690, at *1 (W.D. Mo. Apr. 30, 2014); *Astarita v. Menard, Inc.*, No. 5:17-cv-06151-CV, 2020 WL 591509, 2020 BL 43224 (W.D. Mo. Feb. 6, 2020). The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). How a proceeding can be stayed "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-255. The burden lies with the moving party to demonstrate the requested stay is appropriate and presents a "clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Riazi v. Ally Fin., Inc.*, No. 4:17-cv-01705-JCH, 2017 WL 4269791, 2017 BL 339606, at *3 (E.D. Mo. Sept. 26, 2017) (quoting *Landis*, 299 U.S. at 255).

In determining whether to grant a stay in the context of an *inter partes* review by the USPTO, courts generally consider the following factors: (1) <u>timing</u>: how far the litigation has progressed, taking into account whether discovery is complete and a trial date has been set; (2) <u>simplify</u>: whether a stay for the *inter partes* review would simplify the issues in question and streamline the trial; and (3) <u>prejudice</u>: whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Provisur Techs., Inc. v. Weber, Inc.*, No. 21-cv-06113-SRB, 2020 WL 7346698, 2022 BL 486210, at *2 (W.D. Mo. Sept. 16, 2022); *Hansen Mfg. Corp. v. Enduro Sys., Inc.*, No. 11-cv-4030-KES, 2012 WL 381238, 2012 BL 33042, at *2 (D.S.D. Feb. 6, 2012).

The prejudice factor is the most important and includes considerations such as whether the proposed stay would place the opposing party at a tactical disadvantage. *See, e.g., Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-cv-00390-RWS, 2019 WL 3826051, at *3, 2019 BL 304345 (E.D. Tex. Aug. 14, 2019); *Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-cv-04160-NKL, 2014 WL 2511308, at *2, 2014 BL 155096 (W.D. Mo. June 4, 2014).

### III. NO STAY SHOULD BEGIN UNTIL COURT-ORDERED DISCOVERY OF LINER SAMPLES IS PRODUCED

A court must weigh the competing interests and maintain an even balance when deciding how to implement a stay. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). In this case, both the timing factor and the prejudice factor weigh against granting the requested immediate stay.

#### A. Timing Factor: Substantial Discovery Has Already Been Performed, And The Benefit Of That Discovery Could Be Lost With An Immediate Stay.

The timing factor weighs against granting the requested immediate stay. At the present time in this case, the parties have completed substantial discovery, including

Buergofol's requests for production of documents and things, requests for admission and interrogatories seeking to compel Omega and Subsurface to produce evidence of the particular inner film that was combined with particular outer film to make specific liners. Despite being compelled, Omega has refused to admit that it used any particular inner film with any particular outer film to make a specific liner. (Omega was ordered (Dkt. 228) to admit or deny that it combined particular inner and outer film to make liner.)  Thus, infringement cannot be established by testing just inner film, as Omega has argued.  Instead, Buergofol must prove that Omega made each infringing liner by testing specific liner samples that include both particular inner film and particular outer film. After many months of effort following a subpoena served in February, Buergofol is finally on the verge of obtaining samples of Omega liners that Buergofol needs to determine which particular liners infringe.  If an immediate stay were to be imposed, then Buergofol would not obtain the benefit of its substantial discovery efforts, and the samples of Omega liner might not be available after the stay is lifted after 18 months. Moreover, without the liner samples, Buergofol will not be able to estimate how many of the approximately 600 liners that Omega makes annually infringe at least one of the patents-in-suit.  Buergofol should not have to wait another 18 months to develop an initial estimate of the value of this case.

      **B.   Prejudice Factor: IPR Petitions Were Delayed To Gain A Tactical Advantage By Staying The Case Before Liner Samples Are Produced.**

"An *inter partes* review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b).  Omega was served with the complaint in this action on

September 21, 2022. (Dkt. 7) Omega filed its IPR petition for the '269 Patent on September 20, 2023, and its IPR petition for the '882 Patent on September 12, 2023.

Thus, Omega waited until the last day to file its IPR petitions in an attempt to gain a tactical advantage. Omega has admitted that it postponed filing its IPR petitions while it sought discovery to support its invalidity arguments. (Dkt. 247, 20:14-17) Yet, Omega now seeks an "immediate stay" to prevent Buergofol from obtaining the court-ordered production of the approximately 400 Omega liners that Subsurface has installed during the past eight months since Subsurface was subpoenaed for the samples.

