UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GmbH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | Case No. 4:22-cv-04112<br><br>**OMEGA'S REPLY BRIEF IN SUPPORT OF OMEGA'S MOTION TO STAY PENDING *INTER PARTES* REVIEWS** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. RESPONSE TO BUERGOFOL'S OPPOSITION BRIEF ................................... 2

    A. Factor 1: Buergofol Confirms Case Is Still in the Initial Stages. .................. 3

    B. Factor 2 (Buergofol Fails to Address): A Stay Will Simplify Issues. ............. 4

    C. Factor 3: No Undue Prejudice or Tactical Disadvantage to Buergofol. ......... 4

    D. Factor 4 (Buergofol Fails to Address): Stay Will Reduce Burden. ............... 7

III. BUERGOFOL'S IRRELEVANT ARGUMENTS ............................................... 7

    A. Buergofol Falsely Claims Omega Has Not Produced Sample Liners............. 7

    B. Buergofol's Argument That It Needs to Know What Liners Infringe. .......... 8

    C. Buergofol's Allegation of Timing of IPR Petitions and Motion to Stay. ...... 10

    D. Buergofol's Continued *Ad Hominem* Attacks Against Omega's Counsel. ...... 11

IV. CONCLUSION ................................................................................................. 12

## I. INTRODUCTION

Buergofol, in its opposition to Omega's Motion to Stay Pending *Inter Partes* Reviews (Dkt. 246), does not oppose staying this litigation during the pendency of Omega's petitions for *Inter Partes* Review ("IPR") of the two patents-in-suit. Buergofol's opposition addresses only the short-term timing of the Court's issuance of the stay. With both parties in agreement, the Court therefore should immediately stay this action until resolution of the IPR process.

Buergofol's opposition, without justification, requests the Court to wait to issue the stay order until the later of (a) the apparently random date of November 14, 2023; or (b) the date Buergofol receives samples of liners from Subsurface. (Dkt. 265, p. 7.) Buergofol does not inform the Court or Omega of the significance of the November 14, 2023, date.

Buergofol's main argument for delaying the stay a few weeks appears to be based solely upon the false premise that Buergofol needs to first inspect and obtain samples of the UV CIPP liners in the possession of Subsurface before the stay issues. However, on October 25, 2023, Buergofol did fully inspect the sample liners in the possession of Subsurface, and Subsurface agreed that Buergofol can return to obtain a portion of each sample for testing. Regardless, there will be no benefit to Buergofol to do testing of the Subsurface sample liners during the pending IPRs. Furthermore, if Omega succeeds with the IPRs of the patents-in-suit, Buergofol will have no grounds to continue seeking samples of Omega's liners from Omega or its customers.

The purpose of an immediate stay is to alleviate the burden on the parties, the Court, and third parties like Subsurface pending the IPRs. Therefore, this lawsuit should be immediately stayed until the USPTO renders a final decision on Omega's IPRs concerning the patents-in-suit.

## II.     RESPONSE TO BUERGOFOL'S OPPOSITION BRIEF

Omega's original brief discussed the three factors this Court uses when considering a motion to stay litigation pending IPR proceedings:

> (1) whether discovery is complete and a trial date has been set; (2) whether a stay of litigation will simplify the issues in question and facilitate the trial of the case; and (3) whether a stay would unduly prejudice the non-moving party or would present a clear tactical disadvantage for that party.

(Dkt. 247, p. 17); *see Hansen Mfg. Corp. v. Enduro Systems, Inc.*, 2012 WL 381238, *2 (D. S.D. Feb. 6, 2012). As also discussed in Omega's original brief, some courts consider a separate fourth factor or consider it as part of the first factor: "(4) whether a stay will reduce the burden of litigation on the parties and on the court." (Dkt. 247, p. 17); *see eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo. 2007).

Buergofol completely ignores the second and fourth factors. Regarding the first factor, Buergofol seems to misunderstand that any outstanding discovery is irrelevant to the stage of the case. As to the third factor, Buergofol fails to show any undue prejudice or tactical disadvantage. In the end, as discussed below, Buergofol's opposition does not adequately address the relevant factors to provide any reason for the Court to delay the stay.

### A. Factor 1: Buergofol Confirms Case Is Still in the Initial Stages.

Buergofol argues in Section III.A. that "the parties have completed substantial discovery" but paradoxically complains in the same section about the insufficiency of their discovery to "develop an initial estimate of the value of this case." (Dkt. 265, 6:24-25, 7:15-18.) This contradictory stance is irreconcilable.

