UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>　　　　Plaintiff and<br><br>　　　　Counter Defendant,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>　　　　Defendant and<br><br>　　　　Counter Claimant. | 4:22-CV-04112-KES<br><br>ORDER GRANTING IN PART AND DENYING IN PART OMEGA'S MOTION FOR ATTORNEY'S FEES<br><br>DOCKET NO. 201 |

**INTRODUCTION**

This matter is before the court on the first amended complaint of plaintiff Buergofol GMBH ("Buergofol") alleging that defendant Omega Liner Company, Inc. ("Omega") violated two patents owned by plaintiff regarding pipe liners. Docket No. 163.

Omega has counterclaimed seeking the court's declaration that the patents are invalid, unenforceable, and that Omega has not infringed them. Docket No. 179. Omega also asserts counterclaims for fraud, negligent misrepresentation, and breach of contract under the United Nations Convention on Contracts Article 42. Id. Jurisdiction is premised on the presence of a federal question. 28 U.S.C. § 1331.

Now pending is Omega's request for attorney's fees. Docket Nos. 164 & 201. The request was referred to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A). See Docket No. 302. Buergofol opposes the motion. Docket No. 220.

## FACTS

Omega served Buergofol with interrogatory number 4 and request for production 13, both asking for discovery regarding "prior art" applicable to the two patents in suit and using a somewhat broad definition. Buergofol objected on the grounds that the request was "absurdly" overbroad, unduly burdensome, and unanswerable and refused to produce any discovery in response to either request. Docket Nos. 221-1, p. 3 & 221-2, p. 4

Omega's counsel, Michael Neustel, emailed Buergofol's counsel, Darien Wallace, addressing some current discovery issues that Buergofol had with Omega's discovery responses and also discussing Omega's issues with Buergofol's responses to the prior art requests. Docket No. 64-6. Mr. Neustel clarified that Omega defined "prior art" as the definition given that term under 35 U.S.C. §§ 102 and 103. Id.

Mr. Wallace responded via email objecting to discussing both Buergofol's discovery dispute with Omega and Omega's discovery dispute with Buergofol. Id.

Mr. Neustel responded by suggesting several dates on which he was available to meet with Mr. Wallace to discuss the pending discovery disputes of both parties. Id. Mr. Wallace responded again insisting that a meet-and-confer

2

conference be had with regard to *only* Buergofol's dispute with Omega and refusing to discuss both disputes in a single meeting.  Id.

Thereafter, Ms. Briet wrote a detailed email to Mr. Wallace.  Docket No. 64-7.  In that email Ms. Briet provided Mr. Wallace with a very detailed definition of "prior art" which Omega was adopting in its two discovery requests.  Id.  Specifically, with citation to authority, Ms. Briet stated Omega's definition of "prior art" was "prior art within the fields identified in the patents-in-suit and any other fields to which a person of ordinary skill in the field would look to solve the problem addressed by the patents-in-suit."  Id.

Ms. Briet went on to identify the fields of invention for each patent.  Id.  For the '269 patent, she stated (citing to the language of the patent itself) that the field of invention was "relating to multi-layer film that is permeable to liquid and that is at least to some extent permeable to UV radiation."  Id.  For the '882 patent, again with reference to the patent itself, Ms. Briet stated the field of invention was "a tubular film with one or more layers."  Id.

Ms. Briet also provided a definition of "other fields to which a person of ordinary skill . . . would look to solve the problem addressed by the patents-in-suit":

> Other fields of application of the tubular film according to the invention pertain to its use as packaging material for the so-called non-food sector or for food, especially as lid and/or bottom film, as shrink wrap or skin film, as film for the so-called bag-in-box packaging or as tubular bag.  Additionally, the tubular film according to the invention can be used as release or release film against sticky substances and also as surface-protecting film or for protective suits, as covering film, agricultural film or as dirt-resistant tubular film in the construction industry.

Id. With this more detailed and refined definition of "prior art," Ms. Briet urged Buergofol to produce discovery responsive to the definition. Id. She also suggested dates for a meet-and-confer if Buergofol continued to have objections to the more-restrictive discovery request outlined by Omega. Id. Ms. Briet invited Mr. Wallace to suggest dates of his own for a meet-and-confer if the dates Ms. Briet suggested did not work for Mr. Wallace. Id.

