UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>            Plaintiff, and<br><br>            Counter Defendant,<br><br>      vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>            Defendant. and<br><br>            Counter Claimant. | 4:22-CV-04112-KES<br><br><br>ORDER ON DOCKET 325 |

## INTRODUCTION

Omega Liner Company, Inc., pursuant to Federal Rules of Civil Procedure 37(b), 37(d), and 41(b) and 28 U.S.C. § 1927, moves the court "for an order granting sanctions against Buergofol GmbH and Buergofol's counsel . . . for failure to comply with this Court's discovery sanctions order on December 13, 2023 (Dkt. 303)." Docket No. 325 at p. 1. Buergofol opposes the motion and seeks attorney's fees to recoup the cost of opposition. Docket No. 331; see Fed. R. Civ. P. 37(a)(5)(B). The motion was referred to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A). Docket No. 327.

## PROCEDURAL HISTORY

On September 18, 2023, this court held a motion hearing in the instant case to resolve nine discovery matters referred by the district judge. Docket

Nos. 183 & 238.  This court thereafter issued nine corresponding orders.  See Docket Nos. 226–234.  Omega brought a motion for sanctions against Buergofol for failing to comply with the orders at Docket Nos. 233 & 234.  Docket No. 261.  This court granted the motion and ordered Buergofol's compliance.  See generally Buergofol GmbH v. Omega Liner Co., Inc., 4:22-CV-04112-KES, 2023 WL 8627758 (D.S.D. Dec. 13, 2023) (Buergofol II)[1] (Docket No. 303).  The alleged non-compliance with *that* order serves as the impetus for the instant matter.  Docket No. 325 at p. 1.

The specific discovery requests applicable to Docket No. 303 were Request for Production Nos. 6, 7, & 103 and Interrogatory Nos. 11 & 12.  See Buergofol II, 2023 WL 8627758, at *1–2.  The court will incorporate the procedural history of each request into the discussion.

## DISCUSSION

**A.    Request for Production Nos. 6 & 7**

### 1.    Procedural History up to and Including This Court's Order at Docket No. 303

Request for Production No. 6 seeks "[a]ll documents relating to or referring to the qualities, characteristics, specifications, capabilities, properties, composition, additives used in and/or layers of all inner foil made or offered for

---

[1] There are, as of the date of this order, about a dozen opinions adjudicating matters in the instant case.  The roman numerals used in short citations here should not be interpreted to represent an opinion's position within the entire Buergofol GmbH v. Omega Liner Co., Inc. chronology, but rather should be understood to denote the opinion's chronological standing with respect to other Buergofol opinions cited herein.

sale by BUERGOFOL prior to March 11, 2013." Docket No. 93-2 at pp. 7–8. Buergofol objected to this request on trade secret grounds, but also asserted that no such documents were retained due to Buergofol's two-year retention policy. Docket No. 93-2 at p. 8. However, Buergofol qualified that response by stating that it would produce such documents located "after a reasonable search." Id.

Request for Production No. 7 seeks "[a]ll documents relating to or referring to the qualities, characteristics, specifications, capabilities, properties, composition, additives used in and/or layers of all outer foil made or offered for sale by BUERGOFOL prior to March 11, 2013." Docket No. 93-2 at p. 9. Buergofol objected to this request on trade secret grounds, but also asserted that no such documents were retained due to Buergofol's two-year retention policy. Id.

Three months after these responses, Buergofol moved "for a protective order relieving Buergofol of any obligation to produce any documents responsive" to certain Omega requests—including Request for Production Nos. 6 & 7. Docket No. 72 at p. 1. Buergofol's purpose in making that motion was to protect trade secrets and avoid "unduly burdensome document production requests." Id.

As pertinent to Request for Production Nos. 6 & 7, Buergofol

"Alleinprokurist"[2] Franz Schleicher declared in his supporting affidavit:

> Buergofol's manufacturing documentation pertaining to its old
> CIPP film production, to the extent such documentation still exists,
> exists largely if not exclusively in paper form.  The old paper is not
> in computer-searchable form.  I believe that the relatively small
> amount of old documentation pertaining to the manufacture of
> older CIPP films that might remain would be mixed in with the
> vastly larger amount of irrelevant documentation pertaining
> primarily to food packaging films.

Docket No. 73, ¶ 8.

> Buergofol counsel, Darien Wallace, in his supporting affidavit, added:

> In my opinion, the only way to determine if a responsive document
> exists pertaining to "manufacturing specifications" and other trade
> secret technical information as requested by RFP Nos. 6-7 and 23-
> 24 would be for litigation counsel manually to go through all the
> old manufacturing paperwork in Germany, in a needle-in-the-
> haystack type search estimated to involve about 10 minutes to
> review each binder of production paperwork.  Buergofol stores its
> old manufacturing paperwork in two file rooms at its factory in
> Siegenburg.  The two file rooms are sufficiently large to hold about
> 1,000 binders of production paperwork.  Binders relating to lower
> production numbers are discarded to make room for binders
> containing new production paperwork.  It would require an
> estimated 167 hours of attorney time in Germany just to identify
> pieces of paper related to manufacturing CIPP film from among the
> production paperwork in the approximately 1,000 binders.
> Responsive papers would then have to be scanned, and in order to
> render the pages text searcheable difficult optical character
> recognition would have to be performed on the manufacturing
> sheets, which do not merely contain lines of text in paragraph
> form.  This process is estimated to cost about $50,000 of attorney
> time (billed at $300/hour), plus travel and expenses, plus the
> scanning to text-searchable form, for a total of about $65,000.

