UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>    Plaintiff, and<br><br>    Counter Defendant,<br><br>  vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>    Defendant. and<br><br>    Counter Claimant. | 4:22-CV-04112-KES<br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART OMEGA'S MOTION<br>FOR SANCTIONS<br><br><br>DOCKET NO. 323 |

**INTRODUCTION**

This matter is pending in the district court on plaintiff Buergofol GMBH's ("Buergofol") first amended complaint alleging defendant Omega Liner Company, Inc. ("Omega") violated two patents held by Buergofol.  Docket No. 163.  Omega has counterclaimed alleging various independent claims and asserting that Buergofol's patents are invalid and, even if they are valid, that Omega did not infringe upon them.  Docket No. 179 at pp. 47-70.

Omega, pursuant to Federal Rules of Civil Procedure 37(b)(2), now moves the court "for sanctions against . . .  Buergofol GmbH and Buergofol's counsel . . . for failure to comply with the Court's discovery order (Dkt. 234)."  Docket No. 324 at p. 1.  Buergofol opposes the motion.  Docket No. 351.  Omega filed a

reply.  Docket No. 353.  The motion was referred to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A).  Docket No. 327.

## PROCEDURAL HISTORY

On September 18, 2023, this court held a motion hearing in the instant case to resolve nine discovery matters referred by the district judge.  Docket Nos. 183 & 238.  This court thereafter issued nine corresponding orders.  See Docket Nos. 226–234.  Omega brought a motion for sanctions against Buergofol for failing to comply with the orders at Docket No. 234 addressing request for production ("RFP") Nos. 6, 7, & 103 and interrogatory Nos. 11 & 12.  Docket No. 261.  The court granted that motion.  Docket No. 303.  Omega now moves for sanctions against Buergofol for (1) failing to comply with Docket No. 234 as to RFP Nos. 23 & 24, and (2) to compel Buergofol's response to those requests.  Docket No. 323.  Omega also moves for the following:

(3)    requiring Buergofol to produce one or more custodians of records in Sioux Falls as soon as practicable for a Rule 30(b)(6) deposition, as already ordered by the Court on all previously noticed topics as well as those raised in the present motion for sanctions, including issues of spoliation;

(4)    amending the current scheduling order to relieve Omega from submitting its non-infringement contentions until thirty days from Buergofol's production of all documents responsive to RFPS 23 and 24 and the Court's order (Dkt. 234) as well as the resolution of any and all pending motions regarding the same or from submitting the information required by the claim construction process set forth in Section III of the Court's Scheduling Order (Dkt. 136) until ninety days after submitting its non-infringement contentions;

(5)    precluding Buergofol from moving for summary judgment on any issue of infringement until after the close of discovery and after it has complied with all discovery obligations, the

Court's scheduling orders, and the Court's orders regarding discovery and sanctions;

(6)   holding Buergofol's counsel and representatives in contempt and compelling them to appear before the Court to provide testimony regarding the existence, location, and destruction of documents responsive to RFPs 23 and 24; and

(7)   reimbursing Omega its reasonable attorneys' fees and expenses incurred in bringing this motion pursuant to FED. R. CIV. P. 37(b)(2)(C).

Id. at p. 2.  The court will address Omega's 7 issues in turn.

## DISCUSSION

### A.   Sanctions under Rule 37

Federal Rule of Civil Procedure 37(b)(2) provides a discretionary unexhaustive list of sanctions to impose on a party for not obeying a discovery order.

(A)   *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:

(i)   directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)   staying further proceedings until the order is obeyed;

(v)   dismissing the action or proceeding in whole or in part;

> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

FED R. CIV. P. 37(b)(2).  The court's discretion to impose a sanction "is bounded by the requirement of Rule 37(b)(2) that the sanction be 'just,' and relate to the claim at issue in the order to provide discovery.  Avionic Co. v. Gen. Dynamics Corp., 957 F.2d 555, 558 (8th Cir. 1992) (internal citations omitted).

**B.     Request for Production Nos. 23 & 24**

**1.     Procedural History of RFP Nos. 23 & 24**

Request for production No. 23 seeks "[d]ocuments related to each product (including each version thereof) sold by Buergofol to Omega Liner Company, Inc. sufficient to show the structure and composition of each component part of each product (or version thereof)."  Docket No. 6, p. 4.  Buergofol objected to this request on multiple grounds.  Buergofol argued that the RFP was vague and lacks specificity and detail.  Docket No. 93-4, p. 9.  Yet, Buergofol stated that it had disclosed "an adequate level of specificity and detail for purposes of resolving the issues" responding to Omega's interrogatory No. 10.  Docket No. 93-4.  Buergofol concedes that it is in possession of documents that reveal more detailed and specific information about the structure and composition of the inner and outer films.  Id. at p. 10.  It argues that disclosure of these documents would reveal trade secrets.  Id.

Request for Production No. 24 seeks "Manufacturing specifications for each product (including each version thereof) sold by Buergofol to Omega Liner Company, Inc." Docket No. 6, p. 4. Buergofol objected on the grounds that production would reveal trade secrets, and that the request was unduly burdensome. Docket No. 93-4, pp. 11-12.

Buergofol moved "for a protective order relieving Buergofol of any obligation to produce any documents responsive" to certain Omega requests based on trade secret, and that production would be unduly burdensome. Docket No. 72 at p. 1.

As pertinent to Request for Production Nos. 23 & 24, Buergofol "Alleinprokurist"[1] Franz Schleicher declared in his supporting affidavit:

> Buergofol has possession of significant confidential information and knowhow pertaining to the structure and composition of the UV CIPP inner and outer films that Buergofol manufactures, and pertaining to how Buergofol manufactures its UV CIPP inner and outer films. This confidential information and knowhow includes information concerning specific equipment used in the manufacture of Buergofol's UV CIPP films, and details on how that specific equipment is configured, programmed and used in the making of Buergofol's UV CIPP films. This confidential information and knowhow includes manufacturing specifications and information such as specific ingredients and additives Buergofol uses to make each respective layer of the various layers of Buergofol's different types of UV CIPP films, ratios of ingredients, the commercial sources of each such ingredient, the commercial tradename and product number of each such ingredient, the number of layers making up each of Buergofol's different UV CIPP film products, the thickness of each such layer, certain physical characteristics and qualities of the material of each such layer, and many other items of information about the structure and composition of the various parts of each of Buergofol's different UV CIPP film products. This confidential information includes internal

---

[1] Dr. Schleicher translates "alleinprokurist" to mean "sole officer with general commercial power of representation." Docket No. 73, ¶ 2.

communications within Buergofol in which the factory personnel are instructed to manufacture UV CIPP films, and further including manufacturing log information that describes films made by the factory personnel pursuant to instructions.  If a competitor of Buergofol in the UV CIPP film business were to learn of bits and pieces of this information, then that competitor may be able to use that information to piece together a fairly detailed picture of Buergofol's manufacturing processes.  This would allow the competitor to follow in Buergofol's footsteps, and to copy Buergofol's manufacturing processes, and thereby to duplicate Buergofol's UV CIPP film products.

Docket No. 73, ¶ 5.

Buergofol counsel, Darien Wallace, in his supporting affidavit, added:

In my opinion, the only way to determine if a responsive document exists pertaining to "manufacturing specifications" and other trade secret technical information as requested by RFP Nos. 6-7 and 23-24 would be for litigation counsel manually to go through all the old manufacturing paperwork in Germany, in a needle-in-the-haystack type search estimated to involve about 10 minutes to review each binder of production paperwork.  Buergofol stores its old manufacturing paperwork in two file rooms at its factory in Siegenburg.  The two file rooms are sufficiently large to hold about 1,000 binders of production paperwork.  Binders relating to lower production numbers are discarded to make room for binders containing new production paperwork.  It would require an estimated 167 hours of attorney time in Germany just to identify pieces of paper related to manufacturing CIPP film from among the production paperwork in the approximately 1,000 binders.  Responsive papers would then have to be scanned, and in order to render the pages text searchable difficult optical character recognition would have to be performed on the manufacturing sheets, which do not merely contain lines of text in paragraph form.  This process is estimated to cost about $50,000 of attorney time (billed at $300/hour), plus travel and expenses, plus the scanning to text-searchable form, for a total of about $65,000.

Docket No. 74, ¶ 9.

On August 3, 2023, the district court denied Buergofol's motion for a

protective order on RFP Nos. 23 & 24 due to Buergofol's failure "to meet and

confer in good faith prior to [its] filing."  Buergofol GmbH v. Omega Liner

<u>Company, Inc.</u>, 4:22-CV-04112-KES, 2023 WL 4980031, at *7 (D.S.D. Aug. 3, 2023) (<u>Buergofol I</u>) (Docket No. 180).  The next day, the district court referred to this court Omega's motion to compel (Docket No. 92).  Docket No. 183.  On September 18, 2023, this court held an omnibus motion hearing to resolve multiple discovery matters, including the motion to compel concerning RFP Nos. 23 & 24.  <u>See generally</u> Docket No. 238 (transcript of hearing).

At the hearing, the court heard oral argument from Buergofol and Omega on the production of documents responsive to RFP Nos. 23 & 24.  <u>Id.</u> at pp. 145-166.  The court orally granted Omega's motion to compel.  <u>Id.</u> at p. 166.

> THE COURT: As to Request For Production 23 and 24, I'm going to grant the motion to compel.  It will be provided to Omega pursuant to the Court's protective order.  It will be designated "attorneys' eyes only."  If after reviewing the documents you think you need further disclosure than is allowed by "attorneys' eyes only," you're going to have to petition the Court for a different characterization of the documents.
>
> MR. BOND (for Omega): Understood, Your Honor.
>
> THE COURT: I think that that addresses both Buergofol's fears about trade secret disclosures and also your concerns about being able to defend yourself [Omega] in the lawsuit.
>
> [...]
>
> MR. T.L. WALLACE (for Buergofol): So Buergofol is supposed to disclose how it makes the films . . . that it sold to Omega after the critical date of the patent?
>
> THE COURT: The products that you sold to them that you claim are infringed by them, yes, to put it in a different frame.
>
> [...]

MR. T.L. WALLACE: You said we were supposed to answer 23 and 24 and disclose that.

THE COURT: Right.

MR. T.L. WALLACE: And then you said something to the effect of -- if you need additional protection, did you say?

THE COURT: I told Omega once they receive the documents, they're going to be subject to "attorneys' eyes only" restriction. If after reviewing those documents they believe that they need to show them to a wider audience than "attorneys' eyes only," they're going to have to petition the Court. You will be notified. You'll have an opportunity to weigh in on that at that future date.

Id. at 166-168.

The court's oral orders were then memorialized in a text order docketed the same day. Docket No. 234. The pertinent portion of the text order states: "Omega's requests for production numbers 23 & 24 is granted; Buergofol shall produce documents responsive to these requests within 30 days. The documents produced by Buergofol pursuant to RFP Nos. 23 & 24 shall be subject to the district court's protective order and shall be classified as highly confidential attorney's eyes only."[2] Docket No. 234.

### 2. Whether Buergofol Complied with This Court's Order Regarding RFP Nos. 23 & 24.

#### a. Buergofol's Post-Order Response

Following this court's order, Buergofol served new responses to RFP Nos. 23 & 24. Docket No. 351, p. 2. "In compliance with the 'oral ruling' and Order (Dkt. 234), Buergofol supplemented its document production by producing

---

[2] This protective order is consistent with the protective order in place at Docket No. 131.

comprehensive and descriptive documents (BF13988-BF13992) setting forth the structure, composition and specifications of each and every layer of each and every Buergofol inner film and outer film product that Buergofol ever sold to Omega that Buergofol alleges would infringe the '269 Patent if used to make an Omega liner." Id. Specifically, Buergofol provided Omega with the Boutrid Declaration (Docket No. 311-6) plus 21 pages of manufacturing specifications. Id. at p. 6. Buergofol labeled these documents as "Confidential and Highly Confidential – Attorney's Eyes Only." Docket No. 351, p. 6.

Omega argues that the Boutrid Declaration and supporting documents[3] are insufficient and fail to "provide the specificity of information regarding structure, composition, and manufacturing specifications for Buergofol's products" necessary to address Buergofol's infringement claims. Docket No. 324, p. 9. Particularly, the Boutrid Declaration fails to disclose information on the "migrating compound," the crux of the '882 Patent. Id. at p. 8. Omega asserts that it cannot rely on unsupported portions of the Boutrid Declaration because that information is not admissible at trial. Docket No. 353, p. 3. Omega is seeking in part, Buergofol's extrusion sheets which it argues would provide sufficient response to RFP Nos. 23 & 24. Docket No. 324. Buergofol

---

[3] Omega also takes issue that the Boutrid Declaration and supporting documents were not signed by Buergofol counsel as is required by FED. R. CIV. P. 26(g)(1). Docket No. 324, p. 5. The documents do not include a certification by Buergofol counsel (Docket No. 311-6); however, the documents were sent to Omega by Buergofol's counsel via an email which included the email signature of Buergofol counsel, Darien Wallace. The court finds this is sufficient for Rule 26(g)(1). See Docket No. 324-1.

claims that the additional discovery that Omega is requesting is (1) not relevant and (2) is a trade secret.  Docket No. 351, p. 1.

### b.    Relevancy of Requested Documents Concerning the '882 Patent.

Buergofol admits that it did not supply Omega documents on the '882 Patent because, "Buergofol does not contend that Omega's use of any Buergofol product results in the infringement of the '882 Patent."  Id. at p. 2.  Buergofol justifies this response saying that the court's order limited response to "products that [Buergofol] sold to them [Omega] that you claim are infringed by them."  Id. at p. 2; Docket No. 238, p. 167.  It is Buergofol's position that compelled discovery is dependent on its ultimate infringement contentions.  Docket No. 351, p. 4.  As of the briefing of this motion, the infringement contention deadline had not yet passed.  Id.  As of the writing of this order, that deadline has now passed.  See Docket No. 379; Docket No. 328; Docket No. 401 (Buergofol was granted an extension to disclose infringement contentions on or before Tuesday, May 7, 2024, Omega's Non-Infringement contentions are due June 5, 2024).  Buergofol served its infringement contentions on Omega on May 7, 2024.  Docket No. 396-1, p. 6.  Buergofol maintains Omega infringed on the '882 Patent.[4]  Id.

---

[4] Omega now moves to strike Buergofol's infringement contentions and stay discovery, as well as extend deadlines on its noninfringement and invalidity contentions.  See Docket Nos. 394-397.  This magistrate judge makes an independent determination solely on the referred motion, Docket No. 323, and will not address the pending motions (395 & 397) before the district court.

In Buergofol's first amended complaint, count 1 accuses Omega of infringing on claim 1 of the '882 Patent.  Docket No. 163, p. 12 ¶ 35; p. 16, ¶ 41.  Claim 1 of the '882 Patent, "must cover the disclosed embodiment in which the outer layer of the 'inner tubular film' incorporates the 'migrating compound' which is applied to the external side of the inner film facing the carrier material by migrating out to the surface of that external side."  Id. at p. 15 ¶ 40.

Omega's current answer denies the infringement allegations of the '882 Patent, (count 1) and asserts various defenses and counterclaims for the '882 Patent, including but not limited to the invalidity of the '882 Patent.[5]  Docket No. 179, pp. 8-9, 13-20, 42-48.  As Omega correctly asserts, "Buergofol's claims that Omega's liners made with Buergofol film infringe the '882 Patent remain alive and well."  Docket No. 353, p. 2.  From the beginning of litigation, Omega has proclaimed that both the '882 and '269 Patents were invalid.  Docket No. 179, pp. 13 & 21.  This is not a "new" theory as Buergofol suggests.

The scope of discovery under FED R. CIV. P. 26(b) states:

> Parties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claim or defense* and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

---

[5] Omega filed a motion to amend its answer.  Docket No. 251-252.  That motion is currently pending before the district court and will not be addressed in this order.  Buergofol has not filed a second amended complaint.

11

FED R. CIV. P. 26(b) (emphasis added).  The civil rules of discovery are not limited by Buergofol's would be infringement contentions (now verified at Docket No. 396-1), nor Omega's arguments of admissibility.  The court ordered Buergofol to produce documents responsive to RFP Nos. 23 & 24, "you [Buergofol] claim are infringed by them [Omega]" inclusive of what continues to be Buergofol's claims of Omega's infringement on the '882 Patent stated in the amended complaint.  Buergofol takes the court order too far by suggesting that it limits discovery to just the infringement claims.  To the extent that the documents may address both infringement and invalidity arguments of both patents, this court has ordered they are discoverable, and Buergofol must produce them.

### c. Request for Production as to Trade Secrets

Omega states that Buergofol attempts to relitigate its claims for trade secret protection, an issue that was sufficiently addressed in brief and at the September 18, 2024, hearing.  Docket No. 353, p. 3.  Buergofol argues in the alternative that "Judge Duffy did not engage in any analysis of Buergofol's infringement claim or Omega's noninfringement defense" because Buergofol's trade secrets were not disclosed *in camera.*  Docket No. 351, p. 19; see Docket No. 238, p. 148.  "Judge Duffy could not have been able properly to assess whether Omega actually had any need to know any specific trade secret in view of the claims and defenses in the case."  Docket No. 351, p. 19.

Omega argues that the current protective order is sufficient to allow disclosure of trade secret documents in response to RFP Nos. 23 & 24.  Docket

No. 353, p. 25.  From the beginning of litigation, the parties agreed a protective order was necessary, however the particulars of that protective order were disputed.  Docket No. 27, p. 8.  The current protective order issued by the court at Docket Nos. 130 & 131 was thoroughly argued by both parties.  See Docket Nos. 35-38, 49, 57.

> Buergofol initially proposed the parties stipulate to a Protective Order, and its counsel sent Omega's counsel a proposed order that was based on the Northern District of California's *Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets* ("Model Protective Order"). Buergofol, however, removed from its proposed Protective Order two important sections of the Model Protective Order, i.e., Section 7.4 (Disclosure to Experts) and Section 8 (Patent Prosecution Bar), both of which protect highly confidential information expected to be shared.

Docket No. 38, p. 4.  Buergofol was successful in several respects as to the protective order.  The court found that Omega did not show good cause for inclusion of section 7.4, and included Buergofol's requested "Acknowledgement and Agreement To Be Bound" language.  Docket No. 130 pp. 19-21; Docket No. 131, p. 16 (Ex. A).

Buergofol then moved for a protective order specifically addressing trade secret disclosures and RFP Nos. 23 & 24.  Docket No. 72.  That motion was fully argued.  Docket Nos. 73-75, 92-94, 105, 106, 108.  The court did address Buergofol's options under the discovery rules.  Docket No. 180, p. 9.

> Buergofol is correct that it was not permitted under the Federal Rules of Civil Procedure to "simply fail to produce responsive documents that [it] considers to be trade secrets[,]" but the Rules do permit a party to serve objections to a request for production without ever filing for a protective order.  Docket 75 at 10; see Badalamenti v. Dunham's, Inc., 896 F.2d 1359, 1362 (Fed. Cir. 1990) (explaining that "[t]he plain terms of the rules of civil

13

> procedure" give parties responding to document requests four
> options: (1) agree to produce the documents, (2) object to the
> request, (3) move for a protective order, or (4) ignore the request).

Docket No. 180, p. 11.  The court ultimately determined that Buergofol failed to

meet and confer in good faith with Omega over the disputed discovery and

denied the motion.  Id. at p. 16.

At the September 18, 2023, hearing Buergofol once again argued that

responsive documents to RFP Nos. 23 & 24 were trade secrets.  Arguments in

brief were incorporated through Omega's cross motion to compel at Docket No.

92.  Buergofol claims it offered to produce the trade secret documents for an *in*

*camera* review at the hearing.

> MR. D. WALLACE (for Buergofol): So there are trade secrets, and
> there's no need to produce them.  I would be willing in camera to
> explain them, but I can't explain them in the papers, otherwise it
> would no longer be secret.
>
> And opposing counsel said, "Well, if there's a protective order, then
> there are no trade secrets."  That's not the law.  A trade secret is a
> secret because it is secret.  And if it is disclosed, even under a
> protective order, it's no longer a secret, and it loses its value.
>
> [...]
>
> MR. T.L. WALLACE (for Buergofol):  The trade secret information
> for how Buergofol makes its liner today is the trade secret. . . .
> Current practicing of other trade secrets is not relevant.
>
> [...]
>
> MR. BOND (for Omega): We need that [discovery] from their
> products today so we can at least address the issues of
> infringement.  It's not an issue – we never said that once you
> produce them under a protective order they're no longer trader [sic]
> secrets.  They are trade secrets.  They are protected by the
> protective order.  That's the whole point.  So we need the
> information regarding their product today that they sold to Omega.

Docket No. 238, p. 148-149, 154-155, 162 (hearing transcript).  In response to arguments by the parties, the court ordered Buergofol to disclose trade secrets responsive to RFP Nos. 23 & 24 for "attorneys' eyes only" and offered *Omega* an opportunity to petition the court for expanded review under the protective order, only after the documents were disclosed by Buergofol.  Id. at pp. 166-168.  The court did not address the need for an *in camera* review as to Buergofol's trade secrets.

Buergofol does indeed attempt to relitigate an issue that was ruled on by this court.  Buergofol now argues in opposition to disclosure, speculating that a leak is possible without Buergofol ever knowing, and that enforcement of protective orders are not self-executing.  Docket No. 351, p. 20.  Buergofol threatens that an "erroneous order to disclose trade secrets by a district court" would lead to Buergofol's filing of an emergency mandamus interlocutory appeal the Eighth Circuit.  Docket No. 21.  Buergofol's threats are without merit.  As this court addressed in its order for sanctions at Docket No. 303, "[t]his court is not going to go back and relitigate this matter.  Buergofol was allowed to present its facts and argument at the September 18 hearing.  That was the time to bring forward the facts Buergofol now wants the court to consider.  Docket No. 303, p. 4.  Buergofol had ample opportunity to address the supposed insufficiencies in the court's protective order while the motion for protective order was briefed, over 200 docket entries ago, and again at the September 18 hearing.  It must now respond to RFP Nos. 23 & 24.

**C.    Court Ordered Custodian**

At the September 18 hearing, the court orally ordered the following:

> The other thing I'm going to order in connection with Docket
> Number 92 is I am going to order a document custodian or
> custodians deposition to take place within 30 days.  You can do it
> in the form of a 30(b)(6) deposition notice if you wish.  If you -- if
> the two of you can come up with an agreed person or set of
> persons, then you don't have to go that route. But I am going to
> order that a deposition of a document custodian or custodians take
> place so that someone within Buergofol can explain to Omega what
> documents are kept, how they're kept, how long they're kept,
> what's available.

Docket No. 238, p. 168.  The oral order was memorialized by text order: "It is

further ORDERED that Buergofol shall make available a document custodian(s)

for Omega to depose on subjects agreed upon by the parties but to include at a

minimum Buergofol's document retention policy whether that is formal or

informal, how documents are stored, where they are stored, and how they may

be searched."  Docket No. 234.  The court ordered the custodian interviews,

depositions be completed in 30 days.  Docket No. 238, p. 169.  The court

reiterated that the Rules of Civil Procedure allow for depositions to be taken

telephonically or by Zoom.  Id. at p. 170.  An extension would be granted if

needed.  Id.  Buergofol requested to designate anyone it wants to act as

custodian.  Id.  The court clarified that FED. R. CIV. P. 30(b)(6) allows for such

designation, but that anyone designated must be "sufficiently sophisticated

about the document retention policy, including any computer systems and ESI

that Buergofol has."  Id.

Buergofol has filed a motion for a protective order and to quash the Rule

30(b)(6) deposition, the subject of this magistrate's order at Docket Nos. 234

16

and 238.  Docket No. 254.  That motion is still pending before the district court and has not been referred to this magistrate judge.  Id.  (Furthermore, pursuant to stipulation of both parties [Docket No. 258, item 9] the deadlines for holding the Rule 30(b)(6) deposition of Buergofol and the holding of an ESI discovery planning conference are stayed until the district court resolves Buergofol's pending motion for a protective order [at Docket No. 254]).  Docket No. 259.  For those reasons, this magistrate declines to address the arguments raised by Omega and Buergofol for the enforcement of a deposition of a Buergofol document custodian in the instant motion.

### D.    Amendment of Scheduling Order

Omega requests that the scheduling order at Docket No. 267 should be amended.  Docket No. 324, p. 21.  Buergofol opposes amending the scheduling order.  Docket No. 351, p. 27.  This request is now moot.  A joint motion to amend/correct the scheduling order (Docket No. 267) at Docket No. 322 was granted by the district court.  Docket No. 328 (Docket No. 328 is the current scheduling order excluding various extensions for Buergofol's infringement contentions at Docket No. 379).  The district court recently denied Omega's motion to extend its deadline for non-infringement claims by two weeks.  Docket Nos. 393 & 401.  Further review of the scheduling order is not within scope of this referred motion.

### E.    Prohibition on Summary Judgment Filing

Omega moves to prohibit Buergofol from filing for summary judgment until after discovery has closed and it has complied with all discovery

17

obligations and court scheduling orders.  Docket No. 324, p. 21.  Buergofol

opposes the prohibition on filing for summary judgment arguing there is no

justification in doing so.  Docket No. 351.

Federal Rule of Civil Procedure 56 allows a party to move for summary

judgment any time until 30 days after the close of all discovery unless a

different time is set by local rule or a court order.  FED. R. CIV. P. 56(b).  The

local rule addressing summary judgment does not include a timing provision.

DSD L.R. CIV 56.1.  The district court's current scheduling order details the

deadline and procedure for the filing of dispositive motions, which supersedes

the time to file under the Federal Rules of Civil Procedure.  Docket No. 328.

> All motions, other than motions in limine, together with
> supporting briefs, will be filed and served *on or before March 17,*
> *2025.*  Opposing parties will file and serve answering materials
> and briefs within 21 days.  Reply briefs will be filed and served
> within 14 days.  If, after reviewing the parties' briefing on
> dispositive motions, the court believes a claim construction
> hearing is necessary, the court will reach out to the parties to
> schedule a hearing.

Id. at p. 3, ¶9 (emphasis added).

Rule 56 also provides that the nonmoving may oppose the summary

judgment motion when facts are unavailable.  FED. R. CIV. P. 56(d).  If a

nonmovant shows by affidavit or declaration that, for specified reasons, it

cannot present facts essential to justify its opposition, the court may: (1) defer

considering the motion or deny it; (2) allow time to obtain affidavits or

declarations or to take discovery; or (3) issue any other appropriate order.  Id.

Because there are appropriate remedies under the rules for Omega to

oppose a Buergofol summary judgment motion if discovery is lacking, this

court finds that a prohibition by court order at this stage is inappropriate. Further, Omega has had ample opportunity to address the dispositive motion deadline through other motions to amend/correct the scheduling order which have already been decided by this court.  As of the writing of this order, both parties are subject to the March 17, 2025, summary judgment deadline but may move for summary judgment any time before March 17, 2025.  Docket No. 328, p. 3.

## F.    Holding Buergofol's Counsel and Representatives in Contempt

Omega seeks this court to hold Buergofol in civil contempt due to its failure to comply with the discovery order.  Docket No. 324, p. 22.  See FED. R. CIV. P. 37(b)(2)(vii).  Omega requests that Buergofol be made "to appear before the Court to provide testimony regarding the existence, location, and destruction of documents responsive to RFPs 23 and 24."  Docket No. 324, pp. 22-23.  Buergofol responds arguing that it did comply with the court order by producing sufficiently responsive document to RFPs 23 & 24, thus there is no justification for holding it in contempt.  Docket No. 351, pp. 28-29. Further, Buergofol states Omega makes no showing that any documents have been destroyed and opposes calling Buergofol counsel to testify as fact witnesses.  Id.

"Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both."  Chi. Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000).  A party seeking a civil contempt judgment bears the initial

burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order.  Jake's, Ltd., Inc. v. City of Coates, 356 F.3d 896, 899-900 (8th Cir. 2004).  "Yet, substantial compliance with a court order may be a defense to civil contempt." Bell v. Young, No. 4:16-CR-04046-VLD, 2020 WL 7127133, at *11–12 (D.S.D. Dec. 4, 2020) (citations omitted).  "If a violating party has taken all reasonable steps to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." Id. (quoting Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986)).

This court has already determined that Buergofol has not complied with the discovery order at Docket No. 234.  (See subsection B of this order).  Buergofol unsuccessfully attempted to relitigate withholding trade secrets from discovery.  Buergofol was equally unsuccessful in arguing that producing discovery for the '882 Patent is irrelevant.  While Buergofol has not substantially complied with Docket No. 234, this court is not obligated to hold Buergofol in civil contempt.  Sanctions must be just and appropriate as to the discovery dispute.  This order sufficiently addresses Buergofol's obligations under the court order at Docket No. 234 to produce responsive documents as to RFP Nos. 23 & 24, including documents that include trade secrets subject to the protective order.  For those reasons, this court declines to hold Buergofol in civil contempt.

Much of Omega's accusations on document retention and destruction pertaining to civil contempt are more appropriately addressed not by

20

Buergofol's counsel, but by the pending Rule 30(b)(6) custodian's deposition.
The Rule 30(b)(6) ordered deposition at Docket No. 234 was to address the
parties dispute over access to documents.  Buergofol has moved to quash that
deposition, or at least has moved to narrow the scope of that deposition.  See
Docket No. 254.  That determination is pending before the district court and
will not be addressed here.

### G.    Omega's Request for Attorney's Fees

Omega moves for attorney's fees under FED. R. CIV. P. 37(b)(2)(C).

Instead of or in addition to the orders above, the court must order the
disobedient party, the attorney advising that party, or both to pay the
reasonable expenses, including attorney's fees, caused by the failure,
unless the failure was substantially justified, or other circumstances
make an award of expenses unjust.

FED. R. CIV. P. 37(b)(2)(C).  This court previously awarded Omega attorney's fees
for Buergofol's failure to comply with this court's order at Docket No. 234.
Docket No. 303, p. 9.  Similar circumstances are presented in this present
motion.  Buergofol was not substantially justified in its failure to comply with
this court's order.  As such, Omega's attorney's fees are granted.

### CONCLUSION

Based on the foregoing facts, law, and analysis, Omega's motion [Docket
No. 323] is granted in part and denied in part as follows:

ORDERED that Buergofol,  within 30 days of the filing of this order,
must supplement its responses to RFP Nos. 23 & 24 by disclosing all
responsive documents including trade secret documents to Omega with the
designation "attorneys' eyes only" as provided under the current protective

order at Docket No. 131.  If Omega wishes to disclose the documents beyond "attorneys' eyes only" it must petition the court and Buergofol will have an opportunity to respond.  It is further

ORDERED that those portions of Omega's motion as to (1) requiring Buergofol to produce one or more document custodians for deposition, (2) amending the scheduling order, (3) prohibiting Buergofol from filing summary judgment before close of discovery, and (4) holding Buergofol in civil contempt are denied.  It is further

ORDERED that Omega may submit a request for attorney's fees for preparing the motion for sanctions within 21 days of the date of this order and the court will consider it.  Buergofol shall have 21 days to respond to Omega's request for attorney's fees.  Omega will have 14 days thereafter to file a reply if necessary.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson

v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 31st day of May 2024.

BY THE COURT:

_____
VERONICA L. DUFFY

United States Magistrate Judge