UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>　　　　　　　Defendant. | Civil Action No.: 22-cv-04112-KES<br><br>**BUERGOFOL'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER (DKT. 402) REGARDING OMEGA'S RFP NOS. 23-24** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................  1

II.     PROCEDURAL BACKGROUND .......................................................  7

III.    LEGAL STANDARDS ......................................................................  11

    A.  A District Court Must Set Aside A Magistrate Judge's Ruling That Is Clearly Erroneous And/Or Contrary To Law ..................................................  11

    B.  The District Judge Has Inherent Power To Correct Erroneous Orders ...........  12

    C.  A Court May Compel Disclosure Of Trade Secrets Only After Specific Trade Secrets Are Identified And A Need Is Shown For Those Specific Trade Secrets To Support A Particular Claim Or Defense ............................  12

    D.  An Interlocutory Appeal Can Be Taken From An Order To Disclose Trade Secrets By Petition For A Writ Of Mandamus Or Under The Collateral Order Doctrine ................................................................  15

IV.     ARGUMENT ....................................................................................  17

    A.  The Magistrate Judge Erred By Making The Clearly Erroneous Factual Finding That Buergofol's Claims That Omega's Liners Made With Buergofol Film Infringe The '882 Patent "Remain Alive And Well"............  17

    B.  The Magistrate Judge Erred By Making The Clearly Erroneous Finding Of Fact That Buergofol's Motion For A Protective Order (Dkt. 72) To Protect Trade Secrets "Was Fully Argued" ..............................................  19

    C.  The Order Of The Magistrate Judge Is Contrary To Law Because It Erroneously Concludes That The Civil Rules Of Discovery Are Not Limited By Buergofol's Infringement Contentions ......................................  21

    D.  The Order Of The Magistrate Judge Is Contrary To Law Because It Erroneously Concludes That Documents Concerning Buergofol Film In Omega Liner "May Address" Invalidity ........................................  22

    E.  The Order Is Contrary To Law Because It Orders Buergofol To Disclose Trade Secrets Without Identifying Specific Trade Secrets And Omega's Need For Those Specific Trade Secrets To Support A Particular Defense ....  23

V.      AS IN *REMINGTON*, THE ORDER TO DIVULGE TRADE SECRETS WITHOUT PROCEDURAL PROTECTIONS IS A CLEAR ABUSE OF DISCRETION AND WARRANTS MANDAMUS REVIEW ............................  26

VI.     COMPLETE ARTICULATED REASONING FOR ORDERING DISCLOSURE OF A TRADE SECRET IS REQUIRED ............................................  28

VII.    THE ATTORNEY FEE SANCTIONS AGAINST BUERGOFOL ARE CONTRARY TO LAW .......................................................................  28

VIII.   CONCLUSION ................................................................................  29

BUERGOFOL'S OBJECTION
TO MAGISTRATE JUDGE'S
ORDER (DKT. 402)
         i
         4:22-cv-04112-KES

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages(s)**

*Al Odah ex rel. Al Odah v. United States*,
    559 F.3d 539 (D.C. Cir. 2009) ................................................................ 17

*Apple Inc. v. Samsung Elecs. Co.*,
    727 F.3d 1214 (Fed. Cir. 2013) .............................................................. 16

*Atmosphere Hosp. Mgmt., LLC v. Curtullo*,
    No. 5:13-cv-05040-KES-VLD, 2015 WL 144586 (D.S.D. Jan. 12, 2015) ...... 13, 24

*Burke v. Ability Ins. Co.*,
    No. 12-cv-4051-KES, 2013 WL 842512 (D.S.D. Mar. 06, 2013) ................... 13, 24

*CertusView Techs., LLC v. S & N Locating Servs., LLC*,
    107 F. Supp. 3d 500 (E.D. Va. 2015) .................................................... 12

*Chakales v. Commissioner of Internal Revenue*,
    79 F.3d 726 (8th Cir. 1996) ................................................................ 12

*Coons v. BNSF Ry. Co.*,
    268 F. Supp. 3d 983 (D. Minn. 2017) .................................................... 12

*Copan Italia Spa v. Puritan Med. Prods. Co.*,
    101 F.4th 847 (Fed. Cir. 2024) ............................................................ 16

*DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*,
    990 F.3d 1364 (Fed. Cir. 2021) ............................................................ 16

*Ferguson v. United States*,
    484 F.3d 1068 (8th Cir. 2007) .............................................................. 11

*FireClean LLC v. Tuohy*,
    No. 16-cv-00604, 2018 WL 1811712 (D. Ariz. Apr. 17, 2018) ............................ 14

*Highmark, Inc. v. Northwest Pipe Co.*,
    No. 10-cv-5089-JLV, 2012 WL 997007 (D.S.D. Mar. 23, 2012) ................... 13, 24

*In re Bieter Co.*,
    16 F.3d 929 (8th Cir. 1994) ................................................................ 16

*In re Remington Arm Co.*,
    952 F.2d 1029 (8th Cir. 1991) ............................................... 1, 5-6, 12-16, 24, 27-29

*Iowa Beef Processors, Inc. v. Bagley*,
    601 F.2d 949 (8th Cir. 1979), cert. denied, 441 U.S. 907 (1979) ........................ 16

*Pochat v. State Farm Mut. Auto. Ins.*,
    No. 08-cv-5015-KES-VLD, 2008 WL 5192427 (D.S.D. Dec. 11, 2008) ......... 14, 24

*Riddley v. Brott*,
    15-cv-569, 2016 U.S. Dist. Lexis 125950 (D. Minn. Sep. 15, 2016) .................... 12

*Sprint Commc'ns Co. v. Native Am. Telecom, LLC*,
    No. 10-cv-4110-KES, 2011 BL 449102 (D.S.D. May 17, 2011) .......................... 14

*Uniloc 2017 LLC v. Apple, Inc.*,
    964 F.3d 1351 (Fed. Cir. 2020) ............................................................ 17

**Statutes and Rules**

28 U.S.C. § 1651(a) ................................................................ 15

35 U.S.C. § 636(b)(1) ........................................................ 1, 5, 11

Fed. R. Civ. P. 26(b) ................................................ 12, 14, 21, 23

Fed. R. Civ. P. 26(c) ................................................................ 3

Fed. R. Civ. P. 72(a) ...................................... 1, 3, 5, 11-12, 29

Fed. R. Civ. P. 72(b) ............................................................. 12

Plaintiff Buergofol GmbH ("Buergofol"), files this Statement of Objections to the Magistrate Judge's Order (Dkt. 402) dated May 31, 2024, under Federal Rules of Civil Procedure 72[1] and 28 U.S.C. § 636(b)(1).

## I.     INTRODUCTION.

Pursuant to Rule 72(a) and 28 U.S.C. § 636(b)(1)(A), Buergofol objects to Magistrate Judge Duffy's Order (Dkt. 402), which must be set aside.  The Order is a "clear abuse of discretion" because it misapplies clear and established law pertaining to the discovery of trade secrets and fails to apply the mandated procedural protections for trade secret disclosure set forth by the leading case in this area, *In re Remington*.[2]  Under *In re Remington,* an order is clearly an abuse of discretion if it orders the disclosure of a party's trade secrets without first reviewing the purported trade secrets, establishing the relevance of the trade secrets to the case, assessing the demanding party's "true need," and determining that the potential harm of disclosure is outweighed by that need. 952 F.2d at 1033.  The Order admits that Judge Duffy did not review Buergofol's individual trade secrets.  Therefore, it was impossible to assess the "need" Omega might have for knowing any specific trade secret, and the order was an abuse of discretion under *In re Remington*.

In addition to the Order containing discrete findings of fact that are clearly erroneous and discrete legal conclusions that are contrary to law, the Order contains no succinct and adequately complete statement of what is required in order to comply with the Order.  The Order is further contrary to law because it sanctions Buergofol for failing to comply with a prior "oral ruling" consisting of unspecified portions of the transcript of a day-long hearing.  Review of the hearing transcript reveals there was no oral ruling, but

---

[1]  Hereinafter, the term "Rule" refers to the relevant Federal Rule of Civil Procedure.
[2]  *In re Remington Arms Company, Inc.*, 952 F.2d 1029 (8th Cir. 1991).

a series of statements made over the course of several hours and among the parties'
arguments that are subject to multiple, reasonable interpretations.  Both the current Order
(Dkt. 402) and the prior order (Dkt. 234) fail to state with adequate clarity what trade
secrets Judge Duffy is compelling the patentee Buergofol to divulge and what Buergofol
trade secrets, if any, are not being ordered to be disclosed.  The prior order (Dkt. 234)
consists of a statement that Buergofol "shall produce documents responsive to these
requests," making reference to the magistrate judge's "oral ruling" at the day-long
hearing on September 18, 2023.  As set forth below, Buergofol made a good faith effort
to produce documents responsive to the requests based on a reasonable reading of the
language from the transcript and the language of the requests themselves.
Buergofol objects to the attorney fee sanctions under Order (Dkt. 402) as being contrary to
law, and requests review by the district court to clarify what, specifically, is required.
Order (Dkt. 402) merely states that Buergofol must supplement its responses to RFPs
23-24 "by disclosing all responsive documents, including trade secret documents to
Omega" (Dkt. 402, 21:23-24).  But the scope of documents that are now deemed
"responsive" to the request for documents "sufficient to show" is not stated.  What
documents are "responsive," and what documents are not "responsive," was in dispute and
was not clarified.  The statements in the pages of the document Dkt. 402 do not explain
what discovery is actually being compelled.  For example, does the Order (Dkt. 402)
rewrite the "sufficient to show" language contained in RFP 23?  Is the Order (Dkt. 402)
compelling Buergofol to produce "all" documents containing any Buergofol trade secrets
to any level of detail for all structures, all compositions and all manufacturing
specifications for all film sold by Buergofol to Omega?  Or is the compelled disclosure of
trade secrets limited to "all" information on the structure, composition and specifications

of Buergofol film in Omega liner that Buergofol contends infringes either the '269 Patent

and/or the '882 Patent?  Or does the Order (Dkt. 402) compel Buergofol to produce only

those documents (possibly revealing trade secrets) that pertain to specific structures,

compositions and specifications of Buergofol film that are actually "needed" by Omega to

support a non-infringement defense or an invalidity defense to a claim by Buergofol that a

particular Omega liner (the "Accused Product") that contains the particular Buergofol film

infringes either the '269 Patent and/or the '882 Patent?  Does Order (Dkt. 402) compel

Buergofol to divulge trade secrets that have no bearing on whether Omega liner that

contains Buergofol film can be deemed to fall within the scope of a claim of either the

'269 Patent or the '882 Patent?

   An order that broadly compels the disclosure of "all responsive" trade secret

documents without undertaking the "procedural protections" of Rule 26(c) as outlined by

*In re Remington*, without the magistrate judge even knowing what individual trade secrets

are ordered to be disclosed, is clearly an abuse of discretion and therefore must be set aside

by the district court pursuant to Rule 72(a) as being "contrary to law."

   Buergofol has identified at least five Buergofol trade secrets pertaining to the

structure, composition and/or specifications of Buergofol's film sold to Omega.  If

Buergofol is compelled to produce documents that reveal all trade secrets Buergofol has

relating to all parts of all films Buergofol sold to Omega, it will suffer severe harm. This is

the reason that the Eighth Circuit's procedure in *In re Remington* must be applied.

Magistrate Judge Duffy characterizes Buergofol's discussion of seeking protection for its

trade secrets by petitioning for a writ of mandamus as being a threat and being "without

merit." (Dkt. 402, 15:11-15)  However, the Order concludes that mere assertion in district

court that an infringer's product infringes a patent necessarily requires disclosure of all

trade secrets relating to the accused product.  This is contrary to both controlling legal precedent and public policy and raises serious issues of federal patent policy that implicate the jurisdiction of the Court of Appeals for the Federal Circuit.  Buergofol believes that the Court of Appeals for the Federal Circuit will be concerned by the prospect of district courts forcing patentees to divulge all their trade secrets about their own products as a condition to asserting a patent against an infringer, grant review by mandamus, and apply the substantive law of the Eighth Circuit as set forth in *In re Remington*.

The Order assumes that a court's general protective order will provide adequate protection for Buergofol's trade secrets, and it is acceptable for a district court to order a party to disclose its trade secrets so long as the documents containing those trade secrets are labeled "attorneys' eyes only." (Dkt. 402, 15:3).  However, *In re Remington* recognizes that protective orders and the sanctions available thereunder are "largely ineffectual…for once the information is wrongly released, the trade secret is lost forever, and no sanction imposed on the violator can retrieve it." 952 F.2d at 1033.  Trade secrets can be, and many times are, effectively revealed notwithstanding court protective orders.  Indeed, a trade secret can be revealed without the letter of a protective order having ever been violated. Third-party companies sometimes hire technically savvy patent attorneys to "shadow" their competition's litigations in order to glean information that invariably comes out because of how discovery operates in the U.S. legal system.  Indeed, several Buergofol trade secrets have already and unfortunately been revealed in this case.  Preserving a trade secret is not accomplished simply by marking a document "attorneys' eyes only."  The issue of the inadequacy of the court's general protective order in preventing the dissemination of Buergofol's trade secrets was never briefed to this Court, nor was it properly argued at any hearing.  The Order (Dkt. 402) contains the clearly erroneous statement of fact that the

adequacy of a protective order at preventing the dissemination of trade secrets was litigated, and that Buergofol is attempting to "relitigate" the issue. (Dkt. 402, 15:8-22)  This issue was never litigated and was not properly considered at the hearing on September 18, 2023.

The Magistrate Judge has issued Order (Dkt. 402) that contains clearly erroneous findings of fact and legal determinations that are contrary to law.  Pursuant to Rule 72(a) and 28 U.S.C. § 636(b)(1)(A), Buergofol objects to:

1) The clearly erroneous finding of fact that "Buergofol's claims that Omega's liners made with Buergofol film infringe the '882 Patent remain alive and well." (Dkt. 402, 11:11-13)

2) The clearly erroneous finding of fact that Buergofol's motion for a protective order (Dkt. 72) to protect trade secrets "was fully argued" and that Buergofol is relitigating whether a court may order Buergofol to disclose trade secrets without first finding that Omega has a need to learn each specific trade secret in order to prepare a particular defense. (Dkt. 402, 13:22-23; 15:8)

3) The erroneous legal conclusion that "The civil rules of discovery are not limited by Buergofol's would be infringement contentions." (Dkt. 402, 12:1-2)

4) The clearly erroneous finding of fact that specific Buergofol documents "may address" infringement or invalidity of the '882 Patent and therefore must be produced. (Dkt. 402, 12:4-12)

5) The erroneous legal conclusion that Buergofol can be ordered "to disclose trade secrets" without first affording Buergofol the opportunity to show that specific documents contain trade secrets and without determining whether the identified trade secrets are both *relevant* to the lawsuit and *needed* for Omega to prepare its defense. (Dkt. 402, 15:2-3; 21:23-24)

These erroneous findings of fact and conclusions of law have resulted in the Order (Dkt. 402) improperly compelling Buergofol to divulge trade secrets.  The Order as a whole is contrary to law because it compels the disclosure of trade secrets without, first, identifying specific trade secrets and, second, establishing Omega's need for each specific trade secret to support a particular claim or defense, as required by *In re Remington Arms Company, Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991).

## II.    PROCEDURAL BACKGROUND.

After a hearing on September 18, 2023, Magistrate Judge Duffy issued a written order (Dkt. 234) on Omega's motion regarding Omega's Requests for Production Nos. 23-24 (RFPs 23-24) and ordered Buergofol to produce documents responsive to RFPs 23-24.  In response to the Order (Dkt. 234), Buergofol produced comprehensive and descriptive documents setting forth the structure, composition and specifications of each and every layer of each and every Buergofol inner and outer film product that Buergofol ever sold to Omega that Buergofol alleges would infringe the '269 Patent if used to make an Omega liner.  This is acknowledged in Judge Duffy's subsequent Order (Dkt. 402, 8:23-9:8) to which Buergofol now files these objections. RFPs 23-24 request:

> **RFP 23**: Documents related to each product (including each version thereof) sold by Buergofol to Omega Liner Company, Inc. sufficient to show the structure and composition of each component part of each product (or version thereof).
> **RFP 24**: Manufacturing specifications for each product (including each version thereof) sold by Buergofol to Omega Liner Company, Inc.

RFPs 23-24 are not requests for either "all documents" or any specific documents. Rather, RFP 23 is a request for documents "sufficient to show," and RFP 24 is a general request for manufacturing specifications (and not "all" manufacturing specifications). Consequently, the issue of whether Buergofol produced adequate documents in response to RFPs 23-24 hinges on what is a sufficient degree of detail that the documents must

show regarding the structure, composition and specifications of film that Buergofol sold to Omega.

At the hearing on September 18, 2023, Judge Duffy made an "oral ruling" regarding what documents Buergofol was to produce in response to RFPs 23-24. The written order (Dkt. 234) regarding RFPs 23-24 states that it is made "in accordance with the court's oral ruling at the hearing." (Dkt. 234) The oral ruling was for Buergofol to produce documents with information regarding the structure, composition and specifications of "products that you sold to them *that you claim are infringed by them*" (Dkt. 238, 167:11-12). Judge Duffy's subsequent Order (Dkt. 402, 7:25-26) contains the following quote from the oral ruling:

> THE COURT: I think that that *addresses both Buergofol's fears about trade secret disclosures and also your concerns about being able to defend yourself* [Omega] in the lawsuit.
>
> […]
>
> MR. T.L. WALLACE (for Buergofol): So Buergofol is supposed to disclose how it makes the *films . . . that it sold to Omega after the critical date of the patent*?
>
> THE COURT: The *products that you sold to them that you claim are infringed by them*, yes, to put it in a different frame.

(Dkt. 402, 7:19-26) (ellipses in original) Thus, the scope of the requested information appeared to be limited to documents that address the issue of infringement and did not cover the issue of validity. Based on this language, Buergofol reasonably concluded that the scope of the documents to be produced was limited to documents with information on Buergofol film that, when used by Omega, would result in an accused liner product that Buergofol contends infringes a patent-in-suit.

Limiting the scope of production to those bearing on infringement was logical, because the documents contained trade secret information, and the potential harm to

Buergofol from trade secret disclosures outweighed any negligible benefit to Omega from the speculative invalidity argument that the structure of film Buergofol sold to Omega in 2018 was the same as that of film Buergofol sold to other customers prior to the critical dates more than five years earlier.  Buergofol's film made after the critical dates of the patents-in-suit is not prior art, so trade secret information about the structure of that later-made film has no bearing on validity.  There is also no evidence in this case that the structure of film that Buergofol sold to different customers is the same. Documents showing the structure, composition and manufacturing specifications of film Buergofol sold to Omega in 2018 cannot be used under the clear and convincing evidentiary standard to invalidate the '882 Patent by showing the structure of film sold more than five years earlier to different customers.  Consequently, documents showing the structure, composition and specifications of film Buergofol sold to Omega cannot address invalidity.

Thus, it was reasonable for Buergofol to conclude that the oral ruling found that the potential harm to Buergofol of having to disclose (unspecified) trade secrets regarding how Buergofol made film in 2018 and whether that film had a migrating compound outweighed any negligible probative value in Omega's attempt to invalidate the '882 Patent because the structure of film Buergofol sold to Omega in 2018 cannot be assumed to be identical to that of film that Buergofol had sold to different customers prior to the critical date of the '882 Patent more than five years earlier.  Based on its reading of the order and the transcript, Buergofol produced comprehensive documents setting forth the structure of every film product that Buergofol sold to Omega that Buergofol alleges would infringe the '269 Patent if used to make an Omega liner.

In order to pursue a new[3] theory of invalidity of the '882 Patent (based on Omega's speculation that Buergofol's film continued to include the same polyamide ingredients immediately prior to the critical dates as it did in 2002), Omega filed yet another discovery motion (Dkt. 323) four months after the hearing on September 18, 2023, seeking to learn Buergofol's trade secrets and whether film sold by Buergofol to Omega in 2018 used a particular polyamide brand that Omega believes included a "migrating compound."

Even though three months earlier Buergofol had produced, in response to RFP Nos. 23-24, comprehensive documents setting forth the structure of every film product that Buergofol sold to Omega that Buergofol alleges would infringe the '269 Patent if used to make an Omega liner, Omega's motion argued that Buergofol had not complied with Judge Duffy's original order (Dkt. 234) because Buergofol did not produce specific documents (the "extrusion sheets") that, in addition to the information on structure previously disclosed, also reveal Buergofol's trade secrets. However, the main issue for infringement of the '269 Patent is the VICAT softening point of polyethylene. Whether an accused Omega liner has a "migrating compound" is irrelevant to the '269 Patent. The trade secrets that Omega seeks to learn are not relevant to Buergofol's claim that Omega infringed the '269 Patent by using Buergofol's film. Rather, Omega now seeks Buergofol's trade secret information to prove that the outer polyamide layer of inner film Buergofol sold to Omega in 2017-2018 included a particular "migrating compound" in order to speculate that inner film sold by Buergofol to other customers more than five years earlier must have included the same "migrating compound" and must also have been used to make UV CIPP liners in the United States.

---

[3] The Order incorrectly asserts that this is not a "new" theory of invalidity. (Dkt. 402, 11:15)

On May 7, 2024, Buergofol served its infringement contentions as ordered by this Court's scheduling orders (Dkts. 136 and 328). **Buergofol does not contend that any Omega liner incorporating any Buergofol film infringes the '882 Patent**. Therefore, knowledge of a trade secret about Buergofol film is not needed to prove infringement of the '882 Patent. Buergofol's infringement contentions state, "Buergofol contends that all liners made by Omega without using inner film or outer film from Buergofol infringe claims 1, 3-5, 7 and 10-11 of the '882 Patent to the extent that the outer facing external side of the inner tubular film has a coating or covering of a migrating compound. Each such OMEGA LINER is an Accused Product." (Dkt. 390-7, 3:27-4:2) Thus, any liner made by Omega using inner film and/or outer film from Buergofol is not an Accused Product. Buergofol's infringement contentions even repeat this limitation in Exhibit B covering the '882 Patent: "Buergofol contends that each instance of 'OMEGA LINER' that was made by Omega **using inner film and outer film that was not made by Buergofol** is an Accused Product to the extent that the outer facing external side of the inner tubular film has a coating or covering of a migrating compound." (Dkt. 390-7, 14:1-4)

The procedural background outlined above indicates that, because Judge Duffy's original order (Dkt. 234) required disclosure of documents showing the structure of Buergofol film only if needed by Omega to defend itself against Buergofol's claim of infringement, Buergofol was not compelled to produce documents with information on the structure of Buergofol's film in 2018 that addressed infringement of the '882 Patent and migrating compounds because Buergofol does not accuse any Omega product that includes Buergofol film of infringing the '882 Patent.

## III.   LEGAL STANDARDS.

### A. A District Court Must Set Aside A Magistrate Judge's Ruling That Is Clearly Erroneous And/Or Contrary To Law.

A magistrate judge's authority over nondispositive pretrial matters is governed by 28 U.S.C. § 636(b)(1)(A) and Rule 72(a).  Pursuant to Rule 72(a), if a party files objections to a magistrate judge's order on nondispositive pretrial matters, then "[t]he district judge in the case ***must*** consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Thus, the district judge in this case ***must*** modify or set aside the parts of the Order (Dkt. 402) that are "clearly erroneous" or "contrary to law."  *Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007).  For questions of fact, a decision is "'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Commissioner of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996).  For questions of law, a ruling is contrary to law when it "fails to apply or misapplies pertinent statutes, case law or rules of procedure." *Coons v. BNSF Ry. Co.*, 268 F. Supp. 3d 983, 991 (D. Minn. 2017).  For questions of law, there is no practical difference between review under Rule 72(a)'s contrary-to-law standard and Rule 72(b)'s *de novo* standard. *CertusView Techs., LLC v. S & N Locating Servs., LLC*, 107 F. Supp. 3d 500, 504 (E.D. Va. 2015).  An Article III judge conducts a *de novo* review of a magistrate judge's order with respect to issues of law, such as when the magistrate judge misapplies pertinent case law. *Riddley v. Brott*, 15-cv-569, 2016 U.S. Dist. Lexis 125950, at *3 (D. Minn. Sep. 15, 2016).

### B. The District Judge Has Inherent Power To Correct Erroneous Orders.

Apart from what a district judge ***must*** do under Rule 72(a) in response to objections to a magistrate judge's order, a district judge has the inherent power to modify or set aside

any interlocutory order at any time prior to the entry of final judgment, and in so doing the district judge need not show any deference of any kind to the order being reviewed. The district judge's inherent power to set aside any order prior to final judgment includes any order of a magistrate judge.

### C. A Court May Compel Disclosure Of Trade Secrets Only After Specific Trade Secrets Are Identified And A Need Is Shown For Those Specific Trade Secrets To Support A Particular Claim Or Defense.

In trade secret discovery disputes in the Eighth Circuit, a district court must provide the procedural protections set forth in *In re Remington Arms Company, Inc.*, 952 F.2d 1029 (8th Cir. 1991). A court may not simply compel disclosure of trade secret information that falls within the scope of ordinary discovery under Rule 26(b) because the court finds that it is relevant to a party's claim or defense and proportional to the needs of the case. *In re Remington* sets forth the procedure that provides heightened protection for trade secrets.

First, the court must afford the responding party the opportunity to demonstrate that responsive documents contain trade secrets and to identify those specific trade secrets. Failure to do so is an "abuse of discretion." *In re Remington*, 952 F.2d at 1032 ("the district court clearly abused its discretion.") The court should examine the documents *in camera* in deciding the threshold question of whether the documents contain trade secrets. *Id.* at 1033; *Sprint Commc'ns Co. v. Native Am. Telecom, LLC*, No. 10-cv-4110-KES, 2011 BL 449102, at *2 (D.S.D. May 17, 2011).

Second, the specific trade secret information must be shown to be both relevant to the subject matter of the lawsuit and ***necessary for the party seeking discovery to prepare its case for trial***. *Id.* at 1032. The key word here is "necessary." This Court has followed *In re Remington* in numerous cases to preclude the discovery of a trade secret

that the requesting party did not show was necessary for preparing its case. *See Atmosphere Hosp. Mgmt., LLC v. Curtullo*, No. 5:13-cv-05040-KES-VLD, 2015 WL 144586, 2015 BL 6134, at *6 (D.S.D. Jan. 12, 2015) ("Once plaintiff shows that the information requested constitutes a trade secret, the burden then shifts to defendants 'to show that the information is relevant to the subject matter of the lawsuit and is **necessary** to prepare the case for trial.'"); *Burke v. Ability Ins. Co.*, No. 12-cv-4051-KES, 2013 WL 842512, 2013 BL 60958, at *4 (D.S.D. Mar. 06, 2013) ("Once AIC shows that the requested information constitutes a trade secret, the burden then shifts to Burke 'to show that the information is relevant to the subject matter of the lawsuit and is **necessary** to prepare the case for trial.'"); *Highmark, Inc. v. Northwest Pipe Co.*, No. 10-cv-5089-JLV, 2012 WL 997007, 2012 BL 454983, at *8 (D.S.D. Mar. 23, 2012) ("If the party seeking discovery fails to show both the relevance of the requested information and the **need** for the material in developing its case, there is no reason for the discovery request to be granted, and the [confidential materials] are not to be revealed."); *Sprint Commc'ns Co. v. Native Am. Telecom, LLC*, No. 10-cv-4110-KES, 2011 BL 449102, at *2 (D.S.D. May 17, 2011) (Citing *In re Remington*, "The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is **necessary** to prepare the case for trial."); *Pochat v. State Farm Mut. Auto. Ins.*, No. 08-cv-5015-KES-VLD, 2008 WL 5192427, 2008 BL 386063, at *8 (D.S.D. Dec. 11, 2008) ("Once State Farm shows that the information requested constitutes a trade secret, the burden then shifts to the Pochats 'to show that the information is relevant to the subject matter of the lawsuit and is **necessary** to prepare the case for trial.'"); *FireClean LLC v. Tuohy*, No. 16-cv-00604, 2018 WL 1811712, 2018 BL 135375 (D. Ariz. Apr. 17, 2018) ("[T]o paraphrase the court in *In re Remington*, discovery should be denied unless Defendant

establishes the relevance of FC's trade secret formula to his case, demonstrates a ***true
need*** for the information, and shows that the potential harm to Plaintiffs is outweighed by
his need for discovery.")

In short, according to *In re Remington*, no weighing analysis is performed unless
both relevance and need for the trade secret information are first shown.  The specific need
that must be shown in trade secret discovery is not simply the requirement under Rule
26(b) that the discovery be "proportional to the needs of the case."  The court must
consider each identified trade secret together with a particular claim or defense in order to
determine whether there is a need for that trade secret in preparing the particular claim or
defense.  If the party seeking discovery fails to show a need for the trade secret information
to support a claim or defense, "there is no reason for the discovery request to be granted,
and the trade secrets are not to be revealed." *In re Remington*, 952 F.2d at 1032.

Third, only if the party seeking discovery shows both relevance and need, does
the court then go on to perform a balancing test.  The court must then weigh the injury
that disclosure might cause to the trade secret against the moving party's need for the
trade secret information. *Id.* at 1032.

In *In re Remington*, Remington sought a protective order prohibiting the
discovery of trade secret documents and argued that a conventional protective order could
not adequately preserve the confidentiality of, or effectively limit the dissemination of, its
trade secrets.  The district court denied Remington's request that the court review the
trade secret documents *in camera* to identify the trade secrets and ordered production of
the trade secret documents without first establishing the requesting party's need for the
trade secret information.  The Eighth Circuit held that "the district court ***clearly abused
its discretion***" by failing to provide the required procedural protections to Remington's

trade secrets. *Id.* at 1032.  The Eighth Circuit also expressed concern about the effectiveness of a protective order in a trade secrets case and noted that a contempt order for violating a protective order is largely ineffectual "for once the information is wrongfully released, the trade secret is lost forever and no sanction imposed on the violator can retrieve it." *Id.* at 1033.

### D.  An Interlocutory Appeal Can Be Taken From An Order To Disclose Trade Secrets By Petition For A Writ Of Mandamus Or Under The Collateral Order Doctrine.

The Eighth Circuit has issued writs of mandamus pursuant to 28 U.S.C. § 1651(a) directing district courts to vacate orders compelling discovery that constitute a clear abuse of discretion, such as an order compelling the production of trade secrets without first having considered relevant factors or without having applied the proper legal standard. *In re Remington Arms Company, Inc.*, 952 F.2d 1029, 1031 (8th Cir. 1991); *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 953 (8th Cir. 1979), cert. denied, 441 U.S. 907 (1979); *In re Bieter Co.*, 16 F.3d 929, 931-33 (8th Cir. 1994).  In *In re Remington*, the Eighth Circuit vacated the district court's order compelling the disclosure of trade secrets under a protective order where Remington contended that the protective order would not preserve the confidentiality of its trade secrets.  The Eighth Circuit ruled that the district court must afford Remington the opportunity to show (preferably *in camera*) that specific documents contain specific trade secrets, and then the party seeking discovery must show both relevance and need for the specific trade secrets before the district court performs the next step of weighing the injury of trade secret disclosure against the moving party's need for the trade secret information to prepare its case for trial.  Without a showing of need, the trade secrets are not to be revealed at all—

regardless of whether a protective order is in place or not. *In re Remington*, 952 F.2d at 1032-33.

The Federal Circuit Court of Appeals has found that it has appellate jurisdiction under the collateral order doctrine over district court orders that [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] are effectively unreviewable on appeal from a final judgment. *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1220 (Fed. Cir. 2013) (order would have been unreviewable on appeal "because once the parties' confidential information is made publicly available, it cannot be made secret again."). The question of whether the collateral order doctrine applies is governed by Federal Circuit law. *Copan Italia Spa v. Puritan Med. Prods. Co.*, 101 F.4th 847, 2024 BL 165099, at *3 (Fed. Cir. 2024); *DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1368 (Fed. Cir. 2021).

District court orders to disclose trade secret information in patent cases can be appealed to the Federal Circuit under the collateral order doctrine. In *Uniloc v. Apple*, the Federal Circuit vacated an order to unseal confidential documents under the collateral order doctrine because the district court's order [1] conclusively determined that Uniloc's confidential filings should be made public, [2] addressed an important issue separate from the merits of the underlying patent infringement actions (the scope of the district court's discretion to deny a sealing motion), and [3] was effectively unreviewable on appeal from a final judgment because once the parties' confidential information was made publicly available, it could not be made secret again. *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1358 (Fed. Cir. 2020) (quoting from *Al Odah ex rel. Al Odah v. United States*, 559 F.3d 539, 544 (D.C. Cir. 2009) ("once the information is disclosed, the

'cat is out of the bag' and appellate review is futile").

## IV.   ARGUMENT.

### A.   The Magistrate Judge Erred By Making The Clearly Erroneous Factual Finding That Buergofol's Claims That Omega's Liners Made With Buergofol Film Infringe The '882 Patent "Remain Alive And Well."

The Order (Dkt. 402) includes the clearly erroneous finding of fact that Buergofol is currently asserting an infringement claim alleging that Omega's liners made with Buergofol film infringe the '882 Patent. (Dkt. 402, 11:11-13)  This factual finding is the basis for the Order's conclusion that Buergofol failed to produce adequate documents as earlier ordered (Dkt. 234).  In making this finding, Judge Duffy ignores the binding nature of the infringement contentions that Buergofol served pursuant to this Court's scheduling orders (Dkts. 136 and 328), which explicitly state that only an Omega liner made using inner film and outer film that was not made by Buergofol is an Accused Product under the '882 Patent.  Buergofol's infringement contentions state, "Buergofol contends that all liners made by Omega *without using inner film or outer film from Buergofol* infringe claims 1, 3-5, 7 and 10-11 of the '882 Patent . . ." (Dkt. 390-7, 3:27-28) and "Buergofol contends that each instance of 'OMEGA LINER' that was made by Omega *using inner film and outer film that was not made by Buergofol* is an Accused Product . . ." (Dkt. 390-7, 14:1-3).

The Order (Dkt. 402) includes the erroneous finding, "Buergofol's claims that Omega's liners made with Buergofol film infringe the '882 Patent remain alive and well." (Dkt. 402, 11:11-13)  The Order also includes the erroneous finding that a specific (nonexistent) allegation that liner incorporating Buergofol film infringes the '882 Patent is included in "what continues to be Buergofol's claims of Omega's infringement on the '882 Patent stated in the amended complaint." (Dkt. 402, 12:5-7)  The error in Judge

Duffy's finding results from accepting Omega's fallacious argumentation that

the limitation on allegations of infringement to only enumerated Accused Products

described in the infringement contentions is somehow not binding or effective until and

unless the complaint is amended to specifically repeat those allegations of the

infringement contentions as to the enumerated Accused Products.  However, limitations

on Accused Products contained in infringement contentions are binding regardless of

whether the complaint is correspondingly amended.

Judge Duffy's earlier order (Dkt. 234) ordered Buergofol to produce documents in

response to RFPs 23-24 sufficient to show the structure, composition and manufacturing

specifications of "products that you [Buergofol] sold to them [Omega] ***that you claim are***

***infringed by them***." (Dkt. 238, 167:11-12)  Because Buergofol does not contend that

Omega's liners made with Buergofol film infringe the '882 Patent, Judge Duffy's earlier

order (Dkt. 234) does not order Buergofol to produce documents sufficient to show the

structure, composition and manufacturing specifications of film that could infringe the

'882 Patent if used to make a liner.  Yet the Order (Dkt. 402) inconsistently finds that

Buergofol failed to comply with the earlier order (Dkt. 234) because Buergofol failed to

produce unspecified trade secret documents with the implication that Omega needs those

unspecified trade secret documents to defend itself against a claim that an Omega liner

product containing Buergofol film infringes the '882 Patent.  Buergofol's infringement

contentions establish, as irrevocably as any amendment to the complaint, that Buergofol

does not contend that Omega's liners made with Buergofol film infringe the '882 Patent.

### B.   The Magistrate Judge Erred By Making The Clearly Erroneous Finding Of Fact That Buergofol's Motion For A Protective Order (Dkt. 72) To Protect Trade Secrets "Was Fully Argued."

The Order (Dkt. 402) contains the clearly erroneous finding of fact that

Buergofol's motion for a protective order (Dkt. 72) to protect trade secrets "was fully argued" and that Buergofol is relitigating the ruling that, so long as there is a general protective order in place, a court may order Buergofol "to disclose trade secrets" without first identifying specific trade secrets and establishing that Omega has a need for each specific trade secret to prepare a particular defense. (Dkt. 402, 13:22-23; 15:8-22)

Buergofol's motion to protect its trade secrets with a protective order was not fully argued because it was denied before it could be argued.  This Court declined to consider the merits of Buergofol's motion on the grounds that Buergofol failed adequately to meet and confer by not meeting by teleconference and by merely sending emails putting forward only a single solution to the discovery dispute. (*See* Dkt. 180, 14:19-15:1)  Yet Judge Duffy heard Omega's cross-motion to compel (Dkt. 92), for which Omega failed to meet and confer in any manner—telephonically, by email or otherwise—and also failed to file a separate certification for its cross-motion as required by LR 37.1. Omega's cross-motion to compel responses to RFPs 23-24 (Dkt. 92) should have been denied for inadequate meeting and conferring because Buergofol's motion for a protective order to protect trade secrets (Dkt. 72) was denied for inadequate meeting and conferring.  Obviously, any meeting and conferring that occurred for Buergofol's motion for a protective order (Dkt. 72), from which Omega's cross-motion was made, could not have satisfied the requirement for Omega to meet and confer because Buergofol's motion was denied for inadequate meeting and conferring.

Buergofol's request to preclude the discovery of trade secrets was never argued. Omega's cross-motion, but not Buergofol's motion, was argued at the hearing on September 18, 2023.  ***Judge Duffy did not consider even a single trade secret at the hearing on September 18, 2023***, even though Buergofol's counsel offered to explain the

trade secrets *in camera*.  The Order (Dkt. 402) even acknowledges that Buergofol offered to explain the trade secrets *in camera*, but Judge Duffy declined to consider specific trade secrets.[4] (Dkt. 402, 14:10-15).  The Order admits, "The court did not address the need for an *in camera* review as to Buergofol's trade secrets." (Dkt. 402, 15:6-7)  Yet the Order (Dkt. 402) erroneously characterizes Buergofol's statement that Judge Duffy failed to follow the procedural protections afforded to the discovery of trade secrets as an attempt by Buergofol to "relitigate" the issue of how trade secrets must be identified and the need for their discovery must be established before a court may order a party "to disclose trade secrets responsive to RFP Nos. 23 & 24 for 'attorneys' eyes only'" (*See* Dkt. 402, 15:2-3).

Buergofol was not allowed to present facts and argument at the September 18 hearing regarding specific trade secrets and why Omega had no need to learn of any specific Buergofol trade secret to prepare a particular defense, such as an invalidity defense.  Yet the Order (Dkt. 402) contains the clearly erroneous statement of fact, "Buergofol was allowed to present its facts and argument at the September 18 hearing. That was the time to bring forward the facts Buergofol now wants the court to consider. ***Docket No. 303***, p. 4." (Dkt. 402, 15:16-19)  It is revealing that the order (Dkt. 303) did not relate to any of (1) RFPs 23-24, (2) the structure, composition and specifications of Buergofol's film, or (3) Buergofol's trade secrets.  Instead, the order (Dkt. 303) related to Omega's RFP 103 and its pursuit of the nonexistent "second BASF analysis".

---

[4] Omega argues incorrectly in its reply brief to its motion (Dkt. 323) for sanctions that Omega was required to call a fact witness at the hearing on Omega's cross-motion (Dkt. 92) in order to explain Buergofol's trade secrets to Judge Duffy *in camera*. (Dkt. 353, 26:6-11)  However, there is no requirement that trade secrets must be explained by a fact witness.  In fact, litigation counsel typically explains the trade secrets. In addition, Omega incorrectly states that *Remington* can be distinguished because information on trade secrets was submitted for *in camera* review, but the court refused to review it. (Dkt. 353, 26:16-18)  The trade secret documents were never submitted for *in camera* review.

Buergofol's arguments relating to trade secrets are not relitigating anything related to Omega's discovery boondoggle for the "second BASF analysis."

### C. The Order Of The Magistrate Judge Is Contrary To Law Because It Erroneously Concludes That The Civil Rules Of Discovery Are Not Limited By Buergofol's Infringement Contentions.

The Order (Dkt. 402) at page 12 states, "The civil rules of discovery are not limited by Buergofol's would be infringement contentions." (Dkt. 402, 12:1-2)  This erroneous legal conclusion must be removed from any order that might issue.  The very purpose of infringement contentions is to establish, and to limit, what infringement claims can be made. The scope of discovery under Rule 26(b) is absolutely dependent on, and limited by, the claims and defenses of the parties.  Rule 26(b) is titled "Discovery Scope and Limits" and limits discovery to matters that are relevant to any party's claim or defense. Buergofol does not need to amend its complaint to match the infringement contentions because the infringement contentions already limit the claims it can pursue.

Whether a patent plaintiff claims that a particular patent is infringed, of course, affects what can be considered relevant to the claim or to a defense to that claim, and therefore affects the scope of discovery.  Likewise, whether a patent plaintiff contends that a particular accused instrumentality (or Accused Product) infringes a particular patent also affects what can be considered relevant to the claim of infringement, or to a defense to that claim of infringement.  Accordingly, the conclusion in the Order (Dkt. 402) that the civil rules of discovery are not limited by Buergofol's infringement contentions (Dkt. 390-7) is erroneous.

### D. The Order Of The Magistrate Judge Is Contrary To Law Because It Erroneously Concludes That Documents Concerning Buergofol Film In Omega Liner "May Address" Invalidity.

The cryptic prior order (Dkt. 234) that the current Order (Dkt. 402) finds was not

complied with was made "in accordance with the court's oral ruling at the hearing."

(Dkt. 234)  The "oral ruling" that is quoted by the Order acknowledges that how

Buergofol made film that it sold to Omega after the critical dates of the patents-in-suit is

potentially relevant only to infringement but not to invalidity.  The Order quotes the oral

ruling from September 18, 2023:

> THE COURT: I think that that ***addresses*** both Buergofol's fears about trade secret disclosures and also your ***concerns about being able to defend yourself*** [Omega] in the lawsuit.
>
> […]
>
> MR. T.L. WALLACE: So Buergofol is supposed to disclose how it makes the ***films . . . that it sold to Omega after the critical date of the patent***?
>
> THE COURT: The ***products that you sold to them that you claim are infringed by them***, ***yes***, to put it in a different frame.

(Dkt. 402, 7:19-26)  The Order (Dkt. 402), however, conflicts with the statements at the

hearing and instead concludes that documents containing trade secrets on film Buergofol

sold to Omega "may address" invalidity and therefore are discoverable.  The Order states:

> Buergofol takes the court order too far by suggesting that it limits discovery to just the infringement claims. To the extent that ***the documents may address*** both infringement and ***invalidity*** arguments of both patents, this court has ordered they are discoverable, and Buergofol must produce them.

(Dkt. 402, 12:7-11) (emphasis added)  The legal conclusion in the Order that trade secret

information about film that Buergofol sold to Omega more than five years after the

critical dates of the patents-in-suit "may address" the invalidity of the patents not only

adds a condition that was not part of the original order but is contrary to law because

invalidity contentions necessarily address things that happened *before* the patent

application was filed.  Trade secret information about film sold in 2018 cannot "address"

the invalidity of a patent whose critical date is in 2012 or earlier.  Documents containing

trade secrets about film sold after the critical date of a patent are not relevant to invalidity

and are certainly not needed to prepare an invalidity defense to the patent.  Ordering

Buergofol to produce documents, such as "extrusion sheets" disclosing information on

"migrating compounds," about film Buergofol sold to Omega after the critical date of the

'882 Patent because the magistrate judge erroneously concluded that the documents "may

address" invalidity is a clear abuse of discretion. (*See* Dkt. 402, 9:13-18)

> **E.  The Order Is Contrary To Law Because It Orders Buergofol To Disclose Trade Secrets Without Identifying Specific Trade Secrets And Omega's Need For Those Specific Trade Secrets To Support A Particular Defense.**

The Order (Dkt. 402) is a clear abuse of discretion and therefore contrary to law

because it orders Buergofol "to disclose trade secrets" without first affording Buergofol the

opportunity to show that responsive documents contain trade secrets and without

determining whether the identified trade secrets are both relevant to the lawsuit and needed

for Omega to prepare its defense.  The Order does not follow Eighth Circuit law (as

explained in legal section III(C) above) when it compels Buergofol to disclose trade secrets

without following the proper procedure for trade secret discovery and without first

considering whether the required showings of relevance and need were made before

weighing the harm from disclosure against the need for specific trade secret information.

The Order treats the discovery of trade secret information the same as the discovery of any

other information under Rule 26(b).  The Order quotes from Rule 26(b) and concludes:

> "The civil rules of discovery are ***not limited by Buergofol's would be infringement contentions*** (now verified at Docket No. 396-1), nor Omega's arguments of admissibility. The court ordered Buergofol to produce documents responsive to RFP Nos. 23 & 24, "you [Buergofol] claim are infringed by them [Omega]" inclusive of ***what continues to be Buergofol's claims of Omega's infringement on the '882 Patent*** stated in the amended complaint."

(Dkt. 402, 12:1-7) (emphasis added)  The Order improperly orders Buergofol "***to disclose***

***trade secrets*** responsive to RFP Nos. 23 & 24" (Dkt. 402, 15:2-3) without ever considering

specific trade secret information and without determining whether Omega actually needs to

know each specific trade secret in order to prepare a particular defense.  The Order fails to

recognize that trade secrets on the structure of Buergofol's film made long after the critical dates of the patents-in-suit cannot bear on validity but could only be relevant to infringement if the particular Omega product that included the Buergofol film was defined as an Accused Product in Buergofol's infringement contentions.  By ignoring the fact that Buergofol's infringement contentions exclude Omega liners containing Buergofol film from being Accused Products for the '882 Patent and by noting that Buergofol continues to claim generally that Omega is infringing the '882 Patent (without regard to any product), the Order fails to consider whether Omega actually needs any specific trade secret information to support a defense that a particular Omega liner does not infringe the '882 Patent.

The Order fails to provide the heightened procedural protection for the discovery of Buergofol's trade secrets required by the Eighth Circuit in *In re Remington* and applied by this Court in several cases, which includes confirming that the party seeking to discover the trade secrets has an actual need for each identified trade secret to support a particular claim or defense. *See In re Remington Arms Company, Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991); *Atmosphere Hosp. Mgmt., LLC v. Curtullo*, No. 5:13-cv-05040-KES-VLD, 2015 WL 144586, 2015 BL 6134, at *6 (D.S.D. Jan. 12, 2015); *Burke v. Ability Ins. Co.*, No. 12-cv-4051-KES, 2013 WL 842512, 2013 BL 60958, at *4 (D.S.D. Mar. 06, 2013); *Highmark, Inc. v. Northwest Pipe Co.*, No. 10-cv-5089-JLV, 2012 WL 997007, 2012 BL 454983, at *8 (D.S.D. Mar. 23, 2012); *Pochat v. State Farm Mut. Auto. Ins.*, No. 08-cv-5015-KES-VLD, 2008 WL 5192427, 2008 BL 386063, at *8 (D.S.D. Dec. 11, 2008).

The Order (Dkt. 402) acknowledges that Buergofol offered to explain the trade secrets *in camera* at the hearing on September 18, 2023, but Judge Duffy did not take counsel up on this offer. (Dkt. 402, 14:10-15; 15:6-7; "The court did not address the need for an *in camera* review as to Buergofol's trade secrets.")  It was incumbent upon the court

to identify the trade secrets *in camera*, but the court did not do so.  Without an understanding of each the trade secret, it is impossible to assess whether Omega has any actual need to know each discrete trade secret to support a particular claim or defense. (again, Omega has no need for trade secret information about film sold after the critical dates of the patents to support any invalidity defense.)  And no trade secret relating to Buergofol's film is needed for a non-infringement defense relating to a "migrating compound" or the '882 Patent because ***Buergofol is not asserting the '882 Patent against any Omega liner that contains Buergofol film***.

It is clear legal error to conclude, based on the justification that a general protective order will adequately protect a trade secret, that the discovery of a document containing that trade secret can be compelled without first considering the required showing of both relevance and need for discovering that specific trade secret.  As outlined in the Legal Standards section III(C) above, the balancing of the injury from trade secret disclosure against the need for the trade secret information does not occur at all if need for the trade secret information is not first established.  A court must find relevance and need before even considering whether limited disclosure under a protective order would be appropriate. This was not done in this case.

The Order improperly orders Buergofol "***to disclose trade secrets*** responsive to RFP Nos. 23 & 24" without ever considering what the specific trade secrets are and without determining that Omega needs specific trade secret information to prepare a particular defense.  The Order does not consider any specific trade secret information that is necessary to establish any particular claim or defense.  The Order (Dkt. 402) simply orders Buergofol to disclose trade secrets without even knowing what they are.

The Order erroneously determines that Buergofol contends that Omega's liners

made with Buergofol film are Accused Products that infringe the '882 Patent.  The Order does not acknowledge the binding nature of the infringement contentions that Buergofol has served pursuant to this Court's scheduling orders (Dkts. 136 and 328), which this Court has ruled cannot be amended without a showing of "good cause." (Dkt. 136, 5:16-17)  Buergofol's infringement contentions explicitly state that Omega's liners made with Buergofol film **are not** Accused Products under the '882 Patent. (Dkt. 390-7, 3:27-28; 14:2-5)  Buergofol is instead asserting the '882 Patent only against Omega's products made with film from other film suppliers, such as Viaflex.  Judge Duffy originally ordered Buergofol to disclose trade secret information regarding the structure, composition and specifications of "products that you [Buergofol] sold to them [Omega] **that you claim are infringed by them**" (Dkt. 238, 167:11-12), but now in the Order (Dkt. 402) insists that trade secret information on all Buergofol film sold to Omega must be disclosed despite the fact that Buergofol, in a binding manner, contends that no Omega liner that includes Buergofol film infringes the '882 Patent.  Omega does not need any trade secret information regarding Buergofol film in order to prepare a defense to a claim that Omega liner containing Buergofol film infringes the '882 Patent because Buergofol does not contend that any liner containing Buergofol film is an Accused Product with regard to the '882 Patent.

## V.     AS IN *REMINGTON*, THE ORDER TO DIVULGE TRADE SECRETS WITHOUT PROCEDURAL PROTECTIONS IS A CLEAR ABUSE OF DISCRETION AND WARRANTS MANDAMUS REVIEW.

The facts of this case regarding the improper order to disclose documents containing trade secrets are very similar to the situation in *In re Remington*.  The factors that led the Eighth Circuit to vacate the order in *In re Remington* are also present in this case considering that (a) the documents reveal trade secrets, (b) Buergofol would suffer

irreparable harm if the documents were disclosed, (c) Omega did not establish both relevance and need for the trade secret information, (d) a general protective order would not adequately preserve the confidentiality of the trade secret information, (e) compelling disclosure would "thwart innovation" and conflict with public policy, and (f) the magistrate judge should have reviewed the documents *in camera* to identify each trade secret and determine whether there is a need for disclosure. *See In re Remington*, 952 F.2d at 1031. *In re Remington* holds that it is a clear abuse of discretion to order trade secrets to be divulged without providing the mandated procedural protections that include (1) affording the party opposing discovery the opportunity to show that the responsive documents include trade secrets, (2) requiring the party seeking discovery to show that the trade secret information is both relevant to the subject matter of the lawsuit and ***necessary to support a claim or defense***, and (3) weighing the injury from disclosing the trade secrets against the need for the trade secret information. *In re Remington*, 952 F.2d at 1032.

In this case, Omega has no need to know any of the five trade secrets that Buergofol has identified – a matter that can be established conclusively if Buergofol is given the opportunity to present evidence of what the trade secrets are.  Omega has no need for any trade secret information about Buergofol's film sold to Omega after the critical dates of the patents in order to prepare any invalidity defense.  Omega has no need for any trade secret information about Buergofol's film sold to Omega to prepare any non-infringement defense against the '882 Patent because Buergofol does not contend that any Omega liner containing Buergofol film infringes the '882 Patent.  The Order apparently concludes it sufficient for trade secret disclosure to show relevance without showing need.  The refusal of Magistrate Judge Duffy to consider whether Buergofol's trade secrets are needed to defend against the '882 Patent based on the justification that "Buergofol was equally

unsuccessful in arguing that producing discovery for the '882 Patent is irrelevant" is an abuse of discretion, just as in *In re Remington*, 952 F.2d at 1032. A finding of relevance is an inadequate basis for ordering disclosure of a trade secret.

The clear abuse of discretion of the Order (Dkt. 402) is very similar to the situation in *In re Remington*, and a Circuit Court of Appeals will surely similarly issue a writ of mandamus and vacate the improper Order if this Court does not first set it aside. *In re Remington*, 952 F.2d at 1034.

## VI. COMPLETE ARTICULATED REASONING FOR ORDERING DISCLOSURE OF A TRADE SECRET IS REQUIRED.

If the district court errs and orders a Buergofol trade secret disclosed, then the actual order should include a complete reviewable rationale for why the specific trade secret is needed by Omega to make a particular claim or defense. As it stands, the Magistrate Judge's Order (Dkt. 402) fails to do this. The Order contains no such reviewable reasoned analysis, not even in the most general terms. The Order contains legal error and fails to follow *In re Remington*. Judge Duffy has no knowledge of what Buergofol's trade secrets are because Buergofol's counsel was not given the opportunity to explain the trade secrets to Judge Duffy. An order mandating the disclosure of a trade secret should not be merely conclusory, but rather should state to which claim element of which patent claim the specific trade secret pertains, what the claim or defense of Omega is, and why specific knowledge of that trade secret is necessary (i.e., needed) to make that particular claim or defense.

## VII. THE ATTORNEY FEE SANCTIONS AGAINST BUERGOFOL ARE CONTRARY TO LAW.

Buergofol objects to the attorney fee sanctions imposed by the Order (Dkt. 402) as being contrary to law, and requests that the sanctions be withdrawn. Magistrate Judge

Duffy was not justified in sanctioning Buergofol for not complying with the prior order (Dkt. 234) Buergofol's reading of the prior order and the transcript was entirely reasonable and its production was sufficient under this reading because: 1) the discovery request itself had asked for "documents sufficient to show" rather than "all" documents; 2) the court's statements appeared to limit the scope of the documents to those bearing on infringement rather than validity; and 3) as Buergofol's infringement contentions establish, Buergofol does not contend that Omega's liners made with Buergofol film infringe the '882 Patent. If, however, the prior order is given the interpretation placed on it by Dkt. 402, it is, like the improper order in *In re Remington*, "clearly an abuse of discretion" for ordering Buergofol "to disclose trade secrets responsive to RFP Nos. 23 & 24" (Dkt. 402, 15:2-3) without following the mandated procedural protections for trade secrets that require first identifying specific trade secrets and then showing a need for each specific trade secret for preparing a particular defense. *In re Remington*, 952 F.2d at 1032.

## VIII.   CONCLUSION.

Under Rule 72(a), the Court must set aside the Magistrate Judge's Order (Dkt. 402) that is clearly an abuse of discretion for ordering Buergofol to produce documents containing trade secrets without first identifying specific trade secrets and then establishing that those specific trade secrets are needed for preparing Omega's defense.  Because Buergofol fully complied with Judge Duffy's prior order (Dkt. 234), Omega's motion for sanctions (Dkt. 323) should be denied in its entirety.

Dated this 14th day of June, 2024

**DAVENPORT, EVANS, HURWITZ
& SMITH, L.L.P.**

By  /s/ Elizabeth S. Hertz
      Elizabeth S. Hertz
      P.O. Box 1030
      206 West 14th Street
      Sioux Falls, SD 57101-1030
      Phone (605) 357-1263
      Fax (605) 335-3639
      Email ehertz@dehs.com

      Attorneys for Plaintiff Buergofol

      **IMPERIUM PATENT WORKS LLP**
      Darien K. Wallace
      T. Lester Wallace
      P.O. Box 607
      315 Ray Street
      Pleasanton, CA 94566
      Phone (925) 550-5067
      Fax (925) 835-5804
      Email darien@imperiumpw.com
            lester@imperiumpw.com

      Attorneys for Plaintiff Buergofol
      *Pro Hac Vice*