UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH, | Civil Action No.: 22-cv-04112-KES |
| Plaintiff, | |
| vs. | **BUERGOFOL'S OPPOSITION TO OMEGA'S MOTION TO STRIKE BUERGOFOL'S INFRINGEMENT CONTENTIONS AND STAY DISCOVERY (DKT. 395)** |
| OMEGA LINER COMPANY, INC., | |
| Defendant. | |

**TABLE OF CONTENTS**

<u>Page</u>

I.    INTRODUCTION ............................................................... 1

II.   LEGAL STANDARDS ........................................................ 3

    A.  The Requirements For The Infringement Contentions In This Court's
Scheduling Order Are Not Dictated By Case Law From Other Districts ...... 3

    B.  Even Case Law Interpreting Patent Local Rules Of Other Districts Does Not
Require Infringement Contentions To Include Evidence Of Infringement ..... 6

III.  ARGUMENT ..................................................................... 9

    A.  The Scheduling Order Does Not Order Buergofol To Explain Its
Infringement Theories Beyond Identifying Where Each Element Is Found
In Each Accused Product ................................................... 9

    B.  The Scheduling Order Does Not Order Buergofol To Support Its
Infringement Contentions With Test Results .................................. 11

    C.  Buergofol's Infringement Contentions Adequately Identify Where Each
Claim Element Is Found In Each Accused Product For The '882 Patent ....... 13

        1.  Buergofol's claim chart for the '882 Patent adequately identifies where
the recited "coating or covering" of a migrating compound is found in
each Accused Product ................................................. 13

        2.  Buergofol's claim chart for the '882 Patent identifies where each element
is found in the Omega Liner and is not required to mention the limitation
"applied over," which is inapplicable to the Omega Liner ...................... 16

        3.  Buergofol's claim chart for the '882 Patent adequately identifies where
the recited opaque external tubular film is found in each Accused Product 17

        4.  Buergofol's claim chart for the '882 Patent adequately identifies where
the remaining elements are found in the Omega Liner .............................. 18

    D.  Buergofol's Infringement Contentions Adequately Identify Where Each
Claim Element Is Found In Each Accused Product For The '269 Patent ........ 20

    E.  Buergofol Is Not Required To Provide A Separate Claim Chart For Each Of
Omega's Purported Versions Of Omega's Single Accused Product .............. 22

        1.  Buergofol properly prepared a single claim chart for the single accused
product alleged to infringe the '882 Patent ................................. 22

        2.  Buergofol properly prepared a single claim chart for the single accused
product alleged to infringe the '269 Patent ................................. 24

    F.  Buergofol's Contention Regarding Infringement Under The Doctrine Of
Equivalents Complies With Paragraph 7 Of The Scheduling Order ............... 26

G.  Buergofol's Contention Regarding Induced Infringement Complies With Paragraph 7 Of The Scheduling Order ........................................................ 28

H.  Omega's Request To Stay Its Discovery Obligations Must Be Denied ........................................................................................................ 30

IV.  CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**                                                                     **Pages(s)**

*AntiCancer, Inc. v. Pfizer, Inc.*,
   769 F.3d 1323 (Fed. Cir. 2014) ........................................................... 7, 12

*Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*,
   No. 6:09-cv-089, 2009 WL 4906860 (E.D. Tex. Dec. 9, 2009) ............... 2, 8, 12, 21

*DCG Sys. v. Checkpoint Techs., LLC*,
   No. 11-cv-03792, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ..................... 8, 12

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
   No. 6:09-cv-116, 2010 WL 346218 (E.D. Tex. 2010) .................................. 8, 12, 21

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
   No. 6:08-cv-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ..................... 2, 8, 12

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-cv-05808, 2015 BL 1932 (N.D. Cal. Jan. 05, 2015) ............................. 7, 12

*Hansen Manufacturing Corp. v. Enduro Systems, Inc.*,
   No. 4:11-cv-04030-KES (D. S.D. July 12, 2011) ............................................... 4-5

*Karmagreen , LLC v. MRSS INC.*,
   No. 1:21-cv-00674, 2021 WL 7709160 (N.D. Ga. Nov. 26, 2021) ............. 7, 11, 14

*Larson Manufacturing v. Anderson Corporation*,
   No. 4:06-cv-04065-KES (D. S.D. Nov. 2, 2006) .................................................. 4

*Realtime Data, LLC v. Packeteer, Inc.*,
   No. 6:08-cv-144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) ..................... 8, 12

*Samsung SDI Co. v. Matsushita Elec. Indus. Co.*,
   No. 05-cv-8493, 2006 WL 5097360 (C.D. Cal. June 5, 2006) .......................... 8, 12

*Scherer Design Engineering, Inc. v. Shredlage, LLC*,
   No. 4:15-cv-04003-KES (D. S.D. Feb. 20, 2015) ................................................. 5

*Shur-Co, LLC v. Timpte Industries, Inc.*,
   No. 4:18-cv-04020-LLP (D. S.D. Aug. 1, 2018) .................................................. 5

*Shurtape Techs., LLC v. 3M Co.*,
   No. 5:11-cv-17, 2011 WL 4750586 (W.D.N.C Oct. 7, 2011) ........................... 8, 12

*STMicroelectronics, Inc. v. Motorola, Inc.*,
   308 F.Supp.2d 754 (E.D.Tex.2004) ....................................................... 2, 15, 18-19

*VoxPath RS, LLC v. LG Elecs. U.S.A., Inc.*,
   No. 2:12-cv-952, 2012 WL 5818143 (D.N.J. Nov. 14, 2012) ..................... 2, 15, 18

Plaintiff Buergofol GmbH ("Buergofol") files this opposition to Omega Liner Company, Inc.'s ("Omega's") "Motion to Strike Buergofol's Infringement Contentions and Stay Discovery" (Dkt. 395).

## I.    INTRODUCTION.

Buergofol's infringement contentions are in compliance with paragraph 7 of this Court's "Order Denying Motions For Scheduling Conference and Scheduling Order" (Dkt. 136).  Paragraph 7 of the scheduling order is not part of any patent local rules and does not include any requirements that are not set forth in the language of the order itself. Paragraph 7(b) requires only "a chart identifying *where* specifically each element of each asserted claim listed is found in each product" (emphasis added).  Thus, Buergofol's infringement contention chart must only provide notice of infringement beyond the claim language itself by mapping specific structures of Omega's single product, the Omega Liner, onto each element of each asserted claim.  For each asserted claim, Buergofol's chart does identify where each claim element is found in the Omega Liner.

By bringing this motion, however, Omega is improperly attempting to "pre-try" this case by challenging Buergofol's infringement contentions for not including adequate supporting evidence, explanation and analysis.  But Buergofol's infringement contention charts need not disclose specific evidence, explanations or analysis to prove Buergofol's infringement case.  Omega argues that Buergofol's charts do not adequately explain *why* the Omega Liner includes particular claim elements in the locations that Buergofol identifies the elements to be present, *how* specific elements are present in the Omega Liner, and the *reason* that some instances of the Omega Liner include specific elements and other instances of the Omega Liner do not include those specific elements.  However, infringement contentions are not the correct stage of litigation to require the patentee to

support and explain the merits of its infringement case.  For example, Buergofol's chart

for the '882 Patent identifies where specifically the recited "coating or covering" is found

in particular instances of the Omega Liner, namely on the external side of the polyamide

layer of the inner tubular film facing the carrier material.  But Buergofol is not required

to prove its infringement case through its infringement contentions by explaining ***why***

particular instances of the Omega Liner have a "coating or covering", ***how*** the "coating

or covering" comes to be present on the external side of the inner film, the ***reason*** that

some instances of the Omega Liner have a "coating or covering" while others do not, or

by presenting test results to prove that a "coating or covering" is present in particular

instances of the Omega Liner.

     Buergofol's infringement contentions are entirely adequate, and Omega's motion

to "pre-try the case" by challenging Buergofol's infringement contentions should be

denied.  "Infringement contentions need not disclose specific evidence nor do they

require a plaintiff to prove its infringement case." *Fenner Invs., Ltd. v. Hewlett-Packard

Co.*, No. 6:08-cv-273, 2010 WL 786606, 2010 BL 41331 (E.D. Tex. Feb. 26, 2010);

*Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*, No. 6:09-cv-089, 2009 WL 4906860,

at *3 n. 2 (E.D. Tex. Dec. 9, 2009) ("P.R. 3-1 does not require the disclosure of evidence

and documents supporting infringement contentions").  "Infringement contentions are not

intended to be a forum for adjudicating the merits of the plaintiff's contentions." *VoxPath

RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 2:12-cv-952, 2012 WL 5818143, 2012 BL 298591,

at *4 (D.N.J. Nov. 14, 2012).  "[I]nfringement contentions are not the correct stage to

'pre-try the case . . . by conducting a highly detailed and rigorous analysis of the

preliminary claim infringement contentions.'" *STMicroelectronics, Inc. v. Motorola, Inc.*,

308 F.Supp.2d 754, 756 (E.D.Tex.2004).  Omega's motion must be denied because it is

based on the erroneous assertion that Buergofol's infringement contentions require additional explanations and evidentiary support, such as documents, test results, evidence and proof of infringement.  Paragraph 7 of the Scheduling Order (Dkt. 136) requires no such additional disclosures, and Buergofol's infringement contentions are perfectly adequate.

## II.   LEGAL STANDARDS.

### A.  The Requirements For The Infringement Contentions In This Court's Scheduling Order Are Not Dictated By Case Law From Other Districts.

The wording of the scheduling order itself determines what is required for compliance with the order.  Paragraph 7 of the Court's "Order Denying Motions For Scheduling Conference and Scheduling Order" (Dkt. 136) alone sets forth the requirements for the infringement contentions, which are:

> 7.    <u>Disclosure of Infringement Contentions:</u> By July 21, 2023, Buergofol shall serve on Omega "Infringement Contentions" containing the following information: (a) each claim of each patent it alleges is being infringed, (b) for each claim, each product, device, process, act, or method it alleges infringes ("Accused Product"), a chart identifying where specifically each element of each asserted claim listed is found in each product, device, process, act, or method, (d) the priority date to which each asserted claim allegedly is entitled, and (e) whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents. If Buergofol asserts that any element of any claim is present under the doctrine of equivalents, it must explain each function, way, and result that is equivalent and why any differences are not substantial.

With regard to the required chart, paragraph 7(b) requires only that the chart identify where each claim element is found in each Accused Product.  No additional disclosure or

explanation is required.  As the provisions of paragraph 7 are not part of any patent local

rules, they cannot be clarified based on legal precedent that interprets the provisions of

the particular patent local rules of other districts.

In the District of South Dakota, where there are no patent local rules, scheduling

orders in patent cases have long required claim charts identifying specifically where each

element of each asserted claim is found within each accused product.  The claim chart

requirement is not referred to as being part of any "infringement contentions" and does

not require more disclosure than explicitly stated.  For example, the scheduling order in

*Larson Manufacturing v. Anderson Corporation*, No. 4:06-cv-04065-KES (D. S.D. Nov.

2, 2006), Dkt. 34 required:

> (3)   A chart identifying specifically where each element of each
> asserted claim is found within each Accused Instrumentality,
> including for each element that such party contends is
> governed by 35 U.S.C. § 112(6), the identity of the structure(s),
> act(s), or material(s) in the Accused Instrumentality that
> performs the claimed function;

The claim chart provided in *Larson v. Anderson* was rudimentary, identified only where

each element was found in each accused instrumentality, and did not include any

explanation of how or why each accused instrumentality infringed. *See Larson v.*

*Anderson*, No. 4:06-cv-04065-KES, Dkt. 62-2 (Plaintiff's Claim Chart).  The scheduling

order in *Hansen Manufacturing Corp. v. Enduro Systems, Inc.*, No. 4:11-cv-04030-KES

(D. S.D. July 12, 2011), Dkt. 27 required:

> (3)   A chart identifying specifically where each element of each
> asserted claim is found within each Accused
> Instrumentality, including for each element that such party
> contends is governed by 35 U.S.C. § 112(6), the identity of
> the structure(s), act(s), or material(s) in the Accused
> Instrumentality that performs the claimed function;

The claim chart provided in *Hansen v. Enduro* was also very basic, identified only where

each element was found in each accused instrumentality, and did not include any

explanation of how or why each accused instrumentality infringed. *See Hansen v. Enduro*,

No. 4:11-cv-04030-KES, Dkt. 42-3 (charts of Exhibit A).  The scheduling order in

*Scherer Design Engineering, Inc. v. Shredlage, LLC*, No. 4:15-cv-04003-KES (D. S.D.

Feb. 20, 2015), Dkt. 16 required:

> ii.   Counterclaim Plaintiff's claim chart must provide a
>       complete and detailed explanation of:
>                         * * *
> c.    where each element of each claim listed in
>       paragraph 27(B)(i) is found in each product or
>       method listed in paragraph 27(B)(ii), including
>       the basis for each contention that the element is
>       present;

The scheduling order in *Shur-Co, LLC v. Timpte Industries, Inc.*, No. 4:18-cv-04020-LLP

(D. S.D. Aug. 1, 2018), Dkt. 25 required:

> iii.  A chart identifying specifically where each element of each
>       asserted claim is found within each Accused Instrumentality,
>       including for each element that such party contends is
>       governed by 35 U.S.C. § 112(6), the identity of the
>       structure(s), act(s), or materials(s) in the Accused
>       Instrumentality that performs the claimed function.

The chart required by paragraph 7(b) of the scheduling order in this case is very similar to

the charts required by other scheduling orders in patent cases in the District of South

Dakota.  The requirements for compliance with paragraph 7(b) of the Scheduling Order

(Dkt. 136) should be the same as those required by scheduling orders in other patent

cases in the District of South Dakota and should not be based on case law that interprets

the infringement contentions required by patent local rules in other districts.

Omega argues that Buergofol's compliance with the infringement contention

requirements in this Court's scheduling order must be judged based on case law

interpreting the requirements of Patent Local Rule 3-1 of the Northern District of

California and cites to numerous decisions from the Northern District of California.  The requirement of paragraph 7(b) of the scheduling order to serve a claim chart is not, however, part of any overall procedure set forth in patent local rules.  Therefore, the manner in which infringement contention requirements are implemented as part of patent local rules in other districts does not determine whether Buergofol's infringement contentions are in compliance with this Court's scheduling order.  Whether Buergofol has complied with the infringement contention requirements of paragraph 7(b) must be determined based only on the language of the order and not on case law from other districts interpreting their own patent local rules.  Paragraph 7(b) requires "a chart identifying where specifically each element of each asserted claim listed is found in each product".  Thus, Buergofol's claim charts are in compliance with this Court's scheduling order if each chart identifies where each claim element is found in each Accused Product.  Contrary to Omega's argument, no additional disclosure, such as documents, test results, evidence, or proof of infringement, is required.

## B.  Even Case Law Interpreting Patent Local Rules Of Other Districts Does Not Require Infringement Contentions To Include Evidence Of Infringement.

The requirements for the infringement contentions of paragraph 7 of the Scheduling Order (Dkt. 136) are not dictated by case law from other districts.  For example, court decisions from the Northern District of California, the Western District of Texas and the Eastern District of Texas do not govern what is required for compliance with a subparagraph of an order in this case that does not refer to any patent local rule or adopt as legal precedent any decision from another district.  Nevertheless, Omega urges this Court to adopt Omega's peculiar reading of an obscure decision by a Special Master in the Northern District of Georgia applying the patent local rules of the Northern District

of Georgia.  Omega argues that *Karmagreen* requires infringement contentions to include evidentiary support in the form of documents, advertising and test results. *See* Dkt. 396, p. 11, citing *Karmagreen , LLC v. MRSS INC.*, No. 1:21-cv-00674, 2021 WL 7709160, 2021 BL 516956 (N.D. Ga. Nov. 26, 2021).

First, Buergofol disputes that *Karmagreen* imposes a strict requirement to include evidentiary support in the form of documents, advertising and test results in infringement contentions in the Northern District of Georgia.  The Special Master in *Karmagreen* acknowledges that "there is no requirement that the patentee provide specific evidence or prove its infringement case in the contentions" and then goes on to describe what the patentee "should at least" identify. *Karmagreen*, No. 1:21-cv-00674, 2021 BL 516956, at *4.  Second, to the extent that *Karmagreen* actually does require infringement contentions in the Northern District of Georgia to include evidentiary support in the form of documents, advertising and test results, the decision of *Karmagreen* should be disregarded as being contrary to the vast majority of decisions that explicitly do not require the disclosure of specific evidence as support for infringement contentions.

Even though the infringement contention requirements of paragraph 7 of the Scheduling Order (Dkt. 136) are not influenced by case law from other districts, that case law from other districts does not require infringement contentions to include documents, test results, evidence, or proof of infringement.  The disclosure of specific evidence (documents, test results) is simply not required to support infringement contentions. *See, e.g., Finjan, Inc. v. Proofpoint, Inc.*, 13-cv-05808, 2015 BL 1932 (N.D. Cal. Jan. 05, 2015) (Patent L.R. Rule 3-1 does not require the patentee to disclose specific evidence or to prove its infringement case.); *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323, 1338 (Fed. Cir. 2014) (a patentee's infringement contentions "do not need to include proof or

direct evidence of infringement"); *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-cv-03792, 2012 WL 1309161, 2012 BL 420630, at *2 (N.D. Cal. Apr. 16, 2012) ("These rules [Patent Local Rule 3-1] do not, as is sometimes misunderstood, require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case."); *Shurtape Techs., LLC v. 3M Co.*, No. 5:11-cv-17, 2011 WL 4750586, 2011 BL 260116, at *2 (W.D.N.C Oct. 7, 2011) ("Infringement contentions need not disclose specific evidence nor do they require a plaintiff to prove its infringement case."); *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606, 2010 BL 41331, at *2 (E.D. Tex. Feb. 26, 2010) ("Infringement contentions need not disclose specific evidence nor do they require a plaintiff to prove its infringement case."); *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, 6:09-cv-116, 2010 WL 346218, 2010 BL 13650, at *2,4 (E.D. Tex. 2010) ("The Rules do not require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case. . . . Patent Rule 3-1 does not require EON to marshal evidence or otherwise prove its infringement case."); *Realtime Data, LLC v. Packeteer, Inc.*, 6:08-cv-144, 2009 WL 2590101, at *5, 2009 BL 175309 (E.D. Tex. Aug. 18, 2009) ("Infringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof"); *Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*, 6:09-cv-089, 2009 WL 4906860, at *3 n. 2 (E.D. Tex. Dec. 9, 2009) ("P.R. 3-1 does not require the disclosure of evidence and documents supporting infringement contentions"); *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. 05-cv-8493, 2006 WL 5097360, at *1 (C.D. Cal. June 5, 2006) ("The plaintiff is not . . . required to produce evidence of infringement . . . or to provide evidentiary support for its contentions").

III.     **ARGUMENT.**

   A.  **The Scheduling Order Does Not Order Buergofol To Explain Its Infringement Theories Beyond Identifying Where Each Element Is Found In Each Accused Product.**

Omega asserts that Buergofol's infringement contentions fail clearly to explain Buergofol's "theories of infringement." (Dkt. 396, 16:23-24)  Omega complains that Buergofol has failed to explain in detail "how Omega's products allegedly infringe Buergofol's patents" (Dkt. 396, 17:8-9).  However, Omega is playing a semantic game with the meaning of "infringement theory."  In the context of the infringement contentions, an infringement theory is the patentee's contention as to where each claim element is found in each accused product.  And the scheduling order does not order Buergofol to explain its theories of infringement beyond identifying where each claim element is found in each accused product.

Omega argues that Buergofol's infringement contentions are required to "explain" its infringement theories, as in explain ***why*** Omega's accused products include particular claim elements in the locations that Buergofol contends the elements to be present. Omega complains that Buergofol's infringement contentions do not explain "***how*** specific elements are present in Omega's products" (Dkt. 396, 17:17) (emphasis added). Omega demands that Buergofol explain the "***reason*** for contending that only '4/11ths' of Omega's accused products include" a coating or covering of a migrating compound. (Dkt. 396, 17:18-19) (emphasis added).  Omega demands that Buergofol explain "why . . . certain Viaflex Version liners infringe while other do not, particularly because Omega understands that all the inner films from Viaflex have been made in the same way (for purposes of any infringement analysis) and Viaflex has not changed the chemical composition of its inner film since it began supplying the film to Omega in 2018." (Dkt.

396, 21:3-7)  However, the explanations demanded by Omega are clearly outside the scope of what paragraph 7 of the scheduling order requires Buergofol to disclose.

Buergofol must only identify where each claim element is found in each accused product.  There is no requirement for Buergofol to explain *why* an accused product might have a particular claim element or *how* the claim element came to be present in the accused product.  Consequently, Buergofol is not required to explain to Omega  the *reason* why only four of the eleven dry liner samples that Omega produced have inner film with a coating or covering of a migrating compound.  Buergofol is not required to explain to Omega why Buergofol believes that Viaflex has not made all of its inner films in the same way and why the chemical composition of Viaflex's inner films is not the same for all film rolls.  Such speculation is not dispositive of whether a particular OMEGA LINER has an inner film with a coating or covering of a migrating compound.  Buergofol identified where the coating or covering of a migrating compound is found in each of the four accused products, i.e., the four instances of OMEGA LINER that had a coating or covering.  The remainder of the eleven dry liner samples are not accused products because they do not have the recited coating or covering.  But Buergofol is not required to explain to Omega why some instances of OMEGA LINER have a coating or covering and other instances do not.  Buergofol is not required to know why in order to prove infringement.

Buergofol has complied with paragraph 7 of the scheduling order by identifying where each claim element is found in the instances of OMEGA LINER that Buergofol contends infringe the '882 Patent.  No additional disclosure is required.

**B.  The Scheduling Order Does Not Order Buergofol To Support Its Infringement Contentions With Test Results.**

Omega argues that Buergofol's claim chart for the '882 Patent is insufficient because it provides only "conclusory statements without any factual basis, such as advertising, test results, or other sources." (Dkt. 396, 17:15-16; 18:7-8)  However, paragraph 7 of the scheduling order requires only that Buergofol serve "a chart identifying where specifically each element of each asserted claim listed is found in each product" (Dkt. 136, 9:9-10).  Paragraph 7 does not state that Buergofol must support its contentions identifying where claim elements are found with test results, documents or any other evidence.  Omega does not dispute this.  Instead, Omega relies on an obscure case interpreting the requirements of the patent local rules in the Northern District of Georgia to argue that paragraph 7 of this Court's scheduling order requires Buergofol's chart to include evidentiary support in the form of documents, advertising and test results. *See* Dkt. 396, p. 18, referring to *Karmagreen , LLC v. MRSS INC.*, No. 1:21-cv-00674, 2021 WL 7709160, 2021 BL 516956 (N.D. Ga. Nov. 26, 2021).  However, no evidentiary support, such as test results, need be included in Buergofol's chart.

First, the *Karmagreen* decision, which interprets the patent local rules in the Northern District of Georgia, has no bearing on the requirements of paragraph 7 of this Court's scheduling order.  Second, even *Karmagreen* does not impose a strict requirement to include evidentiary support in the form of documents, advertising or test results with infringement contentions in the Northern District of Georgia.  Third, to the extent that *Karmagreen* is interpreted to require evidentiary support for infringement contentions, *Karmagreen* must be disregarded as being contrary to the majority of case law finding that infringement contentions in various districts need not include evidentiary

support, such as in the form of test results. *See, e.g., Finjan, Inc. v. Proofpoint, Inc.*, 13-cv-05808, 2015 BL 1932, at *4 (N.D. Cal. Jan. 05, 2015) (infringement contentions do not require "specific evidence"); *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323, 1338 (Fed. Cir. 2014) (infringement contentions do not require "proof or direct evidence of infringement"); *DCG Sys. v. Checkpoint Techs., LLC*, 11-cv-03792, 2012 WL 1309161, 2012 BL 420630, at *2 (N.D. Cal. Apr. 16, 2012) (infringement contentions do not require "specific evidence"); *Shurtape Techs., LLC v. 3M Co.*, No. 5:11-cv-17, 2011 WL 4750586, 2011 BL 260116, at *2 (W.D.N.C Oct. 7, 2011) (infringement contentions do not require "specific evidence"); *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606, 2010 BL 41331, at *2 (E.D. Tex. Feb. 26, 2010) (infringement contentions do not require "specific evidence"); *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, 6:09-cv-116, 2010 WL 346218, 2010 BL 13650, at *2,4 (E.D. Tex. 2010) (infringement contentions do not require "specific evidence"); *Realtime Data, LLC v. Packeteer, Inc.*, 6:08-cv-144, 2009 WL 2590101, at *5, 2009 BL 175309 (E.D. Tex. Aug. 18, 2009) (infringement contentions do not require a *prima facie* infringement case or evidence in support thereof); *Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*, 6:09-cv-089, 2009 WL 4906860, at *3 n. 2 (E.D. Tex. Dec. 9, 2009) (evidence and documents supporting infringement contentions are not required); *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. 05-cv-8493, 2006 WL 5097360, at *1 (C.D. Cal. June 5, 2006) (evidentiary support for infringement contentions is not required).

Buergofol's claim chart for the '882 Patent is not inadequate for failing to include specific evidence, such as test results.

**C. Buergofol's Infringement Contentions Adequately Identify Where Each Claim Element Is Found In Each Accused Product For The '882 Patent.**

Omega argues that Buergofol's claim chart for the '882 Patent fails adequately to identify where various claim terms are found in each Accused Product. (Dkt. 396, p. 17 *et seq.*)  However, Buergofol's claim chart adequately identifies where each claim element is found in the Omega Liner.

**1. Buergofol's claim chart for the '882 Patent adequately identifies where the recited "coating or covering" of a migrating compound is found in each Accused Product.**

Omega argues that Buergofol's claim chart is insufficient because it does not provide any evidence, e.g., test results, to prove that the element "coating or covering" in claim 1 of the '882 Patent is found where Buergofol identifies the "coating or covering" to be found. (Dkt. 396, 18:7-8)  However, paragraph 7 of the scheduling order does not require Buergofol to present any factual basis, proof, evidence or test results proving that the claim element "coating or covering" is found where Buergofol identifies it to be found.  Moreover, even the patent local rules of other districts do not require infringement contentions to include specific evidence to support the contentions.

Buergofol's claim chart for the '882 Patent identifies the "coating or covering" as being found on "the external side of the PA layer" of the inner tubular film.  The claim chart also identifies the "coating or covering" as being on "the external side facing the carrier material" (Dkt. 396-1, p. 18 of 34).  Thus, the claim chart identifies "where" specifically the claim element is found, i.e., on the external side of the polyamide layer facing the carrier material.  Paragraph 7 of the scheduling order does not require Buergofol's claim chart to include any additional disclosure about the element "coating or covering with at least one migrating compound."

As explained above, Omega's reliance on *Karmagreen* and other decisions from

the Northern District of Georgia as authority for requiring Buergofol to support with evidence its contention regarding the coating or covering of "EBS wax" is misplaced. (*See* Dkt. 396, p. 18).  These decisions from the Northern District of Georgia cannot impose any additional disclosure requirements on paragraph 7 of the scheduling order. However, even *Karmagreen* finds that "there is no requirement that a patentee provide a disclosure of compounds more specific than the claims require." *Karmagreen , LLC v. MRSS INC.*, No. 1:21-cv-00674, 2021 WL 7709160, 2021 BL 516956, at *4 (N.D. Ga. Nov. 26, 2021).  As claim 1 recites only a "migrating compound" and does not recite "EBS wax," Buergofol's claim chart need not make any disclosure regarding "EBS wax," as Omega demands.  So Omega also has no basis for demanding that Buergofol's chart include analysis and testing of "EBS wax." (*See* Dkt. 396, 18:15-16).

Omega also quotes from *Karmagreen* to support its erroneous assertion that Buergofol's chart must disclose specific evidence in the form of test results to prove "the presence of a coating of a migrating compound (*e.g.*, EBS wax) in the accused products." (Dkt. 396, 20:15-20).  However, the quote from *Karmagreen* requires the patentee only to identify the "type of analysis" that will show the presence of the claim element.  The quote from *Karmagreen* does not require the disclosure of any specific test results. Moreover, Buergofol's infringement contentions do identify the type of analyses that will show the presence of the element "coating or covering with at least one migrating compound."  Buergofol's infringement contentions state,

> "Some of the multiple types of evidence that can point to the presence of the recited coating or covering with a migrating compound include testing with x-ray photoelectron spectroscopy (XPS), testing with atomic force microscopy (AFM), testing the release force required to remove a test adhesive tape (as described in the '882 Patent), and testing the elasticity until film break (as described in the '882 Patent)."

(Dkt. 396-1, p. 15 of 34).

With regard to the element "coating or covering," Omega argues that Buergofol's chart does not adequately explain "why Buergofol alleges certain Viaflex Version liners infringe while other do not" and how one instance of Omega Liner could have a "coating or covering" while another instance does not, considering Omega's allegation that the inner films of both instances were made in the same way and with the same chemical composition. (Dkt. 396, 21:3-7). As explained above, however, paragraph 7 of the scheduling order does not require Buergofol's chart to explain **why** an accused product might have a particular claim element, **how** the claim element came to be present in the accused product, or the **reason** why only four of eleven Omega Liners have inner film with a coating or covering of a migrating compound. Omega's argument regarding the purported inadequacy of Buergofol's chart resembles a demand for Buergofol's infringement contentions to present a *prima facie* infringement case with evidentiary support. This is not required. Moreover, infringement contentions are not intended to be used to adjudicate the merits of the patentee's contentions. *VoxPath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 2:12-cv-952, 2012 WL 5818143, 2012 BL 298591, at *4 (D.N.J. Nov. 14, 2012). Nor are infringement contentions the correct stage to "pre-try" the case by conducting a highly detailed and rigorous analysis of the patentee's infringement case. *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754 , 756 (E.D.Tex.2004).

With regard to the element "coating or covering," Buergofol has complied with paragraph 7 of the scheduling order by adequately identifying where the element is found in the Omega Liner. Nothing more is required.

**2. Buergofol's claim chart for the '882 Patent identifies where each element is found in the Omega Liner and is not required to mention the limitation "applied over," which is inapplicable to the Omega Liner.**

Paragraph 7(b) requires only "a chart identifying *where* specifically each element of each asserted claim listed is found in each product" (emphasis added). Buergofol's chart must map specific structures of the Omega Liner onto each element of each asserted claim. The functional limitation "applied over" is not a structure and has no location. Buergofol's chart cannot identify where specifically "applied over" is found in each accused product. Therefore, paragraph 7(b) does not require Buergofol's chart to identify where the functional limitation "applied over" is found in each accused product.

In addition, the "wherein" clause that recites "applied over" does not apply to the Omega Liner and is consequently not identified in Buergofol's chart. Claim 1 of the '882 Patent recites various claim elements, such as a "coating with a polysiloxane" and a "coating or covering with at least one migrating compound." Buergofol's chart does not identify where the "coating with a polysiloxane" is found in the Omega Liner because Buergofol does not contend that the Omega Liner has a "coating with a polysiloxane." Buergofol contends only that the Omega Liner has a "coating or covering with at least one migrating compound," and Buergofol's chart identifies that the "coating or covering" is found on the external side of the polyamide layer of the inner tubular film facing the carrier material.

As Omega recognizes in its argument regarding "applied over," claim 1 covers multiple embodiments. Buergofol's chart does not contend that the Omega Liner falls within the scope of all of the embodiments. Claim 1 covers an embodiment in which a coating of polysiloxane is applied over the external side of the inner film. Claim 1 also covers an embodiment with a covering formed when a migrating compound migrates to

the external side of the inner film.  Claim 1 also covers an embodiment in which a migrating compound does not migrate but rather is applied as a coating over the external side of the inner film.  Buergofol's chart does not contend that the Omega Liner has a "coating with a polysiloxane."  Buergofol's chart also does not contend that a coating with a migrating compound is applied over the external side of the inner tubular film. Instead, Buergofol's chart identifies that a migrating compound contained in an external polyamide layer migrates to the external side of the layer and forms a covering over the external side.

Because only a "coating" (as opposed to a "covering") is applied over the external side, and Buergofol does not contend that the Omega Liner has a coating of polysiloxane or a migrating compound, Buergofol's chart does not identify anything about "the coating is applied over" functional limitation because the Omega Liner does not include any coating that is applied over the external side.  Buergofol's chart does not contend that the Omega Liner has a coating of polysiloxane or a migrating compound that is limited by the functional limitation "applied over."  Because the "wherein" clause that recites "applied over" does not apply to the Omega Liner, the "wherein" clause is not mapped to the Omega Liner in Buergofol's chart.

### 3. Buergofol's claim chart for the '882 Patent adequately identifies where the recited opaque external tubular film is found in each Accused Product.

Paragraph 7(b) requires only "a chart identifying *where* specifically each element of each asserted claim listed is found in each product" (emphasis added).  Buergofol's chart must map specific structures of the Omega Liner onto each element of each asserted claim.  The limitations "opaque" and "tubular" are not structures and have no locations. These limitations merely modify the recited external film, which is a specific structure

with a particular location in the Omega Liner.  Buergofol's chart identifies where specifically the external film is found in the Omega Liner, but is not required to identify where the limitations "opaque" and "tubular" are found in the Omega Liner.

Omega improperly attempts to challenge Buergofol's infringement contentions as a means to "pre-try the case" and adjudicate the merits of Buergofol's infringement case. *See VoxPath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 2:12-cv-952, 2012 WL 5818143, 2012 BL 298591, at *4 (D.N.J. Nov. 14, 2012); *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754 , 756 (E.D.Tex.2004).  From Omega's comments about "opaque" and "tubular," it appears that Omega wishes to use Buergofol's chart to argue that the external film of the Omega Liner is not covered by the limitations "opaque" and "tubular." (Dkt. 396, 23:11-18)  However, Buergofol's chart is not required to present a *prima facie* infringement case showing that the external film is both "opaque" and "tubular," but rather only to identify where specifically the external film (regardless of whether it is "opaque" and "tubular") is found in the Omega Liner.  Buergofol's chart complies with the requirement of paragraph 7(b) to identify where specifically the opaque external tubular film is found in the Omega Liner.

### 4.  Buergofol's claim chart for the '882 Patent adequately identifies where the remaining elements are found in the Omega Liner.

Omega implies that Buergofol's chart does not comply with paragraph 7 of the scheduling order because the chart does not provide information on various limitations, such as "for use in trenchless sewage pipe renovation," "an inner tubular film," "one or multiple layers" for the "inner tubular film," "an inner facing external side," "outer facing external side," and "a carrier material impregnated with a reactive plastic resin." (Dkt. 396, 24:1-9)  However, paragraph 7 only requires Buergofol's chart to identify where

elements are found in the Omega Liner and does not require the chart to provide information on every functional limitation and aspect of a claim element.  For example, "for use in trenchless sewage pipe renovation" is not a claim element whose location can be identified in the accused product, the Omega Liner.  Paragraph 7 does not require Buergofol's chart to include argument as to why the Omega Liner is "for use in trenchless sewage pipe renovation" or why this portion of the claim preamble does not even limit the claim.

In another example, Omega argues that Buergofol's chart is deficient because it fails to disclose the "basic element" of "one or multiple layers" of the inner tubular film. This is not a serious argument.  First, Buergofol's chart identifies that the Omega Liner has an inner tubular film and is not required to additionally identify that the Omega Liner has an inner tubular film that has one or multiple layers.  A film with one or multiple layers would be found at the same location as the film without this additional limitation. Second, Buergofol's chart does identify the inner tubular film of one instance of the Omega Liner (WO-2023-010-1783) as having the three layers PE/AP/PA, where PE denotes polyethylene, AP denotes adhesion promoter, and PA denotes polyamide. Omega's mention of "one or multiple layers" is simply an improper attempt to use Buergofol's infringement contentions to argue the merits of Buergofol's infringement case. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754 , 756 (E.D.Tex.2004).

In yet another example, Omega argues that Buergofol's chart is deficient because, with regard to dependent claim 3, it fails to provide evidentiary support for Buergofol's statement, "The adhesion promoter layer contains 100% by weight the olefin-based thermoplastic elastomer." (Dkt. 396, 24:1-9)  This argument from Omega is also not

serious.  That the inner film of an instance of Omega Liner (WO-2023-010-1783) has an adhesion promoter layer that contains an olefin-based thermoplastic elastomer is not a recitation of dependent claim 3.  It is additional information provided in Buergofol's chart to identify the recited inner film layer "that contains a thermoplastic elastomer (TPE) within a range of more than 20% by weight up to 100% by weight."  Claim 3 does not recite either an adhesion promoter layer or a thermoplastic elastomer that is olefin-based.  Buergofol's chart is not required to provide even more information explaining the additional information provided by Buergofol to identify the elements of claim 3.

### D.  Buergofol's Infringement Contentions Adequately Identify Where Each Claim Element Is Found In Each Accused Product For The '269 Patent.

Omega argues that Buergofol's claim chart for the '269 Patent fails adequately to identify where various claim terms are found in each accused product. (Dkt. 396, p. 24 *et seq*.)  Omega states that Buergofol's chart for the '269 Patent is deficient because the chart provides no evidentiary support in the form of (1) documents or (2) test results that identify where the claim elements are found in each accused product.  Omega also argues that Buergofol's chart is required to include a cross-sectional image of film having the recited "specific five-layer sequence." (Dkt. 396, 25:4-11)

As explained above, however, paragraph 7 of the scheduling order does not require Buergofol to present any factual basis, proof, evidence or test results to prove that each claim element is found in each accused product.  Paragraph 7 requires only that Buergofol serve "a chart identifying where specifically each element of each asserted claim listed is found in each product" (Dkt. 136, 9:9-10).  Moreover, even case law interpreting the patent local rules of other districts does not require infringement contentions to include specific evidence to support the contentions.  Specifically,

infringement contentions are not required to include specific evidence in the form of

(1) documents or (2) test results. *See, e.g.*, *Balsam Coffee Solutions Inc. v. Folgers Coffee

Co.*, 6:09-cv-089, 2009 WL 4906860, at *3 n. 2 (E.D. Tex. Dec. 9, 2009) ("P.R. 3-1 does

not require the disclosure of evidence and documents supporting infringement

contentions"); *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, 6:09-cv-116, 2010 WL

346218, 2010 BL 13650, at *2,4 (E.D. Tex. 2010) ("The Rules do not require the

disclosure of specific evidence nor do they require a plaintiff to prove its infringement

case. . . . Patent Rule 3-1 does not require EON to marshal evidence or otherwise prove

its infringement case.").

Omega also has no basis for arguing that Buergofol's chart is deficient because it

"does not even provide a picture of the accused products to show where each of the

alleged layers of the specific five-layer sequence exist." (Dkt. 396, 25:8-9)  Paragraph 7

of the scheduling order does not require Buergofol's chart to include a picture.  Moreover,

Omega incorrectly assumes that a magnified, cross-sectional image of inner film would

indicate "the specific five-layer sequence" recited in claim 1 of the '269 Patent (which is

PE/AP/PA/AP/PA).  A cross-sectional image alone, however, would not indicate the

composition of the layers, for example, by identifying each layer as comprising a

thermoplastic olefin (such as PE), a polyamide (PA) or an adhesive promoter (AP).  In

addition, Omega has failed to produce any sample of Omega Liner made during

2017-2018, which could have had inner film with five or seven layers including the

sequence PE/AP/PA/AP/PA and whose inner film Buergofol could have photographed.

Despite Omega's argument that Buergofol's chart for the '269 Patent is deficient,

the chart complies with paragraph 7 of the scheduling order by adequately identifying

where each claim element is found in the Omega Liner.

BUERGOFOL'S OPP. TO OMEGA'S                 21                 4:22-cv-04112-KES
MOTION TO STRIKE BUERGOFOL'S
INFRINGEMENT CONTENTIONS

### E.   Buergofol Is Not Required To Provide A Separate Claim Chart For Each Of Omega's Purported Versions Of Omega's Single Accused Product.

#### 1.   Buergofol properly prepared a single claim chart for the single accused product alleged to infringe the '882 Patent.

The heading D of Omega's argument states that Buergofol has failed to provide a separate claim chart for each Accused Product.  However, the text of section D argues instead that Buergofol has failed to provide a separate claim chart for each of various arbitrarily defined "versions" of the single Accused Product ("Omega Liner"). (Dkt. 396, p. 26)  The term "version" of an accused product is an artificial construct created by Omega.  Paragraph 7 of the scheduling order does not require Buergofol to provide a separate chart for each "version" of an Accused Product.  Rather, paragraph 7 requires a chart "for each claim, each product, device, process, act, or method it alleges infringes ('Accused Product')" (Dkt. 136, 9:8-9).  Because Omega has a single Accused Product, and Buergofol has provided a claim chart for that single Accused Product, Buergofol has complied with paragraph 7 of the scheduling order.

Omega does not deny that it has only a single Accused Product.  Omega has stated in court papers, "Omega has a single product, i.e., 'Omega Liner'." (Dkt. 390, 11:18).  In Buergofol's infringement contentions, Buergofol also contends that there is a single Accused Product, the OMEGA LINER.  Buergofol maintains that each of the thousands of custom-made Omega Liners is a separate instance of OMEGA LINER.  And Omega argues that there are various versions of the Omega Liner.  But there is no requirement that a separate claim chart be provided for each instance or each version of an Accused Product.

With regard to the '882 Patent, Omega demands that Buergofol provide a separate claim chart for each of five arbitrarily defined versions of the single Accused Product:

"(1) Viaflex Version, (2) Sudpack Version, (3) Buergofol 3-Layer Version, (4) Buergofol 5-Layer Version, and (5) Buergofol 7-Layer Version" (Dkt. 396, 26:5-6).  Not only are separate claim charts not required for these versions of a single Accused Product, but there is also no basis under Buergofol's infringement analysis to prepare a chart for each of Omega's proposed versions.  There is no basis for providing claim charts for Omega's versions (3)-(5) that include inner film from Buergofol because Buergofol does not contend that any Omega Liner containing inner film and/or outer film from Buergofol infringes the '882 Patent.  Buergofol's infringement contentions state:

> "Buergofol contends that all liners made by Omega ***without using inner film or outer film from Buergofol*** infringe claims 1, 3-5, 7 and 10-11 of the '882 Patent to the extent that the outer facing external side of the inner tubular film has a coating or covering of a migrating compound." (Dkt. 396-1, pp. 3-4 of 34)

(Dkt. 396-1, 3:27-4:2) (emphasis added)  Consequently, no instance of OMEGA LINER that includes inner film and/or outer film from Buergofol infringes the '882 Patent, and there is no reason to provide separate claim charts for any of these non-infringing instances.[1]

There is also no basis for providing separate claim charts for "versions" of the Omega Liner that have inner film made by Viaflex and Sudpack.  To the extent that two "versions" of Omega Liner made with Viaflex inner film and Sudpack inner film both

---

[1] Omega notes that Buergofol included a particular instance of OMEGA LINER (WO-2017-010-0001) in a list of instances that Buergofol contends infringe the '882 Patent. (Dkt. 396, 26:21-23)  Omega concludes that the instance WO-2017-010-0001 "could have only been made with Buergofol's inner film and outer film" and notes that this contention is inconsistent with Buergofol's statement that no instance of OMEGA LINER that includes inner film and/or outer film from Buergofol infringes the '882 Patent. While this may be true, Buergofol has no way to confirm this because Omega failed to respond fully to Buergofol's ROG 12 requesting the name of the film manufacturer for each instance of Omega Liner. Omega merely produced a document dump of OMEG-30000 – OMEG-32658 from which it is not possible to determine the name of the film manufacturer.

include all elements of a particular claim, the same chart applies to both versions. The fact that one of the versions might comprise additional elements that are not recited in the particular claim and that are not included in the other version does not negate the fact that the first version nevertheless includes all claim elements and falls within the scope of the particular claim. The same claim chart applies to Omega Liner regardless of whether the inner film and/or outer film is made by Viaflex or Sudpack.

In addition, the same claim chart also applies to all instances of OMEGA LINER that have a migrating compound in the inner tubular film that migrated to the external side that faces the carrier material to form a covering of migrating compound over that external side. Whether a particular instance of OMEGA LINER includes a covering of migrating compound is not based solely on the manufacturer of the inner film because some instances with Viaflex inner film have a covering of migrating compound, while other instances with Viaflex inner film do not have a covering of migrating compound. So there is no basis for providing a separate chart for all instances of OMEGA LINER that contain Viaflex inner film.

### 2. Buergofol properly prepared a single claim chart for the single accused product alleged to infringe the '269 Patent.

With regard to the '269 Patent, Omega demands that Buergofol provide a separate claim chart for each of two "versions" of the single Accused Product ("Omega Liner"). Omega states that a separate claim chart is required for "the Buergofol 5-Layer Version" and "the Buergofol 7-Layer Version" (Dkt. 396, 28:8-10). Not only are separate claim charts not required for different versions of the same Accused Product, but there is also no basis under Buergofol's infringement analysis to prepare a separate chart for liner versions that each have inner film with five or more layers.

To the extent that two "versions" of Omega Liner made with inner film having different numbers of layers both include all elements of a particular claim, the same chart applies to both versions.  The fact that a second versions might comprise additional elements (e.g., a sixth layer and a seventh layer) that are not recited in the particular claim and that are not included in the first version does not negate the fact that the second version nevertheless includes all claim elements and falls within the scope of the particular claim.  For the '269 Patent, the same claim chart applies to all instances of Omega Liner that have inner film comprising the recited five layers (a)-(e) regardless of whether any particular instance has inner film that also includes a sixth layer and a seventh layer.  For example, an internally situated tubular film that has the layers (a), (b), (c), (d), (e), (f) and (g) necessarily includes the layers (a), (b), (c), (d) and (e) despite the presence of the additional layers (f) and (g).  This is basic claim interpretation.  Thus, the chart for claim 1 of the '269 Patent applies to instances of Omega Liner that have inner film with five or more layers.

Omega also implies that Buergofol's chart for the '269 Patent is deficient because Buergofol did not duplicate an entire claim chart to set forth the contentions regarding claims 2 and 7. (Dkt. 396, 28:12-16)  However, paragraph 7 of the scheduling order does not require a separate complete chart of all claims for each version of an Accused Product. Instead, paragraph 7 describes the information provided with respect to each claim to be a chart.  Paragraph 7(b) requires, "(b) *for each claim*, each product, device, process, act, or method it alleges infringes ("Accused Product"), *a chart* identifying where specifically each element of each asserted claim listed is found in each product, device, process, act, or method" (Dkt. 136, 9:7-11) (emphasis added).  Therefore, the blocks pertaining to claim 2 are considered a chart.  And the chart for claim 2 contends that each instance of

the product that was made using a Buergofol "inner 7a" inner film falls within the scope of claim 2.  The chart for claim 2 does not contend that any instance of the product that was made using a Buergofol "inner 5c" inner film falls within the scope of claim 2.  So no additional chart for claim 2 covering a 5-layer version of Omega Liner is required.  Similarly, the blocks pertaining to claim 7 are considered to be a chart.  The chart for claim 7 contends that each instance of the product that was made using a Buergofol "inner 5c" inner film falls within the scope of claim 7.  The chart for claim 7 does not contend that any instance of the product that was made using a Buergofol "inner 7a" inner film falls within the scope of claim 7.  So no additional chart for claim 7 covering a 7-layer version of Omega Liner is required.

### F.  Buergofol's Contention Regarding Infringement Under The Doctrine Of Equivalents Complies With Paragraph 7 Of The Scheduling Order.

There are no patent local rules in the District of South Dakota and consequently no particular patent local rule pertaining to doctrine-of-equivalents infringement contentions.  There is no established law in the District of South Dakota about how a patent plaintiff must provide notice of a doctrine-of-equivalents infringement theory.  Omega argues based on cherry-picked decisions from the Northern District of California pertaining to the patent local rules of that district and how particular judges in that district have construed those rules with regards to the doctrine of equivalents.  Neither those decisions nor any other case law from the Northern District of California is controlling or has any precedential value for this District of South Dakota case.  Buergofol submits that a thorough reading of case law from the Northern District of California reveals that some application of rules with regards to the doctrine of equivalents (DOE) has improvidently forced litigants, before claim construction and before fact discovery is completed, to

provide function/way/result analyses for DOE infringement contentions.  To the extent that the patent local rules of the Northern District of California have been applied in this manner, they are problematic and should not to be emulated.

More commonly in the Northern District of California, patentees are permitted to amend their infringement contentions under Patent Local Rule 3-6 to include DOE infringement contentions necessitated by a claim construction ruling or newly discovered nonpublic information.[2]  Patent Local Rule 3-6 provides that infringement contentions can be amended upon a timely showing of good cause due to "(a) a claim construction by the Court different from that proposed by the party seeking amendment" and "(c) recent discovery of nonpublic information about the Accused Instrumentality . . .."  (Dkt. 383-1, pp. 9-10 of 15; NDCA Patent Local Rule 3-6)  As patent litigators know, DOE arguments generally present themselves for the first time, if at all, when the court issues a claim construction ruling that interprets a particular term in an unanticipated manner that would render an asserted claim not literally infringed due to a narrow interpretation of a claim "element," but where the accused device obviously has a corresponding portion that functions in the same way, to accomplish same result, as the missing "element." Accordingly, if a court were to issue a claim construction ruling that narrowly construes one claim element in such fashion, then the patentee would at that time have good cause

---

[2]  Infringement contentions contending that all claim elements are literally present can include a placeholder DOE infringement contention for the event that a claim construction ruling or newly discovered evidence precludes asserting literal infringement. In fact, the sample "Alpha Infringement Contentions" from the Northern District of California that Omega holds up as "a good example of proper infringement contentions" includes such a placeholder DOE infringement contention. (*See* Dkt. 396-2, p. 4 of 71 "To the extent that any claim is argued not to be literally found in the Accused Instrumentalities, the Accused Instrumentalities embody such claim elements under the doctrine of equivalents, as there are no substantial differences and each asserted claim element performs substantially the same function, in substantially the same way, to achieve substantially the same result." *See also* p. 7 of 71).

BUERGOFOL'S OPP. TO OMEGA'S          27          4:22-cv-04112-KES
MOTION TO STRIKE BUERGOFOL'S
INFRINGEMENT CONTENTIONS

to argue the doctrine of equivalents, and would have good cause to amend its

infringement contentions to spell out the details of the function/way/result analysis

pertaining to that claim element.  If there is good cause at that time to present a DOE

infringement contention, then the infringement contentions are amended.  It is

unreasonable to force the patentee to prepare involved function/way/result analyses for

several claim elements early in the case that will never be used if the claim construction

ruling construes the claim terms as the patentee proposes.

At the current time before the Court's claim construction ruling, Buergofol does

not know how this Court might construe particular claim elements, so Buergofol does not

know which, if any, function/way/result analyses to prepare.  Therefore, Buergofol in its

infringement contentions appropriately put Omega on notice that Buergofol contends that

each and every element of each asserted claim is literally present in the accused liners

(literal infringement), but that

> "[s]hould the Court in the future interpret a claim element of one of the asserted
> claims of the '269 Patent such that that element is not literally present in the
> Omega accused products, then Buergofol alleges and will allege that that
> element is present under the doctrine of equivalents" and

> "[s]hould the Court in the future interpret a claim element of one of the asserted
> claims of the '882 Patent such that that element is not literally present in the
> Accused Products, then Buergofol alleges and will allege that that element is
> present under the doctrine of equivalents."

(Dkt. 391-1, 5:9-17)  There is no rule in the District of South Dakota that precludes

Buergofol from making that appropriate and correct statement in its infringement

contentions.  Buergofol's DOE infringement contention complies with paragraph 7 of the

scheduling order.

### G. Buergofol's Contention Regarding Induced Infringement Complies With Paragraph 7 Of The Scheduling Order.

There is nothing in paragraph 7 of the scheduling order that requires Buergofol to

provide a separate claim chart for induced infringement.  There is nothing in paragraph 7 that requires Buergofol to explain any element of an indirect infringement theory of induced infringement.  There is no statement in paragraph 7 about how Buergofol must provide a "factual basis" for any of the elements of induced infringement.  The terms "induce," "inducement" and "induced infringement" do not appear in paragraph 7.  As such, Buergofol maintains that Buergofol has no obligation to explain the elements of induced infringement, nor does Buergofol have any obligation to provide a separate claim chart.  As Buergofol's charts for the '882 Patent and '269 Patent set forth, the product that Buergofol "alleges infringes" is the Omega Liner made by the defendant, Omega Liner Company.  The claim charts that Buergofol served meet the requirements of paragraph 7 and are adequate to support Buergofol's claims of direct and indirect infringement.

Omega's brief discusses the elements that a party asserting induced infringement must ultimately prove, but there is no requirement that Buergofol set forth those proofs in a claim chart.  Omega describes a case from the Northern District of California in which contentions for induced infringement were allegedly stricken, but the patent local rules of the Northern District of California are not in force in this District of South Dakota case.  It is simply irrelevant whether contentions pertaining to a patent local rule in a different district were stricken.

At the time a plaintiff files a complaint in a patent infringement action, the plaintiff may not have a basis and the evidence required to prove induced infringement, so the complaint as filed does not plead induced infringement.  It would be improper to plead an induced infringement allegation without adequate basis.  When discovery reveals a basis, then the plaintiff typically moves to amend the complaint to add an

induced infringement cause of action.  Similarly, the plaintiff would move at that time to amend its infringement contentions in like fashion.  That is the situation here.  It is anticipated during upcoming discovery (for example, the upcoming Rule 30(b)(6) deposition of Omega) that Buergofol will uncover evidence that Omega knowingly induced infringement of both the '882 Patent and the '269 Patent.  Buergofol will then, at that time, move to amend its complaint and to amend its infringement contentions.  There is nothing in paragraph 7 of the scheduling order that prevents Buergofol from proceeding in this standard and proper fashion.

### H.  Omega's Request To Stay Its Discovery Obligations Must Be Denied.

Buergofol's infringement contentions comply with paragraph 7 of the scheduling order.  Omega's incorrect assertion that Buergofol's infringement contentions are inadequate provides no basis for staying Omega's discovery obligations.  Omega must be compelled to preserve and produce a sample of each dry liner made by Omega.

## IV.   CONCLUSION

Omega's motion to strike Buergofol's infringement contentions must be denied.

Dated this 3rd day of July, 2024

**DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.**

                    By  /s/ Elizabeth S. Hertz
                        Elizabeth S. Hertz
                        P.O. Box 1030
                        206 West 14th Street
                        Sioux Falls, SD 57101-1030
                        Phone (605) 357-1263
                        Fax (605) 335-3639
                        Email ehertz@dehs.com

                        Attorneys for Plaintiff Buergofol

**IMPERIUM PATENT WORKS LLP**
Darien K. Wallace
T. Lester Wallace
P.O. Box 607
315 Ray Street
Pleasanton, CA 94566
Phone (925) 550-5067
Fax (925) 835-5804
Email darien@imperiumpw.com
          lester@imperiumpw.com

Attorneys for Plaintiff Buergofol
*Pro Hac Vice*