UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>  Plaintiff and<br><br>  Counter Defendant,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>  Defendant and<br><br>  Counter Claimant. | 4:22-CV-04112-KES<br><br>BRIEF IN SUPPORT OF OMEGA'S MOTION TO COMPEL DISCOVERY FROM U.S. CUSTOMS AND BORDER PROTECTION |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1
II. FACTUAL BACKGROUND..................................................................................................5
III. ARGUMENT...........................................................................................................................7
    A. The Federal Rules of Civil Procedure and the Administrative Procedures Act Provide Mechanisms to Compel Production by CBP. .....................................7
    B. The Documents and Information Should be Produced Pursuant to Fed. R. Civ. P. 45.......................................................................................................7
    C. The Documents Should Be Produced Under the APA Because the Decision of CBP Was Arbitrary, Capricious, and an Abuse of Discretion, or Otherwise Not in Accordance with the Regulations Governing Disclosure. ...................................................................................................8
        1. The Protective Order Adequately Maintains the Confidentiality of the Documents and Information Sought. ......................................................9
        2. The Import Records Are Not Trade Secrets or Commercial Information Exempted from Production. .....................................................10
    D. CBP's Claims Regarding Undue Interference with Its Conduct and the Other *Touhy* Regulations Are Not Supported by Facts and Contradict the Regulations Applicable to CBP. ..........................................................................13
IV. CONCLUSION......................................................................................................................15

Defendant OMEGA LINER COMPANY, INC. ("Defendant" or "Omega") respectfully submits this brief in support of their motion to compel discovery from third-party United States Customs and Border Protection ("CBP").

## I. INTRODUCTION

Omega subpoenaed CBP in order to obtain records relating to the importation of films and pipe liners that are the subject of this lawsuit. The relevance of this information cannot be overstated and goes directly to Omega's claims and defenses in this litigation, including documents and information that will show the importation of pipe liners into the United States by or to the companies identified in the subpoena as "shippers" of the goods or "recipients" of the goods. This evidence will show that the inventions of the '269 and '882 Patents were "on sale" or "in public use" in the United States before the patents' critical dates and may be case dispositive.

Omega already sought this information from Buergofol, who refuses to produce it, claiming it no longer has the documents, despite importing films to Omega as recently as 2018. Further, the rest of the entities, save one, are German companies. And while Germany is a signatory to the Hague Convention, discovery is limited, and Omega cannot require a German company to produce records or documents. Thus, CBP is the source of "last resort" for the information sought.

In response to the subpoena, CBP first sought additional information from Omega. Omega submitted the information sought as well as a copy of the protective order in place in this case – should CBP have concerns regarding the disclosure of commercial information. In response, CBP identified two reasons for its decision not to produce the requested information: (1) the import records sought constitute "trade secret information"; and (2) the disclosure of the information sought would "unduly interfere with the orderly conduct of CBP business by requiring it to needlessly expend resources to produce information in a third-party action." Neither of these

reasons is apt or precludes disclosure under the Federal Rules of Civil Procedure or the regulations identified by CBP.

Whether the production sought should be analyzed under the Federal Rules of Civil Procedure or the regulations is yet to be addressed by the Eighth Circuit, and there is a split among the other circuits. Here, under either the Federal Rules or the regulations set forth in the Administrative Procedures Act ("APA"), the agency's decision should be set aside. Federal Rule Civil Procedure 45 allows Omega to seek relevant information from non-parties unless the Court finds the subpoena imposes an undue burden, requires disclosure of privileged documents, fails to allow a reasonable time to comply, or exceeds geographical limits. None of these reasons for denying discovery exist here.

Under the APA, the agency's refusal to produce documents is to be set aside when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." An agency decision may be deemed arbitrary or capricious when it fails to "examine the relevant data" or "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). The decision of CBP was arbitrary and capricious and not in accordance with its own regulations and should be set aside.

First, the import documents and information sought are not trade secrets or confidential commercial information, the disclosure of which would harm the entity importing the goods into the United States. To the contrary, under the regulations identified by CBP, it is charged with collecting and maintaining most, if not all, the information sought by Omega in electronic form and making it available for dissemination to the public. *See, e.g.*, 19 C.F.R. §103.31(c) (itemizing twenty-two import "data elements" available to the public).

2

Further, any concerns regarding the commercial or confidential nature of the information sought are fully addressed by the protective order already in place in this case. That protective order allows parties and non-parties to designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" documents that can only be used for this litigation and not for other purposes, such as improper competitive purposes. The failure of CBP to consider the protective order renders its decision capricious and arbitrary. Combined with the fact that the documents and information sought are not trade secrets, there is no basis in law of fact that would support CBP's claim that the information sought contains trade secrets or commercial information precluding production. And its decision runs contrary to the regulations requiring it to collect and maintain most, if not all, of the information sought for dissemination to the public, further demonstrating that its decision is arbitrary, capricious, and not in accordance with the law and should be set aside.

Second, the conclusory claims regarding the *Touhy* regulations are without merit. As an initial matter, none are supported by any facts or explanation that would support CBP's decision. For instance, CBP claims disclosure of the import records would "unduly interfere" with the orderly "conduct of CBP business" and would require the needless expenditure of taxpayer funds. But CBP fails to address or overcome its mandate to collect, maintain, and make available to the public the information sought. Its claim of undue burden is equally unavailing in view of its mandate to maintain the information electronically. Thus, the information can be accessed and produced via a few strokes of a computer keyboard – which would not cause undue interference with CBP's ability to conduct its business.

CBP's claim that it has no "interest" in the lawsuit and can therefore ignore Omega's subpoena is also without merit. CBP incorrectly equates "interest" to mean "party to a lawsuit" –

an interpretation that directly conflicts with the purpose of the regulations governing disclosure. CBP's position would make the word "interest" mere surplusage, an interpretation that runs counter to canons of regulatory interpretation requiring that all words of the regulations be given effect.

CBP also incorrectly claims that the taxpayer would not "benefit" by disclosure of the import records. But the benefit to the public is manifest. Courts have long recognized the significant public policy interest in removing invalid patents from the public arena. Because the information sought would render the patents-in-suit invalid, the interest of the public (the taxpayer) would be well served and benefited by compliance with the subpoena.

Omega seeks nothing more than information already collected and maintained by CBP. Therefore, the cost to search for that information would, by all accounts, be minimal. Omega is only seeking import records relating to ten importers over the course of a dozen or so years. And this request involves only a handful of import records per year since many of the entities may not have imported into the United States in all of the relevant years, or, if they did, they imported very few products in limited quantities. Additionally, to reduce any burden on CBP, Omega already offered to meet and confer to discuss limiting the information sought in a reasonable way. CBP never responded.

CBP fails to provide a "rational connection" between the actual facts and its decision or otherwise provide an explanation or factual support for its conclusion or decision. Its decision is, therefore, arbitrary, capricious, and not in accordance with its own regulations of the law and should be set aside.

## II.     FACTUAL BACKGROUND

Omega served a subpoena on CBP on April 1, 2024. (Bond Decl., Ex. A.) In the main, Omega's subpoena seeks "all documents and things that relate to the importation of goods into the United States from January 1, 2000 to December 31, 2014" from or to the following entities: Buergofol, Saertex, Brandenburger, Sudpack, Huhtamaki, Reline, Impreg, Light Stream, International Pipe Lining, and Monte Vista, *i.e.,* the companies identified in the subpoena. Omega's subpoena seeks evidence to support its claims and defenses in this litigation, including that the inventions of the '269 and '882 Patents were "on sale" or "in public use" in the United States before the patents' critical dates. The information Omega seeks includes documents that will show the importation of pipe liners or films (also referred as "foils") into the United States by or to the companies identified in the subpoena as "shippers" of the goods or "recipients" of the goods. (Bond Decl., Ex. A.)

CBP responded to the subpoena by a letter dated April 22, 2024, from CBP Assistant Chief Counsel Kathleen Bucholtz. (Bond Decl., Ex. B.) The letter sought additional information under 19 C.F.R. §§ 103.22 (c) and (d), which require that, along with a demand for information, the requesting party provide CBP with a copy of the Summons and Complaint, as well as an affidavit or a statement summarizing the documents or testimony sought and their relevance to the proceedings, at least ten (10) working days before the scheduled production date. (Bond Decl., Ex. B.) In response, Omega's counsel attempted to contact Ms. Lois Wetzel (counsel for CBP), which the letter identifies as the proper contact for any "questions." (*Id.*, at ¶¶ 5 and 7, and Ex. E.) Omega's counsel sought a conference to discuss the information requested and to explore whether the parties could reach an agreement under the Federal Rules of Civil Procedure or the identified regulations. (*Id.*) Ms. Wetzel did not return the calls. (*Id.*)

Next, Omega responded to CBP by letter dated May 8, 2024, enclosing a copy of the Summons and Complaint in this litigation, along with a statement summarizing the documents and information sought ("the Import Records"), their relevance, and addressing the "general considerations" under 19 C.F.R. §103.23 to be used by the CBP in determining whether to disclose information pursuant to a demand. (Bond Decl., Ex. C, at pp. 3-8.) Omega additionally extended the return date of the subpoena to May 31, 2024. (*Id*., at p. 1.) In the spirit of cooperation, Omega also offered to limit the requests to certain information. (*Id*., at p. 4.)

In a letter dated May 22, 2024, CBP responded to Omega indicating that the subpoena was reviewed under 19 C.F.R. § § 103.22 and 103.23[1] and 6 C.F.R. § 5.44(b), § 5.45, § 5.48[2] identified as the "Agency's *Touhy* regulations."[3] (Bond Decl., Ex. D.) CBP identified two reasons for its decision not to produce the requested information:

- The Import Records sought constitute "trade secret information" under 18 U.S.C. § 1905. (Bond. Decl., Ex. D, at p. 2 (citing 19 C.F.R. § 103.23(b)(1) and (6)).

- The disclosure of the Import Records would "unduly interfere with the orderly conduct of CBP business by requiring it to needlessly expend resources to produce information in a third-party action. " (*Id*., Ex. D, at p. 2 (citing 19 C.F.R. § 103.23(b)(8) and (9); and 6 C.F.R. §§ 5.48(a)(4)-(7)).

Because neither of these reasons is apt, Omega responded to the decision by noting its disagreement with CBP's decision, pointing out the Import Records sought are not trade secrets, and noting that the general considerations CBP identified were not supported by any facts or explanation. (Bond Decl., Ex. E.) Omega's counsel requested that CBP reconsider its decision and

---

1. 19 C.F.R. § 123 is titled "Factors in determining whether to disclose information pursuant to demand."

2. 6 C.F.R § 5.48 is titled "Considerations in determining whether the Department will comply with a demand or request."

3. *Touhy* refers to *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

offered to discuss limiting the documents and information sought to reduce the burden on CBP and to avoid motion practice before the Court. (*Id.*) In addition, Omega's counsel requested that, if CBP would not reconsider, to provide times to meet and confer under the local rules to avoid the need for Omega to file a motion to compel. (*Id.*) CBP did not respond. Omega's counsel also called to meet and confer before the filing of this motion, but CBP counsel did not respond. (*Id.*)

### III.    ARGUMENT

#### A.    The Federal Rules of Civil Procedure and the Administrative Procedures Act Provide Mechanisms to Compel Production by CBP.

When a federal agency refuses to produce documents in response to a subpoena and relies on its regulations to support its decision, a circuit split exists as to the standard used to evaluate the agency's decision to withhold information pursuant to a third-party subpoena issued under Federal Rule Civil Procedure 45. *Upsher-Smith Labs., Inc. v. Fifth Third Bank,* No. 16-CV-556 (JRT/HB), 2017 WL 7369881, at *6 (D. Minn. Oct. 18, 2017). The Eight Circuit has yet to address whether the Court should resolve the matter by applying the standard set forth under Rule 45 or under the Administrative Procedures Act ("APA") 5 U.S.C. § 701, *et seq.* Here, under either the Federal Rules or the APA, the agency's decision should be set aside.

#### B.    The Documents and Information Should be Produced Pursuant to Federal Rule Civil Procedure 45.

Under Rule 45, in general, the Import Records should be produced unless the subpoena causes an undue burden, requires disclosure of privileged documents, fails to allow a reasonable time to comply, or exceeds geographical limits. Fed. R. Civ. P. 45(d)(3); *see also Watts v. S.E.C.,* 482 F.3d 501, 509 (D.C. Cir. 2007) (holding that the Federal Rules "can adequately protect" both private litigants and government agencies). This standard of review compels production here because, as is explained in detail below, the information is limited in time and scope, thereby presenting no undue burden. Sections II.C.2 and D, infra, at pp. 7-10. Nor do the Import Records

7

and information contain trade secrets or commercial information; but, even if they did, the Court has entered a protective order in this case that protects the confidentiality of such information, *i.e.*, Dkt. 131. Sections II.C.1. Indeed, Omega's counsel has already provided CBP with a copy of the protective order, but CBP appears to have not duly considered the order in reaching its decision not to produce any documents. (Bond Decl., Ex. C.) Further, the CBP has had more than adequate time to reply, and the subpoena complies geographically with Rule 45(c)'s requirements. In fact, 19 C.F.R. §103.31 mandates that CBP collect, maintain, and disseminate to the public most, if not all, of the import information sought by Omega (*e.g.*, manifest and shipment records). Thus, there is no valid reason under the Federal Rules of Civil Discovery to deny Omega this highly relevant and potentially case dispositive information.

> **C.    The Documents Should Be Produced Under the APA Because the Decision of CBP Was Arbitrary, Capricious, and an Abuse of Discretion or Was Otherwise Not in Accordance with the Regulations Governing Disclosure.**

CBP's refusal to produce documents is reviewed under 5 U.S.C. § 706 of the APA. The agency's decision not to produce is set aside when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Upsher-Smith Labs., Inc.,* 2017 WL 7369881, at *7 (quoting 5 U.S.C. § 706). Even under that standard, a court "cannot supply a reasoned basis for the agency's action that the agency itself has not given." *Rhoads v. U.S. Dep't of Veterans Affairs*, 242 F. Supp. 3d 985, 994 (E.D. Cal. 2017) (citation omitted). In addition, the Court should grant a motion to compel when the agency's decision "runs counter to the evidence" before it. *U.S. ex rel. Lewis v. Walker*, No. 3:06-CV-16 (CDL), 2009 WL 2611522, at *4 (M.D. Ga. Aug. 21, 2009). An agency decision may be deemed arbitrary or capricious if "the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not

be ascribed to a difference in view or the product of agency expertise." *Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 994 (8th Cir. 2016).

In evaluating an agency's decision, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Thus, an agency's determination is arbitrary or capricious when it fails to "examine the relevant data" or "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). When a court conducts this analysis, it "is not to substitute its judgment for that of the agency." *Id.*

### 1. The Protective Order Adequately Maintains the Confidentiality of the Documents and Information Sought.

CBP objects to producing the Import Records on grounds that they contain "trade secret" or confidential commercial information. The CBP's objection fails to acknowledge that CBP was provided with the protective order issued by the Court. (Dkt. 131; Bond Decl., Ex. C, at p. 7 (Exhibit D).) That protective order allows parties and non-parties to designate documents as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." (Dkt. 131, at p. 5, ¶ 5.2.) Under either designation, the material can only be used for this litigation and not for other purposes, such as improper competitive purposes. (*Id.*, at p. 9, ¶ 7.1.) These provisions are clearly set forth in the protective order that was provided to CBP, and the protective order answers every concern the CBP has voiced and provides the requisite protection of confidential commercial information. CBP's failure to consider the protective order in its decision to withhold the documents based on confidentiality is arbitrary, unreasonable, and capricious. *See, e.g., Grupo*

9

*Petrotemex, S.A. De C.V. v. Polymetrix AG*, No. 16-CV-2401 (SRN/HB), 2018 WL 5307823, at *3 (D. Minn. Oct. 26, 2018) ("Further, Magistrate Judge Bowbeer observed that even if the information were confidential, § 103.23(b)(6) does not preclude its release under a protective order."); *Williams v. C. Martin Co. Inc.*, No. CIV.A. 07-6592, 2014 WL 3095161, at *5 (E.D. La. July 7, 2014) ("FEMA's concern that the information sought in the deposition may include confidential or privileged information is mostly, if not completely, alleviated by the fact that the parties have entered into a protective order."); *Fischer v. Cirrus Design Corp.*, No. CIV 503-CV-0782 HGMDEP, 2005 WL 3159658, at *7 (N.D.N.Y. Nov. 23, 2005) ("With the entry of a Rule 26(c) protective order in this case, which plaintiff agrees would cover any Cirrus confidential materials obtained from the FAA, any confidential or trade secret information disclosed by the agency to the plaintiffs in this case will be amply protected."). Thus, there is no "rational connection" between the actual facts and the decision of the CBP. *Motor Vehicle, 4*63 U.S. at 43; *Grupo Petrotemex,* 2018 WL 5307823, at *4 (". . . an agency's determination is arbitrary or capricious when it fails to examine the relevant data or articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (internal quotations omitted). The failure of CBP to even examine and consider the protective order renders its decision capricious and arbitrary.

        **2.    The Import Records Are Not Trade Secrets or Commercial Information Exempted from Production.**

CBP's decision sets forth "boilerplate" objections, void of any factual analysis that would establish that the Import Records contain trade secrets or confidential information. To the contrary, the decision runs contrary to the evidence before the agency.

10

First, much of the information sought is publicly available. For instance, specific regulations govern the import/export information that must be made available to the public. 19 C.F.R. § 103.31(c) ("Disclosure to the Public").

> Members of the public shall not be permitted to examine vessel manifests. **However, they may request and obtain from CBP, information from vessel manifests, subject to the rules set forth in paragraph (a) of this section.**

*Id*. (emphasis added). This regulation also itemizes twenty-two "data elements" for disclosure, including the shipper's name and address and consignee name and address, that "will be provided to the public via CD-ROMS." 19 C.F.R. § 103.31(e)(3). Omega's subpoena seeks this, and other basic information contained in the Import Records for the identified entities. (Bond Decl., Ex. C.) CBP's claim that this information is confidential conflicts with the mandate to make this information available to the public. As such, it is manifestly unreasonable. *Grupo Petrotemex*, 2018 WL 5307823, at *7 ("…given the conclusion of this Court concerning . . .the mandate [of the regulations] to make aircraft manifests available for public disclosure, CBP's argument that such manifests are confidential and thus not disclosable is in clear conflict with a plain reading of [the regulations]").

Second, it is not sufficient to merely assert the Import Records are "trade secrets" or contain "commercial information" as CBP has done here. (Bond Decl., Ex. D, at p. 2.)  It must be shown that disclosure "would **improperly** reveal confidential commercial information without the owner's consent." 19 C.F.R. § 123(b)(6) (emphasis added). Namely, that disclosure would cause substantial harm to the competitive position of the person from whom the information was obtained under the circumstances, *i.e.*, when here much of the information sought is a matter of public record, and for documents and information that are not, there is a protective order in place.

11

CBP cannot eliminate or ignore the "improperly" requirement of the regulation. As explained in the *Grupo Petromex* case:

> CBP has still not reasonably "considered whether there could be a 'proper' disclosure of the confidential commercial information," . . . and specifically whether "proper" disclosure could be effectuated by a protective order. The Court therefore agrees that "CBP failed to articulate why producing the information under the protective order in the circumstances of this case would be improper, . . ."

The Import Records can be properly disclosed under the circumstances here. CBP fails to provide a "rational connection" between the actual facts and its decision. *Motor Vehicle,* 463 U.S. at 43. Its decision is, therefore, arbitrary and capricious.

> Further, the information sought is not otherwise exempted from production:
>
> The relevant question thus becomes whether the commercial information submitted to the FDA by the IOL manufacturers is 'confidential' within the meaning of Exemption 4. Commercial information is confidential for purposes of the exemption if its disclosure would either '(1) . . . impair the Government's ability to obtain necessary information in the future; or (2) . . . cause substantial harm to the competitive position of the person from whom the information was obtained.'"

*Public Citizen Health Research Grp. v. F.D.A*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). The CBP does not claim or explain that production would impair the Government's ability to obtain information in the future so "the only issue facing the Court is whether disclosure of the information is likely to cause substantial harm to the competitive position" of Buergofol or other entities whose import records are sought. *Gilda Ind. v. U.S. Customs Border Protection*, 457 F. Supp. 2d 6, 6 (D. D.C. 2006). Here, the Import Records do not contain trade secret or confidential business information, the disclosure of which would harm the entity importing into the United States. CBP fails to explain or establish how disclosure of the Import Records could do so. Moreover, any such claim is fully addressed by the protective order in place. CBP fails to provide a "rational connection" between the actual facts and its decision. Its decision is, therefore, arbitrary and capricious.

12

### D. CBP's Claims Regarding Undue Interference with Its Conduct and the Other *Touhy* Regulations Are Not Supported by Facts and Contradict the Regulations Applicable to CBP.

The response makes several conclusory claims regarding the *Touhy* regulations, none of which are supported by any facts or explanation that would support the decision of CBP or overcome its mandate to collect, maintain, and make available to the public the Import Records as set forth, for instance, in 19 C.F.R. § 103.31. First, CBP claims disclosure of the Import Records would "unduly interfere" with the orderly "conduct of CBP business" and the needless expenditure of taxpayer funds, citing 19 C.F.R. § 103.23(b)(8) and (9). (Bond Decl., Ex. D, at p. 2.) There is no factual basis provided for these claims. Moreover, they expressly contradict the mandate of the CBP, which is charged with collecting and maintaining import data such as "manifest data" on its "Automated Manifest System" and making it available to the public. 19 C.F.R. § 103.31(e). Nor is CBP's position consistent with its mandate to make available "agency-maintained" information in response to "legal processes." 19 C.F.R. § 103.0. CBP thus fails to provide a "rational connection" between the actual facts, the regulations, and its decision.

Further, CBP appears to equate "interest," as that term is used in Section 103.23(b)(9), to mean "party to a lawsuit," and because it is not a party to this lawsuit, argues that it has no interest and can ignore Omega's subpoena. But that directly conflicts with Section 103.23's purpose. The use of these regulations contemplates that CBP is not a party to the lawsuit. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 776 n.4 (9th Cir. 1994). Thus, CBP's interpretation would make the word "interest" as used in Section 103.23(b)(9) mere surplusage, which runs counter to canons of regulatory interpretation. *See Bowsher v. Merck & Co., Inc.*, 460 U.S. 824, 833 (1983) (addressing statutory construction); *see also Mitchell v. C.I.R.*, 775 F.3d 1243, 1249 (10th Cir. 2015) ("In interpreting the relevant regulations, we apply the same rules we use to interpret statutes.").

13

CBP also claims the taxpayer would not "benefit" by disclosure of the Import Records, and that it cannot be the source of "first resort" for the information. First, the benefit to the public is manifest. "Both [the Federal Circuit] and the Supreme Court have recognized that there is a significant public policy interest in removing invalid patents from the public arena." *Smithkline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1354 (Fed. Cir. 2005). As explained in detail by Omega, the Import Records contain information that would render the patents-in-suit invalid, for instance under pre-AIA 35 U.S.C. § 102(b) (on sale bar). (Bond Decl., Ex. C, at pp. 5-6.) Thus, the interest of the public—the "taxpayer"—would be well served and benefited by compliance with the subpoena.

Additionally, CBP is not the source of "first resort." Omega sought the information from Buergofol as part of discovery, but Buergofol claims it does not have the information. (Bond Decl., Ex. C, at pp. 5-6.) Further Light Stream, one of Buergofol's customers who received film imported into the United States, is no longer in business, so Omega cannot obtain information from Light Stream. (*Id.*) The other entities listed in the subpoena, except Monte Vista, are all German companies, and even though Germany is a signatory to the Hague Convention, it does not require third-party witnesses to produce records for use in a civil action in federal court in the United States. (*Id.*, p. 6.)

Omega seeks nothing more than the Import Records already collected and maintained by CBP. Therefore, the cost to search for the ESI by all accounts would be minimal. Omega is only seeking import records relating to ten importers over the course of a dozen years or so. This involves only a handful of import records per year since many of the entities may not have imported into the United States all of the relevant years, or, if they did, they imported very few products in limited quantities. Additionally, to reduce any burden on CBP, Omega already offered

14

to meet and confer to discuss limiting the information sought in a reasonable way. (Bond Decl., Ex. C, at p. 4.) CBP never responded.

CBP fails to address any of these facts or provide a "rational connection" between them or overcome its clear mandate to produce the Import Records under these circumstances and its decision, thus rendering its decision arbitrary and capricious.

## IV.  CONCLUSION

For the foregoing reasons, Omega respectfully requests that the Court grant their motion to compel compliance with their subpoena to CBP.

Dated this 19th day of July, 2024.

                                              DENEVAN FALON JOYCE PROF. LLC

                                              /s/ *Meghann M. Joyce*
BY:  Meghann M. Joyce
        Shannon R. Falon
        100 S. Dakota Avenue, Second Floor
        Sioux Falls, SD 57104
        Telephone:  605.219.9465
        Email:   meghann@denevanfalon.com
                      shannon@denevanfalon.com

        Michael S. Neustel *(admitted pro hac vice)*
        Michelle G. Breit *(admitted pro hac vice)*
        Monte M. Bond *(admitted pro hac vice)*
        NEUSTEL LAW OFFICES, LTD
        2534 South University Drive, Suite 4
        Fargo, ND 58103
        Telephone: 701.281.8822
        Email:   michael@neustel.com
                      michelle@neustel.com
                      monte@neustel.com

        *Attorneys for Omega Liner Company, Inc.*