# EXHIBIT N

**From:** lester imperiumpw.com <lester@imperiumpw.com>
**Sent:** Tuesday, July 9, 2024 6:48 PM
**To:** Michael Neustel <michael@neustel.com>
**Cc:** ehertz@dehs.com; darien imperiumpw.com <darien@imperiumpw.com>; Monte Bond <monte@neustel.com>; Michelle Breit <michelle@neustel.com>; meghann@denevanfalon.com; Shannon Falon (shannon@denevanfalon.com) <shannon@denevanfalon.com>
**Subject:** Meet-and-Confer Request re Buergofol's ROG 12

Dear Michael,

We have reviewed Omega's Second Supplemental Responses and Objections (attached) to Buergofol's ROG 12, its Attachment 1 and Attachment 2, along with the explanation in your 2/6/24 1:01 PM email below, and find Omega's response inadequate.  ==We have invested tremendous effort into attempting to glean the requested information from the documents you provided and find that obtaining the requested information is impossible.==  Omega's response does not answer the interrogatory, completely and fully.  Buergofol is entitled to a full and complete answer.

ROG 12 requires Omega to "state", for each and every liner indicated in the table of the interrogatory (each liner is identified by Omega's wet out serial number for that liner):
1) "the name of the manufacturer of the inner film of the liner"
2) "the total sales revenue received by Omega for selling the liner"
3) "the length of the liner in linear feet"
4) "the name of the entity that purchased the liner from Omega"

==If the 4-step lookup method outlined in your 2/6/24 email below is followed, the four items of information 1), 2), 3) and 4) cannot be determined for many hundreds of the liners.==  Considering just the first item of information ("the name of the manufacturer of the inner film of the liner"), that information cannot be obtained for approximately 800 of the liners.  Buergofol submits that if the responding party cannot answer for a given liner, then the verified interrogatory answer must so state.  Buergofol is entitled to know, for each liner, if the party Omega has stated that it is unable to state the name (name of inner film manufacturer) for each individual liner identified in the table of the interrogatory.

Under Fed. R. Civ. Pro. 33(d), "***If an answer*** to an interrogatory ***may be determined*** by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . ", then the responding party may answer by specifying the records that must be reviewed.  But in order to invoke Rule 33(d), the answer requested by the interrogatory must actually be obtainable from the documents. Numerous cases so hold.  "Invocation of Rule 33(d) 'requires first that the information actually be obtainable from the documents.'" E.g., *Schwendimann v. Arkwright Advanced Coating, Inc.*, No. 11-820 (ADM/JSM) (D. Minn. Oct. 14, 2015) (quoting *In re Sulphuric Acid Antitrust Litig.*, 231 F.R.D. 320, 325 (N.D. Ill. 2005)).  The producing party must show that a review of the documents will actually reveal answers to the interrogatories. 8A Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure 2178, at 330 (2d ed.1994).  *Oleson v. Kmart Corp.*, 175 F.R.D. 560 , 564 (D.Kan.1997) ("In other words, the

producing party must show that the named documents contain **all of the information** requested by the interrogatories.") (emphasis added)

<mark>In the present situation with ROG 12, Omega cannot invoke Rule 33(d)</mark> because Omega's answer to the interrogatory cannot be "determined," and because the indicated documents do not contain the four requested items of information for each liner. The requirement for Rule 33(d) "if an answer to an interrogatory may be determined" is not satisfied. An answer to the interrogatory cannot be determined from the Omega business records. Accordingly, Omega cannot use Rule 33(d), but rather must provide a conventional interrogatory answer.

A second reason that Omega's response is not proper under Rule 33(d) is that some of the vital information (for determining the name of the inner film manufacturer for a given liner) is not present in the form of "business records", but rather is provided in a special "Attachment 1" that was prepared for the litigation, to answer the interrogatory. Because Attachment 1 is a specially prepared litigation document, it is not a "business record" under Rule 33(d). Moreover, the indication of the "job number" to which a given "Stringing Quality Audit Sheet" pertains is not a part of any "business record", but rather was apparently written into the PDF file name of the "Stringing Quality Audit Sheet" by an unknown person or persons, for purposes of producing stringing quality audit sheets in the litigation. The specially-prepared file name of each stringing quality audit sheet file is not a "business record" under Rule 33(d). The person who generated to PDF file names was using Omega information that was not produced, and not referenced in the interrogatory answer, to determine for a given stringing quality audit sheet what the so-called "job number" was. This information does not derive from any document produced in this litigation. Because information necessary for the lookup method (to determine from the wet out number of a liner the name of the manufacturer of the inner film of that liner) is not on any "business records", it cannot be pointed to as part of a Rule 33(d) purported answer to an interrogatory. "Attachment 1" to the interrogatory answer, and the PDF file names of the "Stringing Quality Audit Sheet" computer files are not "business records", and are therefore of questionable and unknowable veracity. For this additional reason, Buergofol maintains that Omega cannot use Rule 33(d) to answer ROG 12.

A third reason that Omega's response is not proper under Rule 33(d) is that the name lookup method (see your 2/6/24 email below) that Omega would have Buergofol go through to try to ascertain answers involves making assumptions and judgments. Rule 33(d) is proper for answering an interrogatory in situations in which the business records contain identifiable factual answers to the interrogatory. That is not the case with the multi-step lookup method you have laid out, Michael. Buergofol maintains, for example, that the use of the so-called "Stringing Quality Audit Sheets" to identify an inner film roll number for a given job number is not a simple lookup of obviously applicable information. The usage and meaning of a so-called "Stringing Quality Audit Sheet" is unknown, and cannot be determined from the document itself. Moreover, the number on a stringing quality audit sheet that you would have Buergofol conclude is an "Inner Film Roll #" is actually not that, but rather is labeled "Innerfoil Lot #". Who is to

say that a lot number and a roll number are the same thing? Buergofol maintains that use of Rule 33(d) to answer an interrogatory is not permitted where the requesting party, in order to decipher the answer to the interrogatory, must make assumptions like that using special knowledge. The multi-step lookup method that requires special knowledge makes any ultimately determined answer to be of dubious correctness, but it is Buergofol that is determining the answer, and not Omega "stating" under oath what the answer is.

Buergofol maintains, and will argue to the Court, that Buergofol is entitled to a reliable verified answer from Omega as to the four items of information for each liner. As to the "name of the manufacturer of the inner film," that means Buergofol will maintain that Omega cannot use Rule 33(d), but rather must clearly "state" the name. Moreover, this stated name must be attested to in a verified signed answer by Omega under penalty of perjury.

Due to Omega's deficient response, it is not known which liners it is for which Omega claims not to be able to state the name of the inner film manufacturer. Buergofol maintains that if Omega claims not to be able to state the name for a given liner, then Omega must so state clearly in its interrogatory answer, and this must be done on a liner-by-liner basis. Omega's interrogatory answer is deficient because the formal served answer, as verified by Omega, does not include this information. It is noted that the interrogatory requires Omega to state the name, regardless of whether knowledge of the name might be found in a business record, or might be found in the memory of a person, or might derive or be deduced from some other source. The statement in Omega's interrogatory answer that "Omega does not have business records sufficient to fully respond to Interrogatory No. 12 because prior to July 2019, Omega did not generally maintain business records" does not excuse Omega from answering if Omega can know the answer due to information or knowledge from some other source. Whether Omega has "business records" or not is not determinative of whether Omega can answer the interrogatory. The interrogatory is not asking only for information found in a business record. If Omega does not have a business record, but someone at Omega nonetheless knows the answer, then Omega must state the answer.

The documents produced by Omega and pointed to in your 2/6/24 email are woefully incomplete. Due to that incompleteness, it is demonstrable that the documents cannot be used to answer the interrogatory for several hundreds of liners. ROG 12 asks about more than 1,900 liners (for which the wet out number is known). But Omega has only produced about 1,064 "Stringing Quality Audit Sheet" files. Review of the documents reveals that there is roughly a one-to-one relationship between the job number for a liner, and the liner's "Stringing Quality Audit Sheet", so there are approximately 800 liners for which there is no corresponding stringing audit sheet. Because, according to the 4-step method in your 2/6/24 email, a stringing quality audit sheet is required for each liner in order to identify what you call an "Inner Film Roll #", and because this Inner Film Roll # is required in order to look up the name of the inner film manufacturer using Attachment 1, the more than 800 missing "Stringing Quality Audit Sheets" means that the name of the inner film manufacturer cannot be determined for approximately 800 of

the 1,900 liners.  In other words, Omega's response fails to answer the interrogatory for 800 liners.

Also, the actual response is deficient because the statements about the 4-step name lookup method are not in the interrogatory answer, and are not verified.  If an explanation of a lookup method is being made by Omega, as part of an interrogatory answer, to state that answers are in fact obtainable from the referenced business records, then that explanation must be verified and must be part of the actual interrogatory answer.

As representative examples, we point to six liners (six 60-inch diameter liners):

1) WO-2023-010-1646
2) WO-2022-010-1332
3) WO-2022-010-1323
4) WO-2021-010-898
5) WO-2020-010-686
6) WO-2018-010-194

When one goes through the 4-step lookup method outlined in your email 2/6/24, it is not possible to determine the name of the manufacturer of the inner film for any of the six liners.  This is emblematic of the failure of Omega's Rule 33(d) response to answer ROG 12.

Lastly, we note that Omega willfully refuses to identify the entities of customers that Omega is selling liners to.  Your 2/6/24 email states, in pertinent part, "With regard to customer names, as you know, Omega has consistently and steadfastly maintained that the names of its customers are not relevant to the claims and defenses in this lawsuit. (See, e.g., Dkt. 215-5.) Even Buergofol acknowledges that customer names are not relevant to any issue or defense in the case. (See, e.g., Dkt. 75, p. 15; Dkt. 93-4, p. 16.)"

That statement is absolutely not true.  It does not matter whether Omega has "consistently and steadfastly" refused to do something.  The fact is that the names are relevant.  Your statement that Buergofol acknowledges that customer names are not relevant is not true.  Let it be clearly stated here that the customer names are relevant under Rule 26(b).  Buergofol does not "acknowledge" that customer names are not relevant.  Omega's inducing of infringement, and the details of the direct infringement of individual customers, is definitely relevant, and those issues have relevance with the complaint and pleadings in this case as they are.  Your argument to the contrary is just your opinion and your argument.  Moreover, the names of the customers are relevant because such names are usable to conduct third-party discovery to confirm information about liners, including sales amounts and damages amounts in this case.  This damages issue has been argued, and Buergofol understands Omega's legal position and rejects Omega's legal position.  Buergofol is entitled to present evidence through a damages expert at trial, according to Buergofol's damages theory.  Third party

customers may have information about liners that Omega claims not to have, such as for example information about Omega's early liners before July 2019. Moreover, customers have information on the location of liner installations, and that location information is usable to go to the site, and to sample the actual outer film of the actual liner, so that the actual outer film can then be tested to confirm infringement.  The tested characteristics of a sample of outer film of an installed liner is undeniable evidence.  If Omega does not admit that of all its liners of diameters greater than 21 inches had an outer film "which reflects and/or absorbs UV radiation and/or short-wave, visible light" as recited in claim 1 of the '269 Patent, then Buergofol will seek to do such third-party discovery in the near future to get instances of outer film, from known liners, installed at known locations, and to test that outer film.  It is now time to do that discovery in diligent fashion.  The time to do such fact discovery is upon us.

In response to this email, please advise as to whether Omega will state, for each identified liner of ROG 12, the four items of information.  If Omega insists on relying on the indicated "business records" and its current Rule 33(d) response, then Buergofol will be moving to compel a full answer to ROG 12 as outlined above.  Please advise.

Meet and Confer Request of Omega Counsel

Because Buergofol's proposed motion to compel would be a discovery motion, we counsel for the parties are supposed to meet and confer in good faith pursuant to Rule 37 and also local rule LR 37.1.  According to Judge Duffy, there is a conferment requirement, and "conferment" requires the parties "to have had an actual meeting or conference."  According to Judge Duffy, "before making a motion to compel, 'a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention."  *Eddie's Truck Ctr., Inc. v. Daimler Vans USA LLC*, No. 5:21-CV-05081-VLD, 2023 Us Dist Lexis 125964, 2023 BL 250580 (D.S.D. July 19, 2023).  These statements by Judge Duffy in July 2023 were made subsequent to the latest change in language of LR 37.1, so the latest change in language of LR 37.1 did not dispense with the conferment requirement according to Judge Duffy.

The gratuitous statement in your email below about "the contentious conduct of Buergofol's counsel in such phone calls" is unappreciated.  Please refrain from characterizing Buergofol counsel's conduct.  We, as Buergofol counsel, will endeavor to refrain from characterizing Omega counsel's conduct.

==Accordingly, we respectfully ask you for a day and time when counsel for the parties can accomplish that "conferment" by teleconference.  We make ourselves available anytime in the next days - Wed 7/10, Thurs 7/11, Fri 7/12.  Feel free to call me at (925) 862-9972.  It is our obligation to discuss these issues in good faith, and to try to resolve them.  Buergofol counsel is trying to do that.==

30(b)(6) Depo Notices

In addition to the issues above regarding ROG 12, we have an additional discovery issue to meet and confer about.  In this case, does Omega agree that a party can serve multiple different Rule 30(b)(6) notices, provided that the matters for examination in each notice are different?  For example, does Omega agree that a first 30(b)(6) deposition notice can be served, with a noticed "matter for examination" relating to the structure and composition of Omega Liners, and that a second 30(b)(6) deposition notice can be served at some time later with a noticed "matter for examination" relating to financials and revenues made by Omega selling alleged infringing product?  The Federal Rules do not preclude the service of multiple such Rule 30(b)(6) deposition notices, nor do the Federal Rules preclude the taking of the overall Rule 30(b)(6) deposition in multiple sessions.  Please advise.  Rule 30 allows for the duration of depositions to be changed by stipulation, and the advisory committee notes label the seven-hour-per-designee rule as a presumption that can be extended or otherwise altered by agreement or court order.  Buergofol would prefer to agree with Omega that each designee, for each 30(b)(6) deposition notice, can be deposed for up to seven hours on matters noticed in that notice.  If a second 30(b)(6) deposition notice is then served, and if the same person is again designated to testify as to matters noticed on the second notice, then that designee can be deposed for additional time up to seven more hours.  Would that be agreeable to Omega?  The taking of testimony of each 30(b)(6) designee should not count as a separate deposition (against the 10 depositions allowed per the Scheduling Order (Dkt. 136)), however Buergofol would propose that a party be permitted to serve no more than three 30(b)(b) deposition notices.  The overall 30(b)(6) deposition, including all its sessions, would count as one deposition.  Would that be acceptable and agreeable to Omega?  Please advise.

Lester

T. Lester Wallace
**Imperium Patent Works LLP**
315 Ray Street
Pleasanton, CA 94566
(925) 862-9972