# EXHIBIT O

**From:** Michael Neustel <michael@neustel.com>
**Sent:** Thursday, July 18, 2024 8:38 PM
**To:** lester imperiumpw.com <lester@imperiumpw.com>; darien imperiumpw.com <darien@imperiumpw.com>; ehertz@dehs.com
**Cc:** meghann@denevanfalon.com; Shannon Falon (shannon@denevanfalon.com) <shannon@denevanfalon.com>; Monte Bond <monte@neustel.com>; Michelle Breit <michelle@neustel.com>
**Subject:** Meet-and-Confer Request re Buergofol's ROG 12

Dear Lester,

I am writing in furtherance to meeting and conferring in response to your July 9, 2024 email below regarding Omega's Response to Interrogatory No. 12.

### A.  Five Month Delay

First, I note that you delayed five months to send a response to my February 6, 2024 email below, which provided Buergofol with additional assistance in deriving the answer to Interrogatory No. 12 from the documents Omega provided. We are concerned that you are now raising the issues in your email and appear to intend to file a motion to compel during the short time that Omega has to respond to Buergofol in the *Inter Partes* Review (IPR) for the '882 Patent. If that occurs, we expect that the parties work out a briefing schedule that accommodates the IPR schedule.

### B.  Interrogatory No. 12

As I explained in my email of February 6, 2024, the documents that Omega provided in responding to Interrogatory No. 12 are the same business records on which Omega would need to rely to provide a response to the Interrogatory. **Omega has no additional records from which to answer Interrogatory No. 12.** Specifically, as my February 6 email explains, Omega would need to derive the information from specific business records Omega produced, i.e., Omega's invoices (OMEG-02000-04401 ) and the Stringing Quality Audit Sheets and Dry Line Sheets (OMEG-30000-OMEG-32658, in conjunction with the information Omega provided in Attachment 1 and Attachment 2 to its Second Supplemental Responses and Objections to Buergofol GmbH's Interrogatories to Omega (Set Six) (No. 12), which Omega served on January 12, 2024.  As I explained in my February 6, 2024 email, the burden of deriving the information from those business records would be substantially the same for Omega as it would be for Buergofol.

You criticize Attachment 1 because it was prepared for litigation. First, Attachment 1 was generated using an Omega database, extracting the relevant information, unchanged. The information contained Attachment 1, therefore, is "a subset of available data," the content was not changed in generating Attachment 1, and it qualifies as a business

record under Fed.R.Evid. Rule 806(6), even if generated for use in litigation. *See, United States v. Clotaire*, 963 F.3d 1288, 1294 (8th Cir. 2020).  Please also see the Advisory Committee Notes regarding Rule 803(6), which states (emphasis added):

> The form which the "record" may assume under the rule is described broadly as a "memorandum, report, record, or **data compilation**, in any form." The expression "data compilation" is used as broadly descriptive of any means of storing information other than the conventional words and figures in written or documentary form. It includes, but is by no means limited to, electronic computer storage. The term is borrowed from revised Rule 34(a) of the Rules of Civil Procedure.

Attachment 1 falls squarely within the scope of the definition because it is a "data compilation."

Second, when relying on business records to respond to an interrogatory pursuant to Rule 33(d), the producing party may produce a glossary or index to guide the requesting party to the responsive documents and information. *See, e.g., Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 279 (D.Md. 2012). Even if Attachment 1 does not qualify as a business record (which Omega maintains it does), Attachment 1 (and Attachment 2) are indices to guide Buergofol to find the information from in the other business records Omega produced, *i.e.*, invoices and String Quality Audit Sheets, from which to derive the answer to Interrogatory No. 12.

In addition, you seem to be taking issue with the pdf file names for the Stringing Quality Audit Sheets, which reflect job numbers. We are unaware of any requirement in the rules that mandates the producing party to provide as to how the file names were assigned to electronically produced documents.  Regardless, the file names for the pdf files were given to the pdf documents as originally saved with the exception of the addition of the bates numbers.  If you still have an issue with the file names, please feel free to print the documents in hard copy and ignore the file names. Alternatively or additionally, you can use the job numbers in the file names as a tool or index for deriving information sought by Interrogatory No. 12.

Further, your email states that the documents are incomplete because they do not include information regarding "several hundreds of liners." As Omega stated in its response to Interrogatory No. 12, Omega does not have business records sufficient to fully respond to Interrogatory No. 12 because prior to July 2019, Omega did not generally maintain business records relating to the individual components used to make

individual liners, including inner film. *See* Omega Liner Company, Inc.'s Second Supplemental Responses and Objections to Buergofol GmbH's Interrogatories to Omega (Set Six) (No. 12), at p. 6. Omega has produced all such documents it has.  Again, <u>Omega has no additional records from which to answer Interrogatory No. 12</u>.  Further Omega has no other source (business records or otherwise) from which it can reasonably derive additional information responsive to Interrogatory No. 12.

In sum, it is Omega's understanding that, to the extent Omega has such information, a response to Interrogatory No. 12 can be derived from the business records Omega produced, including the invoices, the Stringer Quality Audit Sheets, Attachment 1, and Attachment 2. If certain information cannot be derived from those sources, then Omega has no other way to fully respond to Interrogatory No. 12.

### C.  <u>Identity of Omega's Customers</u>

Omega maintains its position regarding Buergofol's request for the identity of Omega's customers.

### D.  <u>Rule 30(b)(6) Depositions</u>

We will consider your proposal regarding Rule 30(b)(6) depositions and get back to you next week where we can discuss in separate set of communications.

Regards,

Michael Neustel

Neustel Law Offices, LTD | 2534 South University Drive, Suite 4 | Fargo, ND 58103
Telephone: 701-281-8822 | Website: www.neustel.com | Email: michael@neustel.com