UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>        Plaintiff and<br><br>        Counter Defendant,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>        Defendant and<br><br>        Counter Claimant. | 4:22-CV-04112-KES<br><br>OMEGA'S OPPOSITION TO BUERGOFOL'S MOTION TO AMEND PROTECTIVE ORDER TO IMPOSE PATENT PROSECUTION BAR ON MICHAEL NEUSTEL<br><br>(DKT. 437) |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1
II. ARGUMENT .................................................................................................................2
    A. Buergofol Waived Patent Prosecution Bar for Michael Neustel. ...........................2
    B. Buergofol's Motion is Untimely and Prejudicial to Omega. ..................................4
    C. Any Prosecution Bar Should Not Restrict Mr. Neustel from Continuing to Prosecute Applications Related to Equipment for Installing CIPP Liners. .............5
    D. Omega Requests Its Attorney's Fees. ....................................................................9
III. CONCLUSION..............................................................................................................10

I.  **INTRODUCTION**

Buergofol's attempt to belatedly impose a patent prosecution bar on Mr. Michael Neustel is both procedurally flawed and substantively unjustified. Despite ample opportunity to raise concerns regarding Mr. Neustel's involvement in patent prosecution, Buergofol consciously chose not to address this issue during the negotiation and implementation of the protective order – or during the more than one year since the Court entered its Protective Order (Dkt. 131) – thereby waiving any right to do so now.

During that time, there has been no change in the scope of this litigation or the nature of the discovery anticipated and actually conducted. Similarly, there has been no alteration in the type of patent prosecution work that Mr. Neustel was already engaged in when the Court issued its general Protective Order. In fact, Buergofol has failed to identify any good cause to impose a patent prosecution bar now, when it did not previously pursue one.

Buergofol's sudden motion, filed over a year after the Protective Order was entered and 20 months after the initial discussions on the matter, is a transparent attempt to gain an unfair advantage, all while offering no legitimate explanation for its extensive delay. Such tactics not only undermine the integrity of the judicial process but also risk causing significant prejudice to Omega, which has relied on the existing Protective Order in good faith.

Even if Buergofol's motion did not suffer from these undeniable fatal flaws, Buergofol's proposal to impose a bar against Mr. Neustel for prosecuting patents related to equipment used for installing CIPP liners is excessively overbroad and contradicts Buergofol's prior statements about the scope of the patent prosecution bar entered by the Court. For example, on December 5, 2022, Buergofol admitted that the scope of the patent prosecution bar would <u>not</u> exclude Mr. Neustel

1

from continuing to prosecute patent applications related to "methods and devices for the manufacture, installation, use etc. of pipe liners." (Dkt. 37-2, p. 13.)

Furthermore, Buergofol's *only* involvement in the CIPP liner market is limited to *making and selling* inner and outer films, which are components used in the manufacture of CIPP liners. Unlike Omega, Buergofol neither manufactures nor sells UV CIPP liners. Additionally, unlike Subsurface, Buergofol does not install CIPP liners or make equipment for their installation. Therefore, Buergofol would have no confidential information of its own related to these areas. Indeed, Buergofol has not produced any information in this lawsuit related to the manufacture of CIPP liners, aside from the patents-in-suit, nor has it produced *any* information relating to installation equipment for CIPP liners. Absolutely no basis exists therefore to prohibit Mr. Neustel from prosecuting patents related to those areas.

This Court should reject Buergofol's motion in its entirety, as it is untimely, baseless, and causes undue prejudice to Omega and Subsurface. Alternatively, the Court should clarify that any patent prosecution bar against Mr. Neustel should not apply to patent applications for equipment that is used to install CIPP liners or methods for installation.

## II. ARGUMENT

### A. Buergofol Waived Patent Prosecution Bar for Michael Neustel.

Back in the very early stages of this litigation, nearly two years ago, when the parties met and conferred regarding the inclusion of a patent prosecution bar in a general protective order, Omega proposed a reciprocal patent prosecution bar that would apply to the attorneys for *both* Omega and Buergofol. (Dkt. 37-1, p. 14, Omega's Proposed Protective Order.) On December 2, 2022, Buergofol's attorney Lester Wallace responded to an email from Michael Neustel by adding bolded red text within the body of Mr. Neustel's email as shown below:

2

> Regarding the Patent Prosecution Bar (Section 8), this is standard language in a Protective Order where there is a risk that a patent attorney prosecuting patent applications on behalf of a party could use (inadvertently or otherwise) AEO information to draft/amend the scope of claims in a pending application as you know. Your firm prosecutes patent applications on behalf of Buergofol and therefore Omega has a legitimate concern that a patent prosecutor at your firm that receives AEO information about Omega's products could use that information in drafting/amending claims in pending applications (see the Declaration of Thomas Schlief you filed this week where he states that he "*prosecuted claims of German patent application ... so as to cover film ... by competitors of Buergofol*"). A patent prosecution bar eliminates this risk **[the "risk" is way overblown]** by preventing individuals who have access to technical information from directly or indirectly drafting, amending, advising, or otherwise affecting the scope of patent claims in a technical field related to the patents at issue. In this case, the Patent Prosecution Bar will protect both Omega <u>and Buergofol</u> from these risks as I am also a patent prosecutor who will have access to AEO. I am sure **[don't be]** Buergofol would not want me to prosecute patent applications related to their AEO information. **[If an inventor at Omega comes up with a new invention, good for him/her. File your patent application.]**

(Dkt. 37-2, p. 17.)  As shown above, initially Buergofol conceded that no need existed to impose a prosecution bar on Omega's counsel. Mr. Wallace unequivocally stated, "If an inventor at Omega comes up with a new invention, good for him/her. File your patent application." (*Id.*)

A few days later, on December 5, 2022, Mr. Wallace then complained that the proposed reciprocal patent prosecution bar was unfair because it did not prevent Mr. Neustel from prosecuting patent applications relating to "methods and devices for the manufacture, installation, use etc. of pipe liners and their constituent parts." (Dkt. 37-2, p. 13.)  Mr. Wallace specifically stated the following:

> 5. Your proposed prosecution bar is also one-sided and restricts Buergofol's attorneys but not you. Your proposed prosecution bar allows you (Michael Neustel) to continue doing patent prosecution work for Omega, for Omega's owners, and for "Subsurface Inc." which is apparently owned by the same people. If Darien Wallace were to be precluded from prosecuting patents to Buergofol's technology, then Michael Neustel should be precluded from prosecuting patents to Omega's technology. You and your firm should be precluded from "prosecuting patents or patent applications relating to" all things pipe liner, including methods and devices for the manufacture, installation, use etc. of pipe liners and their constituent parts.

(*Id.*)

3

After a number of additional email exchanges, Buergofol refused to agree to a reciprocal patent prosecution bar as proposed by Omega. (Dkt. 37-2, pp. 1-11.) Omega then filed a motion for a general protective order that included a reciprocal patent prosecution bar. (Dkt. 35, Motion for Protective Order; Dkt. 37-1, Omega's Proposed Protective Order.) In its opposition brief, Buergofol did not argue that a patent prosecution bar should be imposed on Mr. Neustel. Instead, Buergofol simply argued that the proposed reciprocal patent prosecution bar should not apply at all. (Dkt. 49.) On June 2, 2023, the Court entered the general Protective Order with a patent prosecution bar only applying to Darien Wallace. (Dkts. 130, 131.)

Buergofol did not object to the prosecution bar the Court entered; nor did it request any modification. Now, more than one year later, Buergofol has filed the present motion without identifying any good cause for its lengthy delay. During that time, Buergofol produced numerous technical documents it marked as "Attorney's Eyes Only," knowing that Mr. Neustel would have access to those documents while contemporaneously prosecuting patents related to equipment and methods for installing CIPP liners. The Court should deny Buergofol's motion for a prosecution bar given that Buergofol has shown no good cause for its year-long delay.

**B.    Buergofol's Motion is Untimely and Prejudicial to Omega.**

Not only has Buergofol provided no good cause for its delay in filing the present motion, but it also has not shown good cause to raise the issue now. Indeed, if a prosecution bar applying to Michael Neustel were entered now after Buergofol's long delay, Omega would suffer undue prejudice.

Since the Court entered the Protective Order on June 2, 2023, Buergofol has produced technical documents relating to its inner and outer films marked as Attorney's Eyes Only ("AEO"). With no prosecution bar imposed, Michael Neustel, as Omega's lead counsel, has had unfettered access to the documents. These documents, Buergofol would argue (based on its current briefing),

4

are the type that would automatically trigger Buergofol's newly requested patent prosecution bar. In the meantime, Mr. Neustel has prosecuted patent applications for Subsurface relating to equipment used to install CIPP liners.

Buergofol is seeking to set up a "gotcha" scenario (while it has laid in wait for years), such that if the Court were to adopt Buergofol's now proposed prosecution bar, Mr. Neustel would be required – under Buergofol's new broader interpretation of the bar – to immediately withdraw as Omega's and Subsurface's patent prosecution counsel because he has had access to Buergofol's AEO technical information.

### C. Any Prosecution Bar Should Not Restrict Mr. Neustel from Continuing to Prosecute Applications Related to Equipment for Installing CIPP Liners.

Buergofol's proposed patent prosecution bar adopts the same language used by the Court in the protective order, which substantially corresponds to the language originally proposed by Omega to Buergofol. (Dkt. 37-1, p. 14, Omega's Proposed Bar; Dkt. 131, p. 11, Protective Order's Bar; Dkt. 437, Buergofol's Proposed Bar.) On December 5, 2022, Buergofol admitted that the patent prosecution bar language entered by the Court does not apply to prosecuting patents relating to "methods and devices for the manufacture, installation, use etc. of pipe liners." (Dkt. 37-2, p. 13.) Buergofol stated the following:

> 5. Your proposed prosecution bar is also one-sided and restricts Buergofol's attorneys but not you. Your proposed prosecution bar allows you (Michael Neustel) to continue doing patent prosecution work for Omega, for Omega's owners, and for "Subsurface Inc." which is apparently owned by the same people. If Darien Wallace were to be precluded from prosecuting patents to Buergofol's technology, then Michael Neustel should be precluded from prosecuting patents to Omega's technology. You and your firm should be precluded from "prosecuting patents or patent applications relating to" all things pipe liner, including methods and devices for the manufacture, installation, use etc. of pipe liners and their constituent parts.

(*Id.*)

While Buergofol stated on December 5, 2022, that the patent prosecution bar language now implemented by the Court did not apply to "methods and devices for the manufacture, installation, use etc. of pipe liners and their constituent parts" (Dkt. 37-2, p. 13), Buergofol's brief in support of this motion now claims that the same patent prosecution bar language would prevent Mr. Neustel from prosecuting currently pending patent applications for *installation equipment* for CIPP liners. (Dkt. 438.) Even if Buergofol's motion did not suffer from the fatal defect of being horrifically untimely, the prosecution bar it seeks to impose on Mr. Neustel with its "new" interpretation is overly broad for a number of reasons.

Buergofol's only involvement in the CIPP liner market relates to its manufacture and selling of inner and outer films, which are *components* used in making UV CIPP liners. Buergofol does not make or sell UV CIPP liners, but, even more importantly, Buergofol does not install CIPP liners. None of the patents-in-suit in this litigation relate to equipment or methods for the installation of UV CIPP liners, nor has Buergofol produced documents (much less confidential/AEO documents) relating to equipment or methods for the installation of UV CIPP liners. Nonetheless, Buergofol asserts that the requested patent prosecution bar would prohibit Mr. Neustel from prosecuting patents related to methods and equipment for installing UV CIPP liners.

Tellingly, Buergofol does not identify the subject matter of any Omega or Subsurface issued patent or pending patents that Mr. Neustel has prosecuted on their behalf. The facts are that none have anything to do with the composition, structure, or manufacture of CIPP liners or the film used in CIPP liners. Omega has attached hereto as Exhibits A – D, copies of representative patents and pending patent applications prosecuted by Mr. Neustel, which all relate to *installation equipment* used to install CIPP liners.

Mr. Neustel has only filed one patent application on behalf of Omega that claims a "Cured-In-Place-Pipe (CIPP) End Cap Internal Roller Apparatus." That application issued on November 28, 2023, as U.S. Patent No. 11,827,484.  (Ex. A.) On February 18, 2022, Mr. Neustel filed a patent application on behalf of Subsurface for a "CIPP Liner Feed Roller," which was published as U.S. Pub. No. 2022/0170582 on June 2, 2022.  (Ex. B.)  On February 8, 2024, Mr. Neustel filed a patent application on behalf of Subsurface for a "CIPP Liner Reel System," which was published as U.S. Pub. No. 2024/0183480 on June 6, 2024.  (Ex. C.)  On July 9, 2024, Mr. Neustel successfully prosecuted a patent application on behalf of Subsurface for a "Portable Cofferdam System," which issued on July 9, 2024 as U.S. Patent No. 12,031,286.  (Ex. D.)  Mr. Neustel has filed a continuation application in June 2024 that claims priority to and has the same subject matter as U.S. Patent No. 12,031,286.[1]

Below are representative figures from the patent applications Mr. Neustel has prosecuted on behalf of Omega and Subsurface for installation equipment used to install CIPP liners:

| U.S. Patent No. 11,827,484 | U.S. Pub. No. 2022/0170582 | U.S. Pub. No. 2024/0183480 | U.S. Patent No. 12,031,286 |
|---|---|---|---|
| (Ex. A, p. 5.) | (Ex. B, p. 3.) | (Ex. C, p. 2.) | (Ex. D, p. 5.) |

As the Court can see, the patent applications Mr. Neustel has filed and prosecuted for Omega and Subsurface have absolutely nothing to do with the film used in CIPP liners or CIPP

---

1. Because the continuation application was just recently filed, it has not been published by the USPTO yet and therefore is not submitted herewith.

7

liners themselves, except that they relate to *installation equipment* used to assist in the installation of CIPP liners. Buergofol's motion is conspicuously silent as to the nature of Mr. Neustel's patent prosecution work on behalf of Omega and Subsurface, even though Buergofol easily could have brought to the Court's attention the public patents and applications and informed the Court that they would trigger Buergofol's sweeping proposed prosecution bar even if adopted. When the facts are disclosed, however, it is clear that absolutely no risk of inadvertent use of Buergofol's AEO information in patent prosecution exists for patents related to installation equipment for CIPP liners because Buergofol's business does not include such activity, and Buergofol has not alleged any such risk.

Although Omega strongly urges that no prosecution bar related to Mr. Neustel should be imposed at this late date, if the Court were to order a prosecution bar, to avoid any confusion and unnecessary future motion practice, Omega proposes the following addition to Buergofol's proposed amendment which clarifies that Mr. Neustel would not be barred from continuing to prosecute patent applications relating to devices and equipment used for installing CIPP liners (language added to Buergofol's proposal is bolded and underlined):

> Absent written consent from the Producing Party, if Michael Neustel receives access to the Producing Party's materials designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" that are directed to non-public technical information, excluding financial information, non-technical business information, or information that can be obtained through reverse engineering, he shall not prepare, prosecute, or assist in the preparation or prosecution of any patent application relating to UV cured-in-place pipe (CIPP) liners and the processes and materials used to make UV CIPP liners, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). This includes any patents filed on behalf of Subsurface, Inc. **This patent prosecution bar does not apply to any patent or patent application relating to methods, processes, devices or equipment used for installing CIPP liners such as but not limited to U.S. Patent No. 11,827,484, U.S. Pub. No. 2022/0170582, U.S. Pub. No. 2022/0170582, and U.S. Patent No. 12,031,286.** To avoid any doubt,

"prosecution" as used in this paragraph does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte reexamination or inter partes reexamination). This Patent Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" non-public technical information, excluding financial information, non-technical business information, or information that can obtained through reverse engineering, is first received by the affected individual and shall end two (2) years after a final judgment from the District Court for the District of South Dakota in this matter.

While it is inappropriate to apply a prosecution bar to Mr. Neustel at this stage of the lawsuit, if one is applied, Omega respectfully requests the above necessary clarification be included to ensure Mr. Neustel is not prevented from prosecuting patent applications that relate to devices and equipment for installing CIPP liners.

### D. Omega Requests Its Attorney's Fees.

Buergofol filed this motion without conferring with Omega – *not at all*. Nor is there good cause for the motion. If Buergofol believed a patent prosecution bar was necessary, it would have sought one early in the case when the subject was at the forefront. Instead, Buergofol waited 20 months after Omega first raised the issue of a patent prosecution bar – and more than a year after the Court entered its general Protective Order – to file the present motion.

Nothing has changed regarding the scope of this litigation or the anticipated and actual discovery Buergofol has produced. Although the parties are now participating in IPR proceedings before the USPTO, those proceedings extend no further than the validity of '882 Patent, which has been a part of this litigation from the start. Further, nothing has changed regarding the scope of Mr. Neustel's patent prosecution activities. Buergofol has already produced technical documents marked AEO, thereby providing Mr. Neustel no choice if a patent prosecution bar was to be belatedly imposed on him. The magnitude of prejudice to Omega and Subsurface cannot be overstated.

9

Omega respectfully requests its attorney's fees for having to prepare this opposition to Buergofol's baseless motion.

### III. CONCLUSION

For the reasons set forth herein, Omega respectfully requests that Buergofol's motion be denied in its entirety. In the alternative, if the Court were to order a patent prosecution bar with respect to Mr. Neustel, the scope of that bar should not exclude Mr. Neustel from continuing to prosecute patent applications related to "methods and devices for the manufacture, installation, use etc. of pipe liners" which Buergofol has previously admitted were excluded from the patent prosecution bar. (Dkt. 37-2, p. 13.)

Dated this 21st day of August, 2024.

                                           DENEVAN FALON JOYCE PROF. LLC

                                           /s/ *Meghann M. Joyce*
BY:  Meghann M. Joyce
       Shannon R. Falon
       100 S. Dakota Avenue, Second Floor
       Sioux Falls, SD 57104
       Telephone:  605.219.9465
       Email:   meghann@denevanfalon.com
                    shannon@denevanfalon.com

       Michael S. Neustel *(admitted pro hac vice)*
       Michelle G. Breit *(admitted pro hac vice)*
       Monte M. Bond *(admitted pro hac vice)*
       NEUSTEL LAW OFFICES, LTD
       2534 South University Drive, Suite 4
       Fargo, ND 58103
       Telephone: 701.281.8822
       Email:   michael@neustel.com
                    michelle@neustel.com
                    monte@neustel.com

       *Attorneys for Omega Liner Company, Inc.*