UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>              Plaintiff,<br><br>     vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>              Defendant. | 4:22-CV-04112-KES<br><br><br>ORDER GRANTING MOTION FOR SANCTIONS |

## BACKGROUND

Relevant here, defendant, Omega, served plaintiff, Buergofol, with requests for discovery regarding prior art. *See* Docket 164 at 1 (stating the interrogatory asked Buergofol to identify every item of prior art to each patent in suit known to Buergofol and the request for production asked Buergofol for all documents and things in its possession, custody, or control that would qualify as prior art). Buergofol objected and refused to respond, claiming the requests were overly broad, burdensome, and unanswerable. *See* Docket 64-3 at 11-12. Omega filed a motion to compel Buergofol's response. Docket 62. Buergofol opposed the motion. Docket 68.

The court granted Omega's motion and ordered Buergofol to respond to Omega's interrogatory number 4 and request for production 13. *See generally* Docket 164. Buergofol then filed a motion to clarify the court's order. Docket

165. The court obliged and clarified its order. Docket 181. In doing so, the court highlighted that Buergofol's responses (1) must reference prior art, as defined in 35 U.S.C. §§ 102 and 103; (2) include both anticipatory and analogous prior art; and (3) "reference" not only "issued patents, published patent applications, and printed publications" but also "all documents, information, acts, or things that qualify as prior art under any subsection of 35 U.S.C. §§ 102 and 103, including all systems, methods, apparatus, publications, patents, or uses." *Id.* at 3-5.

After receiving the court's order and clarification, Buergofol filed supplemental responses to Omega's interrogatory number 4 and request for production 13. *See* Docket 250-1; Docket 250-2. In its responses, Buergofol again objected, claiming the court's definition of prior art, as stated in the clarification, is legally erroneous. Docket 250-1 at 5; Docket 250-2 at 6. In its response to interrogatory number 4, Buergofol provided Omega with a litany of lists—first, Buergofol provided a list of prior art categories, *see* Docket 250-1 at 6-13, and second, Buergofol provided lists of patents identified through a keyword search, which contained a total of 65,872 patents, *see* Docket 305-1. In its response to request for production 13, Buergofol produced lists of prior art and a few documents, most of which Omega claims it had already identified. *See* Docket 250-2; Docket 250 at 10 (Omega claiming it had already identified most of the documents). And, in making its supplemental responses, Buergofol stated that the court's order required Buergofol to interview its employees to determine their knowledge of analogous prior art, Buergofol was

2

not able to complete many interviews in the allotted time frame, but asserted that "probability is low that any of the workers would know of anything that could qualify as analogous prior art[.]" Docket 250-1 at 13; *see also* Docket 250-2 at 8.

Omega now moves for sanctions under Federal Rule of Civil Procedure 37(b)(2), arguing that Buergofol failed to comply with the court's discovery orders. Docket 250. Buergofol opposes the motion, arguing that its responses were appropriate under the court's order. Docket 292. Buergofol asserts that the information Omega alleges Buergofol failed to disclose does not fall under the court's definition of "prior art" and thus Buergofol was not required to disclose it. *Id.* at 10-19.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(b) provides for sanctions in the event that a party files to comply with a discovery order. Fed. R. Civ. P. 37(b). Under the rule, "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court . . . may issue further just orders." *Id.*  Such orders may:

> (i) direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) strik[e] pleadings in whole or in part;
> (iv) stay[] further proceedings until the order is obeyed;
> (v) dismiss[] the action or proceeding in whole or in part;
> (vi) render[] a default judgment against the disobedient party; or
> (vii) treat[] as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). Instead of or in addition to these orders, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure," unless the failure was substantially justified or doing so is otherwise unjust. Fed. R. Civ. P. 37(b)(2)(C).

The court maintains "a large measure of discretion in deciding what sanctions are appropriate for misconduct." *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997) (quotation omitted); *see also Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 900 (8th Cir. 2009) (stating that courts have inherent authority to impose discovery sanctions). But "that discretion is bounded by the requirement of Rule 37(b)(2) that the sanction be 'just,' and relate to the claim at issue in the order to provide discovery." *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992). Moreover, "[t]he [c]ourt must balance the goals of enforcing the process of discovery and ensuring adherence to policy aims of discovery with the right of a party to have its case heard on the merits." *Card Tech. Corp. v. DataCard Inc.*, 249 F.R.D. 567, 571 (D. Minn. 2008) (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705 (1982)).

The Eighth Circuit has held that imposition of discovery sanctions is proper if: (1) there has been an order compelling discovery; (2) a party violates

the order;[1] and (3) the violation results in prejudice to the other party. *Marlow v. City of Clarendon*, 78 F.4th 410, 416 (8th Cir. 2023). Here, there is no question that the court issued an order compelling discovery on this issue, but also issued a clarification of the order at Buergofol's request. *See* Docket 164; Docket 181. So the issues here are whether Buergofol's disclosures in relation to interrogatory number 4 and request for production 13 violate the court's order and whether Omega was prejudiced by the violation.

## I.    Whether Omega was required to meet and confer with Buergofol before filing the instant motion

As an initial matter, Buergofol argues that the court must deny Omega's motion for sanctions because Omega failed to comply with Local Rule 37.1. Docket 292 at 4-5. Local Rule 37.1 states that "[a] party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute." D.S.D. Civ. L. R. 37.1; Docket 292 at 4-5. But Local Rule 37.1 applies specifically to "discovery disputes," which are governed by Federal Rule of Civil Procedure 37(a). *E&I*

---

[1] A party need not "willfully" refuse to obey the court's discovery order. *See Card Tech. Corp. v. Datacard Inc.*, 249 F.R.D. 567, 570 (D. Minn. 2008)*; Societe Internationale Pour Participations v. Rogers,* 357 U.S. 197, 207-208 (1958) ("[T]he willfulness or good faith of [the party] can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply."); *see also Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992) (stating willfulness is necessary for using dismissal as a sanction); *Carr v. True*, 2023 WL 387613, at *2 (D. Neb. Jan. 25, 2023) (stating courts have discretion to impose sanctions for failure to comply with discovery orders, but a sanction of dismissal requires a willful violation of the court's order).

*Glob. Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04033-KES, 2023 WL 372106, at *2 (D.S.D. Jan. 24, 2023). "Indeed, Local Rule 37.1 is a supplement to Federal Rule of Civil Procedure 37(a)(1), which requires that before filing a motion to compel discovery, that motion 'must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.' " *Id.* (quoting Fed. R. Civ. P. 37(a)(1)). Thus, this court has interpreted Local Rule 37.1 to apply only to motions to compel discovery under Rule 37(a). *See id*; *Highmark Inc. v. Northwest Pipe Co.*, 2012 WL 997007 (D.S.D. Mar. 23, 2012), at *4 ("Local Rule 37.1 requires the parties to make a good faith effort to resolve any discovery dispute *prior to filing a motion to compel.*" (emphasis added)).

Omega's instant motion, however, is based on alleged non-compliance with a discovery order and, thus, falls under Federal Rule 37(b)(2), which does not have a meet and confer requirement. *See* Docket 250; *Lindstedt v. City of Granby*, 238 F.3d 933, 936 (8th Cir. 2000) ("Rule 37 of the Federal Rules of Civil Procedure does not require any meet-and-confer requirement as a predicate to seeking sanctions."). As a result, Omega was not required to meet and confer with Buergofol prior to filing its motion for sanctions. *See E&I*, 2023 WL 372106, at *2.

## II. Defining anticipatory and analogous prior art

Throughout its response, Buergofol attempts to blur the line between what is anticipatory as opposed to analogous prior art to explain the items it

6

either did or did not disclose to Omega. *See e.g.,* Docket 292 at 11 (explaining that "no patent, printed publication, public use or on-sale activity that is not 'prior art' under 35 U.S.C. § 102 can be 'analogous prior art.' "). Omega asserts that Buergofol's interpretations are misguided. Docket 305 at 8-9.

The answer to this quandary is simple. The court made clear in its decision that anticipatory and analogous prior art are distinct categories, and while those categories may overlap, they are not subsets of one another. *See* Docket 164 at 11-12 (stating that if an item does not meet the requirements to be anticipatory prior art, it can still be considered analogous prior art under pre-AIA § 103). Buergofol may not assert its own definitions as an excuse for not complying with the definition clearly articulated in the court's order. Not only did Buergofol have the opportunity to voice its opinions on the definitions of prior art in briefing the motion to compel, Docket 68, but also in its request for clarification of the court's order, Docket 165. Moreover, had Buergofol truly disagreed with the court's provided definition, it could have moved to reconsider. It did not. Thus, Buergofol cannot now assert its own nesting doll theory of anticipatory and analogous prior art as an excuse for not complying with the court's order.

### III.   Whether Buergofol violated the court's order

Essentially, Omega argues that Buergofol violated the court's order because it failed to disclose relevant prior art—namely, information regarding its liner sales to Saertex and Light Stream, and instead provided Omega with

tens of thousands of references to seemingly unrelated and irrelevant patents and documents. *See generally* Docket 250.

Buergofol argues that it was not required to produce any evidence of prior art sales (which may or may not have occurred) because (1) the sales either took place in Germany and are therefore not prior art and (2) even if the sales were prior art, *evidence* of the sales is not. Docket 292 at 11-19. The court will address each of these arguments in turn.

**A. Foreign sales**

Buergofol asserts that sales of its film in Germany do not become prior art simply because the films are possessed or imported by a United States company or used to manufacture a product in the United States. Docket 292 at 15. According to Buergofol, "[o]nly the sale or public use of an object in the United States qualifies as prior art." *Id.*

Section 102 states that an invention may not be patented if it has been "on sale" more than one year before the patent application is filed. 35. U.S.C. § 102. "Whether an invention was 'on sale' within the meaning of § 102 is a question of law based upon underlying factual determinations." *Link Treasure Ltd. v. Baby Trend, Inc.*, 809 F. Supp. 2d 1191, 1198 (C.D. Cal. 2011) (citing *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1451 (Fed. Cir. 1993)). Generally, "[t]he sale or offering for sale of a later-patented item places it 'on sale,' within the [meaning of the pre-AIA § 102], *unless* there is the express or clearly implied condition of experimentation." *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 434 (9th Cir. 1973).

First, with regard to its possible sales to Saertex, Buergofol argues that such sales cannot be prior art because they occurred in Germany. Docket 292 at 11-12. Buergofol cites *In re Elsner*, 381 F.3d 1125, 1128 (Fed. Cir. 2004), for the proposition that foreign sales do not constitute prior art or an on-sale bar under § 102. Docket 292 at 12. But in *Elsner*, every aspect of the foreign sales took place in either Germany, South Africa, or Zambia. *See* 381 F.3d at 1127.

Courts do no interpret the "on sale in this country" language in pre-AIA § 102 as exempting foreign sales from prior art consideration. Instead, the question as to whether an object is "on sale in this country" hinges on whether there was sufficient "prefatory" "on sale" activity in the United States. *See, e.g., MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 544 (D.N.J. 2005) (citing *MDS Assocs. Ltd. Pshp. v. United States*, 37 Fed. Cl. 611, 631 (1997), *aff'd*, 135 F.3d 778 (Fed. Cir. 1998)). For example, several courts have recognized that an offer of sale originating from a foreign country can constitute sufficient prefatory activity in the United States when it is directed at a customer in the United States. *See, e.g., In re Caveney*, 761 F.2d. 671, 676-77 (Fed. Cir. 1985); *Robbins*, 482 F.2d at 434; *Aguayo v. Universal Instruments Corp.*, 356 F. Supp. 2d 699, 743 (S.D. Tex. 2005) (product manufactured in Holland and shipped to Canada was "on sale" in the United States because the "offer to sell and acceptance of the [product] occurred and were exchanged within the United States").

Buergofol argues, with respect to Light Stream, that the buck stops here because Buergofol did not make an offer of sale to Light Stream in the United

States—in fact Light Stream reached out to Buergofol in Germany, picked up the films in Germany, and imported the films from Germany to the United States. Docket 292 at 15-16. Thus, according to Buergofol, it did not engage in on-sale activity. *Id.* But "there is no support for [Buergofol]'s contention than an offer made in the United States is *necessary*" to show sufficient prefatory activity. *Monolithic Power Sys., Inc. v. 02 Micro Intern. Ltd.*, 2007 WL 3231709, at *3 (N.D. Cal., Oct. 30, 2007) (emphasis in original). The requirement is merely that sufficient activity of *some sort* occurred in the United States. *See id.*; *Robbins*, 482 F.2d at 434.

For example, in *Monolithic*, the court determined that a product was "on sale" in the United States even though the offer of sale had occurred in Taiwan. *Monolithic*, 2007 WL 3231709, at *3. The court explained that the situs of the offer could not be considered in a vacuum and "the fact that the offer itself was not made while the offeree and offeror were in the United States [was] not dispositive." *Id.* Instead, the court looked at the circumstances as a whole, noting that the offeree had made arrangements for a sales trip to Taiwan to discuss a business relationship from the United States and communicated with the Taiwanese company from the United States. *Id.* Additionally, products were made in and shipped from the United States. *Id.* Thus, the court found that sufficient prefatory activity occurred in the United States to warrant a violation of the on-sale bar. *Id.*

Similarly, in *Caterpillar Inc. v. Int'l Trade Comm'n*, 837 F. App'x 775, 778 (Fed. Cir. 2020) (*nonprecedential*), the court emphasized that the relevant

10

inquiry for whether an invention is on sale in this country should focus on "whether the invention was sold for use in the United States." *Id.* The court recognized that "the mere fact that the sale was made to a United States company is [not] sufficient" to show that an item was on sale in United States. *Id.* But there was sufficient evidence to show that a sale documented in an invoice constituted commercial activity directed at the United States. *Id.* at 779. There, the United States company had sent an offer to an Italian company for the machine that was later patented. *Id.* at 777-78. The Italian company then sent the United States company a purchase order—which listed the United States company's address, a customs tariff number, a description of the machine in English, and the purchase price in United States dollars. *Id.* at 779-80. And, lastly, "there [was] no contrary indicia that the [invention described in the] invoice was sold for use in Italy or anywhere else outside the United States." *Id.* at 780. The court found, based on the invoice, that there was sufficient evidence to show that the product was on sale in this country under pre-AIA § 102. *See id.*

Thus, the court disagrees with Buergofol's arguments to the extent Buergofol asserts that (1) foreign sales cannot constitute prior art and (2) the fact that an offer of sale that occurred in Germany exempts a sale from prior art consideration. Here, there is evidence that the liners sold to Light Stream and Saertex, two United States companies, despite having occurred in Germany, were "sold for use in the United States." *See Caterpillar*, 837 F. App'x at 778; *see also* Docket 94 at 17-18 (listing sales to Light Stream in which

Buergofol is noted as the shipper and Light Stream as the recipient); Docket 250-3; Docket 292 at 13, 15-16 (explaining that Buergofol sold films to Light Stream and Saertex in Germany, and those companies then imported the films to the United States).[2] Additionally, it is logical to assume that the United States companies, in making their offers and purchasing the films from Buergofol, completed a substantial amount of the required coordination from their home offices in the United States. Thus, the court finds that Buergofol should have disclosed its sales to Light Stream and Saertex in responding to Omega's discovery requests.

Next, Buergofol argues that even if the sales to Light Stream and Saertex are prior art, based on the language of Omega's requests, Buergofol was under no obligation to produce evidence of the sales to Light Stream and Saertex. Docket 292 at 16-18. Buergofol explains that because the request for production does not ask for the production of *evidence* of prior art, and instead requests only things that would *qualify* as prior art, Buergofol does not need to produce any such evidence. *Id.* Essentially, Buergofol asserts that any prior art

---

[2] To be clear, the court's determination that foreign sales resulting in products being sold in the United States constitute prior art is specific to this order on this motion. The question the court is faced with is whether Buergofol should have disclosed foreign sale information in response to Omega's discovery requests for prior art. The court's evaluation of the issue today is based on the widest scope—whether foreign sales, like the ones described here, *can* be prior art, in light of other courts' rulings. Here, the court found that they can and therefore Buergofol was required to produce information regarding such sales. This does not, however, mean that outside of the context of this order, this court will similarly hold that as a matter of law that foreign sales in which the offer of sale occurred in a foreign country are prior art. That is a determination the court will have to make at a later time.

sales *themselves* would be prior art under §§ 102 and 103. But because documents like invoices and photographs are not a sale, but rather evidence of a sale, Buergofol is under no obligation to disclose them. *See id.* at 18 (stating that a photograph "may be evidence of a [prior art] sale, or may not be evidence of a [prior art] sale" but that does not convert the photograph item itself into an item of prior art.)

First, it is clear from the caselaw that the sale itself is not prior art under pre-AIA § 102(b). *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002). Instead, it is the device itself that becomes prior art upon sale. *See Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 68 (1998) (noting that the device "contained all the elements of the invention claimed in the '377 patent"); *Kathrein-Werke KG v. Radiacion y Microondas S.A.*, 2011 WL 4460393, at *4 (N.D. Ill. Sept. 26, 2011) ("Sale of an invention makes it prior art under § 102(b)[.]"); *Med. Graphics Corp. v. SensorMedics Corp.*, 1995 WL 523636, at *12 (D. Minn. June 2, 1995) ("[A] *device* offered for sale or sold prior to the critical date *becomes a prior art reference* which may support a rejection of the application under 35 U.S.C. § 103 based upon obviousness." (emphasis added)). Thus, to the extent that Buergofol has any films (or product descriptions) that it sold to Light Stream and Saertex and did not disclose them to Omega, Buergofol was in violation of the court's order.

Second, as to Buergofol's argument that it is not required to provide evidence of any prior art sales, because the evidence is not prior art, the court rejects this interpretation of its order. Although Buergofol's reading is

technically in line with the letter of the court's order, it is contrary to the spirit of the order. Obviously, Buergofol cannot produce a sale and may not be able to produce the actual films sold to Light Stream and Saertex. But it is unreasonable to read the court's order as essentially exempting a category of prior art. Buergofol is right, neither the order nor the discovery requests expressly ask for evidence of prior art. But, contrary to Buergofol's reasoning, the court reads an implicit directive to provide evidence of prior art that Buergofol is incapable of actually providing. Buergofol has not claimed that disclosing this information would be an undue burden. Thus, the court finds that Buergofol's reading of the court's order was obtuse, but not technically in violation of said order. As a result, the court merely directs Buergofol to produce the relevant evidence of prior art that it has in its possession, custody, or control.

In conclusion, the court finds that Buergofol violated the court's order in not providing Omega with the films (or descriptions of the films) sold to Light Stream and Saertex and, in line with the spirit of the court's order compelling Buergofol's response, the court orders Buergofol provide any evidence of prior art sales to Light Stream and Saertex to Omega.

**B. Disclosure of non-responsive information**

Omega also claims that Buergofol violated the court's order when it disclosed tens of thousands of unrelated, non-responsive patent references that were not known to Buergofol or in Buergofol's custody, possession, or control. Docket 250 at 11-17; Docket 305 at 15-17. Buergofol argues that just because

the listed patents are unhelpful to Omega in attempting to invalidate the patents in-suit does not mean they are unresponsive. *See* Docket 292 at 19-23. The court agrees with Omega.

The court's order was clear: Buergofol was required to disclose prior art that (1) was known to Buergofol or (2) in Buergofol's possession, custody, or control. *See* Docket 164. In both the court's order and clarification, the court stated that Omega's requests were not overbroad because, in part, they sought information that Buergofol had likely already compiled. *See id.* at 14 (stating that Buergofol was not starting from scratch in identifying prior art because it already had to disclose that information when applying for the '882 patent and, given the similarly of the '269 patent, there was likely overlap in applicable prior art). The court also highlighted that judgment calls are necessary in any discovery disclosure, but that the court was confident, given the experience of Buergofol's attorneys, that they would be able to make those calls. *Id.* at 12-13.

But instead of disclosing information Buergofol knew or had in its custody, possession, or control, Buergofol conducted searches of the information available at the United States Patent Office and provided Omega with lists referencing over 65,000 patents. *See* Docket 292 at 22 (Buergofol stating this is how it obtained the information); Docket 305-1. Buergofol lays the blame for its disclosures at Omega's feet, claiming that "a general and overbroad discovery request" would necessarily result in such disclosures. Docker 292 at 21. But even if each of the patents referenced by Buergofol— whether they be for Ziploc bags, condoms, or egg cartons—are analogous prior

art, the information was not known to Buergofol or in its custody, possession, or control. Buergofol attempts to explain this decision by noting that because Omega's response to Buergofol's motion for clarification stated that "Buergofol must *search for* and produce . . . analogous prior art of which it is aware," Docket 166 at 4, "Omega expected Buergofol's attorneys to search for analogous prior art in the information available at the patent offices." Docket 292 at 22. Buergofol seems to ignore that Omega's comment states that Buergofol must search for prior art "*of which it is aware*[.]" *See* Docket 166 at 4. Thus, even this statement by Omega plainly indicates that Buergofol must only search its own records.

Moreover, Buergofol made seemingly no judgment calls in deciding what to disclose to Omega—admitting that the disclosed patents are irrelevant. *See* Docket 220 at 4-6 (Buergofol stating the court's order compelled "Buergofol to [i]dentify [t]ens of [t]housands of [i]tems of [i]rrelevant [a]nalogous [p]rior [a]rt"). There is no evidence that Buergofol searched its own records or meaningfully interviewed its own employees. *See* Dockets 250-1, 250-2 at 13 (stating that Buergofol did not interview more than a few of its employees, but the employees are not identified, and summarily declared that its employees are not aware of any relevant prior art); *see also* Docket 164 at 13-14 (the court explained that despite the number of Buergofol employees, the court did not find the discovery requests and the possibility that employees would need to be interviewed overly burdensome). Thus, the court finds that Buergofol's disclosure of a over 65,000 irrelevant patents violated the court's dictate to

16

disclose prior art known to Buergofol or in Buergofol's custody, possession, or control. *See* Docket 164.

## IV.    Prejudice

Omega maintains that it has been prejudiced by Buergofol's violations of the court's order. Docket 250 at 22-23. "In the context of Rule 37(b)(2) motions 'prejudice' exists if the failure to make discovery impairs the opponent's ability to determine the factual merits of the party's claim." *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 559 (8th Cir. 1992) (citing *Denton v. Mr. Swiss of Missouri, Inc.,* 564 F.2d 236, 240 (8th Cir. 1977)). Here, Buergofol's refusal to disclose potential prior art has inhibited Omega's ability to determine whether the patents in-suit are invalid, and as a result Omega is unable to prepare its claims and defenses regarding the patents in suit. Docket 250 at 22-23.

Additionally, Omega asserts that it has been prejudiced by Buergofol's "document dump" of tens of thousands of references because "there is no reasonable way to meaningfully review over 65,000 patent documents resulting from Buergofol's searches to determine their relevance[.]" *Id.* at 23. Other courts have found "document dumps" to be unreasonable and warranting sanctions. *See Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 54 (S.D.W. Va. 2016) (stating a " 'document dump' is often used to refer to the production of voluminous and mostly unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests" and are "improper under the discovery rules"); *Forte v. Cnty. of Merced*, 2014 WL 4745923, at *5 (E.D. Cal. Sept. 23,

17

2014) (finding that "requiring [a party] to mine through thousands of irrelevant documents [disclosed pursuant to a court order] . . . is overly burdensome and contrary to the spirit of discovery, which is designed to promote the orderly and expedient resolution of claims"). This court similarly finds such unresponsive, voluminous disclosures prejudicial, because they force an opposing party to spend considerable time (and thus, money) combing through largely unhelpful information with no way to navigate through it.

**V.      Sanctions**

Omega requests three possible sanctions to address Buergofol's failure to comply with the court's orders: (1) the fact that Buergofol made prior art sales to Light Stream and Saertex be deemed admitted for all purposes, (2) entry of an ESI order directing Buergofol to submit 20 of its custodians' computers to a third-party ESI service so discovery can be accurately found and distributed, and (3) an imposition of a stay until Omega moves for summary judgement in regard to the '882 Patent. Docket 250 at 23-28.

Generally, "[t]he materiality of the issue on which discovery is withheld and the difficulty posed to the opponent by the withholding are certainly relevant factors in assessing the 'justice' of a sanctions order." *Avionic*, 957 F.2d at 558 (8th Cir. 1992). Here, as noted above, the potentially withheld discovery goes directly to determining the validity or invalidity of the patents in-suit and, thus, clearly impacts Omegas claims and defenses. But the court declines to impose any of Omega's requested sanctions.

"While the court ordinarily has broad discretion to determine an appropriate sanction under Rule 37, such discretion is not absolute, but rather 'narrows as the severity of the sanction or remedy it elects increases[.]' " *McCollum v. Ossenfort*, 2023 WL 8111763, at *2 (D.S.D. Nov. 22, 2023) (quoting *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011)). Any sanction must be just and proportional to the violation and resulting prejudice. *See id.* Deeming the fact the Buergofol made prior art sales to Light Stream and Saertex would be taking a large step towards completely dismissing Buergofol's claim and finding its patent invalid. At this point in the litigation, the court declines to take such drastic measures.

As to Omega's request for an ESI order, the court finds that such an order would not be "just" because, though it may put an additional financial burden on Buergofol, it likely would also burden Omega and the court. Buergofol has already been ordered to produce a records custodian to be deposed, *see* Docket 234, after which Buergofol moved for a protective order when Omega served it with a notice of deposition, *see* Docket 254. That motion is still pending before the court. Thus, the court finds that the requested ESI order would likely only spark additional disagreements and further delay discovery. And finally, the court similarly finds the imposition of a stay to be improper for the reasons stated in Docket 403.

But, "[i]nstead of or in addition to the orders [contained in Fed. R. Civ. P. 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees,

caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "With respect to attorney's fees, 'Rule 37, interpreted consistent with its purposes, authorizes an award encompassing all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.' " *McCollum*, 2023 WL 8111763, at *3 (quoting *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1012 (8th Cir. 1993)). In short, if a party violates a discovery order, Rule 37(b)(2)(A) requires the court award attorney's fees unless the violation was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Here, as discussed above, Buergofol's failure to comply with the court's order was not substantially justified, thus, the court finds that awarding fees and expenses incurred by Omega due to Buergofol's failures is appropriate.

## CONCLUSION

Based on the above, it is

ORDERED that Buergofol must produce any prior art films or descriptions of films sold to Light Stream and/or Saertex and any other evidence of prior art within its knowledge, custody, control, or possession. It is

FURTHER ORDERED that Omega shall file an affidavit including a detailed accounting of the time spent preparing and litigating the instant motion as a result of Buergofol's failure to comply with the court's order at Docket 164 and clarification at Docket 181 and the time spent reviewing the list of patents Buergofol provided. This affidavit also shall set forth a

reasonable rate for attorney's fees that Omega believes it is entitled to.

Buergofol shall have twenty-one (21) days to respond in opposition thereto.

Omega may file a reply within fourteen (14) days.

      Dated September 5, 2024.

                    BY THE COURT:

                    /s/ *Karen E. Schreier*
                    KAREN E. SCHREIER
                    UNITED STATES DISTRICT JUDGE