UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br>ORDER GRANTING MOTION FOR ATTORNEYS' FEES |

Defendant, Omega, moves for attorneys' fees incurred during the preparation of Omega's opposition brief (Docket 332) in response to plaintiff, Buergofol's, Motion Pursuant to Rule 37 to Prohibit Omega from Interfering with Subsurface Inc.'s Production (Docket 307). Docket 343. Buergofol opposes the motion. Docket 451.

Relevant here, Buergofol's underlying motion (Docket 307) was referred to Magistrate Judge Duffy, who entered an order denying it. *See* Docket 320 (order referring the motion); Docket 341 (Magistrate Judge Duffy's order). As a result, Omega moved for attorney's fees, Docket 332, and Buergofol filed objections to the Magistrate Judge's decision, Docket 352. The court recently granted in part and denied in part Buergofol's objections. Docket 435.[1]

---

[1] Upon motion by Buergofol, the court extended the deadline to respond to Omega's motion for attorney's fees until resolution of Buergofol's objections. Docket 355; Docket 356. Thus, both Buergofol's response to the motion and

## LEGAL STANDARD

District courts wield the inherent power to fashion appropriate sanctions for abuses of the judicial process. *Gallagher v. Magner*, 619 F.3d 823, 844 (8th Cir. 2010). This inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Anderson v. BNSF Ry. Co.*, 681 F. Supp. 3d 899, 908 (S.D. Iowa 2023) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45). But the "court ordinarily should rely on the Federal Rules rather than its inherent power" when conduct can be addressed under the rules and "the [r]ules are [] up to the task." *Schlafly v. Eagle F.*, 970 F.3d 924, 936 (8th Cir. 2020) (quoting *Chambers*, 501 U.S. at 50) (cleaned up and internal quotation marks omitted).

Federal Rule of Civil Procedure 37(a)(5)(B) provides that when a discovery motion is denied, the court may "require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless the court finds "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). "The party resisting sanctions bears the burden of showing that its position was substantially justified." *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v.*

---

Omega's reply brief were filed after the court entered its order on Buergofol's objections. *See generally* Docket 435; Docket 451; Docket 452.

*Crossroads Trailer Sales & Serv., Inc.*, 2022 WL 3010143, at *8 (D.S.D. July 29, 2022) (quotation omitted).

A position is "substantially justified" if it "was justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. To warrant such a characterization, the position must have reasonable basis both in law and fact." *In re Nat'l Hockey League Players' Concussion Inj. Litig.*, 2017 WL 3276873, at *2 (D. Minn. July 31, 2017) (quoting *Conklin v. Astrue*, 282 F. App'x 488 (8th Cir. 2008)). At its core, "substantial justification means that 'reasonable minds could differ as to whether the party was justified in resisting the discovery sought.' " *Jim Hawk*, 2022 WL 3010143, at *8 (quoting *Kirschenman v. Auto-Owners Ins.*, 2012 WL 1493833, at *2 (D.S.D. Apr. 27, 2012)).

I.   **Whether Buergofol's Rule 37 Motion was Substantially Justified**

Buergofol concedes that Magistrate Judge Duffy denied Buergofol's Rule 37 motion but claims that because the court granted in part Buergofol's motion to reconsider the magistrate judge's decision, its initial motion was substantially justified. Docket 451 at 2-3. The court's order, however, provided Buergofol with relief it had not sought in its Rule 37 motion. *See* Docket 435.

Buergofol's Rule 37 motion requested the court order: (1) that Omega "cease its interference in Subsurface's subpoena response[;]" (2) "that the 162 samples be produced in their entirety to Buergofol alone;" (3) "that Omega, Omega's expert, and Omega's attorney, Mr. Neustel, not be involved in any way in the production of the liner samples by Subsurface[;]" and (4) "that Omega

3

pay the attorney's fees and costs that Buergofol has accrued in attempting to obtain the Subsurface samples[.]" Docket 308 at 5-6. Magistrate Judge Duffy denied all of these requests. Docket 341. And on reconsideration of the magistrate judge's order, the court similarly did not grant any of these requests. *See* Docket 435.

Instead, the court's order on the motion to reconsider focused solely on discrete factual findings made by Magistrate Judge Duffy and on Magistrate Judge Duffy's directive that Buergofol disclose the "time, place, manner, conditions and scope" of testing it would conduct on the Subsurface samples. *See id.* at 3-7. Ultimately, the court granted the motion to reconsider on two of Buergofol's factual objections, and, in light of the parties' agreement, set aside the portion of Magistrate Judge Duffy's order regarding the disclosure of Buergofol's testing protocols. *Id.* at 8. The court further ordered that Subsurface, pursuant to the issued subpoena, provide one half of each retained sample to Buergofol and one half to Omega.[2] *Id.*

Thus, it is clear that issues before the court on the motion to reconsider were distinct from those Magistrate Judge Duffy considered in ruling on Buergofol's Rule 37 motion, and Buergofol sought different relief at each stage. *See* Docket 308 (requesting sanctions, unilateral possession of the subsurface samples, and a bar on Omega's involvement with the samples); Docket 352

---

[2] This directive mirrored the order by Magistrate Judge Duffy. *See* Docket 341 at 11. Initially, Buergofol objected to the magistrate judge's determination on this issue. Docket 352 at 8. But in its reply brief, Buergofol stated it would agree to receiving one half of each sample. Docket 376 at 4.

4

(requesting the court set aside the magistrate judge's order that Buergofol disclose its testing protocols). But even in the court's order on the motion to reconsider, the court held that the parties would split each Subsurface sample—ensuring that Buergofol did not have exclusive access and that Omega and its attorneys were not barred from interacting with the samples—thereby implicitly denying the requests in Buergofol's Rule 37 motion. *See* Docket 435 at 8.

Moreover, the fact that Buergofol agreed to taking possession of only one half of each sample shows it was not substantially justified in demanding exclusive control of the entirety of every sample. *See* Docket 376 at 4. Prior to Buergofol filing its Rule 37 motion, Omega had already proposed the parties split each sample. *See* Docket 309-2 at 2. Thus, Buergofol's motion only served to delay an already agreed-upon method of sharing the samples.

Buergofol offers no argument beyond the court's granting in part its motion to reconsider to show it was substantially justified in making its Rule 37 Motion. *See generally* Docket 451 at 2-3. And although Buergofol may have been justified in objecting to the magistrate judge's order, that does not prove Buergofol was justified in making its initial motion. Thus, the court finds that Buergofol failed to meet its burden to show its initial motion was substantially justified. *See Jim Hawk*, 2022 WL 3010143, at *8.

## II.     Attorneys' Fees

There are two methods for determining attorneys' fees: the lodestar method and the percentage of the benefit method. *Galloway v. Kan. City*

5

*Landsmen, LLC*, 833 F.3d 969, 972 (8th Cir. 2016). Here, Omega uses the lodestar method, which involves multiplying a reasonable hourly rate by the number of hours worked. *See* Docket 344 at 4-5. In determining a "reasonable hourly rate," the district court has significant discretion, as "[t]he district court is in the best position to assess the relative performance of the lawyers in the cases litigated before it." *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991). Thus, the court is free to "rely on [its] own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "The burden is on the moving party to prove that the request for attorneys' fees is reasonable." *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 2023 WL 1825078, at *1 (D.S.D. Feb. 8, 2023) (quoting *Atmosphere Hosp. Mgmt., LLC. v. Curtullo*, 2015 WL 1097324, at *1 (D.S.D. Mar. 11, 2015)).

### A. Rates

Omega requests attorneys' fees for work completed by local counsel, Shannon Falon, and for Michael Neustel of Neustel Law Offices, LTD, of Fargo, North Dakota. Docket 344 at 4-5. Omega requests an hourly rate of $325 for Falon and $500 for Neustel. *Id.*[3] The court has already found these rates to be

---

[3] Omega notes that generally Neustel's rate is $650 per hour and Falon's rate is $400 per hour. *See* Docket 344 at 4-5 nn.1-2. But considering the court's previous orders on Omega's rates, Dockets 335 & 342, Omega "seeks

6

reasonable, *see* Dockets 335 & 342, and Buergofol does not argue they are not, Docket 451. Thus, for the reasons stated in its previous orders, the court finds an hourly rate of $325 for Falon and $500 for Neustel is reasonable.

## B. Hours

Courts are charged with excluding from awards of attorneys' fees hours that were not "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Here, Neustel expended a total of 29.10 hours and in preparing Omega's brief in opposition to Buergofol's Rule 37 motion. Docket 344 at 4; Docket 345 at 2-3. Falon also billed 4 hours related to the brief. Docket 344 at 5; Docket 346 at 2-3. In total, Omega's attorneys billed 33.1 hours for their work in relation to Omega's 30-page opposition brief. Thus, Omega spent approximately 1.1 hours on each page of its brief. *See* Docket 332 (showing the substantive portion of the brief is 30 pages).

Neustel took on the bulk of the brief writing. Docket 344 at 3-4; Docket 345 at 1. Omega acknowledges that the decision for Neustel, as opposed to an attorney with a lower billing rate, to be so involved increased the costs associated with the brief. Docket 344 at 4. But Neustel was the "only Omega attorney with first-hand knowledge of the [] liners in Subsurface's possession" because Neustel was present at Buergofol's inspection of the Subsurface liners and communicated with Buergofol both prior to and after the inspection. *Id.*; Docket 345 at 1-2; *see also* Docket 332 at 18-24 (a substantial portion of

---

reimbursement for [the attorneys'] work at the rate previously set by the [c]ourt." Docket 344 at 4-5 nn.1-2.

Omega's brief concerning these issues). Additionally, the stakes were high—Buergofol's motion sought exclusive control over the Subsurface liners, which Omega sees as "key evidence" and Buergofol's motion sought to bar Neustel specifically from involvement with the samples. Docket 344 at 3-4; Docket 345 at 1. Thus, Neustel was best suited to take the lead on crafting Omega's opposition brief. *See id.*

Further, the opposition brief required Omega to address a number of (what it believed to be) factual inaccuracies, *see* Docket 332 at 18-24, and research unique issues regarding destructive testing in analogous contexts under both Rule 45 and Rule 34, *see id.* at 12-18, 28-30. *See also* Docket 344 at 2-3 (explaining Buergofol's motion called into question the application of Rule 45, but because there was no caselaw on point concerning a party obtaining access to evidence another party got through a subpoena, Omega relied on analogous caselaw under Rule 34). And Buergofol makes no argument that the hours Omega spent on its opposition brief are unreasonable. *See generally* Docket 451. Thus, the court finds that while 33.1 hours is a considerable amount of time to spend on a brief, it was nonetheless reasonable in light of the complexity of this case and the issues raised. *See Jim Hawk*, 2023 WL 1825078, at *6 (explaining that spending 38.1 hours on a brief was on the "higher side" but the case concerned a federal and state trade secret claims, and thus was complex enough to warrant the time spent); *see also Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) ("Patent litigation frequently is complex, long, and difficult.").

**CONCLUSION**

Buergofol was not substantially justified in making its Rule 37 motion. As a result, Omega is entitled to recover the reasonable attorneys' fees it incurred in opposing Buergofol's motion. After considering a reasonable rate for Falon and Neustel as well as a reasonable number of hours billed, the court finds Omega is entitled to $16,832.70 in attorneys' fees and sales taxes. It is

ORDERED that Omega is awarded a judgment in its favor in the total amount of $16,832.70 for attorneys' fees and taxes.

Dated September 5, 2024.

                                                      BY THE COURT:

                                                      /s/ *Karen E. Schreier*
                                                      KAREN E. SCHREIER
                                                      UNITED STATES DISTRICT JUDGE