UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br><br>ORDER DENYING MOTION FOR REMOTE DEPOSITION |

**BACKGROUND**

Defendant, Omega, served a notice of deposition of Dr. Abdel-Kader Boutrid, Head of Research and Development at Buergofol GmbH, to take place in Sioux Falls, South Dakota. Docket 297-1. After receiving the notice, plaintiff, Buergofol, reached out to Omega and requested that the deposition occur through remote means. Docket 297-2 at 39, 48. Omega denied the request, raising a number of concerns about the quality of remote depositions and the legality of remote depositions in Germany. *Id.* at 27, 37-38. In response, Buergofol proposed that Dr. Boutrid be deposed via video conference while physically present in the Czech Republic.[1] *Id.* at 36-37. When Omega would not agree, *id.* at 2-7, Buergofol filed the instant motion, *see* Docket 294 at 5-6.

---

[1] Dr. Boutrid resides in Germany. *See* Docket 294 at 5; Docket 67 ¶ 1; Docket 297-2 at 46. A deposition via video, however, is not possible under German law. *See* Docket 290-1; Docket 290-2; Docket 294 at 17. Thus, Buergofol proposes Dr. Boutrid travel two hours to the Czech Republic for a remote deposition. Docket 294 at 15-16. Buergofol asserts this solution would comply with both United States and German law. *Id.* at 16-18.

Buergofol moves pursuant to Rule 30(b)(4) to have the deposition of Dr. Boutrid taken by remote means. Docket 293. Omega opposes the motion and requests the deposition take place as noticed—in person in Sioux Falls, South Dakota. *See* Docket 311; Docket 431.

## LEGAL STANDARD

Under Rule 30(b)(1) of the Federal Rules of Civil Procedure, "[a] party who wants to depose a person by oral questions . . . must state the time and place of the deposition." Fed. R. Civ. P. 30(b)(1). Typically, this means that the examining party may unilaterally choose a deposition's location. Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure: Civil § 2112, at 523 (3d ed. 2024).

Under Rule 30(b)(4), "the parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). "Rule 30(b)(4) was created for legitimate situations where being in-person [for a deposition] is not viable." *H & T Fair Hills, Ltd. v. All. Pipeline L.P.*, 2020 WL 5512517, at *3 (D. Minn. Sept. 14, 2020). "Although Rule 30 does not set forth standards for courts to consider when determining whether to permit the taking of a deposition remotely, '[i]t is well-established that the scope and conduct of discovery are within the sound discretion of the trial court.'" *Edwards v. Thomas*, 2021 WL 8316970, at *2 (W.D. Ark. Nov. 18, 2021) (quoting *Zeller v. Wal-Mart Stores, Inc.*, 2008 WL 11337855, at *1 (W.D. Ark. Nov. 12, 2008)); *see also Thompson v. Sun Oil Co.*, 523 F.2d 647, 648 (8th Cir. 1975) (stating the court enjoys "great discretion in designating the location

2

of taking a deposition"); *Patterson Dental Supply, Inc. v. Pace*, 2020 WL 10223626, at *3 (D. Minn. Nov. 5, 2020) ("Courts possess wide discretion in determining the manner for taking depositions, including whether they should take place by remote means." (quotation omitted)). Importantly, Rule 30(b)(4) is permissive, not mandatory. *Kirlkand v. City of Maryville*, 2020 WL 12863656, at *1 (E.D. Tenn. Aug. 17, 2020).

"[A]lthough some courts speak colloquially about whether there is 'good cause' to take remote depositions allowed by Rule 30(b)(4), the [r]ule does not literally require the existence of good cause." *Doe v. Bd. of Regents of Univ. of Nebraska*, 2022 WL 17343852, at *2 (D. Neb. Nov. 30, 2022) (quoting *In re Boiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 (N.D. Ill. June 25, 2020)). Instead, the party seeking a remote deposition need only "advance a legitimate reason for seeking a remote deposition. [And], if that foundational showing is made, then the burden shifts to the opposing party to make a particularized showing that conducting the deposition by remote means would be prejudicial." *Patterson*, 2020 WL 10223626, at *4 (quoting *List v. Carwell*, 2020 WL 5988514, at *8 (D. Minn. Oct. 9, 2020)). This is a balancing test that "requires careful consideration of the facts and circumstances, including" the weighing of the purported "legitimate reason" against the "hardships asserted." *List*, 2020 WL 5988514, at *8.[2]

---

[2] Omega argues that Buergofol must show "good cause" because Buergofol is actually seeking a protective order—not a remote deposition—in attempting to re-locate the deposition to the Czech Republic. Docket 311 at 5-7; *see also Pace*, 2020 WL 10223626, at *2 (stating that a party seeking a protective order

3

**DISCUSSION**

**I.    Legitimate Reasons**

Buergofol puts forth three "legitimate reasons" for Dr. Boutrid's deposition to be taken by remote means. Docket 294 at 9-13. First, Buergofol claims that Dr. Boutrid will miss about a week of work (including travel time and time being deposed) which will negatively affect the functioning of Buergofol's factories and film production. *Id.* at 10-11. Second, Buergofol asserts that holding the deposition in Sioux Falls would result in unnecessary costs and inconvenient travel. *Id.* at 12. And third, Buergofol argues that an in-person deposition and associated travel pose an unnecessary health risk due to COVID-19. *Id.* at 12-13. The court will address each of these concerns in turn.

---

bears the burden to show "good cause"). Buergofol maintans that it may properly seek for Dr. Boutrid to be deposed remotely in the Czech Republic under Rule 30(b)(4), without moving for a protective order. Docket 321 at 4, 8, 11-12. There is some authority to support Omega's contention. *See, e.g.*, *Trove Brands, LLC v. Trrs Magnate LLC*, 2024 WL 557789, at *1 (E.D. Cal. Feb. 12, 2024) (stating a deposing party may unilaterally choose the location of the deposition, subject to a protective order); *S.E.C. v. Banc de Binary*, 2014 WL 1030862, at *3 (D. Nev. Mar. 14, 2014) (same). *But see Tsien v. Bd. of Regents of Univ. Sys. of Georgia,* 2021 WL 6617307, at *2 (S.D. Ga. Nov. 12, 2021), *aff'd,* 2021 WL 6617308 (S.D. Ga. Dec. 20, 2021) (analyzing a motion for a remote deposition in China under the legitimate reason standard). But the court need not reach this issue because the court finds that Buergofol has failed to meet the lesser "legitimate reason" standard. *See In re Boiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 (noting that "good cause" is a higher standard than "legitimate reason").

### A. Dr. Boutrid's absence from work and impact on Buergofol's factories

Buergofol argues that Dr. Boutrid should not have to travel over 5,000 miles to be deposed in South Dakota because doing so would disrupt Dr. Boutrid's work schedule and, ultimately, the productivity of Buergofol's factories. *Id.* at 10-11. But importantly, it was Buergofol that chose to bring this action in South Dakota. *See generally* Docket 1.

"Ordinarily, plaintiff [] [is] required to make [itself] available for examination in the district in which suit was brought. Since plaintiff has selected the forum, [it] will not be heard to complain about having to appear there for a deposition." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2112 (3d ed. 2024); *see, e.g. Loeser v. Noble Supply & Logistics, LLC*, 2024 WL 2155219, at *2 (D. Md. May 14, 2024); *Trove Brands, LLC v. Trrs Magnate LLC*, 2024 WL 557789, at *1 (E.D. Cal. Feb. 12, 2024) (courts presume plaintiffs will be deposed in the district they brought the action because "in selecting the forum, [plaintiff] has effectively consented to participation in legal proceedings there.") (citation omitted); *Am. Gen. Life Ins. Co. v. Baker*, 2010 WL 1610456 at *6 (D. Neb. Apr. 19, 2010). "This rule is also applicable to plaintiff's agents and employees." *Perdana Cap. Inc. v. Chowdry*, 2010 WL 11475933, at *3 (N.D. Cal. Sept. 2, 2010) (emphasis removed). Moreover, "[e]ven with respect to foreign corporate *defendants* . . . [there is a] presumption that depositions should be taken in the litigation forum." *Id.*

5

Thus, while the court recognizes that Dr. Boutrid will have to miss work and be inconvenienced by a trip to attend an in-person deposition in South Dakota, this is an expected reality of engaging in litigation. *See Troxel v. Gunite Pros, LLC*, 2022 WL 2762905, at *2 (S.D. Ala. Mar. 17, 2022) (finding that because the plaintiffs brought suit in the forum, the "[p]laintiffs' expected inconveniences in missing work and arranging for family care . . . fall short of showing 'a sound basis or legitimate need' for an order mandating remote depositions"). While "travelling for depositions is inconvenient, a reasonable burden or inconvenience is expected" when the plaintiff chose to bring suit in the location where the depositions are to take place. *Id.* (quotation omitted).

Buergofol also argues that Dr. Boutrid plays a substantial role in Buergofol's factories and the production of film, and as a result, his absence could negatively affect Buergofol's bottom line. *See* Docket 294 at 11-12. Specifically, Buergofol alleges that "[w]hile many questions from production personnel can wait a day or two to be answered, some production decisions cannot wait and would have to be made without the input of Dr. Boutrid's expertise, which could potentially cause lower quality film to be produced." *Id.* at 11. Buergofol estimates the financial risk of Dr. Boutrid's absence to be approximately 50,000 Euros. *Id.* at 11-12. The court does not find this argument persuasive because Dr. Boutrid was recently able to come to the United States for a deposition in Washington D.C. *See* Docket 431; Docket 431-1; Docket 431-2. The deposition occurred without any objection by Buergofol. *See* Docket 431 at 2. Thus, the court finds that although it may not be ideal,

6

Buergofol's factories are obviously able to function without Dr. Boutrid's physical presence on site.

Based on the foregoing, the court finds that the hassle of Dr. Boutrid taking off work and traveling to South Dakota is not a legitimate reason to conduct his deposition remotely.

### B. Unnecessary costs and inconvenient travel

Buergofol maintains that the costs associated with deposing Dr. Boutrid in Sioux Falls, namely airfare and travel, constitute a legitimate reason to conduct the deposition remotely. Docket 294 at 12. Courts have recognized that costs can serve as a legitimate reason for holding remote depositions. *See In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 ("A desire to save money taking out of state depositions can suffice to show good cause to take a deposition by remote means.").

But courts have been wary of allowing a plaintiff to use costs as an excuse to avoid in-person depositions because "[t]he plaintiff . . . [took] the volitional step of initiating the lawsuit or claim . . . [and] stands to gain a substantial monetary sum and/or other beneficial relief as a result of suing a defendant." *In re Deepwater Horizon Belo*, 2021 WL 6882434, at *4 (N.D. Fla. July 12, 2021) (quoting *United States v. Rock Springs Vista Dev.*, 185 F.R.D. 603, 604 (D. Nev. 1999)). As a result, some courts have held that plaintiffs "cannot invoke the mere [] inconvenience or expense as a legitimate reason to refuse to appear and submit himself or herself to questioning by the defendant

7

regarding the basis for the claim." *Id.* (quoting *Rock Springs*, 185 F.R.D. at 604).

Here, as noted above, Buergofol chose to bring suit in South Dakota and seeks roughly $4 million in damages and injunctive relief from Omega. Docket 304 at 5; Docket 163 at 21-22 (prayer for relief). "[I]t is only appropriate that in making th[e] decision [to bring suit in the forum] plaintiffs must consider the costs of prosecuting that suit, rather than rely on shifting the cost onto defendants before adjudication on the merits." *Trove Brands, LLC*, 2024 WL 557789, at *2 (citation omitted) (evaluating a motion for a protective order under a good cause standard). This is particularly true, where, as here, the cost of the deposition will literally be shifted to Omega. Omega has made clear that because Dr. Boutrid is such a key witness, it plans to take Dr. Boutrid's deposition in person—whether that be in South Dakota, or, if the court grants Buergofol's motion, in the Czech Republic. Docket 311 at 23. Thus, either way, one party will incur travel expenses. As such, the court finds that the potential costs Buergofol may be subject to as a result of bringing Dr. Boutrid to South Dakota do not constitute a legitimate reason for a remote deposition.

### C. COVID-19

Finally, Buergofol contends that the potential danger of contracting COVID-19 is a legitimate reason to hold Dr. Boutrid's deposition remotely. Docket 294 at 12-13. Buergofol argues that just because the state of emergency that was issued in the height of the pandemic has been lifted does not mean that the risk of COVID-19 is no longer a valid concern. *Id.*

8

The court recognizes that the health risks associated with COVID-19 can be a legitimate reason for a deposition to be conducted remotely. *See H & T Fair Hills, Ltd.*, 2020 WL 5512517, at *1. But this court has recognized—as early as June 2021—that a vaccine for COVID-19 is widely available and that guidelines published by the Centers for Disease Control permit a safe manner in which to conduct in-person depositions. *See Nasuti v. Walmart, Inc.*, 2021 WL 2336935, at *3 (D.S.D. June 8, 2021). Additionally, Buergofol has provided no argument that Dr. Boutrid has specific health issues or conditions that would heighten the risks associated with contracting COVID-19. Instead, Buergofol offers only general concerns about the virus. Courts have found such showings insufficient. *See, e.g., In re Deepwater*, 2021 WL 6882434, at *3 (denying motion for video deposition, noting that pandemic concerns "[do] not, standing alone, give the [c]ourt a basis to compel a litigant to take a remote deposition when that litigant has reasonably elected otherwise"); *United States v. Balega*, 2022 WL 20100634, at *3 (D. Minn. Mar. 10, 2022) (requiring the movant to articulate specific facts as to the effect of COVID-19 on the deposition and deponent in question); *G.K. v. D.M.*, 2024 WL 1801907, at *3 (E.D. La. Apr. 25, 2024) ("[A]bsent a specific showing of hardship tied to an individual's circumstances, a general order requiring that the deposition of an out-of-town plaintiff be taken telephonically is not warranted." (citation omitted)).

It also bears repeating that Dr. Boutrid traveled to the United States for a deposition in August. Docket 431 at 2; Docket 431-1; Docket 431-2. So, clearly

9

Dr. Boutrid's concerns about COVID-19 are not so severe as to completely stop him from traveling. *Tijerina-Salazar v. Venegas,* 2021 WL 6011137, at *4 (W.D. Tex. Dec. 20, 2021) (noting that the deponent's appearance "elsewhere in-person for other depositions . . . during and throughout the pandemic. . . indicate[s] that [the deponent] does not truly believe COVID-19 is a pertinent barrier from attending in-person depositions" and holding COVID-19 is not a legitimate reason for remote deposition). In conclusion, the court finds that Buergofol's general concerns with COVID-19 do not rise to the level of a "legitimate reason" for the court to order a remote deposition.

II. **Discovery disputes and witness testimony**

The specific circumstances of this case and the sought-after testimony further dampen the "legitimate reasons" that Buergofol asserts. Courts are "unwilling to permit remote depositions, despite the COVID-19 pandemic, in instances where the testimony is key to the issues presented and the case has been subject to multiple discovery disputes." *Edwards,* 2021 WL 8316970, at *2 (collecting cases); *see also Tsien,* 2021 WL 6617307, at *3 (denying motion for a remote deposition of key witnesses).

Here, there is no question that this action is fraught with discovery disputes. *See, e.g.,* Docket 444 (motion to compel); Docket 254 (motion for protective order); Docket 175 (motion to compel); Docket 168 (motion to compel); Docket 100 (motion to compel). The parties have each filed a number of motions requesting the court intercede in the discovery process—both alleging a lack of cooperation and hostility from the other party. *See generally*

10

Docket 255; Docket 344. These "discovery disputes . . . instill little confidence that a remote deposition will proceed" in a harmonious manner. *See Edwards*, 2021 WL 8316970, at *2 n.2. In fact, Omega has already noted that it expects disagreements to arise. Docket 311 at 21-22 (noting its concerns that Buergofol will attempt to claim testimonial privileges premised on foreign laws).

Additionally, Dr. Boutrid—by virtue of his status as one of the inventors listed in the '882 patent, his long-time employment by Buergofol, and his position as Head of Research and Development—is a key witness. Docket 311 at 24-27. Omega claims that Dr. Boutrid has substantial knowledge not only about the '882 patent, but also about its prosecution and potential prior art sales. *See id.* This information is crucial to both Buergofol and Omega's claims and defenses. *See id.*

Where testimony is critical, "the value of accurately assessing credibility is heightened" and "[r]emote depositions preclude . . . the assessment of the deponent's demeanor, affect, non-verbal responses, and facial expressions." *Tsien*, 2021 WL 6617307, at *3 (citation omitted). This is particularly true where, as here, Dr. Boutrid will be testifying about highly complex material and that testimony will have to be translated through an interpreter. *See* Docket 311 at 24-28 (Omega discussing Dr. Boutrid's expected testimony on the '882 patent, record retention, and film composition and testing); Docket 297-2 at 36 (Buergofol stating an interpreter would be needed for the deposition).

11

"Courts [have] historically recognize[d] that live testimony is far superior to video or telephone testimony, and counsel's ability to observe a party as he or she answers questions is an important aspect of discovery." *G.K.*, 2024 WL 1801907, at *3; *In re Deepwater*, 2021 WL 6882434, at *3 (stating that in-person depositions are superior).

Thus, the court finds that the multitude of discovery disputes and the importance of Dr. Boutrid's testimony also weigh in favor of denying Buergofol's motion for remote deposition.

### III.  Prejudice

Even if Buergofol had presented the court with a legitimate reason that warranted a remote deposition, the court finds that such reasons would be outweighed by the prejudice to Omega.[3] Namely, granting Buergofol's motion would simply impose all of Buergofol's claimed hardships—absence from work, travel costs, and COVID-19 related health risks—onto Omega, which has stated it will depose Dr. Boutrid in person, whether in the Czech Republic or Sioux Falls, South Dakota. *See* Docket 311 at 23, 29. The court finds that Buergofol has not presented sufficient reasons to warrant such a burden shift.

---

[3] Omega claims it will be prejudiced by a remote deposition because (1) this is a complex lawsuit with high stakes; (2) deposition disputes require judicial oversight, which will be difficult to ensure given the time difference in the Czech Republic; (3) the court's authority may be called into question given the foreign destination; (4) Omega will bear travel costs, because it intends to depose Dr. Boutrid in person; and (5) Dr. Boutrid is a key witness and Omega will not be able to meaningfully depose him though remote means. Docket 311 at 19-25. The court need not address each of these potential prejudices here, as many of them were discussed above. The court will also assume Buergofol's declarations that a remote deposition in the Czech Republic would not inhibit the court's authority or ability to oversee the deposition. *See* Docket 321 at 7-8.

### IV. Attorney's fees

In its response to Buergofol's motion, Omega requests attorney's fees. Docket 311 at 29-30. Omega claims that because Buergofol "lack[ed] justifiable foundation for initiating" its motion and "failed to provide any meaningful evidence of any valid reason" for a remote deposition, it should be awarded attorneys fees. *Id.* at 29. Although the court found that Buergofol failed to show a "legitimate reason" for remote deposition, Buergofol's purported reasons were not hollow, and thus its motion was not without merit. As such, the court denies the request for attorney's fees.

## CONCLUSION

Because Buergofol failed to provide the court with a legitimate reason to remotely depose Dr. Boutrid while he is physically present in the Czech Republic, and any hardship Buergofol may face is outweighed by the potential prejudice to Omega, it is

ORDERED that Buergofol's motion for remote deposition (Docket 293) is denied.

Dated September 25, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE