UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br><br>ORDER DENYING MOTION FOR PROTECTIVE ORDER |

Plaintiff, Buergofol, moves for a protective order and to quash, defendant, Omega's, Rule 30(b)(6) deposition. Docket 254. Omega opposes the motion. Docket 290. The court issues the following order.

## BACKGROUND

At a hearing, Magistrate Judge Duffy ordered Buergofol to identify a corporate representative for a custodian of records deposition under Federal Rule 30(b)(6). Docket 238 at 168. The custodian must be "sufficiently sophisticated about [Buergofol's] document retention policy, including any computer systems and ESI that Buergofol has[,]" *id.* at 170-71, so that the custodian can testify about "what documents are kept, how they're kept, how long they're kept, [and] what[] [documents are] available[,]" *id.* at 168. Magistrate Judge Duffy ordered the deposition to take place within 30 days, but stated she would approve an extension if needed. *Id.* at 168-69, 204.

On the day of Magistrate Judge Duffy's order, Omega emailed Buergofol requesting that Buergofol provide it with potential dates for the deposition. Docket 256-3 at 14. The email stated that Omega expected the deposition to be carried out in Sioux Falls, South Dakota. *Id.* Omega sent two follow-up emails before Buergofol responded—one week after the initial email was sent. *Id.* at 12-14. Buergofol stated that it expected the deposition to be carried out over Zoom, with the deponent physically present in Germany. *Id.* at 12. Buergofol also requested Omega provide it with the expected matters for examination so Buergofol could begin prepping its witness. *Id.* at 10-12. Omega stated its concerns with a foreign, remote deposition and advised Buergofol that the parties could discuss the topics via meet and confer after it served the notice. *Id.* at 9-11.

Soon after, Omega served Buergofol with notice of its Rule 30(b)(6) deposition to take place in Sioux Falls, South Dakota. *See* Docket 256-1. Omega also included a numerated list of topics the deponent would be asked about. *See id.* at 11-31. The list included 10 broad categories with 167 subparts. *See id.* Omega did not send the list of proposed topics before serving the notice. *See* Docket 255 at 7; Docket 256-3 at 9, 11 (Omega's counsel stating that the parties could discuss the topics after Omega served Buergofol with notice). After receiving the notice and proposed topics, Buergofol reached out to Omega, voicing its concerns with the number and breadth of the topics and its ability to adequately prep a witness in the allotted time. Docket 256-3 at 7-8. Buergofol also stated that it would send a conference call number so the

parties could discuss the matters for examination and that it would move for a protective order if Omega would not agree to holding the deposition through remote means. *Id.* at 8.

Omega refused to engage in two-way communication with Buergofol to discuss the proposed deposition topics. *Id.* at 7. Instead, Omega requested that Buergofol respond to Omega's noticed topics in writing. *Id.* Buergofol urged Omega to reconsider its stance on a telephonic discussion, but Omega declined. *Id.* at 5-4.

Buergofol subsequently sent Omega its written objections to 97 of the proposed topics, *see* Docket 256-4, to which Omega responded, Docket 256-6. Omega did not withdraw any of its proposed topics for examination nor did Buergofol withdraw any of its objections after receiving Omega's response. *See* Docket 255 at 18. Buergofol filed this instant motion thereafter.

Buergofol seeks a protective order arguing, in large part, that Omega's notice of deposition contains too many discrete topics, and it would be impossible for Buergofol to adequately prep its designated custodian(s) on all of them. Docket 255 at 19-28. Buergofol also requests its custodian be deposed remotely. *Id.* at 32-34. Finally, Buergofol asserts that Omega failed to satisfy its meet and confer requirements for a Rule 30(b)(6) deposition, and requests sanctions for that failure. *Id.* at 34-36. Omega opposes the motion, arguing that its proposed topics are not overly burdensome, and fall safely within the confines of Magistrate Judge Duffy's order. *See* Docket 290 at 12-19, 21-26.

Omega also requests the deposition take place in Sioux Falls, South Dakota. *See id.* at 4-12.

## LEGAL STANDARD

### I. Protective Order

Discovery is meant to be used as "a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014). As such, the federal rules authorize discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). But discovery that is unreasonably burdensome, cumulative, or outside the scope permitted by Rule 26(b)(1) should be limited by the court. *See* Fed. R. Civ. P. 26(b)(2)(C).

Federal Rule of Civil Procedure 26(c) allows a party to request, upon a showing of good cause, that the court "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c). "The party seeking the order . . . bears the burden of establishing the requisite good cause." *Patterson Dental Supply, Inc. v. Pace*, 2020 WL 10223626, at *2 (D. Minn. Nov. 5, 2020).

To show good cause, the movant must put forth "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Hendrickson v. Rapid City, Pierre & E. R.R., Inc.*, 2023 WL 5486239, at *3 (D.S.D. Aug. 24, 2023) (quoting *Gen. Dynamics Corp. v. Selb*

4

*Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). In short, "[a] party claiming [that] requests are unduly burdensome . . . must provide some evidence regarding the time or expense required." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (quoting *Doe v. Nebraska*, 788 F. Supp. 2d 975, 981 (D. Neb. 2011)); *see also Cigna Corp. v. Bricker*, 2023 WL 2561750, at *1 (E.D. Mo. Mar. 17, 2023) ("To show good cause, "the part[y] seeking protection must show that specific prejudice or harm will result if no protective order is granted." (citation omitted)). The court must then "balance the prejudice or harm to the moving party if no protective order is entered with the hardship the non-moving party may experience if a protective order is issued." *Strobl v. Werner Enters., Inc.*, 577 F. Supp. 3d 960, 965 (S.D. Iowa 2022); *see also U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).

"Because of liberal discovery and the potential for abuse, the federal rules 'confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.' " *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times*, 467 U.S. at 36.

II.   **Rule 30(b)(6) deposition**

Federal Rule of Civil Procedure 30(b)(6) allows a party to notice or subpoena the deposition of a corporation and requires the requesting party to "describe with reasonable particularity the matters for examination." Fed. R.

Civ. P. 30(b)(6). The named organization is then required to designate one or more representatives to testify as to the areas specified. *Id.*

The persons designated by the organization are required to "testify about information known or reasonably available to the organization." *Id.* If the designated deponent does not have personal knowledge of the matters articulated in the deposition notice, the corporation is obligated to prepare the deponent for such topics so the deponent can give answers as to the corporation's knowledge. *Golden v. Stein*, 2020 WL 13553710, at *4 (S.D. Iowa Apr. 14, 2020); *Whitt v. City of St. Louis*, 2020 WL 7122615, at *3 (E.D. Mo. Dec. 4, 2020). The corporation must also prepare the designated deponent to testify about "information held by third-party sources if that information is reasonably available to the organization." *Whitt*, 2020 WL 7122615, at *3 (citation omitted).

Notably, Rule 30(b)(6) imposes reciprocal duties of good faith on both parties—the requesting party must describe with "reasonable specificity" the topics to be discussed so that, in return, the responding party can effectively choose and prepare a suitable deponent. *Wilbur-Ellis Co. LLC v. Gompert,* 2023 WL 6038022, at *3 (D. Neb. Sept. 15, 2023); *MasterMine Software, Inc. v. Microsoft Corp.*, 2015 WL 12778417, at *6 (D. Minn. Aug. 5, 2015). "A deposing party may not demand that a corporate designee be prepared to speak with encyclopedic authority." *Whitt*, 2020 WL 7122615, at *3. But "[it] is important to note that a topic which requires review of a large volume of information is not per se lacking in the reasonable particularity required of 30(b)(6) topics."

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2018 WL 9919939, at *8 (D. Minn. Jan. 23, 2018). Courts, however, "have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices." *Reno v. W. Cab Co.*, 2020 WL 5902318, at *2 (D. Nev. Aug. 31, 2020) (quoting *Shuthima Pongsai v. Am. Express Co.*, 2020 U.S. Dist. Lexis 113168, at *15 (C.D. Cal. June 29, 2020)).

## DISCUSSION

I. **Meet and Confer**

As an initial matter, Buergofol claims that Omega failed to meet and confer in good faith. *See* Docket 255 at 16-19. Rule 30(b)(6) provides that "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." Fed. R. Civ. P. 30(b)(6).[1] Courts have held that this language imposes a duty on both parties—the party serving and the party receiving the notice—to meet and confer in good faith. *See, e.g., Dundon v. Kirchmeier*, 2021 WL 8514415, at *2 (D.N.D. May 3, 2021).

Omega does not dispute the fact that it refused to engage in two-way communication with Buergofol about the noticed topics. Docket 290 at 30. According to Omega, it determined, after a series of hostile interactions with Buergofol's counsel, that it would meet and confer exclusively through written communications. *Id.* at 31. Omega asserts that neither the court's local rules

---

[1] Similarly, under the District of South Dakota Local Rule 37.1, "[a] party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute." D.S.D. Civ. LR 37.1.

7

nor Rule 30(b)(6) require contemporaneous, two-way communication. *Id.* at 30-31.

      The court has already made clear to both Buergofol and Omega that "meet-and-confer requirement[s] [are] not an empty formality." Docket 143 at 7 (quoting *Pierce v. Fremar, LLC*, 2010 WL 3420169, at *1 (D.S.D. Aug. 27, 2010). Generally, "[t]he purpose of the meet-and-confer requirement is to 'force litigants to attempt to resolve, or at least narrow, the disputed issues to prevent the unnecessary waste of time and effort on any given motion.' " *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 2023 WL 356121, at *3 (D.S.D. Jan. 23, 2023) (quoting *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 197, 198-199 (D.D.C. 1999)); *see also Biondolillo v. Livingston Corr. Facility*, 2020 WL 1887619, at *3 (W.D.N.Y. Apr. 16, 2020) ("The purpose of the meet and confer requirement is to resolve discovery matters without the court's intervention to the greatest extent possible.") (citation omitted)); *Wong v. Astrue*, 2008 WL 4167507, at *2 (N.D. Cal. 2008) ("The purpose of the [meet and confer] requirement is to . . . resolve disputes which need not involve the [c]ourt, and avoid unnecessary litigation, thus saving the parties', the [c]ourt's, and the taxpayers' limited time, money, and resources.").

      With regard to Rule 30(b)(6) specifically, courts have recognized that the rule "does not contemplate a court micromanaged process to determine appropriate matters for examination; instead, the parties have the explicit duty to do so through a cooperative process." *Grain Processing Corp. v. Virgin Scent,*

*Inc.*, 2022 WL 14624961, at *5 (S.D. Iowa Mar. 24, 2022). The meet and confer "provisions are meant to facilitate a reasonable process for the parties to prepare for and take depositions of corporate entities. Not to create a litigation battle ground . . . Nor to obtain advisory opinions from the [c]ourt on matters which may or may not even come to fruition." *Cross Creek, LLC v. Midea Am. Corp.*, 2023 WL 2441645, at *9-10 (S.D. Iowa Jan. 17, 2023). "[C]ounsel for both sides are expected to proceed in good faith in preparing for and conducting the deposition within the parameters of Rule 30(b)(6)." *Grain Processing*, 2022 WL 14624961, at *5.

" 'Good faith' requires that the parties ma[ke] a genuine attempt to resolve the discovery dispute without involving the court[,]" and that they "meaningfully discuss each contested discovery dispute." *Jim Hawk*, 2023 WL 356121, at *3 (citing *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 170-71 (D. Nev. 1996)). "In determining whether a party has complied with its meet-and-confer obligations, the court 'looks to all surrounding circumstances to determine whether the movant's efforts were reasonable.' " *LoganTree LP v. Garmin Int'l, Inc.*, 339 F.R.D. 171, 178 (Aug. 2021) (quoting *Ross v. Pentair Flow Techs., LLC*, 2020 WL 4039062, at *1 (D. Kan. July 17, 2020)).

Looking at the circumstances of this case, the court finds that the parties did not meet and confer in good faith. Even assuming, as Omega argues, that

9

two-way communication is not required by the rules,[2] the parties did not "meaningfully discuss" each contested topic "in a genuine effort to avoid judicial intervention." *Williams v. Cent. Transp. Int'l, Inc.*, 2014 WL 6463306, at *2 (E.D. Mo. Nov. 17, 2014); *see also Biondolillo,* 2020 WL 1887619, at *3 ("It is not the job of th[e] [c]ourt, in the first instance, to 'limit' parties' discovery requests; indeed, such is the purpose of the meet and confer requirement."). Buergofol recognized this, stating in an email to Omega that the court "should not have to consider all of the more than 90 current topics that Buergofol intends to ask to be quashed" and reminded Omega that parties are "supposed to meet and confer in order to narrow the number of contested matters for examination." Docket 253-3 at 2.

Instead of actually discussing the issues within the notice, Buergofol, at Omega's instance, sent Omega written objections to approximately 90 of the proposed topics. Docket 256-4. Buergofol also stated that if Omega would not agree to a remote deposition of the designated deponent, it would request a protective order. Docket 256-3 at 8. Neither of these communications, nor Omega's responses to Buergofol's objections (which merely reiterated Omega's positions) constitute a meet and confer. *See Jim Hawk*, 2023 WL 356121, at *3

---

[2] It bears mentioning that the court is not convinced that real-time, simultaneous communication is not required. *See Jim Hawk*, 2023 WL 356121, at *3 ("conferment requires the parties to have had an actual meeting or conference . . . [in which they] personally engage in two-way communication . . . to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention"); *Palzer v. Cox Oklahoma Telcom, LLC*, 2019 WL 11585346, at *3 (N.D. Okla. Apr. 26, 2019) (stating meet and confers must have an element of "concurrence, simultaneous occurrence, and contemporaneousness"). But the court need not address this issue at this time.

10

(stating the meet and confer requirement is not satisfied by sending a letter that indicates that a motion will be filed with the court if the opposing party does not comply with the party's requests and "[l]ikewise, sending a letter discussing the discovery issue [does] not satisfy the meet-and-confer requirement"); *Williams*, 2014 WL 6463306, at *2 ("Unilateral communication demanding that the other side comply with a discovery request does not satisfy the requirement.").

  The court is also unpersuaded by Omega's argument that Buergofol's counsel allegedly being "hostile" and "unprofessional" at previous meet and confers somehow eliminates its duty to meet and confer. *See Nutrition Distrib. LLC v. Ironmag Labs, LLC*, 2019 WL 13423685, at *1 (C.D. Cal. Jan. 30, 2019), *aff'd,* 978 F.3d 1068 (9th Cir. 2020) ("Plaintiff's assumption that [d]efendants would not meet and confer in good faith . . . is not an excuse for failure to comply" with meet and confer requirements). If issues arise during a meet and confer, they can be addressed by the court in due course. A party may not preemptively refuse to meet and confer based on predicted hostility.

  Although courts have, in limited circumstances, excused a failure to meet and confer where there is a long history of animosity and disputes between the parties, the court is not convinced that there was no hope of resolving these issues. *See Bolger v. District of Columbia*, 248 F.R.D. 339, 343-44 (D.D.C. 2008) (excusing the failure of the movant to satisfy the meet-and-confer requirement because of the long-standing record of the opposing party's refusal to comply with both the plaintiff's requests and the court's specific

11

orders to produce certain discovery). Buergofol's repeated requests for a teleconference and recognition that it is the parties' duty, not the court's, to narrow the proposed topics in the first instance, imply a willingness to engage in a cooperative process and a belief that such a process could be fruitful. *See* Docket 256-3 at 5-8.

In similar circumstances—where the parties fail to appropriately meet and confer in good faith regarding Rule 30(b)(6) notices prior to seeking judicial intervention—courts have not held the failure against either party. Instead, they simply order the parties to properly meet and confer. *See, e.g., Matthew v. Unum Life Ins. Co. of Am.*, 2009 WL 10710597, at *6 (D. Minn. Apr. 10, 2009) (noting that although the parties failed to meet and confer about the Rule 30(b)(6) topics, the court was confident "in the parties' ability to narrow the topics to their mutual satisfaction" and provide guidance as to the topics before the dispute was remanded back to the parties for a meet and confer); *Grain Processing*, 2022 WL 14624961, at *4-5 (finding it was unclear whether the parties met and conferred in good faith about the Rule 30(b)(6) deposition topics, offering guidance as to the scope of the topics, and ordering the parties to properly meet and confer); *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 2020 WL 8102054, at *13 (C.D. Cal. July 9, 2020) (declining to address topics noticed for a Rule 30(b)(6) deposition that the parties did not discuss during the required meet and confer); *Ashley v. Moore*, 2023 U.S. Dist. LEXIS 191153, at *7-8 (C.D. Cal. Oct. 23, 2023) (stating the court would not "absolve the parties of their responsibility under the [f]ederal [r]ules and [l]ocal [r]ules to

meet and confer about the . . . subject matter of the Rule 30(b)(6) deposition" and declining to address the objections to the noticed topics before the parties did so).

Thus, the court declines to take up the burden of parsing through the approximately 90 contested deposition topics before the parties have meaningfully done so. The court directs the parties to engage in a good faith meet and confer. And to ensure that meaningful discussion occurs, the court directs the parties to conduct the meet and confer though two-way communication. To aid the parties in their meet and confer, the court addresses several of the parties' overarching disagreements as to the temporal limits and scope of the deposition below.

**II.    Scope**

Buergofol argues that the scope of the deposition is limited only to ESI and ESI systems that Buergofol currently employs. Docket 255 at 20. To support its contention, Buergofol relies on the language Magistrate Judge Duffy used in issuing her order during the hearing. *Id.* Magistrate Judge Duffy ordered the deposition, stating the Buergofol would provide a witness to testify "about the document retention policy, including any computer systems and ESI that Buergofol has," Docket 238 at 17-71, and was to explain "what documents are kept, how they're kept, how long they're kept, what's available[,]" *id.* at 168. Buergofol asserts that because Magistrate Judge Duffy used the present tense in her order, she intended for the deposition to concern ESI and ESI systems currently employed by Buergofol. Docket 255 at 20. Also, because Magistrate

13

Judge Duffy began speaking about the parties creating an ESI plan right after ordering this deposition, Buergofol claims that the deposition was intended only to facilitate an ESI plan. Docket 255 at 19-20; *see also* Docket 238 at 168-71. Thus, Buergofol states that the court-ordered deposition was intended to be "narrow and limited to the current state of Buergofol's ESI, not ESI from decades in the past that is no longer available." Docket 255 at 20.

Omega, by contrast, argues that the nature of the case necessitates information on Buergofol's previous document retention systems and preservation methods. Docket 290 at 12-13. Specifically, Omega agues that because the patents in suit have a priority date of March 11, 2013, and June 15, 2009, evidence prior to those dates is critical to Omega's claims and counterclaims. *Id.* Moreover, Omega notes that Buergofol should have already performed an ESI inventory, so earlier information should not be difficult to find. *Id.* at 12.

Looking at Magistrate Judge Duffy's order, it is clear that she intended for the deposition to be limited in scope—focused on how Buergofol's documents are stored and can be searched. *See* Docket 238 at 168-71; Docket 234. Thus, the court agrees with Buergofol's contention that Magistrate Judge Duffy did not intend the deposition to be used for general factfinding. But the court also finds that the deposition was not intended to be focused solely on aiding the parties in making an ESI plan.

During the hearing, Magistrate Judge Duffy initially set the deposition deadline and the deadline for the parties to submit an ESI plan for the same

14

day. *See* Docket 238 at 168-69 (Magistrate Judge Duffy originally stating the deposition was to take place within 30 days and stating the parties must "within 30 days [] come back [to] the [c]ourt with a[n] [ESI] plan"). It was only after the parties indicated they believed the deposition would be helpful in crafting an ESI plan that Magistrate Judge Duffy ordered the deposition to take place within 30 days and the ESI plan to be submitted in 60 days. *Id.* at 169. Thus, Magistrate Judge Duffy did not necessarily order the deposition for the purpose of assisting in developing an ESI plan. *See id.*

More telling, in her written order, Magistrate Judge Duffy ordered Buergofol to produce a custodian to testify "on subjects agreed upon by the parties but to include *at a minimum* Buergofol's document retention policy whether that is formal or informal, how documents are stored, where they are stored, and how they may be searched." Docket 234 (emphasis added). The order does not specify that the documents be electronic, and highlights that the topics listed by Magistrate Judge Duffy are not exhaustive. As such, the court finds that Magistrate Judge Duffy did not limit the scope of the deposition to current ESI or only electronically stored information, but clearly, the deposition was not meant to enable general fact discovery.

### III. Discovery on discovery

Buergofol also contends that Omega should not be permitted to engage in "discovery on discovery." Docket 255 at 29-30. Because there has been no allegation of spoilation and discovery on discovery does not relate to any claim or defense, Buergofol argues inquiry into its document collection and

15

preservation is improper. *Id.*; Docket 304 at 16. Omega argues that evidence of spoilation is not necessary and that discovery on discovery is permitted where a party provides "an adequate factual basis" for the inquiry. Docket 290 at 16.

The Eighth Circuit has not addressed this issue, but courts within the circuit do not take such inquiries lightly. *See In re Whatley v. Canadian Pac. Ry. Ltd.*, 2021 WL 1951003, at *10 (D.N.D. May 14, 2021). But, while discovery on discovery is disfavored, courts recognize that it can be obtained if a party "provide[s] an adequate factual basis to justify the discovery[.]" *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, 2021 WL 5087362, at *11 (D. Minn. Jan. 5, 2021) (quoting *Parimal v. Manitex Int'l*, 2020 WL 6689395, at *2 (D. Conn. Nov. 13, 2020)); *see also Gross v. Chapman*, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) ("discovery about discovery can be appropriate under certain circumstances . . . [such as] when one party's discovery compliance has reasonably been drawn into question, [or] that there is an adequate factual basis' for an inquiry." (cleaned up)); *Kaye v. New York City Health & Hosps. Corp.*, 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020) ("Where, as here, a party seeks discovery on discovery, that party must provide an adequate factual basis to justify the discovery[.]") (cleaned up and citation omitted). Courts "must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Speed*, 2021 WL 5087362, at *11 (quoting *Parimal*, 2020 WL 6689395, at *2).

One court allowed discovery on discovery where the discovery process had been "unusually convoluted[.]" *In re Whatley*, 2021 WL 1951003, at *10.

The court found that while there were likely innocent explanations behind the parties' confusion, a knowledgeable representative's testimony would only "serve to speed the resolution of outstanding issues." *Id.* The same is true here—there have been a plethora of discovery disputes and questions as to the completeness of disclosures. *See, e.g.*, Docket 444 (motion to compel); Docket 254 (motion for protective order); Docket 175 (motion to compel); Docket 168 (motion to compel); Docket 100 (motion to compel). The court finds that testimony regarding Buergofol's document retention and policies may alleviate some of the discovery issues plaguing this case.

Additionally, the posture of this issue is unique. It is true that some courts have not permitted discovery requests that "merely seek to discover [a party]'s document retention and discovery practices" where there was no showing of discovery misconduct or that the information was relevant to claims or defenses. *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 2015 WL 12778845, at *2-3 (D. Minn. June 12, 2015). But here, Magistrate Judge Duffy specifically ordered the deposition to center around Buergofol's document retention, policies, and how Buergofol's systems could be searched. *See* Docket 234.

Thus, based on the "convoluted discovery" in this case and the nature of the ordered deposition, the court finds that Omega is not, as a matter of course, barred from exploring discovery on discovery.

## IV. Remote deposition

Buergofol also seeks a court order directing the deposition occur remotely while the deponent is physically present in a foreign country.[3] Buergofol argues the deposition should be carried out remotely for two reasons. First, Buergofol asserts that Magistrate Judge Duffy contemplated a remote deposition when she issued the order. Docket 255 at 32. Second, Buergofol asserts several "legitimate reasons" for a remote deposition. Docket 304 at 23.

To begin, Magistrate Judge Duffy stated that the parties *could* conduct the deposition remotely, but she did not order it. Docket 238 at 170. Instead, she indicated that the parties should come to an agreement on the issue. *See id.* Additionally, while Buergofol insists that the court's authority will not be compromised by the deponent being physically located in the Czech Republic, because the parties "may stipulate that the 'deposition may be taken before any person, at any time or place, on any notice[,]' " it does not appear that the parties have so stipulated. *See* Docket 304 at 25.

Thus, the court finds that Magistrate Judge Duffy's order did not require the deposition to occur over Zoom, and Buergofol has not fully developed an argument for the court to order a remote deposition at this time. The parties are encouraged to further discuss this issue during their meet and confer.

---

[3] In its initial brief, Buergofol insinuates that the deponent would be physically present in Germany during the deposition. *See* Docket 255 at 32-33. Omega pointed out that (absent circumstances that are not applicable here) depositions are not permitted under German law. Docket 290 at 4-5. In its reply brief, Buergofol states that it would prefer the deponent be physically present in the Czech Republic. Docket 304 at 24-25.

18

## V.    Facial excessiveness

Buergofol argues that the sheer number of Omega's proposed deposition topics are "facially excessive." Docket 255 at 19. Buergofol relies on a number of cases that granted protective orders based on a large number of noticed topics. *Id.* at 12-13. As Omega, notes, however, the majority of those cases concerned situations were the deposing party was attempting to elicit testimony as to every relevant fact in the case. Docket 290 at 24-26. That does not seem to be the case here.

Here, Omega's proposed topics consist of 10 subject areas, which are narrowed down in 167 subparts. *See generally* Docket 256-1. But each topic is at least tangentially tied to ESI. *See id.* In similar situations, this court has refused to quash the deposition. *See Namugisha v. Avera Mckennan Hosp.*, 2021 WL 664906, at *12 (D.S.D. Feb. 19, 2021) ("At first blush, plaintiffs' Rule 30(b)(6) deposition notice appears excessive with nine subject areas and 138 subparts. But many of those subparts will require exceedingly brief testimony, many are very closely related to each other, and the court has excised some of them and limited others to a specific time frame."). Thus, the court notes that the number of Omega's noticed topics alone does not render its notice facially excessive, particularly in light of the complexities of this litigation.

## CONCLUSION

The parties failed to meet and confer in good faith in the first instance. Thus, it is

ORDERED that Buergofol's motion for protective order (Docket 254) is denied. It is

FURTHER ORDERED that the parties must meet and confer about Omega's noticed deposition topics within 30 days of the filing of this order.

DATED September 25, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE