UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH, | 4:22-CV-04112-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING OMEGA'S MOTION TO COMPEL BUERGOFOL TO AMEND ITS INFRINGEMENT CONTENTIONS |
| OMEGA LINER COMPANY, INC., | |
| Defendant. | |

Defendant, Omega, moves the court to strike plaintiff, Buergofol's, infringement contentions and stay discovery. Docket 395; Docket 396. Buergofol opposes the motions. Docket 416.

## BACKGROUND

On June 16, 2023, the court issued a scheduling order instructing the parties to serve infringement, non-infringement, non-validity, and validity contentions. *See* Docket 136 at 7-11. The court explained that the disclosures were necessary "[t]o ensure that the parties can discover their opponent's theories of the case." *Id.* at 5. In making its ruling, the court drew inspiration from a number of other district courts that employ local patent rules designed "to balance the right to develop new information in discovery with the need for certainty as to the legal theories and require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach

to claim construction." *Id.* at 4 (quoting *Kruse Tech. P'ship v. Volkswagen AG*, 544 F. App'x 943, 953 (Fed. Cir. 2013) (cleaned up). The court recognized that the purpose of serving infringement and non-infringement contentions is to "force each side to show its cards; the patent holder shows in detail how the accused device meets each claim limitation and the accused infringer shows in detail how the claim is invalid." *Id.* (quoting *Lear Corp. v. NHK Seating of Am., Inc.*, 2022 WL 3109650, at *5 (E.D. Mich. Aug. 3, 2022)).

The court ordered Buergofol to serve its infringement contentions roughly a month after the issuance of the court's order, on July 21, 2023. *Id.* at 9. The court stated that the infringement contentions should include the following information:

> (a) each claim of each patent it alleges is being infringed[;]
> (b) for each claim, each product, device, process, act, or method it alleges infringes ("Accused Product"), a chart identifying where specifically each element of each asserted claim listed is found in each product, device, process, act, or method[;]
> ([c]) the priority date to which each asserted claim allegedly is entitled[;] and
> ([d]) whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents.

*Id.* And, at Buergofol's request, the deadline to serve its infringement contentions was continued a number of times. *See* Docket 162; Docket 267; Docket 328; Docket 387. Buergofol eventually served its initial infringement contentions on April 24, 2023, and its current infringement contentions on May 7, 2024. *See* Docket 160-2 (Buergofol's initial infringement contentions served in response to Omega's Interrogatory No. 14); Docket 396-1 (Buergofol's current infringement contentions).

2

Omega now moves to strike Buergofol's infringement contentions and stay discovery until Buergofol serves appropriate contentions. *See* Docket 395. Omega asserts that Buergofol's claim charts are "fundamentally flawed" because they "(1) completely ignore key disputed claim elements, (2) . . . parrot the claim language, or (3) use conclusory statements without any factual basis." Docket 396 at 4. Omega also takes issue with Buergofol's infringement contentions because they fail to provide a separate chart for each accused product and improperly use placeholders for the doctrine of equivalents and Buergofol's theory of induced infringement. *Id.* But largely, Omega argues that Buergofol's disclosures are inadequate because they do not disclose Buergofol's theories of infringement. *See generally id.* As a result, Omega also moves to stay discovery until sufficient infringement contentions are served. *Id.* at 33. Buergofol opposes the motions, asserting that its claim construction chart complies with the court's scheduling order. *See generally* Docket 416. The court issues the following order.

## LEGAL STANDARD

Courts possess an inherent authority to control their dockets to "achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see also Lunsford v. United States*, 570 F.2d 221, 227 n.11 (8th Cir. 1977) (recognizing the court's authority to strike materials on its own initiative). This authority permits courts to strike filings that are not in compliance with the court's orders. *See McClurg v. Mallinckrodt, Inc.*, 2017 WL 2880350, at *3 (E.D. Mo. July 6, 2017).

Federal Rule of Civil Procedure 16(f), also vests courts with wide, discretionary authority to "issue any just orders" to address a party's "fail[ure] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). Some courts allow parties to use Rule 16(f) as a vehicle for motions to strike infringement contentions. *See, e.g.*, *Niazi Licensing Corp. v. Bos. Sci. Corp.*, 2019 WL 5304922, at *2 (D. Minn. Oct. 21, 2019), *aff'd in part, rev'd in part and remanded sub nom. Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339 (Fed. Cir. 2022); *H-W Tech., L.C. v. Apple, Inc.*, 2012 WL 3650597, at *1 (N.D. Tex. Aug. 2, 2012).

But other courts treat such motions brought under Rule 16(f) as motions to compel amendment of the contentions, rather than motions to strike. *Stored Energy Sys., LLC v. Brunswick Corp.*, 2021 WL 4978448, at *2 (N.D. Ill. Aug. 19, 2021) (collecting cases); *Geovector Corp. v. Samsung Elecs. Co.*, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017). This is particularly true where the moving party is primarily seeking more detail—not a severe sanction. *See Ventriloscope v. MT Tool & Mfg.*, 2017 WL 489416, at *3 (N.D. Ill. Feb. 6, 2017); *see also Yama Cap. LLC v. Canon Inc.*, 2013 WL 6588589, at *4 (S.D.N.Y. Dec. 13, 2013) ("Where [i]nfringement [c]ontentions are found inadequate, courts can . . . impose lesser discovery sanctions, including an order to amend the infringement contentions. . . [which] may be a more appropriate resolution to what is, essentially, a discovery dispute.") (cleaned up). Construing the motion as a motion to amend also prevents patent litigants from transforming infringement contentions, which are intended to be a discovery tool, into a

4

mechanism for filing dispositive motions. *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2018 WL 1071443, at *4 (N.D. Ill. Feb. 26, 2018).

Here, it is clear that Omega does not desire Buergofol's infringement contentions to be completely scrapped. Instead, Omega simply moves the court to order Buergofol to file appropriate contentions. *See* Docket 396 at 33 (Omega asking the court to strike Buergofol's infringement contentions, but stating it expects Buergofol to file sufficient infringement contentions). Thus, the court will construe the motion as a motion to compel amendment of Buergofol's infringement contentions.

## I.    Interpreting the Court's Order

### A. Theories of Infringement

Omega's central argument is that Buergofol's infringement contentions are improper because they do not disclose Buergofol's theories of infringement. Docket 396 at 19-20. Buergofol argues that, according to the court's scheduling order, it is not required to "explain its theories of infringement beyond identifying where each claim element is found in each accused product." Docket 416 at 13.

The court's scheduling order directs Buergofol to provide a "chart identifying where specifically each element of each asserted claim listed is found in each product, device, process, act, or method." Docket 136 at 9. Based on that language, Buergofol asserts that it has complied with the court's order by "identifying where each claim element is found in the instances of OMEGA LINER." Docket 416 at 14.

5

The court rejects Buergofol's narrow reading of the court's order. Time and time again Buergofol grounds and centers its various arguments in paragraph 7 of the portion of the court's order setting forth deadlines. *See id.* at 5, 7-9, 10, 25. But Buergofol completely ignores the several pages of discussion and analysis that the court completed before coming to the conclusion that infringement contentions were necessary. *See* Docket 136 at 3-5. There, the court examined why patent rules are used by other districts, and highlighted the consensus that the purpose of infringement disclosures is to "require parties to crystallize their theories of the case early in the litigation." *Id.* at 4 (quoting *Kruse Tech.*, 544 F. App'x at 953). The court plainly stated that it was ordering the parties to serve the infringement (and non-infringement) contentions "[t]o ensure that the parties can discover their opponent's theories of the case." *Id.* at 5. The court will not permit Buergofol to read paragraph 7 in isolation, particularly when doing so completely invalidates the purpose of the court's order. Buergofol's infringement contentions were ordered for the express purpose of disclosing its theories of the case and allowing Omega to prepare its defenses and discovery plan. A bare-bones recital of the claims is not satisfactory.

### B. Evidentiary Support

Next, Buergofol argues that it does not need to supply any evidence or support for the assertions it makes in its infringement contentions. Docket 416 at 15-16. Buergofol asserts that "[p]aragraph 7 does not state that Buergofol must support its contentions identifying where claim elements are found with

6

test results, documents, or any other evidence." *Id.* at 15. In short, Buergofol maintains that it is not required to explain "*why* an accused product might have a particular claim element or *how* the claim element came to be present in the accused product." *Id.* at 14 (emphasis in original). Moreover, Buergofol argues that to the extent other districts have required some level of evidentiary support for infringement contentions, those courts were interpreting their own local patent rules and therefore the holdings are not persuasive in deciding what this court's order commands. *See id.* at 7-10.

It is true, this court does not have its own patent rules, but it did employ language that is nearly identical to the rules in several other districts. *Compare* Docket 136 at 9 (requiring "a chart identifying where specifically each element of each asserted claim listed is found in each product, device, process, act, or method); *with Tech. Properties Ltd. LLC v. Samsung Elecs. Co.*, 114 F. Supp. 3d 842, 844 (N.D. Cal. 2015) (local patent rule requiring "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."); *and Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 706 (E.D. Tex. 2008) ("The infringement contentions shall contain . . . a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality.") (cleaned up); *and REC Software USA, Inc v. HTC Am., Inc*, 2015 WL 11279835, at *1 (W.D. Wash. Apr. 10, 2015) (requiring a chart "identifying specifically where each element of each Asserted Claim is found within each Accused Device."). And in reaching its decision to order the chart, the court highlighted other districts' reasonings for

imposing similar requirements—to allow parties to discover their opponent's theories of liability. *See* Docket 136 at 4-5. The court ordered Buergofol to serve infringement contentions for the same reason. *Id.* at 5.

"In the absence of local patent rules . . . [c]ourt[s] may look to case law in other districts that have adopted such rules that contain language similar to that adopted by the parties and the [c]ourt to govern the litigation." *Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, 2019 WL 2171262, at *4 (E.D. Mich. May 20, 2019) (relying on caselaw from the Northern District of California and the Eastern District of Texas because the language used in the court's scheduling order was similar to the language in the districts' local patent rules); *see also TD Pro. Servs. v. Truyo Inc.*, 2024 WL 1462006, at *4 (D. Ariz. Apr. 3, 2024) (same). Thus, this court will look to other districts with similar infringement contention mandates to determine whether Buergofol needed to provide support for its infringement contentions.

Buergofol relies on a number of districts that have generally opined that infringement contentions do not need to be proven or accompanied by "specific evidence." Docket 416 at 15-16. The court agrees that infringement contentions do not typically require a party to "dislcos[e] . . . specific evidence nor do they require a plaintiff to prove its infringement case . . . [but] a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs., LLC*, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (internal

quotation marks omitted). Courts have held infringement contentions are insufficient when they are "nothing more than a conclusion based on information and belief that something exists or occurs . . . [S]imply alleging on information and belief and representing vague, conclusory, and confusing statements" is inadequate. *Solannex, Inc. v. MiaSole, Inc.*, 2013 WL 1701062, at *3 (N.D. Cal. Apr. 18, 2013) (cleaned up). The infringement contentions must "provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.' " *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Engineering, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).

Despite Buergofol's arguments to the contrary, courts with patent rules that instruct parties to submit "a chart identifying specifically where each element of each asserted claim is found" have held that the party "must *explain* how each [a]ccused [p]roduct is asserted to infringe each claim limitation." *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 708-09 (E.D. Tex. 2008) (emphasis added). For example, in *Shared Memory Graphics*, the California District Court found that a patentee had failed to submit a proper contention chart where the chart did not explain why or how the patentee knew a limitation was present in the defendant's products. 812 F. Supp. 2d at 1023, 1025-26. There, the local patent rule required the patentee to "provide a chart identifying *specifically where* each limitation of each asserted claim is found in

each accused product." *Id.* at 1024 (citing N.D. Cal. Pat. L.R. 3-1) (emphasis in original).

The *Shared Memory* court recognized while the local rule did "not necessarily require the patent holder to produce evidence of infringement, but it must map specific elements of [d]efendant['s] alleged infringing products onto the [p]laintiff's claim construction." *Id.* at 1025. Thus, the patent holder's infringement contentions were "too vague to provide fair notice as to what components . . . of the accused products infringe the[] patents" where the chart "fail[ed] to specifically identify" limitations found in the accused products. *Id.* at 1025-26. In regard to one limitation, the chart simply asserted that the limitation "may be buried under other wires inside of the integrated circuit." *Id.* at 1026. "Rather than provide a meaningful description of its theories, [plaintiff]'s vague contentions and conclusory statements invite[d] [the opposing party] and the [c]ourt merely to *assume* the presence of a [claim limitation]." *Id.* As such, the court found the disclosure fell short of the level of specificity required by the local patent rule. *Id.*

Similarly, here, some of Buergofol's infringement contentions flatly assert the presence of a claim element—calling on the court and Omega to take Buergofol at its word and assume Omega's product does contain such things. *See* Docket 396-1 at 18, 20. The court agrees that infringement contentions are not meant to serve as a tool to pre-try a case. *See* Docket 416 at 5-6. As such, a patent holder is not required to supply evidence to prove its infringement theories, but Buergofol must, at a *minimum*, disclose the factual basis of its

10

allegations. *See e.g.*, *Aim High Inv. Grp., LLC v. Spectrum Lab'ys, LLC*, 2023 WL 4296184, at *5 (D. Nev. June 30, 2023) ("[Plaintiff] is not obligated to prove its claim at this stage, it must at least provide the factual basis for this claim, whether it be advertising, testing, or some other source."); *Creagri, Inc. v. Pinnaclife Inc., LLC*, 2012 WL 5389775, at *3 (N.D. Cal. Nov. 2, 2012) (stating "[d]isclosure of the factual bases of its allegations is all that is required at this stage"); *Tessenderlo Kerley, Inc. v. OR-Cal, Inc.*, 2012 WL 1253178, at *2 (N.D. Cal. Apr. 13, 2012) (finding a chart inadequate where the "factual basis for plaintiff's assertion that the products do, in fact, infringe [a patent claim] was not disclosed" because "[b]road inferences cannot stand in place of factual information").

But Omega specifically calls the court to require Buergofol to provide test results to support the statements Buergofol made in its claim charts. *See* Docket 396 at 20 (requesting test results). As Buergofol notes, there is some disagreement between courts as to whether a patentee must submit test results. *See, e.g., Creagri*, 2012 WL 5389775, at *3. Even *Karmagreen, LLC v. MRSS Inc.*, which Omega relies heavily upon, requires only that the patentee identify the "type of analysis" that will show the presence of the claim element. 2021 WL 7709160, at *4 (N.D. Ga. Nov. 26, 2021); *see also* Docket 396 at 21-23 (Omega pointing to *Karmagreen*). Plenty of courts, however, have required plaintiffs to disclose test results if they have access to such results and rely on such results to support its infringement claims because it "must fairly be disclosed in order for defendant to prepare its defense." *Tessenderlo*, 2012 WL

11

1253178, at *3; *see also Infineon Techs. v. Volterra Semiconductor*, 2012 WL 4808445, at *3 (N.D. Cal. Oct. 9, 2012) (stating that an infringement contention chart "necessitates a level of detail that reverse engineering or its equivalent would provide"); *Tillotson Corp. v. Shijiazhaung Honray Plastic Prods., Ltd.*, 244 F.R.D. 683, 693 (N.D. Ga. 2007) ("To the extent that the plaintiff relies on that test data to support its infringement claims, fairness dictates that the defendants have access to that information in order to defend the claims made against them.").

In determining whether Buergofol must disclose things such as test results to create a factual basis for the statements in its infringement contentions, the court looks to the stage of this case. Generally, claim charts are completed within the first months of litigation to serve as a starting point and instill guiderails in the litigation. *See Implicit Networks Inc. v. Hewlett-Packard Co.*, 2011 WL 3954809, at *1 (N.D. Cal. Sept. 7, 2011) (stating the claim charts must be submitted "no later than 14 days after the [i]nitial [c]ase [m]anagement [c]onference") (citation omitted); *High 5 Games, LLC v. Marks*, 2018 WL 4462477, at *1 (D.N.J. Sept. 18, 2018) (requiring infringement contentions to be disclosed within 14-days of the initial scheduling conference). This case is far from its beginning stages and, as a result, Buergofol undoubtedly has far more information (supported by testing data) at its disposal than an average patentee in making its claim charts.

As such, the court finds that Buergofol may not " 'hide the ball' in its infringement contentions (or in any aspect of discovery, really) on the basis

that it is not *required* to prove up its infringement theory in those contentions." *Wilson Sporting Goods Co. v. Monsta Athletics, LLC*, 2020 WL 5835320, at \*2 (C.D. Cal. Feb. 19, 2020) (requiring the disclosures of testing results where it was clear that the plaintiff had indeed engaged in testing). Buergofol is required to "be as specific as reasonably possible in describing [its] infringement . . . theories in [its] contentions." *Id.*[1] To be clear, the requirement of disclosure is distinct from the requirement of proof—providing test results in this instance is not an avenue to pre-try the case. The *accuracy* of Buergofol's testing is not at issue. *See Tessenderlo*, 2012 WL 1253178, at \*4.

To conclude, the court finds that Buergofol must supplement its infringement contentions to include a factual basis for each of its assertions, including, if applicable, appropriate testing data.

## C. "Where" each element is found

Omega argues that Buergofol's infringement contentions are inadequate because Buergofol has failed to address critical claim elements and limitations. Docket 396 at 4. Buergofol defends its decision not to include such information because the elements do not have a physical location and the court's order only directs Buergofol to identify "where" such elements or limitations can be found. Docket 416 at 20-22 (Buergofol asserting it was not required to include

---

[1] It bears mentioning that, generally, test results are not protected by the attorney work-product doctrine. *See Tillotson*, 244 F.R.D. at 692; *Tessenderlo*, 2012 WL 1253178, at \*4.

references to "applied over" "opaque" and "tubular" in its chart because they have no physical location).

The court rejects Buergofol's obtuse interpretation of the court's order. *See Taction Tech. Inc. v. Apple Inc.*, 686 F. Supp. 3d 995, 1011-13 (S.D. Cal. 2023) (rejecting this argument and stating the plaintiff needs to do more than point to where a limitation is met, but also explain how the components satisfy the limitation). Paragraph 7 of the court's order requires Buergofol's chart to identify where each element is "found in each product, device, process, act, or method." Docket 136 at 9. As noted by Omega, processes, acts, and methods do not have a physical location. The court's order clearly anticipated the presence of non-physical attributes that should nevertheless be identified. Buergofol's disclosure obligations are not limited to pointing to physical locations of physical structures. Next, the court will address issues arising from the charts specific to each patent.

## II.    Specific Issues with the '882 Patent Chart

### A.  "Applied Over"

Omega argues that Buergofol failed to mention the "applied over" element of the wherein clause of claim 1 in the '882 Patent in its claim chart. Docket 396 at 25-26; Docket 436 at 14-20. Buergofol offers two reasons for why it did not include reference to the "applied over clause." Docket 416 at 20. First, Buergofol claims that "applied over" is functional, rather than structural, and thus lacks a physical location to which Buergofol can point. *Id.* at 20. The court dispelled this argument above. Second, Buergofol asserts that its chart

does not mention the clause because it does not apply to the Omega Liner. *Id.* According to Buergofol, claim 1 covers three embodiments, and the Omega Liner only constitutes one such embodiment that "does not include any coating that is applied over the external side." *Id.* at 20-21. Instead, Buergofol claims Omega's liners have only a "covering" created by a migrating compound. *Id.* at 21.

Omega disputes the interpretation of claim 1 that separates it into three distinct embodiments, but states that if Buergofol intends to operate on such a theory, it must include an explanation of it in the chart. Docket 436 at 18-19. The court agrees. Essentially, Buergofol's explanation for why the "applied over" reference is missing from its chart constitutes a theory of infringement, and as discussed above, the purpose of the chart is to put the opposing party on notice of infringement theories so it may adequately prepare a defense. Thus, if Buergofol intends to proceed on its three-embodiment interpretation in this matter, it must disclose and explain that theory in its chart.

### B. "Coating or Covering"

Omega also claims that Buergofol's infringement contentions are insufficient because they do not adequately address the "covering or covering" element of claim 1 in the '882 Patent. Docket 396 at 21-22; Docket 436 at 20. Omega states that even if Buergofol's three-embodiment theory—that the Omega product contains only a covering, not a coating—is included in the chart, the chart would still be woefully lacking in factual basis. Docket 436 at 20. Boiled down, Omega argues [that] Buergofol's infringement contentions fail

15

to explain "why Buergofol alleges that the accused products do have 'the recited' covering." *Id.* at 23. Buergofol's statements indicate that some of Omega's products have the covering while others do not, begging the question as to why that may be the case and how Buergofol made such a discovery. *See id.* at 22-23; Docket 396 at 23-24; Docket 396-1 at 4 (Buergofol indicating only 4 of the 11 tested samples have the required covering). Buergofol's only argument for withholding this information is that it need not disclose any information beyond the physical location of claim elements. *See* Docket 416 at 13, 18-19. The court already dismissed this argument and found that a factual basis must accompany Buergofol's assertions. Thus, Buergofol must explain how it knows the recited covering is present.

### C.  "Opaque" and "Tubular"

Omega also argues that Buergofol's chart is missing reference to the "opaque" and "tubular" limitations of the first element of claim 1 of the '882 Patent. Docket 396 at 26. Again, Buergofol argues that because these limitations "merely modify the recited external film" but are not themselves structures, Buergofol need only point to the location of the external film. Docket 416 at 21-22. The court rejects this argument. In order for Omega's product to infringe, it must have an external film that is both opaque and tubular; thus, Buergofol's claim chart must, at the very least, address how, if at all, the limitation is present in the Omega product.[2]

---

[2] Omega also generally alleges that the reminder of Buergofol's chart (including additional elements in claim 1 and the elements for dependent claims 3, 4, 5, 7, 10, and 11) for the '882 Patent is deficient because it lacks any reference to

16

### III.    Specific Issues with the '269 Patent Chart

Omega maintains that Buergofol's infringement contentions for the '269 Patent are lacking because Buergofol simply "repeats the claim language when describing where or how the claim element is allegedly found in the accused product(s)." Docket 396 at 27. Omega does not discuss these failures at length and Buergofol just repeats its claim that a factual basis is not required. *See id.* at 27-28 (Omega stating that in the interest of judicial economy it will not address each claim element); Docket 416 at 24-25 (Buergofol stating it need not disclose specific evidence). For the same reasons discussed above, the court finds Buergofol must disclose the factual basis for its infringement contentions to show that it has a reasonable chance of proving infringement. See *Shared Memory Graphics*, 812 F. Supp. 2d at 1025 (quoting *View Engineering,* 208 F.3d at 986) (requiring that infringement contentions "provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement' ").

### IV.    Multiple Claim Charts

Omega asserts that because it makes several versions of the Omega Liner, Buergofol should have created a separate claim chart for each individual version of the liner. Docket 396 at 29-30. Buergofol rejects this contention and

---

the factual basis underlying Buergofol's statements. Docket 396 at 27. Because Omega did not fully develop its argument with regard to each of the claimed shortcomings, the court merely reiterates its instruction that Buergofol's chart must disclose its theories of infringement and be accompanied by the factual basis it has relied upon in forming those theories.

argues that Omega produces only one product—the Omega Liner—which is properly captured by individual claim charts. Docket 416 at 26-30.

The court's order stated that "for each claim, each product, device, process, act, or method it alleges infringes ("Accused Product"), [Buergofol must submit] a chart identifying where specifically each element of each asserted claim listed is found in each product, device, process, act, or method." Docket 136 at 9. Courts with patent rules that make the same requirement have recognized that "claim charts can, in appropriate cases and given appropriate support, place accused products into representative categories." *Bluestone Innovations LLC v. Nichia Corp.*, 2013 WL 8540910, at *1 (N.D. Cal. Sept. 25, 2013).

But "[i]f the plaintiff goes this route, it must 'articulate how the accused products share the same, or substantially the same, infringing qualities with [the] . . . representative product.' " *FaceTec, Inc. v. iProov, Ltd.*, 2024 WL 5046418, at *4 (D. Nev. Dec. 6, 2024) (quoting *Silicon Labs. Inc. v. Cresta Tech. Corp.*, 2015 WL 846679, at *1-2 (N.D. Cal. Feb. 25, 2015)). And the "representative-product analysis must be contained in the infringement contentions as opposed to later briefings" because producing the analysis in later briefings "would not support the early disclosure and crystallization of a plaintiff's case theories." *Id.* at 5; *see also Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 1517920, at *15 (N.D. Cal. Apr. 2, 2015) (stating that a chart was inadequate because a representative-product analysis "should have been

18

provided in [the chart]" and the plaintiff may not "informally supplement [its infringement contentions] after the fact . . . through briefing to the [c]ourt").

The court will address the chart specific to each patent in turn.

### A. The '882 Patent

Omega makes two relevant versions of its liner—the Viaflex Version (made with inner film manufactured by Viaflex) and the Sudpack Version (made with inner film manufactured by Sudpack). Docket 396 at 29.[3] Omega argues that Buergofol needs to make a chart specific to each version. *Id.* In response, Buergofol states that it need not supply a chart based on the manufacturer film used in the liners because paragraph 7 of the court's order requires only that Buergofol provide a chart for each "product" that Buergofol alleges infringes. Docket 416 at 26. Buergofol asserts that because Omega only produces one "product," the Omega Liner, Buergofol only needs to complete one chart. *Id.* at 26-27.

Here, Buergofol failed to include any argument or factual basis as to why both the Sudpack and Viaflex versions of the Omega liner "share the same, or substantially the same, infringing qualities" in its infringement contentions. *FaceTec*, 2024 WL 5046418, at *4 (cleaned up and citation omitted); *see*

---

[3] In its initial brief, Omega argues that Buergofol should provide charts for all five variations of the Omega Liner. Docket 396 at 29. The third, fourth, and fifth variation of the product is produced using film from Buergofol. *Id.* But in its response, Buergofol made clear that it is not alleging any Omega Liner made with Buergofol film infringed the '882 Patent. Docket 416 at 27. In its reply, Omega stated it agreed that the Buergofol-film versions of the Omega Liner do not need to be charted and limited its arguments to the Sudpack and Viaflex versions of the Omega Liner. Docket 436 at 27-29.

*generally* Docket 396-1. In its briefing, Buergofol generally asserts that "[t]o the extent that [the] two 'versions' of Omega Liner made with Viaflex inner film and Sudpack inner film both include all elements of a particular claim, the same chart applies to both versions." Docket 416 at 27-28.

This may be true, but Buergofol has left both Omega and the court to take its statements at face value with no evidence to support its proposition that the Sudpack and Viaflex versions in fact share the same infringing qualities. *Bluestone*, 2013 WL 8540910, at *1-2 (finding that the plaintiff had failed to show that the charts were representative of all accused products because plaintiff "merely state[d] its belief" that the products were representative without providing any support). And frankly, Buergofol's own argument casts doubt on its claim that the versions are representative of each other, because, as Buergofol stated, there is variation of infringing qualities even in samples of the liner made by the same manufacturer. Docket 416 at 28 (Buergofol stating that determining whether an "instance of OMEGA LINER include[d] a covering of migrating compound is not based solely on the manufacturer of the inner film because some instances with Viaflex inner film have a covering of migrating compound" while others do not.). Moreover, in the past, Buergofol has opposed the implication that liners made with inner film from different manufactures have the same structure and composition. Docket 398 at 28 (Buergofol stating that "Omega's assertion is *factually incorrect that the structure and composition of each version of Omega Liner does not differ for purposes of an infringement analysis.*") (cleaned up and emphasis added).

20

Thus, the court finds, based on Buergofol's own statements, that there may be a meaningful difference between different versions of the Omega Liner. Buergofol must either include a representative-product analysis in its infringement contentions (accompanied with a factual basis) or include separate charts for each version.

## B.  The '269 Patent

Omega asserts that Buergofol's chart for the '269 Patent is improper because it combines reference to the Buergofol 5-Layer Version and the Buergofol 7-Layer Version of the Omega Liner in such a way that "Omega is unable to understand Buergofol's infringement theories for each version." Docket 396 at 31. Buergofol argues that its chart for the '269 Patent is properly construed as separate charts that apply to separate claims that are relevant to the distinct versions. Docket 416 at 29-30.

The court agrees with Omega. Because Buergofol stated that it has crafted sections of the chart that apply to only one of the versions, Buergofol seems to admit that the 5-Layer and 7-Layer Versions do not "share the same, or substantially the same, infringing qualities." *FaceTec*, 2024 WL 5046418, at *4 (cleaned up); *see also Vigilos LLC v. Sling Media Inc*, 2012 WL 9973147, at *5 (N.D. Cal. July 12, 2012) (requiring separate charts where the products "appear to differ from each other or at least fall into two or more different categories"). Thus, it appears that the versions should properly be separated into their own charts. Separating the charts will also serve to further crystalize Buergofol's infringement theories, which are murky in the mashed-together version of

21

Buergofol's chart. *See* Docket 416 at 29 (Buergofol arguing in its opposition brief that the first two PE layers are "additional layers" and the third layer is a layer, when this theory does not appear in its infringement contentions).

To conclude, Buergofol must either separate its chart to address the two versions in turn or include in its infringement contentions a representative-product analysis.

## V.    Doctrine of Equivalents

Omega also argues that Buergofol has failed to properly assert a claim of infringement under the doctrine of equivalents. Docket 396 at 31-32. Buergofol does not dispute that its doctrine of equivalents "analysis" is a placeholder, rather than an actual analysis. *See* Docket 416 at 31-32. Instead, Buergofol maintains that "[i]t is unreasonable to force the patentee to prepare involved function/way/result analysis for several claim elements early in the case that will never be used if the [court's] claim construction ruling construes the claim terms as the patentee proposes." *Id.* Buergofol asserts that, if after the court issues its claim construction ruling, a need to argue the doctrine of equivalents arises, there would be good cause to amend its contentions and provide an appropriate function/way/result analysis. *Id.* [4]

Courts generally require that "in order to properly assert an infringement theory under the doctrine of equivalents . . . a patentee must provide a limitation-by-limitation analysis as to why and how there is infringement under

---

[4] Notably, Buergofol cites no authority for this proposition beyond the California local patent rule stating that amendment may be made upon a showing of good cause. *See* Docket 416 at 31.

the doctrine of equivalents." *Pelican Int'l, Inc. v. Hobie Cat Co.*, 2023 WL 2127995, at *5 (S.D. Cal. Feb. 10, 2023) (cleaned up and citation omitted). "[I]n infringement contentions, 'a party looking to rely on equivalents still has to describe *how* [the function/way/result or insubstantial differences] requirements are met.' "*ASUS Comput. Int'l v. Round Rock Rsch., LLC*, 2014 WL 1463609, at *3 (N.D. Cal. Apr. 11, 2014) (quoting *Dynetix Design Sols., Inc. v. Synopsys, Inc.,* 2013 WL 4537838, at *1 (N.D. Cal. Aug. 22, 2013)). Blanket statements are not acceptable. *See OptimumPath, LLC v. Belkin Int'l, Inc.,* 2011 WL 1399257, at *8 (N.D. Cal. Apr. 12, 2011) *aff'd,* 466 Fed. Appx. 904 (Fed. Cir. 2012) (finding that "blanket statements" that did not link similarities to particular claims or limitations barred a claim under the doctrine of equivalents)*; Creagri, Inc.,* 2012 WL 5389775, at *6 (stating that the plaintiff "cannot merely add boilerplate language asserting that the doctrine of equivalents has been met as an alternative theory").

To be clear, the court's order explicitly states that "[i]f Buergofol asserts that any element of any claim is present under the doctrine of equivalents, it *must* explain each function, way, and result that is equivalent and why any differences are not substantial." Docket 136 at 9 (emphasis added). So, while Buergofol complains about Omega's use of out-of-district cases to support the argument that patentees cannot use doctrine of equivalents as a placeholder, Docket 416 at 30-31, the court's order itself leaves nothing to interpretation—if Buergofol puts forth a doctrine of equivalents argument, it must complete a function/way/result analysis. Here, Buergofol has undeniably failed to do so.

23

Thus, if Buergofol wants to proceed on this theory, it must comply with the dictates of the court's order.

## VI.    Induced Infringement

Omega claims that Buergofol's infringement contentions are insufficient as to Buergofol's allegation that Omega induced its customers to infringe the '882 and '269 Patents. Docket 396 at 32-33; Docket 436 at 33. Buergofol states that because the court's order did not specifically order Buergofol to disclose its induced infringement theory, Buergofol need not disclose it in any detail. *See* Docket 416 at 32-34 (noting that the word "induced" does not appear in the court's order).

The court rejects Buergofol's argument. As explained at length above, the court ordered the disclosure of infringement and non-infringement contentions for the express purpose of forcing the parties to show their hands and disclose their theories of the case. *See* Docket 136 at 4 (stating that the purpose of serving infringement contentions is to "force each side to show its cards" and "require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction") (citations omitted). This case is far from its procedural infancy. If Buergofol intends to proceed on a theory of induced infringement it must disclose that and provide its factual basis for its belief.

## VII.    Request to Stay Discovery

Omega requests that discovery be stayed until Buergofol appropriately amends its infringement contentions. Docket 396 at 33. Given the laundry list

of discovery issues and delays in this case, the court denies the request. The court has a duty to see to the speedy determination of every action and this matter cannot withstand additional delays.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Omega's motion to compel Buergofol to amend its infringement contentions (Docket 395) is GRANTED. Buergofol must amend its infringement contentions to comply with this order within 30 days.

DATED February 6, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE