UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br>ORDER GRANTING MOTION TO COMPEL |

Defendant, Omega, moves to compel the United States Customs and Boarder Protection (CBP) to respond to a subpoena. Docket 422. The CBP opposes the motion. Docket 475. The court issues the following order.

## BACKGROUND

On April 1, 2024, Omega served a subpoena on CBP, requesting "all documents and things that relate to the importation of goods into the United States from January 1, 2000 to December 31, 2014" from Buergofol, Saertex, Brandenburger, Sudpack, Huhtamaki, Reline, Impreg, Light Stream, International Pipe Lining, and Monte Vista. Docket 424-1 at 12-14. Omega's request encompassed documents "identifying [the named entity] as the shipper, cosignee, recipient, or destination of the goods." *Id.* at 13. Omega states that it needs this information for its invalidity defenses—namely to show that the inventions covered by the '269 and '882 patents were on sale in the United States before the critical date of the respective patents. Docket 423 at 7. CBP

responded on April 22, 2024, requesting additional information pursuant to 19 C.F.R. §§ 103.22 (c), (d)[1]. *Id.* Omega attempted to contact counsel for CBP to discuss the information Omega sought, but Omega did not hear back. Docket 424-2 at 2; Docket 424-5.

Omega submitted the requested materials on May 8, 2024, provided additional information regarding the "general considerations" CBP would have to evaluate under 19 C.F.R. §103.23 to determine whether to disclose documents, and extended the return date of the subpoena until May 31, 2024. Docket 424-3 at 1-4. In its submissions, Omega explained that its request:

> [i]s now limited to the manifests, applications, other forms of merchandise release, commercial invoices, pro forma invoices, and packing lists or the information these documents contain in document form or as electronically stored information (ESI) for each of the companies identified in the subpoena as "shippers" of the goods or "recipients" of the goods for the time period from January 1, 2000 to December 31, 2014 in electronic or document format. And those documents or other information that would render the information produced self-authenticating.

*Id.* at 9.

On May 22, 2024, CBP sent a letter to Omega in which it stated that the subpoena had been reviewed under CBP's *Touhy* regulations and that CBP had determined it would not comply with the request. Docket 424-4. Specifically, CBP stated that disclosure was not authorized under 19 C.F.R. §§ 103.23

---

[1] Under 19 C.F.R. § 103.22 (c), a party requesting information from the CBP must "serve . . . the demand, a copy of the Summons and Complaint, and provide an affidavit, or . . . a statement that sets forth a summary of the documents or testimony sought and its relevance to the proceeding." This information "must be served [on the CBP] at least ten (10) working days prior to the scheduled date of the production of the documents." 19 C.F.R. § 103.22 (d).

2

because (1) "disclosure would violate the Trade Secrets Act" and (2) "disclosures would improperly reveal confidential commercial information without the owner's consent." *Id.* at 3 (quoting 19 C.F.R. §§ 103.23(b)(1) and (6)) (cleaned up). CBP explained that the Trade Secrets Act bars government officials from disclosing trade secret information in order to "shield the owner of the information from competitive disadvantage." *Id.* Thus, "[b]ecause [Omega was] requesting entry information from other importers" the CBP determined that it would not comply with the subpoena "since the requested information constitutes confidential commercial information." *Id.*

CBP also stated that it is not authorized to comply with a subpoena because "disclosure would unduly interfere with the orderly conduct of CBP business" and "CBP has no interest regarding the matter in which disclosure is sought." *Id.* The CBP clarified that it cannot waste resources being a litigant's "source of first resort for evidence in third-party litigation" that "benefits neither CBP nor the taxpayer." *Id.*

After receiving this letter, Omega asked CBP to reconsider, arguing that import records are not trade secrets and highlighted that CBP's reasons for refusing to comply with the subpoena were not supported by facts or a sufficient explanation. *See* Docket 424-5. CBP did not respond. Omega now moves to compel CBP to provide the documents pursuant to the subpoena. Docket 422. Omega asserts that CBP's decision not to comply with Omega's request was "arbitrary, capricious, and not in accordance with [CBP's] own

3

regulations" and should be set aside. Docket 423 at 6. CBP contends that its decision was reasonable in light of the facts presented. Docket 475 at 11.

I.     **Validity of the Subpoena**

CBP argues that the court lacks the appropriate authority to enforce the issued subpoena. Docket 475 at 5-6. First, CBP contends that because the subpoena was issued by the United States District Court in South Dakota and was served at the CBP's Office of Chief Counsel in Washington D.C., it exceeds the subpoena power of Federal Rule of Civil Procedure 45. *Id.* Second, CBP argues that because the subpoena calls for the delivery of documents to Sioux Falls, South Dakota, *see* Docket 424-1 at 2, it falls outside of Rule 45's 100-mile geographical limit, Docket 475 at 5-6. Both of CBP's arguments are unavailing.

As to CBP's first argument, CBP relies on *Anderson v. Government of Virgin Islands* for the proposition that a court "cannot order a non-party outside of its jurisdiction to produce documents." *Id.* at 5 (quoting *Anderson v. Gov't of Virgin Islands*, 108 F.R.D. 284, 289 (D.V.I. 1998)). CBP asserts that because the subpoena was issued by the South Dakota District Court, which is over 100 miles from Washington D.C., the subpoena is beyond the jurisdictional reach of this court. *Id.* This interpretation is correct under the pre-amended version of Rule 45. *See Int'l Seaway Trading Corp. v. Target Corp.*, 2021 WL 672990, at *4 (D. Minn. Feb. 22, 2021) (stating that "[p]rior to the 2013 amendments, a subpoena could . . . only be served: at any place within the district of the court that issued it[ or] any place outside the issuing district,

but within 100 miles of the place of the deposition). But in 2013, Rule 45 was amended to allow a subpoena to "be served at any place within the United States." Fed. R. Civ. P. 45(b)(2). "Under the current version of Rule 45(b)(2) permitting nationwide service of a subpoena . . . [there is] no barrier to enforcement of the subpoena in this case based on any problems with the location of service." *Int'l Seaway*, 2021 WL 672990, at *4 (holding that a subpoena issued from a Minnesota District Court and served in St. Louis, Missouri was within the court's jurisdictional reach under Rule 45).

Turning to CBP's second argument, CBP asserts that Rule 45's geographical limits for document production render the subpoena invalid. Docket 475 at 5-6. Under Rule 45, a subpoena may command "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). CBP argues that because the subpoena calls for the documents to be delivered to Sioux Falls, South Dakota, which is over 100 miles from Washington, D.C., the subpoena is defective and should be dismissed. Docket 475 at 5-6; *see also* Docket 424-1 at 2.

There are several issues with this argument. First, the "reality is that in today's age, the purpose of the 100-mile limit is minimized" by modern electronic document production and the mail system. *Henry Schein, Inc. v. Drea*, 2022 WL 18584628, at *3 (S.D. Iowa May 31, 2022). After all, the purpose of Rule 45(c) is to lessen the burden on non-parties having to travel in

5

order to comply with subpoenas. *See id.* But travel is not an issue when the subpoena calls for document production rather than a non-party's presence at a deposition site or trial. *See id.; see also In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 872 (8th Cir. 2000) (indicating that subpoenas for document production do not require strict compliance with Rule 45's geographical limits because "the burden of producing documents need not increase appreciably with an increase in the distance those documents must travel"). As such, courts have held that subpoenas are valid even when they call for the production of documents over 100-miles away, because such subpoenas do not burden non-parties with travel. *Henry Schein,* 2022 WL 18584628, at *3 (collecting cases); *see also Int'l Seaway*, 2021 WL 672990, at *6 (D. Minn. Feb. 22, 2021) (enforcing a subpoena that called for a remote deposition because, although the deponent would be over 100-miles away, he would not be required to travel, which alleviated the concern Rule 45 was intended to prevent).

Second, the court is not convinced that the subpoena truly calls for the production of documents outside of Rule 45's territorial range. As stated above, Rule 45 allows for production "at a place within 100 miles of where the person[2] resides, is employed, or regularly transacts business in person." Fed. R. Civ. P.

---

[2] CBP does not contest that it is a "person" within the meaning of Rule 45. *Upsher-Smith Lab'ys, Inc. v. Fifth Third Bank*, 2017 WL 7369881, at *6 (D. Minn. Oct. 18, 2017) ("Rule 45 may nonetheless apply because federal agencies are within the meaning of the term 'persons' in the text of the Rule and thus are covered by its provisions.").

45(c)(2)(A). As Omega notes, CBP "transacts business" all over the United States at different ports of entry, including at the Sioux Falls Regional Airport. *See* 19 C.F.R. § 101.3 (listing Sioux Falls, South Dakota as a port of entry); 6 U.S.C. § 211(k) (stating that the Commissioner for the CBP shall establish "standard operating procedures for . . . U.S. Customs and Border Protection personnel at United States ports of entry").

And third, if "nonparties feel slighted by the designated place of compliance, Rule 45(c) is the clear avenue to challenge the location." *Henry Schein,* 2022 WL 18584628, at *3 (citation omitted); *see also Merch. Consulting Grp., Inc. v. Beckpat, LLC*, 2018 WL 4510269, at *1 (D. Mass. July 11, 2018) (stating that the subpoena is not invalided by an objection based on the 100-mile rule because it was not timely raised); *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 407-08 (N.D. Ala. 2014) (stating that because a subpoenaed party did not challenge the subpoena under Rule 45(c), such concerns with the 100-mile limit should not be addressed in a motion to compel). Thus, the court finds that CBP raising this issue at the eleventh hour, in a responsive brief no less, is unpersuasive, particularly when CBP has not argued that delivering documents beyond Rule 45's 100-mile limitation would be a burden. *See Henry Schein,* 2022 WL 18584628, at *3 (refusing to dismiss a subpoena based on the non-party's failure to raise the 100-mile rule issue until responding to the motion to compel).

## II.  Sovereign Immunity and *Touhy*

When a federal agency is served with a non-party subpoena, the court must first consider whether it has jurisdiction over the discovery request in light of the doctrine of sovereign immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). Generally, the United States may not be subject to judicial proceedings unless it has unequivocally consented to such proceedings. *See id.; Block v. North Dakota*, 461 U.S. 273, 287 (1983).

Congress, through the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, waived sovereign immunity of the United States "with regard to all actions that seek 'relief other than money damages.' " *Linder v. Calero–Portocarrero*, 251 F.3d 178, 180 (D.C. Cir. 2001) (quoting *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774, 779 n.9 (9th Cir. 1994)). "Because a motion to compel is an action that seeks relief other than money damages, the government consents to it under the express terms of the APA." *Upsher-Smith Lab'ys, Inc. v. Fifth Third Bank*, 2017 WL 7369881, at *5 (D. Minn. Oct. 18, 2017). Thus, as the Eighth Circuit has recognized, "the federal government's sovereign immunity is significant, but it does not give the Executive Branch a 'blank check' to ignore third-party subpoenas because the agency response may be judicially reviewed under the Administrative Procedure Act, 5 U.S.C. § 702." *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1104 (8th Cir. 2012); *Linder*, 251 F.3d at 180 ("Third-party subpoenas do not seek damages and so the court held that federal agencies must comply with Rule 45 subpoenas

8

unless the district court, exercising its discretion under the protective provisions of Rules 45 and 26, relieves them of that obligation.").

In short, the court has jurisdiction to compel CBP to produce the information requested in the subpoena, provided Omega can establish such information was improperly withheld.

Although sovereign immunity does not shield federal agencies from being compelled to produced information requested pursuant to a subpoena, the federal "housekeeping" statute, 5 U.S.C. § 301, authorizes federal agencies to adopt regulations that govern "the conduct of [their] employees . . . and the custody, use, and preservation of [agency] records, papers, and property." 5 U.S.C. § 301. Regulations adopted under the federal housekeeping statute are referred to as *Touhy* regulations, which comes from the Supreme Court decision in *United States ex rel. Touhy v. Ragen. See* 340 U.S. 462 (1951) (upholding the validity of agency regulations under 5 U.S.C. § 301 and holding a federal employee could not be held in contempt for refusing to comply with a subpoena when disclosure would run contrary to the agency regulations). "*Touhy* regulations[] enable federal agencies to restrict the types of information that its employees may produce in response to a Rule 45 subpoena." *Upsher-Smith Lab'ys,* 2017 WL 7369881, at *5. And "[a]lthough *Touhy* regulations do not supersede the Federal Rules of Civil Procedure, they are enacted in part to dictate how an official should respond to a subpoena, and sometimes contain specific direction restricting agency officials from producing privileged or confidential information." *Id.*

9

Pursuant to *Touhy* and the federal housekeeping statute, CBP has promulgated its own regulations dictating the procedures for responding to subpoenas in 19 C.F.R. §§ 103.22-23. Under 19 C.F.R. § 103.22(a), CBP maintains a general prohibition against disclosure, unless a request is approved by the Chief Counsel. In determining whether to grant the request, the Chief Counsel should consider the following factors:

> (1) Whether the disclosure would be appropriate under the relevant substantive law concerning privilege;
> (2) Whether the disclosure would be appropriate under the rules of procedure governing the case or matter in which the demand arose; and,
> (3) Whether the requesting party has demonstrated that the information requested is:
> > (i) Relevant and material to the action pending, based on copies of the summons and complaint that are required to be attached to the subpoena *duces tecum* or other demand;
> > (ii) Genuinely necessary to the proceeding, *i.e.*, a showing of substantial need has been made;
> > (iii) Unavailable from other sources; and,
> > (iv) Reasonable in its scope, *i.e.*, the documents, information, or testimony sought are described with particularity.
> (4) Whether consultation with the originating component requires that the Chief Counsel make a separate determination as to the disclosure of the information requested.

19 C.F.R. § 103.23(a); *see also* 19 C.F.R. § 103.22(c) (stating that production is only permitted when the following factors are met). Disclosure is not authorized if

> (1) Disclosure would violate a treaty, statute (such as the Privacy Act, 5 U.S.C. 552a, the Trade Secrets Act, 18 U.S.C. 1905, or the income tax laws, 26 U.S.C. 6103 and 7213), or a rule of procedure, such as the grand jury secrecy rule, Fed. R. Crim. Proc. rule 6(e) (18 U.S.C. App.);
> (2) Disclosure would violate a specific regulation;
> (3) Disclosure would reveal classified or confidential information;
> (4) Disclosure would reveal a confidential source or informant;

10

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, interfere with enforcement proceedings, or disclose investigative techniques and procedures;
(6) Disclosure would improperly reveal confidential commercial information without the owner's consent (*e.g.*, entry information);
(7) Disclosure relates to documents which were produced by another agency or entity;
(8) Disclosure would unduly interfere with the orderly conduct of CBP business;
(9) CBP has no interest, records, or other official information regarding the matter in which disclosure is sought;
(10) There is a failure to make proper service upon the United States; or
(11) There is a failure to comply with federal, state, or local rules of discovery.

19 C.F.R. § 103.23(b).

### III. Legal Standard

Next, the court must determine whether to review CBP's decision not to comply with the subpoena under the Federal Rules of Civil Procedure or the APA. Here, Omega applies both standards in arguing that CBP should be compelled to produce the responsive documents. Docket 423 at 4. Omega claims that under either approach, the result is the same—CBP must turn over the documents. *Id.* CBP asserts that the court may only evaluate this issue under the arbitrary and capricious standard set forth under 5 U.S.C. § 706(2)(A). *Id.*

The circuits are split on this issue. The Ninth and D.C. Circuits review agency decisions to withhold information under the Federal Rules of Civil Procedure. *See Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007)*; Exxon Shipping Co.*, 34 F.3d at 774. By contrast, the First, Second, Fourth, Seventh, and Eleventh Circuits hold that courts should review such agency decisions under

11

the APA's arbitrary and capricious standard. *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 316 (7th Cir. 1994); *E.P.A. v. Gen. Elec.*, 197 F.3d 592, 599 (2nd Cir. 1999); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991). The Eighth Circuit has not weighed in on this issue, but in *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046 (8th Cir. 2007), the Eighth Circuit upheld a district court's order compelling a federal agency to produce subpoenaed documents after the lower court had applied the arbitrary and capricious standard, though the circuit court did not explicitly hold that § 706 applied. *See Upsher-Smith Lab'ys,* 2017 WL 7369881, at *7 (evaluating the Eighth Circuit's decision in light of the underlying decisions).

But because the arbitrary and capricious standard is more deferential to the agency, *id.* at 6, and because the court agrees with Omega that the result would be the same under either approach in this situation, the court will apply the § 706(2)(A) arbitrary and capricious standard. *See Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 458 (E.D.N.Y. 2011) (noting the circuit split but stating that "because the Court would reach the same result under either standard, it is unnecessary to decide which standard of review is applicable").

### A. Arbitrary and Capricious Standard

"Under the APA, a reviewing court sets aside an agency action if that action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Firearms Regul. Accountability Coal., Inc. v. Garland*,

12

112 F.4th 507, 519 (8th Cir. 2024) (quoting 5 U.S.C. § 706(2)(A)). This standard "requires that agency action be reasonable and reasonably explained." *Id.* (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). A decision is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*McClung v. Paul*, 788 F.3d 822, 828 (8th Cir. 2015) (internal quotation marks omitted). When a court conducts this analysis, it "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Ins. Co.*, 463 U.S. 29, 43 (1983). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Firearms Regul.*, 112 F.4th at 519 (internal quotation marks omitted).

In short, a court may only find that an agency's decision is arbitrary or capricious when it fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs.*, 463 U.S. at 43 (citation omitted). If the agency acted reasonably under the circumstances and reached a plausibly justifiable decision after following the appropriate processes and considering the appropriate factors, the court must uphold the decision. *See id*; *Foster v. Vilsack*, 820 F.3d 330, 333 (8th Cir. 2016).

**DISCUSSION**

Omega argues that CBP's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Docket 423 at 10. CBP asserts that it properly considered the relevant factors under 19 C.F.R. § 103.23 and 19 C.F.R. § 103.22, in deciding that disclosure was improper and that "CBP made clear the basis of its reasoned decision" in its response to Omega. Docket 475 at 9; *see also* Docket 424-4.

In stating that it would not comply with Omega's subpoena or *Touhy* request, CBP provided two reasons for its decision: (1) disclosure would violate the Trade Secrets Act and improperly reveal confidential commercial information without the owner's consent, and (2) disclosure would interfere with the orderly conduct of CBP business. Docket 424-4. The court will address each of the listed reasons in turn.

**A. Disclosure of Trade Secrets**

In its May 22, 2024, letter, the CBP told Omega that it was not authorized to disclose the requested information because "such information relates to trade secrets" and "confidential commercial information." Docket 424-4 at 3. Omega asserts that this conclusion is unreasonable because it fails to properly consider the relevant facts—namely, the existence of a protective order in this case. Docket 423 at 11-12; Docket 493 at 9. According to Omega, the protective order in this case, which allows both parties and non-parties to designate documents as "confidential" or "highly confidential—attorney's eyes only," *see* Dockets 131, 655, would prohibit use of the materials for any

14

competitive purposes, Docket 423 at 11. Omega points to *Grupo Petrotemex, S.A. De C.V. v. Polymetrix AG*, 2018 WL 5307823, at *7 (D. Minn. Oct. 26, 2018) to support this proposition. *Id.* at 13-14. There, the district court found that CBP had not "reasonably considered whether there could be a proper disclosure of the confidential commercial information, and specifically whether proper disclosure could be effectuated by a protective order." *Grupo Petrotemex*, 2018 WL 5307823, at *7 (cleaned up and internal citations omitted). As such, the court found that "CBP failed to articulate why producing the information under the protective order . . . would be improper, and [held] that in refusing to comply with the . . . subpoena on grounds of confidentiality, CBP fail[ed] to provide a 'rational connection between the facts found and the choice made.' " *Id.* (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43.); *see also L1 Techs., Inc. v. U.S. Customs & Border Prot.*, 2020 WL 1701691, at *10 (S.D. Cal. Apr. 8, 2020) (denying a motion to compel disclosure by CBP where CBP addressed the issue of a protective order and found that it would not shield sensitive information).

Here, in its May letter, CBP also neglected to address the application of a protective order to its determination that disclosing the requested information would "subject the owner of the information to a competitive disadvantage" or "improperly" reveal confidential information. Docket 424-4. CBP argues that the *Grupo Petrotemex* decision is factually distinguishable because there, the requested information was limited in nature and the decision did not reach the issue of "how disclosure under a protective order could embroil the government in private litigation for years." Docket 475 at 11.

15

But CBP's issues with the *Grupo Petrotemex* decision can be applied in equal force to its own determination not to disclose the subpoenaed information. In order to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made," CBP should have addressed *both* the application of the protective order and, if necessary, its limitations and the potential for roping the government into years of private-party litigation. *Motor Vehicle Mfrs.*, 463 U.S. at 43. It failed to do so. And importantly, even now, CBP does not argue that a protective order would not adequately protect disclosed information from improper, competitive uses. *See* Docket 475. Instead, CBP reads a continuing obligation of monitoring the discussion, use, and maintenance of the information into 19 C.F.R. § 103.23(b)(1) and (6) that is not readily apparent nor supported by caselaw.

Additionally, even to the extent that CBP did address the existence of trade secret and confidential information in its letter explaining its decision to not produce the requested documents, CBP did not address why *all* of the information falls within that definition. In fact, as noted by Omega, some of the requested documents appear to be publicly available. *See* 19 C.F.R. § 103.31 (providing a list of 22 information items that can be disclosed to the public). CBP argues that disclosures under § 103.31 are still subject to confidentiality restrictions. Docket 475 at 12-13; *see also* 19 C.F.R. § 103.31(e)(3) (stating information types 13-18 (inclusive) are deleted where confidentially is requested). But where plaintiffs have identified several pieces of the sought information in the public domain, "CBP should have explained why certain

16

aspects of the information sought were still confidential and not subject to disclosure." *See Grupo Petrotemex,* 2018 WL 5307823, at *7. Instead, CBP now states that because Omega's subpoena seeks "vessel manifests," which are explicitly not publicly available, it cannot make any disclosures. Docket 475 at 13; 19 C.F.R. § 103.31(d). Omega counters in stating that the majority of the information it seeks is listed in the 22 data elements provided in 19 C.F.R. § 103.31(e)(3) and the fact that some of the requested information is not available to the public does not excuse CBP from refusing to produce *any* responsive documents.[3] Docket 493 at 8. The court agrees with Omega—CBP's decision on this issue was not reasonable in light of the relevant facts.

### B. Burden on CBP

In its letter denying Omega's subpoena request, CBP stated that complying with the document request would "unduly interfere with the orderly conduct of CBP business" and that CBP "has no interest regarding the matter which disclosure is sought." Docket 424-4 at 3. CBP explained that it could not be the "first resort"[4] for the sought information and that it should not use its limited resources for causes that do not benefit the taxpayer. *Id.* at 3-4.

---

[3] CBP argues that if Omega wanted the information listed under 19 C.F.R. § 103.31(e)(3), it should have filed a request pursuant to the statute. Docket 475 at 12. But CBP does not cite any authority for the proposition that Omega cannot seek the same information through a subpoena. *See id.*

[4] CBP states that it cannot be the first resort, but at the beginning of its letter seems to recognize that Omega is requesting the records because it has already tried to obtain the records from plaintiff, Buergofol, to no avail and Omega cannot obtain the records from the third-party businesses themselves because (1) the United States companies have gone out of business and (2) the German-based companies cannot be compelled to produce documents. *See* Docket 424-

Omega responds that it is only seeking minimal data—records regarding roughly ten importers over a span of twelve years—that CBP has already collected and maintains. Docket 493 at 10. Thus, Omega asserts that the burden to gather such information would be limited. *Id.; see also* Docket 423 at 15 (pointing to a number of CBP regulations ordering the collecting and maintaining of certain data). Omega also notes that it is likely some of the companies have no import records to report, or very few. Docket 493 at 10; Docket 423 at 16. Omega also asserts that taxpayers have a vested interest in removing invalid patents from the public arena. Docket 423 at 16.

Generally, "[c]ourts should defer to the agency on how to best use its resources as they are in the best position to determine how much time and effort would be involved considering its ability to comply." *Benhoff v. United States Dep't of Just.*, 2017 WL 840879, at *5 (S.D. Cal. Mar. 3, 2017). But here, CBP's letter does not mention that it will be time consuming or burdensome to produce the documents nor does CBP argue that is the case in its briefing. *See* Docket 424-4. Additionally, though a taxpayer's interest in removing invalid patents from the public sphere is an attenuated one, it is at least clear that the general public has an interest in speedy, fair litigation. This case has been pending for a number of years and Omega has made clear that the CBP is its last resort for obtaining this data, which may serve to invalidate the patents at

---

4 at 2-3. Thus, it seems even CBP acknowledges that it is not Omega's first resort.

issue and resolve this case. Thus, the court finds CBP's decision was arbitrary and capricious and grants Omega's motion to compel.

## CONCLUSION

Based on the foregoing it is

ORDERED that Omega's motion to compel (Docket 422) is GRANTED. CBP must comply with the subpoena by April 19, 2025.

Dated March 19, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE