UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>                              Plaintiff,<br><br>          vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>                              Defendant. | 4:22-CV-04112-KES<br><br>ORDER DENYING BUERGOFOL'S MOTION TO COMPEL AND DENYING OMEGA'S MOTION TO STRIKE |

     Plaintiff, Buergofol, moves to compel defendant, Omega's, response to Interrogatory No. 12 (hereinafter, No. 12). Docket 444. Omega opposes the motion. Docket 477. Omega also moves to strike the sur-surreply brief that Buergofol filed in connection with the underlying motion. Docket 533. The court issues the following order.

**BACKGROUND**

     On October 19, 2023, Buergofol served No. 12 on Omega. Docket 445-1. No. 12 includes a table indicating the wet-out serial numbers for roughly 2,000 liners Omega had made up to the date that the interrogatory was served. *Id.* For each listed wet-out number, Buergofol requested that Omega supply the liner's corresponding (1) inner film manufacturer, (2) sales revenue, (3) length, and (4) purchaser. *Id.* at 3-46. Omega responded on November 20, 2023. Docket 445-2. In its initial response, Omega made a number of general objections. Omega argued that the table constitutes more than a single

interrogatory, and therefore exceeds the interrogatory limit, and that No. 12 called for confidential information and was overly burdensome. *Id.* Despite its objections, Omega stated that it would provide documents in compliance with Federal Rule of Civil Procedure 33(d) to respond to No. 12. *Id.* at 7.

On December 1, 2023, Buergofol reached out to inform Omega that its response was inadequate. Docket 445-3. Omega responded three days later, explaining that it needed additional time to compile the documents necessary to span the large interrogatory request, but told Buergofol it would file a supplemental response. Docket 445-4. Omega filed its first supplemental response on December 15, 2023. Docket 445-5. Buergofol responded on December 22, 2023, claiming that Omega's response was still insufficient because Omega had improperly relied on Rule 33(d). Docket 445-6.

On January 5, 2024, Omega offered to meet-and-confer via email with Buergofol regarding Omega's general objections and addressed a number of Buergofol's concerns. *See* Docket 445-9. Omega asserted that the manufacturer for the inner film (to the extent Omega possessed the information) could be found in the documents, explained the process for finding the manufacturer, stated that the sought purchaser information was not relevant, and notified Buergofol it would provide information that cross-references wet out serial numbers. *Id.* at 4. Omega supplied the additional documents that Buergofol had requested (Attachments 1 and 2) on January 12, 2024, and in so doing expressed that it did not have records to fully comply

with No. 12 because, prior to July 2019, it did not maintain records indicating the inner film manufacturer. Docket 445-10.

On January 24, 2024, Buergofol responded and asserted that Omega could not reply under Rule 33(d) because the name of the inner film manufacturer could not be determined for each liner. Docket 445-11 at 2-3. Buergofol also raised issues regarding the requested sales revenue information and Omega's claim that the purchaser information was not relevant. *Id.* at 3-5. Omega addressed these concerns on February 6, 2024, and assured Buergofol that the sales revenue data could be found in the documents and provided a step-by-step explanation of how Buergofol could use the documents to determine the inner film manufacturer, to the extent such information was available. Docket 445-13. According to Omega, the four-step process is the same process Omega would have to use to find the information. *Id.* at 5.

Buergofol did not respond for five months. *See* Docket 445-14. On July 9, 2024, Buergofol sent Omega an email detailing why it believed Omega's response to No. 12 remained inadequate. *Id.* Buergofol argued (1) it could not obtain all of the requested information from the provided documents, (2) Attachments 1 and 2 are not business records, (3) the four-step process is confusing and may lead to incorrect conclusions, (4) Omega's response to No. 12 does not include reference to the four-step process, which was delivered via email, (5) Omega needs to answer all portions of No. 12, even if the answer

cannot be gleaned from a business record, and (6) Omega must disclose its purchaser information. *Id.* at 2-6.

The parties exchanged emails in the following days, wherein Omega responded to Buergofol's concerns and Buergofol continued to highlight its dissatisfaction. *See* Docket 445-15 (July 18, 2024 email from Omega); Docket 445-16 (July 19, 2024 email from Buergofol). On July 23, 2024, Omega told Buergofol that it was considering Buergofol's response, would respond in the next week and potentially serve a supplemental response to No. 12. Docket 445-17 at 3. On August 1, 2024, Omega confirmed that it would serve a supplemental response. Docket 445-18 at 4. Buergofol responded that it was not optimistic that a "very overdue" supplemental response would solve any issues. *Id.* at 3. Omega, on August 2, 2024, assured Buergofol that the supplemental response would address many of Buergofol's concerns, and if not, the parties should meet and confer on the remaining issues. *Id.* at 2.

Buergofol filed the instant motion on August 6, 2024, before Omega served its supplemental response. *See generally* Docket 444. Omega served its supplemental response two days later, on August 8, 2024. Docket 478-1.

## I.    Motion to Strike

As an initial matter, Omega moves to strike Buergofol's sur-surreply brief, arguing that it is an improper filing, not sanctioned by the local rules. Docket 533 at 2. In this matter, Omega moved the court for permission to file a surrply brief. Docket 506. The court granted the motion, recognizing that

Buergofol seemed to have raised new arguments in its reply brief. Docket 509.

Buergofol, however, did not move the court for leave to file its sur-surreply brief

(Docket 531). Thus, Omega requests that the filing be struck.

There is no provision in either the Federal Rules of Civil Procedure or the

court's local rules that expressly authorizes the filing of a sur-reply. *See Counts

v. Wasko*, 2024 WL 4068651, at *3 (D.S.D. Sept. 5, 2024). Further, a party

must generally seek leave for permission to file a sur-reply, including pro se

litigants. *Id.*; *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005). But the

court has discretion whether to accept a party's sur-reply. *See Postawko v. Mo.

Dep't of Corr.*, 910 F.3d 1030, 1037 n.3 (8th Cir. 2018). Here, based on the

convoluted timeline associated with this motion (as a result of intervening

supplemental responses filed in the midst of the briefing), the court found it

proper to allow Omega's surreply. *See* Docket 509. For the same reasons, the

court exercises its discretion and also considers Buergofol's sur-surreply. Thus,

Omega's motion to strike is denied.

## II.    Motion to Compel

Buergofol moves pursuant to Federal Rule of Civil Procedure 37 to

compel Omega to fully respond to Buergofol's Interrogatory No. 12. Docket 444.

Federal Rule of Civil Procedure 26 governs discovery in federal court, allowing

parties to "obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense and proportional to the needs of the case." Fed.

R. Civ. P. 26(b)(1). Under Rule 37, a party that believes the opposing party has

failed to properly respond to a discovery request may "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

"[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "A proper discovery response must either answer the request fully or state with specificity the grounds for objecting to the request." *Toyota Motor Sales, U.S.A., Inc. v. Allen Interchange LLC*, 2024 WL 3617141, at *2 (D. Minn. Aug. 1, 2024), *aff'd,* 2024 WL 4524481 (D. Minn. Oct. 18, 2024) (citing Fed. R. Civ. P. 33(b), 34(b)(2)). "Objections must be stated with specificity and in relation to specific requests; any ground 'not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause.' " *Id.* (quoting *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012)).

"When adjudicating a motion to compel, courts consider 'the importance of the information, issues of access, and the balance between the burden of production and expense and the benefit of the information.' " *R. L. Mlazgar Assocs., Inc. v. Focal Point L.L.C.*, 2024 WL 4751269, at *3 (D. Minn. Nov. 12, 2024) (quoting *Amador v. U.S. Bank Nat'l Ass'n*, 2017 WL 5151680, at *5 (D. Minn. Nov. 6, 2017)). If a motion to compel an "answer [to] an interrogatory submitted under Rule 33" is denied, Fed. R. Civ. P. 37(a)(3)(B)(iii), the court may issue a protective order authorized under Rule 26(c), Fed. R. Civ. P. 37(a)(5)(B). Rule 26(c)(1) authorizes the court to "issue an order to protect a

6

party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

And, as always, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (citation omitted). In fact, the "court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case . . . and the court must do so even in the absence of a motion." *Id.* Courts enjoy broad discretion to resolve discovery disputes based on the facts of each case. *Hendrickson v. Rapid City, Pierre & E. R.R., Inc.*, 2023 WL 5486239, at *8 (D.S.D. Aug. 24, 2023); *see also R.L. Mlazgar Assocs.,* 2024 WL 4751269, at *3 (The "trial court generally has broad discretion in adjudicating motions to compel.").

### A. Meet and Confer Requirement

To begin, both parties highlight issues with the meet and confer process in dealing with the responses to No. 12. *See* Docket 449 at 9; Docket 477 at 12-14; Docket 498 at 26-28. Buergofol argues that Omega neglected its meet-and-confer obligations because Omega refused to engage in two-way communication with Buergofol. Docket 449 at 9; *see also* Docket 445-17 (Omega requesting email meet and confers). *But see* Docket 445-18 at 2 (Omega stating that in light of the court's order referencing the need for two-way meet-and-confer communications, the parties could address Omega's final

supplemental response via phone call). Omega points the finger at Buergofol and asserts that Buergofol failed to wait until Omega served its supplemental response and meet-and-confer on that response before filing the instant motion. Docket 477 at 12-13.

Both the Federal Rules and the local rules of this court require parties to meaningfully meet and confer in an attempt to resolve discovery issues short of court intervention before filing a motion. *See* Fed. R. Civ. P. 37(a)(1); D.S.D. Civ. LR 37.1. The court has already made clear to both Buergofol and Omega that "meet-and-confer requirement[s] [are] not an empty formality." Docket 143 at 5 (quoting *Pierce v. Fremar, LLC*, 2010 WL 3420169, at *1 (D.S.D. Aug. 27, 2010); Docket 540 at 7-14. Generally, "[t]he purpose of the meet-and-confer requirement is to 'force litigants to attempt to resolve, or at least narrow, the disputed issues to prevent the unnecessary waste of time and effort on any given motion.' " *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 2023 WL 356121, at *3 (D.S.D. Jan. 23, 2023) (quoting *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 197, 198-99 (D.D.C. 1999)); *see also Biondolillo v. Livingston Corr. Facility*, 2020 WL 1887619, at *3 (W.D.N.Y. Apr. 16, 2020) ("The purpose of the meet and confer requirement is to resolve discovery matters without the court's intervention to the greatest extent possible.") (citation omitted)); *Wong v. Astrue*, 2008 WL 4167507, at *2 (N.D. Cal. 2008) ("The purpose of the [meet and confer] requirement is to . . . resolve disputes which need not involve the [c]ourt, and

8

avoid unnecessary litigation, thus saving the parties', the [c]ourt's, and the taxpayers' limited time, money, and resources.").

" 'Good faith' requires that the parties ma[ke] a genuine attempt to resolve the discovery dispute without involving the court[,]" and that they "meaningfully discuss each contested discovery dispute." *Jim Hawk*, 2023 WL 356121, at *3 (citing *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 170-71 (D. Nev. 1996)). "In determining whether a party has complied with its meet-and-confer obligations, the court 'looks to all surrounding circumstances to determine whether the movant's efforts were reasonable.' " *LoganTree LP v. Garmin Int'l, Inc.*, 339 F.R.D. 171, 178 (D. Kan. Aug. 2021) (quoting *Ross v. Pentair Flow Techs., LLC*, 2020 WL 4039062, at *1 (D. Kan. July 17, 2020)).

Looking at the circumstances of this case, the court finds that the parties did not meet and confer in good faith. As previously stated, "the court is not convinced that real-time, simultaneous communication is not required" to comply with meet-and-confer requirements. Docket 500 at 10 n.2; *see also Jim Hawk*, 2023 WL 356121, at *3 ("[C]onferment requires the parties to have had an actual meeting or conference . . . [in which they] personally engage in two-way communication . . . to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention.") (cleaned up); *Palzer v. Cox Okla. Telcom, LLC*, 2019 WL 11585346, at *3 (N.D. Okla. Apr. 26, 2019) (stating meet and confers must have an element of "concurrence, simultaneous

occurrence, and contemporaneousness"). Additionally, Omega made clear that it would be addressing many of Buergofol's complaints regarding No. 12 in a supplemental response, but Buergofol failed to wait for and discuss the effects of that response.[1] *See* Docket 445-17 at 3; Docket 445-18 at 2. In short, Buergofol waited five months to tell Omega it was still dissatisfied with Omega's production but refused to wait a few weeks to obtain a supplemental response from Omega. *See* Docket 445-14; Docket 445-15; Docket 445-17; Docket 445-18. Thus, Buergofol jumped the gun and filed this motion before it could even be sure that a dispute remained.

But given that even after receiving the supplemental response, Buergofol is still dissatisfied with Omega's response to No. 12, the court will address the merits of this issue. *See Bolger v. District of Columbia*, 248 F.R.D. 339, 343-44 (D.D.C. 2008) (excusing the failure to satisfy the meet-and-confer requirement because the court believed the parties had no hope of resolving the issues). The parties are advised to comply with the Federal and local rules in the future.

**B. Sufficiency of Omega's Response to No. 12.**

**1. Omega's Reliance on Rule 33(d)**

Buergofol claims that Omega improperly relied on Federal Rule of Civil Procedure 33(d) in responding to No. 12. Docket 449 at 5. Under Rule 33(d), a

---

[1] The court notes that in the last communications the parties exchanged before this motion was filed, Omega stated that the parties should engage in a meet-and-confer via phone call. Docket 445-18 at 2.

party may produce business records instead of a narrative interrogatory answer. *See* Fed. R. Civ. P. 33(d). Rule 33(d) provides:

> [i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
>> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

*Id.*

"Invocation of Rule 33(d) requires first that the information actually be obtainable from the documents." *Jim Hawk*, 2023 WL 356121, at *13 (internal quotation marks and citation omitted). But beyond that, "simply referring the interrogating party generally to large numbers of documents does not satisfy a party's obligations under Rule 33(d)." *Marco Techs., LLC v. Midkiff*, 2020 WL 12442103, at *15 (D. Minn. Oct. 8, 2020). "[A] responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 2012 WL 12894846, *10 (D. Minn. May 11, 2012) (citation omitted). "The purpose behind this rule is to place the burden of research on the interrogating party and relieves an answering party from preparing a direct response to an interrogatory." *Handi-Craft Co. v. Action Trading, S.A.*, 2004 WL 6043510, at *5 (E.D. Mo. May 21, 2004).

Buergofol argues that the sufficiency of a Rule 33(d) response is evaluated under a multi-factor, burden-shifting test. Docket 449 at 25. The test that Buergofol relies on, which comes from the Middle District of North Carolina, requires the requesting party to make a prima facie showing that a Rule 33(d) disclosure "is somehow inadequate, whether because the information is not fully contained in the document or because it is too difficult to extract, or for other such reasons. *Id.* (relying on *S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002). After the prima facie showing is made, the burden shifts to the responding party to justify its use of Rule 33(d) by "(1) specify[ing] for each interrogatory the actual documents, where the information will be found; (2) affirm[ing] that the information sought in the interrogator[y] is in fact available in the specified records; (3) demonstrate[ing] that directly answering the interrogatory would impose a burden upon it; and (4) show[ing] that the burden of compiling the information is substantially the same for both parties." *Id.* (quoting *Wonderland Switz. AG v. Birtax Child Safety, Inc.,* 2020 WL 6365382, at *5 (D.S.C. Oct. 29, 2020).

To make its prima facie showing, Buergofol points to several problems with Omega's response. Specifically, Buergofol asserts that (1) all of the information requested by No. 12 is not contained in the documents, (2) Omega does not set forth efforts it used in its attempt to find the information, (3) Omega does not state for which liners it cannot supply the requested information, and (4) the documents are not business records. *Id.* at 27.

Turning to the first argument, Buergofol asserts that Omega improperly relied on Rule 33(d) because not all of the information requested in No. 12 can be ascertained from the documents. *Id.*[2] Specifically, Buergofol notes that for several of the liners (Buergofol points out 21 examples), the inner film manufacturer cannot be discovered in the documents. *Id.* at 5-6, 27-28.[3] Initially, Omega stated that it did not keep records of inner film manufacturers until 2019, Docket 445-10 at 8, but in its newest supplemental response, Omega provided "exclusivity tables," Docket 478-1 at 49-51. Omega explained that it "determined that during certain periods of time [Omega] had one supplier only of certain sizes (diameters) of inner film." *Id.* Omega has provided a list of time periods and exclusive suppliers of inner films and explained that

---

[2] The court notes that Buergofol seems to imply that a party using Rule 33(d) can only use business records to answer the interrogatory and cannot assert that it does not possess some of the information or answer a portion of the request in a narrative answer. *See* Docket 449 at 5-8, 23-24, 26; Docket 498 at 10-11 (stating that because Omega asserts that the documents answer No. 12 "to the extent available," Omega cannot rely on Rule 33(d)); *see also* Docket 510 at 3-4. Essentially, Buergofol reads Rule 33(d) as requiring all or nothing—a party can only rely on Rule 33(d) in the narrow circumstance where each and every aspect of an interrogatory is answered through business records. But Buergofol points to no case law making that finding. Instead, the case law provides iterations of the general rule—that the information sought actually be present in the records—which seems to be focused on preventing one party from submitting a mass of unrelated records in an effort to send the opposing party on a futile, wild goose chase. *See, e.g., Elfindepan, S.A.,* 206 F.R.D. at 576. Here, Omega has (as of its most recent supplemental response) made clear which information Buergofol can glean from the provided documents. *See* Docket 478-1. Thus, the spirit of the general rule is satisfied.

[3] The court will address Buergofol's concerns regarding the purchaser information in its own section below.

in order to determine which specific liner contained which inner film, Omega
would also have to rely on the documents already provided to Buergofol. *Id.* at
49-51. Finally, Omega explained that to the extent it has any information
regarding inner film manufacturers during periods where it used film from
several manufacturers, such information would be discovered from the
documents provided to Buergofol. *Id.* at 52-53.[4]

Omega claims that between the submitted records, exclusivity tables,
and its narrative answers, Omega has submitted all of the information it
possesses to respond to No. 12. Docket 510 at 2-3. Thus, Omega's disclosures
are sufficient.

Secondly, Buergofol argues that Omega's response is improper because
Omega failed to state for which liners it cannot supply the requested
information and neglected to explain the methods it used to attempt to find the
information. Docket 449 at 30-31. In its initial response, Omega told Buergofol
that it could not supply all of the requested details on inner film manufacturers
because Omega did not maintain such records prior to 2019. *See* Docket 445-
10 at 8. In its first brief on this motion, Buergofol complained that Omega's

---

[4] Buergofol also takes issue with Omega's use of Rule 33(d) because Omega did
not "affirm" that the requested information could be found in the documents.
Docket 498 at 8, 10-11. Omega states that this issue was corrected in its
recent supplemental response, which, when taken as a whole with its other
communications, states that the liner length and sales revenue can be found in
the documents, and the inner film manufacturer, if Omega possesses such
information, can also be found in the exclusivity table or the documents.
Docket 477 at 16-17; Docket 478-1 at 49-52. The court finds that this is a
sufficient affirmance of Omega's position.

responses did not "indicate whether Omega personnel with personal knowledge of the early manufacture of Omega liners kn[ew] the answers . . . even though the source of their knowledge might be their memories and not . . . business records." Docket 449 at 31. Buergofol asserted that No. 12 calls for an answer, not records, so Omega should have employed other methods to obtain the information, and if no answer could be determined, explain the methods it used. *Id.* at 30-31.

In its most recent supplemental response, Omega attempted to remedy this issue and stated, for example, that "[a]fter reasonable inquiry, including consultation with Omega's current employees, Omega believes that Buergofol was Omega's only supplier inner of film in 2017." Docket 478-1 at 49. But Buergofol is still not satisfied. Docket 498 at 17. Buergofol asserts that Omega should have discussed who exactly it interviewed to determine (1) the identity of its inner film manufacturers in the exclusivity tables and (2) why Omega believed it did not have any additional information regarding the inner film manufacturers. *Id.* at 16-18.

Buergofol notes that it has previously been sanctioned for failing to provide proof that it interviewed its employees in order to properly answer an interrogatory. *Id.* at 16-17 n.5. But the situations in which Buergofol was sanctioned are distinguishable. In the first instance, Buergofol wholesale *refused* to interview its employees, claiming that doing so was overly burdensome in light of "Buergofol's interpretation of the discovery requests as

15

so broad that they include the Statue of Liberty and the Gutenberg Bible," Docket 164 at 13-14. And in the second instance, Buergofol had turned over 65,000 irrelevant patents and simply speculated that its employees would not have any knowledge of analogous prior art. Docket 250-2 at 8; Docket 464 at 16. Thus, in both instances, other factors (such as Buergofol's overly broad reading of the request and Buergofol's document dumping) played into the court's decision to sanction Buergofol. Moreover, in both instances, Buergofol had not only failed to identify who it had interviewed, but also failed to turn over any relevant information.

In stark contrast, here, Omega has both asserted that it interviewed relevant employees, and actually turned over relevant discovery based on those interviews and additional inquiry. *See* Docket 478-1 at 47-52. Moreover, Omega affirmatively stated that to the extent it has the requested information, it is present in the submitted documents. *Id.* Thus, the court finds both Omega's efforts and its description of such efforts are sufficient.

Third, Buergofol takes issue with Omega's failure to specifically articulate for which liners it does not have the requested information. Docket 498 at 16-18. Omega responds that if the information cannot be determined from the documents that Omega has submitted up to this point, then Omega does not have the information. Docket 477 at 16. Buergofol claims that it is entitled to a definite answer as to which liners Omega does and does not have in the requested data. Docket 498 at 18 (stating that Omega's response "denied

16

Buergofol the benefit of a verified answer"). But Omega has made clear that in order to discover which liners it does not have, it too would have to use the provided four-step process to comb through the supplied documents, and if that was fruitless, only then would Omega know that it lacks information for that liner. Docket 477 at 16. Thus, in order to determine which answers it does not have, Omega would need to address each of the nearly 2,000 liners individually, wholly thwarting its reasons for relying on Rule 33(d) in the first place.

As noted above, the court has a duty to limit unreasonably burdensome discovery requests. *See* Fed. R. Civ. P. 26(b)(2)(C); *Affiliated Foods Midwest Coop., Inc. v. SuperValu Inc.*, 2018 WL 6177074, at *3 (D. Neb. Nov. 27, 2018) ("Fed. R. Civ. P. 26 provides the [c]ourt with the duty to 'limit the frequency or extent of discovery.' ") (citation omitted); *Oyen v. Land O'Lakes Inc.*, 2009 WL 349160, at *3 (D.S.D. Feb. 10, 2009) ("Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that the burden or expense of the proposed discovery outweighs its likely benefit.") (cleaned up and citation omitted). And in so doing, district courts enjoy "broad discretion to limit discovery and decide discovery motions." *Wilbur-Ellis Co. v. Gompert*, 2023 WL 6038022, at *1 (D. Neb. Sept. 15, 2023); *see also Roberts v. Shawnee Mission Ford, Inc.,* 352 F.3d 358, 361 (8th Cir. 2003) ("[R]ule [26] vests the district

court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit.").

Here, Buergofol requests an undeniably large amount of information that no one contends is easily collected or distilled. Buergofol has described precisely why it needs the table information, and the information does appear to be relevant to Buergofol's claims. *See* Docket 449 at 5-6. But the court is wary to place such a large burden on Omega based on a technicality in Rule 33(d) when Buergofol clearly was not concerned with these problems given that it was silent for five months after Omega initially supplemented its response to No. 12. *See* Docket 445-14; Docket 445-15 at 1 "[A] party seeking to compel discovery should file a motion with due regard to the relative importance of the information, the time required to resolve the dispute, and the possible impact on the case schedule." *R. L. Mlazgar Assocs.*, 2024 WL 4751269, at *3 (collecting cases denying motions to compel when they are filed several months after the discovery dispute arose). Thus, the court finds that Omega's response, though it does not address which liners it does not have inner film information on, is sufficient because it would be overly burdensome to require Omega to dig for the information Buergofol seems lax in obtaining.

For the same reasons, the court rejects Buergofol's final argument regarding Omega's use of Rule 33(d). Buergofol argues that Omega's dependance on Rule 33(d) is improper because some of the submitted documents (Attachments 1 and 2 and the "exclusivity table") are not business

18

records. Docket 449 at 30; Docket 498 at 12-15. Omega does not contest Buergofol's characterization and agrees that the documents are not business records. *See* Docket 477 at 18; Docket 510 at 5-7. But Omega claims that the documents are nevertheless proper under Rule 33(d). Docket 477 at 18; Docket 510 at 7. Specifically, Omega points to Rule 33's Advisory Committee notes, which state that in instances of the disclosure of electronically stored information, the responding party may submit additional information to help the other party properly interpret and navigate the provided business records. Docket 477 at 18 (relying on Fed. R. Civ. P. 33(d) advisory committee note (2006)). Omega argues that although this situation does not involve electronically stored information, Omega is similarly using the non-business records to help Buergofol navigate the other records Omega has provided. *Id.* at 18-21. As such, Omega claims that its disclosures are still within the spirit of Rule 33(d). *Id.*

Omega also points to a few cases in which courts have upheld a party's use of non-business records in their Rule 33(d) disclosures. *Id.* at 19-21 (relying on *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 1821924 (N.D. Fla. Apr. 10, 2020) and *Sohmer v. UnitedHealth Grp., Inc.*, 2020 WL 6375880 (D. Minn. Oct. 30, 2020)). But as Buergofol notes, neither of the cases relied on by Omega expressly hold "that a Rule 33(d) response can rely upon a non-business records [sic] for the source of an answer to an interrogatory." Docket 498 at 13.

But more instructive here, is *United States v. Supervalu, Inc.*, 2018 WL 3219448 (C.D. Ill. July 2, 2018), where the district court upheld a magistrate judge's use of Rule 26 discretion to allow an imperfect Rule 33(d) disclosure. In *Supervalu*, a responding party submitted an expert's data in a Rule 33(d) response to an interrogatory. *Id.* at *2. The requesting party moved to compel a narrative answer, arguing that the documents were not business records, and to the extent that the disclosures were business records, the producing party was better suited to navigate them to determine the interrogatory answer. *Id.* The court recognized that the expert's data was derived from business records but was not itself a business record. *Id.* As such, the court found that "reference to [the] data compilations did not precisely meet the requirements of Rule 33(d)" but "[i]n its discretion . . . pursuant to Rule 26(b), the [c]ourt found the [producing party's] supplemental answer to be sufficient and proportional to the needs of the case." *Id.* Specifically, the court noted that the disclosures either "identified the requested information or identified how to find the requested information in [the] business records" and both parties were equally capable of finding the answer in the documents. *Id.*

Similarly, here, Buergofol's complaints about Attachments 1 and 2 and the "exclusivity tables" do not attack the veracity of their contents. *See generally* Docket 449. Instead, Buergofol merely takes issue with the fact that the documents are not business records. But because the records either disclose the requested information or allow Buergofol to find the requested information in

Omega's supplied business records, and the burden of using the documents to find the answer to No. 12 is the same for both parties, the court finds the use of such documents is proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b).

To conclude, the court denies Buergofol's motion to compel based on Omega's use of documents to respond to No. 12, finding pursuant to Rule 26, Omega's responses were proportional to the needs of this case.

### 2. Buergofol's request for purchaser information

Buergofol also moves to compel Omega to provide the purchaser information for each of the liners listed in No. 12. Docket 449 at 31-33; Docket 498 at 18-23. Omega has redacted customer identifiers from its submissions to Buergofol, arguing that the names of its customers are not relevant to any of Buergofol's claims or defenses. Docket 477 at 21-27. Moreover, Omega asserts that disclosing the names of its customers will damage is customer relations. *Id.* at 21-22.

Buergofol states that it is entitled to know the identity of Omega's purchasers because (1) Buergofol is not a competitor of Omega, (2) Omega has failed to produce reliable evidence regarding the structure of its outer film, (3) Buergofol's knowledge of the purchaser will aid Buergofol in cross-referencing the wet-out numbers in the No. 12 chart, and (4) Buergofol believes Omega is selling liners for "artificially low" prices and believes that it will be able to

determine if such conduct is occurring if it knows the names of the purchasers. Docket 449 at 32-33. The court will address each argument in turn.

First, Buergofol just recently argued that Buergofol and Omega are, in fact, competitors. *See* Docket 438 at 2. The court also recently found that the two are competitors. *See* Docket 654 at 4-5; *see also* Docket 130 at 9.

Second, Buergofol argues that because Omega has refused to preserve samples of its liners and potentially spoliated evidence, Buergofol needs the purchaser information so that it can determine the liner installation sites, go there, and take a sample of the outer liner. Docket 449 at 32; Docket 498 at 20. To support its spoliation argument, Buergofol states that Omega failed to comply with Buergofol's Request for Production 30, which called for Omega to preserve a sample of each liner produced from June 2023 onward. Docket 498 at 20. But since this motion was filed, the court ordered Omega to comply with RFP 30, supply any retained samples, and provide Buergofol with a sample of each liner produced in the 90 days after the court order. Docket 555 at 12, 17. Moreover, the court agrees with Omega—having Buergofol show up and take samples at the sites where Omega's customers have installed liners will undoubtedly strain Omega's customer relations. *See* Docket 477 at 21-24.

Third, it is clear from Omega's supplied four-step process that the purchaser information is not needed to adequately find the remaining No. 12 data in Omega's documents. *See* Docket 445-13 at 3-5 (Omega explaining the four-step process for finding the requested information does not require

reference to the purchaser). Although it would be nice for Buergofol to have an additional data point to follow across the documents, an additional cross-reference is not needed.

And fourth, Buergofol claims that in at least one instance Omega sold a liner for $40,000, and days later that customer re-sold the liner for more than $80,000. Docket 449 at 33. Buergofol asserts that it needs customer information in order to find other potential "artificially low" sales and determine its damages. *Id.*; Docket 498 at 22-23. Omega's disclosures provide Buergofol with the revenue it received for each liner sale. *See* Docket 445-13 at 4. At this point, the court finds that information is enough to aid Buergofol in calculating its damages, particularly in light of the harm it may cause Omega's customer relationships if the court orders Omega to comply. As Omega notes, in the past Buergofol has created awkward situations with Omega's customers by hounding them for details and threatening legal fees. Docket 477 at 21-22 (Omega describing Buergofol's interactions with HK Solutions).

Thus, the court finds the danger to Omega outweighs Buergofol's need for the customer information. Buergofol's motion to compel the production of Omega's purchaser information is denied.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Buergofol's motion to compel (Docket 444) is DENIED. It is

FURTHER ORDERED that Omega's motion to strike (Docket 533) is DENIED.

Dated March 28, 2025.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE