UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br>Plaintiff and<br>Counter Defendant,<br>vs.<br>OMEGA LINER COMPANY, INC.,<br>Defendant and<br>Counter Claimant. | 4:22-CV-04112-KES<br><br>ESI DISCOVERY ORDER |

## TABLE OF CONTENTS

Page

I. PRESERVATION OF ESI ....... 1

II. COLLECTION AND PROCESSING ....... 2

III. SEARCHING AND PRODUCTION ....... 2

1. Custodian Email Accounts. ....... 2
2. Forensic Inspection of Buergofol's January 1, 2013 Email Backup. ....... 3
3. Files. ....... 4
4. Databases. ....... 5
5. Forensic Inspection of Buergofol's Navision System. ....... 5

IV. POST-PRODUCTION ....... 6

1. Disclosing Records of ESI Searches. ....... 6
2. Previously Produced Documents. ....... 6
3. Privilege Logs. ....... 6

V. DISPUTE RESOLUTION AND ORDER MODIFICATION ....... 7

1. Dispute Resolution. ....... 7
2. Modification of Order. ....... 7

Attachment 1 (Omega's Known ESI) ....... 8

Attachment 2 (Buergofol's Known ESI) ....... 9

## I. PRESERVATION OF ESI

The individuals listed in Attachments 1 and 2, who are expected to have discoverable ESI, must be included in the parties' preservation, collection, and search efforts. All parties and counsel shall take reasonable steps to preserve ESI within their possession, custody, or control that was created or revised between January 1, 2000, and April 28, 2025.

The currently known sources of electronically stored information ("ESI") for the parties are listed in Attachment 1 (Omega's Known ESI) and Attachment 2 (Buergofol's Known ESI). However, this Order is not an exhaustive list of all potential sources of unique, discoverable ESI. The Court's recognition of these sources does not relieve the parties of their duty to conduct a reasonable inquiry into the location of discoverable ESI.

For example, discoverable ESI is expected to exist not only in structured data repositories (e.g., databases) but also in their copies, exports, backups, and archives. Examples of structured data repositories include: (i) databases and database management systems (e.g., FoxPro), (ii) enterprise resource planning (ERP) systems (e.g., Microsoft Navision, DS-Software, SOS Inventory), (iii) customer relationship management (CRM) systems, and (iv) accounting software (e.g., QuickBooks Online Advanced).

As another example, discoverable ESI is also expected to exist on unstructured data repositories (e.g., file systems) and their associated backups and archives. Examples of unstructured data repositories include: (i) file servers, (ii) network attached storage (NAS), (iii) document management systems (e.g., Microsoft SharePoint), (iv) file sharing systems, (v) network drives, (vi) cloud storage platforms (e.g., Microsoft OneDrive, Google Drive, Dropbox), (vii) computers (e.g., desktops and laptops), and (viii) email systems (e.g., Microsoft Exchange, Tobit David).

## II. COLLECTION AND PROCESSING

Parties shall collect ESI in a manner that preserves metadata and familial relationships (e.g., emails and attachments) to meet the search and production requirements of Section III. If documents contain hyperlinks to files stored on shared platforms (e.g., Google Drive, SharePoint, OneDrive), the linked documents must also be included in the collection.

Parties shall process ESI to meet the search and production requirements of Section III. Processing must preserve metadata and familial relationships (e.g., emails and attachments). The producing party shall use an e-discovery platform capable of indexing emails and email attachments by extracting and converting non-searchable text (e.g., from scanned PDFs or images) into searchable text. Parties may not de-duplicate ESI; each file must be treated as a unique document. However, parties may de-NIST (remove system and program files) if supported by their e-discovery platform.

## III. SEARCHING AND PRODUCTION

### 1. Custodian Email Accounts.

After entry of this Order, a requesting party may provide up to twenty (20) search queries per custodian for searching the email accounts of custodians listed in Attachments 1 and 2. The search queries may be submitted in a single request or over time. For good cause, a party may submit more than twenty (20) queries. Omega may also provide German language equivalents of the twenty (20) queries, which will not count toward the limit.

Within fourteen (14) days of receiving the search queries, the producing party shall run the queries on the custodians' email accounts, including email attachments. The producing party shall also, within fourteen (14) days, generate and produce a hit report directly from its e-discovery platform in CSV or Excel format. The hit report shall include the search query used and the following information for each email hit: (i) email account, (ii) mailbox folder path, (iii) sender,

(iv) date and time sent, (v) recipients in the Cc field, (vi) recipients in the Bcc field, and (vii) subject.

Within thirty (30) days of receiving the search queries, the producing party shall produce all non-privileged emails, with no withholding based on trade secret or confidentiality claims. The emails (e.g., .msg; .eml) shall be individually produced in their native format, including any and all attachments to produced emails. If any part of an email or attachment is responsive, the entire email and all attachments to the email shall be produced, except for attachments withheld or redacted based on privilege, which must be logged.

**2. Forensic Inspection of Buergofol's January 1, 2013 Email Backup.**

The Court finds that a forensic expert examination of Buergofol's January 1, 2013 email backup identified in Buergofol's Rule 30(b)(6) deposition on December 4, 2024 ("2013 Email Backup") is appropriate. Within fourteen (14) days of this Order, the parties shall agree on a neutral, third-party ESI expert or, if unable to agree, submit proposed experts to the Court for appointment. The expert must be qualified in ESI collection, processing, searching, production, and forensic analysis.

Within seven (7) days of the expert's appointment, Buergofol shall provide access to the 2013 Email Backup for forensic copying and preservation. The expert shall forensically copy the entire 2013 Email Backup, ensuring data integrity, and Buergofol shall fully cooperate by providing access, credentials, and technical support. The expert shall then process and index all emails and attachments, including non-readable text files (e.g., scanned PDFs or images).

Within seven (7) days of the expert's appointment, Omega shall provide the expert with the following search queries (additional queries may be submitted for good cause): (i) 10 email domains of CIPP customers (e.g., @impreg.de; @lightstreamliner.com), with any alternative domains used by CIPP customers not counting toward the limit (e.g., @impreg.com) to identify

emails sent to and from the 10 CIPP customers, (ii) 10 search queries related to the names of cured-in-place-pipe ("CIPP") liner manufacturers (e.g., "IMPREG"), and (iii) up to 20 additional search queries, along with their German equivalents. Omega may provide additional search queries for good cause.

The expert shall run the search queries on all emails and attachments in the 2013 Email Backup. Within fourteen (14) days of receiving the queries, the expert shall provide both parties a hit report in CSV or Excel format, identifying the search query and the following metadata for each hit: (i) email account, (ii) mailbox folder path, (iii) sender, (iv) date and time sent, (v) Cc recipients, (vi) Bcc recipients, and (vii) subject.

Within fourteen (14) days of receiving the hit report, Buergofol shall produce all non-privileged emails, with no withholding based on trade secret or confidentiality claims. The emails (e.g., .msg; .eml) shall be individually produced in their native format, including any and all attachments to produced emails. If any part of an email or attachment is responsive, the entire email and all attachments to the email shall be produced, except for attachments withheld or redacted based on privilege, which must be logged.

Buergofol shall bear 75% and Omega shall bear 25% of the cost of the expert's forensic copying, processing, searching, and production of the 2013 Email Backup.

**3. Files.**

After entry of this Order, a requesting party may provide up to twenty (20) search queries to search (i) the unstructured data repositories in Attachments 1 and 2 and (ii) ESI from five custodians identified by the requesting party, including all computers of the five custodians. Additional queries may be submitted for good cause. Queries may be submitted in one or multiple requests. Omega may provide German language equivalents, which do not count toward the query limit.

Within fourteen (14) days of receiving the search queries, the producing party shall run the searches and provide a hit report from the e-discovery platform in CSV or Excel format, identifying the search query and the following information for each document hit: (i) folder path, (ii) file name, (iii) creator, and (iv) date created. Within thirty (30) days of receiving the search queries, the

producing party shall produce all non-privileged documents individually in their native format (e.g., .doc; .docx; .xlsx; .pptx), with no withholding based on trade secrets or confidentiality.

**4. Databases.**

The parties must conduct a reasonable search of their structured data repositories (e.g., databases), including those listed in Attachments 1 and 2, for data responsive to the other party's discovery requests. The parties shall also conduct a reasonable search of structured data repository backups if they may contain unique ESI. If structured data from proprietary or commercial structured data repositories (e.g., databases, ERP systems) can be produced in a reasonably usable, delimited report format (e.g., Excel or CSV), the parties shall produce it in that format. If such a format is unavailable, the parties shall meet and confer to agree on an alternative form of production based on the data's content and structure.

**5. Forensic Inspection of Buergofol's Navision System.**

Within fourteen (14) days of this Order, the parties shall agree on a neutral, third-party ESI expert, or if unable to agree, submit proposed experts to the Court for appointment. The expert must be qualified in searching and generating reports from the Navision system and its backups.

The expert shall search the Navision system and all backups using the 10 CIPP customer names identified by Omega and generate a report of all film orders and shipments to those customers before January 1, 2015. The report shall include: (i) date of order or shipment, (ii) order number, (iii) customer name, (iv) customer contact name, (v) film product identification, (vi) shipping address, and (vii) any other relevant order and shipping information available. Buergofol

shall provide a qualified person to assist the expert in retrieving the data and identifying all backups of the Navision system. Buergofol may review the report for privilege and designation, without redacting trade secrets or confidential information. The report shall be produced to Omega within seven (7) days of the report generation.

Buergofol shall bear 75% and Omega shall bear 25% cost of the expert's search and report generation.

## IV. POST-PRODUCTION

### 1. Disclosing Records of ESI Searches.

Each party shall maintain a record of its ESI searches, including: (i) the ESI source searched, (ii) search date, (iii) individual(s) conducting the search, and (iv) search queries and parameters used. Each party must provide this record at the time of ESI production. For searches conducted before this Order, the parties shall disclose all ESI sources searched and all search queries used for each ESI source within seven (7) days of the Order. *See Beef Prods., Inc. v. Hesse*, No. 4:17-CV-04130-KES, 2019 WL 6841362, at *7–8 (D.S.D. Dec. 16, 2019).

### 2. Previously Produced Documents.

A requesting party may request up to 100 previously produced documents in native format, and the producing party shall have ten (10) days to comply. For requests exceeding 100 documents, the requesting party must justify the need for native format for each additional document, and the producing party shall not unreasonably withhold production without good cause.

### 3. Privilege Logs.

Within fourteen (14) days of serving a production, the producing party shall provide a preliminary privilege log identifying all ESI withheld due to attorney-client privilege or work-product protection. No ESI may be withheld based on trade secret or confidentiality claims under the Court's Protective Order (Dkt. 131). The log shall include, where possible without disclosing privileged information, the following for each withheld document: (i) Bates numbers, (ii) for

emails: sender, recipients (including Cc/Bcc), custodian(s), subject, and sent date/time, (iii) for files: author, custodian(s), file name, path, created date/time, and last modified date/time, and (iv) the grounds for withholding or redacting each file. The requesting party has fourteen (14) days to challenge any claims of privilege, after which the producing party has fourteen (14) days to provide a supplemental log compliant with FRCP 26(b)(5)(A). The parties may agree in writing to extend these deadlines.

## V. DISPUTE RESOLUTION AND ORDER MODIFICATION

### 1. Dispute Resolution.

In the event of a dispute over the discoverability of ESI, the parties shall promptly take reasonable steps to preserve the ESI until resolved by the parties or the Court. A party may seek relief from this Order after first conferring in good faith with the opposing party.

### 2. Modification of Order.

Court may modify this ESI protocol for good cause shown.

## VI. TOTAL COST

The total expenses incurred pursuant to this plan shall not exceed $200,000 unless approved by the court.

# ATTACHMENT 1 (OMEGA'S KNOWN ESI)

**A. Structured Data Repositories (e.g., Databases)**

(i) SOS Inventory (Cloud)

(ii) QuickBooks Online Advanced (Cloud)

**B. Unstructured Data Repositories (e.g., File Systems)**

(i) Microsoft Exchange Server

(ii) Microsoft SharePoint

(iii) Microsoft Teams

**C. Custodians**

| Omega's Custodians | Title | Email Account |
|---|---|---|
| Gary Strom | Chairman | gary@OmegaUVpipe.com |
| Brandon Strom | CEO | brandon@OmegaUVpipe.com |
| Kenny Moulds | Executive Vice President/Principal | kenny@OmegaUVpipe.com |
| Mark Hallett | President | Mark.Hallet@OmegaUVpipe.com |
| Dave McConnell | Plant Manager | dave@OmegaUVpipe.com |
| Gretchen Lundstrom | Office Manager | glundstrom@OmegaUVpipe.com |
| Trina Kuper | Accounting | trina@OmegaUVVpipe.com |
| Robert Sieve | General Manager (former) | Bob.Sieve@OmegaUVpipe.com |
| Grant Marquardt | General Manager (former) | marquardt@OmegaUVpipe.com |
| Jason Homrighaus | Technical Director (former) | jason@OmegaUVpipe.com |
| Ruth Grant | Accounting (former) | ruth@OmegaUVpipe.com |

# ATTACHMENT 2 (BUERGOFOL'S KNOWN ESI)

## A. Structured Data Repositories (Databases)

(i) Navision (a.k.a. COEX2) (Local Server)

(ii) DS-Software (Local Server)

(iii) FoxPro (a.k.a. COEX1) (Local Server) – **Location Unknown**

(iv) Synology Network Attached Storage (NAS)

(v) Accounting System (**Unknown)**

## B. Unstructured Data Repositories (Emails and File Systems)

(i) Tobit David Email Server

(ii) File Server (local)

(iii) Backup Email Server (Dkt. 22, ¶9)

(iv) 700 Emails for Dr. Stark (Dkt. 22, ¶9)

(v) Email Account: dr.fs@t-online.de

## C. Custodians of ESI

| Buergofol's Custodians | Title | Email Account(s) |
|---|---|---|
| **Dr. Franz Schleicher** | Co-Owner and Sole Officer with General Commercial Power | dr.fs@t-online.de |
| **Gregor Schleicher** | Managing Director | Gregor.Schleicher@buergofol.de |
| **Dr. Abdel-Kader Boutrid** | Head of Research and Development | Abdel.Boutrid@buergofol.de |
| **Dr. Kurt Stark** | Director Business Development (former) | Kurt.Stark@buergofol.de |
| **Tobias Goth** (formerly Tobias Abfall) | Head of Sales | Tobias.Goth@buergofol.de<br>Tobias.Abfall@buergofol.de<br>CIPP-Folien@buergofol.com |
| **Anton Hoffman** | IT Manager | Anton.Hoffmann@buergofol.de |

| Buergofol's Custodians | Title | Email Account(s) |
|---|---|---|
| **Klaus de Groote** | IT Department | **Unknown** |
| **Petra Blien** | Sales Customer Service Representative | petra.blien@buergofol.de |
| **Hans-Peter Lippl** | Product Development (under Dr. Boutrid) | Hanspeter.Lippl@buergofol.de |
| **Marion Stelzl** | Laboratory (under Dr. Boutrid) | Unknown |
| **Christine Gammel** | Product Development (under Dr. Boutrid) | christine.gammel@buergofol.de |
| **Maria Gutorski** | Laboratory/Testing | Maria.Gutorski@buergofol.de |
| **Martina Thaler** | Unknown (Involved with LightStream film shipments) | martina.thaler@buergofol.de |
| **Lukas (Luke) Sponbrucker** | Unknown (Involved in sales of film to LightStream) | Unknown |
| **Hanni Guertner** | Head of Human Resources, Purchasing and Finance | Hanni.Guertner@buergofol.de |
| **Robert Kottmair** | Area Sales Manager | Robert.Kottmair@buergofol.de |
| **Michael Lehner** | Purchasing | Michael.Lehner@buergofol.de |
| **Johanna Gürtner** | Authorized Signatory in Purchasing and Finance Department (former) | Unknown |
| **Werner Schmid** | Finance (former) | Unknown |

Dated April 28, 2025

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE