UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br><br>ORDER FOR DISCLOSURE AND DENYING MOTION TO STAY |

## BACKGROUND

In April of 2023, defendant, Omega, moved to compel plaintiff, Buergofol, to respond to Requests for Production (RFPs) 23 and 24. Docket 92. Buergofol opposed the motion, arguing that disclosure would improperly require Buergofol to reveal trade secret information. Docket 105 at 9. The motion was referred to Magistrate Judge Veronica Duffy pursuant to Rule of Civil Procedure 37. Docket 183. Magistrate Judge Duffy took up the motion at a motion hearing on September 18, 2023, and, after oral argument, ordered that Buergofol answer RFPs 23 and 24. Docket 238 at 166. The magistrate explained that the disclosures would be made pursuant to the court's protective order and designated as "Attorney's Eyes Only." *Id.*; *see also* Docket 234.

After the hearing, Buergofol made disclosures, Docket 351 at 9, but Omega was still dissatisfied, Docket 324. Omega moved for sanctions, asserting that the disclosures failed to "provide the . . . information regarding the structure, composition, and manufacturing specifications for Buergofol's products" necessary to address Buergofol's infringement claims. *See id.* at 3, 8-12. Buergofol argued that it did not need to disclose such information (beyond what it had already disclosed) because the information was either irrelevant or trade secrets. *See generally* Docket 351. Magistrate Judge Duffy granted Omega's motion for sanctions, stating that the court has clearly ordered Buergofol to disclose the information at the September 2023 hearing. Docket 402 at 15. Buergofol then moved the court to reconsider Magistrate Judge Duffy's order, stating, in part, that the magistrate judge had failed to employ the proper analysis before ordering the disclosure of trade secrets. Docket 410 at 9. Specifically, Buergofol argued that Magistrate Judge Duffy should have used the standard set forth in *In re Remington Arms Co., Inc.*, 952 F.2d 1029 (8th Cir. 1991). *Id.* at 9-10.

The court overruled Buergofol's objection. Docket 616. Although Buergofol argued that its objection was timely because the magistrate judge did not order the disclosure of trade secrets until ruling on the motion for sanctions, the court disagreed. *Id.* at 4-7. The court stated that "Buergofol's interpretation that somehow Magistrate Judge Duffy did not originally order the disclosure of the very trade secrets Buergofol was refusing to disclose (that led to the motion to compel and the discussion at the hearing) is indeed simply

2

an attempt to relitigate the issue of disclosure." *Id.* at 6. Although the court did not complete a full *Remington* analysis, the court recognized Buergofol's argument regarding its application, and stated that "the court is not convinced that Magistrate Judge Duffy did not engage in the analysis set forth in . . . *Remington.*" *Id.* at 7 n.3. The court highlighted that Omega had described its need for the information, Buergofol had been permitted to describe its trade secrets, and Buergofol did not explicitly request an in-camera review. *Id.* Buergofol then moved to stay the enforcement of the court's order so it could seek mandamus from the Federal Circuit. Docket 644.

On March 20, 2025, the court ordered a status conference to discuss the implications of the USPTO's Patent Trial and Appeal Board (PTAB)'s finding that the relevant claims in the '882 Patent were unpatentable. Docket 671. The court ordered the parties to brief the issue before the hearing. *Id.* In its briefing, Buergofol again requested that the court take up the issue of its RFP 23 and 24 disclosures and review the documents in camera. Docket 701 at 8-9. The court granted Buergofol's request and ordered Buergofol to submit the documents for in camera review. Docket 705. The court further ordered Buergofol to explain its alleged trade secrets in privilege-log format and provide the log to Omega. Docket 713 (the court issuing a clarification in response to Omega's request for clarification (Docket 707)). Omega was then ordered to note any objections to the log and file it with the court. *Id.*; *see also* Docket 717 (Omega's filed objections and the trade secret log).

3

During the hearing, the court again heard oral arguments as to the relevancy, need, and dangers of the disclosures. Docket 726 at 51-61. The court then took Buergofol's prepared documents and reviewed them in camera in conjunction with the log and Omega's objections.

## DISCUSSION

*Remington* sets forth the Eighth Circuit's standard for determining whether trade secrets are discoverable. *See* 952 F.2d 1029. In *Remington*, the district court had ordered the production of alleged trade secret materials after engaging in a brief teleconference. *Id.* at 1032. On appeal, the Eighth Circuit found that the district court had improperly ordered the disclosure because it had not allowed the party opposing discovery the opportunity to establish that trade secrets existed and describe how disclosure would be detrimental. *Id.* at 1032-33.

The *Remington* court instructed that on remand the district court should employ a burden shifting test which first requires the party opposing discovery to show: (1) the sought information is a trade secret, and (2) its disclosure would be harmful to the party's interest. *Id.* at 1032. The burden then shifts to the party seeking discovery, who must "show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *Id.* Once the parties make such a showing, "the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information." *Id.* And if the court determines that the need outweighs the

potential injury, the court must "utilize its authority to issue an appropriate protective order to safeguard the rights of the parties." *Id.* at 1033.

I.   **Presence of Trade Secrets and Potential Harm to Buergofol**

Buergofol's primary argument concerning the court's orders on this issue stem from its belief that "each specific trade secret that is to be disclosed must first be identified." Docket 645 at 3. Buergofol argues that "[t]he district court is to examine the disputed documents in camera and to give the trade secret owner the opportunity to show that the documents contain specific trade secrets." *Id.* at 5 (emphasis omitted).

First, the court notes that *Remington* does not mandate an in-camera review, only that the court provide Buergofol the opportunity to be heard. *See Remington*, 952 F.2d at 1033 (stating that the district court "*may* (and probably should[)]" examine the contested documents in camera, but not directing it (emphasis added)). Second, on six separate occasions, Buergofol has had the opportunity to make its threshold showing under *Remington*. *See* Docket 105 at 9 (Buergofol's opposition to Omega's motion to compel production); Docket 238 at 116-26, 148-49, 154-55, 162, 166-67 (oral argument at the September 2023 hearing); Docket 351 (Buergofol's brief in opposition to Omega's motion for sanctions for Buergofol's failure to produce the alleged trade secret information); Docket 410 (Buergofol's objections to the magistrate judge's order for sanctions, arguing that disclosure of trade secrets is improper); Docket 645 (Buergofol's motion to stay imposition of sanctions); Docket 726 at 51-61

5

(Buergofol's oral argument against the disclosure of this information based on the presence of trade secrets).

Nevertheless, the court agreed to review the documents in camera, *see* Docket 707, and has done so. After completing its review, the court confirms that the documents are indeed trade secrets, the disclosure of which could injure Buergofol.[1] *See* Docket 238 at 149-50 (Buergofol's attorney explaining that disclosure may harm Buergofol's competitive advantage); Docket 726 at 52 (Buergofol stating "Omega would love to" use its trade secrets about "wax 40 . . . for the cold weather problem); Docket 645 at 8-9 (Buergofol arguing that it will be harmed by disclosing secrets because "there is not a way to put the cat back in the bag").

## II. Omega's Need for the Trade Secret Information

Buergofol argues that Omega has no need for the trade secret information because it concerns recipes Buergofol used to make its film after the critical dates of the patents in suit. Docket 645 at 10-11. But Omega has, on multiple occasions, explained why it does need the information. *See, e.g.,* Docket 117 at 8-15; Docket 675 at 17-20. In its initial briefing, Omega outlined how the patents in suit are written at a "level" that requires an investigation

---

[1] The court notes that Omega does not contest the presence of trade secrets. At the status conference, counsel for Omega stated, "[W]e'll grant it's a trade secret. Just produce it under the protective order. That's our position. If it's a trade secret, that's fine." Docket 726 at 54; *see also id.* at 55 (Omega arguing that whether the court finds a trade secret exists is "moot"); Docket 238 at 162 (Omega's attorney stating, "[W]e never said that once you produce [the trade secrets] under a protective order they're no longer trade secrets. They are trade secrets.").

6

into the composition, structure, and manufacturing specifications of every layer in Buergofol's films. *See* Docket 117 at 8-15; *see also* Docket 238 at 121-22 (Omega's counsel explaining that the claims identify specific chemical compounds that need to be in the product in order to show infringement); Docket 726 at 52-53 (Omega's counsel explaining that the potential presence of a wax on Buergofol's product goes to the "heart" of the litigation). Thus, Omega asserts that knowing the composition and structure of Buergofol's products is essential to both Buergofol showing infringement and Omega showing non-infringement. *See* Docket 238 at 121-22, 131.

Buergofol argues that the patent claims are not chemical specific—for example, the '882 patent generally recites a "polyamide layer" and "there is no need for anybody . . . to know. . . more detail about the type of polyamide that's made in the accused device than is required by the generic claim language." Docket 726 at 59-60. But Omega points out that because claim construction has not yet occurred, it is improper to limit discovery or determine what discovery is "needed" based on Buergofol's own interpretation of the claims. *Id.* at 60-61.

Omega has also voiced some concern that if it was to obtain the information through testing, Buergofol would challenge the validity of any results. *See* Docket 238 at 131. Additionally, Buergofol appears to be engaging, whether willfully or not, in a form of double-speak with regard to certain product characteristics. *See* Docket 726 at 12-13 (Buergofol stating that films designated as "Wax 40" do not have a covering and are not wax and that the

7

word "wax" in German does not mean "wax" in English because the German word for wax is "wachs"); *id.* at 57 (Buergofol stating "Wax 40 is not a wax"). Omega states that it needs the documents so that Buergofol cannot dispute their validity and to straighten out and reconcile Buergofol's conflicting or unsupported statements. Docket 726 at 60-61 (Omega referencing the question of whether Wax 40 actually does have wax).

After reviewing (1) the original briefing on the motion to compel, (2) the September 2023 transcript, (3) the briefing on the motion for sanctions, objections to sanctions, and motion for emergency stay, and (4) the oral argument from the April 2025 status conference, the court finds the documents are necessary for Omega's case. Omega is correct—claim construction has not yet occurred in this matter. As such, it would be improper to limit discovery based on Buergofol's unilateral reading of the claims. And although the sought information is from after the critical date, the court rejects Buergofol's argument that the information cannot be compelling in showing that the recipe was the same before the critical date. Docket 645 at 9-10.

### III. Balancing Interests and Protective Order

Under *Remington*, if the court finds the requesting party has shown both relevance and need, the court must weigh the injury that disclosure might cause against the moving party's need for the information. *See Remington,* 952 F.2d at 1032. Here, in light of the protective order already in place, Omega's need for the information outweighs the potential harm to Buergofol. Under the

8

order, trade secrets may be designated as "Attorney's Eyes Only" (AEO). Docket 131.

At the status conference, Omega likened this case to *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497 (D. Minn. 2011). Docket 726 at 54-55. There, the Minnesota District Court completed a *Remington* analysis and ordered the disclosure of an ingredient list. *Taiyo*, 275 F.R.D. at 500-02. The court explained that "[w]here the parties have agreed to a protective order, particularly one with 'Attorneys' Eyes Only' designation, even a very sensitive trade secret will be sufficiently protected and should be produced if relevant." *Id.* at 501. Moreover, the court stated it found it difficult to believe that when the protective order was being negotiated that the non-moving party had not anticipated the provisions would be used to protect the product formula because the litigation centered on that formula. *Id.* at 502.

Buergofol argued that *Taiyo* is distinguishable because there, the ingredient list sought was at the heart of the case. Docket 726 at 57; *see also Taiyo*, 275 F.R.D. at 501-02. By contrast, Buergofol argues that this litigation is not about Wax 40. Docket 726 at 57. Instead, Buergofol urged the court to act similarly to the *Remington* district court on remand and order, despite the presence of a protective order, that technical documents should not be disclosed. *Id.* at 56-57; *see also Hartman v. Remington Arms Co.*, 143 F.R.D. 673, 676-78 (W.D. Mo. 1992).

Although the court is not bound by either decision, the court finds that this situation is more similar to *Taiyo*—Buergofol put its films directly at issue

9

when it sued Omega and claimed that Omega liners using Buergofol film infringed the relevant patent.[2] And like *Taiyo* and unlike the *Remington* case on remand, there is no indication here that the protective order in this case is not suited to properly protect Buergofol from improper dissemination. *See Taiyo*, 275 F.R.D. at 502 (stating that there had been no showing that the trade secret could not be protected by the protective order); *Hartman*, 143 F.R.D. at 676-78 (noting two instances of alleged violations of the protective order); *see also Remington,* 952 F.2d at 1033 (expressing "concern" for the effectiveness of the protective order because of contentions that opposing counsel previously violated the terms). Buergofol has already disclosed information pursuant to the protective order and no issues have ensued. *See* Docket 351 at 8-9.

Moreover, "orders forbidding any disclosure of trade secrets or confidential information are rare. . . . Instead, where such information is relevant and necessary, it is incumbent upon the district court to utilize its authority to issue an appropriate protective order to safeguard the rights of the parties." *Fair Isaac Corp. v. Equifax, Inc.,* 2007 WL 2791168, at *5 (D. Minn. Sept. 25, 2007) (citations omitted). The current protective order limits use of the information to this lawsuit, supplies that AEO information can only be disclosed to outside counsel, and imposes prosecution bars (to some degree) on

---

[2] Buergofol now asserts that it has dropped its infringement claims with regard to Omega products made with Buergofol film. Docket 645 at 10; Docket 390-7. But Omega's claims for declaratory judgment of non-infringement, invalidity, and unenforceability remain. *See VirnetX Inc. v. Apple Inc.*, 931 F.3d 1363, 1373 (Fed. Cir. 2019) ("[N]on-infringement does not moot a counterclaim regarding invalidity.") Buergofol has not made a covenant not to sue.

the relevant actors. *See* Docket 131; Docket 654; *see also Remington,* 952 F.2d at 1033 (outlining items that courts may consider in crafting protective orders). Buergofol has failed to explain why the current AEO provision in the protective order cannot adequately protect Buergofol's interests and maintain its trade secrets. Thus, the court finds the protective order offers sufficient protection.

### IV. Motion to Stay

Buergofol moves to stay the enforcement of the court's orders (Dockets 234, 402, 616) so it can seek mandamus from the Federal Circuit. Docket 644; Docket 645. Omega opposes the motion. Docket 675.

In deciding whether a stay should be granted, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder,* 556 U.S. 418, 434 (2009) (citations omitted). Generally, "[t]he first two factors . . . are the most critical." *Id.*

First, the court finds that Buergofol is not likely to succeed on the merits. Buergofol's motion is entirely premised on its argument that the court failed to conduct the correct analysis in ordering Buergofol to respond to RFPs 23 and 24. *See generally* Docket 645. Namely, Buergofol asserts that it is likely to win on the merits because the court never found that Omega had need of any specific trade secret. *Id.* at 5-8. The court has now expressly done so under the *Remington* framework.

11

Second, as explained above, there is minimal potential harm to Buergofol in disclosing its trade secrets because the protective order limits access to AEO. Third, Omega, rather than Buergofol will be harmed by staying this proceeding further. Omega has shown that it needs the recipe information for its non-infringement, invalidity, and unenforceability claims and it has already been a year-and-a-half since Buergofol was ordered to disclose it. Docket 675 at 8-9. And fourth, the public has an interest in litigation moving quickly. This case has time and again stalled. The court will not halt discovery again. Thus, Buergofol's motion to stay is denied.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Buergofol must fully respond to RFPs 23 and 24. It is

FURTHER ORDERED that Buergofol's motion for stay (Docket 644) is DENIED.

Dated May 20, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE