UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>             Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>             Defendant. | 4:22-CV-04112-KES<br><br>ORDER DENYING BUERGOFOL'S MOTIONS FOR CLARIFICATION AND RECONSIDERATION OF ORDER GRANTING MOTION FOR SANCTIONS AND DENYING MOTION FOR IN CAMERA HEARING |

Plaintiff, Buergofol, requests clarification and reconsideration of the court's order granting defendant, Omega's, motion for sanctions (Docket 464) pursuant to Rule 60(b)(6). Docket 480. Buergofol also moves this court to grant an in camera hearing based on its claimed trade secrets. *Id.* Omega opposes both motions. Docket 504. Omega also moves the court to award Omega its attorney's fees and costs for having to respond to Buergofol's motion. *Id.* at 32. The court issues the following order.

**BACKGROUND**

On November 23, 2022, Omega served its Request for Production No. 13 (RFP 13) and Interrogatory No. 4 (ROG 4) on Buergofol. Docket 64 ¶¶ 2-3. RFP 13 calls for "[a]ll documents and things in the possession, custody or control of BUERGOFOL that could qualify as PRIOR ART to either of the PATENTS-IN-SUIT." Docket 64-2 at 7. ROG 4 requests Buergofol to "[i]dentify every item of PRIOR ART to each of the PATENTS-IN-SUIT now known to BUERGOFOL."

Docket 64-1 at 5. In both requests, "prior art" was defined "in accordance with the meaning given to the term in Title 35 of the United States Code, and interpretations thereof provided by the federal judiciary." Docket 64-1 at 3; Docket 64-2 at 4.

In its December 23, 2022, response, Buergofol objected to both discovery requests as "absurdly overbroad" and "unduly burdensome." Docket 64-3 at 11-12; Docket 64-4 at 11-13. On December 27, 2022, Omega sent Buergofol an email, clarifying that prior art was defined as "all documents, information, acts, or things that would qualify as prior art under any subsections of 35 U.S.C. §§ 102 and 103, including all systems, methods, apparatus, publications, patents, or uses." Docket 64-6 at 6. In a subsequent email sent on January 18, 2023, Omega further defined prior art as the following:

> "PRIOR ART" includes any references that are reasonably related to the claimed invention of the patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve the problem addressed by the patent.

Docket 69-1 at 3-4. Buergofol refused to respond to RFP 13 or ROG 4, reasoning that it would not apply these additional definitions because "Buergofol was required to respond to the discovery requests only as written." Docket 64 ¶ 9.

On February 13, 2023, Omega moved to compel Buergofol's responses to RFP 13 and ROG 4. Docket 62. The court granted Omega's motion to compel and ordered Buergofol to respond to Omega's RFP 13 and ROG 4. *See* Docket 164 at 17. In response, Buergofol filed a motion for clarification because "[t]he

2

[o]rder does not clearly state that Omega's January 18 definition of PRIOR ART is implicitly limited to anticipatory prior art," and sought clarification on whether prior art only included "references." Docket 165 at 1, 5. The court obliged and clarified that "Buergofol's responses (1) must reference prior art, as defined in 35 U.S.C. §§ 102 and 103; (2) include both anticipatory and analogous prior art; and (3) 'reference' not only 'issued patents, published patent applications, and printed publications' but also 'all documents, information, acts, or things that qualify as prior art under any subsection of 35 U.S.C. §§ 102 and 103, including all systems, methods, apparatus, publications, patents, or uses." Docket 464 at 2 (quoting Docket 181 at 3-5).

Following the court's order for clarification, Buergofol filed supplemental responses to RFP 13 and ROG 4. *See* Docket 250-1; Docket 250-2. Buergofol again objected, claiming that the court's definition of "analogous prior art" was legally erroneous. Docket 250-1 at 5; Docket 250-2 at 6. In its response to ROG 4, Buergofol provided a list of analogous prior art categories, *see* Docket 250-1 at 6-13, and a list totaling 65,872 patents, *see* Docket 305-1. In response to RFP 13, Buergofol produced lists of prior art and a few documents. *See* Docket 250-2. Buergofol also noted that it was unable to conduct more than a few employee interviews to determine their knowledge of analogous prior art. Docket 250-1 at 13.

In response, Omega filed a motion for sanctions, arguing that Buergofol failed to comply with the court's discovery orders. Docket 250. In September 2024, the court granted Omega's motion for sanctions against Buergofol.

3

Docket 464 at 20. The court also ordered Buergofol to "produce any prior art films or descriptions of films sold to Light Stream and/or Saertex and any other evidence of prior art within its knowledge, custody, control, or possession." *Id.*

Buergofol now moves for clarification of the court's order on sanctions, raising ten issues for the court to review. Docket 480; Docket 481. Buergofol also moves for reconsideration of the order based on raised factual and legal objections. *Id.* Omega opposes both motions, arguing that Buergofol's motions are "another transparent effort by Buergofol to continue its nearly two-year period of withholding from Omega highly relevant prior art related discovery." Docket 504 at 3.

## LEGAL STANDARD

A motion for clarification is not expressly authorized by the Federal Rules of Civil Procedure. *See Kraft v. Off. of Comptroller of Currency*, 2021 WL 3186153, at *2 n.2 (D.S.D. July 28, 2021). But it "can be appropriately used to resolve a state of confusion" caused by a court's order. *See Knox v. Lichtenstein*, 654 F.2d 19, 21 (8th Cir. 1981). Yet where a motion for clarification "simply attempt[s] to relitigate already decided issues, [the Eighth Circuit has] conclud[ed] that [the motion] may warrant sanctions for unreasonably and vexatiously multiplying the proceedings and 'wast[ing] . . . everyone's time.' " *G2 Database Mktg., Inc. v. Stein*, 2020 WL 6484788, at *3 (S.D. Iowa Oct. 15, 2020) (quoting *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 749 (8th Cir. 2018)).

The Eighth Circuit "construes motions for reconsideration of non-final orders as motions under Rule 60(b)." *Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018). Rule 60(b)(6) provides that a court may relieve a party from an order for "any reason that justifies relief," Fed. R. Civ. P. 60(b)(6), and is justified only in "exceptional circumstances," *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 903 (8th Cir. 2005). But Rule 60(b) motions do not allow movants to simply relitigate issues a district court has already ruled upon. *See In re SDDS, Inc.*, 225 F.3d 970, 972 (8th Cir. 2000); *Broadway v. Norris*, 193 F.3d 987, 989-90 (8th Cir. 1999) ("[T]he purpose of Rule 60(b)(6) . . . is not a vehicle for simple reargument on the merits."). The Eighth Circuit has made "clear that a motion for reconsideration 'serve[s] the limited function of correcting manifest errors of law or fact or . . . present[ing] newly discovered evidence.' " *United States v. Luger*, 837 F.3d 870, 875 (8th Cir. 2016) (quoting *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 407 (8th Cir. 2013)) (alterations in original). Thus, motions for reconsideration may not "identify facts or legal arguments" or otherwise "introduce evidence that the movant could have produced before the district court decided the prior motion." *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019) (citation omitted).

## DISCUSSION

### I.   Motion for Clarification

Buergofol seeks clarification on ten issues regarding the court's order granting Omega's motion for sanctions. Docket 481 at 5-17. The ten issues

5

Buergofol identifies mostly concern the court's order that "Buergofol must produce any prior art films or descriptions of films sold to Light Stream and/or Saertex and any other evidence of prior art within its knowledge, custody, control, or possession." Docket 464 at 20; *see also* Docket 481 at 5-17 (requesting that the court clarify the terms "prior art," "prior art films," "descriptions of films," "any other evidence of prior art," and "within [Buergofol's] knowledge, custody, control, or possession"). Buergofol asserts that without clarification from the court, "the [o]rder [on sanctions] is so overbroad as to be a clear abuse of discretion." Docket 519 at 7. Also, within its clarification requests, Buergofol argues that if the court previously ruled in the order on sanctions that sales to Saertex and Light Stream qualify as prior art, then Buergofol asserts the court must conduct an in camera review of the discovery because it constitutes trade secrets. *See* Docket 481 at 11-13. The court addresses Buergofol's requests for clarification below.

### A. First Request: Whether the Term "Prior Art" Only Includes "Analogous Prior Art"

Buergofol first requests clarification on whether the "term 'prior art' in the phrase, 'and any other evidence of prior art' [is] limited to 'analogous prior art.'" Docket 481 at 5. In support of its argument that the term "prior art" is limited to only include analogous prior art, Buergofol cites solely to the court's first clarification order requiring Buergofol to disclose "responsive analogous prior art" in its recitation of the facts.[1] *See* Docket 481 at 4. But in that same

---

[1] In Buergofol's first motion for clarification, Buergofol requested clarification on whether the term "prior art" was limited to only include "anticipatory prior

6

order, the court clearly ordered that "the definition of prior art applicable to [ROG 4] and [RFP 13] is inclusive of *both* anticipatory prior art and analogous prior art." Docket 181 at 5 (emphasis added).

Buergofol appears to raise this issue here because it seeks reconsideration of the court's definition of what constitutes prior art. *See* Docket 481 at 25-27. As discussed below, *see infra* Part II.B, the court rejects Buergofol's legal objection to the court's definition of anticipatory and analogous prior art and clarifies that Buergofol must disclose responsive analogous prior art and responsive anticipatory prior art to the patents-in-suit requested by ROG 4 and RFP 13, as it has previously ruled. *See* Docket 181 at 5-6; *see also* Docket 464 at 7.

### B. Second and Sixth Requests: Whether the Term "Prior Art Films" is Limited to "UV CIPP Films"

In Buergofol's second and sixth requests, Buergofol seeks clarification on whether the term "prior art films" is limited to include only "prior art UV CIPP films." *See* Docket 481 at 5, 10. Buergofol insinuates that the court's prior command that Buergofol must make "judgement calls," Docket 164 at 12, should allow Buergofol to limit responsive prior art to only include UV CIPP films because "99% of Buergofol's business relates to films that are not UV

---

art." *See* Docket 165 at 3 (seeking clarification on whether the court's "definition of prior art implicitly is limited to anticipatory prior art, . . . [such that] the only analogous prior art covered by ROG 4 and RFP 13 is analogous, anticipatory prior art"). As the court clarified for Buergofol, prior art included both anticipatory and analogous prior art. Docket 181 at 3-4. The court finds it to be a disingenuous effort on Buergofol's part to now seek clarification on whether the term "prior art" is limited to only include analogous prior art. *See* Docket 481 at 5.

7

CIPP films" and those non-UV CIPP films are not relevant to the present case, Docket 481 at 5. Rather than be a true clarification request, however, Buergofol is asking the court to reconsider its prior decision that analogous prior art includes "prior art in the fields of endeavor of the [patents-in-suit]" and "prior art that pertained to the problem confronting the inventors." *Id.* at 8; *see also* Docket 164 at 11-12.

As Omega notes, this request for reconsideration—styled as a request for clarification—seeks to relitigate an issue the court has previously decided. *See* Docket 504 at 26-27 (Omega outlining when the court has previously rejected Buergofol's argument to "exclude from analogous prior art, any fields of endeavor outside of UV CIPP liners, such as food packaging"). As indicated above, a Rule 60(b) motion is not an avenue for parties to simply relitigate issues the court has already ruled upon. *See In re SDDS, Inc.*, 225 F.3d at 972. And as the court previously ruled, Buergofol must turn over responsive analogous prior art to the patents-in-suit. *See* Docket 164 at 11-12; Docket 181 at 3-4; Docket 464. The court's orders defining analogous prior art include films beyond UV CIPP films if the films fall under the "field of the endeavor" or "problem faced by the inventor" prongs outlined in 35 U.S.C. § 103. *See* Docket 164 at 11-12; Docket 181 at 3-4; Docket 464 at 7.

### C. Third, Fourth, Fifth, Ninth, and Tenth Requests: Whether the Court's Order on Sanctions Expanded the Scope of the Court's Previous Discovery Orders

In Buergofol's third, fourth, and fifth requests, Buergofol seeks clarification on the scope of "descriptions of films," "any other evidence of prior

8

art," and "within [Buergofol's] knowledge." Docket 481 at 6-9. In its ninth and tenth requests, Buergofol asks the court to clarify whether there is a substantive or temporal limit on how Buergofol should know when "evidence of prior art" comes into Buergofol's "knowledge, custody, control, or possession." *Id.* at 13-17.

These requests for clarification stem from Buergofol's main argument that the order on sanctions broadened the scope of the court's previous discovery orders. *See* Docket 519 at 5 (arguing that the court's order on sanctions "is considerably broader than prior orders"). Buergofol asserts that in filing its discovery responses, including the lists detailing 65,872 patents, *see* Docket 305-1, the order issuing sanctions against Buergofol was improper because "it sanctions Buergofol for following a prior order of the [c]ourt as that order was literally written." Docket 519 at 5.

Here, the court holds that the order on sanctions did not expand the scope of ROG 4 and RFP 13.[2] In its order, the court issued sanctions against Buergofol because Buergofol (1) failed to provide Omega with films, or descriptions of films, sold to Saertex and Light Stream, and (2) disclosed non-

---

[2] Buergofol also argues that the order on sanctions was improper because the court failed to engage in a proportionality balancing analysis required under Rule 26(b). Docket 481 at 19-20; Docket 519 at 13-17. Because the court holds that the order on sanctions did not expand the scope of the discovery requests in ROG 4 and RFP 13, the court need not conduct another Rule 26(b) proportionality test because it has already done so in its order granting Omega's motion to compel. *See* Docket 164 at 6-14 (analyzing whether RFP 13 and ROG 4 are relevant, proportional to the needs of the case, and unduly burdensome).

9

responsive analogous prior art that was not within its knowledge, custody, control, or possession. Docket 464 at 14-15. Buergofol now argues it was an abuse of the court's discretion to sanction it for its disclosures and requests that the court reconsider its legal conclusions based on its clarified definitions. *See* Docket 481 at 11-12, 15-16.

As to the court's requirement that Buergofol must turn over "descriptions of films," or "evidence of any other prior art," Buergofol seems to imply that the court's order is overbroad because it requires Buergofol to turn over irrelevant information. *See* Docket 481 at 6-7 (Buergofol asking whether the term "descriptions of films" is requesting information that "ha[s] nothing to do with the patents-in-suit" and concluding that the term "evidence of any other prior art," seeks evidence that "is likely irrelevant to any claim or defense in this case."). But nowhere in the court's order on sanctions does the court suggest that Buergofol must or should submit information that is unrelated to the patents-in-suit. *See generally* Docket 464. Rather, Buergofol was sanctioned in part because it disclosed over 65,000 irrelevant patents. *See id.* at 16-17. It is disingenuous of Buergofol to now suggest that the court's order requires Buergofol to turn over more irrelevant information. Instead, to comply with the court's previous discovery orders, Buergofol must turn over films, or descriptions of films, sold to Light Stream and Saertex, which "are relevant to the elements of the patents-in-suit," such as the "structures and compositions of [the] films." *See* Docket 481 at 6; *see also* Docket 504 at 23.

10

Similarly, the phrase "evidence of any other prior art" arose in response to Buergofol's argument that it need not disclose evidence of the sales to Light Stream and Saertex because ROG 4 and RFP 13 did not use the word "evidence." Docket 464 at 12-13. As the court has previously determined, and confirms below, Buergofol's film sales constitute prior art. *See id.* at 12. Because "the sale itself is not prior art under pre-AIA § 102(b)," but rather the device or invention that constitutes prior art, *see id.* at 13, the court reasoned that there was an "implicit directive" requiring Buergofol to turn over evidence of prior art sales where Buergofol is unable to produce the prior art itself, *id.* at 14. Thus, the phrase "evidence of any prior art" is limited to situations where Buergofol is unable to disclose the prior art sold to Saertex and Light Stream. In such a scenario, Buergofol must submit evidence of the prior art sales that are relevant to the patents-in-suit.

In seeking clarification on what falls within Buergofol's knowledge, custody, control, or possession, Buergofol asserts that the court improperly sanctioned it because the over 65,000 pieces of analogous prior art it disclosed was within Buergofol's knowledge and possession. Docket 481 at 15-16 (asserting that Buergofol was "aware" of the disclosed prior art in the United States Patent Office database). In its order, the court sanctioned Buergofol for disclosing lists consisting of over 65,000 irrelevant patents obtained in public record searches from the United States Patent Office because the information was not within Buergofol's knowledge, custody, control, or possession, and the disclosures were non-responsive to ROG 4 and RFG 13. Docket 464 at 15-16.

11

Buergofol has not raised any new argument to convince the court it improperly issued sanctions against Buergofol.

In answering discovery requests, "[a] company has a duty to conduct reasonable investigation, make reasonable inquiries of its employees, and fully respond to the interrogatories posed to the company." *CPI Card Grp. Inc. v. Dwyer*, 2018 WL 5919985, at * 4 (D. Minn. Nov. 13, 2018) (emphasis removed) (quoting *Morris v. Low's Home Ctrs.*, 2012 WL 5347826, at * 4 (M.D.N.C. Oct. 26, 2012)). In its order, the court noted Buergofol's admission that it "disclosed patents that were irrelevant." Docket 464 at 16; *see also* Docket 220 at 4-6 (Buergofol arguing that the court's previous discovery orders required "Buergofol to identify tens of thousands of items of irrelevant analogous prior art.") (cleaned up). Further, the court previously determined that ROG 4 and RFP 13 were not overbroad in part because each discovery request was seeking information Buergofol had already compiled. Docket 164 at 14. Thus, in disclosing lists consisting of tens of thousands of irrelevant patents, rather than information Buergofol already possessed, Buergofol failed to show that it undertook a reasonably diligent search of its own records or meaningfully interviewed its own employees in finding and disclosing prior art that was responsive to ROG 4 and RFP 13.

Thus, Buergofol need only conduct a reasonable investigation and disclose information responsive to ROG 4 or RFP 13 that Buergofol "has in its actual possession or custody," or "has the right, authority, or practical ability to obtain . . . from a non-party to the action." *SPV-LS, LLC Transamerica Life*

12

*Ins. Co. v. Bergman*, 2017 WL 899882, at *9 (D.S.D. Mar. 6, 2017) (citation omitted). These disclosures must relate to the patents-in-suit and must be prior art that is consistent with the court's definitions. Also, Buergofol may answer ROG 4 with a narrative answer or by production of documents if it complies with the standard set out in Federal Rule of Civil Procedure 33(d). *See* Docket 481 at 6 (requesting the court to clarify if the court is ordering Buergofol to file a narrative answer or produce documents).

### D. Seventh and Eighth Requests: Whether the Term "Prior Art" Includes Buergofol's Sales of Films to Saertex and Light Stream

Buergofol next seeks clarification on whether the court ruled that sales of films to Saertex and Light Stream qualify as prior art that it must turn over to Omega in response to ROG 4 and RFP 13. Docket 481 at 10-13. Despite admitting that the court "has concluded that, for purposes of RFP 13 and ROG 4, sales from Buergofol to Saertex can be prior art sales," *id.* at 10, Buergofol then goes on to request clarification on whether the court did make such a finding, *id.* at 11 (requesting "clarification as to whether the [c]ourt has, in fact, ruled that Buergofol sales to Saertex are prior art for purposes of RFP 13 and ROG 4"). Because Buergofol is essentially asking this court to reconsider its previous order, the court addresses Buergofol's arguments regarding sales of films to Saertex and Light Stream in the court's discussion of Buergofol's motion for reconsideration below. *See infra* Part II.A.

## II.   Motion for Reconsideration

Buergofol argues that this court should grant its motion for reconsideration under Rule 60(b)(6) due to "not only the lack of clarity and the

13

overbreadth of the compelled discovery, but also the application of an erroneous view of the law and erroneous factual conclusions." Docket 481 at 21. Omega opposes Buergofol's motion for reconsideration, arguing that Buergofol is simply attempting to relitigate issues the court has already decided. Docket 504 at 6, 18, 31.

### A. Factual Objections

Buergofol first argues that the previous order's "finding that sales from Buergofol to Saertex could have been on-sale prior art is based on an erroneous assessment of the facts." Docket 481 at 22. Buergofol asserts the court incorrectly stated that (1) Buergofol sells liners and (2) Saertex is a United States company. *Id.* at 23; *see* Docket 464 at 11. Buergofol argues that because of the court's "erroneous assessment of the facts," the court incorrectly determined that Buergofol's sales of film to Saertex and Light Stream constitute "on-sale prior art under 35 U.S.C. § 102." Docket 481 at 21.

The court agrees that it misstated Buergofol's line of business and inaccurately characterized Saertex as a United States company in its order on sanctions.[3] These factual misstatements, however, do not change the court's legal determination that Buergofol's film sales to Saertex qualify as prior art under § 102 because a company's legal status is not determinative to the question of whether there is sufficient "prefatory" on-sale activity in the United

---

[3] Saertex MultiCom GmbH is a German company with its headquarters in Saerbeck, Germany. *See* Docket 504-2 at 2, 4, 7. But Saertex also has a plant in Huntersville, North Carolina. *Id.* at 2, 4.

14

States. *See Caterpillar Inc. v. Int'l Trade Comm'n*, 837 F. App'x 775, 778 (Fed. Cir. 2020) (holding that "the mere fact that [a] sale was made to a United States company is [not] sufficient" to show that an item was on sale in the United States). Instead, the inquiry turns on "whether the invention was sold for use in the United States." *Id.* Thus, the fact that Saertex is a German company does not negate the court's legal conclusion that Buergofol's sales of film to Saertex qualify as prior art because there is still evidence that the films sold to both Saertex and Light Stream were "sold for use in the United States." *See id.*; *see also* Docket 464 at 12 (explaining that "Buergofol sold films to Light Stream and Saertex in Germany, and those companies then imported the films to the United States").

Further, it is irrelevant whether Buergofol "was ever aware that any Buergofol film of any type had ever been used in any Saertex liner that was used or sold in the United States," Docket 481 at 23, because a sale can still be invalidating even if a seller or inventor does not have knowledge that their product will be sold in the United States. *See* 35 U.S.C. § 102(b); *see also J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986) (holding that the on-sale bar "is not limited to sales by the inventor or one under his control, but may result from activities of a third party"); *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000) ("[I]t is of no consequence that the sale was made by a third party, not the inventor . . . or that the product was constructed and the sale made pursuant to the buyer's directions."). As such, Buergofol's factual objections do not warrant

15

reconsideration of the court's determination that "Buergofol was required to produce information regarding [the sales of film to Light Stream and Saertex]." Docket 464 at 12 n.2.

Buergofol also argues that if it is required to turn over this sales information, then the court must conduct an in camera review pursuant to *In re Remington Arms Company, Inc.*, 952 F.2d 1029 (8th Cir. 1991), because the sales information, which includes the composition and structure of Buergofol's films, constitutes trade secrets. Docket 481 at 12-13, 17-18; Docket 519 at 18-21. The court recently reviewed Buergofol's trade secrets in camera and conducted a *Remington* analysis to determine if "information regarding the structure, composition, and manufacturing specifications of Buergofol's products" could be properly disclosed. *See* Docket 743 at 2, 5-11. The court determined that Buergofol must disclose the trade secrets by designating them as "Attorney's Eyes Only" pursuant to the court's standing protective order. *Id.* at 8-9. Because the alleged trade secrets here also concern the structure and composition of Buergofol's films, *see* Docket 481 at 12, the court declines to conduct another *Remington* analysis. Instead, the court holds that Buergofol must turn over information regarding the sales of film to Light Stream and Saertex in compliance with the court's protective order.

### B. Legal Objection

Buergofol raises one legal objection to the court's previous order on sanctions. Docket 481 at 25-27. Buergofol asserts that the court erroneously concluded that "anticipatory and analogous prior art . . . are not subsets of one

16

another." *Id.* at 25 (quoting Docket 464 at 7, 16-17). Buergofol argues that "[a]ll anticipatory prior art is analogous prior art. [Thus,] [a]nticipatory prior art is a subset of analogous prior art." *Id.*; *see also* Docket 519 at 24 n.4 ("[A]ll anticipatory prior art is a subset of 'analogous prior art' in a nesting doll manner according to 35 U.S.C. § 102 and legal precedent."). Buergofol also argues that the court incorrectly asserted that 35 U.S.C. § 103 defines analogous prior art. Docket 481 at 26.

    The court rejects Buergofol's arguments for two reasons. First, Buergofol has not shown that the court has made a legal error that affects the scope of the court's definitions of anticipatory prior art and analogous prior art. Buergofol failed to offer any legal support for its claim that "[a]ll anticipatory art is analogous prior art." *See* Docket 481 at 8 (noting that "[t]he definition of analogous prior art based on the 'field of the endeavor' prong and the 'problem faced by the inventor' prong was extensively briefed," but failing to explain how this supports its current argument). And "[t]he question whether a reference is analogous art is irrelevant to whether that reference anticipates." *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997) ("A reference may be from an entirely different field of endeavor than that of the claimed invention or may be directed to an entirely different problem from the one addressed by the inventor, yet the reference will still anticipate if it explicitly or inherently discloses every limitation recited in the claims.").

    Second, the court has already addressed Buergofol's arguments regarding the court's definitions of anticipatory and analogous prior art. *See*

Docket 181 at 3 n.1; Docket 464 at 6-7 (noting that "had Buergofol truly disagreed with the court's provided definition [in earlier orders], it could have moved to reconsider" but failed to do so). And because the court need not reconsider issues that have already been litigated, *In re SDDS, Inc.*, 225 F.3d at 972, the court concludes that it need not reconsider Buergofol's arguments.

### III.   Attorney's Fees

Omega requests that it be awarded attorney's fees and costs for having to respond to Buergofol's motion to clarify pursuant to Rule 37(a)(5). Docket 504 at 32. Rule 37(a)(5) provides that "[i]f the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees . . . [unless] the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

Omega argues that Buergofol's motion "was not brought in good faith and was not substantially justified," and that "Buergofol manufactured issues to again delay production of court-ordered discovery." Docket 504 at 32. The court agrees. Omega initially served ROG 4 and RFP 13 on Buergofol on November 23, 2022. Docket 64 ¶¶ 2-3. Since that time, the court has issued three prior orders compelling, clarifying, and sanctioning Buergofol for failing to properly answer and disclose information in response to ROG 4 and RFP 13. *See* Dockets 164, 181, and 464. Based on these facts and the discussion above, the court finds that Buergofol's motion for clarification and

reconsideration was not substantially justified. Thus, the court finds that awarding fees and expenses incurred by Omega due to Buergofol's unjustified motions is appropriate.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Buergofol's motion for clarification and motion for reconsideration (Docket 480) is denied. Buergofol's motion for an in camera hearing is also denied. It is

FURTHER ORDERED that Buergofol must supplement its responses to ROG 4 and RFP 13, as clarified in this order, and in accordance with the orders in Dockets 164, 181, and 464, within 21 days. It is

FURTHER ORDERED that Omega's motion for attorney's fees is granted. Omega shall file an affidavit including a detailed accounting of the time spent preparing and litigating the instant motion. The affidavit also shall set forth a reasonable rate for attorney's fees to which Omega believes it is entitled. Buergofol shall have twenty-one (21) days to respond in opposition thereto. Omega may file a reply within fourteen (14) days after service of Buergofol's response.[4]

Dated May 28, 2025.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

---

[4] In accordance with Docket 512, Buergofol has one week following the filing of this order to file its response to Dockets 489 and 490.