UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br><br>ORDER DENYING MOTION TO RETAIN CONFIDENTIALITY |

Buergofol produced several documents under the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" (AEO) provision of the operative protective order (Docket 131). Docket 457 at 4. Because Omega challenged the designation, the parties met and conferred on the issue, but no agreement was reached. *Id.*; Docket 131 at 7 (requiring the parties to meet and confer about a challenged designation). Now, pursuant to section 6.3 of the protective order, Docket 131 at 8, Buergofol moves to retain the confidentiality of the documents, Docket 457;[1] Docket 539.[2] Omega opposes the motion. Docket 465.

---

[1] Buergofol filed Docket 457, which is titled "Brief in Support of Motion to Retain Confidentiality," but did not immediately file an accompanying motion, though it does appear the motion was later filed at Docket 463. But because Buergofol clearly intended Docket 457 to be a motion and Omega had the opportunity to respond, the court will take it up as if it's a motion.

[2] Buergofol filed its initial motion at Docket 457, and later filed another motion at Docket 539. The parties agree that the motions can be addressed together

Buergofol argues that (1) "public disclosure of the AEO [d]ocuments will likely cause Buergofol particularized harm, and (2) . . . the harm of disclosure to . . . Buergofol outweighs any interest of the public in the uncontrolled disclosure of the AEO [d]ocuments." Docket 457 at 4. Buergofol also asserts that Omega has not need for the AEO documents. *Id.* Omega contends that it needs the documents to prepare a defense and Buergofol has failed to provide any evidence of potential harm or show the documents are confidential. Docket 465 at 3. Both parties request attorney's fees. Docket 465 at 9; Docket 491 at 15. The court issues the following order

## BACKGROUND

The documents at issue here are third-party complaints about problems and defects with Buergofol's inner tubular film that Saertex, a German customer of Buergofol, made to Buergofol before March 2012. *See* Docket 465 at 5; Docket 491 at 3 n.1 (Buergofol providing the bates numbers and describing the documents as "relat[ing] to warranty claims submitted by Buergofol's customer Startex in 2010-2012); Docket 459-3. Omega claims that it needs this information because Buergofol has regularly claimed that it does not have documents related to any inner film sales that took place before the critical date of March 11, 2012. Docket 465 at 5. Thus, Omega asserts that the pre-critical date customer complaints relate to Buergofol's potential prior art sales and are relevant to Omega's invalidity defense. *Id.* Omega also claims that

---

and that the arguments in the initial briefing apply in equal force to the later motion. *See* Docket 539.

2

the information is relevant in responding to an argument Buergofol made during the United States Patent and Trademark Office (USPTO) *Inter Partes* Review, where Buergofol argued that Buergofol's inventors first discovered problems with inner film tearing in the spring of 2012. Docket 465 at 5-6; Docket 465-2 at 11-12, 37-38. According to Omega, the complaints made by Saertex before the spring of 2012 contradict Buergofol's arguments and support Omega's invalidity defense. Docket 465 at 6.

Buergofol recognizes that the documents are relevant and asserts that the question is not whether the documents *should* be produced, but rather, *how* they should be produced. Docket 491 at 3.[3]

## LEGAL STANDARD

When a party's attempt to designate documents as AEO under a protective order is challenged, the party may move for a protective order to shield it "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Est. of Price by & through Price v.*

---

[3] In its initial brief, Buergofol asserts that Omega has failed to show need for the documents. Docket 457 at 12-14 (Buergofol explaining that Omega has only indicated need for the documents for use during the *Inter Partes* Review (IPR) proceeding). Buergofol's arguments, however, center around discussions that occurred before Buergofol filed its brief and before (apparently) Buergofol read Omega's September 3, 2024, letter detailing Omega's need for the information. *See id.*; *see also* Docket 465 at 4; Docket 465-1. Buergofol does not address the reasons Omega provided in Omega's responsive brief or September letter in its reply brief. *See generally* Docket 491. Buergofol's argument is entirely fixated on Omega's potential use of the document during the IPR, which has now concluded. *Id.* at 11-13; Docket 668 (notice to the court that the IPR had concluded). In any event, the court finds that Omega has articulated a need for the complaints in preparing its invalidity defense.

*Turn Key Health Clinics, LLC*, 2024 WL 2290583, at *1 (W.D. Ark. May 21, 2024). Under Federal Rule of Civil Procedure 26, the court may "require[] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). The moving party bears the burden of showing good cause for a protective order. *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973); *see also* Docket 131 at 8 (the court's protective order stating that "[t]he burden of persuasion" is on the designating party). To show good cause, the party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gen. Dynamics Corp.*, 481 F.2d at 1212 (citation omitted).

Courts must consider "the relative hardship to the non-moving party should the protective order be granted," *id.*, and "balance whether the potential harm to the [moving] party of unrestricted disclosure of confidential information outweighs the public interest in disclosure," *Rounds v. The Hartford*, 2021 WL 3487102, at *3 (D.S.D. Aug. 9, 2021); *see also Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, 2021 WL 5095281, at *2 (D. Minn. Mar. 12, 2021) (stating that "courts apply a balancing test to determine whether good cause exists, weighing the moving party's potential burden against the opposing party's interest in the discovery at issue") (cleaned up and citation omitted). But at bottom, the court maintains broad discretion "to decide when a protective order is appropriate and what degree of protection is required."

4

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (citation omitted).

## DISCUSSION

### I. Confidential Information

As an initial matter, the court must answer the threshold question—whether documents must be "confidential" in order to be entitled to a protective order. Omega argues that Buergofol's documents cannot be given an AEO designation because Buergofol has failed to argue that such information is "confidential." Docket 465 at 6-7. In short, Omega argues that because Buergofol has not asserted that the documents are trade secrets or that access to them is otherwise limited, Buergofol may not now restrict access to the documents through the AEO provision. *Id.* Omega highlights that (1) the information was known to and reported by a third party, Saertex, (2) Buergofol did not mark the documents confidential, (3) Buergofol has not shown that it has a non-disclosure agreement with Saertex,[4] and (4) Buergofol openly discussed the contents of the documents in its court briefings. *Id.* at 7. Based on those facts, Omega asserts that Buergofol's filings, on their face, fall outside of the AEO provision, which only applies to "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or Non-Party would

---

[4] Buergofol asserts that it did have a non-disclosure agreement (a "Geheimhaltungsvereinbarung") with Saertex, and breach of that agreement led to Buergofol bringing suit against Saertex. Docket 491 at 13. According to Buergofol, Saertex is still bound by the agreement. *Id.*

create a substantial risk of serious harm that could not be avoided by less restrictive means." *Id.* at 6 (quoting Docket 131¶ 2.8).

Buergofol asserts that under Federal Rule of Civil Procedure 26, courts may impose protective orders for a variety of reasons and restrict access to "many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." Docket 491 at 6 (quoting *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)).

Buergofol is correct that Rule 26, by its express terms, extends to materials beyond trade secrets and implies that the scope of a protective order may include "other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). Thus, courts have found that "[d]ocuments may be protected if, for example, they contain 'information about manufacturing processes, budgeting and finance issues, testing and other matters that would not generally be released for public consumption.' " *Planned Parenthood Ark. & E. Okla. v. Jegley*, 2016 WL 7487914, at *4 (E.D. Ark. Feb. 1, 2016) (quoting *Eggerling v. Advanced Bionics, LLC*, 2013 WL 835974, at *3 (N.D. Iowa Mar. 6, 2013)). But the Supreme Court has stated that the purpose of Rule 26 is to limit the "opportunity . . . for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984). Courts have interpreted the Supreme Court's "reference to harm that would occur 'if' information is 'publicly released,' . . . [as]

presuppos[ing] that the information is not otherwise publicly available." *Eggerling*, 2013 WL 835974, at *3. In short, "[t]he information must, as a threshold matter, be confidential." *Id.*; *see also Dieterich v. Stellar Recovery, Inc.*, 2013 WL 627166, at *3 (D. Colo. Feb. 20, 2013) (denying a motion for protective order for insurance policies because they were not confidential).

Here, Buergofol does not argue that the documents are confidential or rebut Omega's contention that the documents were made available when they were disclosed in Buergofol's German lawsuit against Saertex. *See* Docket 465 at 7. In fact, Buergofol asserts that even publicly known information can be restricted by a protective order. *See* Docket 491 at 7. The court does not find Buergofol's contention compelling; after all, what would be the point in the court restricting the public disclosure of information that is readily available to the public through other means?

Nevertheless, it is not clear from the briefing whether the Saertex complaints are actually publicly available or whether Buergofol has voluntarily disclosed the documents to the public. But the court need not decide this issue because, as discussed below, the court finds that Buergofol has not met the Rule 26 standard for a protective order, even if the documents had been kept confidential.

## II.   Potential Harm to Buergofol

### A. Buergofol's Reputation of Making High Quality Film

Buergofol argues that if the Saertex complaints are made publicly available, "Buergofol's reputation for producing the highest quality UV CIPP

7

film in the world" would be damaged. Docket 457 at 14. Buergofol claims that the documents describe "fabricated or exaggerated" problems with Buergofol's film to "cover up" Saertex's own operations problems. *Id.* at 14-15. For example, one of the documents states that there were "massive problems with [Buergofol's] film bursting at [Saertex's] installation sites," but Buergofol claims those "problems" were a result of Saertex's poor installation techniques and part of a scheme for Saertex to obtain lower prices from Buergofol. *Id.* at 15. Essentially, Buergofol argues that there was nothing wrong with its film and Saertex's complaints were prompted by improper motives. *See id.* at 15-16 (stating the spots and creases that Saertex complains of did not affect the film quality and that Saertex used the complaints to justify its attempt to get a new film supplier). If the documents are disclosed to the public, Buergofol anticipates that its reputation for making quality film and ability to obtain new customers will be diminished. *Id.* at 16; Docket 458 at 2-3 (declaration from Buergofol's CEO, Gregor Schleicher, opining that, based on his experience in the industry, Buergofol's reputation would be harmed by disclosure).

In response, Omega notes that Buergofol's extensive discussion of the perceived issues with its films in open court filings, *see* Docket 457 at 15-16; Docket 458 at 2-3; Docket 491 at 9-10, diminishes Buergofol's claim that its reputation will be harmed by public knowledge of Saertex's complaints, Docket 465 at 7-8. Omega goes further to state that Buergofol does not have a reputation for producing the best film because, in Buergofol's own filings, it states that it has a 2% defect rate. *Id.* at 8; *see also* Docket 458 at 3

(Buergofol's CEO stating that "only a couple percent of Buergofol's products were defective, which was a good quota for UV-CIPP film.").

The court finds that Buergofol's arguments are unavailing. As noted above, a party may not employ stereotyped predictions of harm. *Gen. Dynamics Corp.*, 481 F.2d at 1212. "While preventing embarrassment may be a factor satisfying the 'good cause' standard, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious." *Miscellaneous Docket*, 197 F.3d at 926 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)); *Morrow v. City of Tenaha*, 2010 WL 3927969, at *3 (E.D. Tex. Oct. 5, 2010) (collecting cases where "courts have held that mere embarrassment, without a demonstration that the embarrassment will be particularly serious or substantial, is not enough to demonstrate good cause for a protective order"). This is particularly difficult for businesses, because businesses typically measure harm in monetary terms, they must specifically demonstrate that public disclosure would significantly damage their competitive or financial standing. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986). "General allegations of injury to reputation and client relationships or embarrassment that may result from dissemination of . . . documents is insufficient" to satisfy the good cause standard. *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 484 (3d Cir. 1995) (finding that a party's statements regarding potential economic losses and harm to the business's reputation in the eyes of its clients and the public did not rise to the level of good cause).

9

Here, Buergofol baldly claims that Saertex's complaints will damage its reputation as a state-of-the-art film supplier, particularly because Saertex made several misrepresentations. Docket 457 at 17. But it is only "[w]here a party will suffer *unreasonable* . . . embarrassment, protective orders should be granted." *Ericson v. Ford Motor Co.*, 107 F.R.D. 92, 94 (E.D. Ark. 1985) (emphasis added). "A burden which litigants in our society must bear is that sometimes the public may learn of information which the litigant would rather the public not know." *Id.*; *see also Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993), *order clarified,* 153 F.R.D. 614 (N.D. Ill. 1993) ("Although the information regarding . . . the corporation's knowledge of [product issues] may be embarrassing and incriminating, this alone is insufficient to bar public disclosure.").

Clearly, Buergofol would prefer that complaints about its product not be made public, but beyond Schleicher's declaration generally asserting (based on his experience) that harm will occur, Buergofol has not alleged that it will suffer *substantial* or *unreasonable* reputational damage. Buergofol, as the plaintiff, brought this suit and should have anticipated that it was putting its business and product into the spotlight. Further, as Omega points out, Buergofol had no qualms about discussing the alleged problems in its brief and declaration. *See* Docket 465 at 7-8; Docket 458 at 2-3.[5] If Buergofol's

---

[5] It is not clear from the briefing, but it appears that the Saertex complaints also played a role in Buergofol's German lawsuit against Saertex, which also shows Buergofol's willingness to air the complaints in a public forum without regard to Buergofol's reputation. *See* Docket 465 at 7 (Omega asserting that the

reputation was truly so fragile, this briefing alone would be devastating. Thus, the court finds that Buergofol's first example of "particularized harm" does not show sufficient injury to warrant a protective order.

### B. Buergofol's Reputation for Customer Relations

Next, Buergofol argues that making the documents public would harm Buergofol's reputation as a quality business partner in the eyes of its current and potential customers. Docket 457 at 17. Buergofol asserts that "in Germany customers have a high expectation that their suppliers will keep the customer's product and operational problems confidential. *Id.*; Docket 458 at 2 (Schleicher stating that in his experience "executives of customers in [Buergofol's] industry in Germany do not appreciate or accept the disclosure of what they consider to be their confidential information to anyone outside the manufacturer/customer relationship, for any reason"). If the information is made available, Buergofol claims its reputation as a reliable business partner who can be trusted with confidential information will be damaged. Docket 457 at 17-18.

Omega asserts that Buergofol simply does not have a reputation for being a reliable business partner, as evidenced by the fact that "Buergofol sued a customer (Omega) for patent infringement *for film Buergofol sold the customer.*" Docket 465 at 7.

---

German lawsuit involved evidence of issues that Saertex had with Buergofol's film); Docket 491 at 13-17 (Buergofol stating that the fact that information regarding some of the problems with Buergofol's films were discussed in the court papers in Germany does not diminish Buergofol's need for the AEO designation).

Again, the court finds that Buergofol has failed to show that a substantial injury to its reputation will result from disclosure of the documents. *Ericson*, 107 F.R.D. at 94. In the past, Buergofol sued Saertex and put this exact information at issue. It seems that Buergofol's reputation persevered, despite that disclosure, because Buergofol is still in business. Thus, the court finds that Buergofol's second example of "particularized harm" also falls short of the good cause standard and Buergofol has failed to meet its burden for a protective order.

### III.  Attorney's Fees

Omega requests that it be awarded attorney's fees and costs for having to challenge Buergofol's AEO designation and file its responsive brief. Docket 465 at 9. Federal Rule of Civil Procedure 37(a)(5) provides that "[i]f the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees . . . [unless] the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). "The party resisting sanctions bears the burden of showing that its position was substantially justified." *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 2022 WL 3010143, at *8 (D.S.D. July 29, 2022) (quotation omitted).

A position is "substantially justified" if it "was justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.

12

To warrant such a characterization, the position must have reasonable basis both in law and fact." *In re Nat'l Hockey League Players' Concussion Inj. Litig.*, 2017 WL 3276873, at *2 (D. Minn. July 31, 2017) (quoting *Conklin v. Astrue*, 282 F. App'x 488, 489 (8th Cir. 2008)). At its core, "substantial justification means that 'reasonable minds could differ as to whether the party was justified in resisting the discovery sought.' " *Jim Hawk*, 2022 WL 3010143, at *8 (quoting *Kirschenman v. Auto-Owners Ins.*, 2012 WL 1493833, at *1 (D.S.D. Apr. 27, 2012)).

Omega argues that Buergofol "fail[ed] to even attempt to show that the information qualifies as AEO . . . [and] Buergofol's persistence by seeking to retain the designation through [c]ourt intervention . . . forced Omega to incur unnecessary expenses." Docket 465 at 9. The court agrees. Based on these facts and the discussion above, the court finds that Buergofol's motion to retain confidentiality was not substantially justified. Thus, the court finds that awarding fees and expenses incurred by Omega due to Buergofol's unjustified motions is appropriate.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Buergofol's motions (Docket 457, Docket 463, Docket 539) to retain the AEO designation and for protective order are DENIED. It is

FURTHER ORDERED that Omega's motion for attorney's fees is granted. Omega shall file an affidavit and a detailed accounting of the time spent preparing and litigating the instant motion. The affidavit shall also set forth a

13

reasonable rate for attorney's fees that Omega believes it is entitled to. Buergofol shall have twenty-one (21) days to respond in opposition thereto. Omega may file a reply within fourteen (14) days after service of Buergofol's response.

    Dated June 2, 2025.

                              BY THE COURT:

                              /s/ *Karen E. Schreier*
                              KAREN E. SCHREIER
                              UNITED STATES DISTRICT JUDGE