UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH, | 4:22-CV-04112-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING MOTION TO RETAIN CONFIDENTIALITY |
| OMEGA LINER COMPANY, INC., | |
| Defendant. | |

Defendant, Omega, produced several documents under the "CONFIDENTIAL" provision of the operative protective order (Docket 131). Docket 467. Because Buergofol challenged the designation, the parties met and conferred on the issue, but no agreement was reached. Docket 468 at 4-6; Docket 131 at 7 (requiring the parties to meet and confer about a challenged designation). Now, pursuant to section 6.3 of the protective order, Docket 131 at 8, Omega moves to retain the confidentiality of the documents, Docket 467; Docket 468. Buergofol opposes the motion. Docket 503. The court issues the following order.

**BACKGROUND**

At issue are three categories of information: (1) liner information sheets, (2) dry line work sheets, and (3) stringing quality audit sheets. Docket 468 at 1, 3. According to Omega, the dry liner information sheets are essentially "work

orders" that detail the customer's name, the name of the project for which the Omega product was bought, the product specifications, date of purchase, and cost. Docket 469 ¶ 3. The dry line work sheets are internal documents that list "the labor and raw materials used to manufacture a particular liner" and such documents, when used with the liner information sheets, could be used to determine the labor and raw materials used to make a particular liner that was sold to a specific customer for a certain project. *Id.* ¶ 4. The stringing quality sheets are also internal documents, not shared with customers or third parties, that include information regarding Omega's suppliers, manufacturing dates, and product specifications. *Id.* ¶ 5. In sum, the documents disclose "the identity of Omega's customers and details of sales made to those customers (i.e., the amount of product sold, the type of product sold, the date of the sale, and the projects for which those sales were made)." Docket 468 at 3. Believing the documents to be extremely sensitive and that disclosure "could create a substantial risk of harm in the hands of a competitor," Omega originally produced the documents, which span roughly 2,800 pages, under the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" provision of the protective order. *Id.* at 3-4. Omega has since re-designated the documents under the lesser, "CONFIDENTIAL" standard. *Id.* at 6.

Buergofol argues that Omega has failed to meet the burden required for a protective order, that the documents do not contain valuable confidential information, and that the disclosure of such information will not cause Omega

particularized harm. *See generally* Docket 503. Both parties request attorney's fees. *Id.* at 29-30; Docket 513 at 15.

## LEGAL STANDARD

When a party's attempt to designate documents as "Confidential" under a protective order is challenged, the party may move for a protective order to shield it "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Est. of Price by & through Price v. Turn Key Health Clinics, LLC*, 2024 WL 2290583, at *1 (W.D. Ark. May 21, 2024). Under Federal Rule of Civil Procedure 26, a protective order may be imposed to protect "confidential research, development, or commercial information" from public disclosure. Fed. R. Civ. P. 26(c)(1)(G). "Documents may be protected if, for example, they contain 'information about manufacturing processes, budgeting and finance issues, testing and other matters that would not generally be released for public consumption.' " *Planned Parenthood Ark. & E. Okla. v. Jegley*, 2016 WL 7487914, at *4 (E.D. Ark. Feb. 1, 2016) (quoting *Eggerling v. Advanced Bionics, LLC*, 2013 WL 835974, at *3 (N.D. Iowa Mar. 6, 2013)). Pursuant to a protective order, the court may order that such information "not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

The moving party bears the burden of showing good cause for a protective order. *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973); *see also* Docket 131 at 8 (the court's protective order stating that "[t]he burden of persuasion" is on the designating party). To show good

cause, the party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gen. Dynamics Corp.*, 481 F.2d at 1212 (citation omitted).

Courts must consider "the relative hardship to the non-moving party should the protective order be granted," *id.*, and "balance whether the potential harm to the [moving] party of unrestricted disclosure of confidential information outweighs the public interest in disclosure," *Rounds v. Hartford*, 2021 WL 3487102, at *3 (D.S.D. Aug. 9, 2021); *see also Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, 2021 WL 5095281, at *2 (D. Minn. Mar. 12, 2021) (stating that "courts apply a balancing test to determine whether good cause exists, weighing the moving party's potential burden against the opposing party's interest in the discovery at issue") (cleaned up and citation omitted). But at bottom, the court maintains broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (citation omitted).

## DISCUSSION

### I.    Harm to Omega

As noted above, the court must first determine the harm Omega may face if the documents are made publicly available. Omega has explained that the liner information sheets can be used together with the dry line work sheets to "tell the story of the labor and precise raw materials used to manufacture a particular liner sold to a particular customer for a particular project on a

4

particular date." Docket 468 at 9; *see also* Docket 477 at 9 (Omega's opposition to Buergofol's motion to compel this information discussing the four-step process for using the documents together to gather additional information); Docket 445-13 (email from Omega to Buergofol explaining the step-by-step process for using the document types to cross-reference information in detail). The categories of documents themselves contain commercially sensitive information but can also be used in the aggerate by a competitor to create a clearer picture of Omega's inner workings. *Id.* at 9-10.

Omega asserts that it has invested substantial time and resources in (1) marketing to potential customers, (2) educating those potential customers on Omega's products, and (3) building lasting relationships with those customers. *Id.* at 10. If the documents become public, Omega will be placed at a commercial disadvantage and a competitor could "rapidly start pursuing" Omega's current and potential clients. *Id.*

Buergofol makes several arguments as to why the harm Omega describes does not warrant a protective order. The court will address each in turn.

### A. Publicly available information

Buergofol argues that the contested documents cannot be protected because the information is otherwise publicly available. Docket 503 at 5, 23-24. Buergofol asserts that Omega's customers (Subsurface and HK Solutions) and its suppliers (Viaflex, Sudpack, and Buergofol) are already publicly known and, thus, Omega cannot be harmed by the disclosure of that information through the documents. *Id.*

Omega does not dispute that its suppliers, Docket 513 at 10, and some of its customers have been publicly disclosed, *id.* at 7. But Omega does note that the other information in the documents—such as pricing, purchase date, and product specifications—has not been made available. *Id.* Moreover, while the identity of Omega's suppliers and customers may be available, Omega highlights that the extent of Omega's relationships with those companies is not generally known. *Id.* at 8.

The court agrees with Omega. The fact that *some* of the material contained in Omega's liner sheets and stringing quality audit sheets is publicly available does not mean *all* of the information in the documents should also be publicly available. Additionally, Omega states that it intends to protect the inferences that can be gleaned from use of the public and non-public materials together. Courts have held that even public information can be protected from disclosure when it is combined or compiled in unique ways that make it competitively advantageous. *See Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 655 F. Supp. 3d 825, 845 (D.S.D. 2023) (stating "the fact that some or even most of the information was publicly available is not dispositive . . ." because the value is created in the "time and resources" used to compile or combine the information) (citation omitted). "[T]he effort of compiling useful information is, of itself, entitled to protection even if the information is otherwise generally known." *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.,* 663 F.3d 966, 972 (8th Cir. 2011). So, "while pieces of information may be made public . . . that information may

6

nonetheless continue to be combined in unique ways that give [a party] a competitive advantage." *Protégé Biomedical, LLC v. Z-Medica, LLC*, 394 F. Supp. 3d 924, 939 (D. Minn. 2019). As such, the court does not find it dispositive that Omega's suppliers and some of its customers are publicly known.

### B. Categorization of documents

Buergofol also takes issue with how Omega has chosen to describe the potential harm Omega would face if the documents were publicly available. Docket 503 at 13. Buergofol states that it "challenges the designation of particular documents, and Omega must show the harm resulting from disclosing those particular documents." *Id.* It challenges "the confidentiality designation of 2,801 individual, particular sheets, not the designation of document categories." *Id.* Essentially, Buergofol disputes Omega's categorical description of the harm it will suffer and believes Omega should point to a specific document and explain how the disclosure of that document will harm Omega. *See id.* at 13-14 (stating Omega has not provided a "specific example of harm" based on the disclosure of "any particular . . . document"); *id.* at 17 (noting "Omega provides no specific example of harm that would result from the public disclosure of any particular dry line worksheet"). According to Buergofol, Omega's assertion that it will face competitive setbacks if the documents are made public is not specific enough to meet the "good cause" standard. *Id.* at 13-24.

As explained above, "[t]o establish good cause, th[e] party opposing disclosure must submit 'a particular and specific demonstration of fact, as

distinguished from stereotyped and conclusory statements.' " *Bussing v. COR Clearing, LLC*, 2015 WL 4077993, at *3 (D. Neb. July 6, 2015) (quoting *Layne Christensen Co. v. Purolite Co.,* 271 F.R.D. 240, 244 (D. Kan. 2010)). But courts do not require parties to "demonstrate, on a document-by-document basis, each item worthy of protection[, p]rovided the moving party makes a threshold showing of good cause." *Id.*

Here, Omega has broadly, but sufficiently, described three categories of documents, explained the confidential information each category contains, and described how the disclosure of each document type will harm Omega. *See* Docket 468 at 8-11. *Cf. Bussing*, 2015 WL 4077993, at *3 (finding that a party's " 'customer information' and business, strategic, and sales and marketing plans" were not entitled to protection because the party seeking protection did not describe the documents in the categories, the measures taken to protect the information, or the harm that would result from the disclosure).

Notably, Omega explained that the documents can be used (whether independently or together) to reveal Omega's internal information related to its specific customers, sales, customer projects, labor costs, and liner specifications. *See* Docket 468 at 8-11; Docket 513 at 6-11. This is precisely the type of information courts regularly protect. *See Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 2023 WL 356121, at *11 (D.S.D. Jan. 23, 2023) (noting cases where customer and financial information has been protected through Attorney's Eyes Only provisions).

Omega has also noted that its information is not shared outside of its organization and its customers sign non-disclosures agreements. Docket 468 at 10; Docket 513 at 8-10.

Thus, the court finds that Omega need not describe on a document-by-document basis how it may be harmed by the disclosure of the three categories of documents. Omega has explained the documents and potential harm with adequate specificity.

### C. Information available on individual sheets

Next, Buergofol argues that Omega has not shown that the documents at issue each truly disclose sensitive information. Docket 503 at 13-23. Buergofol presents an example of a liner sheet, *id.* at 14-15, a dry line worksheet, *id.* at 18, 20-21, and a stringing quality audit sheet, *id.* at 22, and highlights that it does not contain the information Omega claims it contains. For example, Buergofol points to liner information sheet OMEG-04410. *Id.* at 14-15. OMEG-04410 lists only "STOCK" as the customer, is not a work order, and does not disclose any sales information, purchase price, customer project, or delivery site. *Id.* Because the sheet does not disclose such information, Buergofol argues that it has been over-designated. *Id.*[1]

But, as noted above, Omega need not show, on a document-by-document basis, that each individual document must be protected. *Bussing*, 2015 WL

---

[1] Buergofol also argues that the documents cannot be used together to find additional information. *See* Docket 503 at 13-23. But Omega already described the process for doing so and the court evaluated the process in addressing Buergofol's motion to compel. Docket 684 at 16-17.

4077993, at *3. Although OMEG-04410 does not contain a customer name, Buergofol notes that only 24 of the 142 liner information sheets do not mention a particular customer. Docket 503 at 15-16. Moreover, as Omega points out, OMEG-04410 includes information related to the liner's specifications (length, thickness, and diameter), date of sale, and weight, which Omega also wants to keep confidential. *Id.* at 14; Docket 513 at 7. The fact that all of the individual documents within the 2,000-document set do not contain every element of data that Omega wants to keep confidential does not render the whole set unworthy of protection.

### D. Value of Omega's information and likelihood of harm

Buergofol contends that neither the documents at issue nor any other information in Omega's possession is commercially valuable because "making UV-CIPP liners as Omega does is nothing special." Docket 503 at 28. It further asserts that a new competitor could easily enter the market and replicate Omega's operations. *Id.* The court finds that this argument actually undermines Buergofol's position. If it is easy for a competitor to enter Omega's market, it is more critical, rather than less, to protect the information that differentiates Omega from others. Omega's product specifications, customer relationships, shipping practices, and material selections—developed through time and resources investment—may be the only factors that set it apart from competitors.

Buergofol also argues that public disclosure of the documents would not harm Omega because a competitor is unlikely to poach its customers. *Id.* at 25-

10

26; *see also* Docket 468 at 10 (Omega stating a competitor could use the documents to pursue Omega's customers). Specifically, Buergofol points out that Subsurface, one of Omega's known customers, shares much of the same ownership with Omega and thus would not engage a competitor. Docket 503 at 26. It also claims that Omega's other customer, HK Solutions, is a prominent liner manufacturer that a competitor would know to pursue even without Omega's documents. *Id.*

Buergofol's point is well taken in regard to Subsurface. But the court finds that disclosing the documents may place a competitor at a heightened advantage in regard to HK Solutions. The documents contain more than just HK Solutions' identity. They reveal the quantity of product purchased, the materials used, and the timing of the purchases. This information would allow a competitor a window into the company's needs and buying patterns that it would not be able to glean from publicly available information. Thus, the court finds that Omega does face a real danger of losing customers to competitors.

## II. Public Interest

Finally, the court must balance the harm Omega may face upon the disclosure of the documents with the public's interest in open access to judicial proceedings. *Rounds*, 2021 WL 3487102, at *3; *see also Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 484 (3d Cir. 1995) (noting a "strong public interest in open proceedings"). Courts find that "[c]ircumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety and when the sharing of information

11

among litigants would promote fairness and efficiency." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 787 (3d Cir. 1994) (cleaned up and citation omitted).

Here, Buergofol has not articulated any particular public interest in disclosing Omega's commercial information beyond the general goal of litigation transparency. Docket 503 at 8-9. The court finds that the harm Omega would encounter if the documents are made public outweighs this general public interest.

### III.    Attorney's Fees

Omega requests that it be awarded attorney's fees and costs for having to defend its "CONFIDENTIAL" designation and file its supporting briefs. Docket 513 at 15. Federal Rule of Civil Procedure 37(a)(5) provides that "[i]f the motion is granted, the court must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees . . . [unless the motion] was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). "The party resisting sanctions bears the burden of showing that its position was substantially justified." *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 2022 WL 3010143, at *8 (D.S.D. July 29, 2022) (quotation omitted).

A position is "substantially justified" if it "was justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. To warrant such a characterization, the position must have reasonable basis both in law and fact." *In re Nat'l Hockey League Players' Concussion Inj. Litig.*,

2017 WL 3276873, at *2 (D. Minn. July 31, 2017) (quoting *Conklin v. Astrue*, 282 F. App'x 488, 489 (8th Cir. 2008)). At its core, "substantial justification means that 'reasonable minds could differ as to whether the party was justified in resisting the discovery sought.'" *Jim Hawk*, 2022 WL 3010143, at *8 (quoting *Kirschenman v. Auto-Owners Ins.*, 2012 WL 1493833, at *1 (D.S.D. Apr. 27, 2012)).

Omega argues that it explained the need for the designation prior to filing its brief, but Buergofol failed to explain its reasons for objecting and Buergofol's position, as later explained in the briefing, is not substantially justified. Docket 513 at 15; Docket 468 at 12. The court agrees. Based on these facts and the discussion above, the court finds that Buergofol's opposition to Omega's motion to retain confidentiality was not substantially justified. Thus, the court finds that awarding fees and expenses incurred by Omega due to Buergofol's unjustified opposition is appropriate.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Omega's motion to retain confidentiality (Docket 467) is GRANTED. It is

FURTHER ORDERED that Omega's motion for attorney's fees is granted. Omega shall file an affidavit and a detailed accounting of the time spent preparing and litigating the instant motion. The affidavit shall also set forth a reasonable rate for attorney's fees to which Omega believes it is entitled. Buergofol shall have twenty-one (21) days to respond in opposition thereto.

13

Omega may file a reply within fourteen (14) days after service of Buergofol's response.

      Dated June 5, 2025.

                    BY THE COURT:


                    /s/ *Karen E. Schreier*
                    KAREN E. SCHREIER
                    UNITED STATES DISTRICT JUDGE