UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br>ORDER DENYING MOTION TO DETERMINE SUFFICIENCY OF OMEGA'S OBJECTIONS AND RESPONSES TO RFA NOS. 20-21 AND 23-25 |

Plaintiff, Buergofol, moves to determine the sufficiency of defendant, Omega's, objections and responses to Buergofol's requests for admission (RFA) No. 20-21 and 23-25 pursuant to Federal Rule of Civil Procedure 36(a)(6). Docket 541. Buergofol also moves for an award of its reasonable expenses for bringing this motion. *Id.* Omega opposes the motion and moves for an award of its attorney's fees. *See* Docket 574. The court issues the following order.

## BACKGROUND

On July 16, 2024, Buergofol served RFAs No. 18-25 on Omega.[1] Docket 543-1. As relevant here, RFAs 20-21 and 23-25 provided:

> RFA 20: Admit that prior to January 2020, OMEGA had never made and sold an OMEGA LINER that had an outer film that did not at least partially reflect and/or absorb UV RADIATION.

---

[1] The document Buergofol served on Omega was titled as "Requests for Admission to Omega (Set Five) (Nos. 18-25)," but Buergofol only served RFAs No. 19-25 on Omega. *See* Docket 543-2 at 2.

> RFA 21: Admit that prior to January 2020, OMEGA had never made and sold an OMEGA LINER that had an outer film (as an externally situated tube) that was not impermeable to liquids, and that did not at least partially reflect and/or at least partially absorb UV radiation and/or short-wave, visible light.
>
> RFA 23: Admit that each of the following OMEGA LINGERS had an outer film, where that outer film was supplied by Buergofol: [the list of OMEGA LINERS is omitted here]
>
> RFA 24: Admit that each of the following OMEGA LINERS had an inner film, where that inner film was supplied by Buergofol: [the list of OMEGA LINERS is omitted here]
>
> RFA 25: Admit that each of the following OMEGA LINERS had an inner film, where that inner film was supplied by Buergofol: [the list of OMEGA LINERS is omitted here].

Docket 542 at 4; *see* Docket 543-1. RFA 23 included a list of 457 Omega liners; RFA 24 included a list of 440 Omega liners; and RFA 25 included a list of 22 Omega liners. *See* Docket 543-1 at 5-13.

Omega served its objections and responses to Buergofol's requests for admission on August 13, 2024. Docket 543-2. In response to RFAs 20 and 21, Omega stated that it was "unable to admit or deny the request[s]" based on three objections. *See id.* at 3-5. Specifically, Omega objected to Buergofol's (1) definition of the term "UV RADIATION," (2) use of patent terms that improperly requested legal conclusions, and (3) phrasing of the requests "as improperly compound, as well as vague and ambiguous, in its use of the term 'and/or.' " *Id.* In response to RFAs 23, 24, and 25, Omega also raised three objections. *Id.* at 10-17. Omega first objected on the basis that the requests violated Rule 36's requirement that "[e]ach matter must be separately stated." *Id.* at 10, 15-17 (quoting Fed. R. Civ. P. 36). Omega next objected on the grounds that "the facts

2

requested to be admitted are not ascertainable by mere examination of the request and answer; nor can they be responded to without requiring reliance on extensive documentation outside the request itself." *Id.* Omega last objected on the basis that the RFAs were "attempt[s] to circumvent Fed. R. Civ. P. 33 [to] discover facts, which are more appropriately discoverable by document requests and interrogatories." *Id.*

On August 16, 2024, Buergofol sent Omega an email indicating that Omega's objections and responses to Buergofol's RFAs 20-21 and 23-25 were insufficient. *See* Docket 575-1 at 2; Docket 544 ¶ 2. The parties met and conferred regarding Omega's objections and responses on August 27, 2024.[2] Docket 544 ¶ 3; Docket 575 ¶ 3. Regarding RFAs 20 and 21, Buergofol reiterated that Omega's responses were insufficient and evasive. Docket 544 ¶ 4. Omega indicated it was "agreeable to Buergofol serving amended requests that were not compound, and that, if Buergofol did so, it would not count those amended requests against any limit that might exist on the number of requests to be served." Docket 575 ¶ 3. Buergofol denied Omega's suggestion. *Id.* The parties also disagreed as to whether there is a limitation on the number of requests for admission one party can serve on another. *Id.*; Docket 544 ¶ 5. Ultimately, the parties were unable to resolve the disputes surrounding Omega's objections and responses. *See* Docket 544 ¶ 6. On November 15,

---

[2] Buergofol filed a certification in compliance with Local Rule 37.1 demonstrating that the parties have attempted to resolve the current discovery dispute in good faith. *See* Docket 544. As such, the court finds that the parties have satisfied the meet-and-confer requirement pursuant to Federal Rule of Civil Procedure 26(c)(1) and D.S.D. Local Rule 37.1.

3

2024, Buergofol filed this motion to determine the sufficiency of Omega's objections and responses to RFAs 20-21 and 23-25. Docket 541.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 36(a)(1), "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to (A) facts, the application of law to fact, or opinions about either, and (B) the genuineness of any described document." Fed. R. Civ. P. 36(a)(1). Where a party seeks to challenge the answering party's objection or response, Federal Rule of Civil Procedure 36(a)(6) provides:

> The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.

Fed. R. Civ. P. 36(a)(6).

"The purpose of requests to admit pursuant to Rule 36 are to save parties from having to expend time and money proving facts which are readily ascertainable by the other party and not reasonably capable of dispute." *Stormo v. City of Sioux Falls*, 2015 WL 4877504, at *1 (D.S.D. Aug. 14, 2015). Further, "[w]hile a request for admission may properly pertain to 'the application of law to fact,' pure legal conclusions, or the truth of a legal conclusion, are out of bounds." *Aventure Commc'ns Tech., L.L.C. v. MCI Commc'ns Servs., Inc.*, 2008 WL 4280371, at *1 (N.D. Iowa Sept. 16, 2008) (quoting Fed. R. Civ. P. 36(a)). Thus, "it is improper to request a party to admit a pure matter of law." *Streck,*

4

*Inc. v. Research & Diagnostic Sysms., Inc.*, 2009 WL 1616629, at *2 (D. Neb. June 4, 2009). "[W]hether a patent is valid calls for a legal conclusion although its answer may depend upon factual inquiries . . . Correspondingly, claim validity . . . is also a legal conclusion subject to the many facts which seemingly swirl about such issues." *Id.* (quoting *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 130 F.R.D. 92, 96 (N.D. Ind. 1990)).

## DISCUSSION

### I. Requests for Admission No. 20-21

Buergofol moves this court "to overrule all of Omega's objections and for a determination that Omega's response to RFAs 20-21 is insufficient." Docket 542 at 6. The court addresses each of Omega's three main objections to RFAs 20-21 in turn. *See* Docket 543-2 at 3-5.

First, in response to RFA 20, Omega objected to Buergofol's proposed definition of the term "UV RADIATION" as "vague and ambiguous in its statement that the term is a 'non-patent term.' " Docket 542-1 at 3. As Omega explained in its objection, the term is "expressly used in the '882 Patent . . . under which Buergofol asserts claim of patent infringement against Omega," and as such, "object[ed] to applying the term, unless in the context of the '882 Patent." *Id.* In its RFAs, Buergofol expressly defined UV radiation as a "non-patent term, defined here, that is not to be interpreted in view of patent law nor any patent document, that means electromagnetic radiation in a wavelength range from 200nm to 400 nm." Docket 543-1 at 3. Despite Buergofol's efforts to define the term as a non-patent term, in the joint claim construction chart filed

5

by the parties, Buergofol proposed to define UV radiation "in the claim term [as] electromagnetic radiation in a wavelength range from 200 to 400 nm." Docket 553-1 at 3. While Buergofol claims that RFA 20 "is drafted to be purely factual," Buergofol may not simply take the term "UV RADIATION" outside the claims of the patents, especially where it offers the same definition for the term in the claims of the '882 patent.[3] Docket 542 at 14. Thus, the court finds that Omega's objection to RFA 20 in Buergofol's definition of "UV RADIATION" is sufficient.

Second, Buergofol argues that Omega's objections and responses to RFAs 20-21 are insufficient because the RFAs do not require Omega to make legal conclusions. *See* Docket 542 at 12-15; Docket 588 at 7-13 (arguing the requests in RFAs 20-21 are "purely factual" requests). Omega argues that RFAs 20-21 are improper because the RFAs are "directed toward applying the claims of the patent or application of the claims of the patent prior to claim construction and, therefore, are improper requests for legal conclusions." Docket 543-2 at 4-5; *see also* Docket 574 at 11 (arguing that "the entire purpose of RFA Nos. 20 and 21 is for Omega to admit that its accused UV CIPP liners practice certain limitations of the '882 and '269 Patents and therefore

---

[3] Further, the court agrees with Omega that it is unclear how relevant answering RFA 20 would be if the court were to accept Buergofol's contention that "UV RADIATION" is a non-patent term. *See* Docket 574 at 11-12. At a minimum, requiring Omega to answer RFA 20 would create a confusing result because the requests ask for Omega's responses based upon Buergofol's interpretation of claim terms "which will not necessarily govern this action." *See Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, 2007 WL 128962, at *2 (D. Utah Jan. 11, 2007).

infringe the patents-in-suit"). Omega also notes that the terms are "taken out of context from the claim element" because Buergofol omits certain claim language of the patents. Docket 543-2 at 4-5.

    Here, the court finds that Omega's responses and objections to RFAs 20-21 are sufficient because the court has not yet engaged in claim construction. Both parties have now filed a joint claim construction chart, *see* Docket 553-1, and within that chart, the parties offer conflicting definitions for terms squarely at issue in RFAs 20-21, *see id.* at 3-7 (offering proposed definitions for "film . . . which reflects and/or absorbs UV radiation and/or short-wave, visible light" and "an opaque . . . film that . . . at least partially reflects or absorbs UV radiation or visible light of short wavelengths"). The parties also disagree as to the impact of these proposed definitions. *See id.* (Buergofol arguing that its definitions "will not impact validity or infringement," whereas Omega argues that its proposed definitions will impact infringement.). Because the court has not yet construed these terms, there is no law for Omega to apply in responding to RFAs 20-21. *See, e.g.*, *Tulip Computs. Int'l, B.V. v. Dell Comput. Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (denying party's request for a more adequate response where claim construction of patent terms had not yet occurred). As such, the court finds that Buergofol's RFAs 20-21 are premature, and that Omega's objection is sufficient.

    Third, Omega argues that RFAs 20-21 are improper because the RFAs violate Rule 36's requirement that "[e]ach matter must be separately stated," Docket 543-1 at 4-5 (quoting Fed. R. Civ. P. 36), and are "improperly

7

compound, as well as vague and ambiguous, in its use of the term 'and/or,' " *id.* The court does not find that the mere presence of the term "and/or" automatically means that the RFAs are improperly compound, however, "[t]he requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification." *Bos. Sci. Scimed, Inc. v. ev3, Inc.*, 2007 WL 9734949, at *2 (D. Minn. June 15, 2007) (quoting *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003) (internal quotation marks omitted). Buergofol has not done so here.

As Buergofol itself explains, for Omega to admit RFA 20 would necessarily indicate that "the outer film at least partially reflected UV radiation, or at least partially absorbed UV radiation, or both." Docket 588 at 11. Similarly, Buergofol argues that admitting RFA 21 would resolve "pure question[s] of fact," concerning whether the outer film in the liners made or sold by Omega (1) "was not impermeable to liquids," (2) "did not at least partially reflect and/or at least partially absorb UV radiation," and (3) "did not at least partially reflect and/or at least partially absorb short-wave visible light." *Id.* The court finds that these are improper compound requests that fail to separately state each matter, and as such, the court finds Omega's objection to RFAs 20-21 is sufficient.

8

## II.     Requests for Admission No. 23-25

Omega raised three objections to RFAs 23-25. Docket 543-2 at 10-17. Omega argues RFAs 23-25 are improper because the RFAs (1) "do not separately state the simple factual statements to which an admission is sought," (2) "are unduly burdensome given the extraordinarily large number of separate matters to be admitted," and (3) "are attempts to circumvent Rule 33." Docket 574 at 17-22. Buergofol moves this court to overrule Omega's objections because (1) the answer to each RFA is "ascertainable by mere examination of the request and answer," (2) "each of RFAs 23-25 are but one request," and (3) there is no case law that allows a party to avoid answering a RFA because it may require review of "extensive documentation," or circumvents Rule 33. Docket 542 at 16-17.

As to Omega's first objection, the court agrees with Buergofol that the information Buergofol seeks in RFA 23-25 is "ascertainable by mere examination of the request and answer." *See id.* at 16. It is clear what factual information Buergofol is seeking in RFAs 23-25. And while Omega objects to RFAs 23-25 on the ground that answering would require review of "extensive documentation," *see* Docket 543-2 at 10, 15, 17, requests for admission require a party to make a "reasonable inquiry" to obtain any information that the party has or can readily obtain to either admit or deny, Fed. R. Civ. P. 36(a)(4). This reasonable inquiry requires the answering party "to secure information that is readily obtainable from persons and documents within the responding party's relative control to state fully those efforts." *Iron Workers*

9

*Local No. 60 Annuity Pension Fund v. Solvay Iron Works, Inc.*, 2017 WL 1458772, at *4 (N.D.N.Y. Apr. 24, 2017) (citation omitted). Omega states that answering would require "reliance on extensive documentation outside of the request itself." Docket 543-2 at 10, 15, 17. But Omega has failed to demonstrate that having to review documentation within its control is a sufficient objection for failing to admit or deny a request for admission. As such, the court finds that this objection standing alone is insufficient, however, as explained below, Omega's objection is relevant to its other objections.

As to Omega's objection that RFAs 23-25 are "unduly burdensome" because they request an "extraordinary large number of separate matters," Docket 574 at 22, the court notes that Rule 36 contains no limit on the number of requests for admissions a party may serve, *see* Fed. R. Civ. P. 36. Further, this court's scheduling orders did not place a limitation on the number of requests for admissions one party may serve on another. *See* Docket 136. Thus, "[t]here is . . . no magic number at which requests for admissions are presumptively burdensome; whether the requests for admission are proportional to the case is an entirely case-specific inquiry." *Vermeer Mfg. Co. v. Toro Co.*, 2020 WL 8257205, at *2 (S.D. Iowa Apr. 20, 2020).

Here, the court finds that RFAs 23-25 are not proportional to the needs of this case. RFA 23 requires Omega to admit which of the 457 listed Omega liners contains an outer film supplied by Buergofol. *See* Docket 543-1 at 5-8. Similarly, RFAs 24-25 require Omega to admit which of the 462 listed Omega liners contain an inner film supplied by Buergofol. *Id.* at 9-13. As such,

10

Buergofol is seeking Omega's admission or denial on roughly 900 separate matters.[4] The court finds that RFAs 23-25's list of roughly 900 liners is not proportional to the needs of this case, particularly considering that Omega has already provided Buergofol with the sought-after information—to the extent it is able.

Specifically, for RFAs 24-25, Omega argues that it should not have to respond because the RFAs, which seek Omega's admission that Buergofol was the supplier of certain inner film from 2017-2019, request the same information Buergofol sought from Omega in its previously served Interrogatory No. 12 (No. 12). *See* Docket 574 at 19-20; *see also* Docket 445-1 at 3-46 (requesting Omega identify the manufacturer of its inner film for approximately 2,000 liners, among other information). As such, Omega argues that Buergofol "is improperly attempting to use [RFAs 23-25] as [a] device to discover facts, rather than [as] a procedure for obtaining . . . the record facts already known by it." Docket 574 at 21.

---

[4] While Buergofol listed the roughly 900 liners within three separate requests for admission and argues that this means there are only three requests for admission at issue, in answering RFAs 23-25, Omega would have to individually answer for each listed liner. This is equivalent to Buergofol separately listing each liner as its own request for admission. In construing each liner as a separate request for admission, even Buergofol agrees that answering approximately 900 requests for admission is an undue burden on Omega. *See* Docket 542 at 18 ("If a requesting party goes to extremes in serving a great number of RFAs, for example 1,672 individual RFAs . . . or 544 individual requests . . . then the RFA discovery tool has been abused and answering the requests for admission can be an undue burden on the responding party.").

The court agrees with Omega. Buergofol's RFAs 23-25 circumvent the limit placed upon the number of interrogatories the parties may serve on one another. *See* Docket 136 at 2 (limiting the parties to 30 interrogatories, including subparts). For RFA 23, the court finds that it improperly seeks information that would be better obtained from an interrogatory, which Buergofol has previously attempted. *See* Docket 353 at 12; Docket 353-2 at 3 (Buergofol's Interrogatory No. 7, which sought the name of the supplier of outer film used in Omega's liners).

The court also concludes that the information RFAs 24-25 seek is duplicative considering that Omega, in answering No. 12, has explained to Buergofol that it does not have documentation to confirm who its supplier of inner film was for the liners requested in RFAs 24-25.[5] *See* Docket 478-1 at 49 (explaining that "Omega does not have information sufficient to fully respond to Interrogatory No. 12 because prior to July 2019, Omega did not generally maintain business records relating to the individual components (e.g., inner film) used to make individual liners"). All the listed liners in RFAs 24-25 are from 2017-2019, which appears to be an attempt on Buergofol's part to obtain Omega's admission or denial as to the suppliers of inner films for Omega liners manufactured pre-July 2019. *See* Docket 543-1 at 9-13. Omega has already

---

[5] In response to No. 12, Omega provided Buergofol with extensive documentation the court found to comply with Rule 33(d). *See* Docket 684 at 20-21. Omega also told Buergofol how it could analyze the documents in order to obtain an answer to No. 12. *Id.* at 2-3; *see also* Docket 445-13 (Omega's email to Buergofol explaining a four step process to obtain information).

provided this information to Buergofol, and Buergofol's attempt to seek the same information using a different discovery tool would circumvent Omega's ability to rely on Rule 33(d) when it previously responded to No. 12.

Based on the above, the court finds that Buergofol is using RFAs 23-25 for an improper purpose—namely, to obtain Omega's admission or denial as to facts that Omega has already explained to Buergofol when Omega stated it does not have sufficient information to respond. *See* Docket 478-1 at 49-53. RFAs 23-25 also improperly seek to obtain information better suited to other discovery rules. *See Vermeer Mfg. Co.*, 2020 WL 8257205, at *2 (quoting 8B Wright, Miller, & Cooper, *Federal Prac. & Proc. § 2253* (3d ed. 1998)) ("Strictly speaking Rule 36 is not a discovery procedure at all, since it presupposes that the party proceeding under it knows the facts . . . . A party who desires to discover what the facts are should resort to other discovery rules rather than Rule 36."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("[Requests for admission] are not designed to discover information like other discovery rules."). For these reasons, the court finds that Omega's objections and responses to RFAs 23-25 are sufficient and denies Buergofol's request requiring Omega to provide more adequate responses.

### III.    Attorney's Fees

Omega argues that Buergofol's motion for an award of its attorney's fees should be denied. *See* Docket 574 at 22-24. Federal Rule of Civil Procedure 37(a)(5) provides that "[i]f the motion is denied, the court . . . must, after giving

an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees . . . [unless] the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). "The party resisting sanctions bears the burden of showing that its position was substantially justified." *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 2022 WL 3010143, at \*8 (D.S.D. July 29, 2022) (cleaned up and quotation omitted).

A position is "substantially justified" if it "was justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. To warrant such a characterization, the position must have reasonable basis both in law and fact." *In re Nat'l Hockey League Players' Concussion Inj. Litig.*, 2017 WL 3276873, at \*2 (D. Minn. July 31, 2017) (citation omitted). At its core, "substantial justification means that 'reasonable minds could differ as to whether the party was justified in resisting the discovery sought.' " *Jim Hawk*, 2022 WL 3010143, at \*8 (quoting *Kirschenman v. Auto-Owners Ins.*, 2012 WL 1493833, at \*1 (D.S.D. Apr. 27, 2012)).

Here, the court finds that Buergofol is not entitled to attorneys' fees because Omega's responses and objections to RFAs 20-21 and 23-25 are sufficient. The court also finds that Omega is not entitled to its attorney's fees because Buergofol's motion was substantially justified. The court has determined that at least one of Omega's objections and responses was

14

insufficient, and as such, the court concludes that Buergofol's motion "was justified in substance . . . to a degree that could satisfy a reasonable person." *In re Nat'l Hockey League*, 2017 WL 3276873, at *2.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Buergofol's motion to determine the sufficiency of Omega's objections and responses to RFAs No. 20-21 and 23-25 and for an award of fees (Docket 541) is DENIED.

DATED July 14, 2025.

                                            BY THE COURT:

                                            /s/ *Karen E. Schreier*

                                            KAREN E. SCHREIER
                                            UNITED STATES DISTRICT JUDGE