UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>OMEGA LINER COMPANY, INC.,<br><br>Defendant. | 4:22-CV-04112-KES<br><br>ORDER DENYING MOTION FOR REMOTE DEPOSITION |

Plaintiff, Buergofol, moves pursuant to Rule 30(b)(4) to have the deposition of Tobias Goth taken by remote means. Docket 601; Docket 603. Defendant, Omega, opposes the motion. Docket 615. The court issues the following order.

## BACKGROUND

On December 23, 2024, Omega served a notice of deposition of Tobias Goth, Buergofol's Head of Sales, to take place in Sioux Falls, South Dakota. Docket 604-1 at 2-4. After receiving the notice, Buergofol, reached out to Omega and explained that the noticed date, January 27, 2025, was not workable. Docket 604-2 at 4-5. Buergofol stated that it would not be able to get in contact with Goth and prepare him for the deposition in a timely fashion because of the impending Christmas and New Year holidays. *Id.*; Docket 604-2 at 2, 4-5. Additionally, Goth, who was on vacation and could not be reached

until January 7, 2025, Docket 604-3 at 2, later revealed he was unavailable on January 27, 2025, *see* Docket 604-2 at 5 (Buergofol stating that it intends to inform Omega that Goth is unavailable on January 27); Docket 604-4 at 3 (Omega's response indicating that Buergofol has stated Goth is unavailable on January 27).

Omega requested that Buergofol submit alternative dates for the deposition. *See* Docket 604-2 at 5. On January 8, 2025, Buergofol stated that Goth was available for a remote deposition on February 13-14. *See* Docket 604-4 at 5-6. Buergofol laid out the logistics for the remote deposition, explaining that Goth could travel to the Czech Republic, the deposition could occur over two days in order to accommodate an interpretation, and timed to account for the time difference between central and European time zones. *Id.* at 6. Omega rejected the option of a remote deposition, stating that it would not be feasible with an interpreter. *Id.* at 5. The parties further discussed, over email and at a meet and confer, the practicality of using a remote deposition, but no agreement could be reached. Docket 604-4 at 2; Docket 604-5; Docket 602.[1] Thus, Buergofol filed the instant motion, arguing that there are several legitimate reasons for Goth to be deposed remotely and that Omega will not be prejudiced by a remote deposition. *See* Docket 603 at 20-24. Omega maintains that Buergofol has not identified a legitimate reason to hold the deposition

---

[1] The court notes that part of the issue the parties were grappling with during the meet and confer was the deposition's timing in relation to holiday schedules. *See, e.g.,* Docket 604-3 at 2; Docket 604-2 at 5; Docket 604-4 at 3. Now, as the court takes up the motion, those factors are not at play.

remotely, that remote depositions are ineffective, and it will be prejudiced by a remote deposition. *See* Docket 615. Omega requests the deposition go forth as noticed—with Goth physically present in Sioux Falls, South Dakota. *See generally id.*

## LEGAL STANDARD

Under Rule 30(b)(1) of the Federal Rules of Civil Procedure, "[a] party who wants to depose a person by oral questions . . . must state the time and place of the deposition." Fed. R. Civ. P. 30(b)(1). Typically, this means that the examining party may unilaterally choose a deposition's location. Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure: Civil § 2112 at 523 (3d ed.).

Under Rule 30(b)(4), "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). "Rule 30(b)(4) was created for legitimate situations where being in-person [for a deposition] is not viable." *H & T Fair Hills, Ltd. v. All. Pipeline L.P.*, 2020 WL 5512517, at *3 (D. Minn. Sept. 14, 2020). "Although Rule 30 does not set forth standards for courts to consider when determining whether to permit the taking of a deposition remotely, '[i]t is well-established that the scope and conduct of discovery are within the sound discretion of the trial court.' " *Edwards v. Thomas*, 2021 WL 8316970, at *2 (W.D. Ark. Nov. 18, 2021) (quoting *Zeller v. Wal-Mart Stores, Inc.*, 2008 WL 11337855, at *1 (W.D. Ark. Nov. 12, 2008)). Importantly, "Rule 30(b)(4) is permissive, not mandatory."

*Kirkland v. City of Maryville*, 2020 WL 12863656, at *1 (E.D. Tenn. Aug. 17, 2020).

"[A]lthough some courts speak colloquially about whether there is 'good cause' to take remote depositions allowed by Rule 30(b)(4), the [r]ule does not literally require the existence of good cause." *Doe v. Bd. of Regents of Univ. of Nebraska*, 2022 WL 17343852, at *2 (D. Neb. Nov. 30, 2022) (quoting *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 (N.D. Ill. June 25, 2020)). Instead, the party seeking a remote deposition need only "advance a legitimate reason for seeking a remote deposition. [And], if that foundational showing is made, then the burden shifts to the opposing party to make a particularized showing that conducting the deposition by remote means would be prejudicial." *Patterson Dental Supply, Inc. v. Pace*, 2020 WL 10223626, at *4 (D. Minn. Nov. 5, 2020) (quoting *List v. Carwell*, 2020 WL 5988514, at *8 (D. Minn. Oct. 9, 2020)); *see also Henry v. Tacoma Police Dep't,* 2023 WL 5530201, *2 (W.D. Wash. Aug. 28, 2023).

This is a balancing test that "requires careful consideration of the facts and circumstances, including" the weighing of the purported "legitimate reason" against the "hardships asserted." *List*, 2020 WL 5988514, at *8.[2] But

---

[2] Omega argues that Buergofol must show "good cause" because Buergofol is actually seeking a protective order—not a remote deposition—in attempting to relocate the deposition to the Czech Republic. Docket 615 at 5 n.1, 20-21. The court addressed this argument in relation to Buergofol's previous motion for a remote deposition. *See* Docket 499 at 3-4 n.2. Here too, the court need not decide the proper standard because it finds Buergofol has failed to meet the lesser, "legitimate reason" standard. *See id.; see also In re Boiler Chicken*

ultimately, the court maintains "broad discretion in determining the location and manner of the depositions and may consider factors such as the relative expense and burden on the parties." *Richardson v. Grey*, 2025 WL 843768, at *2 (D. Idaho Mar. 18, 2025); *see also Thompson v. Sun Oil Co.*, 523 F.2d 647, 648 (8th Cir. 1975) (stating the court enjoys "great discretion in designating the location of taking a deposition"); *Patterson*, 2020 WL 10223626, at *3 ("Courts possess wide discretion in determining the manner for taking depositions, including whether they should take place by remote means." (quotation omitted)).

## DISCUSSION

### I.    Legitimate Reasons

Buergofol submits three "legitimate reasons" for why Goth's deposition should be taken by remote means. Docket 603 at 20-24. First, Buergofol claims that if Goth has to travel to Sioux Falls, Buergofol will lose sales. *Id.* at 20-22. Second, Buergofol points to the cost of airfare, food, and lodging, that could be avoided by a remote deposition. *Id.* at 22-23. And third, Buergofol asserts that it would be inconvenient for Goth to travel 14 hours each way for a deposition. *Id.* at 23-24. The court will address each of these concerns in turn.

#### A. Potential Lost Sales

Buergofol argues that Goth should not have to travel over 5,000 miles to be deposed in South Dakota because doing so would disrupt Goth's work

---

*Antitrust Litig.*, 2020 WL 3469166 at *7 (noting that "good cause" is a higher standard than "legitimate reason").

schedule and his ability to participate in sales meetings with current and potential customers. *Id.* at 20-22. Buergofol opines that, accounting for travel, acclimating to a new time zone, and deposition time, Goth's trip to Sioux Falls will result in his missing roughly 5 days of work. *Id.* at 21. If Goth is deposed remotely from the Czech Republic, Buergofol claims he would only miss 2 days of work. *Id.* at 22. Buergofol asserts that the extra 3 days of work that Goth will miss will result in lost sales for Buergofol. *Id.*; Docket 639 at 12.

As the court has previously explained, Buergofol chose to bring this action in South Dakota. *See* Docket 499 at 5; *see also* Docket 1. And plaintiffs—including their agents and employees—are typically required to be available for depositions in the district in which they brought suit. 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2112 (3d ed.). *See, e.g. Loeser v. Noble Supply & Logistics, LLC*, 2024 WL 2155219, at *2 (D. Md. May 14, 2024); *Trove Brands, LLC v. Trrs Magnate LLC*, 2024 WL 557789, at *1 (E.D. Cal. Feb. 12, 2024) (courts presume plaintiffs will be deposed in the district where they brought the action because the plaintiff "in selecting the forum, has effectively consented to participation in legal proceedings there." (quotation omitted)); *Am. Gen. Life Ins. Co. v. Baker*, 2010 WL 1610456 at *2 (D. Neb. Apr. 19, 2010). Courts are generally unmoved by plaintiff's complaints that the forum they selected for the litigation is inconvenient. *See Perdana Cap. Inc. v. Chowdry*, 2010 WL 11475933, at *3 (N.D. Cal. Sept. 2, 2010).

Here, with respect to Goth, the court acknowledges that by virtue of his position as head of Buergofol's sales department, it will be inconvenient for

Goth's schedule and client meetings to be disrupted. But, while "travelling for depositions is inconvenient, a 'reasonable burden or inconvenience' is expected" when the plaintiff chose to bring suit in the location where the depositions are to take place. *Troxel v. Gunite Pros, LLC*, 2022 WL 2762905, at *2 (S.D. Ala. Mar. 17, 2022) (finding that the because the plaintiffs brought suit in the forum, the "[p]laintiffs' expected inconveniences in missing work and arranging for family care . . . fall short of showing 'a sound basis or legitimate need' for an order mandating remote depositions"); *see also Equal Emp. Opportunity Comm'n v. Werner Enters., Inc.*, 2020 WL 2745286, at *3 (D. Neb. May 27, 2020) (stating that a plaintiffs "should expect to spend a reasonable amount of time away from their jobs to diligently pursue th[eir] litigation").[3]

Moreover, Buergofol has admitted that much of Goth's work—including scheduling and conducting meetings with customers—can be completed telephonically. *See* Docket 603 at 21. Thus, although he will be traveling, Goth can likely continue to do at least some of his every-day tasks.

---

[3] Buergofol asserts that it did not choose to bring this lawsuit in South Dakota and would have preferred to bring it in Texas. Docket 603 at 30-31. As such, Buergofol claims that the court should not consider the fact that Buergofol brought the suit in South Dakota out of jurisdictional necessity in determining whether Buergofol's employees must come to South Dakota for depositions. *Id.* at 31. But Buergofol *did* bring the suit here, when it could have chosen to bring no suit at all. Buergofol is bound to litigate in its chosen forum, whether or not that forum was its first choice. Moreover, Buergofol was "forced to file suit in South Dakota," at least in part, because Buergofol was actively doing business with a South Dakota company, Omega. *Id.* Thus, the court is not swayed by Buergofol's argument.

As such, the court finds that the potential lost sales Buergofol may face as a result of Goth traveling to the United States is just a reality of litigation that Buergofol should have anticipated at the precipice of this case. It is not a legitimate reason to conduct Goth's deposition remotely.

## B. Travel Costs

Buergofol maintains that the costs associated with deposing Goth in Sioux Falls, namely cost of airfare, food, and lodging, constitute a legitimate reason to conduct the deposition remotely. Docket 603 at 22. Courts have recognized that costs can serve as a legitimate reason for holding remote depositions. *See In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 ("A desire to save money taking out of state depositions can suffice to show good cause to take a deposition by remote means.").

But courts have been wary of allowing a plaintiff to use costs as an excuse to avoid in-person depositions because, again, "[t]he plaintiff . . . [took] the volitional step of initiating the lawsuit or claim . . . [and] stands to gain a substantial monetary sum and/or other beneficial relief as a result of suing a defendant." *In re Deepwater Horizon Belo*, 2021 WL 6882434, at *4 (N.D. Fla. July 12, 2021) (quoting *United States v. Rock Springs Vista Dev.*, 185 F.R.D. 603, 604 (D. Nev. 1999)). As a result, some courts have held that plaintiffs "cannot invoke the mere . . . expense as a legitimate reason to refuse to appear and submit himself or herself to questioning by the defendant regarding the basis for the claim." *Id.* (quoting *Rock Springs*, 185 F.R.D. at 604).

Buergofol estimates that it will cost over $6,500 to fly Goth to Sioux Falls. Docket 603 at 22. But, as Omega points out, the cost associated with this instant motion likely exceeds that cost. *See* Docket 615 at 6 (Omega arguing that because Buergofol is a large company that has already incurred nearly $2 million in legal fees, it can obviously afford the expenses associated with Goth's travel).

Here, as noted above, Buergofol chose to bring suit in South Dakota and seeks roughly $4 million in damages, injunctive relief from Omega, and attorney's fees, which currently total $1.8 million. *See* Docket 163 at 21-22 (prayer for relief); Docket 304 at 15; Docket 609 at 5 (stating current attorney's fees total). Omega asserts that the permanent injunction that Buergofol seeks, if granted, would force Omega to shut down its business and result in a loss of over $100 million in sales within five years. Docket 615 at 13. In short, Buergofol stands to significantly benefit if it is successful in this litigation. "It is only appropriate that in making th[e] decision [to bring suit in the forum] plaintiffs must consider the costs of prosecuting that suit, rather than rely on shifting the cost onto defendants before adjudication on the merits." *Trove Brands, LLC*, 2024 WL 557789, at *2 (quotation omitted) (evaluating a motion for a protective order under a good cause standard); *Dude v. Congress Plaza, LLC*, 2018 WL 1009263, at *2 (S.D. Fla. Feb. 20, 2018) (denying motion for remote deposition where the plaintiff sought $2 million in damages because the cost of travel paled in comparison to the size of the claim).

9

Here, it appears that some travel cost is inevitable. Omega has asserted that because Goth is such a key witness, if the court permits him to be deposed in the Czech Republic, Omega's attorneys will go there, rather than depose him remotely. Docket 615 at 15. Thus, the court finds that the costs associated with Goth traveling to the United States is not a legitimate reason for remote deposition because the court would merely be shifting those same costs to Omega.

### C. Inconvenience of Travel

Finally, Buergofol asserts that the inconvenience of travel from Germany to the United States serves as a legitimate reason to hold Goth's deposition remotely. Docket 603 at 23. Buergofol estimates that it will take Goth roughly 18 hours to make the trek from his home in Germany to Sioux Falls. *Id.* at 23-24. Holding the deposition remotely would decrease the "stress, fatigue[,] and jet lag associated" with overseas travel. *Id.* at 24. For the same reasons stated above, the court does not find Buergofol's argument compelling. Buergofol chose to bring this action, it should have reasonably anticipated the inconveniences that are inherent to litigation.

### D. Other Considerations

When the court denied Buergofol's motion to allow the remote deposition of another employee, Dr. Boutrid, it based part of its decision on (1) the fact that this case has been fraught with discovery disputes and (2) the critical, highly technical nature of Dr. Boutrid's anticipated testimony. Docket 499 at

10-12. Despite Buergofol's arguments otherwise, both concerns are also relevant here.

First, there is no doubt that this case is still bogged down with relentless discovery issues. *See* Dockets 708, 660, 656, 585 (pending discovery motions); *see also Edwards v. Thomas*, 2021 WL 8316970, at *2 (W.D. Ark. Nov. 18, 2021) (collecting cases); *Tsien v. Bd. of Regents of Univ. Sys. of Georgia*, 2021 WL 6617307, at *3 (S.D. Ga. Nov. 12, 2021), *aff'd,* 2021 WL 6617308 (S.D. Ga. Dec. 20, 2021) (denying motion for a remote deposition of key witnesses). The court again finds that the plethora of "discovery disputes . . . instill little confidence that a remote deposition will proceed" in a harmonious manner. *See Edwards*, 2021 WL 8316970, at *2 n.2.

Second, the court agrees with Omega's contention that Goth is a critical witness. *See* Docket 615 at 4. Buergofol argues that Goth is not "crucial" to Omega's case because, unlike Dr. Boutrid, he is not an inventor and only one member of Buergofol's sales force. Docket 639 at 9-10. But Goth has worked for Buergofol since 2000 and since 2008 has negotiated all UV-CIPP sales of Buergofol film to United States customers. *See* Docket 288 ¶¶ 3-4. Thus, Omega asserts that Goth has knowledge of the film sales made to Light Stream and Saertex, which Omega claims constitute prior art, making Goth a "crucial fact witness for Omega's invalidity and non-infringement defenses." Docket 615 at 4; *see also* Docket 487 (Goth's declaration in support of Buergofol's motion for partial summary judgement relating to his knowledge of film sold to Saertex). As such, the court finds that Goth is a crucial witness for Omega,

11

making it all the more vital for Omega to depose him in person where Goth's "demeanor, affect, non-verbal responses, and facial expressions" can be assessed. *Tsien*, 2021 WL 6617307, at *3.

## II.    Prejudice

Even if Buergofol had presented the court with a legitimate reason that warranted a remote deposition, the court finds that such reasons would be outweighed by the prejudice to Omega. Namely, granting Buergofol's motion would simply impose all of Buergofol's claimed hardships onto Omega.

Moreover, "[c]ourts [have] historically recognize[d] that live testimony is far superior to video or telephone testimony, and counsel's ability to observe a party as he or she answers questions is an important aspect of discovery." *G.K. v. D.M.*, 2024 WL 1801907, at *3 (E.D. La. Apr. 25, 2024); *In re Deepwater*, 2021 WL 6882434, at *3 (stating that in-person depositions are superior). While this reason alone is generally not sufficient to warrant denying a remote deposition, *see In re Broiler Chicken*, 2020 WL 3469166, at *9, this situation has an added layer of danger that testimony could, literally, be lost in translation—because Goth will need an interpreter, *see Tile Unlimited, Inc. v. Blanke Corp.*, 2013 WL 1668194, at *3 (N.D. Ill. Apr. 17, 2013) (noting that courts encourage parties to use technology to save costs when possible, but "it must be without sacrificing the purposes for which a deposition is taken, including the accurate recording of sworn testimony for use in the court"). Omega has shown that in past instances in this matter, translated depositions have been difficult, even where Buergofol was deposing its own witness. *See*

12

Docket 615 at 8-12. Thus, the court finds that Omega would be prejudiced by holding Goth's deposition remotely.

## III.    Federal Rule of Civil Procedure 28

Finally, even if Buergofol had shown a legitimate reason for Goth to be deposed remotely and that such a deposition would not prejudice Omega, Buergofol has failed to show compliance with Federal Rule of Civil Procedure 28.

Under Rule 28, a deposition usually must be taken before persons capable of giving oaths and taking testimony. *See* Fed. R. Civ. P. 28; *see also* Fed. R. Civ. P. 30(b)(5) ("Unless the parties stipulate otherwise, a deposition must be conducted before an officer appointed or designated under Rule 28"). A deposition may be taken in a foreign country only when it is done (1) under an applicable treaty or convention; (2) under a letter of request (letter rogatory); (3) on notice, before a person authorized by federal law or by the law in the place of examination; or (4) before a person commissioned by the court to administer any necessary oath and take testimony. Fed. R. Civ. P. 28(b)(1). Parties may stipulate to avoid the stringent requirement of Rule 28. Fed. R. Civ. P. 29. But the decision to stipulate is in each party's discretion and the court is unable to force such a stipulation. *See Sisney v. Reisch*, 4:03-CV-04260-LLP, at *3 (D.S.D. Nov. 21, 2005) ("Although Federal Rules of Civil Procedure 29 authorizes parties to *voluntarily* stipulate to certain variances in discovery procedures, Rule 29 does not *require* a party to so stipulate and does not authorize the Court to impose such modified procedures.").

13

Omega states that it will not stipulate under Rule 29 and because Buergofol cannot otherwise satisfy the oath requirements under Rule 28, the court must deny Buergofol's motion. To avoid this issue, Buergofol asserts that the court should "issue a commission under Rule 28(b)(1)(D) and 22 CFR § 92.53 to the court reporter who will be physically present with Mr. Goth in the Czech Republic." Docket 639 at 18.

Pursuant to Rule 28(b)(1)(D) the court may commission a person in a foreign country to administer the necessary oath and take testimony for a deposition. A commission may be issued after it has been applied for and notice of it has been given. Fed. R. Civ. P. 28(b)(2). A commission must include the name or descriptive title of the individual the deposition is being taken before, Fed. R. Civ. P. 28(b)(3), and typically includes detailed instructions for their execution, *see* 22 C.F.R. § 92.53.

Courts have been unwilling to issue commissions, however, when the requesting party has not provided adequate assurances of the relevant law and policy of the country where the deposition will take place. *See Injective Labs Inc. v. Wang*, 2024 WL 1486050, at *3-4 (D. Del. Apr. 5, 2024) (denying commission to remotely depose a Hong Kong citizen in Hong Kong where the moving party did not provide "assurance of its propriety given the international implications of such an action"); *Lott v. United States*, 2008 WL 2923437, at *2 (N.D. Cal. July 25, 2008) (denying a motion to appoint such a commission "without approval from the U.S. State Department"; in light of the "international implications"). Courts have noted that "[s]ome foreign countries

14

are hostile to allowing a deposition to be taken in their country, especially by . . . commission." *Lott*, 2008 WL 2923437, at *2 (quoting Fed. R. Civ. P. 28, 1963 advisory committee notes). As such, "it should be determined at the outset if noticed depositions are legal under the laws of the particular foreign country." *Moore's Federal Practice* § 28.13[1] (3d ed. 2023).

Here, Buergofol has not provided the court with any assurances that a commission would be appropriate under the laws of the Czech Republic. *See* Docket 639 at 18-19 (Buergofol merely stating that the court can issue a commission without providing any authority or reference to Czech law); Docket 603 at 31-32 (Buergofol arguing that a remote deposition is fully compliant with United States and *German* law).[4] Thus, the court finds that Buergofol has failed to provide the proper assurances that a commission is proper "given the international implications of such an action." *See Injective Labs*, 2024 WL 1486050, at *3.

Also, Buergofol has failed to provide the court with any proposed language or specific instructions for the commission. *See* Docket 639 at 18.[5] As

---

[4] This issue was brought up in previous motions for remote deposition in the Czech Republic. *See* Docket 294. But the information provided there similarly does not help inform the court on this decision. *Id.* at 17 (Buergofol stating that its "common" for German citizens to be deposed in the Czech Republic, but not stating that commissions are common or well received by the Czech government); *id.* at 21 (Buergofol asserting that Planet Depos has assured it that "there would be no legal impediment, *such as from German law*, to taking a remote deposition from the Czech Republic") (emphasis added).

[5] Buergofol similarly did not provide a detailed explanation on this issue in the past to aid in the court's decision here. *See* Docket 321 at 17 (stating the commission could be a simple one-page order "ordering that the deposition of a particular person occur by remote means on a particular day with the

recognized in 22 C.F.R. § 92.53, "[n]ormally a commission is accompanied by detailed instructions for its execution." These instructions are critical, as they inform the commissioned officer of their duties, including who will administer oath, how the testimony will be recorded, the use of interpreters if needed, and other logistical matters necessary to ensure the integrity of the proceeding. *See Injective Labs*, 2024 WL 1486050, at *3 (denying request for commission where the requesting party did not "detail what such a commission would entail"); *AFL Telecoms. LLC v. SurplusEQ.com Inc.*, 2012 WL 1440539, at *1-2 (D. Ariz. Apr. 26, 2012) (denying request for commission although it named the attorneys and provided the pertinent dates and times, because it failed to specify the responsibilities of the commissioned officer in relation to administering oaths or to provide information concerning translation and court reporting). Here, Buergofol merely asserts that "[t]he commission can be a simple one-page ORDER" in which the court orders "the deposition of [ ] Goth occur by remote means on a particular day with [ ] Goth and the court reporter being physically present at a specified deposition location, and further ordering that the named court reporter  . . . to administer the oath." Docket 369 at 18. This is not sufficient under the circumstances.

---

deponent and the court reporter being physically present at a specified deposition location, and further ordering that the named court reporter is being commissioned by the Court pursuant to Rule 28(b)(3) to administer the oath and to take testimony").

## IV.    Attorney's fees

In its response to Buergofol's motion, Omega requests attorney's fees. Docket 615 at 22. Omega argues that "[t]his is Buergofol's second attempt to relocate a critical deposition to the Czech Republic, relying on the same arguments the Court already rejected." *Id.*; *see also* Docket 499 at 13 (the court denying Buergofol's motion to hold Dr. Boutrid's deposition by remote means). The court agrees. Buergofol's motion was premised on the same arguments that the court already addressed in relation to Dr. Boutrid's deposition and again faced the same shortcomings with relation to Rule 28, which Omega pointed out during the first set of briefing. *See* Docket 311 at 8-10 (Omega raising the Rule 28 oath requirement with regard to Dr. Boutrid's deposition). Thus, the court finds that Omega is entitled to fees and expenses incurred for responding to Buergofol's motion.

## CONCLUSION

Because Buergofol has failed to provide the court with a legitimate reason to remotely depose Goth while he is physically present in the Czech Republic, Omega will be prejudiced by a remote deposition, and Buergofol cannot show compliance with Rule 28, it is

ORDERED that Buergofol's motion for remote deposition (Docket 601) is denied. It is

FURTHER ORDERED that Omega shall file an affidavit including a detailed accounting of the time spent preparing and litigating the response to the instant motion. This affidavit also shall set forth a reasonable rate for

17

attorney's fees that Omega believes it is entitled to. Buergofol shall have twenty-one (21) days to respond in opposition thereto. Omega may file a reply within fourteen (14) days.

Dated July 17, 2025.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE