UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BUERGOFOL GMBH, <br><br> Plaintiff and Counter Defendant, <br><br> vs. <br><br> OMEGA LINER COMPANY, INC., <br><br> Defendant and Counter Claimant. | 4:22-CV-04112-KES <br><br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY, DENYING PLAINTIFF'S MOTION TO STRIKE, AND DENYING DEFENDANT'S MOTION TO FILE A SURREPLY |

Plaintiff, Buergofol GmbH, moves for leave to file a surreply, to defendant, Omega's, reply (Docket 969) that was filed in support of Omega's Motion to Dismiss (Docket 864). Docket 981. In its initial brief, Buergofol requested that it be given six weeks to file its surreply,[1] *id.* at 18, but in its reply brief, Buergofol requested leave to file a surreply "at the earliest by April 17, 2026, but no sooner than two weeks after the date on which the last interview or deposition of Mr. Paloth, Mr. Suing and Ms. Miciotto is conducted," Docket 991 at 27. Buergofol justifies this length of time by arguing that it needs time to develop rebuttal expert testimony "to establish that the new IMAP-to-PST conversion methods cannot satisfactorily export Buergofol's Tobit email data," Docket 981 at 19, and because it "must be afforded the opportunity to question and test the veracity of the declaration statements of these alleged experts," Docket 991 at 25.

---

[1] Omega indicated that if the court grants Buergofol's request for leave to file a surreply, it would not oppose Buergofol's request to file its surreply on April 17, 2026. Docket 982 at 11 n.2.

Buergofol also moves to strike Omega's arguments "regarding exporting Tobit bulk email data using IMAP functionality in combination with the BitRecover, MailStore and Outlook programs." Docket 981 at 19; *see also* Docket 991 at 8 (Buergofol identifying "six new arguments [that] should be stricken or ignored"). In its initial brief, Buergofol argues that Omega has raised a new argument in its reply brief by asserting that Buergofol could have complied with the ESI Order by using the IMAP functionality of Tobit David in conjunction with programs such as BitRecover, MailStore, and Microsoft Outlook. Docket 981 at 13-16; *see also* Docket 991 at 8. Buergofol requests that the court either strike those portions of Omega's reply or "indicate that it will ignore" Omega's IMAP arguments. Docket 981 at 13, 19. In its reply, Buergofol identifies two other arguments it asserts that the court should strike. Docket 991 at 8. First, Buergofol argues that the court should strike Omega's argument that "Buergofol should have exported its Tobit bulk email data from a restored .stbox file instead of directly from Buergofol's active Tobit email system." *Id.* at 8, 17-19. Second, Buergofol requests that the court strike the declaration of Betina Andersen Miciotto (Docket 970) on the grounds that the declaration fails to respond to any of Buergofol's arguments raised in its opposition. *Id.* at 8, 19-22.

Omega opposes Buergofol's motions. *See* Docket 982. In response to Buergofol's motion to strike, Omega argues that the email export tools Buergofol identified as new "have been part of the record for months." *Id.* at 3. Omega notes that it has introduced these export tools in its opposition brief

and attached exhibits to Buergofol's motion to amend/modify the ESI Order. *Id.* at 7 (indicating that Omega filed attached exhibits at Dockets 822-23, 822-24 at 2-4, 822-25 at 3, and 822-26 at 2-4 discussing how to download emails from Tobit David using Microsoft Outlook, MailStore, and IMAP). Omega asserts that it expressly relied upon these exhibits in its brief in support of its motion to dismiss. *Id.*; *see also* Docket 865 at 16-20. Additionally, Omega points out that Buergofol's ESI experts, Ian Chan and Kris Rushton, concluded that Cubexsoft, "an IMAP export tool," and BitRecover were "not suited to converting and exporting Tobit email data." *See* Docket 851 ¶ 7; Docket 952 ¶ 13. Omega further notes that Rushton cited Omega's exhibit at Docket 822-23 describing MailStore's IMAP functionality and concluded that it could not be used to "successfully convert and export bulk Tobit email data from the .stbox format to a standard format." Docket 982 at 8; Docket 851 ¶ 8. Thus, Omega argues that not only was its discussion of IMAP, BitRecover, Microsoft Outlook, and MailStore previously part of the record, but also that the arguments raised in its reply brief were responsive to Buergofol's opposition brief to Omega's motion to dismiss. *See* Docket 982 at 7-9.

In response to Buergofol's motion to file a surreply, Omega argues that permitting Buergofol to file a surreply to the entirety of its reply brief would "permit [Buergofol] to reargue issues it already addressed, reopen briefing on any issues it desires, and file what would effectively be a second opposition brief." Docket 982 at 9. Omega asserts that if the court grants Buergofol's request to file a surreply, its surreply should be strictly limited to a discussion

3

of IMAP and the three email export tools, BitRecover, MailStore, and Microsoft Outlook, that Buergofol identifies in its motion. *Id.* at 11. Omega also seeks leave to file a surreply.[2] Docket 992.

## DISCUSSION

A district court enjoys broad discretion in enforcing its rules, but "striking a party's pleadings is an extreme measure, and . . . [m]otions to strike . . . are viewed with disfavor and are infrequently granted." *Stanbury L. Firm, P.A. v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citations and internal quotation marks omitted). Moreover, other courts in the Eighth Circuit have found that "there is no such thing as a 'motion to strike'—at least when the paper being targeted is a memorandum." *Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006) (collecting cases); *White v. Nat'l Football League*, 2013 WL 362901, at *1 (D. Minn. Jan. 30, 2013).

Here, the court finds that striking Omega's arguments concerning IMAP, BitRecover, MailStore, and Microsoft Outlook would not be appropriate because as Omega notes, the specific IMAP-based export issue relating to BitRecover, MailStore, and Microsoft Outlook was previously identified in the record, *see* Dockets 822-23, 822-24 at 2-4, 822-25 at 3, and 822-26 at 2-4, and was responsive to Buergofol's arguments raised by its expert declarations and its

---

[2] Under the court's discretion, it denies Omega's motion to file a surreply in response to Buergofol's reply (Docket 991) in support of its motion to strike and file a surreply (Docket 981). *See Fleshner v. Tiedt*, 2019 WL 271619, at *2 (D. Iowa Jan. 18, 2019) (noting that a district "court has discretion whether to allow a surreply").

opposition brief, *see* Docket 851 ¶¶ 7-8; Docket 952 ¶ 13; *see also* Docket 949 at 22 (arguing that it is impossible for Buergofol to comply with the ESI Order because Tobit email data cannot be converted into a standard format for later ingestion into an e-discovery platform). In its opposition brief, Buergofol argued that it is impossible for it to comply with Section III.1 of the ESI Order because it would "be impossible for Buergofol to export the approximately 300 GB of Tobit emails in the 19 custodian accounts as .pst files to an e-discovery platform and then to search those emails within two weeks and generate a hit report, as required by Section III.1." Docket 949 at 25. In response to that argument, Omega used Suing's and Paloth's declarations—both of which conducted tests to export Tobit David email data to an e-discovery platform—to "explain[] why Buergofol's claim that exporting emails from Tobit David was 'impossible' is incorrect." Docket 982 at 8; *see also* Docket 972-3 ¶¶ 24-53 (Suing's declaration); Docket 975-1 ¶¶ 10-52 (Paloth's declaration). Paloth specifically tested whether approximately 300 GB of Tobit David emails in 19 email accounts could be converted into a format suitable for ingestion into an e-discovery platform using IMAP and BitRecover and concluded the migration could be completed within 14-50 hours. Docket 975-1 ¶¶ 10-52.

As such, the court finds that the declarations from Suing and Paloth were used to rebut Buergofol's arguments, raised in its submitted expert declarations and opposition brief, that such tools as IMAP, BitRecover, MailStore, and Microsoft Outlook could not be used to export Tobit David emails into an e-discovery platform. *See* Docket 851 ¶ 8 (Rushton arguing that

none of the "migration tools" identified in Omega's submitted exhibits could "successfully convert and export bulk Tobit email data from the /stbox format to a standard format that can be ingested into an e-discovery platform"); Docket 952 ¶ 13 (Chan arguing that Cubexsoft All Mail-Backup, an IMAP export tool, and BitRecover were "not suited to converting and exporting bulk Tobit email data"); *see also* Docket 949 at 25. Further, as stated above, the remedy of striking information from the record and disregarding it entirely does not serve the purpose of properly determining the issue at hand. *See Stanbury L. Firm*, 221 F.3d at 1063 (holding that striking a motion or argument is an "extreme measure," and motions to strike "are viewed with disfavor and are infrequently granted"). Additionally, as explained below, the court will provide Buergofol with an opportunity to respond to Omega's arguments regarding the use of IMAP in conjunction with BitRecover, MailStore, and Microsoft Outlook. Thus, the court denies Buergofol's motion to strike Omega's arguments concerning IMAP, BitRecover, MailStore, or Microsoft Outlook or the declarations of Jubith Paloth and Jens Suing.[3]

For similar reasons, the court denies Buergofol's motion to strike Omega's "new" argument that "Buergofol should have exported its Tobit bulk email data from a restored .stbox file instead of directly from Buergofol's active

---

[3] The court also notes that Buergofol's request to strike the entirety of Paloth's and Suing's declarations on the basis that each raises new arguments concerning IMAP-based export tools is overbroad because the declarations also provide information unrelated to IMAP, BitRecover, Microsoft Outlook, and MailStore. *See, e.g.,* Docket 972-3 ¶¶ 54-91 (Suing discussing Tobit David's Strongbox files and search functions).

Tobit email system." Docket 991 at 8. Buergofol does not cite to exactly where Omega's experts, Suing and Paloth, "export bulk email as .stbox files from active Tobit systems and then restore the .stbox files onto non-active server computers from where .pst or .ost files are generated." *See id.* at 17-19. The only discussion of the .stbox files is in Suing's declaration, where he generally discusses .stbox files in Tobit David and then later explains how to restore .stbox files. *See* Docket 972-3 ¶¶ 54-75. This information is based on the same argument Omega made in its supplemental brief to its motion to dismiss. *See* Docket 926 at 15 (Omega arguing that a Strongbox file "can be restored to an active Tobit David email system and then exported" to an e-discovery platform). Thus, the court concludes that this is not a new argument and denies Buergofol's motion to strike this argument.

The court also denies Buergofol's motion to strike the entirety of Miciotto's declaration. Buergofol argues that the court should strike Miciotto's declaration because it does not respond to any argument in Buergofol's opposition brief. Docket 991 at 19-22. But Omega is permitted to respond to Buergofol's arguments and declarations used to support its opposition brief. Miciotto's declaration is a direct response to Buergofol's provided declaration from Markus Fink. *See* Docket 970 ¶ 1 (Miciotto explaining that she had been retained "to investigate and express an opinion on searching a Microsoft Navision 2009 R2 database system and backups, and to identify deficiencies in the Markus Fink declaration"). In its opposition brief, Buergofol used Fink's report to demonstrate that it was in compliance with Section III.2 of the ESI

Order, Docket 949 at 35-39, which required Buergofol to provide the parties'
selected ESI expert, TransPerfect, with the necessary access, credentials, and
technical support to copy Buergofol's 2013 Email Backup, Docket 725 at 5. If
there are deficiencies in the Fink report, as Miciotto's declaration suggests, *see*
Docket 970 ¶¶ 34-47, then her declaration challenges the evidence Buergofol
relied upon in support of its assertion that it is in full compliance with Section
III.2 of the ESI Order, *see* Docket 949 at 35-39. Thus, the court disagrees with
Buergofol's assertion that Miciotto's declaration is non-responsive. As such, the
court denies Buergofol's motion to strike Miciotto's declaration.

Despite the court's holding above, because Omega's argument
surrounding Buergofol's ability to comply with Section III.1 of the ESI Order did
not entail a lengthy discussion of Buergofol's ability to use Tobit David's IMAP
feature in conjunction with BitRecover, Microsoft Outlook, and MailStore in its
opening brief, *see* Docket 865 at 16-20, the court finds that Buergofol should
be given an opportunity to respond specifically to those detailed, technical
arguments raised in Omega's reply brief, *see Counts v. Wasko*, 2024 WL
4068651, at *3 (D.S.D. Sept. 5, 2024) ("A party may seek leave for permission
to file a surreply when the moving party's reply brief contains new information
or arguments for which an opportunity to respond is needed."). But the only
"new" arguments Buergofol identifies[4] as requiring a surreply concern Omega's

---

[4] In its reply brief, Buergofol raised two additional grounds that it asserts
constitute other new arguments raised in Omega's reply brief. Docket 991 at 8
(seeking to strike the Miciotto declaration and Omega's argument that
"Buergofol should have exported its Tobit bulk email data from a restored
.stbox file instead of directly from Buergofol's active Tobit email system"). But

arguments surrounding Tobit David's IMAP functionality, in conjunction with BitRecover, Microsoft Outlook, and MailStore, to export Tobit's emails into a .pst file and then later ingest that .pst file into an e-discovery platform.[5] *See* Docket 981 at 13-16. As such, while the court will permit Buergofol to file a surreply, Buergofol's surreply is expressly limited to addressing the IMAP-based export issue relating to BitRecover, MailStore, and Microsoft Outlook.

Buergofol also argues that it needs additional time beyond April 17, 2026, to depose Suing, Paloth, and Miciotto. Docket 991 at 24. More specifically, Buergofol asserts that it needs an additional two weeks from the date of the last interview or deposition of Omega's experts. *Id.* at 26. But as explained above, Buergofol should only need, if it so chooses, to depose Paloth and Suing to draft its limited surreply. Additionally, Omega has indicated that it would make its experts available for deposition should Buergofol request the deposition, *see* Docket 982 at 12, and that it would not oppose Buergofol's request to file a surreply on April 17, 2026, *id.* at 11 n.2. Thus, the court will grant Buergofol until April 17, 2026, to file its surreply. This is a firm deadline.

---

the court denies Buergofol's request to file a surreply in response to these arguments because, as explained above, the restored .stbox issue is not a new argument and the Miciotto declaration is responsive to Buergofol's opposition brief.

[5] Buergofol also argues that the court should grant it leave to file a surreply based on the Omega's argument—in support of its motion to file an overlength reply brief—that "Buergofol can seek leave to respond if it believes a response is necessary." Docket 981 at 17 (quoting Docket 967 at 7). But the court finds that this is insufficient to justify allowing Buergofol to file a surreply to the entirety of Omega's reply brief at Docket 969.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Buergofol's motion to strike (Docket 981) is denied. It is

FURTHER ORDERED that Buergofol's motion for leave to file a surreply (Docket 981) is granted in part and denied in part. Buergofol may file a surreply to Omega's reply (Docket 969) in support of its motion to dismiss (Docket 864), but Buergofol's surreply is strictly limited to the IMAP-based export issue relating to BitRecover, MailStore, and Microsoft Outlook identified on pages 66-70[6] of Omega's reply brief (Docket 969), Jens Suing's declaration (Dockets 972, 972-1, 972-2, and 972-3), and Jubith Paloth's declaration (Dockets 975 and 975-1). Buergofol's surreply is due on or before April 17, 2026. It is

FURTHER ORDERED that Omega's motion for leave to file a surreply (Docket 992) is denied.

Dated March 26, 2026.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

---

[6] These page numbers reflect Section C.1.ii entitled "The Export of Tobit David Emails to a File Format Suitable for an E-Discovery Platform by Mr. Suing," and Section C.1.iii entitled "The Export of 19 Email Accounts with 322 GB of Tobit David Emails Using BitRecover by Mr. Paloth" in Omega's reply brief. Docket 969 at 74-78.