At the hearing on September 18, 2023, Magistrate Judge Duffy ordered (Dkt. 227) Subsurface to produce the Omega liner samples. Subsurface first offered to make the samples available for inspection in Moorhead, Minnesota. (Declaration of Hertz, ¶2, Exh. A) Omega's attorney, Michael Neustel, obstructed Buergofol's ability to pick up the Omega liner samples from Subsurface and to transport those samples for further testing at an alternate location. (Hertz decl., ¶3, Exh. A) Mr. Neustel insisted that Buergofol's attorney must first inspect the liner samples with him being personally present before Buergofol would be permitted to take any samples. Moreover, Mr. Neustel conditioned Buergofol's obtaining samples from Subsurface on Omega being given corresponding samples. *Id*. Mr. Neustel insisted that Omega be involved in Subsurface's court-ordered production of the liner samples, which can occur only "at a mutually agreeable time," i.e., also agreeable to Omega. . Subsurface has now promised to make the samples available at what appears to be a storage facility in Fargo, North Dakota on October 25, 2025. (Hertz decl. Exh. B). In short, although the production of the liner samples appears to be imminent, it has still not occurred, and it is currently uncertain whether the liner samples will be produced in a satisfactory manner.

Depending on how many samples Subsurface produces of the approximately 400 liners that Subsurface has installed since Subsurface was subpoenaed in February, Buergofol could be forced to file a motion for sanctions and for spoliation of evidence prior to the stay going into effect. Before a stay goes into effect, Buergofol must ensure that it receives a significant number of liner samples, each identified by Omega's liner serial number. And there must be samples from each of the liner diameters made by Omega, e.g., 8", 10", 12", 15", 18", 21", 24", 27", 30", 36", 42", 48", 54", 60", 66", 74". As a reason for granting a stay, Omega argues that Buergofol has not identified any Omega product that infringes the '269 Patent other than products using Buergofol's film. (Dkt. 247, 20:3-4) However, Buergofol has not yet received any samples of Omega liners of the largest diameters that are more likely to infringe the '269 Patent.

If Buergofol must wait for 18 months until the stay is lifted before determining what liner samples Subsurface has produced, then evidence of infringement will likely be lost. *See Telebrands Corp. v. Seasonal Specialties, LLC*, No. 17-cv-4161-WMW, 2018 WL 1027452, 2018 BL 60997, at *3 (D. Minn. Feb. 23, 2018) (In the context of a stay, "a party could be unduly prejudiced if a lengthy stay results in the erosion of evidence."); *Pinn, Inc. v. Apple, Inc.*, No. 19-cv-01805-DOC, 2020 WL 6064642, at *2 (C.D. Cal. Aug. 27, 2020) (evidence may be lost during a stay for an IPR). In addition, if a motion for sanctions is necessary, filing that motion now will likely motivate Omega and Subsurface to retain a sample of each Omega liner made during the stay. Omega argues that Buergofol will not be prejudiced by a stay because reasonable royalty damages will continue to accrue during the stay. (Dkt. 247, 19:22-20:2) However, if after the stay is lifted Buergofol does not obtain a sample of each liner made during the stay (because

neither Omega nor Subsurface retained a sample of each liner), then Buergofol might not be able to recover a reasonable royalty on all infringing liners due to lack of evidence.

## IV. CONCLUSION

There is no explanation for Omega's demand for an immediate stay after waiting more than eleven months to file its IPR petitions other than tactical gamesmanship. Omega's unjustified delay in filing its IPR petitions is a sufficient basis to postpone any stay going into effect until Buergofol has received the liner samples, where each liner sample is identified by Omega's liner serial number. Any stay pending the resolution of the two IPRs should not begin until the later of November 14, 2023, and the date by which Buergofol has received samples of at least a significant number of the approximately 400 Omega liners that Subsurface installed since it was subpoenaed and confirmed that there has been good faith compliance with the subpoena.

Dated this 24th day of October, 2023

           **DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.**

By /s/ Elizabeth S. Hertz
    Elizabeth S. Hertz
    P.O. Box 1030
    206 West 14th Street
    Sioux Falls, SD 57101-1030
    Phone (605) 357-1263
    Fax (605) 335-3639
    Email ehertz@dehs.com

    Attorneys for Plaintiff Buergofol

**IMPERIUM PATENT WORKS LLP**
Darien K. Wallace
T. Lester Wallace
P.O. Box 607
315 Ray Street
Pleasanton, CA 94566
Phone (925) 550-5067
Fax (925) 835-5804
Email darien@imperiumpw.com
      lester@imperiumpw.com

Attorneys for Plaintiff Buergofol
*Pro Hac Vice*