Moreover, Buergofol misunderstands the first factor. Under the first factor, the Court considers the stage in the litigation at which the IPRs were requested, including whether discovery is complete and whether a trial date has been set. *Hansen Mfg. Corp.*, 2012 WL 381238, at *2. Buergofol's complaints about outstanding discovery related to a third-party customer are irrelevant to the first factor. Omega also has substantial outstanding discovery directed to Buergofol, which Buergofol has refused to produce, even defying the Court's prior discovery orders. (*See, e.g.,* Dkt. 261, Omega's Motion for Sanctions Against Buergofol for Failure to Comply with the Discovery Orders Entered by Judge Duffy.) Buergofol's argument about Subsurface's sample liners is not pertinent to the first factor and should be disregarded.

Omega also notes that the Court recently granted a ninety-day extension of all deadlines, to which the parties agreed via a joint motion filed on October 24, 2023. (Dkt. 267.) Buergofol's infringement contentions are now not due until January 22, 2024. The USPTO will issue a determination of institution of the IPRs no later than March 22, 2024, for the '882 Patent and no later than March 26, 2024, for the '269 Patent. 35 U.S.C. § 314(b).

Hence, the USPTO will be making its decision to institute IPRs just two months later. Staying the case now makes sense to save both the parties and the Court time and money.

Buergofol provides no credible argument in support of delaying the stay of the case based on the first factor. Because the parties are still in the initial stages of litigation, and considering the recent 90-day extension of time (Dkt. 267), the first factor strongly supports an immediate stay.

      **B.**    **Factor 2 (Buergofol Fails to Address): A Stay Will Simplify Issues.**

Buergofol fails to address the second factor, *i.e.*, whether a stay of litigation will simplify the issues in question and facilitate the trial of the case. As discussed in Section III.B.2. of Omega's original brief, the second factor weighs strongly in favor of granting the stay. (Dkt. 247, pp. 19-21.)

      **C.**    **Factor 3: No Undue Prejudice or Tactical Disadvantage to Buergofol.**

Buergofol argues that, because Omega did not file the petitions for IPRs until close to the one-year deadline, the timing of the petitions somehow weighs against immediately staying the lawsuit. However, Buergofol does not cite any legal authority to support its position. The case law confirms that as long as the IPR petitions are timely filed before the one-year deadline – which Buergofol admits – there is no undue prejudice or tactical disadvantage to the opposing party. *See Speir Technologies, LTD v. Apple, Inc.*, 2023 WL 2714931, at *2 (N.D. Cal. March 30, 2020).

Furthermore, on July 17, 2023, Omega informed Buergofol that if the case was not settled that Omega would be (a) filing the IPRs and (b) seeking an immediate stay of the lawsuit. (Ex. N.) Buergofol never responded to this letter. Buergofol's argument that Omega intentionally timed the IPRs and the motion to stay to prevent them from inspecting Omega liners in Subsurface's possession is not credible.

Buergofol falsely states that it has "*not yet received any samples of Omega liners of the largest diameters that are [allegedly] more likely to infringe the '269 Patent.*" (Dkt. 265, 6:10-11 (emphasis added).) First, Buergofol provides no support for its assertion that liners having larger diameters are "more likely to infringe the '269 Patent." Second, Omega has already produced samples of Omega's 30-inch, 33-inch, 36-inch, 54-inch, and 60-inch inner film, which includes Omega's "largest diameters." (Dkt. 61-3, p. 2; Ex. L.) Acquiring additional samples of Omega's largest diameters of inner film is <u>not</u> going to give Buergofol any new evidence it does not already have. Regardless, Buergofol already maintains that <u>all</u> of Omega's liners infringe at least the '882 Patent. (Dkt. 160-2, 5:25-26.)

Buergofol further argues that if it waits eighteen months until the stay is lifted to receive the Subsurface samples, the samples will somehow be "lost" and cites two cases that do not support its argument. Buergofol's opposition includes language quoted from *Telebrands Corp. v. Seasonal Specialties, LLC*, 2018 WL 1027452 (D. Minn. Feb. 23, 2018), but fails to provide the Court with the entire relevant portion of the opinion that indicates that the type of evidence at risk of "erosion" during a stay is "*witness memories of significant facts.*" *Id.*, at *3

(emphasis added). Similarly, Buergofol cites *Pinn, Inc. v. Apple, Inc.*, 2020 WL 6064642 (C.D. Cal. Aug. 27, 2020), but again omits the portion of the opinion that clarifies that the Court there was concerned that "*witnesses* may become available (sic), their *memories* may fade, and evidence may be lost." *Id.*, at *2 (emphasis added). The only concern Buergofol expresses regarding potentially "lost" evidence is the Subsurface samples, and it does not provide reason to believe that any such risk exists. In any case, on October 25, 2023, Buergofol inspected the approximately 150 Omega liners in possession of Subsurface, took pictures, and documented the sample liners.

Buergofol further alleges that it may have to file a motion for sanctions or spoliation of evidence before the stay goes into effect. Buergofol made that argument before inspecting the liners at Subsurface and did so without any grounds even raising the specter of spoliation.

Buergofol once again makes *ad hominem* attacks on Omega's counsel baselessly alleging obstruction of Buergofol's inspection of the Subsurface sample liners. Buergofol's claims are not credible as demonstrated by a simple reading of Buergofol's own email exhibits that show Omega's cooperation and efforts to coordinate the inspection. (Dkts. 266-1, 266-2; *See also infra* Section II.D.)

Under the third factor, Buergofol will not be unduly prejudiced because (a) Buergofol has admitted Omega is not a competitor, (b) Buergofol is only seeking damages in the form of a reasonable royalty, (c) Buergofol has not identified any product currently manufactured by Omega that it alleges infringes the '269 Patent, (d) Buergofol delayed filing suit against

Omega and did not seek an injunction, and (e) Buergofol will also conserve resources with a stay.

Because there is no risk of undue prejudice or tactical disadvantage to Buergofol, the third factor weighs strongly in favor of granting the stay.

### D.   Factor 4 (Buergofol Fails to Address): Stay Will Reduce Burden.

As with the second factor, Buergofol fails to address the fourth factor considered by some courts, *i.e.*, whether a stay will reduce the burden of litigation on the parties and on the court. As discussed in Section III.B.4. of Omega's original brief, the fourth factor weighs strongly in favor of granting the stay. (Dkt. 247, pp. 21-22.)

## III.   BUERGOFOL'S IRRELEVANT ARGUMENTS

Buergofol makes a number of irrelevant arguments that are either untrue or unsupported by the record. Although the arguments have no bearing on the propriety of granting Omega's motion to stay, Omega feels compelled to address Buergofol's unfounded statements to maintain an accurate record.

### A.   Buergofol Falsely Claims Omega Has Not Produced Sample Liners.

Buergofol states that "*it is outrageous that more than a year into the case, Omega has still not produced samples of its liners*." (Dkt. 265, 4:18-19 (emphasis added).) This statement is both misleading and false.

In December 2022, Omega produced numerous samples of its inner and outer film, which is all that Buergofol requested in discovery until recently. (Dkt. 61-3, p. 2.) On September 14, 2023, over one month before Buergofol filed its opposition brief, Omega

7

produced both a representative dry liner sample and one representative wet liner sample, but still Buergofol asserts that Omega has not produced sample liners. (Ex. M.)

### B. Buergofol's Argument That It Needs to Know What Liners Infringe.

Buergofol argues that it "*should not be forced to incur the cost of two IPRs over the next 18 months without being permitted to determine how many of the approximately two thousand liners that Omega has produced so far infringe at least one of the patents-in-suit.*" (Dkt. 265, 1:20-23 (emphasis added).) Buergofol's allegation does not align with Buergofol's prior contradictory statements.

First, Buergofol has already stated in discovery responses that all "OMEGA LINERS" are infringing at least one of the patents-in-suit. (Dkt. 160-2, 5:25-26) ("*all* instances of the OMEGA LINER product fall within the literal scope of claim 1 of the '882 Patent")). Buergofol has even informed the Court that all of Omega's products are infringing at least one of the patents-in-suit. (Dkt. 66, 12:6-24 to 13:1-10.)

Second, Buergofol chose to continue this lawsuit despite being repeatedly informed by Omega of the invalidity of the patents-in-suit. (Dkt. 256-1 to 256-7.) In addition, on July 18, 2023, Omega informed Buergofol that it intended to file IPRs at the USPTO against both of the patents-in-suit if Buergofol did not dismiss the lawsuit – and Buergofol never responded to the letter. (Ex. N.)

8

Third, Buergofol received a significant number of samples of Omega's liners before and after filing the lawsuit, which it has tested for infringement as shown by the timeline below:

- **2017-2018 (Buergofol's Film Sold to Omega):** Buergofol claims that all of the inner film sold by Buergofol to Omega from 2017 to 2018 infringes the patents-in-suit. (Dkt. 160-2, 3:24-25; 9:26-27 – 10:1-4.)

- **March 2021 (First Omega Liner Sample):** Buergofol received a sample of Omega's liner from Mark Livesay. (Dkt. 61-2, p. 5.)

- **January 31, 2022 (Second Omega Liner Sample):** Buergofol received a sample of Omega's liner from John Williamson, Omega's former employee. (Dkt. 61-2, p. 5.)

- **December 23, 2022 (Omega's 16 Film Samples):** Omega produced to Buergofol sixteen samples of inner and outer film used by Omega to manufacture Omega's liners. (Dkt. 61-3, p. 2.)

- **August 31, 2023 (Omega's 5 Additional Film Samples):** Omega produced five more representative samples of film from each of Omega's three manufacturers (Buergofol, Viaflex and Sudpack). (Ex. L.)

- **September 14, 2023 (Omega's Dry Liner and Wet Liner Samples):** Omega produced one representative dry liner sample and one representative wet liner sample. (Ex. M.)

- **October 25, 2023 (Subsurface Inspection):** Buergofol inspected the approximately 150 sample Omega liners possessed by Subsurface.

Buergofol has all of the samples and information it requires to determine which of Omega's liners allegedly infringe at least one of the patents-in-suit. In fact, Buergofol has previously claimed a number of times that <u>all</u> of Omega's liners infringe at least one of the patents-in-suit, acknowledging that there is no rational basis for delaying the staying of this lawsuit.

Finally, the primary objective of staying a case is to avert undue costs and burdens on the Court, the involved parties, and third parties like Subsurface while the USPTO determines if the patents-in-suit are invalid. Buergofol's claim that it must impose a further burden on third-party Subsurface, purportedly to ascertain which of Omega's liners infringe, is in conflict with Buergofol's earlier statements made during discovery and to the Court that <u>all</u> of Omega's liners infringe at least one of the patents-in-suit.

Buergofol's argument that the stay should be delayed so Buergofol can further determine infringement is in contradiction to its previous statements. Buergofol has also not provided any legal authority to support its argument. Buergofol's argument should be disregarded by the Court.

  **C.** **Buergofol's Allegation of Timing of IPR Petitions and Motion to Stay.**

Buergofol incorrectly alleges that "*the timing of [Omega's] IPR petitions and the motion for a stay is intended to prevent Buergofol from obtaining all of the requested samples of Omega's infringing*

10

*cured-in-place-pipe (CIPP) liners*." (Dkt. 265, 1:7-9 (emphasis added).) Buergofol already has in its possession numerous samples of Omega's liners as discussed previously. *See supra* Sections II.A. – II.B. The samples are representative of all the film that Omega uses in its liners. Even in the absence of a stay, it is difficult to believe that Buergofol requires any further samples of Omega film or liner to complete its infringement analysis. Buergofol's baseless argument should not be considered by the Court.

### D. Buergofol's Continued *Ad Hominem* Attacks Against Omega's Counsel.

Buergofol continues its *ad hominem* attacks against Omega's counsel, Michael Neustel, despite Omega already filing a motion asking the Court to address the unprofessional conduct. (*See* Dkt. 213.) For example, Buergofol falsely alleges that "Omega's attorney, Michael Neustel, has obstructed the production of the samples and prevented Buergofol's counsel from picking up the samples from Subsurface." (Dkt. 265, 1:15-16.)

The Court, however, can readily see from the email communications Buergofol submitted that nothing in Mr. Neustel's communication obstructed or prevented Buergofol from inspecting the sample liners possessed by Subsurface. In fact, on October 25, 2023, Buergofol's counsel inspected all of the Subsurface sample liners in Fargo, North Dakota.

Buergofol's continued attacks against Mr. Neustel should not be considered by the Court.

11

## IV.     CONCLUSION

Omega respectfully requests that the Court immediately stay this case until resolution of the IPR process, with the parties to advise the Court within seven days of: (1) any institution decision by the USPTO; (2) any final written decision by the USPTO; and (3) any notice of appeal therefrom.

Dated this 27th day of October, 2023.

DENEVAN FALON JOYCE PROF. LLC

*/s/ Meghann M. Joyce*
BY: Meghann M. Joyce
Shannon R. Falon
100 S. Dakota Avenue, Second Floor
Sioux Falls, SD 57104
Telephone:  605.219.9465
Email:    meghann@denevanfalon.com
          shannon@denevanfalon.com

Michael S. Neustel *(admitted pro hac vice)*
Michelle G. Breit *(admitted pro hac vice)*
Monte M. Bond *(admitted pro hac vice)*
NEUSTEL LAW OFFICES, LTD
2534 South University Drive, Suite 4
Fargo, ND 58103
Telephone: 701.281.8822
Email:   michael@neustel.com
         michelle@neustel.com
         monte@neustel.com

*Attorneys for Omega Liner Company, Inc.*