Mr. T. Lester Wallace, another lawyer for Buergofol, responded to Ms. Briet's email. Docket No. 69-1. In it, Lester refused to accept Omega's revised definition of "prior art" and insisted that "Buergofol only has an obligation to respond or object to interrogatories as served." Id. Because, in Lester's estimation, Ms. Briet's email "does nothing to resolve the major problems with the interrogatory that ma[de] it impossible to answer," Buergofol stood by its initial objections that the original discovery requests were "ridiculously overbroad." Id.

Omega filed a motion to compel Buergofol to produce discovery in response to these two discovery requests. Docket No. 62. The district court granted that motion, adopting the definition of "prior art" as narrowed and specified by Omega in Ms. Briet's January 18, 2023, email. Docket No. 164. The court noted that, even if Buergofol believed the original requests were overbroad, Buergofol nonetheless had a duty to provide discovery that was responsive and was within the definition of "prior art" deemed reasonable by Buergofol, especially because Buergofol admitted that "prior art" was generally a permissive subject of discovery in a patent infringement case such as this.

4

Id. The court rejected Buergofol's assertion that Omega's subsequently narrowed definition of "prior art" were without effect unless such definitions were contained in a new discovery request propounded and served by Omega on Buergofol. Id. The court ordered that Buergofol must pay Omega's attorney's fees incurred in bringing the motion to compel. Id. It is this request for attorney's fees that is now before this court.

Following the filing of the district court's opinion resolving the motion to compel, Buergofol filed a motion for "clarification" of the court's order. Docket No. 165. When the district court resolved Buergofol's motion for clarification, the court made no mention of attorney's fees being granted to Omega as a consequence of having to respond to Buergofol's further motion. See Docket No. 181. When Omega responded to Buergofol's motion for clarification, their response did not contain a request for an award of attorney's fees in connection with responding to the motion. See Docket No. 166.

## DISCUSSION

### A.   Lodestar Method

The district court has already determined that attorney's fees in favor of Omega are warranted in this case (Docket No. 164), so the only question before this magistrate judge is the amount of the award. It is the party requesting an award of attorney's fees that bears the burden of establishing a factual basis for the award of fees. See Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 246 (8th Cir. 1996).

The appropriate amount of attorney's fees is highly fact-specific to the case. There are two methods of determining attorney's fees: the lodestar method and the "percentage of the benefit" method. See H.J. Inc. v. Flygt Corp., 925 F.2d 257, 259-60 (8th Cir. 1991); Comerica Mortg. Corp., 83 F.3d at 246; Walitalo v. Iacocca, 968 F.2d 741, 747-48 (8th Cir. 1992). The court has discretion to decide which method of determining fees is appropriate. Comerica Mortg. Corp., 83 F.3d at 246. Omega addresses only the lodestar method. Docket No. 201. Because this matter concerns only an award of fees in an intermediate matter rather than an end-of-case award to a prevailing party, the court chooses to apply the lodestar method.

The lodestar is figured by multiplying the number of hours reasonably expended by the reasonable hourly rates. Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005); Finley v. Hartford Life & Accident Ins. Co., 249 F.R.D. 329, 332-33 (N.D. Cal. Feb. 22, 2008); Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd., 248 F.R.D. 64, 68 (D.D.C. 2008); Creative Resources Group of New Jersey, Inc. v. Creative Resources Group, Inc., 212 F.R.D. 94, 103 (E.D.N.Y. 2002); Kayhill v. Unified Gov't. of Wyandotte County, 197 F.R.D. 454, 459 (D. Kan. 2000); and Trbovich v. Ritz-Carlton Hotel Co., 166 F.R.D. 30, 32 (E.D. Mo. 1996). The burden is on the moving party to prove that the request for attorneys' fees is reasonable. Tequila Centinela, S.A. de C.V., 248 F.R.D. at 68; Creative Resources Group, Inc., 212 F.R.D. at 103; Kayhill, 197 F.R.D. at 459.

Once the lodestar is calculated, there are twelve factors that are relevant in considering whether that figure should be adjusted up or down: (1) the time

and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Hensley v. Eckerhart, 461 U.S. 424, 430 n.3, 434 (1983) (citing the Model Code of Professional Responsibility, DR 2-106(B) (Am. Bar Ass'n 1969), now Model Rules of Prof'l Conduct r. 1.5(a) (Am. Bar Ass'n 1983)). "[T]he most critical factor is the degree of success obtained." Id. at 436.

**B.    Reasonable Hourly Rate**

The reasonable hourly rate is usually the ordinary rate for similar work in the community where the case is being litigated—here, South Dakota. Tequila Centinela, S.A. de C.V., 248 F.R.D. at 68 (citing Laffy v. Northwest Airlines, Inc., 746 F.2d 4, 16 (D.C. Cir. 1984) (hourly rate must be sufficient to attract competent counsel, but not so excessive as to produce a windfall, and generally must be in line with rates charged by other attorneys of comparable skill, reputation, and ability within the community.)  Sometimes, however, out-of-state counsel will be entitled to a rate based on the prevailing standards in their community rather than the forum community.  Such a departure is sometimes recognized where the case requires specialized knowledge and

7

expertise, and such knowledge and expertise cannot be found in the forum community or where the case is unpopular and local lawyers are unwilling to undertake representation in the case. Hensley, 461 U.S. at 430 n.3.

In this case, Omega has submitted a request for an award of attorney's fees for their local lawyer, Meghann Joyce, and for two attorneys in the Neustel Law Offices, LTD firm in Fargo, North Dakota: Michael Neustel and Michelle Breit. As to Mr. Neustel and Ms. Briet, Omega relies on a survey of attorney billing rates nationally which was published by the American Intellectual Property Law Association ("AIPLA") in 2021. See, e.g., Docket No. 202-2.

Mr. Neustel has 26 years of experience as a patent lawyer and has an electrical engineering background in addition to a J.D. See Docket No. 202. He customarily charges his clients $650 per hour, which is the rate at which he seeks reimbursement herein. Id. The AIPLA survey establishes that the national average hourly rate for attorneys who are similarly credentialed and have similar years of experience to Mr. Neustel is $603. Id. The AIPLA survey also includes regional averages. In Minneapolis, Minnesota, the average hourly rate for such attorneys is $530; for other locations in the central United States, the average hourly rate is $453. See Docket No. 202-2 at p. 3. Mr. Neustel is located in Fargo, North Dakota. Mr. Neustel asserts the AIPLA survey includes not only patent lawyers, but also other types of intellectual property ("IP") lawyers such as trademark and copyright attorneys, whose hourly rates are usually less than patent lawyers. Id.

The court finds the $650 requested by Mr. Neustel is high. The average rate for IP lawyers in the central United States is $453. Even crediting Mr. Neustel's point that the AIPLA survey includes IP lawyers who charge lower hourly rates than patent lawyers, $650 per hour is extremely high for cities like Fargo (where Mr. Neustel's firm is located) and Sioux Falls (where the litigation is venued) which are isolated geographically, and which have populations of less than 200,000 persons. The court finds $500 per hour is a reasonable hourly rate for Mr. Neustel, fully crediting his specialization, years of litigation experience, and education.

Buergofol argues that Mr. Neustel's hourly rate (and Ms. Briet's) should be the prevailing rate for attorneys in Sioux Falls generally. The court rejects that suggestion because patent litigation is a highly specialized practice area and there are few patent lawyers in Sioux Falls.

Ms. Briet's undergraduate degree is a B.A. Docket No. 203. Although she studied computer engineering, she has no degree in that area. Id. She obtained her J.D. in 1987 and has been practicing law for 36 years but has not specialized in patent matters as Mr. Neustel has. Id. Instead, she has been involved in many different types of IP cases (including patent disputes) as well as business disputes. Id. She has her own law firm but is also of counsel in Mr. Neustel's firm. Id. She normally charges clients $600 per hour in patent disputes but requests a rate of $500 per hour in connection with this motion to compel. Id.

9

According to the AIPLA survey, IP attorneys with Ms. Briet's years of experience command an average hourly rate of $577 nationally, and a rate of $453 in the central United States. Docket No. 203-2 at p. 3. Unlike Mr. Neustel, she has no engineering degree, and she does not litigate exclusively in patent matters, but in IP law generally. Therefore, none of the upward adjustments Mr. Neustel urged apply in Ms. Briet's case. The court finds an hourly rate of $453 is reasonable for Ms. Neustel.

As to Ms. Joyce, Omega's local South Dakota counsel, Omega offers only what Ms. Joyce herself customarily charges for hourly representation ($225 to $325). Docket No. 204. Ms. Joyce is requesting a rate of $325 herein. No evidence is provided as to whether the rate Ms. Joyce requests is comparable to other South Dakota lawyers' fees.

Ms. Joyce graduated from the University of South Dakota Law School in 2009. She thus had 12 years' experience at the time the motion for attorney's fees was submitted to the court. Omega states that Ms. Joyce billed Omega $325 per hour for her time, which is at the top end of Ms. Joyce's hourly billing rate. Omega does not attempt to inform the court what prevailing attorneys fee rates are for commercial litigation in South Dakota. However, the court may determine those rates based on its own knowledge of prevailing rates here. See Creative Resources Group, Inc., 212 F.R.D. at 103-104 (holding that "it is within the judge's discretion to determine reasonable fees based on his or her knowledge of prevailing community rates").

Experienced, partner-level trial counsel in this community have recently received awards of attorney's fees of $300.00 per hour where the attorneys had several decades of experience and one had specialty experience litigating First Amendment cases. Blue State Refugees v. Noem, 3:21-cv-03024-RAL, Docket No. 41 at pp. 5-6 (D.S.D. Apr. 4, 2022). An associate lawyer in the same case with two years of experience and a former federal clerkship had their hourly fee reduced to $200 per hour. Id.

In a case where out-of-state counsel were associated with local counsel, local South Dakota counsel were awarded $260 per hour for associate-level work and $350 per hour for partner-level work. See E & I Glob. Energy Servs., Inc. v. Liberty Mut. Ins. Co., 4:20-cv-04033, Docket No. 134 at p. 6 (D.S.D. Dec. 20, 2023). An hourly rate of $240 was approved for local counsel in an interpleader action where the local counsel was a partner at his law firm and had 22 years of litigation experience. New York Life Ins. Co. v. Torrence, 4:21-cv-04079-RAL, Docket No. 47 at p. 13 (D.S.D. Mar. 22, 2022).

Here, Ms. Joyce is local counsel with 12 years' experience. Based upon the above awards of attorney's fees for similarly situated South Dakota lawyers, the court finds an hourly rate of $250 per hour is reasonable for Ms. Joyce.

**D.     Reasonable Hours**

The "most critical factor" in determining what constitutes a reasonable award of attorney's fees is the degree of plaintiff's success. El-Tabech v. Clarke, 616 F.3d 834, 843 (8th Cir. 2010) (quoting Warnock v. Archer, 397 F.3d 1024, 1026 (8th Cir. 2005)). Courts are charged with excluding from

11

awards of attorney's fees hours that were not "reasonably expended." Hensley, 461 U.S. at 434. "Cases may be overstaffed, and the skill and experience of lawyers vary widely." Id. In determining the reasonable hours expended by Omega's lawyers in this matter, the court turns to the itemized billing statement provided by Omega in support of its motion for attorney's fees. See, e.g., Docket No. 203-3.

The first thing that stands out in reviewing that document is that Omega is claiming 11.9 hours and $6,962.50 in fees for responding to Buergofol's motion for clarification. Id. at p. 5. As indicated above in the FACTS section of this opinion, the district court never ordered that Omega was entitled to attorney's fees in responding to Buergofol's motion for clarification. See Docket No. 181. When Omega responded to Buergofol's motion for clarification, their pleading did not include any request for attorney's fees for having to respond to the motion for clarification. Docket No. 166. The district court ordered no award of attorney's fees of its own volition. Docket No. 181. Therefore, the court disallows Omega's request for $6,962.50 in fees in connection with Buergofol's motion for clarification.

Where three lawyers are representing a client, it is incumbent to allocate the work according to the skill sets of each lawyer. After Omega had refined and clarified its definition of "prior art" during the good faith effort to resolve this discovery dispute, this was a garden-variety motion to compel. Buergofol admitted that Omega was entitled to discovery of prior art, but insisted (completely erroneously) that Omega was required to serve Buergofol with new

12

discovery requests containing the revised definition of "prior art." Buergofol also insisted (again, without any basis), that a meet-and-confer must be restricted to discussion of only one party's issues at a time.

It was Ms. Briet's expertise that was called upon to arrive at a more precise definition of "prior art" during the meet-and-confer process (see Docket No. 64-7). Once it fell to writing the motion to compel, that task was well within the competence of Ms. Briet or Ms. Joyce to write. Mr. Neustel, with the most expensive hourly rate of the three lawyers, should not have been called upon to do the lion's share of this work. Specialized knowledge of patent law was not required to address Buergofol's objections to the discovery—that Omega was required to re-serve new discovery requests incorporating their restricted definition of "prior art" and that it was improper for Omega to ask for a meet-and-confer on multiple discovery disputes at the same time.

Ms. Briet spent 16.1 hours preparing the initial brief and supporting declaration and Mr. Neustel spent 4.6 hours reviewing her work. Docket No. 203-3 at pp. 2-4. Ms. Joyce spent 2.5 hours reviewing and revising the others' work. Id. In general, this division of labor among the three lawyers appears reasonable.

For the reply brief however, Ms. Briet spent only 0.7 hours and Ms. Joyce spent 1.1 hours, while Mr. Neustel spent 13 hours. Id. No explanation for why the most expensive biller with the most specialized knowledge spent all this time on the reply brief when the issues were bread-and-butter interpretations of the Federal Rules of Civil Procedure. In its response in opposition, Buergofol

13

largely continued and elaborated on its same two objections before the motion to compel was filed: namely that if Omega wanted to narrow its definition of "prior art" it must serve new discovery requests and that Buergofol was under no obligation to meet and confer regarding this narrowed definition. See Docket no. 68 at pp. 11-20. These are issues Ms. Briet or Ms. Joyce could easily have addressed in the reply.

Furthermore, the court notes that the initial brief consisted of only 14 substantive pages (see Docket No. 63), and the reply brief consisted of only 6 substantive pages (see Docket No. 71), for a total of 20 pages of facts, law and analysis. Omega requests $21,000 for these two combined briefs. See Docket No. 203-3 at pp. 4-5. That works out to $1,050 in fees per page. That is simply not reasonable. Even if one kept the same hours billed and applied the reduced hourly rates the court arrived at in part B above, Omega's request would still be for $17,310.40 or $865 per page to produce.

Analyzing the hours spent instead of the cost-per-page further convinces the court that the time spent by Omega's lawyers on this motion to compel was unreasonable. The three lawyers spent a total of 38 hours on the initial and reply brief. At 20 substantive pages, that works out to 1.9 or nearly two hours of combined attorney time to craft each page. That analysis also is indicative that the hours billed are not reasonable given the issues presented. This court has previously found that a request for attorney's fees based on 1.8 hours of attorney time per page for briefs in support of a routine discovery motion was excessive. Hoffman v. MJC America, Ltd., 4:18-cv-04169-LLP-VLD, 2019 WL

6134886, at *2-3 (D.S.D. Nov. 19, 2019).  And the motion associated with this fee request involves essentially a single issue.  Thirty-eight hours of attorney time was approved in the Jim Hawk Truck-Trailers of Sioux Falls, Inc. case, but there were six or seven discrete issues that were briefed in that motion to compel.  Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc., 4:20-cv-04058-KES, 2023 WL 1825078, at *5-6 (D.S.D. Feb. 8, 2023).

In rendering decisions as to awards of attorney's fees for sanctions, the court is mindful that the purpose is to punish Buergofol for maintaining unjustifiable positions in discovery, not to create profit centers whereby Omega can finance its continuing litigation in the matter.  The court concludes that a reasonable attorney's fee award for Omega's motion to compel should be $10,000.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge hereby grants in part and denies in part Omega's request for attorney's fees [Docket No. 201].  Buergofol must pay Omega, on or before February 28, 2024, the sum of $10,000 in attorney's fees as sanctions pursuant to FED. R. CIV. P. 37 for forcing Omega to file a motion to compel Buergofol to produce discovery about prior art.

[this space intentionally left blank]

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 31st day of January, 2024.

BY THE COURT:

_Veronica L. Duffy_
VERONICA L. DUFFY
United States Magistrate Judge