Docket No. 74, ¶ 9.

---

[2] Dr. Schleicher translates "alleinprokurist" to mean "sole officer with general
commercial power of representation."  Docket No. 73, ¶ 2.

On August 3, 2023, the district court denied Buergofol's motion for protective order due to Buergofol's failure "to meet and confer in good faith prior to [its] filing." Buergofol GmbH v. Omega Liner Company, Inc., 4:22-CV-04112-KES, 2023 WL 4980031, at *7 (D.S.D. Aug. 3, 2023) (Buergofol I) (Docket No. 180).

The next day, the district court referred to this court Omega's motion to compel. Docket No. 183.

On September 18, 2023, this court held an omnibus motion hearing to resolve multiple discovery matters, including the motion to compel concerning Request for Production Nos. 6 & 7. See generally Docket No. 238 (transcript of hearing). At this hearing, and in relation to Request for Production Nos. 6 & 7, Buergofol counsel Darien Wallace stated that "[t]here is no ERP system," and that no production documents "prior to 2018" were present in the rooms where Buergofol stores such paper documents. Id. at 140:7–21, 141:7–9. He also stated that there were no emails responsive. Id. at 145:5–10.

This court, at the hearing stated:

> Okay. So for 6 and 7, I'm going to order Buergofol to file revised answers under oath to the Request for Production making clear that you've searched; that you don't have any documents. Because I read your answers as you've given them, and to me it is ambiguous about whether there are documents or not documents. All these "I'm asserting this objection, but I'm asserting this objection but, but then we'll produce whatever we find," it leaves the person who made the request guessing what's out there, if anything. So I want you to tell them what you just told me in a revised answer, which is "We checked. We don't have any information prior to 2018. We have no emails prior to 2014. There is no ERP system."

Id. at 145:11–23.

5

Mr. Wallace replied "Okay."  Id. at 145:24.

This court also ordered "a document custodian or custodians deposition to take place within 30 days. . . . so that someone within Buergofol can explain to Omega what documents are kept, how they're kept, how long they're kept, [and] what's available."  Id. 168:7–17.

The court's oral orders were then memorialized in a text order docketed the same day.  Docket No. 234.

As to the court-ordered deposition, Omega's deposition notice remains the subject of an as-yet unresolved motion for protective order and to quash brought by Buergofol.  See Docket Nos. 254–256.

As to Request for Production Nos. 6 & 7 (along with other discovery matters), Omega brought a motion for sanctions for Buergofol's failure to comply with this court's orders given at the September 18 motion hearing. Docket No. 261.  See also Docket Nos. 262 & 284.  This court agreed with Omega's objection to Buergofol's use of the term "reasonably accessible" when qualifying responsive documents.  This court ordered Buergofol to respond to Request for Production Nos. 6 & 7 either stating "clearly and unequivocally" that documents responsive to the requests did not exist (as Buergofol had previously asserted at the motion hearing) or, if Buergofol believed ESI[3] existed which was not reasonably accessible, to file a response "setting forth the

---

[3] ESI is an acronym for "electronically stored information."  Best Buy Stores, L.P. v. Developers Diversified Realty Corp., 247 F.R.D. 567, 569 (D. Minn. 2007).

following information: (1) what ESI exists that Buergofol believes is 'reasonably inaccessible'; (2) describe why Buergofol believes the ESI is not reasonably accessible; and (3) state what the burden would be on Buergofol to search this ESI either in terms of hours of work or in terms of cost." Buergofol II, 2023 WL 8627758, at *4.

### 2. Whether Buergofol Complied with This Court's Order Regarding Request for Production Nos. 6 & 7

#### a. Buergofol's Post-Order Responses

Following this court's order, Buergofol served new responses to Request for Production Nos. 6 & 7 that, in pertinent part, stated "Buergofol has looked for documents responsive to RFP 6 [or 7] relating to the structure and composition of inner [or outer] foil by Buergofol prior to March 11, 2013, and did not find any such documents (other than the public documents from patent proceedings described below)." Docket No. 331-2 at pp. 2, 4.

In its brief accompanying the instant motion for sanctions, Omega objects to other features of Buergofol's response, including the fact that Buergofol's search of its "DS" system was limited to only "invoices, orders, shipping documents, or other commercial documents older than 2014." Docket No. 331 at p. 20 (citation omitted) (emphasis deleted).

#### b. The Objection to the Search of the DS System

In Buergofol II, this court ordered Buergofol to unequivocally state, as it had at the September 18 hearing, that the documents responsive to certain discovery requests, including Request for Production Nos. 6 & 7, did not exist—

7

if that was the case.  2023 WL 8627758, at *4.  In its subsequent supplemental

response, as pertaining to computer systems, Buergofol stated:

> Buergofol has no ERP system as Buergofol understands that term,
> but Buergofol has a "DS" system. . . . After a reasonable search in
> the currently used "DS" system, an obsolete predecessor system to
> the "DS" system, and all backup data for the "DS" system and the
> predecessor system, Buergofol found no invoices, orders, shipping
> documents, or other commercial documents older than 2014, and
> consequently no documents referring to the qualities,
> characteristics, specifications, capabilities, properties,
> composition, additives used in and/or layers of inner [or outer] foil
> made or offered for sale by Buergofol prior to March 11, 2013.

Docket No. 331-2 at pp. 2–4.

Omega objects to this response because its corresponding search was

limited to "commercial documents."  Docket No. 331 at p. 23.  Omega points

the court to Dr. Schleicher's declaration that Buergofol uses a

"Warenwirtschaftssystem (ERP System) that assists Buergofol in managing and

tracking incoming orders for Buergofol's UV CIPP films, *the manufacture of the*

*UV CIPP films,* and shipment information."  Id. (emphasis added); Docket No.

73, ¶ 6.  Because the exclusive focus of Buergofol's response was the search for

"commercial documents," Omega argues the response implies "Buergofol only

searched for a limited type of [documents]."  Docket No. 331 at p. 24.

Buergofol counters that it is only required to produce "documents" under the

plain language of Request for Production Nos. 6 & 7.  Docket No. 349 at p. 22.

Buergofol states that these requests are "not for 'data' or 'information.' "  Id. at

p. 23.  But that is incorrect.

"DOCUMENTS" is a defined term for Omega's discovery requests:

> "DOCUMENT" and "DOCUMENTS" mean all materials within the scope of Federal Rule of Civil Procedure 34 and all materials that constitute "writings" or "recordings" within the meaning of Rule 1001 of the Federal Rules of Evidence, including, but not limited to: the original and each nonidentical copy of any written, printed, typed, recorded, computerized, electronic, taped, graphic or other matter, in whatever form, whether different from the original by means of any notation made on such copies or otherwise, whether in final or draft, and including electronically stored information (such as electronically stored email, digital images, PDF documents, word processing documents, presentations, schematics, drawings, spreadsheets) and tangible things.

Docket No. 93-1 at pp. 3–4.

One definition of "material" is "[i]nformation, ideas, data, documents, or other things that are used in reports, books, films, studies, etc." *Material*, BLACK'S LAW DICTIONARY (11th ed. 2019). Because "tangible things" is designated separately from other concepts, a holistic reading of Omega's definition encompasses both tangible and intangible materials listed under Rule 34. See FED. R. CIV. P. 34(a)(1)(A)–(B). And that broad grouping includes "data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." FED. R. CIV. P. 34(a)(1)(A).

All that being said, both Request for Production Nos. 6 & 7 seek lower-case "documents" rather than capitalized "DOCUMENTS." Docket No. 93-2 at p. 8. So, some courts or adverse parties may interpret the term "documents" as "used in the vernacular, not in the defined sense." Cf. Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., 647 F. Supp. 3d 145, 199 (S.D.N.Y. 2022). But the difference is immaterial, because while "[m]ost traditionally . . . the term [documents] embraced any piece of paper with information on it[,] [t]oday the

term embraces any information stored on a computer, electronic storage device, or any other medium." *Document*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Buergofol's position that such information is not responsive renders its responses either evasive (to the extent no responsive information exists) or incomplete (to the extent responsive information exists). Either way, Buergofol's responses "must be treated" as a failure to respond. FED. R. CIV. P. 37(a)(4). And due to their ambiguity and potentially incomplete nature, they are not in compliance with this court's order. Buergofol II, 2023 WL 8627758, at *4.

## ORDER

Buergofol is ordered, within 30 days of the filing of this order, to supplement its responses to Requests for Production No. 6 & 7 by conducting a search for all responsive "DOCUMENTS" as defined above and providing new responses to RFP 6 & 7 that unequivocally tell Omega whether Buergofol found any responsive documents. If Buergofol found responsive "DOCUMENTS" it must produce copies of them or make them available for inspection to Omega at the same time the written response to the discovery requests is served.

**B.    Request for Production No. 103**

### 1.    Procedural History up to and Including This Court's Order at Docket No. 303

Request for Production No. 103 seeks "[a]ll documents constituting or relating to any communications regarding EBS wax within an outer layer of film." Docket No. 176-18 at p. 7.

10

Buergofol objected to this request on confidentiality, overbreadth and undue burden grounds.  Docket No. 176-19 at pp. 8–9.  Buergofol refused to produce any documentation.[4]  Id. at p. 9.

Omega filed a motion to compel numerous discovery requests, including Request for Production No. 103.  Docket No. 175.  Of special importance to Omega in its meet-and-confer emails with Buergofol, as related to this request, was the production of the entire email chain regarding the testing of certain film from 2012, before a patent relevant to the instant case was filed.  See Docket No. 176-8 at p. 2, 4.  Omega also sought any documents related to an analysis whose eventuality was suggested by the allegedly truncated email. See Docket No. 176-8 at pp. 4, 7.  In its motion to compel, Omega sought only an order to compel production of the analysis documentation.  Docket No. 178 at p. 16.  Because of its understanding that the applicable material had been tested once before, Omega referred to this alleged analysis as the "second test" or "second analysis."  See, e.g., Docket No. 176-8 at p. 4; Docket No. 178 at pp. 15–16.

In its brief in opposition, Buergofol denied knowledge of any "second BASF analysis" and characterized its existence as "conjecture based on a misreading of documents."  Docket No. 195 at p. 21.

---

[4] In Buergofol's response, it stated it moved for a protective order as related to this request, specifically, the motion for protective order filed at Docket No. 72. See Docket No. 176-19 at pp. 7, 9.  However, that motion does not seek protection from Request for Production Nos. "6-7 and 23-24."  Docket No. 72 at p. 1.  At any rate, that motion was denied by the district judge due to Buergofol's failure "to meet and confer in good faith."  Buergofol I, 2023 WL 4980031, at *7.

The associated motion to compel was referred to this magistrate judge. Docket No. 183.

At the omnibus motion hearing on September 18, Buergofol reiterated that Omega's interpretation of the emails was incorrect, and that Buergofol never conducted any test of 2012 film.  Docket No. 238 at 186:23—187:8. Buergofol stated that there was an analysis of a contemporary film in 2020, but no test thereafter in 2020 of *any* film, from *any* year.  Id. at 187:9—188:6.  This court ordered Buergofol to serve a supplemental response saying so.  Docket No. 238 at 188:7—189:9.  This oral order was memorialized in a text order at Docket No. 233.

Contrary to the court's order, Buergofol's supplemental response stated this:

> In response to the Court's order from the bench on September 18, 2023 (Dkt. 233, hearing transcript p. 188-189), Buergofol provides the following revised answer regarding "the second BASF analysis of the 2012 Sudpack film" (See Dkt. 178, 14:11-22).  No such "second BASF analysis of the 2012 Sudpack film" ever existed, so the non-existent second BASF analysis cannot be produced. Buergofol is not in the possession, custody or control of any "second BASF analysis of the 2012 Sudpack film."

Docket No. 262-2 at p. 4.

Because the response did not comply with the court's order, Omega included Request for Production No. 103 in its motion for sanctions.  See Docket Nos. 261 & 262.  Rather than focus on the impropriety of its response in its brief in opposition, Buergofol litigated the propriety of the order.  See Docket No. 284 at pp. 7–18.  The court rejected Buergofol's arguments, granted sanctions as to Omega's request, and once again, ordered Buergofol's

12

compliance—specifically to state "whether there [was] a second BASF analysis

of *any* Sudpack film in the year 2020." Buergofol II, 2023 WL 8627758, at *2.

### 2.    Whether Buergofol Complied with This Court's Order Regarding Request for Production No. 103

Buergofol put forth "three possible interpretations" of the court's order in

its subsequent supplemental response:

> Order 303 First Interpretation:  Was there a second BASF analysis in 2020 of any Sudpack film, regardless of whether the first BASF analysis was of Sudpack film from 2012, from 2020, or from any year?
>
> Order 303 Second Interpretation:  After the analysis in 2020 of the first Sudpack film, was there any first BASF analysis in 2020 of any second Sudpack film?
>
> Order 303 Second [sic] Interpretation:  In addition to the BASF analysis of the film that Dr. Boutrid gave Dr. Gruetzner on July 2, 2020, did BASF conduct any analysis of any other Sudpack film in 2020?

Docket No. 331-1 at p. 4.

Buergofol's answer to every interpretation was in the negative. Id. at

p. 331-1 at p. 5.  But after answering, Buergofol rendered those answers

meaningless, by stating that:

> In this response to a request for a production of documents under Rule 34, which was converted by Judge Duffy into an order that Buergofol make a particular statement regarding an occurrence (i.e., whether BASF conducted an analysis), litigation counsel Darien Wallace was not a witness and does not have personal knowledge adequate to testify to the truth of the "Response to Order 303 First Interpretation" answer, the "Response to Order 303 Second Interpretation" answer, or the "Response to Order 303 Third Interpretation" answer, and therefore the answers above are not being given by attorney Darien Wallace.  It is also likely that no person or persons at Buergofol has personal knowledge to testify to the truth of the three answers above; rather the answers are given based in large measure on declaration statements of the non-party

13

> witness Dr. Gruetzner.  Dr. Gruetzner declares that BASF did not
> conduct a second analysis of the film that Dr. Boutrid gave him
> (the one and only film that Dr. Boutrid gave Dr. Gruetzner),
> regardless of whether that film was from 2012, 2020, or any year
> (i.e., "any year film" according to Judge Duffy). (Dkt. 283, ¶9) Dr.
> Stark, who was an employee of Buergofol and may or may not have
> personal knowledge, may have done things of which Buergofol is
> no longer aware and now has no way of knowing.  Dr. Stark was
> not interviewed by Buergofol or Buergofol's counsel in investigating
> whether Buergofol could make the statement ordered by Judge
> Duffy.  However, Dr. Gruetzner declares, "I have never
> communicated with Dr. Stark regarding anything relating to
> Buergofol." (Dkt. 283, ¶6) No one currently employed by BASF was
> interviewed or questioned investigating whether Buergofol could
> make the statement ordered by Judge Duffy. Simply because a
> Court might order a party to make a particular statement does not
> mean that the party necessarily has the corporate knowledge to
> make that statement.

Docket No. 331-1 at pp. 5–6.

Rather than complying with this court's order, Buergofol's supplemental

response negates Buergofol's own statements made at the omnibus hearing—

the statements that served as the impetus of the order and this court's decision

to deny Omega's motion to compel as to Request for Production No. 103.  See

Docket No. 238 at 186:15—189:9; Buergofol II, 2023 WL 8627758, at *2.  The

response denies Buergofol's ability to answer the question while

simultaneously acknowledging that some (or all) of Buergofol's employees were

not consulted on the matter.  Docket No. 331-1 at pp. 5–6.  Instead, the

response bases its answers "in large measure" on the declaration of former

BASF employee Dr. Rolf-Egbert Gruetzner, who, by Buergofol's own admission,

only "declares that BASF did not conduct a second analysis of the film that

Dr. Boutrid gave him." Id. at p. 5; Docket No. 283, ¶ 9.  That information is

inadequate to serve as the foundation for the supplemental response.  And

therefore, the supplemental response is no response at all.  FED. R. CIV. P. 37(a)(4).

Buergofol opposes the expense of investigating the fact of the second analysis.  See Docket No. 349 at pp. 8–13.  But Buergofol expressed knowledge of the matter at the omnibus hearing.  Docket No. 238 at 186:23—188:6.  The court relied on that knowledge in denying Request for Production No. 103.  Id. at 238:5–8.  The court ordered Buergofol only to repeat in its supplemental response what it stated at the hearing.  Id. at 188:15–19.  To the extent Buergofol misspoke, or Buergofol counsel Darien Wallace asserted knowledge that he did not possess in his professional capacity, this court has yet to see a retraction.

Buergofol's remaining arguments seek to litigate the propriety of the order.  Docket No. 349 at pp. 8–13.  But if Buergofol had an objection to the court's order, the time for filing that objection was within 14 days of its docketing.  FED. R. CIV. P. 72(a).  That deadline passed six months ago.  Cf. Docket No. 233.  Any objection is waived.  Id.; see also United States v. Kelley, 774 F.3d 434, 438–39 & n.4 (8th Cir. 2014).

Buergofol's statement at the omnibus hearing that no "second test" occurred negated the need for Request for Production No. 103.  See Docket No. 238 at 186:23—189:9.  And so, at that hearing, the court denied Request for Production No. 103 but ordered Buergofol to memorialize its statement in a supplemental response.  Id.  This court possesses "broad discretion to fashion a sanction" for Buergofol's non-compliance so long as the sanction is "just and

15

relate[s] to the claim at issue." Planned Parenthood Minn., N.D., S.D. v. Daugaard, 4:11-CV-04071-KES, 2017 WL 3129754, at *4 (D.S.D. July 21, 2017) (citations and internal quotation marks omitted); Fed. R. Civ. P. 37(b)(2)(A). Buergofol's refusal to reiterate on paper what it stated at the hearing dictates the need to revive Request for Production No. 103.

## ORDER

Buergofol is ordered, within 30 days of the filing of this order, to provide Omega, at Buergofol's expense, with all "DOCUMENTS" responsive to Request for Production No. 103. Buergofol's objections on confidentiality, undue burden, and overbreadth grounds are overruled. A protective order is in place, Docket No. 131, and Buergofol's resource concerns cannot be taken seriously in light of the evasive responses that continue to exhaust the resources of all stakeholders here.

### 3.    Other Matters Grouped in with Request for Production No. 103

The court declines to consider (1) Omega's assertion that Buergofol purposefully utilized an archaic version of Outlook in order to avoid production of an email attachment, see Docket No. 331 at p. 8, and (2) Omega's complaint related to Request for Production No. 13. Id. at p. 11. Neither of these matters arise from this court's order in Buergofol II and are, therefore, beyond the instant motion's reach. See, e.g., Docket No. 331 at p. 3; see generally 2023 WL 8627758.

16

**C.     Interrogatory Nos. 11 & 12**

**1.     Procedural History up to and including This Court's Order at Docket No. 303**

Interrogatory No. 11 states:

> For each shipment of film by Buergofol prior to June 15, 2009, regardless of its intended use, that had five layers or more with one external layer comprised of at least one thermoplastic olefin homo- or copolymer and another external comprised of at least one homo- and/or copolyamide, identify the product name or identifier, the Person to whom Buergofol shipped the film, the description of the film, the type of film, the size of film (diameter if tubular film or width if flat film), the shipment date, the delivery number, the order number, the quantity of film shipped in meters, the thickness of the film, the number of layers in the film, the chemical composition of each layer of the film, the layer sequence of the film, and the thickness of each layer.

Docket No. 176-23 at p. 16.

Buergofol objected to this interrogatory, arguing that (1) it included "multiple distinct, unrelated subparts" rendering it "at least 4 interrogatories"; (2) it was irrelevant; and (3) it was disproportional in consideration of the risk of exposing trade secrets.  Id. at pp. 17–19.

Notwithstanding these objections, Buergofol stated that it could not locate any evidence of information requested by the interrogatory.  Id. at p. 19. But Buergofol also stated that "Buergofol has not completed discovery and its investigations are ongoing," and that its inability to locate evidence was based on a "reasonable investigation."  Id.

Interrogatory No. 12 states:

> For each shipment of film by Buergofol prior to March 11, 2012 that included a coating, identify the product name or identifier, the

17

Person to whom Buergofol shipped the film, the description of the film, the "Type of Film" as indicated on the label attached to the film, whether the film was tubular or flat, the size of film (diameter if tubular film or width if flat film), the shipment date, the delivery number, the order number, the quantity of film shipped in meters, the thickness of the film, the number of layers in the film, the chemical composition of each layer of the film, the layer sequence of the film, the thickness of each layer, whether the coating was incorporated into a layer or applied over part or all of the layer, and which layer the migrating compound was incorporated into or applied over.

Docket No. 176-23 at pp. 19–20.

Buergofol refused to answer this interrogatory, arguing that the interrogatory (1) consisted of "multiple distinct, unrelated subparts"; (2) was irrelevant; and (3) was disproportional in consideration of the risk of exposing trade secrets.  Id. at pp. 20–23.

These interrogatories were included in Buergofol's Motion for Protective Order that was denied by the district judge.  Docket No. 72 at p. 1; Buergofol I, 2023 WL 4980031, at *1, 7.  After Omega's cross-motion to compel was referred to this magistrate judge, the court reflexively included the interrogatories in its list of individual discovery requests to be adjudicated at the omnibus hearing.  Docket No. 238 at 114:15–19.  At the hearing, Omega confirmed that inclusion to be accurate.  Id. at 114:20.  Buergofol did not object to that inclusion.  See generally id.

Following the same tack as with Request for Production Nos. 6 & 7, the court ordered Buergofol to "make clear" vis-à-vis Interrogatory Nos. 11 & 12 that the information sought did not exist.  Id. at 153:15–25.  That order was memorialized in a text order on September 18, 2023.  Docket No. 234

18

("Buergofol is ordered to file revised responses to these discovery requests making unequivocally clear what documents are retained by it and that no documents or information responsive to these requests is available.").

On September 25, 2023, Omega sent a letter by email to this court, copying counsel for all parties, clarifying that Interrogatory Nos. 11 & 12 were not addressed in its cross-motion to compel. Cf. Docket No. 92 at p. 1; contra Docket No. 262 at p. 6.  Omega informally requested modification of the associated text order so as to eliminate the interrogatories' inclusion.  The court responded, stating that if all parties agreed to the informal mode of modification, the court would accommodate.  In reply, Buergofol stated that it preferred no modification to the order.  No party thereafter filed an objection under Federal Rule of Civil Procedure 72(a).

Post-hearing, Buergofol's supplemental answers to the interrogatories explained that no responsive information was found when Buergofol searched "reasonably accessible" documents.  Docket No. 262-4 at pp. 6, 10–11.  Finding those answers to be impermissibly qualified, Omega attempted, by email, to secure the unequivocal answers required by this court's order.  Docket No. 262-3 at pp. 9–10.  Buergofol did not respond to Omega's emails.  Cf. id. at p. 9; see Docket No. 262 at p. 8.  And so, Omega asserted Buergofol's non-compliance in its motion for sanctions.  Docket No 261; Docket No. 262 at pp. 5–8.

The court granted Omega's motion for sanctions and, like Request for Production Nos. 6 & 7, ordered Buergofol to:

[F]ile a response to these [interrogatories] clearly and unequivocally stating that the documents do not exist" and "[i]f there is, instead, ESI which Buergofol believes to be reasonably inaccessible, it must file responses to the [interrogatories] setting forth the following information: (1) what ESI exists that Buergofol believes is "reasonably inaccessible"; (2) describe why Buergofol believes the ESI is not reasonably accessible; and (3) state what the burden would be on Buergofol to search this ESI either in terms of hours of work or in terms of cost.

<u>Buergofol II</u>, 2023 WL 8627758, at *4.

### 2. Whether Buergofol Complied with This Court's Order Regarding Interrogatories No. 11 & 12

#### a. Buergofol's Post-Order Answers

Following this court's sanctions order, in Buergofol's Third Supplemental

Responses to Interrogatory Nos. 11 & 12, Buergofol inserted the following

language into its answer to Interrogatory No. 11:

After a reasonable investigation, no document or person has been identified that reveals the requested information about shipments prior to June 15, 2009 of 5-layer and 7-layer film with eternal PE and PA layers.  No 14-year-old and older documents regarding the requested shipments could be located.  Although Buergofol had equipment capable of producing 5-layer and 7-layer film prior to June 15, 2009, no reliable evidence (documentary or testimonial) as to the specifics called for in ROG No. 11 could be determined.

Docket No. 331-3 at p. 6.

For Interrogatory No. 12, Buergofol responded:

Buergofol has looked for documents containing the information requested in ROG No. 12 and did not find any such documents (other than the public documents from patent proceedings described below).  Buergofol possesses binders of paper manufacturing documentation regarding film.  Buergofol looked and found no manufacturing documentation older than 2017.

<u>Id.</u> at p. 11.

### b.   Omega's Disbelief that No Person Possesses Information Responsive to Interrogatory No. 11

Omega objects to Buergofol's assertion that no person at Buergofol possesses the information requested by Interrogatory No. 11.  Docket No. 331 at p. 24.  Omega argues that the declaration of Buergofol employee Tobias Goth, which "explains in detail his knowledge of film sales before June 15, 2009," functions as evidence that "persons" at Buergofol possess the information.  Id. (citing Docket No. 288).  But Omega's reading of Mr. Goth's declaration is inaccurate.  See generally Docket No. 288.

Mr. Goth declares that "[s]ince at least 2008 until the present," he "originated and negotiated all sales of UV-CIPP film (both inner film and outer film) made by Buergofol to any customer based in the United States."  Id., ¶ 3.  That text cannot be understood as a detailed explanation of Mr. Goth's "knowledge of film sales before June 15, 2009."  Docket No. 331 at p. 24.  The majority of Mr. Goth's declaration concerns events that occurred in 2017.  See generally id.  Omega points to Mr. Goth's origination and negotiation of the sale of film to Light Stream, LP—"which sales occurred before June 15, 2009."  Id. (citing Docket No. 288, ¶ 4).  But Omega supplied the "before June 15, 2009" part.  Compare Docket No. 288, ¶ 4 with Docket No. 331 at p. 24.  And even if that is the correct date range of the sales, it does not necessarily follow that Mr. Goth remembers the shipment-specific details required by Interrogatory No. 11.  See Docket No. 176-23 at p. 16.

When a party disputes the unavailability of discovery, "it is [the disputing party's] burden to demonstrate otherwise."  Roemen v. United States, 4:19-CV-

04006-LLP, 2023 WL 6808348, at *6 (D.S.D. Oct. 16, 2023) (citation omitted). Omega's unrealistic reimagining of Mr. Goth's declaration does not suffice to make that showing.

**D.    Objections Common to Request for Production Nos. 6 & 7 and Interrogatory Nos. 11 & 12**

**1.    The Objection to the "Unreadable Data" Statement**

Omega takes exception with Buergofol's statement that "[t]here is unreadable data from prior to 2014 from an old, custom-made system that no longer exists" because the statement does not comply with this court's order, i.e., does not set forth "(1) what ESI exists that Buergofol believes is 'reasonably inaccessible'; (2) describe why Buergofol believes the ESI is not reasonably accessible; and (3) state what the burden would be on Buergofol to search this ESI either in terms of hours of work or in terms of cost."  Docket No. 331 at p. 20–22.  Buergofol counters that "unreadable data" is not synonymous with "reasonably inaccessible data" and therefore this court's order regarding reasonably inaccessible ESI does not govern the responses.  Docket No. 349 at p. 21.  Omega is correct.

Federal Rule of Civil Procedure 26(b)(2)(B) was "designed to address issues raised by difficulties in locating, retrieving, and providing discovery of some electronically stored information."  In re Nat'l Arbitration Forum Litig., Civil No. 09-1939 (PAM/JSM), 2010 WL 11469529, at *4 (D. Minn. Feb. 16, 2010) (quoting Fed R. Civ. P. 26(b) advisory committee's note to 2006 amendment).  The rule affords a party the ability to show that production of electronic discovery would exact an undue burden due to its inaccessible

22

format.  FED. R. CIV. P. 26(b)(2)(B); Best Buy Stores, L.P. v. Developers

Diversified Realty Corp., 247 F.R.D. 567, 569–70 (D. Minn. 2007).  That

showing is made "[o]n motion to compel discovery or for a protective order."

FED. R. CIV. P. 26(b)(2)B).  "The responding party must . . . identify, by category

or type, the sources containing potentially responsive information that it is

neither searching nor producing."  Fed. R. Civ. P. 26(b) advisory committee's

note to 2006 amendment.

Here, in proceedings stemming from both a motion to compel (Docket No.

92) and a motion for protective order (Docket No. 72), this court ordered

Buergofol to identify when it was withholding ESI—and to provide related

details—so that the court might assess whether to compel its production.

Buergofol II, 2023 WL 8627758, at *4.  The reason for this order was

Buergofol's qualification of its discovery responses using the term "reasonably

accessible."  Id. at *3.  Buergofol specified that the term was used in relation to

ESI.  Id.

Following the order, Buergofol, in its supplemental responses, made

notation that it removed the "reasonably accessible" reference.  See, e.g.,

Docket No. 331-2 at p. 2.  However, Buergofol added the sentence "There is

unreadable data from prior to 2014 from an old, custom-made system that no

longer exists."  Compare Docket No. 262-6 at p. 5 with Docket No. 331-2 at

p. 2.  And so, Omega correctly argues that the introduction of that language

compels Buergofol to comply with this court's order to identify the withheld

ESI, describe why it is inaccessible, and calculate the burden of searching it. Docket No. 331 at p. 22.

Buergofol exempts itself from the order by distinguishing "reasonably inaccessible data" from "data that cannot possibly be accessed." Docket No. 349 at p. 21 (internal quotation marks omitted). In this context, that is a distinction without a difference. Buergofol knew of data in its possession that it stated was unreadable. Docket No. 331-2 at p. 2. The court presumes that Buergofol considered the unreadable data potentially responsive; otherwise Buergofol would not have included a reference to it in its supplemental response. Cf. FED. R. CIV. P. 26(b)(2)(B), 34(b)(2)(B); Buergofol II, 2023 WL 8627758, at *3–4. Buergofol stated it did not produce the data because it "cannot possibly be accessed." Docket No. 349 at p. 21. But the reasonableness or lack thereof as to accessibility is for the court to determine, not Buergofol. FED. R. CIV. P. 26(b)(2)(B). And so, it was incumbent upon Buergofol to not only assert the data's unreadability, but to describe the character of the data, why Buergofol decided the data was unreadable, and its calculation of the burden to make the data searchable once again. Buergofol II, 2023 WL 8627758, at *4; see also Fed. R. Civ. P. 26(b) advisory committee's note to 2006 amendment ("The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources."). Buergofol did none of these things. Merely stating that unreadable data exists from an archaic system does not

24

assist the court in making the required determination under Rule 26(b)(2)(B).
And it does not comply with this court's order.  Id.

Buergofol argues that "reasonably inaccessible ESI is a non-issue"
because the supplemental response it served after the filing of the instant
motion newly declared that the unreadable data no longer exists.  Docket
No. 349 at pp. 21–22.  But Buergofol's acts from February 2024 cannot save it
from sanctions appropriate when Omega brought its motion in January 2024.
Cf. Mensah v. Rent-A-Center, Inc., 8:03CV80, 8:04CV199, 2005 WL 8176032,
at *2 (D. Neb. Oct. 28, 2005) (citing Illinois Tool Works, Inc. v. Metro Mark
Prods., Ltd., 43 F. Supp. 2d 951, 960 (N.D. Ill. 1999)).  "To allow a party to
avoid sanctions by such a contrivance would defeat the purpose of the rules,
which is to promote voluntary discovery without the need for motion practice."
Illinois Tool, 43 F. Supp. 2d at 960.

### 2. Omega's Complaint that the Answers do not Clarify the Existence of Any Data Older Than 2014

Omega next suggests that Buergofol is non-compliant because it failed to
declare whether their DS and obsolete predecessor systems have "any
documents or information that exist before March 11, 2013."  Docket No. 331
at p. 23 (as opposed to responsive documents or information).  Nothing about
this court's order in Buergofol II, or the rules of discovery, require Buergofol to
provide an inventory of unresponsive information in its possession.  See
generally 2023 WL 8627758; FED. R. CIV. P. 33, 34.  So long as Buergofol is

stating, unequivocally, that no responsive documents exist, the responses are in compliance.

### 3. Omega's Complaint that Buergofol Does Not Explain the DS System

In Dr. Schleicher's declaration, he stated that Buergofol employed "a Warenwirtschaftssystem (ERP System)."  Docket No. 73, ¶ 6.  Omega objects that in Buergofol's post-sanctions responses, Buergofol states that it does not have an ERP system, but rather a "DS" system.  Docket No. 331 at p. 25. Omega implies that by not explaining the distinction, or Buergofol's interpretation of "ERP" system, Buergofol is somehow out of compliance with this court's order.  Id.  Buergofol responds that it is not responsible for "explain[ing] what a particular kind of computer software is."  Docket No. 349 at p. 24.  Buergofol is correct.

Request for Production Nos. 6 & 7 concern documents related to inner foil or outer foil.  Docket No. 93-2 at pp. 7–9.  Interrogatory Nos. 11 & 12 concern information related to shipments.  Docket No. 176-23 at pp. 16, 19–20.  The court's purpose in Buergofol II was to ensure that Buergofol either produced responsive discovery, stated responsive discovery did not exist, or if responsive discovery was withheld, explain why.  See generally 2023 WL 8627758.  An explanation of the difference between Dr. Schleicher's alleged ERP system and the currently stated DS system is not responsive to the discovery requests at issue.  Nor would be Buergofol's interpretation of what an ERP system entails.

### 4. Omega's Objections Related to Buergofol's February 22, 2024, Supplemental Responses

In its reply brief, Omega puts forth fresh arguments for sanctions related to discovery responses that did not exist at the time of the instant motion's filing. Docket No. 354 at pp. 14–16, 22–25; see Docket No. 325 at p. 3. The court declines to address these new arguments from the reply brief. Vermillion Area Chamber of Commerce & Dev. Co. v. Eagle Creek Software Servs., 4:15-CV-04158-KES, 2016 WL 2851324, at *2 n.1 (D.S.D. May 13, 2016) (citing Barnham v. Reliance Standard Life Ins. Co., 441 F.3d 581, 584 (8th Cir. 2006)).

### ORDER

In light of the revelation that the unreadable data no longer exists, no non-monetary sanction can return the data back into existence so as to realize the goals of the associated discovery requests. A monetary sanction could serve as deterrence against Buergofol's future non-compliance. And while Buergofol's conduct may warrant such sanctions, Omega is itself guilty of using this motion to litigate matters external to the court's order in Buergofol II, and arguments lacking foundation in fact or law. Monetary sanctions are denied. Buergofol's expenses are denied.

### CONCLUSION

Based on the foregoing facts, law, and analysis, it is:

ORDERED that Omega's Motion for Sanctions for Failure to Comply with Judge Duffy's Sanctions Order [Docket No. 325] is granted in part and denied in part. Buergofol shall deliver supplemental and original discovery

responses in accordance with this opinion within 30 days of the filing of this order.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 28th day of March 2024.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge